SCOTT+SCOTT LLP
ARTHUR L. SHINGLER III (181719)
ashingler@scott-scott.com
6424 Santa Monica Blvd.
Los Angeles, CA 90038
Phone: (213) 985-1274
Fax: (213) 985-1278

SCOTT+SCOTT LLP
MARY K. BLASY (211262)
mblasy@scott-scott.com
HAL CUNNINGHAM (243048)
hcunningham@scott-scott.com
600 B Street, Suite 1500
San Diego, CA 92101
Phone: (619) 233-4565
Fax: (619) 233-0508

*Counsel for Proposed Lead Plaintiff Putnam Bank*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; COUNTRYWIDE HOME LOANS, INC.; CWALT, INC., a Delaware corporation; CWMBS, INC., a Delaware corporation; CWABS, INC., a Delaware corporation; CWHEQ, INC., a Delaware corporation; COUNTRYWIDE CAPITAL MARKETS; COUNTRYWIDE SECURITIES CORPORATION; J.P. MORGAN SECURITIES INC.;<br><br>[CAPTION CONTINUED ON NEXT PAGE] | No. 2:10-CV-00302-MRP (MANx)<br><br>NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL |

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

1   DEUTSCHE BANK SECURITIES
    INC.; BEAR, STEARNS & CO. INC.;
2   BANC OF AMERICA SECURITIES
    LLC; UBS SECURITIES, LLC;
3   MORGAN STANLEY & CO.
    INCORPORATED; EDWARD D.
4   JONES & CO., L.P.; CITIGROUP
    GLOBAL MARKETS INC.;
5   GOLDMAN, SACHS & CO.; CREDIT
    SUISSE SECURITIES (USA) LLC;
6   GREENWICH CAPITAL MARKETS,
    INC. A.K.A. RBS GREENWICH
7   CAPITAL; BARCLAYS CAPITAL
    INC.; HSBC SECURITIES (USA); BNP
8   PARIBAS SECURITIES CORP.;
    MERRILL LYNCH, PIERCE, FENNER
9   & SMITH, INCORPORATED;
    STANFORD L. KURLAND; DAVID A.
10  SPECTOR; ERIC P. SIERACKI; N.
    JOSHUA ADLER; RANJIT
11  KRIPALANI;JENNIFER S.
    SANDEFUR; DAVID A. SAMBOL,
12
13                          Defendants.
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
    NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF
    SELECTION OF LEAD COUNSEL
                                                    No. 2:10-CV-00302-MRP (MANx)

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................. 2

II.     PRELIMINARY STATEMENT ........................................ 5

III.    FACTUAL BACKGROUND ........................................... 6

IV.     ARGUMENT .................................................................... 8

        A.      Putnam Should Be Appointed as Lead Plaintiff ................................. 8

                1.      Putnam's Motion Is Timely ......................................... 8

                2.      Putnam Possesses the Requisite Financial Stake in the
                        Relief Sought by the Class ......................................... 9

                3.      Putnam Is Otherwise Qualified Under Rule 23 ...................... 10

        B.      The Court Should Approve Putnam's Choice of Counsel ................. 13

V.      CONCLUSION ............................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Dukes v. Wal-Mart, Inc.*,
    509 F.3d 1168 (9th Cir. 2007) ................................................................ 10

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D.Cal. 2004) ............................................................ 11

*General Retirement Sys. of City of Detroit v. Wells Fargo Mortg. Backed*
    *Securities 2006-AR18 Trust*,
    No. 09 Civ.1376, 2009 WL 2137094 (N.D. Cal. July 16, 2009) .............. 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1997) .......................................................... 10, 12

*Hanon v. Dataproducts Corp.*,
    976 F. 2d 497 (9th Cir. 1992) ................................................................ 10

*Hodges v. Akeena Solar, Inc.*,
    263 F.R.D. 528 (N.D. Cal. 2009) ........................................................... 12

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ........................................................ 3, 4, 12, 14

*In re Leapfrog Enterprises, Inc. Sec. Litig.*,
    No. 03 Civ. 5421, 2005 WL 3801587 (N.D.Cal. Nov. 23, 2005) .............. 11

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .................... 3

*Linn v. Allied Irish Banks, PLC*,
    No. 02 Civ. 1738, 2004 WL 2813133 (S.D.N.Y. Dec. 8, 2004) ............... 3

*Vladimir v. Bioenvision, Inc.*,
    No. 07 Civ. 6416, 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) .............. 13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.

