| | |
|---|---|
| 1 | ROBBINS GELLER RUDMAN |
| |   & DOWD LLP |
| 2 | DARREN J. ROBBINS (168593) |
| | darrenr@rgrdlaw.com |
| 3 | SPENCER A. BURKHOLZ (147029) |
| | spenceb@rgrdlaw.com |
| 4 | THOMAS E. EGLER (189871) |
| | tome@rgrdlaw.com |
| 5 | DANIEL S. DROSMAN (200643) |
| | dand@rgrdlaw.com |
| 6 | SCOTT H. SAHAM (188355) |
| | scotts@rgrdlaw.com |
| 7 | 655 West Broadway, Suite 1900 |
| | San Diego, CA 92101 |
| 8 | Telephone: 619/231-1058 |
| | 619/231-7423 (fax) |
| 9 | |
| | BARROWAY TOPAZ KESSLER |
| 10 |   MELTZER & CHECK, LLP |
| | SEAN M. HANDLER |
| 11 | shandler@btkmc.com |
| | ANDREW L. ZIVITZ |
| 12 | azivitz@btkmc.com |
| | 280 King of Prussia Road |
| 13 | Radnor, PA 19087 |
| | Telephone: 610/667-7706 |
| 14 | 610/667-7056 (fax) |
| 15 | [Proposed] Co-Lead Counsel for Plaintiff |
| 16 | [Additional counsel appear on signature page.] |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | No. 2:10-cv-00302-MRP(MANx) |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL |
| vs. | ) ) | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | ) ) ) | |
| Defendants. | ) ) ) ) | DATE: May 3, 2010<br>TIME: 11:00 a.m.<br>CTRM: 12<br>JUDGE: Hon. Mariana R. Pfaelzer |

514008_1

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................... 2

III.  ARGUMENT ......................................................................................................... 6

    A.    The Institutional Investor Group's Motion Should Be Granted ........... 6

        1.    This Motion Is Timely .............................................................. 6

        2.    The Institutional Investor Group Has the Largest Financial Interest in the Relief Sought by the Class .................. 7

        3.    The Institutional Investor Group Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure ............................... 8

    B.    The Court Should Approve the Institutional Investor Group's Selection of Counsel ............................................................................. 9

IV.  CONCLUSION .................................................................................................... 10

Class members Vermont Pension Investment Committee, Mashreqbank, p.s.c., Pension Trust Fund for Operating Engineers, Operating Engineers Annuity Plan, Washington State Plumbing & Pipefitting Pension Trust and Maine Public Employees Retirement System[1] (collectively, the "Institutional Investor Group") respectfully submit this memorandum of law in support of their Motion for: (i) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §77z-1(a)(3)(B); and (ii) approval of their selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller")[2] and Barroway Topaz Kessler Meltzer & Check, LLP ("Barroway Topaz") as lead counsel for the class.

## I.   INTRODUCTION

The above-captioned class action alleges violations of §§11, 12(a)(2) and 15 of the Securities Act of 1933 ("1933 Act") on behalf of a class of investors who purchased securities issued by various defendants who were wholly-owned subsidiaries of Countrywide Financial Corporation ("CFC"), and its wholly owned subsidiary, defendant Countrywide Home Loans, Inc. ("CHL") (collectively "Countrywide"). In actions asserting securities claims, the PSLRA requires district courts to appoint as lead plaintiff the "members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §77z-1(a)(3)(B)(i); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). The "most capable" plaintiff, *i.e.*, the lead plaintiff, is the "person or group of persons" that timely demonstrates they have "the largest financial interest in the relief sought by the class" and "otherwise satisf[y] the requirements of Rule 23 of the

---

[1]   Maine Public Employees Retirement System was formerly known as the Maine State Retirement System.

[2]   Prior to March 31, 2010, Robbins Geller Rudman & Dowd LLP was known as Coughlin Stoia Geller Rudman & Robbins LLP.

Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(3)(B)(iii)(I). The Institutional Investor Group believes it is the presumptively most adequate plaintiff.

As explained herein, the Institutional Investor Group not only satisfies the PSLRA's express lead plaintiff requirements, but is accustomed to acting as a fiduciary and selecting and directing counsel in this specific action as demonstrated by their zealous commitment to protecting the class' claims and interests over the past three years in three separate courts, including this Court. No other movant can demonstrate the same level of commitment to protecting the class' interests. Further, the Institutional Investor Group selected Robbins Geller and Barroway Topaz to serve as lead counsel, law firms with extensive securities class action experience that will adequately represent the interests of all class members.

Because the Institutional Investor Group believes that it has triggered the "most adequate plaintiff" presumption, it respectfully requests that its Motion be granted.

## II.  STATEMENT OF FACTS[3]

The claims in this case stem from the activities of Countrywide, once the nation's largest residential mortgage lender, originating in excess of $850 billion in home loans throughout the United States during 2005-2006 alone. Many of the loans Countrywide originated in 2005, 2006 and 2007 were pooled together by Countrywide and deposited into qualifying special-purpose entities, referred to herein as the "Issuing Trusts," which were created by defendants CWALT, Inc., CWABS, Inc., CWMBS, Inc. and CWHEQ, Inc., each of which are wholly-owned subsidiaries of Countrywide. These pools of mortgages were then securitized into mortgage-backed securities ("MBS") and sold by the Issuing Trusts and the Underwriter Defendants to class members in the form of the Certificates. The Certificates entitled class members

---

[3] The relevant facts are based upon the Complaint filed in this action. *See* Docket #1.

to receive monthly distributions of interest and principal on cash flows from the mortgages held by the Issuing Trusts. As borrowers paid their mortgages, distributions were made to class members in accordance with the terms of the Certificates.

The investment quality of the Certificates was necessarily linked to the quality of the mortgages pooled into each Issuing Trust. Countrywide, as originator of the mortgages held by the Issuing Trusts, repeatedly touted the strength of its underwriting standards to assure investors that: (i) the mortgages held by the Issuing Trusts were issued to borrowers who satisfied certain thresholds of credit-worthiness, including having the necessary income to repay the loans; and (ii) the real estate that collateralized the loans was subjected to objective and independent real estate appraisals that met the requirements of the Uniform Standards of Professional Appraisal. In this regard, the Registration Statements and Prospectus Supplements issued to investors in connection with the purchase of the Certificates included numerous representations about: (i) the quality of the mortgage pools underlying the Issuing Trusts, such as the underwriting standards employed to originate the mortgages, the value of the collateral securing the mortgages, and the soundness of the appraisals used to arrive at this value; (ii) the mortgages' loan-to-value ("LTV") ratios; and (iii) other criteria that were used to qualify borrowers for the mortgages. These representations and others were essential to investors, including the Institutional Investor Group, in determining the riskiness of the mortgage pool and the quality of their investment in the Certificates.

The Certificates issued by each Issuing Trust were divided into several classes (or "tranches") which had different priorities of seniority, priorities of payment, exposure to default, and interest payment provisions. Rating agencies, like Moody's Investors Service, Inc. ("Moody's"), Fitch, Inc. ("Fitch") and/or Standard & Poor's

Corporation ("S&P"),[4] rated the investment quality of the Certificates based on information provided by the defendants about the quality of the mortgages in each mortgage pool, and the seniority of the tranches supporting the various Certificates issued by each Issuing Trust. These ratings, in part, determined the price at which the Certificates were offered to the class.

As explained in the Complaint, the Certificates entitled the Institutional Investor Group and other class members to receive a pre-determined amount of the monthly interest and principal payments received as borrowers repaid their mortgage loans. If borrowers failed to pay their mortgages, losses flowed to class members, including the Institutional Investor Group, based on the seniority of their Certificates.

