LINKS: 77, 78, 83, 86

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated**<br><br>**Plaintiff,**<br>v.<br><br>**COUNTRYWIDE FINANCIAL CORPORATION, et al.**<br><br>**Defendants.** | Case No. 2:10-cv-00302-MRP-MANx<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL** |

## I.  INTRODUCTION

Before the Court is a putative class action alleging securities fraud pursuant to the Securities Act of 1933 on behalf of purchasers of multiple separate offerings of various types of mortgage backed securities ("MBS") issued by subsidiaries of and special-purpose entities created by Countrywide Financial Corporation.  An identical action was filed in the Superior Court of California, County of Los Angeles, two and a half years ago, styled *Luther, et al. v. Countrywide Home Loans Servicing LP, et al.*, No. BC 380698 (hereinafter the "State Action").  After the State Action was dismissed for lack of subject matter jurisdiction, the lead plaintiffs re-filed their claims in federal court. Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA" or "Reform Act"), notice of the pendency of the action was published, and three plaintiffs, or groups of plaintiffs, have moved for appointment as lead plaintiff and for approval of their

-1-

counsel as lead counsel. Dkt. Nos. 78, 83, 86. The Court heard oral argument on the issue of appointment of lead plaintiff on May 3, 2010. For the reasons explained further below, the Court hereby **GRANTS** the motion of Iowa Public Employees' Retirement System ("Iowa PERS") to serve as lead plaintiff in this action. Dkt. No. 78. Furthermore, the Court appoints Iowa PERS' choice of counsel, the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), as lead counsel for the putative class and the law firm of Glancy Binkow & Goldberg ("Glancy Binkow") as liaison counsel.

## II. HISTORY OF THE LITIGATION

On November 14, 2007, David H. Luther filed an action in the Superior Court of California, County of Los Angeles, on behalf of holders of "Mortgage Pass-Through Certificates" issued by a Countrywide Financial Corporation subsidiary called "CWALT." The claims were brought against Countrywide Home Loans Servicing LP, CWALT, Inc., several series of Alternative Loan Trusts, several underwriters and individuals currently or formerly affiliated with Countrywide Financial Corporation or its subsidiaries (collectively, "State Action Defendants"). The Complaint alleged that the offering documents for these MBS contained misrepresentations and omissions in violation of §§11, 12(a)(2), and 15 of the Securities Act of 1933.

On December 14, 2007, State Action Defendants removed the action to federal court, claiming the Court had subject matter jurisdiction under the Class Action Fairness Act. *See* No. 07-cv-08165-MRP-MAN (C.D. Cal.), Dkt No. 1. The Court disagreed and granted Luther's motion to remand. *Id.*, Dkt No. 26. The Ninth Circuit affirmed and the case returned to state court. *Id.*, Dkt. No. 31. After remand and pursuant to the parties' stipulation, the state court consolidated the State Action with another putative class action, designated all named plaintiffs as lead plaintiffs, and appointed counsel for the two plaintiffs as co-lead counsel. Myers Decl., Ex. 1 [Superior Court Case No. BC 380698, October 6, 2008 Order]. By that time, several institutions had joined as named plaintiffs. The lead plaintiffs consisted of: David H. Luther, Washington State Plumbing & Pipefitting Pension Trust, Vermont Pension Investment Committee, Mashreqbank,

1  P.S.C., Operating Engineers Annuity Plan, Pension Trust Fund for Operating Engineers, and Maine Public Employees Retirement System.  The law firms of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Barroway Topaz Kessler Meltzer & Check LLP ("Barroway Topaz") were appointed co-lead counsel.[1]  *See id.*

The State Action Defendants then raised a further objection to the state court's jurisdiction, this time under the Securities Litigation Uniform Standards Act ("SLUSA"). The state court, after considering the issue, stayed the State Action and "ordered Plaintiffs to file a similar case in federal court in order to provide the federal court the opportunity to address, in the first instance, the federal statutory/jurisdiction issue."[2] 04/19/10 Rehns Decl., Ex. A [Superior Court Case No. BC 380698, Jan. 6, 2010 Order at 2:15-18] (reciting procedural history of the case).  Consequently, Luther filed a declaratory judgment action before this Court asking the Court to declare that SLUSA did not prevent him from maintaining the action in state court.  *See Luther v. Countrywide Fin. Corp.*, No. 09-cv-06162-MRP-JWJ (C.D. Cal.), Dkt No. 1.  Reasoning that the case would serve no useful purpose within the meaning of the Declaratory Judgment Act, since the state court was equally competent to decide the issue, this Court exercised its discretion to dismiss the action.  *Luther*, 2009 WL 3271368 (C.D. Cal. Oct. 9, 2009).

