| | |
|---|---|
| 1 | WILLIAM F. SULLIVAN (SB# 78353) |
| | williamsullivan@paulhastings.com |
| 2 | JOSHUA G. HAMILTON (SB# 199610) |
| | joshuahamilton@paulhastings.com |
| 3 | PETER Y. CHO (SB# 255181) |
| | petercho@paulhastings.com |
| 4 | PAUL, HASTINGS, JANOFSKY & WALKER LLP |
| | 515 South Flower Street |
| 5 | Twenty-Fifth Floor |
| | Los Angeles, CA  90071-2228 |
| 6 | Telephone:  (213) 683-6000 |
| | Facsimile:  (213) 627-0705 |
| 7 | |
| | Attorneys for Defendants |
| 8 | *Ranjit Kripalani* and *Jennifer S. Sandefur* |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | CASE NO. 2:10-CV-00302 MRP (MANx) |
| | **DEFENDANTS RANJIT KRIPALANI AND JENNIFER S. SANDEFUR'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; COUNTRYWIDE HOME LOANS, INC.; CWALT, INC.; a Delaware corporation; CWMBS, INC., a Delaware corporation; CWABS, INC., a Delaware corporation; CWHEQ, INC., a Delaware corporation; COUNTRYWIDE CAPITAL MARKETS; COUNTRYWIDE SECURITIES CORPORATION; J.P. MORGAN SECURITIES INC.; DEUTSCHE BANK SECURITIES, INC; BEAR, STEARNS & CO., INC., et al., | Date: October 18, 2010<br>Time: 11:00 a.m.<br>Courtroom: 12<br>Judge: Hon. Mariana R. Pfaelzer<br><br>[Notice of Motion and Motion to Dismiss Filed and Served Concurrently Herewith] |
| Defendants. | |

LEGAL_US_W # 65511849.6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................... 3

    A. Allegations In The Amended Complaint ............................................. 4

    B. The Specific Offerings Underlying Plaintiffs' Claims Against Mr. Kripalani and Ms. Sandefur ........................................................... 4

III. PLAINTIFFS LACK STANDING TO ASSERT CLAIMS BASED ON SECURITIES THEY DID NOT PURCHASE ......................................... 5

IV. PLAINTIFFS' CLAIMS AGAINST MR. KRIPALANI AND MS. SANDEFUR ARE TIME-BARRED .......................................................... 7

    A. Plaintiffs' Claims Are Barred By The One-Year Statute Of Limitations Under Section 13 Of The Securities Act ........................... 7

    B. *Luther* Did Not Toll Plaintiffs' Claims Against Mr. Kripalani And Ms. Sandefur ................................................................................ 10

V. PLAINTIFFS' SECTION 15 CLAIM MUST ALSO BE DISMISSED ...... 11

VI. CONCLUSION ............................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*American Pipe & Constr. Co. v. Utah,*
    414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) .................................. 2, 10

*Batwin v. Occam Networks, Inc.,*
    No. CV 07-2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008) ....................... 12

*Crown Cork & Seal Co., Inc. v. Parker,*
    462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) .................................... 9

*GVA Mkt. Neutral Master Ltd. v. Veras Capital Partners Offshore Fund Ltd.,*
    580 F. Supp. 2d 321, 329 (S.D.N.Y. 2008) ..................................................... 9

*Howard v. Everex Sys., Inc.,*
    228 F.3d 1057 (9th Cir. 2000) ........................................................................ 12

*In re Am. Funds Secs. Litig.,*
    556 F. Supp. 2d 1100 (C.D. Cal. 2008) ........................................................... 9

*In re Colonial Ltd. P'ship Litig.,*
    854 F. Supp. 64 (D. Conn. 1994) ................................................................... 10

*In re Countrywide Fin. Corp. Sec. Litig.,*
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................................... 6

*In re Downey Sec. Litig.,*
    No. CV08-3261, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ................. 3, 12

*In re Exodus Commc'ns, Inc. Secs. Litig.,*
    No. C 01-2661-MMC, 2005 WL 1869289 (N.D. Cal. Aug. 5, 2005) ............. 11

*In re IndyMac Mortgage-Backed Sec. Litig.,*
    No. 09 CIV. 4583, 2010 WL 2473243 (S.D.N.Y. June 21, 2010) ........ 2, 5, 7, 9

