| | |
|---|---|
| 1 | MICHAEL D. TORPEY (SBN 79424) |
|   | *mtorpey@orrick.com* |
| 2 | PENELOPE A. GRABOYS BLAIR (SBN 214742) |
|   | *pgraboysblair@orrick.com* |
| 3 | ORRICK, HERRINGTON & SUTCLIFFE LLP |
|   | The Orrick Building |
| 4 | 405 Howard Street |
|   | San Francisco, California 94105-2669 |
| 5 | Telephone: 415-773-5700 |
|   | Facsimile: 415-773-5759 |
| 6 | |
| 7 | MICHAEL C. TU (SBN 186793) |
|   | *mtu@orrick.com* |
|   | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 8 | 777 South Figueroa Street, Suite 3200 |
|   | Los Angeles, California 90017 |
| 9 | Telephone: 213-629-2020 |
|   | Facsimile: 213-612-2499 |

Attorneys for Defendant David Sambol

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.,<br><br>Defendants. | Case No. 10-CV-302 MRP (MANx)<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DAVID SAMBOL'S MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: October 18, 2010<br>Time: 11:00 a.m.<br>Judge: Hon. Mariana R. Pfaelzer<br>Ctrm: Courtroom 9<br>Spring Street Courthouse |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. BACKGROUND .................................................................................................2

III. PLAINTIFFS' SECTION 15 CLAIM AGAINST MR. SAMBOL MUST BE DISMISSED AS A MATTER OF LAW ...................................4

    A. Mr. Sambol Cannot Be Liable as a Control Person Because the Underlying Violation of Section 11 or 12 is Not Adequately Pled ...........................................................................................................5

    B. Plaintiffs Fail to Plead That Mr. Sambol "Controlled" Any Alleged Violation of the Securities Act .................................................6

    C. The Claim Against Mr. Sambol Is Barred by the Relevant Limitations and Repose Periods .............................................................9

    D. Plaintiffs' Claims Are Not Ripe Because They Have Not Suffered Any Cognizable Damages ......................................................13

IV. CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

**FEDERAL CASES**         **Page**

*In re Am. Funds Sec. Litig.*,
   556 F. Supp. 2d 1100 (C.D. Cal. 2008) .......................................................... 6, 10

*Am. Pipe & Constr. Co.* v. *Utah*,
   414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) ........................................ 10

*Ashcroft* v. *Iqbal*,
   ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................ 4, 6

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 17 L. Ed. 2d 929 (2007) ....................................... 4

*Belodoff* v. *Netlist, Inc.*,
   2009 WL 2777320 (C.D. Cal. Sept. 1, 2009) ....................................................... 6

*Brimo* v. *Corp. Express, Inc.*,
   229 F.3d 1135, 2000 WL 1506083 (2d Cir. 2000) ............................................. 10

*Catholic Soc. Servs., Inc.* v. *I.N.S.*,
   232 F.3d 1139 (9th Cir. 2000) ............................................................................. 11

*In re Countrywide Fin. Corp. Derivative Litig.*,
   554 F. Supp. 2d 1044 (C.D. Cal. 2008) ............................................................... 12

*Desai* v. *Gen. Growth Props., Inc.*,
   654 F. Supp. 2d 836 (N.D. Ill. 2009) .................................................................... 7

*In re Digital Island Sec. Litig.*,
   223 F. Supp. 2d 546 (D. Del. 2002) ..................................................................... 7

*Dodds* v. *Cigna Sec., Inc.*,
   12 F. 3d (2d Cir. 1993) ........................................................................................ 10

*Durham* v. *Kelly*,
   810 F.2d 1500 (9th Cir. 1987) ............................................................................ 5, 8

*In re Gap Stores Sec. Litig.*,
   457 F. Supp. 1135 (N.D. Cal. 1978) ..................................................................... 8

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1994) ..................................................................... 8

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................ 7, 9

*Howard* v. *Hui*,
   2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) ..................................................... 5

