| | |
|---|---|
| 1 | SETH ARONSON (S.B. #100153) |
| | saronson@omm.com |
| 2 | MATTHEW CLOSE (S.B. #188570) |
| | mclose@omm.com |
| 3 | O'MELVENY & MYERS LLP |
| | 400 South Hope Street |
| 4 | Los Angeles, California 90071-2899 |
| | Telephone: (213) 430-6000 |
| 5 | Facsimile: (213) 430-6407 |
| 6 | *Attorneys for Defendants* |
| 7 | *Bank of America Corporation and NB Holdings Corporation* |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.,<br><br>Defendants. | Case No. 2:10-CV-00302 MRP (MAN)<br><br>**BANK OF AMERICA CORPORATION AND NB HOLDINGS CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Hearing Date: October 18, 2010<br>Time: 11:00 a.m.<br>Judge: Honorable Mariana R. Pfaelzer<br>Courtroom: Courtroom 12<br>  Spring Street Courthouse |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ....................................................................................... 3

ARGUMENT ............................................................................................................ 5

I.   THE SUCCESSOR LIABILITY CLAIM AGAINST BAC SHOULD BE DISMISSED. ................................................................................................. 5

  A.   Delaware Law Applies to Any Effort to Disregard CFC's Corporate Form. ........................................................................................ 5

  B.   The "de Facto" Merger Doctrine Does Not Apply. ............................... 7

  C.   The Amended Complaint's Allegation that BAC Is a Successor to CSC, CCM and CHL Is Conclusory. ................................................ 13

II.  THE SUCCESSOR LIABILITY CLAIM AGAINST NB IS ALSO DEFICIENT ................................................................................................... 13

CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

**Page**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......................... 13, 14

*Atchison, Topeka and Sante Fe Railway Co. v. Brown & Bryant, Inc.*, 159 F.3d 358 (9th Cir. 1998) ........................................................ 6

*Atherton v. FDIC*, 519 U.S. 213, 117 S. Ct. 666, 136 L. Ed. 2d 656 (1997) ................................................................................................................ 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................................................................................ 13

*Binder v. Bristol-Myers Squibb & Co.*, 184 F. Supp. 2d 762 (N.D. Ill. 2001) ................................................................ 8, 9

*Booking v. General Star Management Co.*, 254 F.3d 414 (2d Cir. 2001) ............................................................................................................ 12

*Case Financial Inc. v. Alden*, No. Civ. A. 1184-VCP, 2009 WL 2581873 (Del. Ch. Aug. 21, 2009) ....................................................... 10

*Fountain v. Colonial Chevrolet Co.*, C.A. Nos. 86C-JA-117, 85C-DE-88, 1988 WL 40019 (Del. Super. Apr. 13, 1988) .......................................... 9, 10

*Kalb, Voorhis & Co. v. American Finance Corp.*, 8 F.3d 130 (2d Cir. 1993) ............................................................................................................ 12

*Kamen v. Kemper Financial Services Inc.*, 500 U.S. 90, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) .......................................................................... 6

*Marenyi v. Packard Press Corp.*, No. 90 Civ. 4439 (CSH), 1994 WL 16000129 (S.D.N.Y. June 9, 1994) ................................................................ 11

*In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................................ 7, 8, 11

*Orzeck v. Englehart*, 195 A.2d 375 (Del. 1963) ....................................................... 8

*In re Syntex Corp. Securities Litigation*,
  95 F.3d 922 (9th Cir. 1996) .................................................................................. 3

*Sunnyside Development Co., L.L.C. v. OPSYS Ltd.*,
  No. C 05-0553 MHP, 2005 WL 1876106 (N.D. Cal. 2005) ................................ 7

*U.S. Fidelity & Guaranty Co. v. Petroleo Brasileiro
  S.A.-Petrobras*, No. 98 Civ. 3099 (THK), 2005 WL 289575
  (S.D.N.Y. Feb. 4, 2005) ....................................................................................... 12

*U.S. v. Bestfoods*, 524 U.S. 51, 118 S. Ct. 1876,
  141 L. Ed. 2d 43 (1998) ................................................................................... 1, 5

