# EXHIBIT 10

FILED: NEW YORK COUNTY CLERK 04/28/2010

NYSCEF DOC. NO. 107

INDEX NO. 602825/2008

RECEIVED NYSCEF: 04/28/2010

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **EILEEN BRANSTEN**                                          PART **3**
                                                    *Justice*

| | |
|---|---|
| **MBIA** | INDEX NO. **602825/08** |
| v. | MOTION DATE **4/20/10** |
| **COUNTRYWIDE** | MOTION SEQ. NO. _____ |
| | MOTION CAL. NO. _____ |

The following papers, numbered 1 to _____ were read on this motion for **AMEND DECISION**

|  | **PAPERS NUMBERED** |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:     Yes     X No**

Upon the foregoing papers, it is ordered that

the Decision and Order of this Court dated 1/20/10 is hereby recalled and amended on page 19 of the accompanying amended memorandum decision.

This constitutes the Decision and Order of the Court.

RECEIVED
APR 28 2010
MOTION SUPPORT OFFICE
NYS SUPREME COURT - CIVIL

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: **4-21-10**                              _____
                                                      **EILEEN BRANSTEN, J.S.C.**

Check one:     **FINAL DISPOSITION     X NON-FINAL DISPOSITION**

Check if appropriate:     ☐ **DO NOT POST**

Exhibit 10
702

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART THREE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MBIA INSURANCE CORPORATION,

              Plaintiff,

          -against-

COUNTRYWIDE HOME LOANS, INC.,
COUNTRYWIDE SECURITIES CORP., and
COUNTRYWIDE FINANCIAL CORP.,

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Index No.: 602825/08
Motion Date: 6/2/09
Motion Sequence Nos.: 008, 009

PRESENT: HON. EILEEN BRANSTEN, J.S.C.

    Motion sequence numbers 008 and 009 are consolidated for disposition. In motion sequence number 008, MBIA Insurance Corporation ("MBIA") moves, pursuant to CPLR 2214 (d), to compel production of documents and, in motion sequence number 009, defendants Countrywide Home Loans, Inc., Countrywide Securities Corp., and Countrywide Financial Corp. (collectively, "Countrywide") move, pursuant to CPLR 3103(a), 3124 and 3126, for a protective order and, pursuant to CPLR 3120, to compel production of documents.

## **BACKGROUND**

    The factual background of this matter is discussed extensively in this court's decision dated July 8, 2009 (*MBIA v Countrywide*, Sup Ct, NY County July 8, 2009, Index No. 602825/08), reference to which is made herein.

Exhibit 10
703

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*     Index No. 602825/08
                                                                                 Page 2

Countrywide Financial is engaged in mortgage lending and other real-estate finance related businesses, including mortgage banking, securities dealing and insurance underwriting (Compl at ¶ 9). Countrywide Home, which originates and services residential home mortgage loans, and Countrywide Securities, which is a registered broker-dealer and underwrites offerings of mortgage-backed securities, are both wholly owned subsidiaries of Countrywide Financial (*id.* at ¶¶ 10-11).

MBIA is a monoline insurer and provides financial guarantee insurance and other forms of credit protection to securities issuers (*id.* at ¶ 8).

From 2002 through 2007, MBIA provided credit enhancement—in the form of a guarantee of repayment of principal and interest for the residential-mortgage-backed securitization[1] ("RMBS") notes in each securitization—for a total of seventeen Countrywide securitizations of mortgage loans (*id.* at ¶¶ 30, 34). This action concerns fifteen of those seventeen securitizations underwritten between 2004 and 2007, involving home equity lines of credit and closed-end second liens (*id.* at ¶¶ 27, 34). Because the mortgages backing the

---

[1] A mortgage-backed securitization is a financial product comprising of many mortgage loans combined into a large pool that can be divided into criteria-based chunks (e.g., the individual mortgage's risk of default) and sold to investors (*see* http://www.investopedia.com/terms/s/securitization.asp).

Exhibit 10
704

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*  Index No. 602825/08
Page 3

securitizations are the only collateral supporting the RMBS, their credit quality is of critical importance to an RMBS noteholder (*id.* at ¶ 28).

For each securitization, Countrywide Home or Countrywide Servicing, a single-purpose trust that held the mortgage loans (the "Trust") and MBIA also entered into an insurance agreement (collectively, the "Insurance Agreements") which provided the terms for the issuance of an MBIA financial guaranty policy (a "Policy") that would be issued to the Trust. The Insurance Agreements included the representations and warranties and the obligations of the parties and gave MBIA the right to rely on them, to enforce their terms and to exercise remedies for any breach.

The parties have been engaged in document exchange and disputes have arisen.

