LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
1801 Avenue of the Stars, Suite 311
Los Angeles, California  90067
Telephone:   (310) 201-9150
Facsimile:    (310) 201-9160
E-mail:  info@glancylaw.com

*Liaison Counsel for Lead Plaintiff Iowa Public
Employees' Retirement System*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COUNTRYWIDE FINANCIAL CORPORATION, *et al.* <br><br> Defendants. | No.  2:10-CV-00302 MRP (MAN) <br><br><br> <u>CLASS ACTION</u> <br><br><br> **OPPOSITION TO BANK OF AMERICA CORPORATION AND NB HOLDING CORPORATION'S MOTION TO DISMISS** <br><br><br> Date:          October 18, 2010 <br> Time:          11:00 a.m. <br> Courtroom:  12 <br> Judge:        Hon. Mariana R. Pfaelzer |

# **TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ................................................................1

II. FACTUAL BACKGROUND...............................................................2

III. ARGUMENT.......................................................................................5

    A.  California Law Applies to the Determination of Successor
        Liability .........................................................................................5

        1.  BAC Fails to Establish That Delaware Law Should Apply .......6

        2.  Successor Liability Law Is Substantially Similar Across All
             States ...............................................................................7

        3.  Even If a True Conflict Existed, California Has a
             Legitimate Interest In Having Its Law Applied........................8

    B.  Plaintiffs' Complaint Properly Alleges Successor Liability
        Through a *De Facto* Merger........................................................9

        1.  Plaintiffs Have Alleged Continuity of Ownership...................10

        2.  Plaintiffs Have Alleged That BAC and Countrywide Have
             Consolidated Business Operations and Continued
             Countrywide's Business Operations........................................10

        3.  Plaintiffs Have Adequately Alleged That Countrywide
             Ceased Operations...............................................................11

        4.  Plaintiffs Have Alleged That BAC Has Assumed
             Obligations Necessary to Continue Countrywide's
             Business ...............................................................................11

    C.  The *Argent* Decision Does Not Preclude a Finding of Successor
        Liability .......................................................................................12

    D.  NB Holdings Should Be Liable for the Conduct of CHL ...................12

IV. CONCLUSION..............................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*625 3rd St. Assocs., L.P. v. Alliant Credit Union*,
633 F. Supp. 2d 1040 (N.D. Cal. 2009).............................................................2, 7

*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*,
No. 07-cv-07097-MRP-MAN (C.D. Cal. Mar. 19, 2009)...........................11, 12

*Atchison, Topeka & Santa Fe. Ry. Co. v. Brown & Bryant*,
159 F.3d 358 (9th Cir. 1998) ...............................................................................7

*Berg Chilling Sys. v. Hull Corp.*,
435 F.3d 455 (3d Cir. 2006) .................................................................................9

*Blank v. Olcovich Shoe Corp.*,
20 Cal. App. 2d 456, 67 P.2d 376 (Cal. App. 1937) .........................................13

*Bryant, Griffith & Brunson v. Gen. Newspapers*,
36 Del. 468, 178 A. 645 (Del. 1935) ...................................................................7

*Chrysler Corp. v. Ford Motor Co.*,
972 F. Supp. 1097 (E.D. Mich. 1997) ..................................................................8

*CRS Recovery, Inc.v. Laxton*,
600 F.3d 1138 (9th Cir. 2010) ..............................................................................6

*Drug v. Hunt*,
35 Del. 339, 168 A. 87 (Del. 1933) ......................................................................7

*Fehl v. S.W.C. Corp.*,

    433 F. Supp. 939 (D. Del. 1977).........................................................................7

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,

    462 U.S. 611, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983) ......................................8

*Hernandez v. Burger*,

    102 Cal. App. 3d 795, 162 Cal. Rptr. 564 (1980) ...............................................8

*High Country Linens v. Block*,

    No. C 01-02180 CRB, 2002 WL 1998272 (N.D. Cal. Aug. 20, 2002) ...............9

*Kearney v. Salomon Smith Barney, Inc.*,

    39 Cal. 4th 95, 45 Cal. Rptr. 3d 730 (Cal. 2006)...............................................5

*Love v. Associated Newspapers, Ltd.*,

    611 F.3d 601 (9th Cir. 2010) ..............................................................................5

*Malone v. Red Top Cab Co. of Los Angeles*,

    16 Cal. App. 2d 268, 60 P.2d 543 (Cal. App. 1936) .........................................13

*Marks v. Minn. Mining and Mfg. Co.*,

    187 Cal. App. 3d 1429, 232 Cal. Rptr. 594 (1986) ...................................7, 9, 11

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,

    No. 602825/08 (N.Y. Apr. 29, 2010).............................................................10, 11

*In re McKesson HBOC, Inc. Sec. Litig.*,

    126 F. Supp. 2d 1248 (N.D. Cal. 2000)..............................................................6

*Nestle USA v. Travelers Cas. & Sur. Co.*,

   No. CV98-5515-HLH(MCx), 1998 U.S. Dist. LEXIS 17287 (C.D. Cal.

