# EXHIBIT I

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Bransten                    PART 3m
         HON. EILEEN BRANSTEN, Justice

MBIA

— v —                                INDEX NO. 602825/08
                                     MOTION DATE 12/17/09
Countrywide et al                    MOTION SEQ. NO. 010
                                     MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

                                                        PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...  _____
Answering Affidavits — Exhibits _____
Replying Affidavits _____

Cross-Motion:  ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion

is decided in accordance with the Decision and Order signed under motion sequence number 010.

RECEIVED
APR 29 2010
MOTION SUPPORT OFFICE
NYS SUPREME COURT - CIVIL

Dated: 4-27-10                       HON. EILEEN BRANSTEN  J.S.C.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Check one:  ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION
Check if appropriate:  ☐ DO NOT POST   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART THREE
------------------------------------X

MBIA INSURANCE CORPORATION,             Index No.: 602825/08
                                                 Motion Date: 12/09/09
        Plaintiff,                      Motion Sequence No.: 010

        -*against*-

COUNTRYWIDE HOME LOANS, INC.,
COUNTRYWIDE SECURITIES CORP.,
COUNTRYWIDE FINANCIAL CORP.,
COUNTRYWIDE HOME LOANS SERVICING, LP
and BANK OF AMERICA CORP.,

        Defendants.
------------------------------------X
PRESENT: HON. EILEEN BRANSTEN, J.S.C.

        Defendants Countrywide Home Loans, Inc. ("Countrywide Home"), Countrywide Securities Corp. ("Countrywide Securities"), Countrywide Financial Corp. ("Countrywide Financial"), Countrywide Home Loans Servicing, LP ("Countrywide Servicing") (collectively, "Countrywide") and Bank of America Corp. ("Bank of America," together with Countrywide, "Defendants") move to dismiss the negligent misrepresentation, successor and vicarious liability, fraud and breach of the implied covenant of good faith and fair dealing causes of action in the amended complaint. Plaintiff MBIA Insurance Corporation ("MBIA") opposes the motion.

*MBIA v Countrywide* 	Index No.: 602825/08
Page 2

## BACKGROUND[1]

MBIA is one of the nation's oldest and largest monoline insurers, and provides financial guarantee insurance and other forms of credit protection (Amended Compl at ¶ 8).

Countrywide Financial is a Delaware corporation based in Calabasas, California (*id.* at ¶ 9). Countrywide Financial engages in mortgage lending and other real estate finance-related businesses, including mortgage banking, securities dealing and insurance underwriting (*id.*).

Countrywide Home, a wholly-owned subsidiary of Countrywide Financial, is a New York corporation also based in Calabasas, California (*id.* at ¶ 10). Countrywide Home originates and services residential home mortgage loans (*id.*).

Countrywide Servicing, a wholly-owned subsidiary of Countrywide Financial, is a limited partnership organized under the laws of Texas with offices in Plano, Texas and Calabasas, California (*id.* at ¶ 11). Countrywide Servicing services residential home mortgage loans (*id.*).

Countrywide Securities, a wholly-owned subsidiary of Countrywide Financial, is a Delaware corporation based in Calabasas, California and New York, New York (*id.* at ¶ 12).

---

[1] This Court assumes familiarity with the facts recited in its prior decisions.

*MBIA v Countrywide*                          Index No.: 602825/08
Page 3

Countrywide Securities is a registered broker-dealer and underwrites offerings of mortgage-backed securities (*id.*).

Bank of America is a Delaware Corporation based in Charlotte, North Carolina and with offices and branches in New York, New York (*id.* at ¶ 13). Bank of America is one of the world's largest financial institutions, serving individual consumers, small- and middle-market businesses and large corporations with a full range of banking, investing, asset-management and other financial and risk-management products and services (*id.*). Countrywide merged with Bank of America on July 1, 2008 (*id.*).

