**DLA PIPER LLP (US)**
SHIRLI FABBRI WEISS (Bar No. 079225)
shirli.weiss@dlapiper.com
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  (619) 699-2700 | Fax:  (619) 699-2701

NICOLAS MORGAN (Bar No. 166441)
nicolas.morgan@dlapiper.com
MATTHEW CAPLAN (Bar No. 260388)
matthew.caplan@dlapiper.com
1999 Avenue of the Stars, Suite 400
Los Angeles, CA  90067-6023
Tel:  (310) 595-3000 | Fax:  (310) 595-3300

DAVID PRIEBE (Bar No. 148679)
david.priebe@dlapiper.com
JEFFREY B. COOPERSMITH (Bar No. 252819)
jeff.coopersmith@dlapiper.com
2000 University Avenue
East Palo Alto, CA 94303-2248
Tel:  (650) 833-2000 | Fax:  (650) 833-2001

Attorneys for Defendant ERIC P. SIERACKI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION *et al.*,<br><br>*Defendants*. | No.: 2:10-CV-00302 MRP (MAN)<br><br>**ERIC P. SIERACKI'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF COMPLAINT**<br><br>Date:  October 18, 2010<br>Time:  11 AM<br>Judge:  Hon. Mariana R. Pfaelzer<br>Courtroom:  Courtroom 12<br>  Spring Street Courthouse |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 1
II.  ARGUMENT ........................................................................................ 2
     A.   Many Of Plaintiffs' Sources Do Not Mention Countrywide ............... 2
     B.   Plaintiffs Did Not Investigate The Bases For The Allegations In The Complaints Or Any "Corroborating" Source ............................... 4
     C.   The Allegations From The Other Complaints Are Not "Facts" ........... 6
III. CONCLUSION ..................................................................................... 7

## I. INTRODUCTION

Eric Sieracki joined the motions to dismiss filed by the other defendants in this case, and also joins in their reply memoranda. He also moved the Court to strike selected paragraphs from the Amended Complaint that consist of allegations that Plaintiffs cut and pasted from complaints filed in other actions. Fed. R. Civ. P. 11 prohibits this practice, and the appropriate remedy is to strike the paragraphs under Fed. R. Civ. P. 12(f).

In response to the motion to strike, Plaintiffs do not claim that they conducted any independent investigation of the bases for allegations in the other complaints they cite. That is, Plaintiffs do not claim that they examined the purported internal Countrywide documents alleged in the complaints in those cases, or that they spoke to the personal sources for the allegations in those complaints. Instead, Plaintiffs cite a litany of media reports and studies they reviewed and claim that these documents corroborate each other and the complaints in other cases. Plaintiffs' apparent argument is that they can make up for their lack of investigation by volume, by citing to multiple "sources" that they did not investigate. Put in other terms, Plaintiffs claim that if enough other people make accusations about Countrywide, so can they, even if they did not personally investigate the bases for what those other persons said.

In fact, many of the sources cited by Plaintiff do not mention Countrywide, or are news articles that merely report on government investigations and hence have no substantive value. But more importantly, Plaintiffs do not claim to have conducted an independent investigation as to the basis of any of the other sources they cite (including the supposed documents or "witnesses" on which those sources were based), just as they do not allege they have conducted such an investigation with respect to the complaints they cite. This is evident by distinction to the cases relied upon by Plaintiffs, in which the respective attorneys represented that they did more than Plaintiffs claim to have done here.

As Mr. Sieracki pointed out, allowing recycled unsubstantiated and un-investigated allegations to suffice undermines not only Rule 11, but also the reputation-defending purpose of Fed. R. Civ. P. 9(b). Plaintiffs cannot fall back on the argument that they did not need to undertake a Rule 11 investigation with respect to the allegations lifted from other complaints because those allegations are "facts," as none of the cases from which the allegations are lifted have resulted in an adverse judgment or finding.

