WILLIAM F. SULLIVAN (SB# 78353)
*williamsullivan@paulhastings.com*
JOSHUA G. HAMILTON (SB# 199610)
*joshuahamilton@paulhastings.com*
PETER Y. CHO (SB# 255181)
*petercho@paulhastings.com*
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

Attorneys for Defendants
*Ranjit Kripalani* and *Jennifer S. Sandefur*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; COUNTRYWIDE HOME LOANS, INC.; CWALT, INC.; a Delaware corporation; CWMBS, INC., a Delaware corporation; CWABS, INC., a Delaware corporation; CWHEQ, INC., a Delaware corporation; COUNTRYWIDE CAPITAL MARKETS; COUNTRYWIDE SECURITIES CORPORATION; J.P. MORGAN SECURITIES INC.; DEUTSCHE BANK SECURITIES, INC; BEAR, STEARNS & CO., INC., et al.,<br><br>Defendants. | CASE NO. 2:10-CV-00302 MRP (MAN)<br><br>**DEFENDANTS RANJIT KRIPALANI AND JENNIFER S. SANDEFUR'S REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:         October 18, 2010<br>Time:        11:00 a.m.<br>Courtroom: 12<br>Judge:       Hon. Mariana R. Pfaelzer |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. PLAINTIFFS LACK STANDING TO ASSERT CLAIMS BASED ON OFFERINGS IN WHICH THEY DID NOT PURCHASE SECURITIES ........................................................................................................2

   A. There Is No Basis To Delay The Question Of Standing Until Class Certification ..................................................................................3

   B. Plaintiffs Do Not Satisfy The Constitutional And Statutory Standing Requirements For Their Section 11 Claims ........................4

   C. Plaintiffs Cannot Rely On The Shelf Registration Statements To Cure Their Standing Defects ...........................................................6

III. PLAINTIFFS' CLAIMS RELATING TO THE SEVEN OFFERINGS AT ISSUE AGAINST MR. KRIPALANI AND MS. SANDEFUR ARE TIME-BARRED .............................................................................................8

   A. Plaintiffs' Claims Are Barred By The One-Year Statute Of Limitations Under Section 13 Of The Securities Act ..........................8

   B. Plaintiffs' Claims Against Mr. Kripalani And Ms. Sandefur Were Not Tolled By *Luther* ................................................................9

IV. PLAINTIFFS' SECTION 15 CLAIM SHOULD BE DISMISSED ............11

V. CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*American Pipe & Constr. Co. v. Utah*,
  414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) ......................................... 1

*Arthur Children's Trust v. Keim*,
  994 F.2d 1390 (9th Cir. 1993) ............................................................................ 12

*Ascon Properties, Inc. v. Mobil Oil Co.*,
  866 F.2d 1149 (9th Cir. 1989) .............................................................................. 2

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................................ 11

*Batwin v. Occam Networks, Inc.*,
  No. CV 07-2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008) ......................... 12

*City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*,
  703 F. Supp. 2d 253 (E.D.N.Y. 2010) .............................................................. 4, 7

*Crown, Cork & Seal Co., Inc. v. Parker*,
  462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983) .................................... 9

*Fallick v. Nationwide Mutual Insurance Company*,
  162 F.3d 410 (6th Cir. 1998) ................................................................................ 5

*Goodman v. Lukens Steel Co.*,
  777 F.2d 113 (3d Cir. 1985) ................................................................................. 6

*Gratz v. Bollinger*,
  539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003) .................................. 5

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ............................................................................ 11

*In re Colonial Ltd. P'ship Litig.*,
  854 F. Supp. 64 (D. Conn. 1994) ....................................................................... 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................... 7

*In re Countrywide Fin. Corp. Sec. Litig.*,
  No. CV07-05295, 2009 WL 943271 (C.D. Cal. Apr. 6, 2009) .......................... 11

*In re Downey Sec. Litig.*,
  No. CV 08-3261, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ...................... 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*In re Dreyfus Aggressive Growth Mutual Fund Litig.*,
   No. CV 98-4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) .................. 5

*In re Eaton Vance Corp. Secs. Litig.*,
   220 F.R.D. 162 (D. Mass. 2004) ................................................................... 5

