MICHAEL D. TORPEY (SBN 79424)
*mtorpey@orrick.com*
PENELOPE A. GRABOYS BLAIR (SBN 214742)
*pgraboysblair@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone:   415-773-5700
Facsimile:    415-773-5759

MICHAEL C. TU (SBN 186793)
*mtu@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:   213-629-2020
Facsimile:    213-612-2499

Attorneys for Defendant David Sambol

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.,<br><br>Defendants. | Case No. 10-CV-302 MRP (MANx)<br><br>CLASS ACTION<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DAVID SAMBOL'S MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:   October 18, 2010<br>Time:   11:00 a.m.<br>Judge: Hon. Mariana R. Pfaelzer<br>Ctrm:   Courtroom 9<br>            Spring Street Courthouse |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. THE OPPOSITION CONFIRMS THAT PLAINTIFFS' SECTION 15 CLAIM AGAINST MR. SAMBOL MUST BE DISMISSED ..... 2

- A. Mr. Sambol Cannot Be Held Liable As A Control Person Because There Is No Adequately Pled Predicate Violation ..... 2
- B. Plaintiffs Fail To Meet Their Pleading Burden As To Mr. Sambol ..... 2
- C. Plaintiffs Do Not Adequately Allege Control Person Liability Against Mr. Sambol ..... 4
- D. The Statute Of Limitations Bars Plaintiffs' Claim Against Mr. Sambol ..... 8
- E. Plaintiffs' Claims Remain Unripe Because Plaintiffs Have Not Alleged Legally Cognizable Injury ..... 10

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*In re Accuray, Inc. Sec. Litig.,*
  2010 WL 3447588 (N.D. Cal. Aug. 31, 2010) ...................................................... 7

*Am. Pipe & Constr. Co. v. Utah,*
  414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) ................................. 1, 8, 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................... 2, 3, 7

*Brodsky v. Yahoo! Inc.,*
  592 F. Supp. 2d 1192 (N.D. Cal. 2008) ................................................................ 5

*In re Calpine Corp. Sec. Litig.,*
  288 F. Supp. 2d 1054 (N.D. Cal. 2003) ................................................................ 8

*Catholic Soc. Servs., Inc. v. I.N.S.,*
  232 F.3d 1139 (9th Cir. 2000) .............................................................................. 9

*In re CellCyte Genetics Sec. Litig.,*
  2009 WL 3103892 (W.D. Wash. Sept. 24, 2009) ................................................. 8

*Chan v. Orthologic Corp.,*
  1998 WL 1018624 (D. Ariz. Feb. 5, 1998) .......................................................... 3

*Clemens v. DaimerChrysler Corp.,*
  534 F.3d 1017, 1025 (9th Cir. 2008) .................................................................... 9

*Davidson v. Wilson,*
  973 F.2d 1391 (8th Cir. 1992) .............................................................................. 9

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.,*
  ___ F. Supp. 2d___, 2010 WL 1956361 (C.D. Cal. Apr. 22, 2010) ..................... 3

*In re Epitope, Inc. Sec. Litig.,*
  1992 WL 427842 (D. Or. Nov. 30, 1992) ............................................................ 6

*Erickson v. Kiddie,*
  1986 WL 15654 (N.D. Cal. Dec. 30, 1986) ......................................................... 9

*Flood v. Miller,*
  35 Fed. Appx. 701 (9th Cir. 2002) ....................................................................... 6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Gupta Corp. Sec. Litig.*,
  900 F. Supp. 1217 (N.D. Cal. 1994) .................................................................. 8

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) .............................................................. 8

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir. 1990) ............................................................................ 5

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ........................................................................ 5, 6

*Howard v. Hui*,
  2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) .................................................. 3

*In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*,
  815 F. Supp. 620 (S.D.N.Y. 1993) .................................................................... 9

*In re Network Assocs., Inc. II Sec. Litig.*,
  2003 WL 24051280 (N.D. Cal. Mar. 25, 2003) ................................................ 6

*In re Oak Tech. Sec. Litig.*,
  1997 WL 448168 (N.D. Cal. Aug. 1, 1997) ...................................................... 4

