1  SETH ARONSON (S.B. #100153)
   saronson@omm.com
2  MATTHEW CLOSE (S.B. #188570)
   mclose@omm.com
3  O'MELVENY & MYERS LLP
   400 South Hope Street
4  Los Angeles, California 90071-2899
   Telephone: (213) 430-6000
5  Facsimile: (213) 430-6407

6  *Attorneys for Defendants*
   *Bank of America Corporation and NB*
7  *Holdings Corporation*

8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MAINE STATE RETIREMENT
SYSTEM, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

COUNTRYWIDE FINANCIAL
CORPORATION, et al.,

Defendants.

Case No. 2:10-CV-00302 MRP (MAN)

**BANK OF AMERICA CORPORATION AND NB HOLDINGS CORPORATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Hearing Date: October 18, 2010
Time: 11:00 a.m.
Judge: Honorable Mariana R. Pfaelzer
Courtroom: Courtroom 12
            Spring Street Courthouse

1

# TABLE OF CONTENTS

2

**Page**

3

PRELIMINARY STATEMENT ...................................................................1

4

ARGUMENT..............................................................................................2

5

6

     I.     THE SUCCESSOR-LIABILITY CLAIM AGAINST BAC
SHOULD BE DISMISSED ...............................................................2

7

8

          A.     Delaware Law Applies to Any Effort to Disregard CFC's
Corporate Form........................................................................2

9

10

          B.     The Amended Complaint Does Not State a Successor-
Liability Claim Under the "de Facto" Merger Doctrine............4

11

          C.     Plaintiffs' Reliance on the *MBIA* Decision Is Unavailing........10

12

13

          D.     The Amended Complaint's Allegation That BAC Is a
Successor to CSC, CCM and CHL Is Conclusory ...................11

14

     II.    THE SUCCESSOR-LIABILITY CLAIM AGAINST NB IS
ALSO DEFICIENT..........................................................................11

15

CONCLUSION...........................................................................................12

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4
*625 3rd St. Assoc., L.P. v. Alliant Credit Union*, 633 F. Supp. 2d 1040
(N.D. Cal. 2009) ............................................................................................ 5

5
*Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin.*
6
*Corp.*, No. CV 07-0797 (MRP), (C.D. Cal. Mar. 19, 2009) ...................... passim

7
*Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant*,
159 F.3d 358 (9th Cir. 1988) ........................................................................ 5

8
*Berg Chilling System, Inc. v. Hull Corp.*,
435 F.3d 455 (3d Cir. 2006) ..................................................................... 3, 9

9
*Blank v. Olcovich Shoe Corp.*,
20 Cal. App. 2d 456 (1937) ........................................................................ 11

10
*Chrysler Corp. v. Ford Motor Co.*,
11
972 F. Supp. 1097 (E.D. Mich. 1997) ...................................................... 3, 8

12
*CRS Recovery, Inc. v. Laxton*,
600 F.3d 1138 (9th Cir. 2010) ..................................................................... 3

13
*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983) ............................... 4

14
*Hernandez v. Burger*,
102 Cal. App. 3d 795, 162 Cal. Rptr. 564 (4th Dist. 1980) ......................... 4

15
*High Country Linens, Inc. v. Block*,
16
No. C 01-02180 CRB, 2002 WL 1998272 (N.D. Cal. Aug. 20, 2002) ........ 4

17
*In re Lindsay*,
59 F.3d 942 (9th Cir. 1993) .......................................................................... 3

18
*In re McKesson HBOC, Inc. Sec. Litig.*,
126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................... 4, 5

19
*Jones v. Thyssenkrupp Elevator Corp.*,
No. C-05-3539, 2006 WL 680553 (N.D. Cal. Mar. 14, 2006) ..................... 8

20
*Lewis v. Ward*,
21
852 A.2d 896 (Del. 2004) .......................................................................... 6, 7

22
*Malone v. Red Top Cab Co.*,
16 Cal. App. 2d 268 (1936) .................................................................... 11, 12

