LINKS: 145, 146, 149, 152, 156, 158

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiff,<br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.<br><br>Defendants. | Case No. 2:10-cv-00302-MRP-MANx<br><br>ORDER RE: MOTIONS TO DISMISS AMENDED CLASS ACTION CONSOLIDATED COMPLAINT |

## I.  INTRODUCTION AND BACKGROUND

From 2005 to 2007, Countrywide was the nation's largest residential mortgage lender.  AC ¶ 4.  During that period, Countrywide originated and purchased residential mortgages and home equity lines of credit ("HELOC") through its subsidiary Countrywide Home Loans ("CHL").  *Id*. at ¶ 28.  Between 2005 and 2007, CHL originated or purchased a total of approximately $1.4 trillion in mortgage loans.  *See* Countrywide Fin. Corp. 2007 SEC Form 10-K (filed Feb. 29, 2008) at 29.[1]  Countrywide's core business was to originate and purchase residential mortgage loans, which it then sold into the secondary market, principally to make up pools of mortgage-backed securities ("MBS").

---

[1] The Court takes judicial notice of public documents filed with the Securities Exchange Commission.  *Dreiling v. Am. Express Co.*, 458 F.2d 942, 946 n.2 (9th Cir. 2006).

1       Plaintiffs filed this putative class action individually and "on behalf of a class of
2  all persons or entities who purchased or otherwise acquired beneficial interests in" certain
3  MBS in the form of certificates issued in 427 separate offerings (the "Offerings")
4  between January 25, 2005 and November 29, 2007 "pursuant and/or traceable to the
5  Offering Documents" and were damaged thereby.  AC ¶¶ 1, 186.  The claims are brought
6  against the Countrywide Defendants[2] pursuant to Sections 11, 12 and 15 of the Securities
7  Act of 1933.  Plaintiffs contend the Countrywide Defendants made materially untrue or
8  misleading statements or omissions regarding Countrywide's loan origination practices in
9  public offering documents associated with 427 separate offerings.  Also named as
10 defendants are Bank of America, Countrywide special-purpose issuing trusts, several
11 current or former Countrywide officers and directors, and a number of banks that served
12 as underwriters on one or more of the offerings at issue.
13      On May 14, 2010, the Court appointed Iowa Public Employees' Retirement
14 System ("IPERS") as Lead Plaintiff in this action because it had the greatest financial
15 interest.  Docket No. 120.  On July 13, 2010, IPERS and three other institutions[3], which
16 joined as named plaintiffs (collectively, "Plaintiffs"), filed an Amended Consolidated
17 Class Action Complaint ("AC").  Docket No. 122.  All defendants filed motions to
18 dismiss the AC.  After the motions were fully briefed, the Court heard extensive oral
19 argument on October 18, 2010.  The Court DISMISSES the action without prejudice on
20 the basis of standing and the statute of limitations.  Plaintiffs will have thirty (30) days to
21 amend their pleading.  Although there are many other flaws in the AC, the Court reserves
22 judgment on the remaining issues until after Plaintiffs have cured the chief pleading
23 deficiencies which are potentially dispositive of this action.

---

[2] The operative complaint refers to Countrywide Financial Corporation ("CFC"), Countrywide Securities Corporation ("CSC"), Countrywide Home Loans ("CHL"), Countrywide Capital Markets ("CCM") as the "Countrywide Defendants."  Plaintiffs also purport to include Bank of America, and NB Holdings Corp. in this category.

[3] The additional named plaintiffs are the General Board of Pension and Health Benefits of the United Methodist Church, Orange County Employees' Retirement System, and Oregon Public Employees' Retirement System.

## II. THE STATE LITIGATION

This action was commenced on January 14, 2010, nearly five years after the earliest challenged Offering and more than two years after the last challenged Offering. Docket No. 1. The plaintiffs and law firms that filed this action in federal court had previously litigated a separate case, involving the same group of Offerings, in California Superior Court. That case, *Luther v. Countrywide Home Loans Servicing LP*, No. BC 380698 (Cal. Super. Ct.) was dismissed with prejudice on January 6, 2010, when the Superior Court sustained a demurrer to the complaint. The Superior Court held that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") gave the federal courts exclusive subject matter jurisdiction over class action claims under the Securities Act of 1933. A week later, the plaintiffs filed this action in federal court and now argue that the existence of the first state court putative class action lawsuit tolled the statute of limitations for this action under the *American Pipe*[4] tolling doctrine.