§77z-1 .................................................................................................... 16
§77z-1(a)(3)(A)(i)..................................................................................... 3
§77z-1(a)(3)(B).................................................................................... 2, 8
§77z-1(a)(3)(B)(i)................................................................................. 8, 9
§77z-1(a)(3)(B)(iii)(I) ............................................................................. 4
§77z-1(a)(3)(B)(iii)(I)(bb) ...................................................................... 9
§77z-1(a)(3)(B)(iii)(II)(aa) ................................................................... 14
§77z-1(a)(3)(B)(v).......................................................................... 14, 16
§77z-1(1)(3)(B)(iii)(I)(cc) ..................................................................... 10

Federal Rules of Civil Procedure

Rule 23 .......................................................................................... *passim*
Rule 23(a) ............................................................................................. 10
Rule 23(a)(3)......................................................................................... 10
Rule 23(a)(4)......................................................................................... 12

**OTHER AUTHORITIES**

Conference Report on the Private Securities Litigation Reform Act of 1995,
   H.R.Rep.No. 104-369 (1995) ............................................................... 9

1  TO:   ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

2       PLEASE TAKE NOTICE that class member Putnam Bank ("Putnam") will

3  hereby move this Court, on a date and such time as may be designated by the Court,

4  for an order (1) appointing Putnam as lead plaintiff in the above-captioned action

5  pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15

6  U.S.C. §77z-1, *et seq.*; and (2) approving Putnam's selections of Scott+Scott LLP

7

8  ("Scott+Scott") as lead counsel for the Class.

9

10      This motion is made on the grounds that Putnam timely filed this motion and is

11  the most adequate lead plaintiff.  Putnam has a requisite financial interest in the relief

12  sought by the Class, and meets the requirements of Rule 23 of the Federal Rules of

13  Civil Procedure, because Putnam's claims are typical of the claims of the Class and it

14  will fairly and adequately represent the interests of the Class.  In addition, Putnam has

15  selected and retained Scott+Scott, a law firm with substantial experience in

16

17  prosecuting securities class actions, to serve as lead counsel.

18

19      This motion is based on this notice of motion and memorandum of law, the

20  Declaration of Arthur L. Shingler III ("Shingler Decl.") in support thereof, the

21  pleadings and other files and records in this Action and such other written or oral

22

23  argument as may be presented to the Court.

24

25

26

27

28

1

## I.    INTRODUCTION

Putnam respectfully submits this memorandum in support of its motion (1) to be appointed Lead Plaintiff pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §77z-1(a)(3)(B), as amended by the PSLRA and (2) for approval of its selection of the law firm of Scott+Scott as Lead Counsel for the Class.

Pursuant to the PSLRA, as soon as practicable after a decision on consolidation has been rendered (in circumstances where multiple, related class actions were filed and consolidation is necessary), the Court is to appoint as lead plaintiff, from among those seeking such appointment and who otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, the movant or group of movants with the largest financial interest in the litigation.  *See* 15 U.S.C. §77z-1(a)(3)(B).

The present matter is a class action brought on behalf of the purchasers of certain mortgage-backed securities sponsored by affiliates of Countrywide Financial Corporation and its wholly-owned subsidiary Countrywide Home Loans, Inc. (collectively, "Countrywide"),[1] alleging violations of the federal securities laws.  The

---

[1]   While this action has been related to *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07 Civ. 5295-MRP (MANx) (C.D. Cal.) and various other actions brought on behalf of investors in, and debtholders of, Countrywide, this action only addresses claims arising from purchases of Countrywide mortgage-backed securities.  It is Putnam's position that the action should not be consolidated with the other actions as this action on behalf of mortgage-backed securities purchasers raises unique legal issues and factual contentions relevant only to this action.

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

2

PSLRA establishes a three-step procedure for the selection of lead plaintiffs to oversee class actions brought under the federal securities laws. *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002)[2]. First, §27(a)(3)(A)(i) provides that within 20 days after the date on which a securities class action is filed, the initial plaintiff is required to publish a notice advising potential plaintiff class members of the pendency of the action, the claims, the purported class period, and that any member of the class may file a motion with the Court to serve as lead plaintiff no later than 60 days from the publication of that original notice. 15 U.S.C. §77z-1(a)(3)(A)(i). Notice in this action was first published on February 1, 2010. *See* Shingler Decl., Ex. A.