Based on the representations concerning the purported quality of the underlying mortgages pooled in the Issuing Trusts set forth in the Registration Statements and Prospectus Supplements, the Rating Agencies assigned investment grade ratings to the various tranches of the Certificates.[5] As alleged in the Complaint, the Registration Statements and Prospectus Supplements misstated and omitted material information regarding, *inter alia*, the origination process and the quality of the mortgages that were pooled in the Issuing Trusts and were used as the financial basis for the Certificates. For example, Countrywide did not follow the underwriting and appraisal standards described in these Registration Statements and the Prospectus Supplements. Rather, Countrywide issued mortgages to borrowers that did not satisfy the reported

---

[4] Moody's, Fitch and S&P (collectively, the "Rating Agencies") are approved by the SEC as "Nationally Recognized Statistical Rating Organizations" and provide credit ratings which are used to distinguish among grades of creditworthiness of various securities under the federal securities laws.

[5] The highest investment rating used by the Rating Agencies is AAA, which signifies the highest investment grade and suggests that there is a very low risk of investment loss or credit risk associated with the security. Ratings of "AA," "A" and "BBB" represent very high credit quality, high credit quality, and good credit quality, respectively. There are various intermediate ratings between BBB and AAA. Anything rated lower than BBB is considered speculative or "junk," *i.e.*, not investment grade.

514008_1

requisite eligibility criteria as described in the Registration Statements and Prospectus Supplements. Likewise, the mortgages held by the Issuing Trusts and underlying the Certificates were based on collateral appraisals that overstated the value of the underlying properties, thus exposing the Issuing Trusts and class members, including the Institutional Investor Group, to inadequate collateral and substantial losses in the event of foreclosure.

As a result of the material misrepresentations and omissions in the Prospectuses, investors purchased securities that were far riskier than represented. For example, by mid-2007 the mortgages held by the Issuing Trusts and underlying the Certificates began suffering accelerating delinquencies and defaults. The defaults led to real estate foreclosures, which revealed that the properties underlying the mortgages were worth materially less than the amount of the loans issued to the borrowers, and the borrowers did not have sufficient financial wherewithal to cover the outstanding mortgage balances. Consequently, the Rating Agencies placed negative-watch labels on many of the Certificates, and downgraded many of them, some to below investment grade level.

Because of, *inter alia*, the mortgage delinquencies, defaults and Rating Agency downgrades that resulted from Countrywide's failure to comply with stated underwriting and appraisal guidelines, Countrywide faced massive losses beginning in mid-2007. As these losses mounted from increasing delinquencies and foreclosures in the loans it originated and underwrote, Countrywide spiraled toward bankruptcy and was acquired by Bank of America Corporation for $4.1 billion in stock in January 2008.[6]

---

[6] On July 1, 2008, defendant CFC completed a merger with a wholly-owned subsidiary of Bank of America pursuant to the terms of an Agreement and Plan of Merger, dated as of January 11, 2008, by and among Bank of America and CFC and other entities created to effectuate the merger. The entity surviving the merger was renamed Countrywide Financial Corporation. On July 3, 2008, defendant CHL

1  The Certificates continue to diminish in value as a result of increasing
2  delinquencies and foreclosures related to the mortgages underlying the Certificates,
3  and class members have suffered significant losses and damages.

### III. ARGUMENT

### A. The Institutional Investor Group's Motion Should Be Granted

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1933 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(1); *see also* 15 U.S.C. §77z-1(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §77z-1(a)(3)(A)(i). Next, the Court "shall adopt a presumption that the most adequate plaintiff is the person or group of persons" that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii). The Institutional Investor Group meets each of these requirements and should therefore be appointed as lead plaintiff.

### 1. This Motion Is Timely

The notice published on February 1, 2010 informed class members that the deadline to move for appointment as lead plaintiff in this action was in 60 days, or

---

completed the sale of some or substantially all of its assets to NB Holdings Corporation, also a wholly-owned subsidiary of Bank of America.

- 6 -

514008_1

April 2, 2010. *See* Declaration of Spencer A. Burkholz in Support of Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Burkholz Decl."), Ex. A; 15 U.S.C. §77z-1(a)(3)(A). This Motion is therefore timely filed.