Subsequently, after careful consideration, the state court dismissed the State Action for lack of subject matter jurisdiction.  04/19/10 Rehns Decl., Ex. A [Jan. 6, 2010 Order at 9:10-13].  Luther appealed the jurisdictional issue, which is still pending in state court.  A week after the State Action was dismissed, the State Action lead plaintiffs— with the exception of plaintiff David H. Luther—filed a complaint in this Court, essentially bringing the State Action to federal court.[3]  Like the State Action, the new

---

[1] At the time the two firms were appointed as co-lead counsel, both firms had different names. Robbins Geller was formerly known as Coughlin Stoia Geller Rudman & Robbins, LLP. Barroway Topaz was formerly known as Schiffrin Barroway Topaz & Kessler LLP.

[2] When the action was removed to federal court, this Court evaluated its jurisdiction only under CAFA.  The issue of jurisdiction under SLUSA was never raised.

[3] Hereinafter, the Court will refer to this group of plaintiffs, which are represented by Robbins Geller and Barroway Topaz as the "Institutional Investor Group" or "IIG."

case is a putative class action brought against Countrywide Financial Corporation and its various subsidiaries, officers and board members, and against certain underwriters of the MBS.

Pursuant to the PSLRA, a plaintiff who files a class action in federal court under the Securities Act of 1933 must publish, within twenty days of filing, a notice advising members of the purported plaintiff class "(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. §77z-1(a)(3)(A)(i) (2010). The Institutional Investor Group published the requisite notice,[4] *see* 04/02/10 Burkholz Decl., Ex. A, and three plaintiffs moved for appointment: IIG, Iowa PERS, and the United Methodist Churches Benefit Board ("United Methodist").[5] The Court explains below its decision to appoint the Iowa PERS as lead plaintiff.

### III. APPOINTMENT OF LEAD PLAINTIFF

**A. The Legal Standard**

The PSLRA requires that within ninety days of the published notice,

> the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members . . . .

15 U.S.C. §77z-1(a)(3)(B)(i). In selecting a lead plaintiff, the court shall adopt a presumption that the most adequate plaintiff is the movant that "in the determination of

---

[4] On February 1, 2010, Robbins Geller and Barroway Topaz published notice of the pendency of their suit over Business Wire, a national business-oriented publication. 04/02/10 Burkholz Decl., Ex. A. The notice advised class members of the filing of the action and of the class period alleged. *Id*. at 2. It stated that if class members wished to serve as lead plaintiff they were required to move for appointment no later than sixty days after February 1, 2010, the date the notice was published. *Id.* at 1; *see* 15 U.S.C. §77z-1(a)(3)(A)(i) (2010).

[5] A fourth plaintiff, Putnam Bank, initially moved for appointment as lead plaintiff, Dkt. No. 77, but failed to submit further briefing and did not attend the May 3, 2010 hearing.

the court, has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(3)(B)(iii)(I). This presumption may be rebutted only upon proof by a member of the purported plaintiff class that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class; or is subject to unique defenses." 15 U.S.C. §77z-1(a)(3)(B)(iii)(II). Thus, the process of identifying a lead plaintiff in a securities fraud case is a three-step process. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).[6] The first step is for plaintiffs to publish notice. The second step is for the court to determine which proposed lead plaintiff has the largest financial interest. The third step is for the court to "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730.

The Ninth Circuit has emphasized that "the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *Id.* at 732 (emphasis in original). The PSLRA provides no formula for courts to follow in assessing which plaintiff has the largest financial interest in the relief sought by the class. However, many courts have considered, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs. *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3rd Cir. 2001).

Once a court has identified the presumptive lead plaintiff, it should appoint it lead plaintiff unless a member of the purported class can prove the presumptive lead plaintiff will not do a fair and adequate job. *In re Cavanaugh*, 306 F.3d at 732. "That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no

---

[6] *In re Cavanaugh* involved claims brought under the Securities Exchange Act of 1934 ("Exchange Act"). Because the appointment procedure under the Exchange Act is identical to that under the Securities Act of 1933, the analysis is equally applicable here.