*In re Infonet Servs. Corp. Secs. Litig.,*
    310 F. Supp. 2d 1106 (C.D. Cal. 2003) ........................................................... 8

# TABLE OF AUTHORITIES
## (Cont'd)

**Page(s)**

*In re Juniper Networks, Inc. Secs. Litig.*,
    542 F. Supp. 2d 1037 (N.D. Cal. 2008) ............................................................ 12

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
    No. C 09-01376, 2010 WL 1661534 (N.D. Cal. Apr. 22, 2010) ............... 5, 7, 10

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ............................................ 6

*Palmer v. Stassinos*,
    236 F.R.D. 460 (N.D. Cal. 2006) ...................................................................... 10

*Plumbers' Union Local No. 12 v. Nomura Asset Acceptance Corp.*,
    658 F. Supp. 2d 299 (D. Mass. 2009) ................................................................. 6

*Public Employees Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
    No. 08 CIV. 10841, 2010 WL 2175875 (S.D.N.Y. June 1, 2010) ...................... 5

*Toombs v. Leone*,
    777 F.2d 465 (9th Cir. 1985) .............................................................................. 7

*Warth v. Seldin*,
    422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ................................ 6

**STATUTES**

15 U.S.C. § 77k ........................................................................................................ 6

15 U.S.C. § 77l ....................................................................................................... 11

15 U.S.C. § 77m ....................................................................................................... 7

**RULES AND REGULATIONS**

17 C.F.R. § 229.512 ................................................................................................. 6

## I. INTRODUCTION

In their Memorandum of Points and Authorities in Support of their Motion to Dismiss, the Countrywide Defendants[1] set forth several insurmountable flaws contained in the Amended Consolidated Class Action Complaint ("Amended Complaint" or "AC"), each of which independently warrants dismissal of all claims against all defendants in this case. Individual Defendants Ranjit Kripalani and Jennifer S. Sandefur join in and hereby expressly incorporate the Countrywide Defendants' Motion to Dismiss and all supporting papers as they relate to Counts I and III for alleged violations of the Sections 11 and 15 claims under the Securities Act of 1933 ("Securities Act") asserted against Mr. Kripalani and Ms. Sandefur.[2]

The claims against Mr. Kripalani and Ms. Sandefur should also be dismissed for reasons unique to them. Mr. Kripalani and Ms. Sandefur are only two of 38 defendants in this case. Plaintiffs have made no attempt to distinguish the claims against them from the same claims asserted against the other defendants. This Motion, however, provides the Court a step-by-step process that, by its end, clearly shows that the claims asserted against Mr. Kripalani and Ms. Sandefur are meritless and should be dismissed.

First, Plaintiffs lack standing with respect to the vast majority of the mortgage-backed securities ("MBS") offerings they challenge. Plaintiffs indiscriminately lump together and seek to assert claims based on 427 offerings traceable to nineteen registration statements.[3] The only basis for Section 11

---

[1] The "Countrywide Defendants" include Countrywide Financial Corporation ("CFC"), Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., CWABS, Inc., CWHEQ, Inc., Countrywide Capital Markets, Countrywide Securities Corporation, and N. Joshua Adler.

[2] Mr. Kripalani and Ms. Sandefur also join and incorporate herein the Motions to Dismiss and all supporting papers filed by the other Defendants to the extent they relate to Counts I and III of the Amended Complaint.

[3] As discussed in greater detail below, an offering pursuant to a prospectus supplement is "traceable" to a particular shelf registration statement when the securities being sold in the offering were registered initially in that shelf registration statement.

liability as to Mr. Kripalani and Ms. Sandefur is their signature on those registration statements, and only 64 of the 427 offerings are traceable to the four registration statements actually signed by Mr. Kripalani and Ms. Sandefur.  While Plaintiffs challenge 427 offerings and assert claims without regard to actual liability, Plaintiffs purchased securities in only seven specific offerings traceable to registration statements signed by Mr. Kripalani and Ms. Sandefur.  It is well-settled that Plaintiffs simply do not have standing to assert claims with respect to securities they never purchased.  *See In re IndyMac Mortgage-Backed Sec. Litig.*, No. 09 CIV. 4583, 2010 WL 2473243, at *3 (S.D.N.Y. June 21, 2010) ("named plaintiffs have standing only with respect to the offerings in which they purchased securities").  Ultimately, Plaintiffs' Section 11 claim against Mr. Kripalani and Ms. Sandefur is based on only seven offerings out of 427.