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Infonet Servs. Corp. Sec. Litig.*,
 310 F. Supp. 2d 1106 (C.D. Cal. 2003) .................................................... 9, 10

*In re Int'l Rectifier Corp. Sec. Litig.*,
 2008 WL 4555794 (C.D. Cal. May 23, 2008) ................................................. 8

*Kearns* v. *Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) .......................................................................... 5

*Kreek* v. *Wells Fargo & Co.*,
 652 F. Supp. 2d 1053 (N.D. Cal. 2009) ......................................................... 11

*Lambert* v. *Calpotrack, Inc.*,
 1996 WL 224515 (N.D. Ill. May 1, 1996) ....................................................... 7

*Madani* v. *Shell Oil Co.*,
 2008 WL 7856015 (C.D. Cal. July 11, 2008) ............................................... 11

*McFarland* v. *Memorex Corp.*,
 493 F. Supp. 631 (N.D. Cal. 1980) .................................................................. 8

*Miller* v. *Thane Int'l, Inc.*,
 __ F.3d __, 2010 WL 3081488 (9th Cir. Aug. 9, 2010) .................................. 6

*Newport* v. *Dell, Inc.*,
 2008 WL 4347311 (D. Ariz. Aug. 21, 2008) ................................................ 11

*Patel* v. *Parnes*,
 253 F.R.D. 531 (C.D. Cal. 2008) ..................................................................... 5

*Robbin* v. *Fluor Corp.*,
 835 F.2d 213 (9th Cir. 1987) .......................................................................... 11

*SEC* v. *Yuen*,
 221 F.R.D. 631 (C.D. Cal. 2004) ..................................................................... 4

*In re Splash Tech. Holdings Sec. Litig.*,
 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ................................................ 7

*In re Stac Elecs. Sec. Litig.*,
 89 F.3d 1399 (9th Cir. 1996) ............................................................................ 5

*In re Syntex Corp. Sec. Litig.*,
 855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996) ........... 10

*Toombs* v. *Leone*,
 777 F.2d 465 (9th Cir. 1985) ............................................................................ 9

*U. S. ex rel. Robinson Rancheria Citizens Council* v. *Borneo, Inc.*,
 971 F.2d 244 (9th Cir. 1992) ............................................................................ 2

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Wanetick* v. *Mel's of Modesto, Inc.*,
  811 F. Supp. 1402 (N.D. Cal. 1992) .................................................................... 7

*In re White Elec. Designs Corp. Sec. Litig.*,
  416 F. Supp. 2d 754 (D. Ariz. 2006) ................................................................... 8

## STATUTES

15 U.S.C. § 77m ........................................................................................................ 9, 12

15 U.S.C. § 77o ................................................................................................................ 5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 9(b) ........................................................................................................ 5, 9

# MEMORANDUM OF POINTS OF AUTHORITIES

## I.   INTRODUCTION

Unlike any other individual sued in plaintiffs' Amended Consolidated Class Action Complaint ("Complaint" or "AC"), defendant David Sambol is not alleged to have signed or had any involvement in the preparation of the registration statements or prospectuses underlying any of the securities that plaintiffs allege violated Sections 11 and 12 of the Securities Act.  Indeed, Mr. Sambol is not even named under either of these "primary liability" statutes – he is named only under a Section 15 "control person" claim.

Mr. Sambol has joined in the motion to dismiss of the Countrywide defendants.  As a threshold matter, plaintiffs' claim against Mr. Sambol should be dismissed because the Complaint fails to plead any primary violation on which the control person claim can be based, and the Court need go no further than the grounds raised in the Countrywide defendants' motion.  This memorandum is submitted to address several additional and important reasons that the control person claim should be dismissed with respect to Mr. Sambol.