*U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S. Ct. 1448,
  59 L. Ed. 2d 711 (1979) ........................................................................................ 6

## OTHER AUTHORITIES

R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, BALOTTI AND
  FINKELSTEIN'S DELAWARE LAW OF CORPORATIONS AND BUSINESS
  ORGANIZATIONS § 9.3 (3d ed. 1998) ..................................................................... 8

15 WILLIAM MEAD FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE
  LAW OF PRIVATE CORPORATIONS § 7124 (perm. ed., rev. vol. 1990) ................ 11

RODMAN WARD, JR., ET AL., FOLK ON DELAWARE GENERAL
  CORPORATION LAW § 251.4 (4th ed. 2001) .......................................................... 7

Defendants BAC and NB have joined in the Countrywide Defendants' motion to dismiss the Amended Complaint[1] and write separately to address Plaintiffs' attempt to hold BAC and NB liable as successors to CFC and CHL, respectively.[2]

## PRELIMINARY STATEMENT

Red Oak Merger Corporation, a BAC subsidiary, acquired CFC more than two years ago, after CFC's alleged securities-law violations. Yet Plaintiffs seek to hold BAC vicariously liable for CFC's alleged pre-acquisition misconduct. This attempt violates the maxim "deeply ingrained in our economic and legal systems" that a parent corporation is not vicariously liable for its subsidiary's actions.[3]

This Court has already enforced that principal to dismiss a substantially identical successor liability claim against BAC in *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Financial Corp.,* No. CV 07-07097 MRP. In *Argent*, as here, the plaintiffs argued that BAC was liable as successor for CFC's alleged pre-acquisition securities-law violations. The Amended Consolidated Class Action Complaint here relies on the same theory and many of the same allegations that this Court rejected in *Argent*, namely, that BAC *de facto* merged with CFC because, among other things, (i) BAC acquired CFC through a stock-for-stock merger with a BAC subsidiary; (ii) that subsidiary

---

[1] Concurrent with filing this motion, BAC and NB filed a separate Joinder in the Countrywide Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint, which was filed August 16, 2010.

[2] "BAC" means defendant Bank of America Corporation; "NB" means defendant NB Holdings Corporation; "CFC" means Countrywide Financial Corporation; "CHL" means Countrywide Home Loans Corporation, and "Amended Complaint" means the Amended Consolidated Class Action Complaint. Unless otherwise specified, all citations are omitted and all emphasis is added.

[3] *U. S. v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876, 1884, 141 L. Ed. 2d 43, 56 (1998).

transferred CFC assets to BAC; and (iii) BAC implicitly assumed all CFC's liabilities by allegedly expressly agreeing to undertake certain specific CFC liabilities.[4]

This Court dismissed Argent's claim against BAC with prejudice under the longstanding rule that "a parent does not assume an acquired subsidiary's pre-acquisition liabilities."[5]  Even assuming the "broadest possible set of exceptions" to this longstanding rule, the Court held that the complaint failed to state a claim against BAC because:

- the complaint did not allege that BAC and CFC had "acted in bad faith to prejudice Countrywide's creditors";
- BAC did not expressly or implicitly assume liability for CFC's alleged pre-acquisition securities-law violations; and
- there was no "suggest[ion] that [BAC] has *de facto* merged with Countrywide."

The Amended Complaint suffers from the same defects and should likewise be dismissed.  Plaintiffs acknowledge that "on July 1, 2008, Defendant CFC completed a merger with Red Oak Corporation . . . , a wholly-owned subsidiary of Bank of America."  (Am. Compl. ¶ 30.)  Thus, under this Court's ruling in *Argent* and the rule "deeply ingrained" in American jurisprudence, that BAC subsidiary (Red Oak, which was subsequently renamed Countrywide Financial Corporation) maintains its independent corporate existence and remains solely responsible for CFC's alleged pre-acquisition actions.  And as in *Argent*, Plaintiffs' bid to impose liability on BAC fails because the Amended Complaint does not allege facts sufficient to invoke the *de facto* merger exception to this

---

[4] *Compare* Am. Compl. ¶ 30 to Omnibus Order at 7–9, *Argent Classic Convertible Arbitrage Fund, L.P.*, Case No. CV 07-07097 MRP (C.D. Cal. Mar. 19, 2009) ("*Argent*, slip op.") (Declaration of Matthew Close in Support of Defendants' Request for Judicial Notice of Documents in Support of Their Motion to Dismiss the Amended Consolidated Class Action Complaint ("Close Decl.") Ex. 1 at 10-12).