MBIA, in its motion to compel discovery, seeks (1) documents relating to two securitizations beyond those upon which it brought the amended complaint; (2) loan files for any loans that have ever been thirty days delinquent; (3) data contained in electronic systems used by Countrywide in the origination, underwriting and servicing of loans; (4) documents relating to lists of appraisers from whom Countrywide refuses to accept appraisals or will only accept with a second appraisal; (5) documents, including those related to due diligence and risk assessment, related to loans not originated by Countrywide; (6) documents relating to communications with any regulator, law enforcement agency or state attorney general in connection with the loans, securitizations and trusts; (7) documents relating to Bank of

Exhibit 10
705

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*  Index No. 602825/08

Page 4

America's ("BofA") settlement with various state attorney generals; (8) documents relating to any transfer of assets or assumption of any debt securities between Countrywide and BofA; (9) documents sufficient to show all assets and liabilities as of the date of BofA's acquisition of Countrywide; (10) documents relating to due diligence provided to BofA in connection with its acquisition of Countrywide; and (11) documents relating to the compensation of Angelo Mozilo (former CEO of Countrywide) and David Sambol (former COO of Countrywide).

   Countrywide, in its motion for a protective order and to compel discovery, seeks (1) cost-shifting of discovery expenses; (2) case tracking with *Syncora v Countrywide*, Sup Ct, NY County, Index No. 650042/09; (3) a protective order relating to MBIA's motion to compel; and (4) an order compelling MBIA to respond to Countrywide's discovery demands.

   This Court heard oral argument on the motions to compel on May 14, 2009. On May 21, 2009, both parties submitted proposed interim orders, at the request of this Court, addressing issues decided on the record during the May 14, 2009 oral argument, as well as issues that required determination. The proposed orders were similar but for three central issues: the description of reports Countrywide agreed to produce, the relevance of the other seven securitizations not at issue in this action and cost-shifting. Neither proposed interim order was signed.

Exhibit 10
706

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*     Index No. 602825/08
Page 5

On July 8, 2009, this Court decided Countrywide's motion in part, dismissing the

negligent misrepresentation cause of action against all defendants and dismissing the breach

of contract, breach of the implied covenant of good faith and fair dealing and indemnification

causes of action as against Countrywide Financial and Countrywide Securities.

On August 24, 2009, MBIA filed an amended complaint.

By letters dated September 28 and September 29, 2009, MBIA and Countrywide,

respectively, submitted supplemental argument addressing the pending motions to compel

in light of the amended complaint.


## ANALYSIS

A party is entitled to full disclosure of all evidence "material and necessary in the

prosecution or defense of an action" (CPLR 3101 [a]). CPLR 3101 is to be liberally

construed to require disclosure where the matter sought will assist in trial preparation by

sharpening the issues (*Kavanagh v Ogden Allied Maint. Corp.*, 92 NY2d 952, 954 [1998]).

"The words 'material and necessary' are to be interpreted liberally to require disclosure, upon

request, of any facts bearing on the controversy which will assist preparation for trial by

sharpening the issues and reducing delay and prolixity" (*Allen v Crowell-Collier Pub. Co.*,

21 NY2d 403, 406 [1968]). Furthermore, the "test is one of usefulness and reason" (*id.*).

Exhibit 10
707

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*          Index No. 602825/08
                                                                     Page 6


However, "competing interests must always be balanced; the need for discovery must

be weighed against any special burden to be borne by the opposing party" (*Kavanagh*, 92

NY2d at 954, quoting *O'Neill v Oakgrove Constr.*, 71 NY2d 521, 529 [1988], rearg denied

72 NY2d 910 [1988]).  Furthermore, "the burden of showing that disclosure is improper is

upon the party asserting it" (*Roman Catholic Church of Good Shepherd v Tempco Systems*,

202 AD2d 257, 258 [1st Dept 1994]).


MBIA's MOTION TO COMPEL

<u>Additional Securitizations</u>

MBIA seeks  discovery related to two Countrywide securitizations[2] for which it

provided financial guaranty insurance aside from the 15 securitizations directly referenced

in the amended complaint.  MBIA asserts that this discovery is relevant "to establishing a

benchmark for comparison with the Ten Securitizations" (MBIA's Motion in Support of Its

Motion to Compel ["MBIA's Mtn In Supp"] at 12, 13).  It explains that "a comparison . . .

---

[2]In total, MBIA provided financial guaranty insurance for seventeen Countrywide
securitizations.  In the original complaint, ten of these seventeen securitizations were
included.  In the amended complaint, MBIA added five of these seventeen securitizations,
leaving the relevance of two securitizations at issue in this motion (*see* Amended Compl
at 29; *see also* Letter from Manisha M. Sheth to Chambers dated 9/28/09 [confirming that
the parties continued to dispute whether the two remaining securitizations were relevant];
Letter from Christopher J. Garvey to Chambers dated 9/29/09 [same]).