   Oct. 26, 1998) ...................................................................................................9

*Pokorny v. Quixtar, Inc.*,

   601 F.3d 987 (9th Cir. 2010) ..........................................................................5, 6

*R&R Sails, Inc. v. Ins. Co. of the State of Pa.*,

   610 F. Supp. 2d 1222 (S.D. Cal. 2009) ...............................................................9

*Ray v. Alad Corp*,

   19 Cal. 3d 22, 136 Cal. Rptr. 574 (Cal. 1977)...............................................7, 10

*San Joaquin Ginning Co. v. McColgan*,

   20 Cal. 2d 254, 125 P.2d 36 (Cal. 1942) ...........................................................7

*Strahm v. Fraser*,

   32 Cal. App. 447, 163 P. 680 (Cal. App. 1916) ...............................................13

*Sunnyside Dev. Co., LLC v. OPSYS Ltd*,

   No. C 05-0553 MHP, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) ..................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

   551 U.S. 308 (2007)...........................................................................................3

*Troy Group, Inc. v. Tilson*,

   364 F. Supp. 2d 1149 (C.D. Cal. 2005) ..............................................................3

*Wash. Mut. Bank v. Superior Court*,

   24 Cal. 4th 906, 103 Cal. Rptr. 2d 320 (Cal. 2001).........................................6, 7

**OTHER AUTHORITIES**

15 William Meade Fletcher, *et al., Fletcher Cyclopedia of the Law of Private Corporations* § 7122, at 227-48 (perm. ed., rev. vol. 1999)...................5

Fed. R. Evid. 801(d)(2)(A) .........................................................................3

Restatement (Second) of Conflict of Laws.......................................6, 8, 9

Lead Plaintiff Iowa Public Employees' Retirement System and additional named plaintiffs the General Board of Pension and Health Benefits of the United Methodist Church, Orange County Employees' Retirement System, and Oregon Public Employees' Retirement System (collectively, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendant Bank of America Corporation ("BAC") and NB Holdings Corporation's ("NB") ("collectively, "Defendants") motion to dismiss the Amended Consolidated Class Action Complaint (the "Complaint").[1]

## I.  PRELIMINARY STATEMENT

Defendants' attempts to dismiss BAC and NB from this action should be rejected where, as here, allegations in the Complaint support a determination of successor liability for Countrywide's violations of the federal securities laws. Otherwise, Countrywide's merger with BAC will leave Countrywide's creditors, including MBS purchasers, without a remedy.  The Complaint adequately alleges that, regardless of how BAC's acquisition of Countrywide was structured, BAC and NB effectively merged business operations with Countrywide in an all-stock acquisition and subsequently continued to run Countrywide, albeit under a different name.[2]

The Complaint sufficiently alleges facts that meet each of the factors necessary for a finding that the acquisition was actually a *de facto* merger, including: 1) a continuity of shareholders; 2) a continuation of the enterprise of the

---

[1] All references to Bank of America Corporation and NB Holdings Corporation's Memorandum of Points and Authorities in Support of their Motion to Dismiss the Amended Consolidated Class Action Complaint dated August 20, 2010 shall be referred to herein as "Br."

[2] In separate parts of their brief, Defendants argue that BAC was a successor-in-interest neither to (1) Countrywide Financial Corporation ("CFC"); nor to (2) its subsidiaries, Countrywide Securities Corporation ("CSC"), Countrywide Capital Markets ("CCM"), and Countrywide Home Loans ("CHL").  Defendants' separate arguments, however, put form over substance.  Plaintiffs have adequately alleged that BOA acquired CFC – and all of its constituent parts – in a single *de facto* merger.  Collectively, the entities are referred to herein as "Countrywide."

seller; 3) the dissolution of the seller; and 4) the acquirer's assumption of obligations necessary to continue business operations. *625 3rd St. Assocs., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040, 1046 (N.D. Cal. 2009) (citing *Marks v. Minn. Mining and Mfg. Co.*, 187 Cal. App. 3d 1429, 1436, 232 Cal. Rptr. 594 (1986)). The *de facto* merger doctrine is an equitable remedy imposed by courts to ensure that liability for misconduct is not erased simply because lawyers cleverly structure a transaction. The fact that the BAC "acquisition" of Countrywide squarely fits the definition of a *de facto* merger and leaves investors in hundreds of billions of dollars worth of Countrywide-generated securities without recourse against Countrywide justifies a finding that BAC should have successor liability for Countrywide's misconduct. Accordingly, Defendants' motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND

On July 1, 2008, Countrywide completed a merger with Red Oak Merger Corporation ("Red Oak"), a wholly-owned subsidiary of BAC, pursuant to the terms of an Agreement and Plan of Merger, dated as of January 11, 2008, by and among BAC, Red Oak, and Countrywide. ¶ 30. The acquisition was through an all-stock transaction involving a BAC subsidiary that was created for the sole purpose of facilitating the acquisition of Countrywide. *Id.* Substantially all of Countrywide's assets were transferred to BAC on November 7, 2008. *Id.* Countrywide ceased filing its own financial statements in November 2008, and instead its assets and liabilities have been included in BAC's financial statements. *Id.*

BAC publicly indicated its intention to fully integrate Countrywide by the end of 2009. Indeed, on April 27, 2009, BAC announced that the Countrywide brand had been retired. Declaration of Julie Goldsmith Reiser ("Reiser Decl.") Ex.

A (BAC Press Release, Apr. 27, 2009).[3]  Countrywide's former website redirects to the BAC website.  ¶ 30.

Bank of America Home Loans now operates out of Countrywide's offices in Calabassas, California with substantially the same employees as the former Countrywide entities.  Reiser Decl. Ex. B (Rick Rothacker, *BofA Exec Tackles Countrywide*, Charlotte Observer (Oct. 21, 2008)).  In October 2008, BAC President Barbara DeSoer commented that the integration was proceeding on schedule, noting, "The company has named a mix of Bank of America and former Countrywide executives to leadership roles and will be tapping more managers through the end of the year."  *Id.*  In terms of physical assets, she stated that "Bank of America inherited 1,000 Countrywide mortgage offices.  The bank is still in the assessment phase but plans to keep a 'substantial presence in all of the markets where we have a presence now.'"  *Id.*  Countrywide has also disclosed that its employees' 401(k) plans were rolled into BAC's 401(k) plan, effective April 6, 2009.  Reiser Decl. Ex. C (Bank of America Corporation Form 11-K, June 26, 2009).

Moreover, BAC has assumed some of Countrywide's liabilities, having agreed to resolve litigation arising from allegations of other misconduct, such as predatory lending, leveled against Countrywide.  *See, e.g.*, Reiser Decl. Ex. D (Shayndi Raice and Marshall Eckblad, *Countrywide's Mess Billed to Bank of America*, Dow Jones Newswires (June 7, 2010)).  This comes as no surprise since, in January 2009, BAC's then-Chairman and CEO, Ken Lewis, was reported as saying, "[W]e looked at every aspect of the [Countrywide] deal, from their assets

---

[3] The existence and contents of the proffered documents attached to the Reiser Declaration are judicially noticeable facts, *e.g.*, *Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) (taking judicial notice of the contents of SEC filings), and the Court may properly consider them on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).  *See also* Plaintiffs' Response to Defendants' Requests for Judicial Notice (Dkt. No. 183).  Indeed, the statements made by Defendants in the proffered documents are admissible as party admissions under Fed. R. Evid. 801(d)(2)(A).

to their potential lawsuits, and we think we have a price that is a good price." Reiser Decl. Ex. E (Julie Creswell, *Bank of America Joins Parade of Mortgage-Related Losses*, N.Y. Times (Jan. 23, 2008)).

Ken Lewis also noted on a conference call with investors about the acquisition that

> Countrywide has product expertise and a sales culture that tops our capabilities.  By utilizing their skill sets, we can offer more mortgage capabilities to our vast customer base.

Reiser Decl. Ex. F (Bank of America Countrywide Acquisition Announcement Call Transcript, January 11, 2008).  On that same call, Joe Price, BAC's CFO, explained that 60 BAC employees had conducted due diligence on-site in California for the better part of 30 days preceding the agreement.  *Id.*  As a result of this due diligence, according to Price, BAC agreed to purchase Countrywide for just 31% of its book value when the deal was announced.  *Id.*  Similarly, BAC spokesperson Scott Silvestri stated in a February 22, 2008 interview that "[w]e bought the company and all of its assets and liabilities" and "[w]e are aware of the claims and potential claims against the company and have factored that into the purchase."  Reiser Decl. Ex G (Amy Miller, *Countrywide in Crosshairs as Mortgage Crisis Fuels Litigation*, Corporate Counsel (Feb. 22, 2008)).