From 2002 through 2007, MBIA provided credit enhancement for a total of 17 securitizations of second-lien mortgage loans (*id.* at ¶ 29). This action concerns 15 securitizations of home equity lines of credit ("HELOC") and closed-end second liens ("CES") (the "Securitizations") (*id.*). Each securitization generally comprised one or two pools of mortgage loans of between approximately 8,000 and 48,000 mortgage loans (*id.*).

For each of the Securitizations, Countrywide Home originated, or acquired through external mortgage brokers or correspondent banks, the underlying second-lien residential mortgages (*id.* at ¶ 30). Countrywide Home or Countrywide Servicing serviced the mortgage loans in each Securitization (*id.*). Countrywide Home then conveyed pools of these mortgage loans to a depositor, also a Countrywide entity, in exchange for cash (*id.*). The depositor in turn conveyed the pools of mortgage loans to Countrywide-created trusts (the "Trusts") for

*MBIA v Countrywide*                                                  Index No.: 602825/08
                                                                            Page 4

the purpose of using the mortgage loans as collateral for asset-backed securities that would be sold to investors (*id.*). The Trusts then worked with the underwriters, including Countrywide Securities, to price and sell the residential mortgage-backed securities ("RMBS") notes to investors (*id.*).

By the fall of 2007, a material increase in delinquencies, defaults and subsequent charge-offs of the loans underlying the Securitizations became apparent (*id.* at ¶ 74). Because of the number of loan delinquencies and defaults and subsequent charge-offs, the total cash flow from the mortgage payments in several of the Securitizations was insufficient for the Trusts to meet their payment obligations to holders of the RMBS notes (*id.*).

The Trusts submitted claims on MBIA's note guaranty insurance policies, demanding that MBIA cover the shortage of funds (*id.* at ¶ 75). Many of the delinquent loans defaulted and were subsequently charged off, increasing MBIA's exposure to even greater claims (*id.*).

MBIA contends that the loan files in the Securitizations exhibit an extremely high incidence of material deviations from the underwriting guidelines Countrywide represented that it would follow (*id.* at ¶ 78). A material deviation from underwriting guidelines suggests that the loan should never have been made (*id.*).

MBIA commenced this action against Countrywide asserting causes of action for fraud (first), negligent misrepresentation (second), breach of contract (third and fourth),

*MBIA v Countrywide*                                                                 Index No.: 602825/08

                                                                                                                      Page 5

breach of the implied covenant of good faith and fair dealing (fifth) and indemnification (sixth).

Countrywide Home, Countrywide Securities and Countrywide Financial moved to dismiss the original complaint and, on July 8, 2009, this Court granted the motion in part and denied the motion in part: (1) dismissing MBIA's claims for negligent misrepresentation and narrowing the scope of MBIA's claim for breach of implied covenant of good faith and fair dealing; and (2) dismissing MBIA's breach of contract, breach of the implied covenant of good faith and fair dealing and indemnification causes of action as against Countrywide Financial and Countrywide Securities.

MBIA subsequently amended the complaint, repleading its negligent misrepresentation cause of action, adding a cause of action for successor and vicarious liability (seventh) against Bank of America, adding Countrywide Servicing as a defendant to its breach of the implied covenant of good faith and fair dealing cause action and generally adding more supporting allegations to various claims.

Defendants now move to dismiss the negligent misrepresentation, successor and vicarious liability, fraud and breach of the implied covenant of good faith and fair dealing causes of action in the amended complaint.

*MBIA v Countrywide*  Index No.: 602825/08
Page 6

## ANALYSIS

### I. Negligent misrepresentation

Defendants argue that MBIA's repleaded negligent misrepresentation cause of action must be dismissed because MBIA fails to sufficiently allege a "special relationship."

Analysis of MBIA's negligent misrepresentation claim's viability begins with determining whether the relationship between MBIA and Countrywide imposed a duty on Countrywide to provide MBIA with correct information (*Kimmell v Schaefer*, 89 NY2d 257, 264 [1996]).