## II. ARGUMENT

The paragraphs Mr. Sieracki requests the Court to strike consist of allegations lifted from complaints filed in other actions and government investigations. AC ¶¶ 13, 14, 103-111, 113-143. Plaintiffs state that they reviewed the following sources to corroborate these allegations and hence allege them in the Complaint: (1) materials for the Certificates at issue in this case and the Certificates' rating histories; (2) monthly service or remittance reports issued in connection with the Certificates; (3) Countrywide's SEC filings, press releases and other public statements; (4) media reports, congressional testimony and additional material; and (5) an SEC report regarding credit rating agencies. Opposition at 87:6-18, *citing* AC at 1. Plaintiffs assert that this effort is enough. However, this does not constitute a sufficient pre-filing investigation with respect to the paragraphs at issue in the motion to strike.

### A. Many Of Plaintiffs' Sources Do Not Mention Countrywide

As a threshold matter, many of Plaintiffs' supposedly corroborating sources cannot serve that purpose because they say nothing about Countrywide in particular, as distinguished from mortgage or financial markets in general.

For example, Plaintiffs cite a March 2008 Policy Statement of Financial Market Developments from the President's Working Group on Financial Markets. Even as described by Plaintiffs, it refers to a supposed breakdown in underwriting standards for subprime mortgages, without mentioning Countrywide (let alone

purported internal practices at Countrywide). *See* Opposition at 88:5-11. Likewise, Plaintiffs cite the 2007 Mortgage Market Statistical Annual Volume I merely to support their allegation that the industry-wide market for ARMs increased between 2001 and 2006. *Id.* at 88:12-15. While Plaintiffs allege that the 2006 and 2007 Mortgage Fraud Reports included a study of three million residential mortgages (*id.* at 88:16-20), these reports were not specific to Countrywide.

The news articles Plaintiffs cite experience similar defects. Again, several do not mention Countrywide at all. For example, Plaintiffs assert that an April 6, 2008 *New York Times* article reported that "Countrywide verified income with the IRS on only 3%-5% of all loans funded by the Company in 2006." Opposition at 88:27-89:3; 90:2-10. But the article does not mention Countrywide but rather focuses on Ameriquest, and quotes the Vice-President of Sales and Marketing at a company that handles filing of IRS verifications as saying "[m]y estimate was between 3 and 5 percent of all of the loans that were funded in 2006 were executed with [an IRS verification.]."[1] The remaining articles merely report on purported government investigations and hence have no probative value under Fed. R. Civ. P. 12(f). *See* Opening Brief at 7:19-8:1 & n.8 & cases cited therein.

In *Freidus v. ING Groep N.V.*, No. 09 Civ. 1049 (LAK) (S.D.N.Y. Sept. 14, 2010), attached as an Appendix to this brief, a District Court granted in substantial part a motion to dismiss a Securities Act of 1933 lawsuit alleging that an investment bank did not disclose the risks of mortgage-backed securities underlying the hybrid capital securities it sold. In so doing, the court found that allegations of

---

[1] Likewise, a January 12, 2008 *New York Times* article referenced by Plaintiffs focused on New Century Financial and described government investigations into the underwriters of mortgage backed securities (such as Lehman Brothers and Deutsche Bank). A January 27, 2008 *New York Times* article cited by Plaintiffs focused on the New York Attorney General's investigation into whether the underwriters of mortgage-backed securities conducted sufficient due diligence. The March 23, 2008 *Los Angeles Times* article also focused on the purported lack of due diligence by underwriters.

- 3 -  SIERACKI REPLY ISO MOTION TO STRIKE
Case No. 2:10-CV-00302 MRP (MAN)

mortgage industry-wide or market-wide troubles as of September 2007 were irrelevant when it came to pleading a claim as against the defendant and the mortgage loans it securitized, even under the liberal standards of Fed. R. Civ. P. 8(a). Slip op. at 24-25. The same reasoning applies here to the sources relied upon by Plaintiffs that do not mention Countrywide or the allegations about Countrywide from the complaints in the other cases that are the subject of this motion to strike.