*In re Infonet Servs. Corp. Secs. Litig.*,
   310 F. Supp. 2d 1106 (C.D. Cal. 2003) ..................................................... 8, 9

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
   No. C 09-01376, 2010 WL 1661534 (N.D. Cal. Apr. 22, 2010) .......... 2, 4, 7

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) ........................................................................ 8

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
   571 F.3d 672 (7th Cir. 2009) ........................................................................ 5

*Lewis v. Casey*,
   518 U.S. 343, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) ........................... 4

*Merck & Co., Inc. v. Reynolds*,
   130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010) .................................................. 8

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ...................................................................... 12

*New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*,
   No. 08 CV 5093, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) .................. 6

*Palmer v. Stassinos*,
   236 F.R.D. 460 (N.D. Cal. 2006) ............................................................ 9, 10

*Palmer v. Stassinos*,
   348 F. Supp. 2d 1070 (N.D. Cal. 2004) ...................................................... 10

*Payton v. County of Kane*,
   308 F.3d 673 (7th Cir. 2002) ........................................................................ 5

*Plumbers' Union Local No. 12 v. Nomura Asset Acceptance Corp.*,
   658 F. Supp. 2d 299 (D. Mass. 2009) ....................................................... 4, 6

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.*,
   No. 08 CIV. 10841, 2010 WL 2175875 (S.D.N.Y. Jun. 1, 2010) ................ 3

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ............................. 3

*United States v. Hayes*,
   515 U.S. 737, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995) ........................... 3

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Valenzuela v. Kraft Inc.*,
 801 F.2d 1170 (9th Cir. 1986) .................................................................................. 10

*Warth v. Seldin*,
 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) .................................... 3, 4

*Wool v. Tandem Computers Inc.*,
 818 F.2d 1433 (9th Cir. 1987) .................................................................................. 11

**REGULATIONS**

17 C.F.R. § 229.512(a)(2) .................................................................................. 6

17 C.F.R. § 230.412 .................................................................................. 6

17 C.F.R. § 230.430B(f)(2) .................................................................................. 6

## I. INTRODUCTION

In their Opening Memorandum of Points and Authorities in Support of their Motion to Dismiss, Individual Defendants Ranjit Kripalani and Jennifer S. Sandefur provide a step-by-step analysis demonstrating that the claims asserted against them are meritless and should be dismissed. Plaintiffs'[1] Opposition fails to address any arguments particular to Mr. Kripalani and Ms. Sandefur's unique circumstances, only confirming the veracity of Mr. Kripalani and Ms. Sandefur's careful analysis. Because there is no legal or equitable basis to support Plaintiffs' claims against Mr. Kripalani and Ms. Sandefur, all of the claims against them should be dismissed.

First, pursuant to well-settled law, Plaintiffs have standing to assert claims **only** for the Offerings in which they purchased securities.[2] Plaintiffs do not dispute that they purchased securities in only **seven** Offerings traceable to registration statements signed by Mr. Kripalani and Ms. Sandefur. Thus, Plaintiffs' claims for violation of Section 11 of the Securities Act of 1933 ("Securities Act") against Mr. Kripalani and Ms. Sandefur are specifically limited to those seven Offerings.

Second, as to claims based on those seven Offerings, the one-year statute of limitations has already expired. Plaintiffs waited until January 2010 to file this action, but other investors filed substantially similar class actions as early as November 2007. Plaintiffs unequivocally were on inquiry, if not actual, notice of possible misconduct more than one year before they first filed this case. Moreover, the tolling doctrine under *American Pipe & Constr. Co. v. Utah* is not available here to save Plaintiffs' untimely claims against Mr. Kripalani and Ms. Sandefur. 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974).

As it is clear that Plaintiffs have no primary claims against Mr. Kripalani and Ms. Sandefur, Plaintiffs insist that their conclusory, boiler-plate allegations of

---

[1] "Plaintiffs" include Lead Plaintiff Iowa Public Employees' Retirement System ("IPERS") and the other three institutions that have joined it as named plaintiffs.