*O'Sullivan v. Trident Microsystems, Inc.*,
  1994 WL 124453 (N.D. Cal. Jan. 31, 1994) ...................................................... 8

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) .............................................................................. 5

*Payan v. Aramark Mgmt. Servs. L.P.*,
  495 F.3d 1119 (9th Cir. 2007) ............................................................................ 9

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) .......................................... 3, 6, 8

*Toombs v. Leone*,
  777 F.2d 465 (9th Cir. 1985) ......................................................................... 1, 9

*Wool v. Tandem Computers Inc.*,
  818 F.2d 1433 (9th Cir. 1987) ........................................................................ 5, 6

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

### FEDERAL RULES AND STATUTES

15 U.S.C. 77o
 (Securities Act of 1933, Section 15) ..........................................................*passim*

15 U.S.C. 78t
 (Securities Exchange Act of 1934, Section 20)........................................................ 3

Fed. R. Civ. P. 8(a)(2)........................................................................................... 2

Fed. R. Civ. P. 9(b) ............................................................................................... 3

Fed. R. Civ. P. 11 .................................................................................................. 7

## I. INTRODUCTION

Plaintiffs devote little more than a *single* paragraph in their 115 page Opposition memorandum ("Opposition" or "Opp.") to the factual allegations against defendant David Sambol. That is because plaintiffs have no basis for their Section 15 claim against Mr. Sambol, which is the only cause of action against him.

The Opposition concedes that Mr. Sambol is not alleged to have signed (and did not sign) any public filings relating to any offering challenged by plaintiffs. The Amended Consolidated Class Action Complaint ("Complaint" or "AC") does not allege that Mr. Sambol was an officer or director of *nine* of the ten entities he allegedly controlled. And as to the remaining entity, Countrywide Financial Corporation (which is the parent company rather than one of the entities that conducted the offerings at issue), plaintiffs allege that Mr. Sambol was its "President and COO" but ignore the judicially noticeable fact that Mr. Sambol did not even assume that position until September 2006. The Opposition fails to offer any meaningful response to the authorities cited by Mr. Sambol that a control person claim based on the bare assertion that someone held a high-ranking position is subject to dismissal.

Moreover, plaintiffs do not directly argue that their claim against Mr. Sambol is not facially time-barred; instead, they argue that they do not have the burden to plead compliance with the statute of limitations and they rely upon the tolling doctrine under *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974). But it is well-established that "[i]n asserting a violation of [the Securities Act], the plaintiff must affirmatively plead sufficient facts in his complaint to demonstrate conformity with the statute of limitations" (*Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985)), which the AC does not do. And as discussed in detail in the Countrywide defendants' brief, the *American Pipe* tolling doctrine does not apply in this case because it cannot be applied cross-jurisdictionally between state and federal actions.

The AC should be dismissed for the reasons set forth in the Countrywide Defendants' demurrer, which apply equally to Mr. Sambol and which he has joined. In addition, the Section 15 claim against Mr. Sambol should be dismissed for the separate reason that plaintiffs have not come close to pleading any cognizable allegation of control against him.

## II. THE OPPOSITION CONFIRMS THAT PLAINTIFFS' SECTION 15 CLAIM AGAINST MR. SAMBOL MUST BE DISMISSED

### A. Mr. Sambol Cannot Be Held Liable As A Control Person Because There Is No Adequately Pled Predicate Violation

As discussed in the Countrywide defendants' motion to dismiss, which Mr. Sambol joined, plaintiffs have failed to state any valid primary claim against any defendant that Mr. Sambol allegedly controlled. Plaintiffs concede that absent such a primary violation, their control person liability claim against Mr. Sambol fails as a matter of law. *See* Opp. at 111; Sambol's Opening Memorandum in Support of Demurrer ("Opening Brief" or "OB") at 5-6.