23
*Marks v. Minn. Mining & Mfg. Co.*,
187 Cal. App. 3d 1429, 232 Cal. Rptr. 594 (1986) ........................... 5, 6, 8, 9

24
*MBIA Insurance Corp. v. Countrywide Home Loans*,
Index No. 602825/08 (Sup. Ct., N.Y. Co. April 29, 2010) ................... 10, 11

25
*Nestle U.S.A. v. Travelers Cas. & Surety Co.*,
Case No. CV98-5515-HLH(Mcx), 1998 U.S. Dist. LEXIS 17287
26
(C.D. Cal. 1998) ............................................................................................ 4

27
*R&R Sails, Inc. v. Ins. Co. of the State of Pa.*, 610 F. Supp. 2d 1222
(S.D. Cal. 2009) ............................................................................................ 4

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

*Ray v. Alad Corp.*,
　19 Cal. 3d 22, 136 Cal. Rptr. 574 (1977) .................................................. 2, 5, 6, 8

4

*Schneider v. California Dep't of Corr.*,
　151 F.3d 1194 (9th Cir. 1998) ......................................................................... 7, 8

5

*Strahm v. Fraser*,
　32 Cal. App. 447 (1916) ...................................................................................... 11

6

*Sunnyside Development Co. v. Opsys Ltd.*,
　No. C 05 0553, 2007 WL 2462142 (N.D. Cal. Aug. 29, 2007) ............................ 7

7

8

9

**STATUTES**

Del. Code Ann. tit. 8, § 259(a) ...................................................................................... 6

10

11

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 306 ..................................................... 3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PRELIMINARY STATEMENT**[1]

2   Plaintiffs do not dispute the key points that require dismissing the

3   Amended Complaint's claims against BAC and NB:

4   • To state a successor-liability claim under Delaware's *de facto* merger

5   doctrine, the complaint must allege that the asset sale was designed to

6   disadvantage shareholders or creditors.

7   • The amended complaint contains no such allegations regarding either

8   (i) CFC's July 2008 merger into a BAC subsidiary in exchange for

9   BAC stock, or (ii) BAC's November 2008 purchase of certain of

10   CFC's (and its subsidiary, Countrywide Home Loans, Inc.'s (CHL))

11   assets.

12   Accordingly, the Amended Complaint's successor-liability claims should be

13   dismissed.

14   Plaintiffs try to salvage their claims by arguing that the Amended

15   Complaint pleads a *de facto* merger under California law.  That effort fails for two

16   reasons.

17   First, California law does not apply.  Because this Court has federal-

18   question jurisdiction, federal choice-of-law principles govern.  Under those

19   principles, Delaware law applies, because (i) the Court should apply the law of the

20   state with the greatest interest in determining the circumstances under which

21   successor liability should be imposed on a parent company for its subsidiary's

22   conduct; and (ii) Delaware—where both BAC and CFC are incorporated—has the

23   greatest interest here.  In arguing for California law, Plaintiffs incorrectly rely on

24   California's choice-of-law rules, which do not apply here because the Court is not

25   sitting in diversity jurisdiction applying California substantive law.

26   _____

[1]   Unless otherwise specified, all defined terms shall have the meaning ascribed
27   to them in BAC and NB Holdings' Memorandum of Points and Authorities
in Support of Their Motion to Dismiss the Amended Consolidated Class
28   Action Complaint, all citations are omitted and all emphasis is added.

1   Second, even if California law were to apply as Plaintiffs contend,
2   Plaintiffs' *de facto* merger theory would still fail.  The very authorities Plaintiffs
3   cite show that California, like Delaware, requires that an asset transfer was
4   designed to disadvantage shareholders or creditors: "The [*de facto* merger]
5   exception has been invoked where one corporation takes *all* of another's assets
6   without providing *any* consideration that could be made available to meet claims of
7   the other's creditors . . . ."[2]  These essential allegations are absent here.  To the
8   contrary, Plaintiffs do not dispute that BAC provided valuable consideration
9   (including by assuming certain CFC debts and guarantees) when BAC acquired
10   CFC assets in November 2008.  Nor can Plaintiffs overcome this defect by citing
11   anecdotal evidence of ordinary business-integration activities—much of which
12   appears nowhere in the Amended Complaint.  This Court has already rejected the
13   identical integration argument involving the identical companies when it dismissed
14   (without leave to amend) an identical successor-liability claim in *Argent*.[3]  This
15   case is no different and should likewise be dismissed.