At the time that *Luther* was dismissed, the state court case was a consolidation of the original *Luther* action, which was filed on November 14, 2007, Countrywide Defendants' Request for Judicial Notice ("CW RJN") Exh. 25, and a separate suit, *Washington State Plumbing and Pipefitting Pension Trust v. Countrywide Financial Corp. et al.*, No. BC 392571 (Cal. Super. Ct.) filed on June 12, 2008, CW RJN Exh. 27. The *Luther* complaint had been amended on September 9, 2008. CW RJN Exh. 26. *Luther* and *Washington State* were consolidated on October 16, 2008 when a consolidated complaint was filed which encompassed the same 427 Offerings at issue in this case. CW RJN Exh. 28. During the process of amendment and consolidation of these two cases, parties and claims were dropped and added. Plaintiffs have offered no explanation of precisely how the state litigation has preserved their claims before this Court, nor has it offered any explanation of how the parties named in this case are individually affected by the amendments in the state case.

---

[4] *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

## III. DISCUSSION

As stated, there are numerous problems caused by the generality of the allegations in the AC, many of which Defendants have pointed out in their comprehensive motions to dismiss. Defendants have raised many meritorious issues, and the Court will not resolve them all in this Order. However, there are two threshold issues that the Court will address: standing and the statute of limitations. Today, the Court GRANTS the motion to dismiss with leave to amend on the grounds of the statute of limitations and standing. The Court will rule on the remaining issues after Plaintiffs have amended their complaint to: (1) eliminate those securities for which the named Plaintiffs do not have standing, (2) eliminate those individual defendants and claims for which the statute of limitations has expired, and (3) allege with specificity which securities have benefitted from tolling by the filing of which complaints during which time period.[5] In other words, Plaintiffs must trace their claims back to their accrual date and identify the putative class action that they claim has tolled the statute of limitations for each of their claims.

### A. MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely

---

[5] Although the Court does not today rule on defendant Eric P. Sieracki's motion to strike (Docket No. 145), the Court notes that the AC could be considerably condensed. The AC contains superfluous allegations, many of which are derived from complaints in other lawsuits.

conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

**B. STANDING**

Standing is a threshold question in every federal case because it determines the power of the court to entertain the suit. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish constitutional standing, a plaintiff must demonstrate that it has personally suffered an injury in fact that is fairly traceable to a defendant's alleged misconduct and is likely to be redressed by a decision in the plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). In a class action, the lead plaintiffs must show that they personally have been injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth*, 422 U.S. at 502. Undeniably, "[a] plaintiff may not avoid the standing inquiry merely by styling his suit as a class action." *Forsythe v. Sun Life Fin., Inc.,* 417 F. Supp. 2d 100, 119 (D. Mass. 2006).

Every court to address the issue in a MBS class action has concluded that a plaintiff lacks standing under both Article III of the U.S. Constitution and under Sections 11 and 12(a)(2) of the 1933 Act to represent the interests of investors in MBS offerings in which the plaintiffs did not themselves buy.[6] Under Article III, Plaintiffs lack standing

---

[6] *E.g.*, *In re IndyMac Mortgage-Backed Securities Litig.*, --- F. Supp. 2d ----, 2010 WL 2473243, at *3 (S.D.N.Y. June 21, 2010); *Public Employees' Retirement System of Mississippi v. Merrill Lynch*, --- F. Supp. 2d ----, 2010 WL 2175875, at *3 (S.D.N.Y. June 1, 2010); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010); *City of Ann Arbor Employees' Retirement System. v. Citigroup Mortgage Loan Trust, Inc.*, 703 F. Supp. 2d 253, 260-61 (E.D.N.Y. 2010); *Mass. Bricklayers & Masons Fund v. Deutsche Alt-A Securities*, 2010 WL 1370962, at *1 (E.D.N.Y. 2010); *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland Group, PLC*, --- F. Supp. 2d ----, 2010 WL 1172694, at *7-8 (S.D.N.Y. Mar. 26, 2010); *In re Lehman Bros. Secs. and ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp.