Second, §27(a)(3)(B)(i) directs this Court to consider any motions brought by class members seeking to be appointed as lead plaintiffs as soon as practicable after the Court decides any pending motion to consolidate, but no later than 90 days after publication of the notice. Under this provision of the Securities Act, the Court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff for the Class. The

---

[2]   In *Cavanaugh*, the Ninth Circuit Court of Appeals granted *mandamus* review of a lead plaintiff appointment pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 306 F.3d at 727. The appointment procedure described by the Circuit Court in *Cavanaugh* is equally applicable here, as the lead plaintiff provisions of the Securities Act and the Exchange Act are interchangeable. *Linn v. Allied Irish Banks, PLC*, No. 02 Civ. 1738, 2004 WL 2813133, at *3 n.2 (S.D.N.Y. Dec. 8, 2004) (noting that '"the lead-plaintiff provisions of the 1933 and 1934 acts are identical'") (quoting *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *2 n. 2 (N.D. Ill. Aug. 11, 1997)).

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

Securities Act provides that the Court shall presume to be the lead plaintiff the person (or group of persons) who: (1) has either filed a complaint or moved for lead plaintiff in response to a notice; (2) "has the largest financial interest in the relief sought;" and (3) satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. §77z-1(a)(3)(B)(iii)(I). Finally, after the presumptive lead plaintiff has been identified, other class members have "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Cavanaugh*, 306 F. 3d at 730.

For the reasons set forth below, Putnam is "the most adequate plaintiff" under the PSLRA to serve as lead plaintiff, as it has the requisite financial interest in the relief sought by this action by virtue of, among other things, its expenditure of $42,474,381 purchasing 425,659 units of Countrywide mortgage-backed securities issued between 2005 and 2007 (the "Certificates").[3] *See* Shingler Decl., Ex. B. Putnam further satisfies the relevant requirements of Rule 23 as an adequate class representative with claims typical of the other purchasers of Countrywide Certificates. Additionally, Putnam's selection of Scott+Scott as lead counsel should be approved

---

[3] The Complaint alleges claims on behalf of investors who purchased or otherwise acquired the following Certificates: Alternative Loan Trust Certificates issued by CWALT, Inc. ("CWALT"); CWABS Asset-Backed Trust Certificates issued by CWABS, Inc. ("CWABS"); CHL Mortgage Pass-Through Trust Certificates issued between 2005 and 2006 by CWMBS, Inc. ("CWMBS"); and CWHEQ Revolving Home Equity Loan Trusts and Home Equity Loan Trusts issued by CWHEQ, Inc. ("CWHEQ").

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

because Putnam, as the presumptive lead plaintiff, selects counsel.  Scott+Scott has extensive experience in the prosecution of securities class actions and will adequately represent the interests of all Class members as lead counsel.  *See* Shingler Decl., Ex. C.

## II.        PRELIMINARY STATEMENT

The above-captioned action (the "Action") brought on behalf of a Class of purchasers of the Certificates that were issued pursuant and/or traceable to the following Registration Statements filed with the Securities and Exchange Commission:  ("SEC"): 333-100418 (October 28, 2002), 333-110343 (January 13, 2004), 333-117949 (September 23, 2004), 333-118926 (October 18, 2004),  333-121249 (February 8, 2005), 333-121378 (December 17, 2004), 333-123167 (April 21, 2005), 333-125164 (June 10, 2005), 333-125902 (July 25, 2005), 333-125963 (July 25, 2005), 333-126790 (August 4, 2005), 333-131591 (February 21, 2006), 333-131662 (March 6, 2006), 333-131630 (March 6, 2006), 333-132375 (April 12, 2006), 333-135846 (August 8, 2006), 333-140958 (April 24, 2007), 333-140960 (April 24, 2007), 333-140962 (April 24, 2007), 333-139891 (May 22, 2007) (the "Registration Statements") in a series of 431 offerings between January 2005 and August 2007 (the "Offerings"), alleging violations of Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2)(j)(b) and 77o.  Putnam hereby moves this Court for an

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

order appointing Putnam as lead plaintiff for the Action and approving Putnam's selection of counsel.