In addition, the Institutional Investor Group has submitted sworn certifications confirming its willingness and ability to serve as lead plaintiff. *See* Burkholz Decl., Ex. B. Thus, the Institutional Investor Group has complied with the PSLRA's procedural requirements and is entitled to be considered for appointment as lead plaintiff.

### 2. The Institutional Investor Group Has the Largest Financial Interest in the Relief Sought by the Class

The Institutional Investor Group acquired more than $222 million worth of Certificates pursuant and traceable to the Registration Statements/Prospectus Supplements:

|  | Face Value Purchased |
|---|---|
| Mashreqbank, p.s.c. | $60,095,019 |
| Pension Trust Fund for Operating Engineers | $54,375,000 |
| Maine Public Employees Retirement System | $50,198,391 |
| Vermont Pension Investment Committee | $50,001,635 |
| Operating Engineers Annuity Plan | $4,950,000 |
| Washington State Plumbing & Pipefitting Pension Trust | $2,912,517 |
| **Total:** | **$222,532,562** |

*See* Burkholz Decl., Ex. B. The value of the Certificates held by the Institutional Investor Group has substantially declined, and, to the best of its counsels' knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest. Therefore, the Institutional Investor Group satisfies the PSLRA's prerequisite of having the largest financial interest.

514008_1

### 3. The Institutional Investor Group Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally requires that the claims of representative parties be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23; *Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy at the lead plaintiff stage). As detailed below, the Institutional Investor Group satisfies the typicality and adequacy requirements of Rule 23(a).

The test of typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). The adequacy requirement is met if no conflicts exist between the representative and class interests and the representative's attorneys are qualified, experienced and generally able to conduct the litigation. Fed. R. Civ. P. 23(a)(4); *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Here, the Institutional Investor Group meets the typicality and adequacy requirements because it purchased or acquired the Certificates of the Issuing Trusts pursuant or traceable to the Registration Statements and Prospectus Supplements and suffered damages thereon. *See* Burkholz Decl., Ex. B. The Institutional Investor Group is also not subject to unique defenses and there is no evidence of any conflicts between the Institutional Investor Group and the other class members.

In addition, the Institutional Investor Group has declared its ability and willingness to prosecute this action by filing the requisite certification and retaining qualified counsel. Notably, unlike any other class members, the Institutional Investor Group has also ably demonstrated its ability to zealously oversee the prosecution of

- 8 -

514008_1

this action in since 2007 in not only in this Court, but also in the Los Angeles County Superior Court and the Ninth Circuit Court of Appeals. *See generally Luther v. Countrywide Home Loans Servicing*, 2008 U.S. Dist. LEXIS 26534 (C.D. Cal. Feb. 28, 2008) (Pfaelzer, J.); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008); and *Luther v. Countrywide Fin. Corp.*, 2009 U.S. Dist. LEXIS 100138 (C.D. Cal. Oct. 9, 2009) (Pfaelzer, J.).

Thus, the Institutional Investor Group has made a preliminary showing of typicality and adequacy for purposes of this Motion.

### B. The Court Should Approve the Institutional Investor Group's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §77z-1(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 732-33; *In re Cohen*, 586 F.3d 703 (9th Cir. 2009).

The Institutional Investor Group has selected Robbins Geller and Barroway Topaz to serve as lead counsel. Robbins Geller and Barroway Topaz are actively engaged as counsel in complex securities litigation. *See* Burkholz Decl., Exs. C-D. District courts throughout the country routinely appoint both firms to lead roles in complex class action securities cases. *See, e.g.*, *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.) (commenting that the "experience, ability, and reputation of the attorneys of [Robbins Geller] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"); *Bhojwani v. Pistiolis*, 2007 U.S. Dist. LEXIS 96246, at *9 (S.D.N.Y. July 30, 2007) (finding that attorneys of Barroway Topaz "are outstanding in their field and have ample experience as lead counsel"). As such, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller and Barroway Topaz.