1  consequence. So long as the plaintiff with the largest losses satisfies the typicality and
2  adequacy requirements, he is entitled to lead plaintiff status, even if the district court is
3  convinced that some other plaintiff would do a better job." *Id.*; *In re Cendant Corp.*
4  *Litig.*, 264 F.3d at 268 ("[T]he question *is not* whether another movant might do a better
5  job of protecting the interests of the class than the presumptive lead plaintiff; instead, the
6  question is whether anyone can prove that the presumptive lead plaintiff will not do a fair
7  and adequate job. . . . [T]he inquiry *is not* a relative one." (internal alterations and
8  quotation marks omitted)(emphasis in original)). Even where another lead plaintiff has
9  developed intimate knowledge of the case, drafted comprehensive complaints and
10 procured almost two dozen document preservation subpoenas, these "peripheral issues
11 cannot be the basis for elevating a particular plaintiff to lead status." *In re Leapfrog*
12 *Enters., Inc. Secs. Litig.*, No. C-03-05421-RMW, 2005 WL 3801587, *2 (N.D. Cal. Nov.
13 23, 2005).
14     With these principles in mind, the Court turns to the competing motions for
15 appointment as lead plaintiff.
16 **B. The Largest Financial Stake**
17     In *In re Cavanaugh*, the controlling Ninth Circuit precedent, the Ninth Circuit
18 measured financial stake in terms of losses allegedly suffered by the various stockholder
19 plaintiffs. The court did not decide the scope of the district court's discretion to
20 determine which plaintiff had the greatest financial interest and gave only the following
21 guidance: "To make this comparison, the district court must calculate each potential lead
22 plaintiff's financial interest in the litigation. In so doing, the court may select accounting
23 methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at
24 730 n.4.
25     In this MBS case, determining loss is not straightforward because many of the
26 securities have been retained. The value of the retained MBS at the time of the
27 commencement of this action will need to be determined on the basis of expert testimony.
28 To complicate matters further, many of the principal amounts of securities at issue are

paid down on a regular basis.  Thus, amount of loss will be a hotly contested question, no matter when it is calculated.  The few other courts that have faced this issue—i.e., determining the largest financial stake in a putative class action brought on behalf of purchasers of a set of MBS—have measured financial stake by either the amount of money expended on the securities at issue or the number of certificates purchased.  *See Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC ("Iron Workers")*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009)(comparing the number of certificates purchased by competing movants to select the lead plaintiff); *Doral Bank Puerto Rico v. Wamu Asset Acceptance Corp.*, No. C09-1557-MJP, 2010 WL 1180359, *1 (W.D. Wash. Mar. 24, 2010)(comparing expenditures); *New Jersey Carpenters Health Fund v. Structured Asset Mortg. Investments II, Inc. ("SAMI")*, Nos. 08-cv-8093-LTS, 09-cv-6172-LTS, 2009 WL 5103276, *3 (S.D.N.Y. Dec. 23, 2009)(comparing expenditures); *Gen. Retirement Sys. of Detroit v. Wells Fargo Mortg. Backed Secs. 2006-AR18 Trust*, Nos. C09-1376-SI, C09-1620-SI, 2009 WL 2137094, *8 (N.D. Cal. Jul. 16, 2009)(comparing the face value of the certificates); *Boilermakers Nat'l Annuity Trust Fund v. WaMu Mortg. Pass Through Certificates et al*, No. 09-0037-MJP (W.D. Wash.), Dkt. Nos. 79 (09/04/09 Motion), 95 (10/23/09 Order)(comparing purchases of certificates).  In fact, the parties have offered no case where the court has used a different methodology to measure financial stake in MBS.

Iowa PERS alleges it has the largest financial interest in the relief sought by this Action by virtue of its expenditure of $284,438,288.27 in purchases of the Countrywide MBS that are the subject of this lawsuit.  Goldberg Decl., Ex. B.  About $51 million of this expenditure was made in the purchase of securities that were immediately sold, on the same day as purchased.  These transactions are a "wash."  If the Court were to subtract these purchases, Iowa PERS would have expended approximately $233 million—about $30 million more than the IIG—on a face amount of $246,137,844 of MBS certificates.