Second, as to those seven offerings, the one-year statute of limitations under Section 13 has already expired.  Nearly two and half years ago, the plaintiffs who initially filed this lawsuit first brought essentially the same class action in California state court starting in November 2007.[4]  In fact, other investors filed several lawsuits against Countrywide Financial Corporation ("CFC") during that same time.  Like those other investors, Plaintiffs indisputably had inquiry, if not actual, notice of the possibility that offering documents underlying their securities purchases contained alleged misstatements and omissions more than one year before this case was first filed.  Unlike those other investors, Plaintiffs waited until 2010 to file this action.  Therefore, their claims are time-barred, and were not tolled under the doctrine set forth in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).  The one-year statute of limitations, therefore, has expired, and no Section 11 claims can lie against Mr. Kripalani and Ms.

---

[4] *See Luther v. Countrywide Home Loans Servicing LP, et al.*, Case No. BC380698 (L.A.S.C. filed Nov. 14, 2007) (Countrywide Defendants' Request for Judicial Notice in Support of their Motions to Dismiss ("CW RJN"), Ex. 25.)

Sandefur.

Finally, Plaintiffs' claim against Mr. Kripalani and Ms. Sandefur for "control person" liability under Section 15 of the Securities Act also fails as a matter of law. Plaintiffs cannot plead a requisite primary violation of Section 11. Moreover, Plaintiffs' control person allegations are precisely the type of sparse, boilerplate allegations deemed insufficient by courts. *See In re Downey Sec. Litig.*, No. CV08-3261, 2009 WL 2767670, at *15 (C.D. Cal. Aug. 21, 2009) ("boilerplate allegations are insufficient to state a claim for control person liability.")

In sum, Plaintiffs' case against Mr. Kripalani and Ms. Sandefur can systematically be narrowed, and ultimately dismissed at the pleading stage as follows:

**427** Total number of offerings challenged by Plaintiffs **MINUS**

**(-363)** Number of offerings **not** traceable to registration statements signed by Mr. Kripalani and Ms. Sandefur

= **64** Number of offerings traceable to registration statements signed by Mr. Kripalani and Ms. Sandefur **MINUS**

**(- 57)** Number of those offerings Plaintiffs **did not** purchase securities in

= **7** Number of those 64 offerings Plaintiffs **did** purchased securities in **MINUS**

**(- 7)** Number of those 7 offerings time-barred by the one-year statute of limitations

= **0** Number of viable claims against Mr. Kripalani and Ms. Sandefur[5]

For all these reasons, and the additional reasons contained in the Countrywide Defendants' Memorandum, Plaintiff's claims against Mr. Kripalani and Ms. Sandefur should be dismissed, with prejudice.

## II.  FACTUAL BACKGROUND

In their Memorandum, the Countrywide Defendants provide a comprehensive statement of the relevant facts of this case, which Mr. Kripalani and

---

[5] The Countrywide Defendants' Memorandum includes several additional reasons barring Plaintiffs' claims.

Ms. Sandefur join and incorporate herein.  The following summary is particularly relevant to Mr. Kripalani and Ms. Sandefur.

### A. Allegations In The Amended Complaint

Plaintiffs are four sophisticated institutional investors:  the Iowa Public Employees' Retirement System ("IPERS"), General Board of Pension and Health Benefits of the United Methodist Church ("GBPHB"), Orange County Employees' Retirement System ("OCERS"), and Oregon Public Employee Retirement System ("OPERS") (collectively, "Plaintiffs").  (AC ¶¶ 21-24.)  Plaintiffs identify nineteen registration statements at issue in this case and filed with the Securities and Exchange Commission ("SEC") from 2002 to 2007.  (Id. ¶¶ 34-37.)  Out of those nineteen registration statements, Plaintiffs' premise Mr. Kripalani and Ms. Sandefur's liability in this case entirely on their signatures on only four registration statements:  CWALT's April 24, 2007 Registration Statement (File No. 333-140962), CWMBS' April 24, 2007 Registration Statement (File No. 333-140958), CWABS' April 24, 2007 Registration Statement (File No. 333-140960), and CWHEQ's May 22, 2007 Registration Statement (File No. 333-139891).  (Id. ¶¶ 60-61.)  Plaintiffs also allege that Mr. Kripalani and Ms. Sandefur were directors of CWALT, CWMBS, CWABS, and CWHEQ (collectively, "Depositors") (Id. ¶¶ 60-61)  However, beyond these limited allegations, Plaintiffs do not allege anything further regarding Mr. Kripalani or Ms. Sandefur's roles at the Depositors.  Plaintiffs do not allege that either Mr. Kripalani or Ms. Sandefur were ever involved in the day-to-day management of the Depositors or had a special relationship with any of them.