Not only does the AC fail to plead any actionable underlying violation on which a control person claim could be premised against Mr. Sambol, but plaintiffs' boilerplate assertion that he "was a control person of the Countrywide Defendants and the Issuing Defendants" does not come close to stating a claim.  AC ¶ 67.  Rather than articulate any details regarding whom Mr. Sambol allegedly "controlled" that was a violator of Sections 11 or 12 and when he allegedly did so, the AC asserts in conclusory fashion that Mr. Sambol was simultaneously a "control person" of *ten* distinct entities *(id.)*, two of which – Bank of America Corporation and NB Holdings Corporation – are companies that plaintiffs themselves concede that Mr. Sambol *never* had any executive position with.  *See, e.g.* Complaint filed Jan. 14, 2010 (the "First Complaint") at ¶ 93 (quoting *Reuters* article titled "Countrywide's Sambol won't join Bank of America").

The plaintiffs' claim against Mr. Sambol should also be dismissed because it is untimely and unripe. Other than acknowledging that they have no Section 11 claim against him, plaintiffs' claim against Mr. Sambol is essentially the same as that which was brought in the California Superior Court in November 2007 titled *Luther v. Countrywide Home Loans Servicing LP*, Case No. BC 380698 (Cal. Super. Ct.).[1] As discussed in the Countrywide Defendants' memorandum ("Countrywide Mem."), the filing of that action is prima facie evidence that the plaintiffs were on inquiry notice of the facts underlying their claim *years* before the allowable period. Countrywide Mem. at 21 & 24. The fact that plaintiffs were on notice as of *at least* mid-2007 is further supported by a mountain of publicly-available information. Plaintiffs' claim is also unripe because they have failed to allege that they have sustained any damages attributable to Mr. Sambol.

It is difficult to discern any connection whatsoever between Mr. Sambol and the underlying MBS offerings at issue in this case, let alone facts sufficient to plead the required basis for any control person claim against him, and the Complaint offers none. He should be dismissed from this action.

## II. BACKGROUND

Mr. Sambol will not repeat the discussion in the motion to dismiss filed by the Countrywide defendants of the securitizations at issue and the numerous and detailed disclosures that accompanied them, but it is important to note that Mr. Sambol is not alleged to have prepared or signed – and did not prepare or sign – any of the registration statements that are alleged to be misleading. The Complaint's allegations are based entirely on the plaintiffs' purchase of certificates that were issued by defendants CWALT, CWMBS, CWABS and CWHEQ and were traceable to one of nineteen identified Registration Statements

---

[1] The Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U. S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

filed with the SEC. AC ¶¶ 1, 34-37. The Complaint alleges that every person whom it defines as an "Individual Defendant" signed at least two of those allegedly-misleading registration statements. AC ¶¶ 56-65. But Mr. Sambol (who is *not* defined as an "Individual Defendant") is not alleged to have signed anything. AC ¶ 67. Nor does the Complaint allege that Mr. Sambol was an officer or director of CWALT, CWMBS, CWABS or CWHEQ. *Id.* Instead, the AC merely notes his position at Countrywide Financial Corporation ("CFC") and alleges without any further elaboration that he and the Individual Defendants "controlled" the process of setting up those entities "for the purpose of facilitating the issuance of the Certificates" and that CFC's underwriting division marketed and sold the securities.[2] AC ¶ 76. These tenuous connections are the extent to which the Complaint makes any attempt to tie Mr. Sambol to the registration statements or certificates at issue.

In the First Complaint, plaintiffs pled a Section 11 claim against Mr. Sambol (along with the other individual defendants). First Complaint ¶¶ 205-33. The AC now asserts Section 11 claims against *every other individual defendant* except against Mr. Sambol. *Compare* First Complaint ¶¶ 58, 207 *with* AC ¶¶ 65, 197.[3] Prior to the First Complaint, a class action complaint was filed in California Superior Court on November 14, 2007. *See* Countrywide Defendants' Request for Judicial Notice ("RJN"), Ex. 25. Mr. Sambol was not named as a defendant in the original complaint, but was later added as a defendant in a complaint filed on June 12, 2008 by the Washington State Plumbers and Pipefitters Union. RJN, Ex. 27. The complaints were consolidated into one action and a consolidated amended complaint was filed on October 16, 2008 and alleged essentially the same claims against essentially the same parties as the AC. RJN, Ex. 28. From the inception

---

[2] Each of the "Issuing Defendants" defined in the Complaint had their own officers and Boards of Directors. *See, e.g.*, AC ¶¶ 56-64.