[5] *Argent*, slip op. at 7 (Close Decl., Ex. 1 at 10).

bedrock rule.

The claim against NB is even weaker. Aside from allegations that NB is a "successor to Defendant CHL" because NB was "used to effectuate the Bank of America–CFC merger" and purchased substantially all of CHL's assets, the Amended Complaint says nothing about NB. These conclusory allegations do not suffice to plead successor liability, and so the claim against NB must be dismissed as well.

## STATEMENT OF FACTS[6]

On January 11, 2008, CFC executed an Agreement and Plan of Merger by and between Countrywide Financial Corporation, Bank of America Corporation, and Red Oak Corporation (the "Merger Agreement"), in which CFC agreed to merge with and into Red Oak, a BAC subsidiary. That merger closed on July 1, 2008. (Am. Compl. ¶ 30.) Red Oak was then renamed Countrywide Financial Corporation, as the merger agreement required. (Countrywide Fin. Corp., Quarterly Report (Form 10-Q), at 5 (Aug. 11, 2008) ("Countrywide 10-Q") (Close Decl. Ex. 2 at 27); BAC, Registration Statement (Form S-4), at 59 (May 28, 2008) ("BAC S-4") (Close Decl. Ex. 3 at 231); *Argent*, slip op. at 1 n.1. (Close Decl. Ex. 1 at 4).) Since the merger, CFC has replaced its top management, and ceased issuing subprime loans and so-called "option-ARM" loans. (*See* BAC, Current Report (Form 8-K), Exhibit 99.1 (July 1, 2008) ("BAC Exhibit 99.1") (Close Decl. Ex. 4 at 361–63;

---

[6] To avoid repetition, BAC incorporates by reference the facts in the Factual Background section of the Countrywide Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss the Amended Consolidated Class Action Complaint, which was filed August 16, 2010. BAC's supplemental facts are drawn from (i) the Amended Complaint, and (ii) BAC's and Countrywide's SEC filings, including the Merger Agreement, which was attached as Appendix A to BAC's May 28, 2008 Form S-4 Registration Statement (Close Decl. Ex. 3). "When deciding a motion to dismiss, a court may consider the complaint and 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). Here, the Amended Complaint references both the merger between CFC and Red Oak and the asset transfer between CFC and BAC, and so the content of BAC's public filings, whose authenticity cannot be questioned, are alleged in the Amended Complaint.

Countrywide 10-Q, at 80 (Close Decl., Ex. 2 at 102).) To this day, CFC remains a separate, wholly owned subsidiary of BAC. The Amended Complaint's claims concern alleged misconduct by CFC and its subsidiaries in mortgage-backed-securities offerings that occurred between January 25, 2005, and November 29, 2007, long before CFC merged into BAC's subsidiary.

The Amended Complaint nevertheless alleges that BAC "*de facto* merged with CFC." It bases this conclusion on the following allegations:

- "The Countrywide brand was retired shortly after" BAC acquired CFC, "and currently CFC's former website redirects to the Bank of America website";
- BAC "has assumed CFC's liabilities, having paid to resolve other litigation arising from misconduct such as predatory lending allegedly committed by CFC";
- Plaintiffs rely on a BAC–Countrywide transaction that occurred after the July 2008 forward-triangular merger: "Substantially all of Countrywide's assets were transferred to [BAC] on November 7, 2008, in connection with Bank of America's other businesses and operations, along with certain of Countrywide's debt and related guarantees";
- "CFC ceased filing its own financial statements in November 2008, and instead its assets and liabilities have been included in [BAC's] financial statements";
- "[M]any of the same locations, employees, assets and business operations that were formerly CFC continue under the Bank of America Home Loans brand"; and
- "CSC, CHL and CCM likewise are now part of" BAC.