Exhibit 10
708

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*      Index No. 602825/08
Page 7

is necessary to prove whether Countrywide dramatically changed its origination, underwriting, and securitizing practices as part of its concerted campaign to increase market share" and "whether Countrywide adhered to its existing and publicly stated policies of prudent and conservative underwriting"(*id.*).

Defendants argue that the two other securitizations are irrelevant because they are not at issue in this action. Defendants' principal objection, however, concerns the cost and effort required to produce documents.

Here, regardless of whether certain underwriting practices changed, MBIA ultimately seeks relief based on allegations that Countrywide's conduct was inconsistent with its claimed underwriting practices.  Documents related to securitizations not at issue in this action are unnecessary in order for MBIA to verify whether Defendants followed their own underwriting policies.  Whether such practices were indeed followed for mortgage loans in one securitization will not be revealed by Countrywide's policies and practices for mortgage loans in other securitizations; such "benchmarking" is merely tangential to the argument here.  MBIA fails to assert a material need for discovery relating to the two additional securitizations.

Merely because discovery might be relevant does not consequently entitle MBIA to that discovery (*see Am. Express Equip. Fin. Corp v Mercado*, 34 AD3d 880, 882 [3d Dept 2006] ["While it is theoretically possible that the employer's alleged fraud, if it can be

Exhibit 10
709

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*          Index No. 602825/08
                                                                     Page 8

connected to plaintiff in some legally cognizable fashion, might ultimately support a defense

of fraudulent inducement, any discovery demands unrelated to the particular transaction at

issue are clearly irrelevant"]). Considering MBIA's deficiency in substantiating its need for

discovery in connection with securitizations not at issue in this action, the burdensome nature

of the request and the lack of relevance to the securitizations at issue, MBIA's request is

denied (*Crazytown Furniture, Inc. v Brooklyn Union Gas Co.*, 150 AD2d 420, 421 [2d Dept

1989] ["It is incumbent on the party seeking disclosure to demonstrate that the method of

discovery sought will result in the disclosure of relevant evidence or is reasonably calculated

to lead to the discovery of information bearing on the claims"]; *cf. Herbst v Bruhn*, 106

AD2d 546, 549 [2d Dept 1984] [affidavit "containing bare unsubstantiated conclusory

statements as to relevance is insufficient to establish a factual predicate for the disclosure of

the medical records of a nonparty whose personal physical condition is not in issue"]).


Loan Origination and Servicing Files That are 30-Days Delinquent

        MBIA's Requests for the Production of Documents, numbers 4 and 5 (hereinafter, the

individual requests will be referred to as "Request Number XX"), seek the production of

mortgage loan origination and servicing files for loans that were ever thirty days delinquent.

MBIA contends that those loans are relevant because a loan over thirty days past due triggers

a servicing obligation by Countrywide.

Exhibit 10
710

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*     Index No. 602825/08
                                                                Page 9

Countrywide responds that only loans that were 180-days delinquent, discharged or foreclosed are relevant in implicating insurance obligations. Those loans represent approximately 18,970 loans out of the total pool of loans backing the securitizations. Countrywide contends that it would be excessive if it were compelled to produce loan origination and servicing files that were 30-days delinquent, representing an additional 42,481 loans.

Action taken or not taken after a loan became 30-days past due is relevant to whether Countrywide performed its contractual servicing obligations. Moreover, what Countrywide knew or reasonably should have known about the quality of loans is relevant to MBIA's fraud claim.

Undoubtedly, this action will demand an immense volume of discovery. Isolated discussion of the number of pages produced or that will be produced ignores the reality that the securitizations involved billions of dollars of credit enhancement in the form of financial guarantees (Compl at ¶ 1). It is unimaginable that discovery would not be burdensome and expensive. Requests should be tapered or rejected, however, only when that imposition becomes inordinate, which Countrywide has not shown. In the absence of persuasive reasons from Countrywide against disclosure, this portion of MBIA's application is granted.

Exhibit 10
711

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*  Index No. 602825/08
Page 10

Documents Relating to Appraisers With Whom Countrywide Refuses to Accept Appraisals

MBIA's Request Number 27 seeks the production of "[a]ll documents relating to

Countrywide's Field Review List or any other list kept by Countrywide of appraisers from

whom Countrywide refuses to accept appraisals, or from whom it will accept appraisals only

if accompanied by a second appraisal" (Sheth Aff, Ex 2 at 12).

MBIA contends that this production is needed to determine whether Countrywide

engaged in the practice of using affiliated appraisers and creating incentives to those

appraisers to provide inflated values for homes.  MBIA contends that upon those facts,

Countrywide would then be able to approve loans with inflated loan-to-value ("LTV") ratios.