More recently, in testimony to the Financial Crisis Inquiry Commission on January 13, 2010, BAC's Chief Executive Officer and President discussed the benefits and costs of the transaction:  "The Countrywide acquisition has positioned the bank in the mortgage business on a scale not previously achieved.  There have been losses, and lawsuits, from the legacy of the Countrywide operation, but we are looking forward."  Reiser Decl. Ex H (Testimony of Brian T. Moynihan to Financial Crisis Inquiry Commission, at 4 (Jan. 13, 2010)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.  ARGUMENT

### A.    <u>California Law Applies to the Determination of Successor Liability</u>

Despite the principle that corporations typically are not liable for actions of corporations that they purchase, certain well-established exceptions exist where liability will attach.  15 William Meade Fletcher, *et al., Fletcher Cyclopedia of the Law of Private Corporations* § 7122, at 227-48 (perm. ed., rev. vol. 1999). Successor liability exists where: (1) the successor assumes liability for the acquired company's acts; (2) the transaction amounts to a consolidation or merger; (3) the transaction is entered into to escape liability; or (4) the acquiring corporation is a continuation of the target company.  *Id.*   Here, the Complaint alleges that, regardless of its structure, BAC's acquisition of Countrywide was nothing short of a *de facto* merger.

The parties agree that although this case arises from alleged violations of the federal securities laws, state law should apply for purposes of determining successor liability.  *See* Br. at 6.  In determining which state's law should govern, California applies the "governmental interest" approach.  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08, 45 Cal. Rptr. 3d 730 (Cal. 2006).  First, a court will examine the laws of each jurisdiction to determine whether they differ. *Id.*  Second, if a difference exists, the court will determine whether a conflict arises from each jurisdiction's interest in having its own law applied.  *Id.*  Finally, if each jurisdiction has a legitimate interest in having its law applied, then the court will apply the law of the jurisdiction whose interest would be more impaired if its law was not applied.  *Id.; see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010).

1         **1.     BAC Fails to Establish That Delaware Law Should Apply**

Defendants fail to offer any analysis of choice of law issues, instead concluding, without discussion, that the law of the state of incorporation should apply. The lack of any such discussion is fatal to BAC's position that Delaware law should apply. The burden of establishing that a foreign state's law should apply is on the party advocating the application of that state's law. *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 920-21, 103 Cal. Rptr. 2d 320 (Cal. 2001); *Pokorny*, 601 F.3d at 995 (burden is on proponent seeking to apply foreign law to demonstrate it should apply); *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138 (9th Cir. 2010). If the party seeking to apply a foreign state's law fails to identify a conflict or to show that the foreign state has an interest in having its law applied, "the court may properly find California law applicable without proceeding to the third step in the analysis." *Wash. Mut. Bank*, 24 Cal. 4th at 920. BAC posits that Delaware law should apply in determining whether BAC has successor liability merely because two federal district courts in California have applied the law of the state of incorporation.[4] Br. at 7. In the absence of any argument identifying a conflict of law or any discussion of why the state of incorporation should prevail over the state where Countrywide was headquartered, BAC currently operates, and the due diligence for the deal took place, Defendants have failed to meet their burden. California law governing the determination of a *de facto* merger should

---

[4] Notably, there was no choice of law discussion by the *McKesson* court that BAC relies upon for its assertion that the law of the state of incorporation should apply. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) (applying law of state of incorporation in determining successor liability with no discussion of choice of law principles). *Sunnyside Dev. Co., LLC v. OPSYS Ltd*, No. C 05-0553 MHP, 2005 WL 1876106, at *3 (N.D. Cal. Aug. 8, 2005) (applying law of state of incorporation in determining "alter ego"). However, liability for purposes of an "alter ego" theory differs from successor liability that arises from a merger of two distinct corporations. According to the Restatement (Second) of Conflict of Laws, for purposes of determining liability to third parties, such as creditors, the law of the state of incorporation should not be controlling if the company has little contact with the state of incorporation. *See* § 302, comment g.

apply. *Wash. Mut. Bank*, 24 Cal. 4th at 920.