A negligent misrepresentation claim may arise from an arms-length commercial transaction – such as the Securitizations in this action – only if a special relationship exists between the parties such that the plaintiff justifiably relied on the defendant's representation (*see id.* at 263). Under New York law, a statement made in the context of an arms-length commercial transaction, without more, cannot give rise to such a duty to provide correct information (*id.*; *Parisi v Metroflag Polo, LLC*, 51 AD3d 424, 424 [1st Dept 2008]).

A special relationship exists if the defendant either (1) possesses "unique or specialized expertise" or (2) occupies a "special position of confidence and trust" with the injured party (*Kimmell*, 89 NY2d at 264; *Laskin v Bank of Am. NA*, 242 NYLJ 37, 2009 NY Misc LEXIS 2574, *33 [Sup Ct, Nassau County 2009] ["'since a vast majority of commercial transactions are comprised of such casual statements and contacts' liability for negligent

*MBIA v Countrywide*  Index No.: 602825/08
Page 7

misrepresentation has been imposed in the commercial context only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party"] [citation omitted]).

MBIA alleges that "Countrywide arranged the Securitizations, and originated or acquired, underwrote, and serviced all of the underlying mortgage loans"; that "Countrywide had unique and special knowledge about the loans in the Securitizations"; that "Countrywide had unique and special knowledge and expertise regarding the quality of the underwriting of those loans as well as the servicing practices employed as to such loans"; that "MBIA could not evaluate the underwriting quality or the servicing practices of the mortgage loans in the Securitizations on a loan-by-loan basis"; that "it relied on Countrywide's unique and special knowledge regarding the underlying mortgage loans when determining whether to provide credit enhancement for each of the Securitizations"; that "MBIA engaged in its own due diligence of the Securitizations" and "was entirely reliant on Countrywide to provide accurate information regarding the loans in engaging in that analysis" (Amended Compl at ¶ 157).

Also, MBIA alleges that "[f]or at least a five year period, MBIA relied on Countrywide's unique and special knowledge regarding the quality of the underlying Mortgage Loans and their underwriting when determining whether to provide credit enhancement for each of the Securitizations" (*id.* at ¶ 158).

*MBIA v Countrywide*                                                                                                            Index No.: 602825/08
                                                                                                                                               Page 8

In determining whether a commercial relationship rises to the level of a "special relationship" under *Kimmel*, several principles come into focus. Only alleging that a party possesses "unique or special expertise" is insufficient (*M&T Bank Corp. v Gemstone CDO VII, Ltd.*, 68 AD3d 1747, 1750 [4th Dept 2009], citing *Kimmell*, 89 NY2d at 264; *Pacnet Network v KDDI Corp.*, 25 Misc 3d 1203[A], 2009 NY Slip Op 51963[U], *4 [Sup Ct, NY County 2009]; *accord JP Morgan Chase Bank v Winnick*, 350 F Supp 2d 393, 402 [SD NY 2004] [explaining that, in *Kimmel*, "the duty did not arise simply from the existence of the contract or from its terms, but rather, from the particular factual circumstances underlying the plaintiffs' decision to invest"]). Nor are vague allegations of general expertise enough to support a special relationship (*United Safety of America, Inc. v Consolidated Edison Company of New York, Inc*, 213 AD2d 283, 286 [1st Dept 1995] [reiterating the principle that an "arm's length business relationship" is insufficient]).

Furthermore, a defendant's knowledge of "the particulars" of its own business does not constitute the type of "specialized knowledge" that is required (*JP Morgan Chase Bank*, 350 F Supp 2d at 402 ["if it were, every bank would have a claim against every borrower who failed to exercise due care in the context of commercial bank loans"]; *MBIA Ins. Co. v Residential Funding Co., LLC*, 243 NYLJ 10, 26 Misc 3d 1204[A], 2009 NY Slip Op 52662[U], *6 [Sup Ct, NY County]; *compare Heard v City of New York*, 82 NY2d 66, 75

*MBIA v Countrywide*                            Index No.: 602825/08
Page 9

[1993] [plaintiff "was not a person wholly without knowledge seeking assurances from one with exclusive knowledge"]).