### B. Plaintiffs Did Not Investigate The Bases For The Allegations In The Complaints Or Any "Corroborating" Source

Plaintiffs' defense of their investigation suffers from a fundamental flaw. It is that Plaintiffs do not claim that they conducted any independent investigation of the bases for allegations in the other complaints they cite, which the instant motion seeks to strike. That is, Plaintiffs do not claim that they examined the purported internal Countrywide documents alleged in the complaints in those other cases, or that they spoke to the personal sources (be they anonymous sources or disclosed sources) for the allegations in those complaints. The same is true for the media and analytical sources that Plaintiffs proffer as corroboration.

Plaintiffs' omission means that they did not conduct an independent investigation. The insufficiency of Plaintiffs' investigation here is illustrated by contrast to the cases they cite. In *In re Connetics Corp. Sec. Litig.*, No. Civ.A. 07-02940 SI, 2008 WL 3842938 (N.D. Cal. Aug. 14, 2008), plaintiffs' counsel contacted the witnesses quoted in the SEC complaint from which they copied allegations, and cited other anonymous sources on their own. *Id.* at *4. Plaintiffs here do not claim to have taken either step.[2] In *Johns v. Bayer Corp.*, No.

---

[2] Plaintiffs claim that "to the extent witnesses identified in other complaints are currently employed by any of the Defendants, such witnesses would be unavailable for Plaintiffs to contact." Opposition at 90 n.50. The Amended Complaint, however, identifies numerous witnesses in the other complaints as former Countrywide employees. *See* AC ¶ 116 (identifying a "former California loan officer"); ¶ 123 (identifying "a former 'Underwriter II' (a Countrywide employment classification) in a Jacksonville, Florida processing center between

1  09CV1935, 2010 WL 2573493 (S.D. Cal. June 24, 2010), plaintiffs' counsel
2  contacted the attorney in the other case from which she copied allegations, to
3  discuss the basis for the claims in the other case. *Id.* at *2. The attorney from the
4  other case also made an appearance in the case at issue on the motion to strike. *Id.*
5  The attorney also personally reviewed the medical studies that (unlike the articles
6  cited in this case) referred to the defendant company and drug at issue, and formed
7  the basis of her complaint. *Id.* Again, Plaintiffs' counsel does not claim to have
8  taken these measures. In *Dubois v. U.S. Dept. of Agriculture*, 270 F.3d 77, 82 (1st
9  Cir. 2001), the First Circuit denied a motion for sanctions (which Mr. Sieracki does
10 not make here) and found that the attorneys satisfied their Rule 11 duty where
11 throughout the litigation they engaged in extensive consultation with technical
12 experts and, prior to filing, sent copies of every substantive submission to the
13 expert to review for factual accuracy.[3] The other cases Plaintiffs cite are
14 inapposite.[4]

---

June 2006 and April 2007"); ¶ 124 (identifying "a Senior Underwriter in Roseville, California, from September 2002 to September 2006"); ¶ 125 (identifying "an Executive Vice President of Production Operations and later an Executive Vice President of Process Improvement who worked at Countrywide for 17 years before leaving in October 2005"); *id.* (identifying "an underwriter from Long Island, New York at Countrywide between March 2000 and January 2007"); ¶ 129 (identifying "a supervising underwriter at Countrywide until mid-2005 who oversaw the underwriting operations in several states").

[3] Likewise, in *Kraemer v. Grant County*, 892 F.2d 686, 689-690 (7th Cir. 1990), an attorney satisfied Rule 11 because "he did all he reasonably could have done to investigate his client's account of events before the complaint was filed," including hiring a private investigator.