[2] "Offerings" refer to the 427 separate public sale of mortgage-backed securities at issue in this action. (*See* AC ¶ 1.)

CASE NO. 2:10-CV-00302 MRP (MAN) -1- MR. KRIPALANI AND MS. SANDEFUR'S REPLY IN SUPPORT OF MOTION TO DISMISS

Case 2:10-cv-00302-MRP -MAN   Document 196   Filed 09/27/10   Page 7 of 18   Page ID
 #:7639

control person liability against Mr. Kripalani and Ms. Sandefur are sufficient to impose secondary liability. But as a matter of law, such generalized allegations devoid of actual facts specific to Mr. Kripalani and Ms. Sandefur are insufficient to establish control person liability under Section 15 of the Securities Act.

For all of these reasons, and those also addressed in the Countrywide Defendants' Memorandum and Reply and those of other defendants, which Mr. Kripalani and Ms. Sandefur join and incorporate herein, Plaintiffs' claims against Mr. Kripalani and Ms. Sandefur should be dismissed, with prejudice. *See Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.").

## II. PLAINTIFFS LACK STANDING TO ASSERT CLAIMS BASED ON OFFERINGS IN WHICH THEY DID NOT PURCHASE SECURITIES.

Plaintiffs do not dispute that they purchased securities issued in only **seven** Offerings traceable to registration statements signed by Mr. Kripalani and Ms. Sandefur. Thus, as demonstrated at length in Mr. Kripalani and Ms. Sandefur's Opening Memorandum (at 5-7), it is axiomatic that Plaintiffs do not have standing to pursue claims as to those Offerings in which they made no purchases. *See In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. C 09-01376, 2010 WL 1661534, at *3-5 (N.D. Cal. Apr. 22, 2010) (dismissed claims based on 37 MBS offerings for lack of standing).

Despite overwhelming authority to the contrary, Plaintiffs insist that they have standing to assert claims with respect to Offerings in which they did not make any purchases. To make this untenable argument, Plaintiffs rely on a bevy of inapposite cases, mischaracterize relevant authority, and raise several meritless arguments that numerous courts have decisively dismissed.

CASE NO. 2:10-CV-00302 MRP (MAN)   -2-   MR. KRIPALANI AND MS. SANDEFUR'S
REPLY IN SUPPORT OF
MOTION TO DISMISS

### A. There Is No Basis To Delay The Question Of Standing Until Class Certification.

Plaintiffs put the cart before the horse in seeking to defer the question of standing until the class-certification stage. Courts have repeatedly and resoundingly rejected such a deferral, and this Court should do the same. Standing is a "threshold question in every federal case" and "determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).[3] The standing requirement is "inflexible and without exception," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998), and is "perhaps the most important of the jurisdictional doctrines." *United States v. Hayes*, 515 U.S. 737, 742, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995).

Plaintiffs' attempt to conflate the standing requirements with class certification under Rule 23 of the Federal Rules of Civil Procedure is meritless. Plaintiffs may not use the class action mechanism to circumvent the threshold requirement of standing. As the Supreme Court explained, that Plaintiffs seek to represent a class is irrelevant to standing, and Plaintiffs cannot use the class action device to manufacture standing:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'

*Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (alteration in original); *see also Plumbers' Union Local No. 12 v. Nomura Asset*

---

[3] *See also Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co. Inc.*, No. 08 CIV. 10841, 2010 WL 2175875, at *3 (S.D.N.Y. Jun. 1, 2010) ("Standing therefore is a threshold question–antecedent to class certification–that requires plaintiffs to have been personally injured, and plaintiffs thus have no standing to assert claims in relation to 'funds in which [plaintiffs] did not personally invest.'") (alteration in original).

*Acceptance Corp.*, 658 F. Supp. 2d 299, 303 (D. Mass. 2009) ("While plaintiffs maintain that standing is an issue to be resolved at the class certification stage, '[a] plaintiff may not avoid the standing inquiry merely by styling his suit as a class action.'") (alteration in original).