### B. Plaintiffs Fail To Meet Their Pleading Burden As To Mr. Sambol

Unable to refute the fundamental deficiencies that are fatal to their claim against Mr. Sambol, plaintiffs devote just one paragraph in their considerable 115 page Opposition to the factual allegations against him. Opp. at 107-08. This lone paragraph contains a *single* citation to a *single* paragraph of the AC. *Id.* (citing AC ¶105). That paragraph in turn purports to cite to allegations made by the *SEC* – not plaintiffs – in a different action involving different parties, claims and securities. AC ¶105. As detailed in the Opening Brief, this falls short of the basic pleading requirements of Fed. R. Civ. P. 8(a)(2) because it fails to allege factual allegations against Mr. Sambol sufficient "to raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); OB at 4. As this Court has recognized, "'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do.'" *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, __ F. Supp. 2d __, 2010 WL 1956361, at *4 (C.D. Cal. Apr. 22, 2010) (quoting *Twombly*, 550 U.S. at 555).

Although plaintiffs' inability to state a claim against Mr. Sambol under these controlling standards is dispositive, the AC should also be dismissed under Rule 9(b), which imposes additional heightened pleading requirements. *See* OB at 4-5. The Opposition incorrectly asserts that Mr. Sambol cited "zero cases that have held control person claims . . . subject to Rule 9(b) pleading requirements." *Compare* Opp. at 105 *with* OB at 5 (citing *Howard v. Hui*, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001) (applying Rule 9(b) standard to control person claim)). The *Hui* court specifically applied the heightened standard of Rule 9(b) to plaintiff's control person claims, holding that:

> Plaintiff's section 20(a) claim is an allegation of fraud. Allegations of fraud must be pled with particularity. *See* Fed. R. Civ. Proc. 9(b). While a plaintiff need not plead (or ultimately establish) the control person's scienter distinct from the controlled corporation's scienter, a plaintiff must plead the circumstances of the control relationship with sufficient particularity to satisfy rule 9(b)

2001 WL 1159780, at *4 (citation omitted).[1] Other courts within the Ninth Circuit have reached the same conclusion. *See, e.g.*, *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000) ("[i]n order to adequately plead the second element of a control person liability claim, the complaint must plead the circumstances of the control relationship with particularly"); *Chan v. Orthologic Corp.*, 1998 WL 1018624, at *8 (D. Ariz. Feb. 5, 1998) ("[i]n pleading [a control person violation], Plaintiffs must meet the requirements of Rule 9(b) which results in a heightened pleading requirement"); *In re Oak Tech. Sec. Litig.*, 1997 WL 448168, at *14 (N.D. Cal. Aug. 1, 1997)

---

[1] Plaintiffs concede that "courts interpret Section 15 'the same' as they do the similarly worded control person provision in Section 20 of the Exchange Act." Opp. at 103 (internal citations omitted); *see also* OB at 5, n.5.

(plaintiffs "fail[ed] to recognize the requirement that the circumstances of [a] 'control relationship' be pled with particularity").

### C. Plaintiffs Do Not Adequately Allege Control Person Liability Against Mr. Sambol

The Opposition concedes that unlike any other defendant, Mr. Sambol is *not* alleged to have signed – and did *not* sign – any SEC filings relating to any offering challenged in the Complaint. Opp. at 13, n.9. In fact, neither the AC nor the Opposition identify any actual connection between Mr. Sambol and any statement in any SEC filing which is alleged to have been false or misleading. Instead, when faced with the task of articulating how Mr. Sambol supposedly "controlled" any of the entities alleged to have committed a primary violation, plaintiffs merely assert: (1) that Mr. Sambol held an executive position at one of the ten entities he is alleged to have controlled; and (2) that Mr. Sambol is alleged (in a complaint filed by someone other than plaintiffs in an unrelated action) to have received one e-mail regarding an audit conducted by Countrywide Bank. Opp. at 107-08 (citing to AC ¶105). Neither of these allegations is sufficient.

First, plaintiffs' attempt to plead control person liability based on Mr. Sambol's executive position at CFC is without basis. To begin with, the AC does not even allege that he was an officer or a director of *nine* of the ten entities he is alleged to have controlled. AC ¶67; OB at 1 & 3. Plaintiffs only allege that Mr. Sambol was "the President and COO of Defendant CFC." AC ¶67. With respect to that one remaining entity – CFC – the judicially noticeable fact is that Mr. Sambol did not obtain the position of President and COO until September 2006, following the resignation of CFC's prior President and COO. AC ¶56 (alleging Mr. Kurland served as President and COO of CFC); Kurland's Request for Judicial Notice, Exhibit A at 2. Putting aside this reality, a control person claim based on the bare assertion that an individual held a high-ranking position at a company cannot

survive a motion to dismiss. *See* OB at 6-9 and cases cited therein.[2] The Opposition fails to offer any meaningful response to these cases. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163-64 (9th Cir. 1996) – a case decided after the standard annunciated by *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990) – is instructive. There, the Ninth Circuit held that the CEO and Chairman of a corporation was not a control person because he was not involved in the debenture offering challenged by plaintiffs. The Court explained:

> The Investors have introduced some evidence that [the CEO and Chairman] was involved in the management of [the company]. However, they have introduced no evidence that [the CEO and Chairman] exercised direct or indirect control over the debenture offering in any way. [The CEO and Chairman] was not authorized to act for [the Company] on the matter and was not involved in the preparation of any of the offering materials…. [The CEO and Chairman] knew that there was a debenture offering, but the Investors have not introduced evidence that he was involved in its workings in any significant way. Thus, [the CEO and Chairman] did not directly or indirectly induce the act or acts constituting the violation or cause of action.

96 F.3d at 1163-64 (internal citations omitted).

Consistent with this holding, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir. 2000) – a case cited repeatedly in the Opposition – held that an individual who was not alleged to have "exercised any specific control over the preparation and release of the financial statements [at issue]" was not a control person. *Id.* at 1067, n.13. The reasoning in *Howard*, where the plaintiff alleged far more than what the plaintiffs have alleged against Mr. Sambol, is on point:

> Although plaintiff notes that Wong 'reviewed and approved' the first quarter fiscal 1992 financial statements as a member of the Board, such

---

[2] *See also Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987) (holding that "[o]rdinarily, the status or position of an alleged controlling person, by itself, is insufficient to presume or warrant a finding of power to control or influence") (cited by Opposition at 103-104); *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1207 (N.D. Cal. 2008) (dismissing control liability claim because "Plaintiffs failed to plead that [defendants'] 'participation in the day-to-day affairs' of [the company] was such that they 'exercised actual power or control over' the issuance of any accounting decisions or financial statements").

> activity does not rise to a level of supervision or participation sufficient for a §20(a) violation. Although ownership of stock and a position as a Board member are relevant to ascertaining control, here, there is no showing that Wong was active in the day-to-day affairs of Everex or that he exercised any specific control over the preparation and release of the financial statements… Thus, plaintiff has not shown that Wong had the requisite actual authority over the preparation of the financial statements necessary to find him a control person.

*Id.*[3]

The well-established principle that an executive is not presumed to be a control person by virtue of his or her position is especially significant where, as here, plaintiffs essentially argue that Mr. Sambol was a "control person of a control person." Courts have dismissed these "control person of a control person" claims for failure to allege "even one specific act of control" exercised over the primary violator. *Splash Tech.*, 2000 WL 1727405, at *16 (dismissing as insufficient allegations that company's chief executive officer controlled another company, even though the latter used to be a division of the former and the chief executive officer served on its board).[4]

Plaintiffs' reliance on the allegation that Mr. Sambol received *one* email in 2006 regarding a quality control audit at Countrywide Bank – an allegation made by the SEC in an action different from the instant case – is equally insufficient. Opp. at 107-08 (citing AC ¶105). Paragraph 105 of the AC is the only alleged

---

[3] Other cases cited in the Opposition similarly focus on the fact that the individual had either signed or participated in the drafting of the allegedly-misleading financial statements. *See Wool*, 818 F.2d at 1440 (defendants "had direct involvement not only in the day-to-day affairs of Tandem in general *but also in Tandem's financial statements in particular*") (emphasis added); *Flood v. Miller*, 35 Fed. Appx. 701, 703 (9th Cir. 2002) (defendants "had authority over the process of preparing and releasing the financial statements").