**ARGUMENT**

**I.   THE SUCCESSOR-LIABILITY CLAIM AGAINST BAC SHOULD BE DISMISSED.**

**A.   Delaware Law Applies to Any Effort to Disregard CFC's Corporate Form.**

Plaintiffs agree, as they must, that this Court should use state law to
decide whether CFC has *de facto* merged into BAC.  (Pls. Opp. at 5.)  But they
erroneously contend that the Court should apply the law of the forum unless BAC
identifies a conflict between California law and other applicable law.  (Pls. Opp. at
6).  That might be correct if this Court were sitting in diversity jurisdiction.  *See*

[2]   *Ray v. Alad Corp.*, 19 Cal. 3d 22, 28, 136 Cal. Rptr. 574, 578 (1977).
[3]   *Argent Classic Convertible Arbitrage Fund L.P. v. Countrywide Fin. Corp.*, No. CV 07-0797 (MRP), slip op. at 7–9 (C.D. Cal. Mar. 19, 2009).

1    *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141-42 (9th Cir. 2010) ("When a
2    federal court sits in diversity to hear state law claims, the conflicts laws of the
3    forum state—here California—are used to determine which state's substantive law
4    applies"; concluding under California choice-of-law rules that "[a]s a default, the
5    law of the forum state will be invoked, and the burden is with the proponent of
6    foreign law to show that the foreign rule of decision will further the interests of that
7    state").  But this is a federal-question case (Am. Compl. ¶ 18), in which "the court
8    should apply *federal*, not forum state, choice of law rules."  *In re Lindsay*, 59 F.3d
9    942, 948 (9th Cir. 1993) (collecting cases).  The authorities on which Plaintiffs rely
10   do not apply this standard, and are therefore inapposite.  *See Berg Chilling System,*
11   *Inc. v. Hull Corp.,* 435 F.3d 455, 462 (3d Cir. 2006) (applying forum state's choice-
12   of-law rules "because in an action based on *diversity of citizenship jurisdiction*, we
13   must apply the substantive law of the state in which the District Court sat");
14   *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1101 n.1 (E.D. Mich. 1997)
15   (observing that "[s]ince jurisdiction arises under federal law rather than by
16   diversity, forum state choice of law is not mandated," but concluding that "I need
17   not choose between" federal or forum state choice-of-law rules "[b]ecause analysis
18   under either framework leads" to the same result).

19           The governing federal choice-of-law rules require that this Court apply
20   Delaware law.  (*See* Def. Mem. at 7.)  In determining the liabilities of a corporation,
21   the Restatement (Second) of Conflict of Laws looks to the law of the state with the
22   strongest relationship to the dispute, which is the "local law of the state of
23   incorporation."  Restatement (Second) of Conflict of Laws § 306.  As Plaintiffs'
24   own authority acknowledges, *de facto* merger liability implicates corporate law.
25   *See Berg,* 435 F.3d at 464–65 (observing that successor-liability theories are "all
26   founded in corporate and contract law" and that "the *de facto* merger exception is
27   not strictly contractual").  In these circumstances, where a plaintiff is trying to
28   impose liability on a parent corporation for the acts of its subsidiary, the Court

1    should apply the law of the alleged successor-in-interest's state of incorporation,

2    which has the greatest interest in disputes concerning efforts to disregard the

3    successor's corporate form.  *See, e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126

4    F. Supp. 2d 1248, 1276–77 (N.D. Cal. 2000) (applying law of alleged successor's

5    state of incorporation in dismissing successor liability claim).   BAC is a Delaware

6    corporation.  Thus, under the governing federal choice-of-law principles, it is

7    Delaware—not California, as Plaintiffs contend—that has the greatest interest in

8    this action's outcome.  (Pls. Opp. at 8–9.)  Plaintiffs' remaining cases do not