1 because they have no personal stake in the outcome and have suffered no injury from
2 offerings which they did not purchase.  Similarly, the 1933 Act provides a private right of
3 action for only a narrow group of persons.  A Section 11 claim can be asserted only by
4 "any person acquiring such security."  15 U.S.C. § 77k(a); *In re Wells Fargo Mortgage-*
5 *Backed Certificates Litigation*, 712 F. Supp. 2d 958, 963 (N.D. Cal. 2010) ("To have
6 standing to bring suit under Section 11, a plaintiff must have purchased a security
7 actually issued in the offering for which the plaintiff claims there was a false or otherwise
8 misleading registration statement. The burden of tracing shares to a particular public
9 offering rests with plaintiffs.")  Similarly, a Section 12(a)(2) claim can be asserted only
10 by "the person purchasing such security."  15 U.S.C. § 77*l*(a).  Federal courts have
11 consistently dismissed 1933 Act claims related to offerings in which the plaintiffs did not
12 purchase for lack of statutory standing.[7]

---

2d 299, 303-04 (D. Mass. 2009); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009); *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006).

[7] *E.g.*, *Public Employees' Retirement System of Mississippi v. Merrill Lynch*, --- F. Supp. 2d ----, 2010 WL 2175875, at *6 (S.D.N.Y. June 1, 2010) ("As with Section 11, liability under Section 12(a)(2) is strict liability, but once again this is offset by the short statute of limitations and by limiting standing to bring a Section 12(a)(2) claim to persons who have directly purchased the securities from the underwriting defendants in the subject public offering(s), and not in the secondary market."); *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 963-66 (N.D. Cal. 2010) ("To have standing to bring suit under Section 11, a plaintiff must have purchased a security actually issued in the offering for which the plaintiff claims there was a false or otherwise misleading registration statement. The burden of tracing shares to a particular public offering rests with plaintiffs."); *City of Ann Arbor Employees' Retirement System. v. Citigroup Mortgage Loan Trust, Inc.*, 703 F. Supp. 2d 253, 260 (E.D.N.Y. 2010)  ("In addition to Constitutional standing, a Plaintiff alleging a violation of Sections 11 or 12(s) must satisfy statutory standing requirements. Section 11 requires a plaintiff to show that he was a purchaser of the security at issue.  As to Section 12, a plaintiff must show, as referred to above, that the defendant is a 'statutory seller.'" (internal citations omitted)); *Mass. Bricklayers & Masons Fund v. Deutsche Alt-A Securities*, 2010 WL 1370962, at *1 (E.D.N.Y. 2010); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 304-05 (D. Mass. 2009) ("A plaintiff has standing to bring a section 12(a)(2) claim only against the person or entity from whom he directly purchased a security, including one who engaged in active solicitation of an offer to buy." (internal quotation marks and citation omitted)); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009).

Relying on this Court's decision in *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1166 (C.D. Cal. 2008), Plaintiffs argue that they have standing to sue over any offering issued pursuant to a common registration statement. Plaintiffs are mistaken. *In re Countrywide Fin. Corp. Sec. Litig.* was a shareholder suit brought on behalf of those who invested in Countrywide's business, and is thus distinguishable. The present suit is brought on behalf of those who invested in MBS. Each MBS is backed by a pool of unique loans, and the representations made in the prospectus supplements accompanying the issuance of those securities are themselves unique, focused on the specific loans underlying each offering and the specific underwriting standards and origination practices in effect at the time those specific loans were originated. Even where there is a common shelf registration statement, that statement contained only an illustrative form of a prospectus supplement. It was the final prospectus supplement filed with the SEC "[a]t the effective date of the offering of the Certificates" that contained "a description of the mortgage pool underlying the Certificates and the underwriting standards by which the mortgages were originated." AC ¶ 161. In this case, Plaintiffs' claims rely on separate disclosures or omissions made for each Offering in the individual prospectus supplements.