### III.   FACTUAL BACKGROUND

Countrywide was once the United States' largest residential mortgage lender. Countrywide originated in excess of $850 billion in home loans during 2005 and 2006 alone.  As alleged  in the Action, Countrywide securitized many of these mortgage loans – *i.e.*, pooled and repackaged the loans into salable securities – through its wholly owned subsidiaries, CWALT, Inc. ("CWALT"); CWABS, Inc. ("CWABS"); CWMBS, Inc. ("CWMBS"); and CWHEQ , Inc. ("CWHEQ").  CWALT, CWABS, CWMBS and CWHEQ formed special-purpose entities, referred to as "Issuing Trusts," in which Countrywide deposited billions of dollars of loans for securitization. The Issuing Trusts and the underwriter then sold the securitized mortgages to investors in the form of Certificates.[4]

Based on representations by Countrywide concerning, among other things, the purported quality of the underlying mortgages pooled in the Issuing Trusts, the rating

---

[4]    The named underwriters include Countrywide Financial Corporation, Countrywide Capital Markets,  Countrywide Securities Corporation, J.P. Morgan Securities Inc., Deutsche Bank Securities Inc., Bear, Stearns & Co. Inc., Banc of America Securities LLC, UBS Securities, LLC, Morgan Stanley & Co. Incorporated, Edward D. Jones & Co., L.P., Citigroup Global Markets Inc., Goldman, Sachs & Co., Credit Suisse Securities (USA) LLC, Greenwich Capital Markets, Inc. a.k.a. RBS Greenwich Capital, Barclays Capital Inc., HSBC Securities (USA), BNP Paribas Securities Corp., Merrill Lynch, Pierce, Fenner & Smith, Inc.

agencies, Moody's Investors Service, Inc., Fitch, Inc. and/or Standard & Poor's Corporation assigned investment grade ratings to all tranches of the Certificates. The investment grade ratings were important to investors, such as Putnam, which purchased the Certificates based upon three primary factors: (i) steady return, in the form of interest payments; (ii) the timing of principal and interest payments; and (iii) the safety of the investment – *i.e.*, the low risk of default of the underlying mortgage assets.  The Action alleges that, contrary to what investors in these mortgage-backed securities were told, the billions of dollars of Certificates that Countrywide and its subsidiaries issued in the Offerings were backed by mortgages that were recklessly underwritten, and, as such, are at high risk of default.

The Complaint charges that the Registration Statements and Prospectus Supplements used in the Offerings of the Certificates contained material misstatements and omissions concerning the mortgages underlying the Certificates. Among other things, the Registration Statements omitted that Countrywide was issuing many risky, non-traditional mortgage loans, such as Option ARM loans, to borrowers who: (i) did not meet the prudent debt-to-income ratio purportedly required by Countrywide; (ii) did not provide adequate documentation to support the income and assets required to issue the loans pursuant to Countrywide's own guidelines; and (iii) did not have the income or assets necessary to afford the required mortgage loan payments – each of which resulted in loans that borrowers could not afford to pay.

As a result, the Registration Statements vastly understated the risk profile of the Certificates.  By mid-2007, the previously concealed truth about the actual risk profile of the mortgage loans securing the Certificates began to be revealed to the public, as defaults on the underlying loans began to spike.  The deteriorating performance of the underlying loans could have been anticipated by investors had the underwriting standards used in their origination been disclosed.  In time, the credit rating agencies began to place negative watch warnings on certain Certificate tranches, ultimately downgrading many, and market interest in the Certificates evaporated.  As a result, the Certificates are no longer marketable at prices anywhere near the price paid for them and the holders of the Certificates are exposed to much greater risk with respect to the timing of, and absolute cash flow to be received, than the Registration Statements represented.

## IV.     ARGUMENT

### A.     Putnam Should Be Appointed as Lead Plaintiff

#### 1.     Putnam's Motion Is Timely

On February 1, 2010, a notice of pendency of the action was published via *Business Wire*, a nationally circulated, business-oriented publication providing the requisite notice as required by the Securities Act.  Shingler Decl., Ex. A.  Class members who file complaints or move pursuant to §27 (a)(3)(B) of the Securities Act are eligible to be appointed as lead plaintiffs, so long as their motion is timely.  15

U.S.C. §77z-1(a)(3)(B)(i).   In the present matter, Putnam's motion is timely filed within 60 days from the publication of that notice and, as such, is timely.