514008_1

Accordingly, the Institutional Investor Group's selection of counsel should be approved.

## IV. CONCLUSION

The Institutional Investor Group has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Institutional Investor Group respectfully requests that the Court appoint Vermont Pension Investment Committee, Mashreqbank, p.s.c., Pension Trust Fund for Operating Engineers, Operating Engineers Annuity Plan, Washington State Plumbing & Pipefitting Pension Trust and Maine Public Employees Retirement System as Lead Plaintiff and approve their selection of Robbins Geller and Barroway Topaz as lead counsel.

DATED: April 2, 2010

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
SPENCER A. BURKHOLZ
THOMAS E. EGLER
DANIEL S. DROSMAN
SCOTT H. SAHAM
LAUREN G. KERKHOFF
CHRISTINA A. ROYCE
DANIELLE S. MYERS

    s/ SPENCER A. BURKHOLZ
SPENCER A. BURKHOLZ

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

514008_1

| | |
|---|---|
| 1 | |
| 2 | BARROWAY TOPAZ KESSLER<br>  MELTZER & CHECK, LLP |
| 3 | SEAN M. HANDLER<br>ANDREW L. ZIVITZ |
| 4 | SHARAN NIRMUL<br>LAUREN WAGNER PEDERSON |
| 5 | JENNIFER L. JOOST<br>280 King of Prussia Road |
| 6 | Radnor, PA  19087<br>Telephone:  610/667-7706 |
| 7 | 610/667-7056 (fax) |
| 8 | [Proposed] Co-Lead Counsel for Plaintiff |
| 9 | MILBERG LLP<br>AZRA Z. MEHDI |
| 10 | 300 South Grand Avenue, Suite 3900<br>Los Angeles, CA  90071 |
| 11 | Telephone:  213/617-1200<br>213/617-1975 (fax) |
| 12 | Additional Counsel for Plaintiff |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

514008_1

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 2, 2010.

    s/ Spencer A. Burkholz
SPENCER A. BURKHOLZ

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail:    spenceb@rgrdlaw.com

514008_1

## Mailing Information for a Case 2:10-cv-00302-MRP-MAN

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,martindale@caldwell-leslie.com,hammer@caldwell-leslie.com,pettit@caldwell-leslie.com,willingham@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie.com,wong@caldwell-leslie.com,wilson@caldwell-leslie.com

- **Peter Young Hoon Cho**
  petercho@paulhastings.com

- **David C Codell**
  codell@caldwell-leslie.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com

- **Penelope A Graboys Blair**
  pgraboysblair@orrick.com,jcopoulos@orrick.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com

- **Jeffrey M Hammer**
  hammer@caldwell-leslie.com

- **Jennifer L Joost**
  jjoost@btkmc.com,acashwell@btkmc.com,mswift@btkmc.com

- **Lauren G Kerkhoff**
  lkerkhoff@rgrdlaw.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Jennifer Y Lai**
  jennifer@21orgpartners.com

- **Jennifer B Luz**
  jluz@goodwinprocter.com

- **Alexander K Mircheff**
  amircheff@gibsondunn.com

- **Sharan Nirmul**
  snirmul@btkmc.com,azivitz@btkmc.com,ecf_filings@btkmc.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com

- **Lauren Wagner Pederson**

    lpederson@btkmc.com,neena.verma@btkmc.com,dpotts@btkmc.com

- **Lindsay R Pennington**
  lpennington@gibsondunn.com

- **Christina A Royce**
  croyce@rgrdlaw.com

- **Scott H Saham**
  scotts@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com

- **Michael D Torpey**
  mtorpey@orrick.com

- **Michael C Tu**
  mtu@orrick.com,fphan@orrick.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,sasmith@goodwinprocter.com,monyeagbako@goodwinprocter.com,cburgos@goodwinprocter.com

- **Andrew L Zivitz**
  azivitz@btkmc.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)