1    IIG initially claimed it acquired more than $222 million worth of certificates.
2 04/02/10 Burkholz Decl., Ex. B.  In its opposition brief, IIG stated it discovered clerical
3 errors in its PSLRA certifications and submitted corrected certifications, which show an
4 expenditure of $204,910,916 to purchase a face amount of $207,787,978 of Countrywide
5 MBS.  Meyers Decl., Ex. 4; IIG Opp. Br. at 9 n.13.  United Methodist does not even
6 come close in size to the transactions of IIG and Iowa PERS, having expended only
7 $58,613,039 to purchase a face amount of $59,167,411 of Countrywide MBS.  Tse Decl.,
8 Exs. A-B.

9    IIG proposes that the Court measure financial stake by the breadth of registration
10 statements and prospectus supplements under which a plaintiff has standing to sue.  IIG
11 would prevail in that contest, purchasing under 15 registration statements—covering
12 $340 billion in issuances—and 54 of 428 prospectus supplements.  Iowa PERS would
13 come in second, purchasing under 12 registration statements—covering $318 billion in
14 issuances—and 30 of 428 prospectus supplements.  IIG contends that because of the
15 difficulty of measuring loss in a MBS case, breadth of standing is the best way to
16 measure financial stake.  A similar argument was unsuccessfully made in *SAMI, supra*,
17 where a movant argued it must be appointed as a co-lead plaintiff because it was the only
18 plaintiff that purchased the MBS of a particular issuer.  2009 WL 5103276 at *2.  The
19 district court rejected the argument because "[i]t is well established that the PSLRA lead
20 plaintiff need not have standing to assert every claim that is being raised in the litigation
21 as long as a member of the putative class has such standing."  *Id.* (citing *Hevesi v.*
22 *Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004)).  Importantly, even if none of the
23 presently named plaintiffs has standing to pursue a certain claim, the lead plaintiff may
24 seek to add new named plaintiffs in order to assert the claim.  *Hevesi*, 366 F.3d at 83.

25    Acknowledging this relevant law, IIG threatens to opt-out, to walk away from the
26 litigation, if it is not appointed lead plaintiff.  According to IIG, the putative class then
27 will be left with standing to bring suit on only half of the claims it could bring if IIG
28 remained.  May 3, 2010 Hearing Transcript, 55:09-57:12.  The theory behind choosing as

lead plaintiff the investor with the largest financial stake is that such a plaintiff will be motivated to carefully choose and monitor counsel and ensure that the interests of the class, not of its attorneys, retain primary importance in the litigation.  *See In re Razorfish, Inc. Secs. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001)(citing ELLIOTT J. WEISS & JOHN S. BECKERMAN, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 Yale L.J. 2053, 2089 (1995)).

> It is axiomatic, and the parties here do not dispute, that the lead plaintiff provisions of the PSLRA were intended to curtail the vice of "lawyer-driven" litigation, *i.e.*, lawsuits that, because of the huge potential fees available in contingent securities fraud class actions, were initiated and controlled by the lawyers and appeared to be litigated more for their benefit than for the benefit of the shareholders they ostensibly represented.

*Iron Workers*, 616 F. Supp. 2d at 463.  The transcript of the hearing on these motions creates a basis for the Court to harbor this very concern.

      The court in *SAMI* appointed as lead plaintiff the movant that had expended the greatest amount of money on the securities at issue.  2009 WL 5103276 at *3.  Here, that movant is Iowa PERS.  Iowa PERS has expended the greatest amount of money and has the largest face amount of certificates.  Accordingly, Iowa PERS is the presumptive lead plaintiff.

**C.  Typicality and Adequacy**

      As noted above, a movant must also satisfy the requirements of Rule 23 to invoke the presumption of being the "most adequate" plaintiff.  In particular, the presumptive lead plaintiff must make a *prima facie* showing of the "typicality" and "adequacy" requirements.  The inquiry is preliminary as evidence regarding the full requirements of Rule 23 will be made at a class certification hearing.  *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 666 (C.D. Cal. 2005).  Institutional investors, such as Iowa PERS, will more often than not satisfy the typicality and adequacy requirement.  *See In re Cendant*, 264 F.3d at 264.

### 1. Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The Court assesses typicality by determining whether "the circumstances of the movant . . . are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based." *In re Cendant*, 264 F.3d at 265 (internal quotations and alterations omitted). *See also* 15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(bb) (allowing statutory presumption to be rebutted where the presumptive lead plaintiff is "subject to unique defenses that render such plaintiff incapable of adequately representing the class.").