### B. The Specific Offerings Underlying Plaintiffs' Claims Against Mr. Kripalani And Ms. Sandefur.

Plaintiffs challenge 427 separate offerings, each involving different issuing trusts, different loan pools, and different prospectus supplements with different disclosures.  (Id. ¶ 160 & Ex. A.)  However, of those 427 offerings, only 64 are


traceable to the four registration statements signed by Mr. Kripalani and Ms. Sandefur.  (*See* AC, Ex. A.)  The Amended Complaint, Certifications filed with the Amended Complaint, and earlier motions for appointment as lead plaintiff[6] establish that Plaintiffs have purchased securities in only seven of those 64 offerings:  CWHEQ 2007-E, CWHL 2007-10, CWHL 2007-16, CWL 2007-11, CWL 2007-13, CWHL 2007-13, and CWHL 2007-HY5.  (Id. ¶¶ 21-24.)  These seven offerings are traceable to only three of the four registration statements signed by Mr. Kripalani and Ms. Sandefur; Plaintiffs did not purchase any securities pursuant to CWALT's April 24, 2007 Registration Statement (File No. 333-140962).  (Id.)  Stripped of its camouflage, Plaintiffs' claims against Mr. Kripalani and Ms. Sandefur are limited to these seven specific offerings.

### III. PLAINTIFFS LACK STANDING TO ASSERT CLAIMS BASED ON SECURITIES THEY DID NOT PURCHASE.

The bulk of Plaintiffs' Section 11 claims against Mr. Kripalani and Ms. Sandefur fail because Plaintiffs lack standing to pursue them.  In order to have proper standing to assert claims based on particular offerings, a plaintiff must have actually purchased securities in those offerings.  In fact, in MBS class actions to date, courts that have addressed the issue of standing have confirmed this principle.  *See, e.g., In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. C 09-01376, 2010 WL 1661534, at *4 (N.D. Cal. Apr. 22, 2010) (dismissed claims based on 37 MBS offerings for lack of standing); *In re IndyMac*, 2010 WL 2473243, at *3 (holding that "named plaintiffs have standing only with respect to the offerings in which they purchased securities" and dismissing claims based on 91 offerings); *Public Employees Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, No. 08 CIV. 10841, 2010 WL 2175875, at *3 (S.D.N.Y. June 1, 2010) (dismissing claims based

---

[6] IPERS and GBPHB filed Certifications with their respective motions for appointment of lead plaintiff and counsel.  (*See* CW RJN, Exs. 31 & 32.)  OCERS and OPERS included their Certifications with the Amended Complaint.  (Id., Exs. 33 & 34.)

on 65 of 84 MBS offerings for lack of standing).

Standing is a "threshold question in every federal case" and "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197 , 45 L.Ed.2d 343 (1975). Standing under Article III of the Constitution requires "a personal stake in the outcome . . . some threatened or actual injury resulting from the putatively illegal action." *Id.* at 498-99. Without this, there is no "'case or controversy . . . within the meaning of Art. III." *Id.* Likewise, under the Securities Act, Section 11 claims are limited to "any person acquiring [the] security." 15 U.S.C. § 77k. "The [Securities] Act permits claims to be brought only by persons who purchased the securities at issue." *Plumbers' Union Local No. 12 v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 304 n.3 (D. Mass. 2009) ("[T]he named plaintiffs are incompetent to allege an injury caused by the purchase of Certificates that they themselves never purchased." *Id.* at 303.)