[3] The AC also added three other individual defendants against whom Section 11 claims were asserted.

                                       10-CV-302 MRP (MANx)

of the *Luther* litigation, Mr. Sambol and his co-defendants have argued that the claims belonged in federal court rather than state court, a position that the *Luther* plaintiffs opposed and fought very hard, resulting in a number of motions that were not resolved until January 6, 2010 when the Superior Court agreed with defendants and held that it lacked jurisdiction over the claims. RJN, Ex. 38. That Order has been appealed by plaintiffs to the California Court of Appeal.

### III. PLAINTIFFS' SECTION 15 CLAIM AGAINST MR. SAMBOL MUST BE DISMISSED AS A MATTER OF LAW

The plaintiffs' claim against Mr. Sambol should be dismissed because it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 17 L. Ed. 2d 929, 949 (2007). The plaintiffs may not rely on conclusory allegations or factual allegations based on unreasonable inferences. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1954, 173 L. Ed. 2d 868 (2009) ("the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."); *SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004) (the Court "is not required to accept 'legal conclusions cast in the form of factual allegations'"). Instead, the plaintiffs must establish each element of their claim against Mr. Sambol through factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 129 S. Ct. at 1950 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Although plaintiffs' Section 15 claim against Mr. Sambol is insufficiently alleged under these well-established pleading requirements and should be dismissed under that pleading standard, it should be noted that plaintiffs' claim against him is "grounded in fraud" and therefore should also be subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *In re*

*Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996).[4]

Despite the plaintiffs' inclusion of a standard disclaimer claiming otherwise (AC ¶¶ 3, 194), the claim against Mr. Sambol is clearly grounded in fraud. The Countrywide defendants' motion identifies numerous places where the language of fraud is used in the AC. *See* Countrywide Mem. at 53-55. Each of these allegations concerns conduct allegedly undertaken by an entity which Mr. Sambol purportedly "controlled." The Court should therefore apply the heightened pleading requirements of Rule 9(b) to dismiss the Section 15 claim against Mr. Sambol (and even if it does not do so, the claim should still be dismissed under the lower, but strict pleading requirements set forth under *Iqbal* and *Twombly*). *See, e.g.*, *Howard v. Hui*, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001) (applying Rule 9(b) standard to control person claim).

### A. Mr. Sambol Cannot Be Liable as a Control Person Because The Underlying Violation of Section 11 or 12 is Not Adequately Pled

In order to establish their control person claim, plaintiffs must show: "(a) that a primary violation of the securities laws occurred and (b) that [Mr. Sambol] directly or indirectly controlled the person or entity committing the primary violation." *Patel v. Parnes*, 253 F.R.D. 531, 561 (C.D. Cal. 2008) (citing *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996)); 15 U.S.C. § 77o.[5] As set forth in the Countrywide defendants' motion to dismiss, the underlying claims alleged in the Complaint against other defendants are

---

[4] If a plaintiff bases a claim on an alleged "unified course of fraudulent conduct," then "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading … as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003)). A complaint need not use the word "fraud" in order to trigger the requirement of Rule 9(b) that a plaintiff "set forth *more* than the neutral facts necessary to identify the transaction," including the "who, what, when, where, and how of the misconduct charged." *Id.* at 1124 (emphasis in original) (citations and quotations omitted).