(Am. Compl. ¶ 30.) These allegations closely track Argent's asserted bases for successor liability against BAC, which included that (i) CFC transferred "substantially all" of its assets to BAC in November 2008; and (ii) BAC was "integrat[ing]" CFC's business and operations. *Argent*, slip op. at 8 (Close Decl. Ex. 1 at 11).

The Amended Complaint also asserts that NB is a "successor" to Countywide Home Loans ("CHL") based solely on an allegation that CHL sold

4

substantially all of its assets to NB on July 3, 2008.  (*Id.* ¶ 31.)  NB is a wholly-owned BAC subsidiary.  (*Id.*)  While the Amended Complaint alleges that NB is a "shell entit[y]" (*id.*), according to BAC's public filings with the Securities and Exchange Commission, NB is a beneficial owner of, among other things, Bank of America, N.A. and Banc of America Securities LLC.  (*See* Schedule 13G/A of Validus Holdings Ltd. filed on behalf of BAC on February 12, 2010 at 23 (Close Decl. Ex. 5 at 387)).

## ARGUMENT

**I.   THE SUCCESSOR LIABILITY CLAIM AGAINST BAC SHOULD BE DISMISSED.**

Black-letter corporate law holds "that a parent corporation . . . is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61.  The Amended Complaint itself recognizes that Countrywide is a wholly owned BAC subsidiary: "CFC completed a merger with Red Oak Corporation . . . , *a wholly-owned subsidiary of Bank of America*."  (Am. Compl. ¶ 30.)  Thus, as this Court held in *Argent*, BAC cannot be liable for CFC's pre-acquisition torts unless an exception to this rule applies.  *Argent,* slip op. at 7 (Close Decl. Ex. 1 at 10).  The Amended Complaint fails to allege facts that would trigger any such exception.

**A.   Delaware Law Applies to Any Effort to Disregard CFC's Corporate Form.**

In *Argent*, this Court declined to opine on the choice of law question because the complaint there did "not explain on which transactions its allegations are based," leaving BAC and the Court with "no notice as to which state's law should govern."  *Argent*, slip op. at 8 (Close Decl. Ex. 1 at 11).  The Court therefore analyzed *Argent* under "the broadest possible set of exceptions" and concluded that BAC could not be liable as CFC's successor under a *de facto* merger theory.  *Id.* at 8–9 (Close Decl. Ex. 1 at 11–12).

Here, Delaware law governs the Amended Complaint's vicarious

liability claims against BAC for CFC's alleged pre-merger misconduct. While this case arises under federal law, "simply because a federal statute is involved does not always mean that federal courts should fashion a uniform federal rule. Frequently, state rules of decision will furnish an appropriate and convenient measure of the governing federal law." *Atchison, Topeka and Sante Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358, 362 (9th Cir. 1998) (internal quotation marks, ellipses and citation omitted). The Supreme Court has explained that the "cases in which judicial creation of a special federal rule would be justified are few and restricted." *Atherton v. FDIC*, 519 U.S. 213, 218, 117 S. Ct 666, 670, 136 L. Ed. 2d 656, 664 (1997); *accord Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98, 111 S. Ct. 1711, 1717, 114 L. Ed. 2d 152, 165 (1991) ("[F]ederal courts should incorporate state law as the federal rule of decision, unless application of the particular state law in question would frustrate specific objective of the federal programs."). Thus "[b]efore a court can recognize a federal rule of decision, there must be a significant conflict between some federal policy or interest and the use of state law." *See Atchison*, 159 F.3d at 363; *accord Atherton*, 519 U.S. at 218 (holding that "a 'conflict' [between federal policy or interest and state law] is normally a 'precondition' " to recognizing uniform federal common law). Moreover, as the Supreme Court has recognized, "[t]he presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards"—such as corporate law. *Kamen*, 500 U.S. at 98 (holding that state law governed demand futility for an investment company because "[c]orporations . . . are creatures of state law"); *see also U.S. v. Kimbell Foods, Inc.,* 440 U.S. 715, 739–40, 99 S. Ct. 1448, 1464, 59 L. Ed. 2d 711, 730–31 (1979) ("In structuring financial transactions, businessmen depend on state commercial law to provide the stability essential for reliable evaluation of the risks involved. . . . [T]he prudent course is to adopt the readymade

body of state law as the federal rule of decision until Congress strikes a different accommodation.").