MBIA argues that if this was true, the facts would contradict certain representations that

appraisals were conducted by independent third-party appraisers, that the materials provided

by Countrywide were accurate, that the LTV ratios provided in the loan tapes were accurate

and that it was not aware of any reason why a borrower would not be able to repay a

mortgage loan.

Countrywide counters that lists of appraisers were used simply because some

appraisers were considered unacceptable and placed on "watch" lists.  Countrywide further

urges that the determination of whether appraisers were placed on "watch" lists was

embodied in its policy and procedures, which will be or have already been produced.

Exhibit 10
712

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*      Index No. 602825/08
                                                                            Page 11

Although MBIA's theory may bear some relevance to its case, the request is too broad
(*Konrad v 136 E. 64th St. Corp.*, 209 AD2d 228, 228 [1st Dept 1994] ["a vast categorical

demand for documents" may constitute a "new kind of abuse of the discovery device"],

quoting Siegel, 1994 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B,

CPLR [3120:4 at 48]; *see also* CPLR 3120 [a] [1] [i]).  To respond to the request,

Countrywide avers, would require it to produce all communications between its employees

and thousands of appraisers regarding consideration, determination and reconsideration of

an appraiser to be designated as "unacceptable" on the list.

MBIA bases its request on nothing more than its suspicions.  The marginal benefit

such a burdensome request may yield weighs against granting MBIA's discovery motion at

this time.  Consequently, this portion of MBIA's motion is denied (*Orix Credit Alliance, Inc.*

*v R.E. Hable Co.*, 256 AD2d 114, 116 [1st Dept 1998] [defendants should not be allowed to

use pre-trial discovery as a fishing expedition when they cannot set forth a reliable factual

basis for their suspicions]).


Documents Related to Loans not Originated by Countrywide

MBIA's Request Number 15 seeks the production of documents relating to securitized

loans not originated by Countrywide but instead acquired from external mortgage brokers

and banks (*see* Sheth Aff, Ex 2 at 22).  MBIA maintains that the request is relevant to

Exhibit 10
713

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*      Index No. 602825/08
Page 12

whether Countrywide properly conducted due diligence in underwriting the loans and whether it misrepresented the quality of the loans in the securitizations.

Countrywide responds that the request is overly broad and unduly burdensome, citing that it purchased over 48,000 loans. It urges that because 4,500 of the 19,000 loans already being produced in connection with the 180-days delinquent category and the policies and procedures used in connection with the purchase of the loans are also being produced for Request Numbers four and five, MBIA will have sufficient information to determine Countrywide's loan analysis.

MBIA alleges that many of Countrywide's acquired loans "had significant but undisclosed credit risk" that would be a violation of Countrywide's representation that the loans were originated in accordance with its underwriting guidelines (*see* Amended Compl at ¶ 136; *see also* Countrywide's Mem in Opp to Mtn to Dismiss ["Countrywide Mem in Opp"] at 14 n 15). MBIA has not alleged that every acquired loan possessed "significant but undisclosed credit risk"; yet, it requests "all documents relating to Mortgage Loans not originated by Countrywide" (Sheth Aff, Ex 2 at 9). This is overly broad.

"Ordinarily, the courts eschew pruning overbroad disclosure demands, preferring instead to strike the requests in total and leaving the propounding party to reformulate its requests" (*Gaslow v KPMG LLP*, 234 NYLJ 81, 2005 NY Misc LEXIS 3590, *4 [Sup Ct, NY County 2005], citing *Haszinger v Praver*, 12 AD3d 485 [2d Dept 2004]). Nevertheless,

Exhibit 10
714

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*         Index No. 602825/08
                                                                          Page 13

MBIA's motion to compel is denied unless it revises its request by limiting it to the one

hundred eighty and thirty days delinquent categories, and categories otherwise already agreed

to by Countrywide, in light of this Court's determination above. This limitation strikes a

balance between compelling relevant information that is unduly burdensome to produce and

information that is material and necessary.

## Documents Relating to Communications with Any Regulator, Law Enforcement Agency, or State Attorney General in Connection with the Loans, Securitizations and Trusts

MBIA's Request Number 54 seeks the production of "[a]ll documents relating to any

discussions or communications with any regulator, law enforcement agent, or state attorney

general relating to (1) the Trusts, (2) the Securitizations or (3) the Mortgage Loans, including

policies and procedures applicable to each and any proposed or enacted changes thereto"

(Sheth Aff, Ex 2 at 18). MBIA argues that the communications between Countrywide and

government regulators and law enforcement are relevant to whether Countrywide violated

applicable regulations and laws, which in turn would be a breach of certain representations

in the Transaction Documents.