### 2. Successor Liability Law Is Substantially Similar Across All States

Even if BAC had met its burden to advance an argument for applying the law of the state of incorporation rather than that of the forum state, application of California's governmental interest approach suggests that California law should govern. "The law in the fifty states on corporate dissolution and successor liability is largely uniform." *Atchison, Topeka & Santa Fe. Ry. Co. v. Brown & Bryant*, 159 F.3d 358, 363 (9th Cir. 1998) (citing *Anspec Co. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1249 (6th Cir. 1991)). As a result, it is not surprising that Delaware law also recognizes successor liability where a transaction is deemed a *de facto* merger. *Fehl v. S.W.C. Corp.*, 433 F. Supp. 939, 945 (D. Del. 1977). Under Delaware law, when a transaction is exclusively in stock which is transferred directly to the seller's shareholders, it may be found to be a *de facto* merger. *Id.* (citing *McKee v. Standard Minerals Corp.,* 18 Del. Ch. 97, 156 A. 193 (Del. 1931); *Drug v. Hunt*, 35 Del. 339, 168 A. 87 (Del. 1933); *Bryant, Griffith & Brunson v. Gen. Newspapers*, 36 Del. 468, 476, 178 A. 645 (Del. 1935)).

Likewise, California law recognizes a *de facto* merger when the following conditions are present: "(1) the consideration exchanged for the assets was solely in stock; (2) the successor continued the same enterprise after the transfer; (3) the shareholders of the merging company became shareholders of the successor; (4) the merging company was liquidated; and (5) the successor assumed the liabilities necessary to carry on the business of the merging company." *625 3rd St. Assocs.,* 633 F. Supp. 2d at 1046.[5]

Thus, under both California and Delaware law, the concept of successor

---

[5] *See also San Joaquin Ginning Co. v. McColgan*, 20 Cal. 2d 254, 125 P.2d 36 (Cal. 1942) (*de facto* merger doctrine applied to transfer of tax liabilities); *Ray v. Alad Corp*, 19 Cal. 3d 22, 136 Cal. Rptr. 574 (Cal. 1977) (doctrine discussed, but not applicable on the facts of a tort case); *Marks*, 187 Cal. App. 3d at 1435.

liability as a result of a *de facto* merger is widely accepted. Moreover, in order for the transaction to be considered a *de facto* merger, both states require the acquirer to pay for the target company's assets exclusively in stock. BAC does not, and cannot, argue that Delaware courts refuse to accept the *de facto* merger doctrine or differ as to what constitutes a *de facto* merger. Accordingly, there is no material difference between the two laws and, where no conflict of law exists, the law of the forum state – here, California – should govern.

### 3.   Even If a True Conflict Existed, California Has a Legitimate Interest In Having Its Law Applied

Even if the Court were to determine that Delaware law conflicts with California law on what constitutes a *de facto* merger (an argument that BAC did not advance), California still has a greater interest in applying its law under the third prong of the governmental interest test.

In matters related to internal corporate governance, the law of the state of incorporation will normally apply; however, in matters that affect the rights of third parties, such as creditors, the state with the greatest contacts with the events at issue has a greater interest in having its law applied. *First Nat'l City Bank v. Banco Para E1 Comercio Exterior de Cuba*, 462 U.S. 611, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983) (citing Restatement 2d of Conflict of Laws §§ 301 and 302[6]); *see also Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1102-03 (E.D. Mich. 1997). California courts similarly have held that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802, 162 Cal. Rptr. 564 (1980). Such contacts include the place of contracting, the place of contract

---

[6] In particular, Restatement (Second) § 302, comment g, states: "The reasons for applying the local law of the state of incorporation carry less weight when the corporation has little or no contact with the state other than the fact that it was incorporated there. In such situations, some other state will almost surely have a greater interest than the state of incorporation in the determination of the particular issue."

negotiation, the place of contract performance, the location of the subject matter of the contract, and the place of business of the parties, among other factors.  *See* Restatement (Second) of Conflict of Laws § 188; *see also Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 467 (3d Cir. 2006).

It is only through incorporation that BAC and Countrywide have contacts with Delaware.  In contrast, BAC conducted its due diligence and negotiated the purchase of Countrywide in California.  Reiser Decl. Ex. F.  Moreover, Bank of America Home Loans now operates out of Countrywide's headquarters in Calabassas, California and does so with many former Countrywide employees. ¶ 30.  Accordingly, California, as the place where Countrywide had its headquarters, where due diligence and negotiations for the deal were conducted, and where Bank of America now is continuing Countrywide's business, has a greater interest in having its law applied to determine successor liability.  *See, e.g. Nestle USA v. Travelers Cas. & Sur. Co.*, No. CV98-5515-HLH(MCx), 1998 U.S. Dist. LEXIS 17287, at *4-5 (C.D. Cal. Oct. 26, 1998) (applying law of the state where plaintiff was headquartered, defendant did business, and the contract was negotiated); *R&R Sails, Inc. v. Ins. Co. of the State of Pa.*, 610 F. Supp. 2d 1222, 1228 (S.D. Cal. 2009) (applying California law where plaintiff's principal place of business was California and Defendant willingly conducted business in California); *High Country Linens v. Block,* No. C 01-02180 CRB, 2002 WL 1998272, at *3 (N.D. Cal. Aug. 20, 2002) (refusing to apply the law of the state of incorporation where company had operations in California).