In *Batas v Prudential Ins. Co. of Am.*, the Appellate Division affirmed the trial court's finding of no special relationship between an insured and her health insurance carrier (281 AD2d 260, 265 [1st Dept 2001]). The Court explained that it was not enough that "the only claimed basis for such a relationship [was] alleged to be defendants' superior knowledge of their product, and a posting of promotional material on their web page in which they tout[ed] themselves as a 'trusted name' in health insurance" (*id.* at 265). Further, the Court affirmed the conclusion that "in the absence of some additional allegation showing a more direct or affirmative effort by defendants to gain plaintiffs' trust and confidence," plaintiff failed to allege a special relationship (*id.*).[2]

Finally, the special relationship must have existed before the contractual relationship giving rise to the alleged wrong, and not as a result of it (*Emigrant Bank v UBS Real Estate Securities, Inc.*, 49 AD3d 382, 385 [1st Dept 2008]; *MBIA Ins. Co.*, 2009 NY Slip Op 52662[U], at *6; *Tech. Support Servs. Inc. v IBM*, 236 NYLJ 43, 2006 NY Misc LEXIS 2421, *10 [Sup Ct, Westchester County 2006]).

---

[2] Like fraud, claims of negligent misrepresentation must be pleaded with particularity (CPLR 3016 [b]).

*MBIA v Countrywide*  Index No.: 602825/08
Page 10

To borrow an observation from the court in *JP Morgan Chase Bank*, parties to an "arm's length commercial transaction . . . must comply with the negotiated terms of [their] contract, and may not defraud [each other] by deliberate falsehood, but [one] is not liable in tort for mere carelessness about its representations" (350 F Supp 2d at 402).

Applying the principles above, MBIA fails to replead a cause of action for negligent misrepresentation against Countrywide Financial, Countrywide Home and Countrywide Securities. MBIA merely alleges an "ordinary business relationship" upon which a negligent misrepresentation claim may not be based. Accordingly, Countrywide's motion to dismiss the repleaded cause of action for negligent misrepresentation is granted.[3]

---

[3] As the United States Court of Appeals for the Second Circuit has remarked, "[i]t is also worth noting that Kimmell's finding that the defendant in that case was liable because there was a special relationship between the parties rested largely on the fact that the defendant testified that 'he expected plaintiffs to rely on [his] projections,' that he informed plaintiffs 'that he could provide 'hot comfort' should plaintiff[s] entertain any reservations about investing,' and that he 'represented' his projections as 'reasonable'" (*Dallas Aero., Inc. v CIS Air Corp.*, 352 F3d 775, 789 [2d Cir 2003] [alterations in original] [citation omitted]).

*MBIA v Countrywide*                                            Index No.: 602825/08
                                                                        Page 11

## II. Successor and vicarious liability

In the amended complaint, MBIA adds Bank of America as a defendant. MBIA contends that Bank of America is a successor-in-interest to Countrywide and is vicariously liable for the conduct of Countrywide under a theory of de facto merger.

Countrywide argues that the separate corporate identities of Bank of America and Countrywide should be enforced and that there is no basis to impose Bank of America with successor liability.

Relying on *Argent Classic Convertible Arbitrage Fund L.P. v Countrywide Financial Corp.* (07-cv-07097-MRP-MAN, *8-9 [CD Ca 2009] [hereinafter "*Argent*"]), Countrywide argues that Bank of America did not assume Countrywide's liabilities and, therefore, MBIA's claims against Bank of America must be dismissed. Countrywide urges this Court to reach the same result as the court in *Argent*. However, with little discussion, the District Court in *Argent* simply concluded that the

> "[Third Amended Complaint], together with judicially noticeable documents, does not allege actions that have been taken in bad faith to prejudice Countrywide's creditors – and the [Third Amended Complaint] certainly does not allege bad faith with the specificity required for alleging fraud. Nor does anything properly before the Court suggest that BofA has *de facto* merged with Countrywide. Finally, BofA is not a 'continuation' of Countrywide" (*id.*).