[4] *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1080-81 (N.D. Cal. 2001), involved a motion to dismiss, and the defendants did not challenge the plaintiffs' reliance on allegations lifted from an SEC complaint. In *RSM Production Corp. v. Fridman*, 643 F. Supp. 2d 382, 403-404 (S.D.N.Y. 2009), the paragraphs the defendant sought to strike included allegations based on sources other than the allegations lifted from other complaints, which is not the case in the present motion. In *Fraker v. Bayer*, No. Civ.A. F 08-1564 AWI GSA, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009), the court noted that it is appropriate for a complaint to refer to allegations in another complaint but not to rely entirely on another complaint as its

### C. The Allegations From The Other Complaints Are Not "Facts"

Plaintiffs' fall-back argument is that they did not need to do any additional investigation into the allegations lifted from the other complaints because those allegations "have been legally tested and have been sustained by courts as sufficient to survive a Rule 12(b)(6) dismissal motion." Opposition at 92:3-94:10.

However, as set forth in the Opening Brief, it is settled that content from and reference to "preliminary steps in litigation and administrative proceedings that did not result in adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)." *See* Opening Brief at 7:19-8:1 & n.8 & cases cited therein; *see also RSM Production Corp.*, 643 F. Supp. 2d at 403 ("paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed.R.Civ.P. 12(f)") (quotations omitted). The denial of a motion to dismiss does not result in adjudication on the merits or legal or permissible findings of fact, and Plaintiffs cite no authority to the contrary. Thus, this argument fails as a matter of law.

Plaintiffs' argument also fails because their failure to investigate the underlying bases of both the complaints undermines their ability to rely on the rulings on which they would rely. As this Court is aware from its own experience, it was only due to the presence of the type of underlying internal document and anonymous source allegations that Plaintiffs did not investigate here that complaints were found to have been pleaded in those other cases. For example, the Court wrote in its opinion in the class action case that "[i]t cannot be emphasized enough that in the vast majority of cases" the challenged statements regarding

---

sole basis. The court the found that the allegations at issue were completely lifted from another complaint and <u>granted</u> the motion to strike on that basis, and hence did not reach the issue of what type of sources are sufficient to corroborate allegations lifted from another complaint. *Id.* at *3.

1  Countrywide's internal underwriting processes "would be nonactionable puffery."
2  *In re Countrywide Fin. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1154 (C.D. Cal. 2008).
3  It was only due to the presence of anonymous sources and internal document
4  allegations that the Court varied from this normal rule. *Id.* at 1186 ("The Court
5  draws these inferences [of alleged falsity] from the public sources and Countrywide
6  internal documents cited in the CAC and from the corroboration furnished by the
7  CAC's numerous confidential witness accounts."). Judge Walter's opinion in the
8  SEC matter followed course. Here, Plaintiffs do not claim to have investigated the
9  purported internal documents or confidential witnesses that were so vital to the
10 Court's ruling, yet nevertheless claim they have conducted an investigation
11 sufficient to allow them to copy allegations from the class action case and other
12 cases into their own Complaint.
13     Nor do Plaintiffs effectively distinguish *SRM Global Fund Ltd. Partnership*
14 *v. Countrywide Fin. Corp.*, No. 09 Civ. 5066 (RMB), 2010 WL 2473595 (S.D.N.Y.
15 June 17, 2010), as the only Countrywide case that has proceeded to judgment—in
16 the defendants' favor. Plaintiffs aver that the *SRM* complaint did not challenge
17 securitization offering documents. Opposition at 93 n.5. But neither did the
18 securities or derivative cases adjudicated by this Court, nor for that matter the SEC
19 action pending before Judge Walter. If this distinction is so important to Plaintiffs,
20 then they should not have alleged these actions in their Complaint.

21 **III. CONCLUSION**

22     For the reasons set forth above and in the motion to dismiss of the other
23 defendants, the Complaint against Mr. Sieracki should be dismissed, and his motion
24 to strike should be granted.

25     Respectfully submitted,

26 September 27, 2010                    DLA PIPER LLP (US)

27                                       By:   /s/ David Priebe

28                                       Attorneys for Defendant ERIC SIERACKI

- 7 -                                        SIERACKI REPLY ISO MOTION TO STRIKE
                                             Case No. 2:10-CV-00302 MRP (MAN)