### B. Plaintiffs Do Not Satisfy The Constitutional And Statutory Standing Requirements For Their Section 11 Claims.

Plaintiffs' insistence that they have both constitutional and statutory standing to pursue claims based on offerings in which they never purchased securities is belied by black-letter law. Standing under Article III of the U.S. Constitution requires "a personal stake in the outcome," a concrete, particularized injury traceable to Mr. Kripalani and Ms. Sandefur's actions and redressable by the court. *Warth*, 422 U.S. at 498-99. Likewise, under the Securities Act, "Section 11 requires a plaintiff to show that he was a purchaser of the security at issue." *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 703 F. Supp. 2d 253, 260 (E.D.N.Y. 2010).

Here, Plaintiffs cannot possibly have suffered any injury traceable to Offerings in which they did not purchase Certificates.[4] Plaintiffs "must demonstrate . . . an injury in fact that is fairly traceable to a defendant's alleged misconduct and is likely to be redressed by a decision in the plaintiff's favor." *In re Wells Fargo*, 2010 WL 1661534, at *3. But any purported "injury" from Certificates that Plaintiffs did not purchase may not be redressed by the courts because Plaintiffs cannot recover on claims related to those Certificates. The Certificates permit Plaintiffs to participate only in cash flows passed through to them from the specific mortgages underlying those Certificates. (*See* AC ¶ 5.) Thus, Plaintiffs have no right to payment from other Certificates and cannot suffer damages related to Certificates in which they never invested. *See City of Ann*

---

[4] The mortgage-backed securities at issue in this lawsuit and issued pursuant to Offering documents are referred to as "Certificates." (*See* AC ¶ 1.)

*Arbor*, 703 F. Supp. 2d at 260 ("While Plaintiffs allege the falsity of statements contained in the common Registration and Prospectus Statements, they cannot allege harm flowing from reliance on the sixteen Prospectus Supplements issued in connection with securities that Plaintiffs did not purchase.")

As discussed in Mr. Kripalani and Ms. Sandefur's Opening Memorandum, in recent MBS cases similar to this lawsuit, courts have dismissed claims premised on offerings in which plaintiffs never purchased securities. (*See* Mem. at 5-6.) Plaintiffs' efforts to diminish such clear authority – claiming that those MBS cases "contain little analysis . . . and no meaningful examination of the extensive case law to the contrary" – fail. Each of those MBS cases contains substantial analyses of the same issues involved here and are quoted extensively in Mr. Kripalani and Ms. Sandefur's and the Countrywide Defendants' Memoranda.[5]

Rather than discuss recent MBS cases that are directly on point, Plaintiffs have trolled the judicial landscape for inapposite cases, cherry-picking select phrases out of context. Plaintiffs rely on a multitude of inapposite cases which, among other things: (1) do not involve MBS and Section 11 claims, but instead involve completely different factual scenarios and legal issues, such as ERISA actions and discrimination cases[6]; (2) do not address standing, but concern motions for class certification[7]; and (3) do not involve standing because the class had

---

[5] Plaintiffs highlight the fact that none of the MBS cases cite to *Fallick v. Nationwide Mutual Insurance Company*, 162 F.3d 410 (6th Cir. 1998), a case Plaintiffs rely heavily upon. The reason is simple: *Fallick* is irrelevant to MBS cases involving Section 11 claims such as this suit. *Fallick* involved claims under the Employee Retirement Income Security Act ("ERISA") and has been criticized and distinguished by courts across the country on numerous occasions. *See, e.g.*, *In re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162 (D. Mass. 2004) (distinguishing *Fallick*).

[6] *See, e.g.*, *Fallick*, 162 F.3d 410; *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672 (7th Cir. 2009); *Gratz v. Bollinger*, 539 U.S. 244, 123 S. Ct. 2411, 156 L. Ed. 2d 257 (2003).

[7] *See, e.g.*, *In re Dreyfus Aggressive Growth Mutual Fund Litig.*, No. CV 98-4318, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000).

already been certified and standing had been established.[8] Accordingly, none of Plaintiffs' cases has any bearing on the dispositive issue here: whether Plaintiffs have standing to assert Securities Act claims in a MBS case based on Offerings in which they never purchased securities. The "overwhelming weight of authority" makes clear that the answer is no. *Nomura*, 658 F. Supp. 2d at 304.