[4] None of the cases relied upon by plaintiffs support their claim against Mr. Sambol. *See, e.g., In re Network Assocs., Inc. II Sec. Litig.*, 2003 WL 24051280, at *8, n.18 (N.D. Cal. Mar. 25, 2003) (defendants did "not contest that they were in control of [the company] during the Class Period") (cited at Opp. at 113); *In re Epitope, Inc. Sec. Litig.*, 1992 WL 427842, at *3-5 (D. Or. Nov. 30, 1992) (the company controlled was "not a large corporation . . . but rather a local company which base[d] a substantial portion of its operations and future income on a single product . . . . [and defendants] had the ability to scrutinize all transactions involving the Company and . . . were able to and did control . . . the content of the statements at issue." (internal quotations omitted) (cited at Opp. at 113).

connection plaintiffs purport to make as to Mr. Sambol, and that allegation is not even plaintiffs' allegation but the SEC's. *See* Opp. at 107 ("According to the SEC . . .").[5] The extrapolation from the SEC's allegation that the "Complaint alleges that [Mr. Sambol] was actually provided with reports on problems with the mortgages used to create the MBS" is decidedly attenuated, and it is not surprising that plaintiffs are unable to include any supporting citation from their Complaint. Opp. at 108.

Any connection plaintiffs seek to make through this email is highly speculative. That Mr. Sambol may have received an email at one point in time discussing the results of a quality control audit at Countrywide Bank – an entity plaintiffs do not even allege that he controlled – has no conceivable relevance to his ability to control or influence any of the ten entities plaintiffs allege (insufficiently) that he did control. Whether Mr. Sambol knew of this particular audit has no bearing on whether he "controlled" entities such as CWABS, CWHEQ or CWMBS (much less Bank of America or NB Holdings Corporation). Because the plaintiffs have failed "to raise a right to relief above the speculative level" the claim against Mr. Sambol must be dismissed. *Twombly*, 550 U.S. 544 at 555.

As a last resort, plaintiffs fall back on the argument that "the control person determination is generally a jury question." Opp. at 104 & 111. Many courts however, have readily dismissed control person claims at the *pleading stage* under similar circumstances. *See, e.g., In re Accuray, Inc. Sec. Litig.*, 2010 WL 3447588, at *15 (N.D. Cal. Aug. 31, 2010) (dismissing control person claim where "[p]laintiffs fail to plead that these Defendants' 'participation in the day-to-day affairs' of Accuray was such that they 'exercised actual power or control over' other individuals who were involved in the issuance of any accounting decisions or

---

[5] For the reasons discussed in the Motion to Strike filed by Mr. Sieracki, which Mr. Sambol joined, ¶105 of the Complaint also violates Fed. R. Civ. P. 11 because it merely reproduces allegations from a complaint filed by the SEC.

financial statements"); *In re Calpine Corp. Sec. Litig*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal. 2003) (granting motion to dismiss because plaintiffs did not allege that the individual defendants "played a role in the preparation" of misleading prospectus statements); *Splash Tech.*, 2000 WL 1727405, at *16 (dismissing control person claim against a defendant with a "significant stock position" where the complaint "fail[ed] to provide some corroborating, particular evidence of control").[6]

### D. The Statute Of Limitations Bars Plaintiffs' Claim Against Mr. Sambol

Plaintiffs do not contest that over one year passed between the filing of the nearly identical *Luther* complaint (November 14, 2007) and the filing of plaintiffs' initial complaint (January 14, 2010). *Compare* OB at 10 *with* Opp. at 19 & 25. Plaintiffs' arguments are primarily limited to the assertions that they were not required to plead compliance with the statute of limitations and that the tolling doctrine of *Am. Pipe & Constr. Co.,* 414 U.S. 538 resurrects their claim. Mr. Sambol will not repeat the detailed briefing on this issue in the Countrywide Defendants' reply memorandum, in which he has joined, but briefly notes the following important points.