9    warrant a different result, because none involves an alleged *de facto* merger.[4]

10          **B.    The Amended Complaint Does Not State a Successor-Liability Claim Under The "de Facto" Merger Doctrine.**

11

12                Plaintiffs do not dispute that Delaware law recognizes a *de facto*

13   merger only where (among other things) an asset sale was engineered to

     disadvantage shareholders or creditors.  *See, e.g.*, *McKesson,* 126 F. Supp. 2d at

14   1276–77.  (Def. Mem. at 7–8.)  Yet, the Amended Complaint does not allege that

15   BAC or CFC structured either transaction at issue—(i) the June 2008 forward

16   triangular merger of CFC into a BAC subsidiary; or (ii) BAC's November 2008

17   acquisition of certain CFC assets (from CFC and CHL) in exchange for, among

18   other consideration, BAC's assumption of substantial CFC liabilities and

19   guarantees—to harm CFC's shareholders or creditors.  Absent allegations that those

20   transactions were "structured to disadvantage [the] creditors or shareholders," as

21

22   _____

23   [4]      See *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983) (applying United States law to a foreign sovereign-immunity issue involving a Cuban bank); *Hernandez v. Burger*, 102 Cal. App. 3d 795, 162 Cal. Rptr. 564 (4th Dist. 1980) (concluding that Mexican law limiting liability applied to tort claims for an accident occurring in Mexico); *Nestle U.S.A. v. Travelers Cas. & Surety Co.*, Case No. CV98-5515-HLH(Mcx), 1998 U.S. Dist. LEXIS 17287 (C.D. Cal. 1998) (choosing applicable law for an insurance coverage dispute); *R&R Sails, Inc. v. Ins. Co. of the State of Pa.*, 610 F. Supp. 2d 1222 (S.D. Cal. 2009) (same); *High Country Linens, Inc. v. Block*, No. C 01-02180 CRB, 2002 WL 1998272 (N.D. Cal. Aug. 20, 2002) (choosing law to apply to claims for interference with contractual relations and common law trademark infringement).

24

25

26

27

28

1    Delaware law requires, Plaintiffs' successor-liability claim should be dismissed.

2    *McKesson*, 126 F. Supp. 2d at 1276–77.

3            The outcome would be no different under California law.  (Pls. Opp. at

4    10–12.)  In fact, Plaintiffs have insisted that successor-liability law in Delaware and

5    California is "substantially similar."  (Pls. Opp. at 7 (citing *Atchison, Topeka &*

6    *Santa Fe Ry. Co. v. Brown & Bryant*, 159 F.3d 358, 363 (9th Cir. 1988) (observing

7    that the law of all fifty states on successor liability is "largely uniform")).)  Like the

8    governing Delaware-law cases, the California *de facto* merger cases on which

9    Plaintiffs rely require allegations depicting an intent to harm creditors or

10   shareholders, such as by transferring assets without consideration or leaving the

11   seller an empty shell:

12   •    "The *de facto* merger doctrine has been applied in situations where the

13        assets of one company are transferred to a successor without an

14        exchange of consideration that could be used to offset the merging

15        company's liabilities."  *625 3rd St. Assoc., L.P. v. Alliant Credit Union*,

16        633 F. Supp. 2d 1040, 1046 (N.D. Cal. 2009) (applying California

17        law.

18   •    "[T]he purchase of [the seller's] assets did not amount to a

19        consolidation or merger.  This exception has been invoked where one

20        corporation takes *all* of another's assets without providing *any*

21        consideration that could be made available to meet claims of the

22        other's creditors . . . ."  *Ray,* 19 Cal. 3d at 28.

23   •    "The [*de facto* merger] exception applies where the assets of one

24        corporation are transferred without consideration which can be made

25        available to satisfy claims or where the consideration consists wholly

26        of shares of the purchaser's stock which are promptly distributed to the

27        seller's shareholders in conjunction with the seller's liquidation."