For the reasons stated in *In re Wells Fargo Mortgage-Backed Certificates Litigation* and *In re Lehman Bros. Mortgage-Backed Securities Litigation*, Plaintiffs have standing only with respect to the 81 Offerings in which the named plaintiffs purchased. *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 965 (N.D. Cal. 2010); *In re Lehman Bros. Secs. and ERISA Litig.*, 684 F. Supp. 2d 485, 490 (S.D.N.Y. 2010). Consequently, Plaintiffs must replead their causes of action with respect to securities actually purchased by Plaintiffs. If Plaintiffs seek to represent investors in all tranches, they must also specify in which tranches they invested. As another district court aptly explained:

> Given the length of the amended complaint in this matter, and the fact that most of Plaintiffs' claims have been dismissed on the ground that Plaintiffs

> lack standing, the court gives Plaintiffs leave to re-plead the causes of action that remain. The amended pleading (which will be the second such pleading) shall plead only the causes of action with respect to securities actually purchased by Plaintiffs. With respect to those Trusts, Plaintiffs shall specify in the pleading the tranches in which they invested. . . . Such pleading will put the court in a better position from which to evaluate the merits of the claims alleged . . . .

*Mass. Bricklayers & Masons Fund v. Deutsche Alt-A Securities*, 2010 WL 1370962, at *1 (E.D.N.Y. April 6, 2010).

## C. STATUTE OF LIMITATIONS

With respect to Section 11 and 12(a)(2) claims, Section 13 of the 1933 Act instructs:

> No action shall be maintained to enforce any liability created under section 77k [Section 11] or 77*l*(a)(2) [Section 12(a)(2)] of this title unless brought within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence. . . . In no event shall any such action be brought to enforce a liability created under section 77k or 77*l*(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l*(a)(2) of this title more than three years after the sale.

15 U.S.C. § 77m.

The filing of the *Luther* complaint on November 14, 2007, which contained claims with respect to the CWALT Offerings only, establishes that Plaintiffs discovered the basis of their CWALT claims before November 14, 2007. *See* CW RJN Exh. 25. The filing of the *Washington State* complaint on June 12, 2008, which contained essentially the same claims with respect to all 427 Offerings at issue in this case, establishes Plaintiffs discovered the basis of all of their claims before June 12, 2008. *See* CW RJN Exh. 27. Therefore, the one-year limitations period clearly appears to have expired for all the Offerings identified in *Luther* and *Washington State* because this lawsuit was filed on January 14, 2010.

Because the statute of repose bars suit more than three years after a security was bona fide offered to the public, Plaintiffs are prohibited from bringing Section 11 claims

on any Offering that occurred before January 2007 and Section 12(a)(2) claims on any Offerings which were sold January 2007. For Section 11 claims based on registered securities, the relevant date is either the date of registration or the date of the prospectus supplement, depending on whether the registration statement was filed before or after December 1, 2005.[8] For Section 12(a)(2) claims, a sale occurs when the parties enter into a binding contract for the sale of a security and become obligated to perform. *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992); *Amoroso v. S.W. Drilling Multi-Rig Partnership No. 1*. 646 F. Supp. 141, 143 (N.D. Cal. 1986). These dates may be determined as a matter of law and the Court requires the Plaintiffs to plead with respect to each security they allege to have purchased, on what date the security was bona fide offered to the public so the Court may determine for which securities the statute of repose bars suit.

**1. *Tolling***

First, the Court accepts Plaintiffs' general proposition that they are entitled to tolling under the doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny. In *American Pipe*, a putative class action was filed in district court, but was ultimately not certified because the district court found that the Rule 23 requirement of numerosity had not been met. The Supreme Court held that the statute of limitations was tolled as to litigants who had sought to intervene to pursue claims that were encompassed by the class action. *See generally* 414 U.S. at 550. In *Crown, Cork &*

---

[8] For MBS Offerings pursuant to shelf registration statements filed before December 1, 2005, the relevant "offering" date is the effective date of the registration statement. *See Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir. 1992). The Securities Offering Reform, adopted by the SEC effective December 1, 2005, changed the rules regarding the statute of repose trigger date for shelf offerings as they relate to Section 11 liability for issuers and underwriters, but not as they relate to directors and officers. 17 C.F.R. §§ 230.430B(f)(2), 230.430B(f)(4); *see In re Countrywide Fin. Corp. Secs. Litig.*, 2009 WL 943271, at *6-7 (C.D. Cal. Apr. 26, 2009). The new trigger date for MBS offerings pursuant to shelf registration statements filed on or after December 1, 2005 is the date of the prospectus supplement. However, with respect to directors and signing officers, the relevant date remains the effective date of the shelf registration statement.