### 2. Putnam Possesses the Requisite Financial Stake in the Relief Sought by the Class

The PSLRA provides that courts:

> [S]hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. §77z-1(a)(3)(B)(i).   The Securities Act requires this Court to adopt a rebuttable presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that have "the largest financial interest in the relief sought by the class."   15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(bb). Congress reasoned that increasing the role of larger investors, which typically have a larger financial stake in the outcome of the litigation, would be beneficial because investors with a large financial stake are more apt to effectively manage complex securities litigation.   *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R.Rep.No. 104-369, at 34 (1995) ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").   Thus, Putnam, which acquired more than 425,659 units of the Certificates pursuant and/or traceable to the Registration Statements, expending more than $42,474,381 is exactly the type of lead plaintiff envisioned by Congress and should be appointed here.

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

### 3.     Putnam Is Otherwise Qualified Under Rule 23

Section 27(a)(3)(B)(iii)(I)(cc) of the Securities Act provides that, at the outset of the litigation, lead plaintiffs must also "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. §77z-1(1)(3)(B)(iii)(I)(cc).  With respect to the qualifications of the class representative, Rule 23(a) requires generally that the plaintiff's claims be typical of the claims of the class and that the representative fairly and adequately protect the interests of the class. As detailed below, Putnam satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff here.

The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiffs have (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues. *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 508 (9th Cir. 1992); *General Retirement Sys. of City of Detroit v. Wells Fargo Mortg. Backed Securities 2006-AR18 Trust*, No. 09 Civ.1376, 2009 WL 2137094, at *8 (N.D. Cal. July 16, 2009).  In the Ninth Circuit, Rule 23(a)(3) is interpreted permissively and "'representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'" *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1184 (9th Cir. 2007) (quoting *Hanlon v. Chrysler Corp.*, 150

F.3d 1011, 1020 (9th Cir. 1997)); *In re Leapfrog Enterprises, Inc. Sec. Litig.*, No. 03 Civ. 5421, 2005 WL 3801587, at *3 (N.D.Cal. Nov. 23, 2005).

Here, the questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include the following:

> (i)   whether the Securities Act was violated by defendants;
>
> (ii)  whether the Registration Statements and Prospectus Supplements contained false statements and/or omissions;
>
> (iii) whether defendants were reckless in issuing the Registration Statements and Prospectus Supplements; and
>
> (iv)  whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

As a result, there is a well-defined community of interest in the questions of law and fact involved in this case.  The claims asserted by Putnam, which acquired Certificates pursuant and/or traceable to defective Registration Statements, are typical of the claims of the members of the proposed class.  Because the claims asserted by Putnam are based on the same legal theories and arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members,'" typicality is satisfied. *Ferrari v. Gisch,* 225 F.R.D. 599, 606-07 (C.D.Cal. 2004) (citation omitted).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Hanlon*, 150 F.3d at 1020.  In order to satisfy this requirement, a prospective lead plaintiff must show that he, she, or it does not have any conflicts of interest with other class members and that the plaintiff and counsel will vigorously prosecute the case.  *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 533 (N.D. Cal. 2009).  In the context of a motion to appoint lead plaintiff in a securities class action, the key inquiry is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job.  *Cavanaugh*, 306 F.3d at 732.

Here, Putnam is motivated to and will more than adequately represent and protect the interests of the Class.  First, Putnam's interests are clearly aligned with the members of the proposed Class and there is no evidence of any antagonism between Putnam's interests and the interests of the proposed Class members.  Second, as detailed above, Putnam shares substantially similar questions of law and fact with the members of the proposed Class and its claims are typical of the members of the Class.  Third, Putnam has amply demonstrated that it will adequately serve as class representative by signing a sworn certification affirming the willingness to serve as, and assume the responsibilities of, a class representative.  *See* Shingler Decl., Ex. B.