Here, the claims of Iowa PERS are typical of the claims of the members of the proposed class because the claims are based on the same legal theories and arise from the same event, practice, or course of conduct. Iowa PERS purchased Countrywide MBS pursuant to the Registration Statements and Prospectus Supplements which allegedly contained material misstatements and omissions. Iowa PERS claims to have incurred damages as a result.

### 2. Adequacy

In determining adequacy, the Court must consider whether the movant has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class. *In re Cendant*, 264 F.3d at 265. Iowa PERS will adequately represent and protect the interests of the class. It has a large financial stake in the litigation, having purchased over $200 million worth of MBS. Its interests are clearly aligned with members of the proposed class, and there is no evidence of any conflicts. In addition, the claims of Iowa PERS and the putative class share substantially similar questions of law and fact. Finally, Iowa PERS has signed a sworn certification

affirming its willingness to assume the responsibilities of class representative. Goldberg Decl., Ex. B.

### D. Rebutting the Presumptive Lead Plaintiff

The third step in determining the lead plaintiff is to afford other plaintiffs the opportunity to present evidence disputing the presumptive lead plaintiff's *prima facie* showing of typicality and adequacy. *In re Cavanaugh*, 306 F.3d at 730. IIG and United Methodist both oppose the appointment of Iowa PERS as lead plaintiff.

IIG argues Iowa PERS is inadequate because the group has been absent for the past two and a half years, while IIG has been vigorously protecting the interests of the class. IIG contends Iowa PERS does not have "a litigation plan in place to seamlessly and efficiently take the reigns [sic] from the Institutional Investor Group" and emphasizes that IIG's experience litigating the State Action over the last two and a half years makes it the best choice for lead plaintiff. IIG Reply Br. at 1. It is undisputed that IIG and its counsel have more knowledge than any other plaintiff of the claims, defenses and threshold issues in this case. Furthermore, IIG has knowledge of settlement discussions in which no other plaintiff participated. The Court also concedes that a considerable number of attorney hours have been expended by counsel for IIG. Nevertheless, the PSLRA and the Ninth Circuit are clear that the Court cannot engage in the sort of comparative analysis suggested by IIG. *See In re Leapfrog Enters., Inc. Secs. Litig.*, *supra*, at *2 (finding two years of actively prosecuting the case and an intimate knowledge of the case were "peripheral issues" that could not be the basis for elevating a particular plaintiff to lead status). The Court must appoint as lead plaintiff the plaintiff with the greatest financial stake, unless the other plaintiffs can prove it atypical or inadequate.

Neither IIG nor United Methodist has proven Iowa PERS is inadequate or atypical. Accordingly, the Court designates Iowa PERS as lead plaintiff.

## IV.  APPOINTMENT OF LEAD COUNSEL

After a court designates a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. §77z-1(a)(3)(B)(v).  Iowa PERS has selected the law firm of Cohen Milstein to represent it as lead counsel and the law firm of Glancy Binkow to serve as liaison counsel.  The Court has reviewed the resume of Cohen Milstein and is satisfied that it is capable of serving competently in the role of lead counsel.  *See* Goldberg Decl., Ex. C (Cohen Milstein resume).  The firm has extensive experience litigating large and complex securities fraud class actions, and its limited work in this case thus far demonstrates its familiarity with the applicable law.  With specific respect to MBS, Cohen Milstein is actively involved in prosecuting many other class actions premised on similar claims and theories of liability.  *See* Goldberg Decl. ¶3.  Accordingly, the Court appoints Cohen Milstein lead counsel.

The Court similarly approves of Glancy Binkow as liaison counsel.  Glancy Binkow is experienced in the prosecution of securities fraud actions on behalf of injured investors.  The Court has no doubt it will work cooperatively and diligently with Cohen Milstein to achieve the best result for the class.  *See* Goldberg Decl., Ex. D (Glancy Binkow resume).

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion of Iowa Public Employees' Retirement System for appointment as lead plaintiff and approves its selection of Cohen Milstein Sellers & Toll PLLC as lead counsel and Glancy Binkow & Goldberg as liaison counsel.  Dkt. No. 78.  Iowa PERS is directed to file a consolidated class action complaint by no later than sixty (60) days from the date of this Order.  The

1 motions filed by IIG, United Methodist, and Putnam Bank are **DENIED**.  Dkt. Nos. 77, 83, 86.

**IT IS SO ORDERED.**

DATED:  May 14, 2010

_____

Hon. Mariana R. Pfaelzer

United States District Judge