The securities at issue here were sold pursuant to the shelf registration process whereby an issuer files an initial shelf registration statement to register a certain amount of securities. The issuer can then sell those securities on a delayed and continuous basis by filing subsequent prospectus supplements, which are "traceable" to the initial registration statement. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1164-65 (C.D. Cal. 2008) (discussing shelf registration mechanics). The initial shelf registration statement is general in content and does not contain complete information regarding securities that have not yet been offered, backed by mortgages that may not yet exist. *See New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, 2010 WL 1172694, at *7 (S.D.N.Y. Mar. 26, 2010) ("[T]he shelf registration statements and related base prospectuses are general in content and, as Plaintiffs themselves note, the statements point investors to specific details contained in the supplements to the individual and distinct prospectus for each offering.") Prospectus supplements filed for each unique offering fill in the holes and provide detailed information tailored

specifically to securities offered therein, such as information regarding the unique pool of mortgage loans underlying the securities, the issuing trusts, and the borrowers. *See id.* Because each offering is unique and different, SEC regulations provide that each prospectus supplement, together with the initial shelf registration statement, base prospectus, and other documents incorporated by reference, constitutes a "new registration statement relating to the securities offered therein" for purposes of Section 11 liability. *See* 17 C.F.R. § 229.512.

Here, only 64 out of the 427 offerings challenged by Plaintiffs are traceable to the four shelf registration statements signed by Mr. Kripalani and Ms. Sandefur. (*See* AC, Ex. A.) Of those 64 offerings, Plaintiffs allege that they purchased securities in only seven of them. (Id. ¶¶ 21-24.) Plaintiffs therefore lack Article III and statutory standing to challenge the other 57 offerings, and all Section 11 claims premised on those 57 offerings must be dismissed.[7]

## IV. PLAINTIFFS' CLAIMS AGAINST MR. KRIPALANI AND MS. SANDEFUR ARE TIME-BARRED.

### A. Plaintiffs' Claims Are Barred By The One-Year Statute Of Limitations Under Section 13 Of The Securities Act.

With only seven offerings at issue here as to Mr. Kripalani and Ms. Sandefur, the remaining inquiry is whether Plaintiffs' claims against them are time-barred. They are, and the Section 11 claims must therefore be dismissed.

Under Section 13, Plaintiffs had to file this action within "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . ." 15 U.S.C. § 77m. To avoid dismissal, a plaintiff must "affirmatively plead sufficient facts in his complaint to demonstrate conformity with the statute of limitations." *Toombs*

---

[7] Plaintiffs who purchase securities from an offering traceable to a particular registration statement do not automatically gain standing for securities issued in other offerings traceable to that same registration statement. *See In re Wells Fargo*, 2010 WL 1661534, at *4 (dismissed claims based on 37 MBS offerings for lack of standing); *In re IndyMac*, 2010 WL 2473243, at *3 (same). Plaintiffs only have standing with respect to the offerings in which they actually purchased securities. *See id.*

*v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985).  The one-year period is triggered by either "'actual notice' – the discovery of the untrue statement or omission – or 'inquiry notice' – when discovery should have been made by the exercise of reasonable diligence." *In re Infonet Servs. Corp. Secs. Litig.*, 310 F. Supp. 2d 1106, 1113 (C.D. Cal. 2003).  Plaintiffs "need not … have fully discovered the nature and extent of the fraud before [they were] on notice that something may have been amiss. Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." *Id.* at 1119 (alterations in original) (citation omitted).

Plaintiffs' own allegations in the Amended Complaint demonstrate that Plaintiffs were on inquiry, if not actual, notice of the allegedly improper conduct by late 2007, if not earlier.  For example, in the Amended Complaint, Plaintiffs allege, among other things:

- Rating agencies revised their methodology in **July 2007** because of potentially inaccurate loan data and potential underwriting abuses (AC ¶¶ 95-96);
- "following reports of defaults in mortgage loans underlying various MBS" and downgrades of MBS, the President of the United States commissioned a working group in **August 2007** for investigation (Id. ¶ 153);
- In **June 2007**, New York Attorney General begins investigation into disclosure documents for MBS sales (Id. ¶¶ 148-152); and
- In **December 2007**, the Massachusetts Attorney General launched an investigation into Wall Street's securitization of subprime loans." (Id. ¶ 154).