[5] The Ninth Circuit applies the same test for control person liability for purposes of both Section 20(a) of the Exchange Act and Section 15 of the Securities Act. *Durham v. Kelly*, 810 F.2d 1500, 1503 (9th Cir. 1987).

deficiently pled for a number of reasons. *See* Countrywide Mem. at 7-20, 49-52, 56-65. Fulsome disclosures regarding the underlying loans of each of these certificates were made, and these disclosures eviscerate any claim that the registration statements materially misstated underwriting or appraisal standards. *Id.* Because there is no underlying violation, plaintiffs' control person claim against Mr. Sambol under Section 15 fails as a matter of law. *See, e.g.*, *Belodoff v. Netlist, Inc.*, 2009 WL 2777320, at *10 (C.D. Cal. Sept. 1, 2009) (dismissing Section 15 claim for failure to plead underlying Section 11 violation); *In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d 1100, 1105 (C.D. Cal. 2008) (dismissing Section 15 claim for failure to plead underlying Section 12(a)(2) violation); *Miller v. Thane Int'l, Inc.*, __ F. 3d __, 2010 WL 3081488, at *7 (9th Cir. Aug. 9, 2010) (affirming judgment for defendants on control person claim, based on affirmative defense to Section 12(a)(2) claim).

### B. Plaintiffs Fail to Plead That Mr. Sambol "Controlled" Any Alleged Violation of the Securities Act

Even if the Complaint pled an underlying violation – which it does not – it still fails to allege any cognizable "control person" claim against Mr. Sambol. The Complaint merely alleges that Mr. Sambol "was, at relevant times, the President and COO of Defendant CFC [and that he] was a control person of the Countrywide Defendants and the Issuing Defendants." AC ¶ 67. In a statement equally devoid of any detail, the Complaint describes Mr. Sambol as "a controlling person of the Issuing Defendants … [who] had the power and influence and exercised the same to cause the Issuing Defendants to engage in [the allegedly-misleading acts]."[6] AC ¶ 233. The Complaint provides nothing beyond these

---

[6] This conclusory allegation is not entitled to a presumption of truth. *See Iqbal*, 129 S. Ct. at 1951 ("The complaint alleges that [an individual defendant] was the 'principal architect' of this invidious policy and that [a second individual defendant] was 'instrumental' in adopting and executing it. These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a … claim … [a]s such, the allegations are conclusory and not entitled to be assumed true") (internal citations omitted).

quotations to identify which entities Mr. Sambol supposedly "controlled" and when he is alleged to have done so[7] – impermissibly leaving the question of how Mr. Sambol "controlled" any alleged violation of Sections 11 or 12 entirely to the imagination of the reader. *See Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1407 (N.D. Cal. 1992) ("[A] plaintiff basing allegations on 'control person' status, must inform the defendants who they are alleged to control and what acts or status indicate such control") (citations omitted). To the extent that plaintiffs' claim is based solely on Mr. Sambol's positions at CFC, this is plainly insufficient. *Id.* ("[m]ere titles are not adequate indicators of control authority"); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561 n. 9 (D. Del. 2002) ("even a CEO is not automatically a 'controlling person'") (citing *Paracor,* 96 F.3d at 1163).[8]

This is not a curable defect – no amount of artful re-pleading could support a claim that Mr. Sambol "controlled" any of the violations alleged in the Complaint. "To establish that someone is a 'controlling person' the plaintiff must show 'that there was a relationship between the controlling and the controlled

---

[7] The Complaint quotes liberally from the complaint filed in *SEC v. Mozilo*, CV 09-3994-JFW (MANx) (C.D. Cal), a case involving fraud allegations brought under the Securities Exchange Act of 1934 rather than violations of the Securities Act, including a number of quotations referencing Mr. Sambol. AC ¶¶ 103-08. But the plaintiffs have made no allegation that Mr. Sambol committed a primary violation of the Securities Act, nor have they alleged that Mr. Sambol "controlled" any defendant named in that action. Moreover, the "mere existence of [an] investigation cannot support any inferences of wrongdoing." *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007).