The Amended Complaint alleges a *de facto* merger between two Delaware corporations—BAC and CFC—based predominantly on a November 7, 2008 asset transfer from CFC to BAC. (Am. Compl. ¶ 30 ("Bank of America is a successor to Defendant CFC, having *de facto* merged with CFC. . . . Substantially all of Countrywide's assets were transferred to Bank of America on November 7, 2008.").) In assessing whether to disregard a defendant's corporate form, California federal courts look to the defendant's or its alleged successor's state of incorporation, which has the greatest interest in the dispute. *See Sunnyside Dev. Co., L.L.C. v. OPSYS Ltd.*, No. C 05-0553 MHP, 2005 WL 1876106, at *3 (N.D. Cal. 2005) (applying law of subsidiary's state of incorporation where plaintiff sought to disregard its corporate form); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1276–77 (N.D. Cal. 2000) (applying law of the state of alleged successor in interest to assess *de facto* merger claim). Here, that state for both CFC and BAC is Delaware. (Am. Compl. ¶ 26; *see also* BAC S-4 at 24 (Close Decl. Ex. 3 at 196).) In addition, the Merger Agreement between CFC and BAC selects Delaware law to govern the merger of CFC in Red Oak, which reflects their expectation that their rights and obligations would be governed by Delaware law. Accordingly, Delaware law applies to Plaintiffs' *de facto* merger claim.

### B. The "de Facto" Merger Doctrine Does Not Apply.

"Delaware courts have, except in very limited circumstances, rejected the concept of *de facto* merger." RODMAN WARD, JR., ET AL., FOLK ON DELAWARE GENERAL CORPORATION LAW § 251.4 (4th ed. 2001). Delaware law recognizes a *de facto* merger only where an asset sale (i) amounts to a merger between the purchaser and the seller; *and* (ii) was engineered to disadvantage shareholders or creditors. *McKesson*, 126 F. Supp. 2d at 1276–77 (observing that the *de facto*

merger doctrine does not apply "unless the transaction has been structured to disadvantage creditors or shareholders") (applying Delaware law); *Binder v. Bristol-Myers Squibb & Co.*, 184 F. Supp. 2d 762, 769–70 (N.D. Ill. 2001) ("In only a few instances involving sales of assets have Delaware courts applied the doctrine of *de facto* merger and only then 'for the protection of creditors or stockholders who have suffered by reason of failure to comply with the statute governing such sales.' ") (quoting R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, BALOTTI AND FINKELSTEIN'S DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS § 9.3 (3d ed. 1998)); *see also Orzeck v. Englehart*, 195 A.2d 375, 378 (Del. 1963) (observing that *de facto* merger "has been recognized in cases of sales of assets for the protection of creditors or stockholders who have suffered an injury by reason of failure to comply with the statute governing such sales").

While the Amended Complaint alleges in conclusory fashion that there was a transfer of substantially all CFC's assets to BAC in November 2008, it does not allege—as Delaware law requires—that this transaction was designed to disadvantage stockholders or creditors.  In fact, as contemporaneous public SEC filings make clear, BAC acquired these assets from CFC in exchange for valuable consideration totaling billions of dollars that included the assumption of substantial liabilities and guarantees. (BAC, Current Report (Form 8-K) (Nov. 10, 2008) (Close Decl. Ex. 6 at 399).)  Thus, as a matter of Delaware law, the Amended Complaint's *de facto* merger claim must be dismissed. *See McKesson*, 126 F. Supp. 2d at 1276–77.  This is precisely this Court's holding in *Argent*, where it found that an allegation concerning the same asset transfer—that BAC had "purchased, for consideration, 'substantially all' Countrywide assets"—was insufficient to impose successor liability on BAC. *Argent*, slip op. at 8 (Close Decl. Ex. 1 at 11).[7]