Countrywide objected to the request and agreed only to produce documents relating

"specifically to the trusts, securitizations and loans at issue in this case" (Countrywide Mem

Exhibit 10
715

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*     Index No. 602825/08
                                                                 Page 14

in Opp at 14). Countrywide also claims that relevance is questionable since government

authorities found no violations of law (Countrywide Mem in Opp at 15).

Countrywide's arguments against production are unavailing. MBIA alleges that

Countrywide falsely represented in the Insurance Agreements that "no practice, procedure

or policy employed, or proposed to be employed, by the Servicer, Sponsor or Depositor in

the conduct of its business violates any law, regulation, judgment, agreement, order or decree

that, *if enforced*, could reasonably be expected to result in a Material Adverse Change to the

Servicer, Sponsor or Depositor" (Amended Complaint at ¶ 168 [b] [emphasis added]; *see*

Sheth Aff, Ex 37 at 9). Based on the representation Countrywide made in the Insurance

Agreements, there is no basis for its assertion that discovery must be limited to documents

relating only to violations specifically dealing with the trusts, securitizations and loans at

issue in this matter, nor is it of any moment if no actual violations were found. Rather, the

issue is whether a violation could cause a Material Adverse Change (as defined in the

Insurance Agreements).

However, because Countrywide's arguments against production are unavailing, it does

not necessarily follow that this portion of MBIA's motion to compel discovery must be

granted. MBIA seeks "[a]ll documents relating to any discussions or communications with

any regulator, law enforcement agent, or state attorney generals." In its present form,

MBIA's request is overly broad, as it would also include communications with regulators or

Exhibit 10
716

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*   Index No. 602825/08
Page 15

law enforcement concerning matters entirely unrelated to whether a violation, if enforced,

could reasonably cause a Material Adverse Change.  Unless it can set forth some factual

basis amounting to more than suspicion, as it has done in Request Number 63, MBIA's

request attempts to launch an uncertain search that will not be permitted (*Manley v New York*

*City Hous. Auth.*, 190 AD2d 600, 601 [1st Dept 1993]).  Accordingly, this portion of MBIA's

motion to compel is denied (*Nazario v Fromchuck*, 90 AD2d 483, 484 [2d Dept 1982] ["It

is the duty of defendant's attorney to assume the burden of serving a proper demand and it

is not for the courts to attempt correction of a palpably bad one"] [internal quotation marks

omitted]).

Documents Relating to BofA's Settlement with Various State Attorneys General

MBIA's Request Number 63 seeks from Countrywide the production of documents

relating to BofA's October 6, 2008, settlement (the "2008 BofA Settlement") with various

state attorney generals, asserting that the request is relevant to whether Countrywide

complied with representations in the Insurance Agreements.

On January 11, 2008, BofA announced that it would purchase Countrywide Financial

("Bank of America Agrees to Purchase Countrywide Financial Corp."

http://newsroom.bankofamerica.com/index.php?s=43&item=7956 [Last accessed: 6/30/09]).

On October 6, 2008, BofA "agreed to settle claims brought by state attorneys general

Exhibit 10
717

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*　　Index No. 602825/08
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 16

regarding certain risky loans originated by Countrywide Financial Corp." ("Bank of America

in Settlement Worth Over $8 Billion" http://online.wsj.com/article/

SB122325440046106461.html [Last accessed: 6/30/09]).

　　　MBIA's request is relevant and Countrywide's assertions to the contrary are

unavailing.　　If communications between Countrywide and state attorneys general

contemplated violations that, if enforced, could reasonably cause a Material Adverse Change,

then they would relate to MBIA's claim of breach of the representations in the Insurance

Agreements.  Accordingly, this portion of MBIA's motion is granted.


## Documents Relating to Any Transfer of Assets or Assumption of Any Debt Securities Between Countrywide and BofA

　　　MBIA's Request Numbers 65-72 seek the production of documents relating to the

transfer of Countrywide's assets to BofA.  MBIA maintains that documents relating to

Countrywide's transfer of liabilities and assets to BofA, any due diligence conducted by

BofA regarding Countrywide's loan-loss reserves and Countrywide's accounting of loss

reserves "may reveal the true value Countrywide assigned to the Securitizations and

underlying Mortgage Loans, as well as credit risk assessed by Countrywide to these loans"

(MBIA's Mtn in Supp of Mtn to Compel ["MBIA Mem in Supp"] at 27).