**B.**   **Plaintiffs' Complaint Properly Alleges Successor Liability Through a *De Facto* Merger**

The *de facto* merger doctrine is a judicially-created principle of equity where, notwithstanding the structure of the corporate entity, a court determines that an acquirer's purchase of a corporation is tantamount to a merger.  *Marks*, 187 Cal.

App. 3d at 1436-37.  In such instances, a court will require the acquirer to also assume the seller's liabilities.  *Id.*  The premise for such liability hinges on the fact that "a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased."  *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,* No. 602825/08, slip op. at 12 (N.Y. Apr. 29, 2010) (citing *Grant-Howard Assocs. v. Gen. Housewares Corp.*, 63 NY2d 291, 296 (N.Y. 1984)) (Reiser Decl. Ex. I).

    As demonstrated below, BAC's "acquisition" of Countrywide squarely fits the definition of a *de facto* merger.  Equitable principles dictate that where BAC purchased Countrywide in order to become a leading mortgage originator and servicer and at a substantial discount to book value because of its liabilities, it should not be able to disassociate itself from Countrywide's liabilities stemming from the mortgage origination business.

### 1.   Plaintiffs Have Alleged Continuity of Ownership

    It is undisputed that BAC paid Countrywide shareholders exclusively in BAC stock when it acquired Countrywide.  ¶ 30.  This is the most critical of the four factors leading to a conclusion that an acquisition is, in fact, a *de facto* merger.  The requirement of continuity of shareholders is required to distinguish acquisitions where the shareholders of a seller corporation retain some ownership in their assets after cleansing those assets of liability.  *Ray*, 19 Cal. 3d at 28-29; *see also MBIA*, No. 602825/08, slip op. at 13 (considering similar allegations and finding that a continuity of ownership exists).

### 2.   Plaintiffs Have Alleged That BAC and Countrywide Have Consolidated Business Operations and Continued Countrywide's Business Operations

    The Complaint sufficiently alleges that BAC has maintained Countrywide's business operations and physical location.  ¶ 30.  BAC has reported that "the new

Bank of America Home Loans division will be based in Calabassas, Calif.," Countrywide's former home. *Id.*   Moreover, BAC is working to integrate Countrywide's 1,000 mortgage offices, plans to keep a substantial presence in the mortgage origination industry, and has rolled Countrywide's employees over to the BAC 401(k) plan.   Reiser Decl. Exs. B, C.   These allegations are sufficient to demonstrate that BAC has effectively merged with Countrywide and is operating Countrywide's mortgage origination business as its own.   *See MBIA*, No. 602825/08, slip op. at 15 ("Bank of America intended to absorb and continue the operation of Countrywide").   Indeed, Ken Lewis was quite clear, when announcing the acquisition, that BAC's intention was to leverage Countrywide's mortgage origination and servicing capabilities across BAC's extensive customer base. Reiser Decl. Ex. F.

### 3.   Plaintiffs Have Adequately Alleged That Countrywide Ceased Operations

The Complaint also alleges that Countrywide has ceased operations.   As in *Marks*, substantially all of Countrywide's assets were transferred to BAC, the Countrywide brand has been retired, Countrywide's website no longer exists, and Countrywide discontinued filing financial statements in November 2008.   ¶ 30; *cf. Marks*, 187 Cal. App. 3d at 1435-36.   Given these same allegations, the Court in *MBIA* concluded that plaintiffs had adequately alleged "the cessation of ordinary business and dissolution of the acquired corporation as soon as possible." *MBIA*, No. 602825/08, slip op. at 14.

### 4.   Plaintiffs Have Alleged That BAC Has Assumed Obligations Necessary to Continue Countrywide's Business

As this Court noted in *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Financial Corporation*, BAC expressly assumed "some debt in consideration of the asset purchase."   *Argent*, No. 07-cv-07097-MRP (MANx), slip

op. at 8 (C.D. Cal. Mar. 19, 2009) (citing BAC Form 8-K, Nov. 10, 2008) (Reiser Decl. Ex. J).   In addition, BAC has implicitly assumed some of Countrywide's liabilities.   For example, on October 6, 2008, BAC agreed to restructure approximately 390,000 of Countrywide's mortgage loans as part of its settlement of predatory lending lawsuits by 34 states against Countrywide entities.   ¶ 30. Here too, the Complaint's allegations meet the *de facto* merger doctrine's requirement that the seller assume obligations sufficient to continue the underlying business.