*MBIA v Countrywide*             Index No.: 602825/08
            Page 12

Countrywide offers nothing for this Court to follow and, more importantly, fails to demonstrate that each of the four exceptions, including de facto merger, are unavailable to MBIA as a matter of law.

Although, generally, an acquiring corporation does not become responsible for the pre-existing liabilities of the acquired corporation, New York law provides an exception under the de facto merger doctrine (*Fitzgerald v Fahnestock & Co.*, 286 AD2d 573, 574 [1st Dept 2001]). When the acquiring corporation has not purchased another corporation merely for the purpose of holding it as a subsidiary, but has effectively merged with the acquired corporation, the de facto merger doctrine may apply (*id.*).

> "The hallmarks of a de facto merger include: continuity of ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, continuity of management, personnel, physical location, assets and general business operation" (*id.*).

The exception is premised on the concept "that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased" (*Grant-Howard Assocs. v General Housewares Corp.*, 63 NY2d 291, 296 [1984]). Also, "factors are analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the

*MBIA v Countrywide*                                                  Index No.: 602825/08

                                                                                                       Page 13

intent of the successor to absorb and continue the operation of the predecessor" (*Matter of AT&S Transp., LLC v Odyssey Logistics & Tech. Corp.*, 22 AD3d 750, 752 [2d Dept 2005]).

Here, MBIA first sufficiently alleges continuity of ownership. "[C]ontinuity of ownership, exists where the shareholders of the predecessor corporation become direct or indirect shareholders of the successor corporation as the result of the successor's purchase of the predecessor's assets, as occurs in a stock-for-assets transaction" (*Van Nocker v A.W. Chesteron, Co. (In re N.Y. City Asbestos Litig.)*, 15 AD3d 254, 256 [1st Dept 2005] [no continuity of ownership between the acquired company and acquiring company, since the acquiring company paid for the acquired company's assets with cash, not with its own stock, and neither the acquired company nor any of its shareholders has become a shareholder of the acquiring company]).

MBIA alleges, and Countrywide does not dispute, that Bank of America acquired Countrywide Financial and the other Countrywide defendants on July 1, 2008, through an all-stock transaction involving a Bank of America subsidiary that was created for the sole purpose of facilitating the acquisition of Countrywide (Amended Compl at ¶¶ 119-22; *see* Defendant's Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint ["Mem in Supp"] at 21).

MBIA next establishes the factor analyzing the assumption of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation.

*MBIA v Countrywide*  Index No.: 602825/08
Page 14

MBIA asserts, among other things, that the Countrywide brand had been retired and that the "old Countrywide website redirects customers to the mortgage and home loans section of Bank of America's website" (Amended Compl at ¶¶ 123-24).

MBIA also establishes the factor analyzing the cessation of ordinary business and dissolution of the acquired corporation as soon as possible. "So long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of a de facto merger will be made" (*Fitzgerald*, 286 AD2d at 575).

MBIA alleges that

> "[s]ubstantially all of Countrywide's assets were transferred to Bank of America on November 7, 2008, 'in connection with Countrywide's integration with Bank of America's other businesses and operations,'[4] along with certain of Countrywide's debt securities and related guarantees. Countrywide Financial ceased filing its own financial statements in November 2008, and instead its assets and liabilities have been included in Bank of America's recent financial statements" (Amended Compl at ¶ 126).

Furthermore, MBIA alleges that "Bank of America has paid to restructure certain of Countrywide's home loans on its behalf, including settling predatory-lending lawsuits brought by state attorneys general" (*id.* at ¶ 127).