### C. Plaintiffs Cannot Rely On The Shelf Registration Statements To Cure Their Standing Defects.

Plaintiffs attempt to circumvent well-settled standing requirements by also asserting that the challenged Offerings stem from common shelf registration statements. However, this argument has been rejected by numerous courts to consider it in the MBS context. The same result should follow here.[9]

By attempting to pin Defendants' liability on shelf registration statements, Plaintiffs' argument ignores the important, structural differences between mortgage-backed securities, on one hand, and debt or equity securities of a single corporate issuer, on the other. For mortgage-backed securities, each prospectus supplement for an offering relates to a unique pool of collateral underlying a particular offering and contains disclosures specific to that collateral, such as the underwriting standards applicable to that collateral. (AC ¶ 78.) Only when an issuer files a prospectus supplement will the specifics for an actual offering be provided because shelf registration statements underlying MBS offerings describe only the general form of future offerings and contain no specific information regarding any particular offering. *See New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, No. 08 CV 5093, 2010 WL 1172694, at *7 (S.D.N.Y. Mar. 26, 2010).[10] As a consequence, with respect to MBS offerings,

---

[8] *See, e.g.*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985).

[9] *See also* Countrywide Defendants' Opening Memorandum at 7-11 (discussing the unique structure of the mortgage-backed securitizations at issue here) and 36-40 (discussing why Plaintiffs cannot rely on the shelf registration statements to cure their standing defects).

[10] Because of those variances, the initial shelf registration statement and later-filed

even if different registration statements contain similar representations, the true meaning of those representations is fundamentally different for each offering traceable to each registration statement; each representation must be considered in connection with a unique pool of mortgage loans collateralizing each separate offering.[11]

Based on these fundamental principles, courts in other MBS cases have rejected the same argument Plaintiffs make here. *See City of Ann Arbor*, 703 F. Supp. 2d at 260 (court was "not persuaded that standing was conferred by virtue of a common registration statement[,]" and held that "[a]llegations that disclosures in the commonly filed documents are the same . . . are unavailing" because of "the differences in the underlying pools of mortgages."); *In re Wells Fargo*, 2010 WL 1661534, at *4 ("plaintiffs cannot gain standing purely as a result of the common Registration Statements").

Plaintiffs purchased securities in only **seven** Offerings traceable to shelf registration statements signed by Mr. Kripalani and Ms. Sandefur. Each challenged Offering was issued by different special-purpose trusts and backed by a unique pool of mortgage loans. Because Plaintiffs did not invest in any pool of mortgage loans underlying the other 57 Offerings, they cannot make any claim of injury flowing from any such mortgage loans. *See City of Ann Arbor*, 703 F. Supp. 2d at 260.

---

prospectus supplement, along with other documents, constitute a "new registration statement relating to the securities offered therein . . . ." 17 C.F.R. § 229.512(a)(2). Moreover, Section 11 liability does not even attach to a shelf registration statement until securities are actually offered for sale by means of a prospectus supplement. *See* 17 C.F.R. §§ 230.412, 230.430B(f)(2).

[11] Plaintiffs rely primarily on this Court's decision in *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008). However, *In re Countrywide* is inapposite. That case involved ordinary corporate securities and involved supplemental filings consisting of pricing and interest rate information for each series of securities. The case did not address the structure or product at issue here, *i.e.*, mortgage-backed securities offerings and prospectus supplements containing specific disclosures particular to the unique pool of loans underlying each offering.

### III. PLAINTIFFS' CLAIMS RELATING TO THE SEVEN OFFERINGS AT ISSUE AGAINST MR. KRIPALANI AND MS. SANDEFUR ARE TIME-BARRED.

#### A. Plaintiffs' Claims Are Barred By The One-Year Statute Of Limitations Under Section 13 Of The Securities Act.

As to the seven Offerings at issue against Mr. Kripalani and Ms. Sandefur, Plaintiffs undeniably filed their claims against Mr. Kripalani and Ms. Sandefur **after** the one-year statute of limitations had expired.[12] Plaintiffs waited until January 2010 to file this action, even though other investors had already filed nearly identical lawsuits several years earlier. Plaintiffs' main response – that "the 2007 filing of the [*Luther*] State Litigation does not prove, as a matter of law, that Plaintiffs should have had actual knowledge of false statements prior to 2009" – is unavailing. (Opp. at 40.)