First, it is well-established that it is the *plaintiffs' burden* to plead facts establishing that their claim was brought within the limitations period. *See Toombs*, 777 F.2d at 468 ("In asserting a violation of [the Securities Act], the plaintiff must affirmatively plead sufficient facts in his complaint to demonstrate conformity with

---

[6] *See also In re CellCyte Genetics Sec. Litig.*, 2009 WL 3103892, at *7 (W.D. Wash. Sept. 24, 2009) (dismissing control person claim and denying leave to amend where plaintiffs sought to "include information found in two SEC complaints"); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D. Cal. 2007) ("boilerplate allegation [was] insufficient" to state a claim for control person liability); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994) ("[b]ecause plaintiffs have not alleged any facts suggesting that either [defendants] exerted real control or influence . . . plaintiffs' control person allegations against [them] are dismissed"); *O'Sullivan v. Trident Microsystems, Inc.*, 1994 WL 124453, at *18-19 (N.D. Cal. Jan. 31, 1994) (dismissing control person claim where plaintiffs "alleged no facts to establish that [defendants] exerted control over the company or participated in its operations").

the statute of limitations."); *Davidson v. Wilson*, 973 F.2d 1391, 1402 n.8 (8th Cir. 1992) ("Because the timeliness requirement is substantive, 'a plaintiff must affirmatively plead facts indicating the action has been timely brought.'") (internal citation omitted).  Pleading "compliance with [the statute of limitations] is an essential ingredient" and failure to properly plead compliance subjects claims to dismissal. *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 815 F. Supp. 620, 631 (S.D.N.Y. 1993); *Erickson v. Kiddie*, 1986 WL 15654, at *2 (N.D. Cal. Dec. 30, 1986) (loan default disclosure triggered statute of limitations because "the investor must make reasonable inquiry about his investment, investigate the appropriate market and take steps to inform himself of the facts").[7]

The *American Pipe* tolling doctrine does not save the untimely claim against Mr. Sambol because it cannot be applied between state (*Luther*) and federal (*Maine*) actions.  OB at 10.  The Opposition's reliance on the limited exception created in *Catholic Soc. Servs., Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000) is misplaced because it provides no support for an argument that the statute of limitations should be tolled here. *Clemens v. DaimerChrysler Corp.,* 534 F.3d 1017, 1025 (9th Cir. 2008) ("The rule of *American Pipe* . . . allows tolling *within the federal court system* in federal question class actions . . .") (emphasis added); OB at 10-11.  For these reasons, plaintiffs' efforts to toll the statute of limitations must be rejected.

Finally, even assuming *arguendo* that the statute of limitations were tolled back to the filing of the *Luther* action (November 14, 2007), plaintiffs' claim remains untimely as to Mr. Sambol for the separate reason that he was not named as a defendant in *Luther* until June 12, 2008. OB at 11; Opp. at 20 & 40.  Far from merely "suggest[ing] that some analysts knew of some problems in the mortgage market" (Opp. at 40), the numerous disclosures pointed in Mr. Sambol's opening

---

[7] *Payan v. Aramark Mgmt. Servs. L.P.,* 495 F.3d 1119, 1127 (9th Cir. 2007), plaintiffs' sole authority on this issue, dealt with distinguishable employment law claims and favors defendants as it affirmed a dismissal of the claims as untimely.

brief demonstrate that plaintiffs had inquiry notice of the facts underlying their claim against him well before June 2007. OB at 11-12.[8]

### E. Plaintiffs' Claims Remain Unripe Because Plaintiffs Have Not Alleged Legally Cognizable Injury

Mr. Sambol has joined the Countrywide defendants' motion to dismiss on the ground that plaintiffs cannot plead a legally cognizable injury based on MBS certificates that continue to perform as intended. The Opposition does nothing to rebut this independent ground for dismissal, and therefore the Section 15 claim against Mr. Sambol should be dismissed as unripe.

## III. CONCLUSION

For the foregoing reasons, plaintiffs' sole claim against Mr. Sambol under Section 15 of the Securities Act should be dismissed.

Dated: September 27, 2010        Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:     */s/ Michael C. Tu*
            Michael C. Tu

Attorneys for Defendant David Sambol

---

[8] Plaintiffs' selective citation to other statements do not eliminate the "red flags" raised by the disclosures. *Compare* OB at 11-12 *with* Opp. at 41. Also, plaintiffs' assertion that Mr. Sambol stated that subprime loans were a "good investment" is plainly contradicted by the May 2007 conference call transcript itself. Mr. Sambol actually noted that "the levels that we saw in the market for subprime were so distressed and far below economic value" that Countrywide recorded a $200 million dollar impairment "predominantly related to . . . subprime seconds." *See* Plaintiffs' Request for Judicial Notice, Exhibit 2.