28        *Marks v. Minn. Mining & Mfg. Co.*, 187 Cal. App. 3d 1429, 1435, 232

1     Cal. Rptr. 594, 597 (1986).

2     Neither transaction alleged in the Amended Complaint qualifies as a *de facto*

3     merger under this standard.

4         First, CFC's June 2008 merger into BAC subsidiary Red Oak in

5     exchange for BAC stock was not an asset transfer; it was a forward triangular

6     merger in which CFC merged into a BAC subsidiary.  By operation of Delaware

7     law, that BAC subsidiary succeeded to CFC's assets *and* liabilities.[5]  Triangular

8     mergers are "common and have a myriad of legitimate justifications."  *Lewis v.*

9     *Ward*, 852 A.2d 896, 906 (Del. 2004).

10        Second, although the November 2008 transaction was an asset transfer,

11    Plaintiffs concede that BAC provided consideration (by, among other things,

12    assuming approximately $16.6 billion of liabilities and guarantees) in exchange for

13    CFC assets (including CHL assets) in November 2008.  (Pls. Opp. at 11 (quoting

14    this Court's finding in *Argent* that BAC assumed debt "in consideration of the asset

15    purchase").)  That consideration distinguishes the CFC asset sale under the standard

16    applied in Plaintiffs' authorities, the linchpin of which is the exchange of assets

17    either for nothing or for "shares of the purchaser's stock which are promptly

18    distributed to the seller's shareholders in conjunction with the seller's liquidation,"

19    leaving the seller an empty shell.  *Ray*, 19 Cal. 3d at 28.  Plaintiffs all but concede

20    this decisive distinction in their opposition:  "for the transaction to be considered a

21    *de facto* merger . . . the acquirer [must] pay for the target company's assets

22    *exclusively in stock*."  (Pls. Opp. at 8.)  But BAC paid for the assets by providing

23    more than $16.6 billion in value (Close Decl., Ex. 6 at 399), and so Plaintiffs' *de*

24    _____

25    [5]    Del. Code Ann. tit. 8, § 259(a) ("When any merger or consolidation shall have become effective under this chapter, . . . the constituent corporations shall become a new corporation, or be merged into [one of the constituent] corporations, as the case may be, . . . being subject to all the restrictions, disabilities and duties of

26    each of such corporations so merged or consolidated; . . . and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said

27    surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.").

28

1    *facto* merger argument fails even under the standard they advocate.

2              Unable to allege the touchstone element of a *de facto* merger, Plaintiffs

3    resort to obfuscating the facts in attempting to satisfy the other *de facto* merger

4    elements:

5              *Continuity of ownership.*  In asserting that "BAC paid Countrywide

6    shareholders exclusively in BAC stock when it acquired Countrywide" (Pls. Opp. at

7    10), Plaintiffs refer to the wrong transaction.  CFC's merger with a BAC subsidiary

8    in exchange for BAC stock was not an asset transfer that could qualify as a *de facto*

9    merger—rather, it was a "common" *de jure* merger in which the BAC subsidiary

10   succeeded to all of CFC's assets and liabilities as a matter of law.  *See Lewis*, 852

11   A.2d at 906.  Nor would that subsidiary's November 2008 sale of CFC assets to

12   BAC satisfy the continuity-of-ownership requirement, because the consideration for

13   that transfer was not BAC stock, but rather BAC's assumption of CFC debts and

14   guarantees, among other things.  Plaintiffs inappropriately attempt to blur these

15   transactions.  *See Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05 0553, 2007 WL

16   2462142, at *9 (N.D. Cal. Aug. 29, 2007) (rejecting *de facto* merger theory because

17   plaintiff was "selectively characterizing the 2002 and 2004 transactions as a single

18   transaction in certain respects and as separate transactions in other respects").

19             *Business continuation and integration.*  Plaintiffs do not dispute this

20   Court's holding in *Argent* that ordinary business-integration activities do not depict

21   a *de facto* merger.  (Def. Mem. at 9.)  Accordingly, their assertion that "BAC and

22   Countrywide have consolidated business operations" is immaterial.  (Pls. Opp. at

23   10.)  Moreover, Plaintiffs base that argument substantially on anecdotal news

24   articles or loose statements that they attach to their opposition, including that BAC

25   is "working to integrate Countrywide's 1,000 mortgage offices" and intends to

26   "leverage Countrywide's mortgage origination and servicing capabilities."  (Pls.