1 *Seal*, the Supreme Court extended the tolling ruling to the individual claims of any person
2 who was a member of the purported class, not just to those who had sought to intervene.
3 462 U.S. 345, 350 (1983).  In both cases, the litigants seeking tolling were individual
4 plaintiffs who sought to bring the same claims as those asserted in the class action
5 lawsuit.  Later, the Ninth Circuit extended the rule to permit an unsuccessful putative
6 class action to toll for a subsequent putative class action where the plaintiffs were not
7 attempting to relitigate a an earlier denial of class certification, dismissal did not result
8 from an adverse decision on the merits, the claims were within the scope of the earlier
9 suit, and plaintiffs at all times vigorously pursued the litigation.  *Catholic Social Services,*
10 *Inc. v. Immigration and Naturalization Service*, 232 F.3d 1139, 1149 (9th Cir. 2002) (*en*
11 *banc*).

12 　　　　Defendants urge the Court to hold that because *American Pipe* is rooted in Federal
13 Rule of Civil Procedure 23, the doctrine applies only when the first putative class action
14 lawsuit is filed in federal court, and thus does not apply here where the first action was
15 filed in California state court.  The Ninth Circuit has not addressed this particular issue,
16 and this Court has devoted substantial time to its consideration.  Certainly, the topic
17 deserves lengthy written analysis, which the Court intends to provide at a later date.  For
18 the purposes of this Order, however, the Court merely indicates that it has concluded
19 *American Pipe* tolling applies in this case.

20 　　　　Moreover, the Court rejects Defendants' argument that *American Pipe* tolling does
21 not apply to the statute of repose.  Defendants' reliance on *Lampf* is misplaced because
22 there the Supreme Court addressed the equitable tolling doctrine of fraudulent
23 concealment.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350,
24 363 (1991).  Other courts have already recognized the distinction between the fraudulent
25 concealment tolling doctrine, which was incorporated into the one-year/three-year
26 structure of the statute of limitations, and *American Pipe* tolling, which is sometimes
27 referred to as "legal tolling".  *See Joseph v. Wiles*, 223 F.3d 1155, 1167-68 (10th Cir.
28

-10-

2000); *Arivella v. Lucent Technologies., Inc.*, 623 F. Supp. 2d 164, 177-78 (D. Mass. 2009) (collecting cases).

### 2. Tolling Depends on Standing

Second, the Court does agree with Defendants that the tolling applies only to securities where the named plaintiffs had actual standing to bring the lawsuit. Although Plaintiffs object that such a rule would place an onerous and impossible burden on a putative class member to determine whether the named plaintiffs upon which they are relying to protect their rights have standing to do so, the Court follows multiple other courts that have held in federal cases that the statute is tolled only as to claims where the named plaintiffs had standing. *E.g.*, *In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09-cv-01376-LHK, 2010 WL 4117477, at *7-8 (N.D. Cal. Oct. 19, 2010); *Boilermakers Nat'l Annuity Trust Fund v. WAMU Mortg. Pass Through Certificates*, No. 09-cv-00037, slip op. at 15-16 (W.D. Wash. Sept. 28, 2010); *Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006); *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998). This Court shares the concern of other district courts that extending *American Pipe* tolling to class action claims the original named plaintiffs had no standing to bring will encourage filings made merely to extend the period in which to find a class representative. *See In re Wells Fargo Mortgage-Backed Certificates Litig.*, 2010 WL 4117477, at *8.

That the preceding litigation occurred in state court, where the state court has in some cases ignored standing issues until the class certification stage, makes no difference to this Court's analysis. *See* Plaintiffs' Opposition Brief at 36 n.21. This case is distinguishable from the California case law on which Plaintiffs rely because both this case and the litigation which preceded it contain only federal claims under the Securities Act of 1933. *Luther* and *Washington State*, the state court cases upon which Plaintiffs rely for tolling of the statute of limitations, always contained only three federal claims. *See* CW RJN Exs. 25-28. This is a federal lawsuit and was a lawsuit over federal claims even when litigated in state court. The three Securities Act statutes at issue contain their

-11-

1  own standing requirements which the state court could not and would not have ignored.
2  Any putative class member relying on *Luther* and/or *Washington State* can fairly be
3  expected to understand that such a lawsuit would require a named plaintiff with standing
4  to protect their claims.