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

12

In addition to satisfying the requirements of Rule 23, Putnam – a federally chartered bank – is precisely the type of sophisticated institutional investor envisioned by Congress to serve as lead plaintiff in a class action for violation of the federal securities laws.  See H.R. Conference Report on Securities Litigation Reform, S. Rep. No. 104-98, at 14 (1995), *reprinted in* U.S.C.C.A.N. 679, 690 ("an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors.").  *See id.*, at 34 ("[t]he Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); see also *Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416, 2007 WL 4526532, at *3 (S.D.N.Y. Dec. 21, 2007) ("Congress decided that the PSLRA's objectives are best achieved when lead plaintiffs are institutional investors or others with large holdings at stake whose interests will be most strongly aligned with those of the class members.") (citing cases).  Putnam is an experienced fiduciary, adept at serving, promoting and protecting the interests of its constituencies.

## B.    The Court Should Approve Putnam's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval.  *See* 15 U.S.C. §77z-1(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734-35.  As such, this Court should not disturb the lead plaintiff's choice of

counsel unless necessary to "protect the interests of the class."   15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa).   Here, movant has selected the highly qualified law firm of Scott+Scott to represent the Class.   *See* Shingler Decl., Ex. C.  Scott+Scott has served as lead or co-lead counsel in many high-profile actions, directly recovering hundreds of millions of dollars for aggrieved investors and others harmed by corporate chicanery and greed.[5]   For instance, commenting on the speed, legal acumen and tenacity Scott+Scott partners employed in obtaining a temporary restraining order enjoining the "off shore transfer of … approximate[ly] $1 billion in assets" held by Madoff "feeder funds," one court recently held that:

---

[5]    Some other recoveries of note for Scott+Scott include, among others: settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.), a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.) Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices); among others.

1

2        *It is this Court's position that Scott+Scott did a superlative job in its
         representation . . . .For the record, it should be noted that Scott+Scott*
3        *has demonstrated a remarkable grasp and handling of the
         extraordinarily complex matters in this case.  The extremely*
4        *professional and thorough means by which [Scott+Scott] has litigated
         this matter has not been overlooked by this Court.  They have*
5        *possessed a knowledge of the issues presented and this knowledge has
         always been used to the benefit of all investors.*
6

7     *New York University v. Ariel Fund Limited*, No. 603803/08, Opinion at 9-10 (New

8     York State Supreme Court, New York County, Feb. 22, 2010).  As demonstrated in

9     the Firm's résumé, Scott+Scott possesses vast resources and expertise, and has

10

11    committed these resources to use for the benefit of aggrieved investors like the

12    putative Class here.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF
      SELECTION OF LEAD COUNSEL

                                                                    No. 2:10-CV-00302-MRP (MANx)

                                           15

# V.   CONCLUSION

For all the foregoing reasons, Putnam respectfully requests that the Court: (i) appoint Putnam as lead plaintiff in the Action pursuant to §27D(a)(3)(B) of the Securities Act, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §77z-1; and (ii) approve Putnam's selection of the law firm of Scott+Scott LLP to serve as lead counsel pursuant to 15 U.S.C. §77z-1(a)(3)(B)(v).

DATED:  April 2, 2010

Respectfully submitted,
SCOTT+SCOTT LLP


/s/ Arthur L. Shingler III
ARTHUR L. SHINGLER III (181719)

6424 Santa Monica Blvd.
Los Angeles, CA 90038
Phone: (213) 985-1274
Fax: (213) 985-1278
Email: ashingler@scott-scott.com

SCOTT+SCOTT LLP
Mary K. Blasy (211262)
Hal D. Cunningham (243048)
600 B Street, Suite 1500
San Diego, CA 92101
Phone: (619) 233-4565
Fax: (619) 233-0508
Email: hcunningham@scott-scott.com
          mblasy@scott-scott.com


*Counsel for Proposed Lead Plaintiff Putnam Bank*

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2010 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 2, 2010.


/s/ Arthur L. Shingler III
ARTHUR L. SHINGLER III (181719)
SCOTT+SCOTT LLP
6424 Santa Monica Blvd.
Los Angeles, CA 90038
Phone: (213) 985-1274
Fax: (213) 985-1278
Email: ashingler@scott-scott.com

NOTICE OF MOT. AND MEMO. OF LAW ISO APPT. OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

No. 2:10-CV-00302-MRP (MANx)

17