These allegations constitute events that would alert a reasonable investor to the possibility of misstatements or omissions in offering documents underlying securities he or she had purchased.  *See In re Infonet*, 310 F. Supp. 2d at 1114 n.7 ("A reasonable investor is presumed to have information in the public domain, and therefore . . . is imputed with constructive knowledge of this information." (alteration in original)).  In fact, other investors did file lawsuits against

Countrywide in 2007, nearly three years before Plaintiffs filed this action. Several investors first filed the *Luther* class action on November 14, 2007, which asserted similar claims based on some of the exact same MBS offerings. That lawsuit indisputably establishes when an investor, in the exercise of reasonable diligence, could have discovered the possibility of improper conduct because several investors did, in fact, file suit. *See In re Am. Funds Secs. Litig.*, 556 F. Supp. 2d 1100, 1109 (C.D. Cal. 2008) ("the very existence of the [earlier] complaint . . . is nearly dispositive evidence that there was sufficient information in the public sphere to impart inquiry notice on reasonable investors of the existence of a claim against [Countrywide] for securities law violations."); *see also GVA Mkt. Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd.*, 580 F. Supp. 2d 321, 329 (S.D.N.Y. 2008) (other similar lawsuits put plaintiff on notice). That other investors filed *Luther* in November 2007 necessarily demonstrates that actual notice arose at some point prior to November 2007.

Under any circumstances, Plaintiffs unquestionably had actual notice of any potential claims when the plaintiffs in *Luther* filed a consolidated class action complaint in October 2008 encompassing all 427 offerings at issue here. (*See* CW RJN, Ex. 28.) Plaintiffs waited and only recently filed this action in 2010, several years after they, and numerous other investors, had notice, and long after the expiration of the one-year limitations period. The statute of limitations is intended to "prevent plaintiffs from sleeping on their rights" – which is exactly what Plaintiffs are guilty of here. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Accordingly, Plaintiffs' Section 11 claim against Mr. Kripalani and Ms. Sandefur are time-barred and must be dismissed. *See In re Am. Funds*, 556 F. Supp. 2d at 1109 (dismissing entire case, including Securities Act claims, with prejudice because of statute of limitations violations where complaint in earlier lawsuit, along with other publicly-available information, was sufficient to trigger inquiry notice); *In re IndyMac*, 2010

WL 2473243, at *3 (dismissing Securities Act claim against single defendant for one-year statute of limitations violation where publicly-available report established inquiry notice).

### B. *Luther* Did Not Toll Plaintiffs' Claims Against Mr. Kripalani And Ms. Sandefur.

Having shown that Plaintiffs' untimely claims against Mr. Kripalani and Ms. Sandefur are absolutely time-barred, Plaintiffs could only save their claims if they were tolled by the *Luther* state court action. They weren't.

Class action tolling under *American Pipe* by virtue of *Luther* would not be available in this case to salvage Plaintiffs' time-barred claims against Mr. Kripalani and Ms. Sandefur.[8] Class action tolling is strictly limited only to those claims that the *Luther* plaintiffs had standing to assert themselves. *See, e.g., Palmer v. Stassinos*, 236 F.R.D. 460, 464-66 (N.D. Cal. 2006) ("[I]t would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed because the claimant had no power to bring it."); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original plaintiffs lacked standing to bring their claims in the first place, the filing of a class action complaint does not toll the statute of limitations for other members of the purported class.")

Because the plaintiffs in *Luther* did not purchase any securities in the seven offerings at issue, tolling is not available. As discussed above, for Section 11 claims based on the purchase of MBS, plaintiffs have standing only with respect to specific offerings in which they actually purchased securities. *In re Wells Fargo*, 2010 WL 1661534, at *4. Here, Plaintiffs' claims against Mr. Kripalani and Ms. Sandefur are premised entirely on their purchase of securities from only seven

---

[8] As discussed in the Countrywide Defendants' Memorandum (at 26-31), the Luther class action filed in California state court did not toll the statute of limitations for Plaintiffs' claims because: (1) Plaintiffs bear the burden of alleging facts sufficient to establish tolling but have failed to do so, and (2) *American Pipe* tolling does not apply to class actions filed in state court.

offerings out of 427. However, based on Certifications filed by the *Luther* plaintiffs with their motion for appointment of lead plaintiff and counsel,[9] no plaintiff in *Luther* actually purchased any securities in any of those seven offerings. Accordingly, the *Luther* plaintiffs lacked Article III and statutory standing to bring claims premised on the seven offerings at issue here, and *Luther* did not toll Plaintiffs' claims against Mr. Kripalani and Ms. Sandefur. In the absence of tolling, claims premised on those seven offerings are time-barred under Section 13 and should be dismissed with prejudice.