[8] *Accord In re Splash Tech. Holdings Sec. Litig.*, 2000 WL 1727405, at *16 (N.D. Cal. Sept. 29, 2000) ("[t]he mere fact that [an] individual is a director of a firm is not sufficient to show he is a control person of the firm"); *Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 863 (N.D. Ill. 2009) ("where a plaintiff 'self-servingly pleads a bare legal conclusion that the … defendants were control persons,' without alleging facts other than defendants' status to support their conclusion, a count for control person liability is improperly pleaded and must be dismissed. And it is worth adding, without having to explore the full scope of today's greater pleading demands under the much-mooted *Twombly-Iqbal* dichotomy, that conclusion is certainly fortified by the teaching of those decisions."); *Lambert v. Calpotrack, Inc.*, 1996 WL 224515, at *3 (N.D. Ill. May 1, 1996) (dismissing control person claims against CFO and COO because "it is not enough to establish control by merely claiming the person occupies a position of control within an organization").

person' and that the controlling person exerted 'actual power or influence' over the controlled person." *In re White Elec. Designs Corp. Sec. Litig.*, 416 F. Supp. 2d 754, 765 (D. Ariz. 2006) (quoting *Durham v. Kelly*, 810 F.2d 1500, 1503-04 (9th Cir. 1987)).  Nowhere does the Complaint allege that Mr. Sambol:

- Was involved in the preparation of any of the nineteen Registration Statements that are alleged to contain misleading statements or omissions.
- Drafted, signed, approved, or prepared any filing that the Complaint alleges to have been misleading.
- Made or directed any of the individual or issuing defendants to make any statement that the Complaint alleges was false or misleading.

None of these facts are pled in the Complaint, and it would be improper to infer that Mr. Sambol controlled the alleged misstatements and omissions. *See In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *22 (C.D. Cal. May 23, 2008) ("aside from a boilerplate allegation, Plaintiffs have not alleged that [an individual, Executive Officer defendant] had authority over the preparation of the financial statements or press releases or conference calls containing the misleading statements … [t]hus, Plaintiffs' [control person] claim against [the Executive Officer] fails.").[9]

Judge Walter of this Court recently dismissed control person claims against three individual defendants who were not alleged to have signed any allegedly false and misleading statements, holding that the plaintiff's "boilerplate" control

---

[9] *Accord In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1242-43 (N.D. Cal. 1994) (dismissing control person claims because "status does not create a presumption of control"); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 649 (N.D. Cal. 1980) (dismissing Section 15 claim based on an individual's status as a Vice President because "titles may have more to do with ego than with authority"); *In re Gap Stores Sec. Litig.*, 457 F. Supp. 1135, 1138 (N.D. Cal. 1978) ("[i]f [defendant] is to have any liability in this action it must be because he is, in some manner, responsible for the contents" of the prospectus).

person claims were insufficient:

> . . . Plaintiff has failed to plead that the Individual Defendants exercised the requisite control for a [control person] claim. Plaintiff has alleged that '[b]y virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements . . . the Individual Defendants had the power to influence and control . . . the decision making of the Company…' However, this boilerplate allegation is insufficient to state a claim for control person liability. '[E]ven a CEO is not automatically a 'controlling person' under Section 20(a). Accordingly, this claim also will be dismissed without leave to amend.

*In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1147, 1163 (C.D. Cal. 2007) (citations and parentheticals omitted). The control person claim pled against Mr. Sambol is even further unsubstantiated than the "boilerplate allegation" pled in the *Hansen* case, and this Court should dismiss the claim against Mr. Sambol.

### C. The Claim Against Mr. Sambol Is Barred by the Relevant Limitations and Repose Periods

The Section 15 claim against Mr. Sambol should also be dismissed because it is barred by the one-year limitations period and three-year repose period. *See Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985) ("In asserting a violation of [the Securities Act], the plaintiff must affirmatively plead sufficient facts in his complaint to demonstrate conformity with the statute of limitations."). Plaintiffs' claims under Sections 11 and 12(a)(2) (and the Section 15 claims based on those primary claims) must have been brought within one year of actual or inquiry (after such discovery *should have been made* by the exercise of reasonable diligence) notice. 15 U.S.C. § 77m. Inquiry notice is triggered by "any financial, legal or other data" that provide "sufficient storm warnings" of possible misleading statements or omissions. *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1113-14 (C.D. Cal. 2003).[10]