---

[7] Argent cited the same BAC November 10, 2008 8-K in its opposition to BAC's motion to dismiss. (*See* Pl.'s Opp. to Def. BAC's Mot. to Dismiss the TAC at 1, 4,

        The Amended Complaint's other *de facto* merger allegations are equally deficient:

        *Rebranding:* Retiring Countrywide's brand and redirecting its website to BAC's site (Am. Compl. ¶ 30) does not amount to a *de facto* merger because such superficial changes do not determine whether a *de facto* merger has occurred. *See Bristol-Myers Squibb*, 184 F. Supp. 2d at 771 (holding that Delaware law only recognizes a *de facto* merger where a transaction is designed to disadvantage creditors and involves "1) a transfer of all assets of the transferrer corporation to the transferee corporation, 2) payment made in stock directly to the shareholders of the transferrer corporation causing them to become shareholders in the transferee corporation, and 3) an agreement for the transferee corporation to assume all the debts and liabilities of the transferrer corporation up until the time of merger").

        *Using CFC Assets, Employees, Locations and Operations and Consolidating Financial Results:* Other events that necessarily follow from BAC's acquisition of CFC assets also fail to make out a *de facto* merger claim. *See Fountain v. Colonial Chevrolet Co.*, C.A. Nos. 86C-JA-117, 85C-DE-88, 1988 WL 40019, at *7–8 (Del. Super. Apr. 13, 1988) (concluding that defendant was not liable as successor where it stepped into asset seller's shoes and continued its operations). As this Court recognized, such activities include BAC's integration of CFC's former locations, employees, assets and business operations. *Argent*, slip op. at 8 (Close Decl. Ex. 1 at 11) (rejecting allegation that BAC "has begun 'integrating' some Countrywide operations" as insufficient to impose successor liability). Similarly, the Amended Complaint's allegation that BAC consolidated CFC's financial results into BAC's public filings is irrelevant. BAC was required to include CFC's financial results as part of BAC's consolidated financial statements once CFC became a BAC subsidiary. This provides no support for

---

*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. CV 07-07097 MRP (Feb. 05, 2009) (Close Decl. Ex. 7 at 606, 609).)

1 imposing successor liability on BAC. *See Case Fin., Inc. v. Alden*, No. Civ. A.
2 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) (holding parent
3 corporation filing "consolidated financial statements with the SEC, which include
4 [subsidiary corporation's] results" did not satisfy Delaware law's "substantial
5 burden" for disregarding the corporate form).

*Explicit Assumption of Certain Liabilities*: The Amended Complaint alleges that BAC had agreed to assume CFC's liabilities for alleged predatory lending practices (which BAC did not).[8] As this Court recognized in dismissing *Argent*, merely undertaking to pay some of an acquired subsidiary's liabilities does not imply that the acquiring company will pay *all* the subsidiary's liabilities. *Argent*, slip op. at 8 (Close Decl. Ex. 1 at 11) (dismissing successor liability claim because "[n]othing properly before the Court suggests that BofA has done more than expressly assume *some* liabilities in consideration of the acquisition" of CFC assets); *Fountain*, 1988 WL 40019, at *7–8 (holding that payment of certain liabilities did not imply that successor would pay all of its predecessor's liabilities);