Exhibit 10
718

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*          Index No. 602825/08
                                                                     Page 17

MBIA's assertion that this discovery is necessary is unpersuasive. MBIA aims to understand the "true value" of the securitizations and, in response, Countrywide is producing documents related to its valuation methods (Request Number 18), accounting methods, policies and procedures (Request Numbers 19-21) and analytics (Request Number 31). Furthermore, MBIA's rationale that discovery is needed to test Countrywide's continuing ability to comply with its servicing obligations and "may reveal the true value Countrywide assigned to the Securitizations and underlying Mortgage Loans" simply attempts to substitute speculation for reliable substance. In addition to the marginal benefit and likelihood of harassment, the requests are overly broad, unduly burdensome and therefore denied.


## Documents relating to compensation of Angelo Mozilo and David Sambol

MBIA's Request Number 35 seeks the production of "[a]ll documents relating to the compensation of Countrywide's former executive Angelo Mozilo and former executive David Sambol, including documents relating to salary, bonus, stock options, retirement plans (including but not limited to, 401(k) plans), severance packages, and other forms of compensation" (Sheth Aff, Ex 2 at 13). MBIA asserts that the request is relevant to issues of motive and intent, such as their theory that compensation incentives motivated Mozilo and Sambol to abandon conservative lending practices and violate Countrywide's guidelines.

Exhibit 10
719

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*     Index No. 602825/08
                                                                 Page 18

Countrywide oppose the production, asserting that the requested information is publicly available in Countrywide's Securities and Exchange Commission ("SEC") filings.

MBIA has not stated a basis as to how any of this information may impact a claim or defense in this action. Furthermore, Countrywide's SEC filings provide a sufficient information regarding the compensation Messrs. Mozilo and Sambol received. Accordingly, this portion of MBIA's motion is denied.

## COUNTRYWIDE'S MOTION FOR A PROTECTIVE ORDER

### Cost-shifting

Countrywide and MBIA dispute whom must pay the costs associated with producing electronically-stored information. Countrywide argues that the cost is the responsibility of the requesting party, while MBIA argues the responsibility is that of the producing party.

*Waltzer v Tradescape & Co., L.L.C.* (31 AD3d 302 [1st Dept 2006]) and *Lipco Elec. Corp. v ASG Consulting Corp.* (4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U], *8 [Sup Ct, Nassau County 2004]) are often cited as settling the rule, relied upon by Countrywide, that the party seeking discovery should bear the cost incurred in the production of discovery material (*see e.g. T.A. Ahern Contrs. Corp. v Dormitory Auth. of N.Y.*, 2009 NY Slip Op 29125 [Sup Ct, NY County 2009]; *Matter of Maura*, 17 Misc 3d 237, 247 [Sur Ct, Nassau

Exhibit 10
720

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*          Index No. 602825/08
                                                                     Page 19

County 2007]).  However, the proposition cited stands on more precarious footing than

*Waltzer, Lipco Elec. Corp.* and Countrywide suggest.[3]

    While confirming the principle that "under the CPLR, the party seeking discovery

should bear the cost incurred in the production of discovery material," the Appellate Division

in *Waltzer* declined to follow it and, instead, distinguished its facts on the basis that (1) it did

not deal with *deleted* electronically stored material[4] and (2) the information sought was

readily available (*Waltzer*, 31 AD3d at 304 [emphasis added]).  Moreover, the Appellate

Division added that the "cost of an examination by [the producing party] to see if [material]

should not be produced due to privilege or on relevancy grounds should be borne by [the

producing party]" (*id.*).

---

[3] *See* Patrick M. Connors, *Which Party Pays the Costs of Document Disclosure?*, 29 Pace L Rev 441, 443-50 (2009) ("the two decisions relied upon by the Lipco court to support this proposition are far from definitive on such a monumental point").

[4]Courts have shown a greater willingness to allocate the cost of discovery when the request involves the recovery of deleted or archived electronic-data, especially when allocation is consented to by the producing party (*see e.g. Samide v Roman Catholic Diocese of Brooklyn*, 5 AD3d 463, 466 [2d Dept 2004] ["In accordance with the consent of the plaintiff's attorney at oral argument of this appeal, all costs related to the *recovery* of the hard drive data shall be borne solely by the plaintiff"] [emphasis added]; *see also Delta Fin. Corp. v Morrison*, 13 Misc 3d 604, 614 [Sup Ct, Nassau County 2006] [requesting party held responsible for 100% of the costs and expenses of searching through *restored backup tapes*] [emphasis added]; *see generally Etzion v Etzion*, 7 Misc 3d 940, 944-45 [Sup Ct, Nassau County 2005] [party requesting discovery directed to bear the cost of cloning or copying the hard drives of computers containing deleted business records]).