Accordingly, because the Complaint alleges sufficient facts to establish that BAC's acquisition of Countrywide was a *de facto* merger, BAC's motion to dismiss on the basis of successor liability should be denied.

### C.   The *Argent* Decision Does Not Preclude a Finding of Successor Liability

Defendants rely heavily on this Court's decision in *Argent* to claim that BAC does not have successor liability.   However, in *Argent*, the plaintiffs' complaint merely alleged that BAC purchased substantially all of Countrywide's assets and had begun integrating some of Countrywide's operations.  *Argent*, slip op. at 8.  Here, the Complaint is replete with allegations that fit squarely within the definition of a *de facto* merger and explicitly alleges that the transaction was a *de facto* merger.  Given the different allegations before the Court as well as Plaintiffs' articulation of the choice of law principles at issue, the instant record is far more robust and should be considered on its own terms.

### D.   NB Holdings Should Be Liable for the Conduct of CHL

Defendants argue that NB Holdings – the wholly-owned BOA subsidiary which acquired substantially all the assets of CHL several days after the BOA-Countrywide merger – should not be liable for the conduct of CHL.  Br. at 13-14.

Defendants, once again, would have the Court ignore practical reality:

Defendants acquired all of the assets of CHL, and none of the liabilities, leaving CHL's creditors – including Plaintiffs – with no recourse for their debts.  Allowing Defendants to escape liability by means of their clever use of an asset purchase to acquire the good parts of Countrywide, but not the bad, is patently inequitable, and should not be tolerated.  Not surprisingly, California courts have regularly and consistently held that when corporations abuse the corporate form in such a manner, the corporate form should be disregarded.  *See, e.g., Malone v. Red Top Cab Co. of Los Angeles*, 16 Cal. App. 2d 268, 273, 60 P.2d 543, (Cal. App. 1936) ("It would be manifestly unfair, unjust, and contrary to equity that [one corporation] should [] acquire all of the assets of [another] corporation … leaving no one to be sued by its creditors and no property to satisfy its debts and other liabilities, and not itself become responsible for such debts and liabilities.  *If it takes the benefit, it must … take the burden, which equitably attaches, with it.*") (citation omitted, emphasis added); *Blank v. Olcovich Shoe Corp.*, 20 Cal. App. 2d 456, 461, 67 P.2d 376 (Cal. App. 1937); *Strahm v. Fraser*, 32 Cal. App. 447, 448, 163 P. 680 (Cal. App. 1916).[7]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that Defendants' motion should be denied.  In the event the Court decides to dismiss Plaintiffs' allegations, Plaintiffs respectfully request leave to replead.

---

[7] For the same reasons, NB should be liable for the conduct of CFC, CSC, and CCM, to the extent it acquired any of the assets of those entities.

1  Dated:  September 16, 2010         Respectfully submitted,

2

3                                      **GLANCY BINKOW & GOLDBERG**
                                       **LLP**
4
                                       _____/s/ Michael Goldberg_____
5
                                       Michael Goldberg
6                                      Lionel Z. Glancy
                                       1801 Avenue of the Stars, Suite 311
7                                      Los Angeles, California 90067
                                       Telephone:  (310) 201-9150
8                                      Facsimile:  (310) 201-9160
9
10                                     *Liaison Counsel*
11
                                       Steven J. Toll
12                                     Julie Goldsmith Reiser
                                       Joshua S. Devore
13                                     Matthew B. Kaplan
                                       S. Douglas Bunch
14
                                       **COHEN MILSTEIN SELLERS**
15                                         **& TOLL PLLC**
16                                     1100 New York Avenue, N.W.
                                       Suite 500, West Tower
17                                     Washington, D.C. 20005
                                       Telephone:  (202) 408-4600
18                                     Facsimile:  (202) 408-4699
19
20                                     *– and –*
21
                                       Joel P. Laitman
22                                     Daniel B. Rehns
                                       **COHEN MILSTEIN SELLERS**
23                                         **& TOLL PLLC**
                                       88 Pine Street, 14th Floor
24                                     New York, New York 10005
                                       Telephone:  (212) 838-7797
25                                     Facsimile:  (212) 838-7745
26
27                                     *Lead Counsel for the Class*
28
No. 2:10-cv-00302: OPPOSITION TO BANK OF AMERICA CORPORATION'S AND NB HOLDINGS
CORPORATION'S MOTION TO DISMISS        14

Ira M. Press
Randall K. Berger
**KIRBY McINERNEY LLP**
825 Third Avenue, 16th Sloor
New York, New York  10022
Telephone:  (212) 371-6600
Facsimile:   (212) 751-2540

*Additional Counsel for United Methodist*
*Churches Benefit Board, Inc.*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On September 16, 2010, I caused to be served the following document:

1.   **OPPOSITION TO BANK OF AMERICA CORPORATION AND NB HOLDING CORPORATION'S MOTION TO DISMISS**

2.   **DECLARATION OF JULIE GOLDSMITH REISER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO BANK OF AMERICA CORPORATION AND NB HOLDING CORPORATION'S MOTION TO DISMISS**

By posting the document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the parties as listed on the attached Service List.