---

[4] It is unclear from what source MBIA quotes. Presumably, MBIA quotes from an interview in the May 2009 issue of *Housing Wire* magazine – the source cited just before paragraph 126 in the amended complaint.

*MBIA v Countrywide*                                           Index No.: 602825/08
                                                                                                        Page 15

Based on the foregoing, MBIA sufficiently alleges a de facto merger in which Bank of America intended to absorb and continue the operation of Countrywide (*see Holme v Global Mins. & Metals Corp.*, 63 AD3d 417, 418 [1st Dept 2009]). Accordingly, Countrywide's motion to dismiss the complaint as against Bank of America is denied.

### III. <u>Fraud</u>

Although this Court previously denied Countrywide's motion to dismiss MBIA's fraud claim, Countrywide again seeks dismissal of the fraud claim.

The only difference between the amended and original complaints in connection with MBIA's fraud cause of action is the addition of five securitizations on which MBIA brings its fraud claim. The substance, the claim, the theory and the relief sought remain the same.

Citing no authority for this Court to do so, Countrywide asks this Court to review their "properly modified arguments, which they believe require a different result as to [MBIA's] fraud claim" (Mem in Supp at 23). In the interest of judicial economy, however, this Court briefly reviews Countrywide's arguments.

In its motion to dismiss the fraud claim from the amended complaint, Countrywide simply asserts the same arguments from its motion to dismiss the original complaint (*compare* Mem in Supp at 23-26 [no justifiable reliance], 26-31 [fraud claim duplicative of breach of contract claim], 35-38 [fraud not pleaded with particularity]; *with* Countrywide

*MBIA v Countrywide*                                                    Index No.: 602825/08
                                                                              Page 16

Defendants' Memorandum of Law in Support Their Motion to Dismiss [the original complaint] at 19-24 [no justifiable reliance], 12-18 [duplicative], 27-29 [particularity]). These arguments were previously rejected; the arguments are again rejected upon the same grounds (*see MBIA Ins. Co. v Countrywide Home Loans, Inc.*, 2009 NY Slip Op 31527[U], *6-14 [Sup Ct, NY County 2009]).

Countrywide further argues that MBIA fails to sufficiently plead causation. Countrywide fails to demonstrates as a matter of law that MBIA cannot establish the causation it alleges (*see Campbell v Rogers & Wells*, 218 AD2d 576, 580 [1st Dept 1995] [judgment as a matter of law "should be granted only if there is no rational process by which the jury could find for plaintiff as against the moving defendant"]). On a motion addressed to the pleadings in this highly complex action, it would be premature to make a determination as to whether an economic downturn constituted an intervening cause in the link between Countrywide's alleged conduct and MBIA's alleged injury.

Accordingly, Countrywide offers no basis for this Court to revisit its prior order denying Countrywide's motion to dismiss MBIA's fraud claim and that branch of Countrywide's motion to dismiss is denied.

*MBIA v Countrywide*                                          Index No.: 602825/08
                                                                     Page 17

### IV. **Breach of the implied covenant of good faith and fair dealing**

Countrywide fails to assert a basis for this Court to dismiss MBIA's breach of the implied covenant of good faith and fair dealing cause of action. Countrywide's motion to dismiss MBIA's claim is therefore denied. However, consistent with this Court's Decision and Order dated July 8, 2009, MBIA's cause of action remains viable only as it relates to MBIA's allegations that Countrywide deliberately refused to take corrective action in order to collect more fees.

Accordingly, it is

ORDERED that the motion to dismiss is GRANTED in part in that the negligent misrepresentation (second) cause of action is dismissed; and it is further

ORDERED that Defendants are directed to serve an answer to the amended complaint within twenty (20) days after service of a copy of this order with notice of entry.

This constitutes the Decision and Order of the Court.

Dated: New York, New York
April 27, 2009

                                                              **E N T E R**

                                                              _____
                                                              Hon. Eileen Bransten