The one-year period under Section 13 is triggered by "'actual notice' – the discovery of the untrue statement or omission – or 'inquiry notice' – when discovery should have been made by the exercise of reasonable diligence." *In re Infonet Servs. Corp. Secs. Litig.*, 310 F. Supp. 2d 1106, 1113 (C.D. Cal. 2003). Plaintiffs cannot feign ignorance when other investors had notice of potential claims and filed lawsuits several years ago. In November 2007, investors filed *Luther*. (Countrywide Defendants' Request for Judicial Notice in Support of their Motion to Dismiss ("CW RJN"), Ex. 25.) In June 2008, a separate group of investors filed a similar lawsuit. (Id., Ex. 27.) In September 2008, the plaintiffs in *Luther* filed an amended complaint. (Id., Ex. 26.) In October 2008, both actions were consolidated and plaintiffs filed a consolidated complaint. (Id., Ex. 28.) Thus, investors with similar claims based on many of the same MBS at issue here

---

[12] A complaint is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure where it is apparent on the face of the pleading that plaintiffs' claims are barred by the statute of limitations. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss.")

filed **four different complaints** in 2007 and 2008.[13]  Plaintiffs do not contend that they discovered the allegedly untrue statements or omissions after January 2009 (one year prior to the filing of this case), or that they could not have discovered such statements or omissions through the exercise of reasonable diligence before that date.

It is irrelevant for limitations purposes whether Plaintiffs were actually aware of *Luther* prior to January 2009.  Inquiry notice is triggered "when discovery should have been made by the exercise of reasonable diligence." *In re Infonet*, 310 F. Supp. 2d at 1113 ("A reasonable investor is presumed to have information in the public domain, and therefore . . . is imputed with constructive knowledge of this information." *Id.* at 1114 n.7 (alteration in original)); *see also Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983) (statute of limitations is meant to "prevent plaintiffs from sleeping on their rights").  Because *Luther* and other cases were available in the public domain, the claims are all barred.

### B. Plaintiffs' Claims Against Mr. Kripalani And Ms. Sandefur Were Not Tolled By *Luther*.

Plaintiffs argue that their claims against Mr. Kripalani and Ms. Sandefur are saved because they are tolled by *Luther*.  To the contrary, *Luther* offers no life-line

---

[13] Plaintiffs' reliance on the recent U.S. Supreme Court case *Merck & Co., Inc. v. Reynolds* is misplaced.  130 S. Ct. 1784, 176 L. Ed. 2d 582 (2010).  First, the court in *Merck* construed the inquiry notice standard for a Section 10(b) claim under the Securities and Exchange Act of 1934, and not a Section 11 claim under the Securities Act.  As such, *Merck* requires the discovery of facts showing **scienter**, an element of a Section 10(b) claim, but which is not required under Section 11 of the Securities Act.  Second, even under the standard enunciated in *Merck*, Plaintiffs' claims would still be barred by the one-year statute of limitations.  The court in *Merck* held that the one-year limitations period begins: "(1) when the plaintiff did in fact discover, **or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'**– whichever comes first." *Id.* at 1789 (emphasis added).  Here, a reasonably diligent plaintiff would have discovered the facts forming the basis for this lawsuit long before January 2009 because other reasonably diligent plaintiffs **actually did** discover such facts as early as fall 2007.  Even if *Merck* applied, Plaintiffs' claims would violate the one-year statute of limitations.

1   to preserve Plaintiffs' claims.

2   In addition to the arguments as to the inapplicability of class action tolling
3   under *American Pipe* raised by the Countrywide Defendants (*see* Countrywide
4   Defendants' Reply at 8-15, 19-22), tolling is strictly limited **only** to those claims
5   that plaintiffs in the initial class action had standing to assert themselves. *See*
6   *Palmer v. Stassinos*, 236 F.R.D. 460, 464-66 (N.D. Cal. 2006) ("[I]t would be
7   beyond the constitutional power of a federal court to toll a period of limitations
8   based on a claim that failed because the claimant had no power to bring it."); *In re*
9   *Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 82 (D. Conn. 1994) ("[I]f the original
10  plaintiffs lacked standing to bring their claims in the first place, the filing of a class
11  action complaint does not toll the statute of limitations for other members of the
12  purported class.")