27   Opp. at 10.)  These allegations appear nowhere in the Amended Complaint, and

28   therefore should not be considered on this motion.  *See, e.g., Schneider v.*

1    *California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court may

2    not look beyond the complaint to a plaintiff's moving papers, such as a

3    memorandum in opposition to a defendant's motion to dismiss."); *Jones v.*

4    *Thyssenkrupp Elevator Corp.*, No. C-05-3539, 2006 WL 680553, at *2 (N.D. Cal.

5    Mar. 14, 2006) ("[T]he court may not consider new allegations and exhibits

6    contained in plaintiff's opposition.").  And because these statements involve

7    nothing more than ordinary business-integration steps, they would not support a *de*

8    *facto* merger finding in any event.

9              *Cessation of operations.*  Plaintiffs' assertion that "Countrywide has

10    ceased operations" is legally insufficient and factually incorrect.  (Pls. Opp. at 11.)

11    The very authorities cited by Plaintiffs require the asset seller not only to cease its

12    operations, but also to dissolve entirely, "thus sheltering its assets from creditors."

13    *Chrysler*, 972 F. Supp. at 1111; *see also Ray*, 19 Cal. 3d at 28–29 (refusing to find

14    *de facto* merger despite seller's subsequent dissolution, because of consideration

15    given for asset sale); *Marks*, 187 Cal. App. 3d at 1437–38 (finding *de facto* merger

16    when subsidiary was "reorganized as a division of [its parent] and then dissolved").

17    When the purchaser and seller continue as "separate entities" after the asset sale,

18    there can be no *de facto* merger.  *Chrysler*, 972 F. Supp. at 1111.  Here, Plaintiffs

19    do not dispute that CFC remains a wholly owned BAC subsidiary.  (Def. Mem. at

20    4.)  Rather, in addition to citing the CFC asset sale, their opposition merely

21    rehashes their allegations that BAC (i) retired CFC's brand and website, without

22    contesting BAC's argument that such superficial changes carry no weight under the

23    *de facto* merger doctrine; and (ii) consolidated CFC into BAC's financial

24    statements, without contesting BAC's argument that such consolidation was in fact

25    required under the securities laws.  (*Compare* Pls. Opp. at 3 *with* Def. Mem. at 9–

26    10.)

27

28

1                 *BAC's assumption of CFC obligations.*  Equally off-base is Plaintiffs'

2 assertion that "the Complaint's allegations" show that BAC assumed "obligations

3 sufficient to continue [CFC's] underlying business."  (Pls. Opp. at 12.)  In fact,

4 Plaintiffs point only to the Court's *Argent* decision and a lone paragraph in the

5 Amended Complaint in alleging that BAC (i) assumed "certain" unspecified CFC

6 debts and guarantees in the asset sale (Am. Compl. ¶ 30), and (ii) agreed to

7 restructure certain existing CFC mortgages.  (Pls. Opp. at 11–12.) Plaintiffs do not

8 contest this Court's ruling in *Argent* that assuming *some* of an acquired subsidiary's

9 liabilities does not imply that the acquirer will pay others.  (Def. Mem. at 10.) Nor

10 does the Amended Complaint allege that BAC assumed the "normal operating

11 liabilities" that Plaintiffs' own authority requires.  *Marks*, 187 Cal. App. 3d at 1436

12 (finding *de facto* merger where, among other things, "all [the seller's] normal

13 operating liabilities were assumed" by the acquirer).  Even if the Amended

14 Complaint were to contain such an allegation, that alone would not be enough to

15 plead a *de facto* merger.  As Plaintiffs' authorities recognize, Plaintiffs must plead

16 *all* the elements to make out a *de facto* merger claim, which Plaintiffs have not

17 done.  *Compare Marks*, 187 Cal. App. 3d at 1437 (requiring "all of the indicia of a

18 de facto merger" to impose successor liability) *with Berg*, 435 F.3d at 468-70

19 refusing to impose successor liability where plaintiff did not satisfy all de facto

20 merger elements).