5      **3.  *Adequacy of Pleading***

6      Third, the Court agrees with Defendants that Plaintiffs have not adequately
7  pleaded their reliance on *American Pipe* tolling to preserve their claims.  Defendants have
8  been very specific in their arguments about why the statute of limitations bars many of
9  Plaintiffs' claims, even if *American Pipe* applies to permit tolling during the pendency of
10 the state law claims.[9]  In fact, some individual defendants have made a persuasive case
11 for why they should be eliminated from the lawsuit even if *American Pipe* applies.
12 Plaintiffs, however, failed to state in the AC that the statute of limitations is tolled and
13 have only generally stated in their opposition brief and at oral argument that *Luther*
14 and/or *Washington State* toll the statute of limitations on Plaintiffs' claims.[10]  The Court
15 requires the Plaintiffs to explain in the AC on what basis Plaintiffs believe their claims
16 have been tolled, and the effect of this tolling on individual claims and individual
17 defendants.

18     Plaintiffs argue that the law does not require them to plead compliance with the
19 statute of limitations because the statute of limitations is an affirmative defense.
20 However, the Court finds the AC will not suffice as it is.  The Court has before it
21 numerous parties and numerous securities.  Because of the complicated procedural
22 history of the *Luther* case—and in particular the timing of the addition and subtraction of

---

[9] Plaintiffs ask the Court to disregard the contents of Tabs 1-10 of the Countrywide Defendants'
Appendix in Support of Their Motion to Dismiss because, they argue, "the Court is capable of
synthesizing information."  Docket No. 183 at 3 n.1.  The Court is, indeed, capable of
synthesizing information if Plaintiffs had provided any.  As explained herein, Plaintiffs have
provided no information for the Court to synthesize with respect to the timeliness of their claims,
which on their face appear barred by the statute of limitations.

[10] Plaintiffs refer to the timeliness of their claims in paragraphs 220 and 230 of the AC.
Plaintiffs do not mention that they rely on tolling to preserve the claims.

various parties and claims—Plaintiffs must point to what lawsuit they rely upon to toll the claims of each named investor and at what point each claim accrued against each defendant in order to show the Court that their claims are plausible. *See Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### D. JPMORGAN IS DISMISSED

The Court GRANTS JPMorgan's motion to dismiss. Docket No. 159. Plaintiffs name JPMorgan Chase & Co. ("JPMorgan") in its purported capacity as "successor-in-interest" to Bear, Stearns & Co. Inc. ("Bear Stearns"), which allegedly underwrote a portion of certain of the Trusts. AC ¶¶ 42, 55. However, Plaintiffs allege that Bear Stearns merged with J.P. Morgan Securities, Inc. ("JPMSI"), a wholly-owned subsidiary of JPMorgan, not with JPMorgan itself. AC ¶ 42. Thus, JPMorgan cannot be the successor-in-interest to Bear Stearns, if Plaintiffs allege JPMSI is the successor-in-interest. Plaintiffs allege JPMorgan is the corporate parent of JPMSI, AC ¶ 42, however corporate parents are not vicariously liable for the acts of their subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (internal quotation marks and citation omitted)). The Court therefore DISMISSES JPMorgan.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED with leave to amend. Plaintiffs may file an amended complaint curing the deficiencies no later than thirty (30) days from the date of this Order. Plaintiffs may *not* add parties or claims to the complaint at this stage, but may ask for such leave at a later time. After Plaintiffs file the Second Amended Consolidated Class Action Complaint, the Court will consider further the other grounds for Defendants' motion to dismiss. No additional briefing by Defendants will be necessary, unless specifically ordered by the Court.

**IT IS SO ORDERED.**

DATED: November 4, 2010

*/s/ Mariana R. Pfaelzer*
Hon. Mariana R. Pfaelzer
United States District Judge