## V.   PLAINTIFFS' SECTION 15 CLAIM MUST ALSO BE DISMISSED.

Plaintiffs' allegation of control person liability under Section 15 against Mr. Kripalani and Ms. Sandefur must be dismissed for several distinct reasons. As a threshold matter, secondary liability under Section 15 is premised on a primary violation of Sections 11 or 12. *See* 15 U.S.C. § 77l. Absent a primary violation of Section 11, there can be no claim for control person liability. *In re Exodus Commc'ns, Inc. Secs. Litig.*, No. C 01-2661-MMC, 2005 WL 1869289, at *44 (N.D. Cal. Aug. 5, 2005) ("[T]o plead a prima facie case under § 15 of the Securities Act, plaintiffs must likewise plead a primary violation of federal securities laws and that the defendant exercised control over the primary violator."). As discussed above and demonstrated in the Countrywide Defendants' Memorandum, there is no primary violation of Section 11.

In addition, Plaintiffs fall well short of sufficiently pleading allegations of control person liability against Mr. Kripalani and Ms. Sandefur. Plaintiffs allege that Mr. Kripalani and Ms. Sandefur were only directors of CWALT, CWMBS, CWABS, and CWHEQ. In determining whether a defendant was a control person, it is well-settled that courts require allegations concerning "the defendant's

---

[9] *See* CW RJN, Ex. 30. Plaintiff David H. Luther did not file a certification, but purchased securities traceable to two registration statements (File Nos. 333-123167 and 333-125902) different from those signed by Mr. Kripalani and Ms. Sandefur. (*See* id., Ex. 29.)

participation in the day-to-day affairs of the [primary violator] and the defendant's power to control [the primary violator's] corporate actions." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Control person liability cannot simply be premised on a defendant's position or title in a company, and courts routinely hold that "boilerplate allegations are insufficient to state a claim for control person liability." *See In re Downey Sec. Litig.*, 2009 WL 2767670, at *15 (stating that "even a CEO is not automatically a 'controlling person'" and dismissing federal control person claims with prejudice for inadequate pleading).[10]

Here, Plaintiffs provide nothing more than boilerplate allegations of generalized control. Plaintiffs impermissibly lump together Mr. Kripalani and Ms. Sandefur with other defendants and allege in conclusory fashion that the group of defendants "controlled" other groups of defendants. (AC ¶¶ 231-35.) Rather than plead, as they must, sufficient facts demonstrating Mr. Kripalani or Ms. Sandefur's alleged participation in the **day-to-day affairs** of a company or their power to control corporate actions, Plaintiffs' conclusory allegations of control rely solely on their positions as directors of the Depositors and their signatures on four registration statements.[11] Accordingly, the Court should dismiss Plaintiffs' control person claim against Mr. Kripalani and Ms. Sandefur. *See Batwin v. Occam Networks, Inc.*, No. CV 07-2750, 2008 WL 2676364, *25 (C.D. Cal. July 1, 2008) ("In the complaint, plaintiff does no more than allege that these defendants are directors, who served on the Audit Committee, and who signed Occam's SEC filings. Such allegations do not offer any indication that these defendants were involved in the day-to-day affairs of Occam, and therefore, they do not present a basis for control liability against these defendants.")

---

[10] *See also In re Juniper Networks, Inc. Secs. Litig.*, 542 F. Supp. 2d 1037, 1053 (N.D. Cal. 2008) ("A plaintiff must allege more than the defendant's position and committee membership.")

[11] Plaintiffs also allege that Ms. Sandefur served as the Senior Managing Director and Treasurer of Countrywide Home Loans, Inc. ("CHL"). (AC ¶ 61.) Plaintiffs allege nothing further with respect to Ms. Sandefur's alleged role at CHL, a separate Countrywide entity, and it has no bearing on the control person analysis.

## VI. CONCLUSION

For the foregoing reasons, Mr. Kripalani and Ms. Sandefur respectfully request that the Court dismiss with prejudice Counts I and III as alleged against them.

Dated: August 16, 2010

PAUL, HASTINGS, JANOFSKY & WALKER LLP
WILLIAM F. SULLIVAN
JOSHUA G. HAMILTON
PETER Y. CHO


By: /s/ Joshua G. Hamilton
JOSHUA G. HAMILTON

Attorneys for Defendants
*Ranjit Kripalani* and *Jennifer S. Sandefur*