---

[10] For purposes of determining whether a plaintiff is on inquiry notice, a reasonable investor is presumed to have information that is available in the public domain. *In re Infonet Servs.*, 310 F. Supp. 2d 1106 at 1120-21 (dismissing

The filing of the nearly identical *Luther* complaint on November 14, 2007 is prima facie evidence that plaintiffs were on inquiry notice of the facts underlying their claim against Mr. Sambol long before the First Complaint was filed on January 14, 2010. *Luther* alleged nearly the same claims against the same defendants, and was filed by the same counsel. *Compare* RJN, Ex. 25 *with* First Complaint. Under similar circumstances, Judge Feess held that the existence of a complaint which had been filed two years prior to the complaint at issue, "clearly demonstrate[d] that sufficient information existed to provide a basis for asserting claims that [were] factually indistinguishable from those presented in the later-filed lawsuits." *In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d at 1109. Because the prior complaint alleged a "nearly identical scheme of wrongdoing against Defendants," it was held to be "nearly dispositive evidence that there was sufficient information in the public sphere to impart inquiry notice on reasonable investors of a claim against [defendant] for securities law violations." *Id.* at 1108-09.

Nor is the statute of limitations tolled during the period in which the *Luther* litigation was pending. As noted in the Countrywide defendants' brief, the tolling doctrine of *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) cannot be applied cross-jurisdictionally between state and federal cases. Countrywide Mem. at 27-31. While it is true that under some circumstances the statute of limitations for *individual* (not class action) claims will be tolled during the pendency of a federal class action claim, tolling is not allowed

---

Securities Act claims based on inquiry notice); *see also Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350-51 (2d Cir. 1993) (charging plaintiff in securities fraud case with knowledge of "storm warnings" based on warnings in prospectuses). A company's public filings are sufficient to trigger inquiry notice. *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1099 (N.D. Cal. 1994) (plaintiffs' assertions of false statements were time-barred because the information was available in the company's SEC Form 4 report), *aff'd*, 95 F.3d 922 (9th Cir. 1996). Thus, "when the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures, the question of inquiry notice may properly be resolved on a motion to dismiss." *Brimo v. Corp. Express, Inc.*, 229 F.3d 1135, 2000 WL 1506083, at *2 (2d Cir. 2000).

1  in situations where, as here, plaintiffs attempt to "piggy back" a second class
2  action after an unsuccessful first attempt. *See Kreek v. Wells Fargo & Co.*, 652 F.
3  Supp. 2d 1053, 1060 (N.D. Cal. 2009) (tolling statute of limitations for individual
4  plaintiffs but refusing to do so for class allegations); *Newport v. Dell, Inc.*, 2008
5  WL 4347311, at *6 (D. Ariz. Aug. 21, 2008) ("[a] related class action tolls the
6  statute of limitations for individual claims only, not for subsequently-filed class
7  actions"). The Ninth Circuit has held that "to extend tolling to class actions 'tests
8  the outer limits of the *American Pipe* doctrine and … falls beyond its carefully
9  crafted parameters into the range of abusive options.'" *Robbin v. Fluor Corp.*, 835
10 F.2d 213, 214 (9th Cir. 1987); *see also Madani v. Shell Oil Co.*, 2008 WL
11 7856015, at *2 (C.D. Cal. July 11, 2008) ("class action tolling is unavailable for
12 subsequent class actions").[11]

13      In any event, even if the statute of limitations were tolled dating back to the
14 commencement of the *Luther* case, plaintiffs' claim against Mr. Sambol would
15 *still* be untimely because Mr. Sambol was not named as a defendant in the *Luther*
16 litigation until June 12, 2008. RJN, Ex. 27. An abundance of publicly-available
17 information put plaintiffs on inquiry notice of the facts underlying their claim
18 against him well before June 2007. In February 2006, analysts covering
19 Countrywide were already anticipating credit quality deterioration caused by
20 slower housing price appreciation and "payment shock" for some mortgage
21 borrowers of Countrywide. RJN, Ex. 39 at 4. By late 2006 and early 2007, the
22 public was well-informed of Countrywide's problems, including accelerating
23 credit deterioration and rising delinquencies and foreclosures attributed in part to