---

[8] The Amended Complaint cites a newspaper article concerning the Federal Trade Commission's ("FTC") June 7, 2010 settlement with Countrywide as an example of BAC's assuming Countrywide liability. (Am. Compl. ¶ 30.) But the FTC did not settle with BAC. Rather, the FTC settled Countrywide's pre-acquisition liabilities with two former Countrywide subsidiaries. (*See* Consent Judgment & Order, Definition ¶ 9, Monetary Relief ¶ A, *Federal Trade Commission v. Countrywide Home Loans, Inc.*, Case No. 2:10-cv-04193-JFW-SS (C.D. Cal. Jun. 15, 2010) (Close Decl. Ex. 8 at 619) (" 'Defendants' shall mean BAC Home Loans Servicing and Countrywide Home Loans . . . . Defendants . . . shall pay the amount of one hundred eight million dollars ($108,000,000.00) to remedy the violations of law alleged by the FTC.").) To the extent that the Amended Complaint is referring to the settlement in *In re Countrywide Financial Corp. Securities Litigation (New York Funds)*, Lead Case No. 2:07-05295-MRP (C.D. Cal.), which does not concern predatory lending liability, BAC is not a party to that settlement, either. Rather, as this Court is well aware, the *New York Funds* plaintiffs settled pre-acquisition securities fraud claims with Countrywide Financial Corporation. (*See* Amended Stipulation & Agreement of Settlement, *In re Countrywide Fin. Corp. Sec. Litig.*, Lead Case No. 2:07-cv-05295-MRP (C.D. Cal. June 29, 2010) (Close Decl. Ex. 9 at 662) ("Countrywide shall pay . . . Six Hundred Million Dollars ($600,000,00.00) in cash . . . .").)

*see also Marenyi v. Packard Press Corp.*, No. 90 Civ. 4439 (CSH), 1994 WL 16000129, at *7 (S.D.N.Y. June 9, 1994) (citing 15 WILLIAM MEAD FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 7124 (perm. ed., rev. vol. 1990)).

\* \* \*

Plaintiffs have doubtless included these vicarious liability allegations in an effort to fit this case within the New York trial court's opinion in *MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, Index No. 602825/08 (Sup. Ct., N.Y. Co. Apr. 27, 2010) ("*MBIA*, slip op.") (Close Decl. Ex. 10), another case in which a plaintiff seeks to hold BAC liable as CFC's successor. In that case, the New York court erroneously concluded that the complaint adequately alleged a *de facto* merger between BAC and CFC. The *MBIA* court rejected this Court's well-reasoned *Argent* opinion, characterizing it as containing "little discussion" and "offer[ing] nothing . . . to follow." *Id.* at 11–12 (Close Decl. Ex. 10 at 713–14). But the court in *MBIA* simply applied New York law, not Delaware law, without an explanation for why New York law should control. The court then discussed four factors under New York *de facto* merger law, omitting any analysis of whether the *MBIA* complaint alleged that the asset transfer from CFC to BAC was engineered to harm CFC's creditors or shareholders, which is an indispensable element of a *de facto* merger claim under Delaware law. *See McKesson*, 126 F. Supp. 2d at 1276–77 (observing that an asset purchaser cannot be liable as a successor "unless the transaction has been structured to disadvantage creditors or shareholders") (applying Delaware law). The *MBIA* court was incorrect for two reasons.

*First*, the court erred in determining (implicitly, without any choice of law analysis) that New York law applied to excuse MBIA from alleging an intent to harm CFC's shareholders or creditors. A proper choice of law analysis would have required MBIA to allege such intent, whether it chose New York or Delaware law. This is because New York law could apply in *MBIA* only if there were not "an

'actual conflict' between the laws invoked by the parties." *Booking v. General Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001). If a conflict between New York law and Delaware law arose, then New York choice of law rules would require the *MBIA* court to apply Delaware law because it was CFC and BAC's state of incorporation. *See Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("The law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders."); *U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 Civ. 3099 (THK), 2005 WL 289575, at *5 (S.D.N.Y. Feb. 4, 2005) ("The question of successor liability in this proceeding . . . should be governed by the law of . . . the jurisdiction of the relevant entities' incorporation."); *see also* pp. 5–7, *supra*. Thus, in evaluating which law to apply to MBIA's *de facto* merger claim, the court had two choices: (i) apply New York law because it was identical to Delaware law (in which case New York law would require a showing of intent to disadvantage CFC's shareholders or creditors), or (ii) apply Delaware law because it differed from New York law in requiring an intent allegation and Delaware had a greater interest in the dispute. In either case, the *MBIA* court should have required an allegation that the asset transfer from CFC to BAC was engineered to harm CFC's shareholders and creditors. As in *MBIA*, that allegation is absent here.