Exhibit 10
721

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*          Index No. 602825/08
                                                                                         Page 20

In *Lipco Elec. Corp.*, citing *Schroeder v Centro Pariso Tropical*, 233 AD2d 314 (2nd

Dept 1996) and *Rubin v Alamo Rent-a-Car*, 190 AD2d 661 (2nd Dept 1993), plaintiff sought

electronic discovery and defendant objected to the production, arguing , among other things,

that the cost would be substantial. The Court stated that "cost shifting of electronic discovery

is not an issue in New York since the courts have held that, under the CPLR, the party

seeking discovery should incur the costs incurred in the production of discovery material"

(2004 NY Slip Op 50967[U], at *8).

Yet the three Second Department cases above each trace back to *Rosado v*

*Mercedes-Benz of North America, Inc.*, 103 AD2d 395 (2d Dept 1984). *Rosado* supports a

much narrower holding than the cited cases imply. There, the Court dealt with whether a

party should be compelled to produce a translation of a German language document. Relying

on First Circuit precedent, the Court applied the rule that "each party should shoulder the

initial burden of financing his own suit, and based upon such a principle, it is the party

seeking discovery of documents who should pay the cost *of their translation*" (*Rosado*, 103

AD2d at 398 [interpreting CPLR 3114 as opposed to CPLR 3103] [emphasis added]).

The Appellate Division cast further doubt to the general statement of law in *Waltzer*

and *Lipco Elec. Corp.* in *Clarendon Natl. Ins. Co. v Atlantic Risk Mgt., Inc.*   There, the

Appellate Division directed plaintiff to produce all of its claims files, adding that it saw "no

reason to deviate from the general rule that, during the course of the action, each party should

Exhibit 10
722

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*     Index No. 602825/08
Page 21

bear the expenses it incurs in responding to discovery requests" (*Clarendon Natl. Ins. Co. v
Atlantic Risk Mgt., Inc.*, 59 AD3d 284, 286 [1st Dept 2009], citing *Waltzer*, 31 AD3d at 304).

Countrywide urges that *Clarendon Natl. Ins. Co.* should be viewed as an anomaly.
Far from being an anomaly, it is consistent with *Waltzer* in that application of the relevant
rule in both resulted in cost allocation determinations only when the electronically-stored
information to be produced was not readily available.  While producing readily-available
electronically-stored information (*Clarendon*—all of an insurance company's claims files;
*Waltzer*—data stored on 2 compact discs) will not warrant cost-allocation, the retrieval of
archived or deleted electronic information has been held to require such additional effort as
to warrant cost allocation (*Samide*, 5 AD3d at 466; *Delta Fin. Corp.*, 13 Misc 3d at 614;
*Etzion*, 7 Misc 3d at 944-45).  Furthermore, under CPLR 3103 (a), the lodestar in granting
a protective order granting allocation of discovery costs is the prevention of "unreasonable
annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the
courts." Hewing to this principle and the applicable case law, it is eminently reasonable to
refrain from allocating discovery costs at this juncture.

Countrywide fails to show that it is settled law that the party requesting discovery
must bear the cost of its production or that cost allocation is here warranted.  Accordingly,
Countrywide's motion for a protective order allocating the costs of discovery is denied.

Exhibit 10
723

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*    Index No. 602825/08
Page 22

COUNTRYWIDE'S MOTION TO COORDINATE DISCOVERY

Countrywide's request to coordinate the discovery in this action with the discovery

in *Syncora v Countrywide*, Sup Ct, NY County, Index No. 650042/09 was denied on the

record (*see* Tr 5/14/09).

COUNTRYWIDE'S MOTION FOR A PROTECTIVE ORDER

Countrywide's motion for a protective order duplicates its opposition to MBIA's

motion to compel and therefore is denied as moot.

COUNTRYWIDE'S MOTION TO COMPEL

Countrywide's motion to compel seeks documents relating to other securitizations for

which MBIA provided credit enhancements, including "private label" securitizations (Garvey

Aff, Ex R at ¶¶ 25-27; Garvey Aff, Ex S at ¶¶ 82-85).  Countrywide also seeks documents

related to MBIA's representation that it possessed "distinctive competency in credit risk

management" (Garvey Aff, Ex S at ¶ 88), to MBIA's decision-making process in providing

financial guaranty insurance (*id.* at ¶¶ 114-115), to its termination of certain executives (*id.*

at ¶¶ 159-160), to MBIA's municipal bond securitizations and, more generally, structured

finance transactions (*id.* at ¶¶ 161-162,168-178), to MBIA's credit rating (*id.* at ¶¶ 164-165)

Exhibit 10
724

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*        Index No. 602825/08
                                                                          Page 23

and to its knowledge concerning exposure to residential-mortgage-backed securitizations (*id.* at ¶¶ 180-181, 184-185, 187-190, 195-196).