And on any non-ECF registered party:

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 16, 2010, at Los Angeles, California.

*s/Michael Goldberg*
Michael Goldberg

## Mailing Information for a Case 2:10-cv-00302-MRP -MAN

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Randall K Berger**
  rberger@kmllp.com

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **S Douglas Bunch**
  dbunch@cohenmilstein.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,martindale@caldwell-leslie.com,hammer@caldwell-leslie.com,pettit@caldwell-leslie.com,willingham@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie.com,wong@caldwell-leslie.com,wilson@caldwell-leslie.com

- **Matthew D Caplan**
  matthew.caplan@dlapiper.com,carmen.ferrera@dlapiper.com,DocketingLA@dlapiper.com

- **Peter Young Hoon Cho**
  petercho@paulhastings.com

- **Boyd Cloern**
  boyd.cloern@bingham.com

- **Matthew W Close**
  mclose@omm.com

- **David C Codell**
  codell@caldwell-leslie.com

- **Jeffrey B Coopersmith**
  jeff.coopersmith@dlapiper.com

- **Brian Charles Devine**
  bdevine@goodwinprocter.com

- **Joshua S Devore**
  jdevore@cohenmilstein.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com,kathyj@rgrdlaw.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com

- **Michael M Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Penelope A Graboys Blair**
  pgraboysblair@orrick.com,jcopoulos@orrick.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com

- **Jeffrey M Hammer**
  hammer@caldwell-leslie.com

- **Sean M Handler**
  shandler@btkmc.com

- **Jennifer L Joost**
  jjoost@btkmc.com,acashwell@btkmc.com,mswift@btkmc.com

- **Matthew B Kaplan**
  mkaplan@cohenmilstein.com,efilings@cohenmilstein.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Joel P Laitman**
  jlaitman@cohenmilstein.com

- **Christopher Lometti**
  clometti@cohenmilstein.com

- **Jennifer B Luz**
  jluz@goodwinprocter.com

- **Azra Z Mehdi**
  amehdi@milberg.com

- **Alexander K Mircheff**
  amircheff@gibsondunn.com,dlanning@gibsondunn.com,inewman@gibsondunn.com

- **Nicolas Morgan**
  nicolas.morgan@dlapiper.com

- **Sharan Nirmul**
  snirmul@btkmc.com,azivitz@btkmc.com,ecf_filings@btkmc.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com,ktayman@goodwinprocter.com

- **Lauren Wagner Pederson**
  lpederson@btkmc.com,neena.verma@btkmc.com,dpotts@btkmc.com

- **Ira M Press**
  ipress@kmllp.com,lmorris@kmllp.com

- **David A Priebe**
  david.priebe@dlapiper.com,stacy.murray@dlapiper.com

- **Daniel B Rehns**
  drehns@cohenmilstein.com,efilings@cohenmilstein.com

- **Julie G Reiser**
  jreiser@cohenmilstein.com

- **Christina A Royce**
  croyce@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **Arthur L Shingler , III**
  ashingler@scott-scott.com,efile@scott-scott.com

- **Richard A Speirs**
  rspeirs@cohenmilstein.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com

- **Steven J Toll**
  stoll@cohenmilstein.com

- **Michael D Torpey**
  mtorpey@orrick.com

- **Michael C Tu**
  mtu@orrick.com,fphan@orrick.com

- **Avi N Wagner**
  avi@thewagnerfirm.com,anwagneresq@hotmail.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,ahsia@goodwinprocter.com,sasmith@goodwinprocter.com,monyeagbako@goodwinprocter.com,cburgos@goodwinprocter.com

- **Andrew L Zivitz**
  azivitz@btkmc.com

**Manual Notice List**

Case 2:10-cv-00302-MRP -MAN    Document 185    Filed 09/16/10    Page 25 of 25    Page ID
#:7405

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Lauren G Kerkhoff**
Robbins Geller Rudman & Dowd LLP
655 West Broadway  Suite 1900
San Diego, CA 92101-8498