13  *Palmer* is instructive here.  In that case, plaintiffs filed a lawsuit alleging
14  causes of action under the Fair Debt Collection Practices Act and the California
15  Unfair Competition law ("UCL").  On a motion to dismiss, the court dismissed the
16  UCL claims because plaintiffs lacked standing.  *Palmer v. Stassinos*, 348 F. Supp.
17  2d 1070, 1088-89 (N.D. Cal. 2004).  Later in the case, plaintiffs moved for leave to
18  amend their complaint to add four new defendants, two new plaintiffs and the same
19  UCL claims that the court had already dismissed for lack of standing.  Plaintiffs
20  argued that the applicable one-year statute of limitations for the UCL claims was
21  tolled by their initial class action, even though the court concluded that plaintiffs
22  had lacked standing to bring those claims.  Ultimately, the court rejected plaintiffs'
23  attempt to add the UCL claims to an amended complaint, unequivocally holding
24  that plaintiffs' initial class action could not "have tolled the statute of limitations as
25  to the UCL claim."  *Palmer*, 236 F.R.D. at 465.  The court reasoned that "[s]ince
26  [plaintiffs] lacked standing to assert claims under the UCL, the statute of limitations
27  was not tolled for . . . subsequently-asserted UCL claims."  *Id*. at 466.

28  Not surprisingly, Plaintiffs' lone response to *Palmer* is simply that it is

1  "unavailing."[14] However, *Palmer* is on point and the same result should follow
2  here. Plaintiffs assert claims against Mr. Kripalani and Ms. Sandefur premised on
3  seven Offerings and argue that *Luther* tolled the claims. However, as in *Palmer*,
4  the plaintiffs in *Luther* did not have standing to assert those claims since no plaintiff
5  had purchased any securities from those seven Offerings.[15] As a consequence, the
6  one-year statute of limitations was not tolled by *Luther* for Plaintiffs' claims against
7  Mr. Kripalani and Ms. Sandefur, and those claims should be dismissed.

### IV.   PLAINTIFFS' SECTION 15 CLAIM SHOULD BE DISMISSED.

9  Plaintiffs' control person allegations against Mr. Kripalani and Ms. Sandefur
10  are especially deficient, and Plaintiffs' Opposition only confirms that the
11  allegations against Mr. Kripalani and Ms. Sandefur are woefully deficient.[16]
12  Plaintiffs insist that general allegations of a person's power to control or
13  influence a primary violator are sufficient. However, as made clear by the Ninth
14  Circuit, courts require factual allegations concerning "the defendant's participation
15  in the **day-to-day affairs** of the [primary violator] and the defendant's power to

---

[14] Plaintiffs claim that "*Palmer* is inconsistent with *Valenzuela's* controlling authority." (Opp. at 37 n. 23.) However *Valenzuela v. Kraft Inc.*, 801 F.2d 1170 (9th Cir. 1986) is inapposite and has no relevance here. In *Valenzuela*, the plaintiff filed a Title VII complaint within the required 90-day period, but filed it in California state court, rather than federal court. *Id.* at 1172-73. The claims filed in state court were dismissed for lack of jurisdiction, and plaintiff subsequently re-filed in federal court, but after the expiration of the 90-day period. *Id.* The federal court permitted tolling and allowed plaintiff to bring her Title VII action because (i) plaintiff had originally filed her complaint within the 90-day period; (ii) plaintiff had demonstrate significant diligence in prosecuting her lawsuit (iii) and because it was not entirely clear at the time which court had jurisdiction. None of these reasons is present here.

[15] *See* Mr. Kripalani and Ms. Sandefur's Opening Memorandum at 10-11 (discussing how Certifications filed by the *Luther* plaintiffs with their motion for appointment as lead plaintiff and counsel (*see* CW RJN, Ex. 30) confirm that no named plaintiff in *Luther* purchased securities in any of the seven Offerings at issue here).