21                 Plaintiffs' half-hearted effort distinguish this case from *Argent* falls

22 flat.  The core allegations in both actions are the same.  The challenged transactions

23 are the same:  (i) the stock-for-stock merger between CFC and a BAC subsidiary,

24 and (ii) BAC's purchase of CFC assets (including those of CFC's subsidiary) in

25 exchange for its assumption of substantial CFC debts and guarantees and other

26 consideration.  The allegations' common theme is the same:  the transactions

27 allegedly constitute a *de facto* merger because BAC is "integrating" CFC's business

28 and operations.  (*Compare Argent*, slip op. at 8 (reciting allegation that BAC was

BAC AND NB'S REPLY MEMO ISO MOTION
TO DISMISS
2:10 CV-00302 MRP (MAN)

1  "integrat[ing]" CFC) *with* Pls. Opp. at 11 (arguing that BAC is "working to

2  integrate" CFC's mortgage business).  And the result should be the same—

3  dismissal without leave to amend.

4  **C.   Plaintiffs' Reliance on the *MBIA* Decision Is Unavailing.**

5  As expected, in arguing that BAC and CFC *de facto* merged, Plaintiffs

6  rely heavily on the New York Supreme Court's decision in *MBIA Insurance Corp.*

7  *v. Countrywide Home Loans*, Index No. 602825/08 (Sup. Ct., N.Y. Co. April 29,

8  2010) (Close Decl., Ex. 10).  But Plaintiffs nowhere address the fundamental flaw

9  in *MBIA* that BAC identified in its opening memorandum—that decision failed to

10  require MBIA to allege that the BAC–CFC transactions were engineered to harm

11  CFC's shareholders and creditors.  (*See* Def. Mem. at 11–13.)  For this reason

12  alone, *MBIA*'s holding is wrong and should not be adopted here.

13  Further, *MBIA*'s determinations that the complaint there adequately

14  pleaded the elements of *de facto* merger liability is at odds with both this Court's

15  *Argent* decision and California law (on which Plaintiffs here rely):

16  •  *MBIA* held that the complaint there adequately pleaded a continuity of

17  shareholders through an allegation that BAC acquired CFC in

18  exchange for BAC stock.  *MBIA*, slip op. at 13.  But as discussed

19  above, the transaction that Plaintiffs allege gave rise to the *de facto*

20  merger between BAC and CFC was an asset purchase in exchange for

21  more than $16.6 billion in consideration.  Even under the standard

22  Plaintiffs advocate, that transaction cannot satisfy the ownership-

23  continuity requirement.  (*See* p. 7, *supra*.)

24  •  The court in *MBIA* found that allegations of normal integration

25  activities between BAC and CFC sufficed to state a claim that BAC

26  intended to "absorb" CFC.  *MBIA*, slip op. at 15.  But as this Court

27  correctly held in *Argent*, such ordinary integration activities are

28  irrelevant to the *de facto* merger analysis.  *See Argent*, slip op. at 8.

BAC AND NB'S REPLY MEMO ISO MOTION
TO DISMISS
2:10 CV-00302 MRP (MAN)

1    •    Plaintiffs argue that the *MBIA* decision concluded that transferring
2         CFC's assets adequately alleged cessation of its ordinary business
3         activities.  *MBIA*, slip op. at 14.  But as Plaintiffs' own authorities
4         show, this is not enough:  the continued parallel existence of the two
5         companies defeats any *de facto* merger claim.  (*See* p. 8, *supra*.)

6

7         In view of these fundamental distinctions between *MBIA* and this case,
8    this Court should reaffirm its decision in *Argent* and dismiss the *de facto* merger
9    claims.