---

[11] The Ninth Circuit has recognized an exception to the rule stated in *Robbin* in *Catholic Soc. Servs., Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000). That exception, however, has been applied very narrowly. *See, e.g., Madani,* 2008 WL 7865015, at *2 ("The court in [*Catholic Social Services*] merely extended tolling to a subsequent class action filed to cure a deficiency created when Congress enacted a new statute while an appeal was pending."); *Kreek,* 652 F. Supp. 2d at 1061 (discussing *Catholic Social Services* and noting that "[t]he Ninth Circuit, however, re-affirmed *Robbin*").

"the marked deterioration in underwriting standards." RJN, Ex. 40 at 2; *see also* Ex. 41 at 3-5; Ex. 42 at 1, 5; Ex. 43 at 2. On April 26, 2007, on Countrywide's First Quarter Earnings Conference Call, the Company disclosed weakening housing prices and increased foreclosures and defaults. RJN, Ex. 44. Specifically, Countrywide's Chief Risk Officer, John McMurray, stated that Countrywide had increased its default expectations and that loan vintages as far back as 2005 and as recent as early 2007 were expected to "perform worse than what [Countrywide] originally expected . . . [as a consequence of] additional fraud and other problems across the industry with those loans." *Id*.

Indeed, this Court has previously held that "[i]ndications of weakness, such as signs of increased nonpayment or default, are 'red flags' and raise questions about both the quality of the loans being originated and the adherence to standards in the underwriting process." *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1060 (C.D. Cal. 2008). In the same opinion, this Court referenced a March 1, 2006 CFC filing and observed that "the data underlying these 'red flag' trends were fully disclosed to investors." *Id.* at 1062. Any argument that the plaintiffs were not on inquiry notice of their claim against Mr. Sambol prior to June 2007 is contradicted by the judicially-noticeable facts.[12]

### D. **Plaintiffs' Claims Are Not Ripe Because They Have Not Suffered Any Cognizable Damages**

Plaintiffs have also failed to assert that they incurred any actual loss on the certificates allegedly traceable to any entity, let alone to Mr. Sambol. They have presented no evidence whatsoever as to which, if any, of the certificates they

---

[12] Moreover, as described in more detail by the Countrywide Defendants, the Court should also dismiss the claim against Mr. Sambol with regard to the 321 offerings that were made before January 14, 2007, because of the three year absolute repose period. Countrywide Mem. at 24-26. The Securities Act states that "[i]n no event shall any such action be brought to enforce a liability created under [Section 11, or Section 12(a)(1)] of this title more than three years after the security was bona fide offered to the public, or under [Section 12(a)(2)] of this title more than three years after the sale." 15 U.S.C. § 77m.

purchased have incurred any economic loss.  Nor have plaintiffs presented any evidence that Mr. Sambol was a control person with respect to any losses or gains received on the certificates that they hold, or that he had any role as officer or director of any of the issuing entities identified in the Complaint – CWALT, CWMBS, CWABS or CWHEQ.

As described in the Countrywide Defendants' brief, the holders of the vast majority of certificates have received every monthly distribution to which they are entitled even to this day, and each of the offerings included "credit enhancement" structures and other enhancements designed to protect investors in the event that the payments generated by the underlying mortgage pool became insufficient to pay all certificate holders.  Countrywide Mem. at 14-15, 22, 41-48.  Moreover, in virtually all of the offerings, certificate holders were protected by a cushion of several underlying tranches of securities which would take losses before plaintiffs.  *Id*. at 7-11, 45, 68.  The Section 15 claim against Mr. Sambol should therefore also be dismissed because it is unripe.

## IV.   CONCLUSION

For the foregoing reasons, the Section 15 claim against Mr. Sambol should be dismissed.

Dated:  August 16, 2010        Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:   */s/ Michael C. Tu*
         Michael C. Tu

Attorneys for Defendant David Sambol