*Second*, even if an intent allegation were not required, the *MBIA* claim should still have been dismissed because the complaint failed to satisfy the other *de facto* merger factors. For example, the court concluded that MBIA had adequately alleged that BAC had assumed CFC's "liabilities ordinarily necessary for the uninterrupted continuation" of CFC's business. *MBIA*, slip op. at 13–14 (Close Decl. Ex. 10 at 715–16). But this conclusion rested solely on an allegation (repeated in the Amended Complaint here) that BAC had retired the Countrywide brand and redirected Countrywide's website to BAC's website. *Id.* at 14 (Close Decl. Ex. 10 at 716) (observing that MBIA "establishes the factor analyzing

assumption of liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation" by asserting "that the Countrywide brand had been retired and that the 'old Countrywide website redirects customers to the mortgage and home loans section of Bank of America's website' "). Retiring brands and redirecting websites has nothing to do with assuming day-to-day liabilities. As discussed above, these steps are merely superficial changes attendant to integrating an acquired business. They provide no basis for successor liability. *See* pp. 9, *supra*. If the rule were otherwise, successor liability would be the norm rather than the rare exception. The New York court's conclusion that these allegations satisfied the *de facto* merger test, even under New York law, was wrong.

### C. The Amended Complaint's Allegation that BAC Is a Successor to CSC, CCM and CHL is Conclusory.

In paragraph 233, the Amended Complaint alleges that BAC is also a successor-in-interest to Countrywide Securities Corporation ("CSC"), Countrywide Capital Markets ("CCM") and CHL, but the Amended Complaint alleges no facts supporting this legal conclusion. (Am. Compl. ¶ 233.) Thus, any successor liability claim against BAC stemming from this allegation must be dismissed. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss.); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007) ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.").

## II. THE SUCCESSOR LIABILITY CLAIM AGAINST NB IS ALSO DEFICIENT.

The Amended Complaint seeks to tag NB with liability as CHL's successor based solely on an allegation that NB acquired certain unspecified CHL

13

BAC AND NB'S MEM. OF PTS AND
AUTHS. IN SUPPORT OF MOT. TO
DISMISS 2:10-CV-00302 MRP (MAN)

assets. (Am. Compl. ¶ 31.) As discussed above, and as this Court made clear in *Argent*, merely purchasing assets from an affiliated corporation does not impute liability to the acquiring company. *See* pp. 8, *supra; Argent*, slip op. at 7 (Close Decl. Ex. 1 at 10) ("[A] parent does not assume an acquired subsidiary's pre-acquisition liabilities, even if the parent purchases assets of the subsidiary").

The Amended Complaint also alleges in conclusory fashion that NB is a successor-in-interest to CFC, CSC and CCM. (Am. Compl. ¶ 233.) This bald allegation, without supporting facts, cannot survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.

## CONCLUSION

Plaintiffs concede that after BAC acquired CFC, CFC continues to exist as a separately-incorporated subsidiary. Thus, absent allegations that provide an exception to the "deeply ingrained" legal doctrine prohibiting plaintiffs from holding BAC liable for CFC's pre-acquisition torts, BAC cannot be liable as CFC's successor. Plaintiffs here rely on the same allegations that this Court has already rejected in denying Argent's bid to hold BAC liable for CFC's alleged wrongdoing: (i) CFC's November 2008 asset transfer to BAC, (ii) BAC's subsequent integration of CFC personnel, assets, operations and financial results into BAC, and (iii) BAC's limited assumption of specific CFC liabilities. Thus, just as in *Argent*, the Amended Complaint here fails to plead successor liability, and the claims against BAC should be dismissed.

As for NB, the Amended Complaint pleads nothing but a bald allegation that NB acquired certain CHL assets. This claim is even weaker than the Amended Complaint's allegations against BAC, and it should therefore also be dismissed.

Dated: August 20, 2010

Respectfully submitted,

SETH ARONSON
MATTHEW CLOSE
O'MELVENY & MYERS LLP

By: /s/ Matthew Close
MATTHEW CLOSE

*Attorneys for Defendants*
*Bank of America Corporation and NB*
*Holdings Corporation*

Bradley J. Butwin
Jonathan Rosenberg
William J. Sushon
O'MELVENY & MYERS LLP
Seven Times Square
New York, New York 10036
(212) 326-2000