Countrywide maintains that the requested information is relevant to two categories at issue in this case: (1) MBIA's damages claims; and (2) whether MBIA's reliance on Countrywide representations was justifiable.

Countrywide first contends that the discovery related to MBIA's damages claims is needed to defend against MBIA's allegations. Countrywide contends that the requested information may show that MBIA did not lose profits or opportunities by dealing with Countrywide because it would have otherwise dealt with other companies and lost money elsewhere. Countrywide's requests seeking discovery related to securitizations that Countrywide did not originate is irrelevant. Quoting Countrywide's own argument regarding the relevance of the securitizations not at issue in this matter: "Documents related to transactions not at issue in this matter are by definition not relevant as they do not tend to prove or disprove any fact at issue here" (Countrywide Mem in Opp at 3). Discovery related to the non-Countrywide securitizations would not tend to prove or disprove Countrywide's contention that MBIA would have suffered damage even if it did not deal with Countrywide.

Countrywide contends second that the documents it seeks will be used to show that MBIA is a sophisticated business entity and, therefore, held to a higher standard in order to demonstrate justifiable reliance. The documents sought are exceedingly broad and

Exhibit 10
725

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*       Index No. 602825/08

Page 24

unnecessary to demonstrate MBIA's sophistication—the degree of sophistication is irrelevant (*see e.g. UST Private Equity Investors Fund, Inc. v Salomon Smith Barney*, 288 AD2d 87, 88 [1st Dept 2001]; *Stuart Silver Assocs. v Baco Dev. Corp.*, 245 AD2d 96, 99 [1st Dept 1997]).

Also, a sophisticated plaintiff's standard of showing justifiable reliance is higher than a the typical plaintiff in that a sophisticated plaintiff must attempt to verify, using *ordinary intelligence* (*see Stuart Silver Assocs.*, 245 AD2d at 99), the information *provided by the defendant* (*see UST Private Equity Investors Fund, Inc.*, 288 AD2d at 88 ["plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties"]). A significant portion of the documents MBIA would have used to verify Countrywide's purported misrepresentations would have come from Countrywide. Furthermore, as a general proposition, to suggest that discovery of the true nature of the securitizations could have been achieved through reasonable investigation severely oversimplifies a product that has humbled many financial titans who considered themselves experts in understanding securitizations. In the end, Countrywide's requests are overly broad because it fails to set forth a foundation justifying discovery of the expansive scope it requests (*see Manley*, 190 AD2d at 601). Accordingly, Countrywide's motion to compel discovery is denied.

Exhibit 10
726

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*   Index No. 602825/08
Page 25

Accordingly, it is

ORDERED that MBIA's motion to compel from Countrywide

(1) documents relating to two securitizations beyond those upon which it brought the amended complaint is DENIED;

(2) loan files for any loans that have ever been thirty days delinquent is GRANTED;

(3) data contained in electronic systems used by Countrywide in the origination, underwriting and servicing of loans is GRANTED to the extent this Court stated on the record on May 14, 2009;

(4) documents relating to lists of appraisers from whom Countrywide refuses to accept appraisals or will only accept with a second appraisal is DENIED;

(5) documents, including those related to due diligence and risk assessment, related to loans not originated by Countrywide is GRANTED to the extent set forth above;

(6) documents relating to communications with any regulator, law enforcement agency or state attorney general in connection with the loans, securitizations and trusts is DENIED;

(7) documents relating to Bank of America's ("BofA") settlement with various state attorney generals is GRANTED;

(8) documents relating to any transfer of assets or assumption of any debt securities between Countrywide and BofA is DENIED;

Exhibit 10
727

*MBIA Insurance Corporation v Countrywide Home Loans, Inc.*    Index No. 602825/08
Page 26

(9) documents sufficient to show all assets and liabilities as of the date of BofA's
acquisition of Countrywide is DENIED;

(10) documents relating to due diligence provided to BofA in connection with its
acquisition of Countrywide is DENIED; and

(11) documents relating to the compensation of Angelo Mozilo and David Sambol is
DENIED; and it is further

ORDERED that Countrywide's motion seeking

(1) to shift the cost of discovery expenses is DENIED;

(2) track the discovery schedule in this case with the discovery schedule in *Syncora
v Countrywide*, Sup Ct, NY County, Index No. 650042/09 is DENIED;

(3) a protective order relating to MBIA's motion to compel is DENIED as set forth
above; and

(4) an order compelling MBIA to respond to Countrywide's discovery Request
Numbers 25-27, 82-85, 88, 114-115, 159-160, 161-162, 168-178, 164-165, 180-181,
184-185, 187-190 and 195-196 is DENIED.

Dated: New York, New York
April 2 1, 2010

ENTER

Hon. Eileen Bransten, J.S.C.

Exhibit 10
728