[16] As an initial matter, because there is no primary liability under Section 11 against the Issuing Defendants as discussed in the Countrywide Defendants' Opening Memorandum, the derivative claim under Section 15 fails as a matter of law. *In re Countrywide Fin. Corp. Sec. Litig.*, No. CV07-05295, 2009 WL 943271, at *7 (C.D. Cal. Apr. 6, 2009).

1  control [the primary violator's] corporate actions." *Howard v. Everex Sys., Inc.*,
2  228 F.3d 1057, 1065 (9th Cir. 2000) (emphasis added); *see also Wool v. Tandem*
3  *Computers Inc.*, 818 F.2d 1433, 1441-42 (9th Cir. 1987) (finding control where
4  directors were involved in day-to-day activities and had direct involvement with
5  alleged false statements).  Moreover, at a minimum, Plaintiffs must allege actual
6  **facts** – not mere conclusions – that if proven would demonstrate a plausible basis
7  that an individual defendant engaged in the alleged misconduct.  *See Ashcroft v.*
8  *Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (plaintiff must provide
9  "well-pleaded factual allegations"); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969
10 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the **non-**
11 **conclusory factual content**, and reasonable inferences from that content, must be
12 plausibly suggestive of a claim entitling the plaintiff to relief.") (emphasis added)
13 (internal quotation marks omitted).

14       Plaintiffs' allegations fail to satisfy the standards discussed above.  In their
15 Complaint, in support of their control person allegations, Plaintiffs primarily allege
16 that Mr. Kripalani and Ms. Sandefur were only directors of the four Depositor
17 Defendants. [17]  Notably, Mr. Kripalani and Ms. Sandefur are the only remaining
18 individual defendants (other than Mr. Sambol) who are alleged to have been only
19 directors, and not officers, of the four Depositor Defendants.  (AC ¶¶ 56-67.)
20 Nevertheless, Plaintiffs lump together Mr. Kripalani and Ms. Sandefur with nine
21 other defendants and provide mostly boilerplate allegations of generalized control,
22 alleging in conclusory fashion that all of them "controlled" other defendants.  (Id.
23 ¶¶ 233-34).  The only facts provided for Mr. Kripalani and Ms. Sandefur are limited
24 to their titles and positions and their signatures on four registration statements,
25 which are clearly insufficient.  *See Arthur Children's Trust v. Keim*, 994 F.2d 1390,

---

[17] Plaintiffs also claim that Ms. Sandefur, as an officer of Countrywide Home Loans, Inc., somehow also controlled a primary violator just by virtue of her separate role.  (*See* AC ¶ 61.)  Plaintiffs allege nothing further with respect to Ms. Sandefur's alleged role at CHL, and it has no bearing on the control person analysis.

1396 (9th Cir. 1993) ("A director is not automatically liable as a controlling person"); *In re Downey Sec. Litig.*, No. CV 08-3261, 2009 WL 2767670, at *15 (C.D. Cal. Aug. 21, 2009) (stating that "even a CEO is not automatically a 'controlling person . . .'"); *Batwin v. Occam Networks, Inc.*, No. CV 07-2750, 2008 WL 2676364, at *25 (C.D. Cal. July 1, 2008) ("In the complaint, plaintiff does no more than allege that these defendants are directors, who served on the Audit Committee, and who signed Occam's SEC filings. Such allegations do not offer any indication that these defendants were involved in the day-to-day affairs of Occam, and therefore, they do not present a basis for control liability against these [director] defendants.").

## V.   CONCLUSION

For the foregoing reasons, Mr. Kripalani and Ms. Sandefur respectfully request that the Court dismiss with prejudice all claims alleged against them.

Dated: September 27, 2010     PAUL, HASTINGS, JANOFSKY & WALKER LLP
                              WILLIAM F. SULLIVAN
                              JOSHUA G. HAMILTON
                              PETER Y. CHO


                              By:  /s/ Joshua G. Hamilton
                                   JOSHUA G. HAMILTON
                              Attorneys for Defendants
                              *Ranjit Kripalani* and *Jennifer S. Sandefur*