10
         D.    **The Amended Complaint's Allegation That BAC Is a Successor to**
11             **CSC, CCM and CHL Is Conclusory.**

12
         Plaintiffs' opposition makes no attempt to defend the Amended
13
    Complaint's conclusory allegation that BAC is also a successor to three other
14
    Countrywide entities.  (Am. Compl. ¶ 233.)  Absent any factual allegations to
15
    support this bare legal conclusion, Plaintiffs' successor-liability claim based on this
16
    allegation must be dismissed.  (Def. Mem. at 13.)
17

18   **II.    THE SUCCESSOR-LIABILITY CLAIM AGAINST NB IS ALSO**
         **DEFICIENT.**
19

20         Plaintiffs' opposition makes clear that its successor-liability claim
21   against NB rests on a solitary, unsupported allegation that CHL sold "substantially
22   all of its assets" to NB.  (Am. Compl. ¶ 31; Pls. Opp. at 12.)  Even accepting that
23   allegation as true, an asset sale alone does not transfer the seller's liabilities, as this
24   Court observed in *Argent*.  (Def. Mem. at 14; *see also supra* at 9.)  Equally
25   defective is Plaintiffs' afterthought remark in their opposition that "Defendants
26   acquired . . . none of [CHL's] liabilities."  (Pls. Opp. at 13.)  As Plaintiffs' own
27   authority makes clear, the key factor is the consideration the buyer provided, not the
28   liabilities it assumed.  *See Malone v. Red Top Cab Co.,* 16 Cal. App. 2d 268, 273

1  (1936) (imposing obligation on buyer "to meet the seller's debts or liabilities . . .

2  where, as here, one corporation takes all the property of another corporation,

3  *without any consideration* passing to the selling corporation").[6]  Here, the Amended

4  Complaint fails to allege any facts about CHL's alleged asset sale, let alone what

5  consideration was exchanged.  Plaintiffs' conclusory assertion that "NB should be

6  liable for the conduct of CFC, CSC, and CCM" is similarly bare.  (Pls. Opp. at 13

7  n.7.)  Both claims against NB should therefore be dismissed.  (Def. Mem. at 13–

8  14.)

9                                    **CONCLUSION**

10         Plaintiffs do not attempt to argue that they have pleaded a *de facto*

11  merger under Delaware law.  And for good reason:  the Amended Complaint

12  contains no allegations that either CFC's July 2008 acquisition by a BAC

13  subsidiary or the November 2008 sale of assets to BAC was designed to

14  disadvantage shareholders or creditors.  Although Plaintiffs try to neutralize this

15  defect by erroneously arguing under California law, the choice-of-law principles

16  that apply in this federal-question case require the Court to apply the law of the

17  state of incorporation, not the forum.  And the outcome would be no different in

18  any event:  California also requires allegations showing intentional harm to

19  creditors—*i.e.*, that an asset sale involved no exchange of consideration.

20  / / /

21  / / /

22  / / /

23  / / /

24  ──────────────

[6]     Plaintiffs' other authorities likewise require allegations showing an intent to
25  harm creditors, which the Amended Complaint lacks.  *See Blank v. Olcovich Shoe
Corp.*, 20 Cal. App. 2d 456, 461 (1937) ("[C]orporations cannot escape liability by
26  a mere change of name or shift of assets . . . when actual fraud or the rights of
creditors are involved . . . ."); *Strahm v. Fraser*, 32 Cal. App. 447, 448 (1916)
27  (requiring proof that "a transfer of the corporate assets from the old to the new
corporation" was "done to hinder, delay, and defraud creditors of the old
28  corporation").

1 Because the Amended Complaint contains no such allegations against either BAC

2 or NB—indeed, Plaintiffs do not contest that BAC transferred more than $16.6

3 billion in value in exchange for the assets—Plaintiffs' successor-liability claims

4 should be dismissed.

5

6          Dated:  September 29, 2010

7                                              Respectfully submitted,

8                                              SETH ARONSON
                                               MATTHEW CLOSE
9                                              O'MELVENY & MYERS LLP

10

11                                             By:  /s/ Matthew Close
                                                    MATTHEW CLOSE
12
                                               *Attorneys for Defendants*
13                                             *Bank of America Corporation and NB*
                                               *Holdings Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28