Lloyd Winawer (State Bar No. 157823)
lwinawer@goodwinprocter.com
**GOODWIN PROCTER LLP**
601 South Figueroa Street, 41st Floor
Los Angeles, California 90017
Telephone: 213-426-2500
Facsimile: 213-623-1673

Brian E. Pastuszenski (*pro hac vice*)
bpastuszenski@goodwinprocter.com
Inez H. Friedman-Boyce (*pro hac vice*)
ifriedmanboyce@goodwinprocter.com
Brian C. Devine (State Bar No. 222240)
bdevine@goodwinprocter.com
**GOODWIN PROCTER LLP**
53 State Street
Boston, MA 02109-2802
Telephone: 617-570-1000
Facsimile: 617-523-1231

*Attorneys for Defendants*
Countrywide Financial Corp.,
Countrywide Home Loans, Inc., CWALT,
Inc., CWMBS, Inc., CWABS, Inc.,
CWHEQ, Inc., Countrywide Capital
Markets, Countrywide Securities Corp.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTRYWIDE FINANCIAL CORPORATION, et al., <br><br> Defendants. | Case No. 2:10-CV-00302-MRP (MANx) <br><br> **COUNTRYWIDE DEFENDANTS' SUPPLEMENTAL BRIEF RE: TOLLING IN SUPPORT OF MOTION TO DISMISS** <br> **[Filed Pursuant To The Court's Order Of December 14, 2010]** <br><br> Courtroom: 12 <br> Judge: Hon. Mariana R. Pfaelzer |

1

# **TABLE OF CONTENTS**

2
                                                                                    **Page**

3

PRELIMINARY STATEMENT ............................................................... 1

ARGUMENT ...................................................................................... 2

   I.  Each MBS Tranche Is A Separate And Unique Security ............................. 2

   II. Many MBS Tranches Were Backed By Different Groups Of Loans ............ 7

   III.Plaintiffs' Claims As To Most MBS Tranches Are Untimely ....................... 13

CONCLUSION ................................................................................... 16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIBA/2145069.1

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*7547 Corp. v. Parker & Parsley Dev. Partners, L.P.,*
38 F.3d 211 (5th Cir. 1994) ...................................................................4

*Am. Pipe & Constr. Co. v. Utah,*
414 U.S. 538 (1974) .............................................................1, 2, 3, 15, 16

*City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.,*
703 F. Supp. 2d 253 (E.D.N.Y. 2010).....................................4, 12, 13

*In re Lehman Bros. Sec. & ERISA Litig.,*
684 F. Supp. 2d 485 (S.D.N.Y. 2010) ................................................13

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.,*
2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010) ..................................13

*Lewis v. Casey,*
518 U.S. 343 (1996) ............................................................................13

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
No. 08-CV-10783 (S.D.N.Y. Sept. 22, 2010) ...............................3-4, 13

*New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,*
No. 08-CV-05653 (S.D.N.Y. Dec. 15, 2010).....................................13

*Plumbers' Union No. 12 Local Pension Fund v. Nomura Asset Acceptance Corp.,*
658 F. Supp. 2d 299 (D. Mass. 2009).............................................4, 13

## FEDERAL STATUTES

15 U.S.C. § 77k.........................................................................................4

15 U.S.C. § 77l(a)(2) ...............................................................................4

LIBA/2145069.1

**PRELIMINARY STATEMENT**

In its order dated November 4, 2010 dismissing Plaintiffs' Amended Class Action Consolidated Complaint (the "Order"), this Court held that: (1) Plaintiffs lack constitutional and statutory standing to assert claims on behalf of investors in offerings of mortgage-backed securities ("MBS") in which they did not actually purchase MBS; and (2) any class action tolling under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), would apply only to offerings for which the *Luther*[1] state court named plaintiffs themselves had standing. *See* Ex. 1.[2] The Court ordered Plaintiffs to amend their complaint in accordance with its rulings on the threshold issues of timeliness and standing. *See id.* at 2, 4, 12-13. Plaintiffs then filed the Second Amended Class Action Complaint ("SAC"), and on December 14, 2010, the Court invited Defendants to submit supplemental briefing addressing Plaintiffs' amended allegations concerning tolling. *See* Ex. 2. This brief is being submitted at the Court's request.

As discussed below, the SAC incorrectly assumes that tolling extended to MBS certificates representing 190 unique and separate tranches that the *Luther* state court plaintiffs did not themselves purchase. Because the *Luther* plaintiffs did not buy those certificates, and thus had no standing to pursue claims based on those securities, the relevant limitations periods were not tolled for those securities and any claims based on those tranches are now time-barred.

More specifically, each tranche in an MBS offering is represented by a separate certificate which is itself a unique security, with its own unique CUSIP number, individual credit rating, different rights to distribution of principal and interest payments from the pooled mortgages, and distinct credit enhancement rights that protected pur-

---

[1] Plaintiffs allege that the applicable limitations and repose periods were tolled by the filing of two California state court class actions: *Luther v. Countrywide Home Loans Servicing, LP*, No. BC380698 (Cal. Super. Ct., Nov. 14, 2007), and *Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Fin. Corp.*, No. BC392571 (Cal. Super. Ct., June 12, 2008). These actions were later consolidated, and are collectively referred to herein as "*Luther*."

[2] All exhibit references are to the exhibits attached to the Countrywide Defendants' Request for Judicial Notice, which is being filed concurrently herewith.

COUNTRYWIDE DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

chasers of that security against losses.  In addition, most of the senior tranches included in the SAC were backed by unique subgroups of loans different from the loan groups that backed other tranches in the same MBS offerings.  Because the loan groups backing the certificates differed from tranche to tranche, the statements regarding underwriting and credit characteristics found in the prospectus supplements for those MBS deals were essentially different statements for different tranches given that the point of reference for those statements (the loan groups) differed from tranche to tranche.  Under the Court's Order, claims are tolled as to a security by the filing of a class action complaint only to the extent that the named plaintiff itself bought that security and had standing to pursue those claims.  Because the certificate for each tranche is a *different* security, to the extent that the *Luther* state court plaintiffs did not themselves buy particular tranches included in the SAC, the relevant limitations periods continued to run with respect to those tranches.  There are 190 such tranches in the SAC, and all claims based on them must be dismissed as untimely.  In addition, Plaintiffs here themselves purchased only nine of the remaining 18 tranches.  Because they have standing to pursue claims only as to those nine tranches, claims based on the other nine tranches likewise should be dismissed.

## ARGUMENT

### I.   Each MBS Tranche Is A Separate And Unique Security.

In its Order, the Court held that "tolling applies only to securities where the named plaintiffs [in the *Luther* class action] had *actual standing* to bring the lawsuit." Ex. 1 at 11 (emphasis added).  The Court explained that it "shares the concern of other district courts that extending *American Pipe* tolling to class action claims the original named plaintiff had no standing to bring will encourage filings made merely to extend the period in which to find a class representative." *Id*.  The Court also held that because each MBS security is backed by a unique group of mortgage loans, and because the statements about credit characteristics and underwriting practices in each prospectus supplement refer to a different group of loans, a named plaintiff will have standing

1    to represent other purchasers of that security only if the plaintiff itself bought that very

2    same security.[3]  Thus, for the SAC to state a timely claim with respect to the chal-

3    lenged securities, it must allege that one or more of the *Luther* named plaintiffs pur-

4    chased and thus had standing to assert claims as to each of those specific securities.[4]

5          Although Countrywide's counsel addressed the issue at oral argument, *see* Ex. 4

6    (Oct. 18, 2010 Hearing Tr.) at 35-37, 120-21, and although the Court instructed Plain-

7    tiffs to specify in the SAC the tranches (as well as the offerings) in which they bought

8    MBS, this Court has not yet ruled on whether Plaintiffs have standing to assert claims

9    as to MBS tranches they did not purchase.  In *NECA-IBEW Health & Welfare Fund v.*

10   *Goldman, Sachs & Co.*, No. 08-CV-10783-MGC (S.D.N.Y. Sept. 22, 2010) (Ex. 5),[5]

11   the one reported case that has decided this issue, Judge Cedarbaum held that MBS

12   plaintiffs have standing to sue only with respect to the particular tranches they actually

13   bought.  In *NECA-IBEW*, Judge Cedarbaum instructed the plaintiff:  "you can only

14   represent the class of persons or entities that purchased . . . the certificate from the

15   particular tranche from the particular trust that you purchased."  *Id*. at 8.  The Court

16   explained that "it must be the same tranche as yours," noting that "the effects are very

17   different in different tranches."  *Id*.; *see also id*. at 7 ("that's all you can sue for, your

18   _____

19   [3] Since this Court's Order, another district court in an MBS action similarly has held
     that "the *American Pipe* rule should not apply where the plaintiff that brought the
20   dismissed claim was found by the court to lack standing."  *New Jersey Carpenters
     Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08-CV-05653, slip op. at 4 (S.D.N.Y.
     Dec. 15, 2010).  As the *DLJ Mortg. Capital* court explained, "where a Plaintiff lacks
21   standing—there is no case," and "if there is no case, there can be no tolling."  *Id*.  The
     *DLJ Mortg. Capital* court also expressed the same concern that this Court noted in its
22   Order—namely, that "[i]f *American Pipe* applied in situations where the dismissed
     plaintiff was found by the court to lack standing, this would clearly 'encourage at-
23   tempts to circumvent the statute of limitation by filing a lawsuit without an appropri-
     ate plaintiff and then searching for one who can later intervene with the benefit of the
24   tolling rule.'  This is an untenable result."  *Id*. at 4 n.1.  (A copy of the *DLJ Mortg.
     Capital* decision is attached hereto as Ex. 3.)

25   [4] As this Court noted in its Order, "[t]he three Securities Act statutes at issue contain
     their own standing requirements which the state court could not and would not have
26   ignored."  Ex. 1 at 11-12.

27   [5] Countrywide submitted the *NECA-IBEW* opinion as supplemental authority in sup-
     port of its motion to dismiss on October 19, 2010.  *See* Ex. 6 (Countrywide Defen-
28   dants' Third Notice Of Recent Authority In Support Of Motion To Dismiss) at 2-4.

COUNTRYWIDE DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

1    own, not someone else's"; "you may only represent the same certificate, not other

2    people's purchases"); *id.* at 57 ("I do not think the plaintiff can sue . . . except on the

3    particular certificates that [it purchased]").

4         The conclusion that standing is limited to the specific tranches purchased by the

5    named plaintiff is compelled by the text of the Securities Act of 1933 (the "Securities

6    Act"). Under the plain language of Sections 11 and 12 of the Securities Act, a plain-

7    tiff does not have standing to assert claims regarding a security unless it "purchas[ed]

8    *such security*." 15 U.S.C. § 77*l*(a)(2); *see also* 15 U.S.C. § 77k (limiting standing to

9    those who "acquir[e] *such security*").[6] (Emphasis added.)

10        Here, each MBS offering challenged in the SAC was not a monolithic issuance

11   of a single security. Rather, each MBS deal consisted of multiple tranches, and each

12   individual tranche was a *different security*. Each such security was able to be traded

13   separately from other tranches of the same offering, and each had its own unique CU-

14   SIP identifier, original principal note balance, note (interest) rate, credit rating (from

15   third party credit agencies), specific payment rights, and priority for receiving cash

16   flow distributions from different groupings of loans. *See, e.g.*, Ex. 12 (CWHEQ 2006-

17   S9 Pro. Supp.) at 1, S-3-4, S-7-9; Ex. 17 (CWABS 2006-9 Pro. Supp.) at 1, S-5-7, S-

18   11-15; Ex. 20 (CWABS 2006-24 Pro. Supp.) at 1, S-4-5, S-8-10, S-76-79; Ex. 21

19   (CHL 2006-HYB3 Pro. Supp.; hereinafter, "CWMBS 2006-HYB3 Pro. Supp.") at 1,

20   S-6-8, S-14-15; Ex. 22 (collection of monthly distribution reports); Appendix A

21   (showing tranche-specific information for all 208 tranches challenged in SAC).

22        *Different principal amounts, note rates, and ratings*: For example, the prospec-

23

---

24   [6] *Accord* Ex. 1 at 6; *Plumbers Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 304 n.3 (D. Mass. 2009) ("[t]he Act permits

25   claims to be brought only by persons who purchased *the securities at issue*"); *7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 225 (5th Cir. 1994)

26   ("standing to sue under the private right of action afforded by [Section 12(a)(2)] is based upon the requirement that the plaintiff be a 'purchaser' of *the security at is-*

27   *sue*"); *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.*, 703 F. Supp. 2d 253, 260 (E.D.N.Y. 2010) ("Section 11 requires a plaintiff to show

28   that he was a purchaser of *the security at issue*") (all emphases added).

4

tus supplement for the CWABS 2005-HYB9 offering listed 13 separate, publicly-offered tranches, each with its own original principal balance and interest rate:

| Class | Original Note Principal Balance(1) | Note Rate | Class | Original Note Principal Balance(1) | Note Rate |
|-------|------------------------------------|-----------|-------|------------------------------------|-----------|
| 1-A-1 | $ 99,025,000 | 5.1500%[2] | 3-A-2-B | $ 53,563,000 | 5.2500%[2] |
| 1-A-2 | $ 11,003,000 | 5.1500%[2] | 4-A-1 | $133,025,000 | 5.5200%[2] |
| 2-A-1 | $187,498,000 | 5.3300%[2] | 4-A-2 | $ 14,780,000 | 5.5200%[2] |
| 2-A-2 | $ 20,833,000 | 5.3300%[2] | 5-A-1 | $101,176,000 | 5.2500%[2] |
| 3-A-1-A | $210,000,000 | 5.3100%[2] | 5-A-2 | $ 28,537,000 | 5.2500%[2] |
| 3-A-1-B | $ 23,333,000 | 5.3100%[2] | M-1 | $ 16,279,000 | 5.3800%[2] |
| 3-A-2-A | $189,902,000 | 5.2500%[2] | | | |

Ex. 14 (CWABS 2005-HYB9 Pro. Supp.) at 1.  Similarly, the following chart which appeared in the CWABS 2006-3 prospectus supplement shows that Standard & Poors and Moody's gave differing credit ratings to each of the publicly-offered tranches of securities in that offering:

```
DESCRIPTION OF THE CERTIFICATES

The issuing entity will issue eighteen classes of certificates, sixteen of which
are offered by this prospectus supplement and the accompanying prospectus:


                          INITIAL
                        CERTIFICATE                          LAST SCHEDULED    INITIAL        INITIAL
                         PRINCIPAL                            DISTRIBUTION      RATING         RATING (S&P)
    CLASS                BALANCE (1)         TYPE                DATE (2)      (MOODY'S) (3)       (3)
-------------------     -----------   -------------------------  ------------   ------------    -----------
OFFERED
CERTIFICATES
1-A .................    $508,785,000    Senior/Adjustable Rate    June 2036        Aaa            AAA
2-A-1 ...............    $254,254,000    Senior/Adjustable Rate   October 2027      Aaa            AAA
2-A-2 ...............    $208,354,000    Senior/Adjustable Rate   October 2034      Aaa            AAA
2-A-3 ...............    $ 66,782,000    Senior/Adjustable Rate    June 2036        Aaa            AAA
3-A-1 ...............    $ 64,603,000    Senior/Adjustable Rate    March 2035       Aaa            AAA
3-A-2 ...............    $  6,722,000    Senior/Adjustable Rate    June 2036        Aaa            AAA
M-1 .................    $ 51,100,000  Subordinate/Adjustable Rate  May 2036        Aa1            AA+
M-2 .................    $ 46,500,000  Subordinate/Adjustable Rate  May 2036        Aa2            AA
M-3 .................    $ 28,000,000  Subordinate/Adjustable Rate April 2036       Aa3            AA-
M-4 .................    $ 24,500,000  Subordinate/Adjustable Rate April 2036       A1             A+
M-5 .................    $ 25,200,000  Subordinate/Adjustable Rate April 2036       A2             A
M-6 .................    $ 22,400,000  Subordinate/Adjustable Rate March 2036       A3             A-
M-7 .................    $ 21,700,000  Subordinate/Adjustable Rate February 2036    Baa1           BBB+
M-8 .................    $ 18,200,000  Subordinate/Adjustable Rate January 2036     Baa2           BBB
B ...................    $ 14,000,000  Subordinate/Adjustable Rate November 2035    Baa3           BBB-
A-R .................    $        100    Senior/REMIC Residual     March 2006       Aaa            AAA
NON-OFFERED
CERTIFICATES (4)
P ...................    $        100     Prepayment Charges         N/A            N/R            N/R
C ...................    $        N/A        Residual                N/A            N/R            N/R
```

Ex. 15 (CWABS 2006-3 Pro. Supp.) at S-6; *see also* Appendix A.

*Different monthly payment rights*:  Moreover, the monthly distribution reports

5

that have been issued for each offering included in the SAC show that each MBS tranche has received different monthly payments of principal and/or interest depending on the tranche's distribution priority and payment rights, and the performance of the specific loans backing that tranche.  The following distribution reports for the CWABS 2005-11 and CWABS 2006-24 offerings (for the month of December 2010) are typical:



Ex. 21 at CWABS 2005-11 Distribution Report p. 1.



*Id*. at CWABS 2006-24 Distribution Report p. 1; *see also id*. (collection of monthly distribution reports for all offerings in SAC).  As reflected in the charts above, some tranches were entitled to receive distributions solely from interest payments made by the specific loans backing that tranche (known as "I/O" tranches); other tranches were entitled to receive payments only when borrowers pre-paid their loans, prior to maturity.  Still other tranches (known as "residuals") were not entitled to receive any pay-

6

ments unless each of the more senior tranches received in full all of the payments to which they were entitled.  *See* Ex. 13 (CWABS 2005-11 Pro. Supp.) at S-61; Ex. 20 (CWABS 2006-24 Pro. Supp.) at S-79.

*Different "credit enhancement" rights*:  Likewise, each tranche had its own "credit enhancement" features intended to mitigate potential losses, including overcollateralization, cross-collateralization, excess interest, subordination, and note insurance.  As the prospectus supplement for the CWHEQ 2006-S3 offering expressly stated:  "The credit enhancement for each class of certificates varies.  Not all credit enhancement is available for every class."  Ex. 11 (CWHEQ 2006-S3 Pro. Supp.) at 1; *see also* Appendix A.  The variation from tranche to tranche in credit enhancement rights is yet one more confirmation that the certificates associated with the 208 tranches included in the SAC were fundamentally different securities for purposes of standing and tolling.

## II.    Many MBS Tranches Were Backed By Different Groups Of Loans.

Not only were the tranches assigned different CUSIPs, different ratings, different distribution priorities, and different credit enhancement rights, but in most of the 14 offerings at issue in the SAC the senior tranches were backed by *different groups of mortgage loans* within the overall pool for each particular offering.  In other words, the cash flow potentially to be distributed to one tranche would come from a specific subgroup of loans different from the subgroups that would fund distributions to other tranches.  Similarly, the statements in the prospectus supplements for these deals bearing on the credit underwriting and credit risk attributes of the pooled loans (the statements Plaintiffs challenge in this case) actually described different groups of loans, depending on the tranche that was being purchased.  Thus, an alleged misstatement as to one loan group backing a particular tranche would not necessarily constitute a misstatement as to a different loan group backing a different tranche.  Accordingly, any alleged injury for standing purposes flowing from any such alleged misstatement as to such tranche would not constitute injury to purchasers of different tranches backed by

7

1   different loan groups.

2       For example, in the CWABS 2005-HYB9 offering, the overall pool of mortgage

3   loans was divided into five distinct "Loan Groups." Ex. 14 (CWABS 2005-HYB9

4   Pro. Supp.) at S-4-5, S-27.  In turn, the senior tranches issued in that offering were

5   also divided into five groups, and each group's cash flow distributions were to be

6   based on the performance of the loans comprising the loan group associated with that

7   specific tranche, not with other loans in other loan groups associated with other

8   tranches.  The prospectus supplement for CWABS 2005-HYB9 thus stated:

9           Generally, payments of principal, if applicable, and interest on the Class 1-A

10          Notes will be based primarily on amounts available for payment in respect of

11          the Mortgage Loans in Loan Group 1, payments of principal, if applicable, and

12          interest on the Class 2-A Notes will be based primarily on amounts available for

13          payment in respect of the Mortgage Loans in Loan Group 2, payments of prin-

14          cipal, if applicable, and interest on the Class 3-A Notes will be based primarily

15          on amounts available for payment in respect of the Mortgage Loans in Loan

16          Group 3, payments of principal, if applicable, and interest on the Class 4-A

17          Notes will be based primarily on amounts available for payment in respect of

18          the Mortgage Loans in Loan Group 4, payments of principal, if applicable, and

19          interest on the Class 5-A Notes will be based primarily on amounts available for

20          payment in respect of the Mortgage Loans in Loan Group 5.

21  *Id*. at S-61.  Nearly identical statements matching particular tranches to particular

22  groups of distinct loans within the same MBS offering are found in the prospectus

23  supplements for nine of the thirteen other MBS deals remaining in this case.  *See* Ex. 8

24  (CWALT 2005-62 Pro. Supp.) at S-4; Ex. 10 (CWHEQ 2005-H Pro. Supp.) at S-24-

25  25; Ex. 13 (CWABS 2005-11 Pro. Supp.) at S-3, S-39; Ex. 15 (CWABS 2006-3 Pro.

26  Supp.) at S-51-52; Ex. 16 (CWABS 2006-6 Pro. Supp.) at S-47-48; Ex. 17 (CWABS

27  2006-9 Pro. Supp.) at S-57-58; Ex. 18 (CWABS 2006-11 Pro. Supp.) at S-58-59; Ex.

28  20 (CWABS 2006-24 Pro. Supp.) at S-56-57; Ex. 21 (CWMBS 2006-HYB3 Pro.

8

1    Supp.) at S-5, S-8, S-14-15.[7]

2           For each loan group, the prospectus supplements also disclosed the credit char-

3    acteristics for the unique loans comprising that particular loan group (including,

4    among other credit attributes, FICO score, loan-to-value ratio, and the level of bor-

5    rower documentation required during the underwriting process for each loan).  This

6    data confirmed that the credit risk attributes of the loan group tied to each tranche var-

7    ied depending on the particular loans making up that group.  *See, e.g.*, Ex. 8 (CWALT

8    2005-62 Pro. Supp.) at S-23-51; Ex. 10 (CWHEQ 2005-H Pro. Supp.) at A-I-1-18; Ex.

9    13 (CWABS 2005-11 Pro. Supp.) at A-1-36; Ex. 14 (CWABS 2005-HYB9 Pro.

10   Supp.) at A-1-56; Ex. 15 (CWABS 2006-3 Pro. Supp.) at A-1-39; Ex. 16 (CWABS

11   2006-6 Pro. Supp.) at A-1-32; Ex. 17 (CWABS 2006-9 Pro. Supp.) A-1-37; Ex. 18

12   (CWABS 2006-11 Pro. Supp.) at A-1-38; Ex. 20 (CWABS 2006-24 Pro. Supp.) at A-

13   1-33; Ex. 21 (CWMBS 2006-HYB3 Pro. Supp.) at S-32-95 (tables setting forth credit

14   characteristics by loan group).  For instance, the prospectus supplement for CWABS

15   2006-9 disclosed that the loans in Loan Group 1 had a weighted-average credit score

16   of 613, although the loans in Loan Group 2 had a weighted-average credit score of just

17   593.  *See* Ex. 17 (CWABS 2006-9 Pro. Supp.) at S-3.  Similarly, the prospectus sup-

18   plement for the CWABS 2006-11 offering showed that 75.74% of the loans in Loan

19   Group 1 had been originated under a full borrower documentation program, but that

20   full borrower documentation had been required for only 57.32% of the loans in Loan

21   Group 3.  *See* Ex. 18 (CWABS 2006-11 Pro. Supp.) at S-34.  The following table

22   from the CWABS 2005-HYB9 prospectus supplement also illustrates that each loan

23   group in that offering consisted of different, unique loans with different credit charac-

24   _____

25   [7] Junior, subordinated tranches were linked to all five Loan Groups, so that they would
     absorb any losses before any of the senior tranches.  *See, e.g.*, Ex. 14 (CWABS 2005-

26   HYB9 Pro. Supp.) at S-61-62,  ("Payments of principal and interest on the Class M
     Notes and Class B Notes will be based on amounts available for payment in respect of

27   the Mortgage Loans in Loan Group 1, Loan Group 2, Loan Group 3, Loan Group 4
     and Loan Group 5").  With just one exception, however, Plaintiffs themselves pur-

28   chased only senior tranches.  SAC ¶¶ 62-83.

1  teristics:

2

3

| | Loan Group 1 | Loan Group 2 | Loan Group 3 | Loan Group 4 | Loan Group 5 | Permitted Variance or Range |
|---|---|---|---|---|---|---|
| Average Stated Principal Balance | $374,363 | $212,108 | $571,815 | $436,031 | $318,293 | 10% |
| Weighted Average Mortgage Rate | 5.744% | 5.907% | 5.818% | 6.005% | 6.262% | 0.10% |
| Weighted Average Loan-to-Value Ratio | 74.92% | 75.62% | 73.54% | 74.19% | 75.03% | 3% |
| Weighted Average Remaining Term to Maturity | 357 months | 357 months | 358 months | 358 months | 359 months | 5 months |
| Weighted Average Credit Bureau Risk Score | 733 | 722 | 730 | 717 | 717 | 5 points |
| Mortgage Loans with Prepayment Charges at Origination | 27.98% | 33.31% | 23.54% | 19.28% | 33.23% | 5% |

13  Ex. 14 (CWABS 2005-HYB9 Pro. Supp.) at S-31-32.  The prospectus supplements for

14  the other deals in which each tranche was backed by a particular loan group contain

15  similar disclosures.  *See* Ex. 13 (CWABS 2005-11 Pro. Supp.) at S-28-29; Ex. 15

16  (CWABS 2006-3 Pro. Supp.) at S-3-4; Ex. 16 (CWABS 2006-6 Pro. Supp.) at S-2-3;

17  Ex. 17 (CWABS 2006-9 Pro. Supp.) at S-2-4; Ex. 18 (CWABS 2006-11 Pro. Supp.) at

18  S-2-3; Ex. 20 (CWABS 2006-24 Pro. Supp.) at S-3; Ex. 21 (CWMBS 2006-HYB3

19  Pro. Supp.) at S-3-5.

20        The same prospectus supplement for the CWABS 2006-11 offering described

21  above also disclosed yet another difference among the various loan groups tied to the

22  different tranches in the deal:  the loan groups were comprised of different *types* of

23  loan products, which could perform differently depending on whether they were first

24  or second lien loans, fixed or adjustable rate, and so on.  More specifically, this pro-

25  spectus supplement stated that:

26        Loan Group 1 will consist of first lien fixed rate mortgage loans, Loan Group 2

27        will consist of first lien conforming balance fixed and adjustable rate mortgage

28        loans and Loan Group 3 will consist of first lien fixed and adjustable rate mort-

10

gage loans.

Ex. 18 at S-35; *see also* Ex. 13 (CWABS 2005-11 Pro. Supp.) at S-22; Ex. 15 (CWABS 2006-3 Pro. Supp.) at S-2; Ex. 16 (CWABS 2006-6 Pro. Supp.) at S-2.

In addition, when offerings were backed by loans originated by lenders other than Countrywide, the percentage of loans originated by each such lender typically varied from loan group to loan group (and thus from tranche to tranche).  For example, the CWMBS 2006-HYB3 prospectus supplement contained the following table, which disclosed the varying percentage of loans in each loan group that were originated by Countrywide Home Loans, Inc. and by various third-party originators pursuant to those lenders' own underwriting guidelines and procedures:

| Loan Group | Countrywide Home Loans, Inc. | American Home Mortgage Corp. | Ohio Savings Bank | Provident Funding Associates, LP |
|---|---|---|---|---|
| Loan Group 1 | 29.40% | 1.32% | 33.28% | 11.19% |
| Loan Group 2 | 54.08% | 21.44% | 1.03% | 0.72% |
| Loan Group 3 | 72.13% | 1.81% | 3.52% | 0.59% |
| Loan Group 4 | 71.80% | 8.99% | 0.00% | 0.00% |

Ex. 21 (CWMBS 2006-HYB3 Pro. Supp.) at S-27; *see also* Ex. 14 (CWABS 2005-HYB9 Pro. Supp.) at S-35-54.

Because different loan groups contained different, unique loans, and in some cases different types of loans, how one group of loans was underwritten thus could differ from how another loan group backing another tranche in the same deal was underwritten.  In turn, the loans in those different loan groups could have different credit characteristics and different credit risks.  As a result, these loan groups could perform differently and generate different interest and principal payment streams for the holders of the different certificates associated with the different tranches.  Any allegedly false statements in the prospectus supplements regarding the credit characteristics and underwriting of these loan subgroups therefore would be unique to each tranche.  In other words, from the perspective of the purchaser of a particular tranche, these alleged misstatements necessarily constituted representations about the credit characteristics and underwriting standards employed in the origination of *the particular loans*,

11

in *the particular loan groups*, backing *that particular investor's tranche*, as contrasted to loans in other loan groups that would not contribute to or affect the cash flow distributions for that particular tranche.

As the nature of the alleged misrepresentations varied from loan group to loan group and tranche to tranche, the nature of the alleged injury for standing and tolling purposes thus varied as well.  For example, if misrepresentations were allegedly made concerning the loans in Loan Group 1, those alleged misstatements could not injure (and would be wholly irrelevant to) an investor whose tranche was backed by Loan Group 2.  In short, even though multiple tranches of securities might be issued pursuant to the same prospectus supplement in the same offering, the alleged injury suffered by the purchaser of one tranche associated with one loan group would be fundamentally different from the alleged injury suffered by the purchaser of another tranche associated with a different loan group.

This Court and every other court to consider the issue unanimously have held that a representation in a common MBS shelf registration statement cannot confer standing on a purchaser of one offering to sue as to all other offerings drawn off that shelf because of "the difference in the underlying pools of mortgages." *City of Ann Arbor*, 703 F. Supp. 2d at 261.  As this Court itself said in its November 4 Order:

> The present suit is brought on behalf of those who invested in MBS.  Each MBS is backed by a pool of unique loans, and the representations made in the prospectus supplements accompanying the issuance of those securities are themselves unique, focused on the specific loans underlying each offering and the specific underwriting standards and origination practices in effect at the time those specific loans were originated.

Ex. 1 at 7.  This reasoning applies with equal force to the representations in each prospectus supplement for the MBS offerings described above—any such representation cannot confer standing on a purchaser of one tranche to sue as to all other tranches within the same offering because of the difference in the underlying subgroups of

12

1  loans collateralizing the different tranches.  The words of the district court in *City of*

2  *Ann Arbor*, though focused on the purchase of an MBS offering as opposed to a

3  tranche, are thus entirely applicable here:

4      As part of their case, Plaintiffs would have to show that the practices of which

5      they complain occurred with respect to the mortgages in which they invested,

6      and thereby caused injury.  To the extent that they did not invest in any such

7      pool of mortgages, they can make no such showing.

8  703 F. Supp. 2d at 260.[8]

9      For all these reasons, the *Luther* named plaintiffs lacked standing to assert

10 claims with respect to MBS tranches they did not themselves purchase, just as they

11 lacked standing to assert claims with respect to offerings in which they did not pur-

12 chase.  *See NECA-IBEW*, Ex. 5 at 7-8; *Lewis v. Casey*, 518 U.S. 343, 357 (1996)

13 ("even named plaintiffs who represent the class must allege and show that they per-

14 sonally have been injured, not that the injury has been suffered by other, unidentified

15 members of a class . . . which they purport to represent").  The relevant limitations pe-

16 riods thus were not tolled as to those tranches they had not bought.

17     **III.    Plaintiffs' Claims As To Most MBS Tranches Are Untimely.**

18     Plaintiffs' claims are time-barred as to the vast majority of MBS tranches chal-

19 lenged in the SAC.  The following table (drawn from the certifications filed by the *Lu-*

20

21 [8] *Accord In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2010 WL
   3239430, at *5 (S.D.N.Y. Aug. 17, 2010) ("[Plaintiff] can make no viable claim of re-
22 liance on the alleged misrepresentations . . . concerning the particulars of certificates
   that it did not purchase, nor can it demonstrate that it has been injured by such misrep-
23 resentations"); *New Jersey Carpenters Vacation Fund v. Royal Bank of Scotland
   Group, PLC*, 720 F. Supp. 2d 254, 265 (S.D.N.Y. 2010) ("the harm Plaintiffs may
24 have suffered based on misstatements in the Offering Documents for the Certificates
   they purchased has no bearing on any harm suffered by other investors based on al-
25 leged misstatements in other offering documents with details about other offerings
   that Plaintiffs did not purchase"); *Nomura*, 658 F. Supp. 2d at 303 ("the named plain-
26 tiffs are incompetent to allege an injury caused by the purchase of Certificates that
   they themselves never purchased"); *In re Lehman Bros. Sec. & ERISA Litig.*, 684 F.
27 Supp. 2d 485, 491 (S.D.N.Y. 2010) ("Plaintiffs have not alleged that they suffered any
   injury stemming from the offerings in which they did not purchase and thus have no
28 standing").

13

1  *ther* state court named plaintiffs during the lead plaintiff proceedings in this case) sets

2  forth the specific tranches of MBS that were purchased by one or more of the *Luther*

3  named plaintiffs.  Only those tranches are eligible for tolling under this Court's Order.

4  The remaining tranches that the *Luther* state court plaintiffs did not buy are therefore

5  ineligible for tolling, and any claims based on them are time-barred:

| OFFERING | TOTAL # PUBLICLY-OFFERED TRANCHES | TRANCHES PURCHASED BY *LUTHER* PLAINTIFFS[9] | # TIME-BARRED PUBLICLY OFFERED TRANCHES | SOURCE |
|---|---|---|---|---|
| CWALT 2005-62 | 22 | 2 (1A1: MASH) (2A1: WASH, PTOE) | 20 | Exs. 7, 8 |
| CWALT 2005-72 | 11 | 1 (A1: PTOE) | 10 | Exs. 7, 9 |
| CWHEQ 2005-H | 2 | 1 (2A: PTOE) | 1 | Exs. 7, 10 |
| CWHEQ 2006-S3 | 5 | 1 (A2: WASH, Vermont) | 4 | Exs. 7, 11 |
| CWHEQ 2006-S9 | 6 | 1 (A3: WASH, Vermont) | 5 | Exs. 7, 12 |
| CWABS 2005-11 | 29 | 1 (AF1: PTOE) | 28 | Exs. 7, 13 |
| CWABS 2005-HYB9 | 13 | 1 (3A2: Maine) | 12 | Exs. 7, 14 |
| CWABS 2006-3 | 15 | 1 (2A1: Maine) | 14 | Exs. 7, 15 |
| CWABS 2006-6 | 13 | 1 (2A1: Maine) | 12 | Exs. 7, 16 |
| CWABS 2006-9 | 23 | 1 (1AF3: Vermont) | 22 | Exs. 7, 17 |
| CWABS 2006-11 | 19 | 1 (1AF3: WASH, Vermont) | 18 | Exs. 7, 18 |
| CWABS 2006-15 | 13 | 1 (A3:  WASH, Vermont) | 12 | Exs. 7, 19 |
| CWABS 2006-24 | 14 | 1 (2A1: Vermont) | 13 | Exs. 7, 20 |

---

[9]  For the sake of consistency, this chart uses the same abbreviations for the *Luther* named plaintiffs that are used by Plaintiffs in Appendix Exhibit E to the SAC.

14

| OFFERING | TOTAL # PUBLICLY-OFFERED TRANCHES | TRANCHES PURCHASED BY *LUTHER* PLAINTIFFS[9] | # TIME-BARRED PUBLICLY OFFERED TRANCHES | SOURCE |
|---|---|---|---|---|
| CWMBS 2006-HYB3 | 23 | 4 (2A, 3A: WASH) (2A1A, 3A1A: Vermont) | 19 | Exs. 7, 21 |
| TOTALS | 208 | 18 | 190 | - |

What this chart shows is that only 18 of the 208 MBS tranches challenged in the SAC are eligible for *American Pipe* tolling under the Court's Order. All claims related to the remaining 190 tranches are time-barred and must be dismissed.

Because Plaintiffs in this action purchased at most only nine of those 18 tranches themselves, they in turn lack standing to challenge the remaining nine tranches. The following chart shows the tranches eligible for *American Pipe* tolling under this Court's Order as to which the current Plaintiffs have standing:

| TRANCHES PURCHASED BY *LUTHER* PLAINTIFFS | PURCHASED BY PLAINTIFFS HERE? | SOURCE |
|---|---|---|
| CWALT 2005-62, 1A1 | NO | SAC ¶ 62 |
| CWALT 2005-62, 2A1 | YES (OPERS) | SAC ¶ 62 |
| CWALT 2005-72, A1 | YES (OPERS) | SAC ¶ 63 |
| CWHEQ 2005-H, 2A | YES (OPERS) | SAC ¶ 66 |
| CWHEQ 2006-S3, A2 | YES (IPERS) | SAC ¶ 67 |
| CWHEQ 2006-S9, A3 | NO | SAC ¶ 68 |
| CWABS 2005-11, AF1 | NO | SAC ¶ 71 |
| CWABS 2005-HYB9, 3A2 | UNKNOWN[10] | SAC ¶ 72 |

_____
[10] It is impossible to determine whether Plaintiffs have standing as to Class "3A2" of CWABS 2005-HYB9, because no such tranche exists. According to the prospectus supplement, there are tranches named "3A2A" and "3A2B," but not "3A2." *See* Ex.

15

| TRANCHES PURCHASED BY *LUTHER* PLAINTIFFS | PURCHASED BY PLAINTIFFS HERE? | SOURCE |
|---|---|---|
| CWABS 2006-3, 2A1 | NO | SAC ¶ 74 |
| CWABS 2006-6, 2A1 | NO | SAC ¶ 75 |
| CWABS 2006-9, 1AF3 | YES (GBPHB) | SAC ¶ 76 |
| CWABS 2006-11, 1AF3 | YES (GBPHB) | SAC ¶ 77 |
| CWABS 2006-15, A3 | NO | SAC ¶ 78 |
| CWABS 2006-24, 2A1 | YES (GBPHB) | SAC ¶ 79 |
| CWMBS 2006-HYB3, 2A | NO | SAC ¶ 83 |
| CWMBS 2006-HYB3, 3A | NO | SAC ¶ 83 |
| CWMBS 2006-HYB3, 2A1A | YES (OPERS) | SAC ¶ 83 |
| CWMBS 2006-HYB3, 3A1A | NO | SAC ¶ 83 |
| **TOTALS[11]** | **8 or 9** | - |

## CONCLUSION

For all of the above reasons, the Countrywide Defendants respectfully request that the Court dismiss with prejudice all claims in the SAC related to the 190 MBS tranches that were not purchased by any of the named plaintiffs in *Luther*. Claims relating to those 190 tranches are not eligible for *American Pipe* tolling under this Court's November 4 Order and are therefore time-barred. In addition, because the Plaintiffs in this action purchased at most only nine of the 18 tranches subject to such tolling, the Countrywide Defendants further request that the Court dismiss with pre-judice all claims as to the remaining nine tranches.

---

14 (CWABS 2005-HYB9 Pro. Supp.) at 1. This ambiguity appears to be the result of a typographical error in the certification filed by one of the *Luther* named plain-tiffs. *See* Ex. 7.

[11] The original principal balance of the nine tranches that would remain in the case would total approximately $2.5 billion. *See* Ex. 22 (monthly distribution reports).

1    Dated:  January 17, 2011              **GOODWIN PROCTER LLP**

2

3                                          /s/ Brian E. Pastuszenski
                                           Brian E. Pastuszenski (*pro hac vice*)
4                                          Lloyd Winawer (State Bar No. 157823)
                                           Inez H. Friedman-Boyce (*pro hac vice*)
5                                          Brian C. Devine (State Bar No. 222240)

6                                          *Counsel for the Countrywide Defendants*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNTRYWIDE DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

**APPENDIX A**

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| **CWALT 2005-62 (Ex. 8)** | 1-A-1 | 12668ATN5 | $262,595,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 1-A-2 | 12668ATP0 | $175,064,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 1-X-1 | 12668ATR6 | $262,595,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 1-X-2 | 12668ATS4 | $175,064,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 1-X-3 | 12668AYA7 | $175,064,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 2-A-1 | 12668ATT2 | $408,902,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-2 | 12668ATU9 | $185,000,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-3 | 12668ATV7 | $195,934,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-4[2] | 12668AYB5 | $200,000,000 | Subordination (Senior) Financial Guaranty Insurance Policy | Aaa | AAA | 2 |
| | 2-X-1 | 12668ATW5 | $989,836,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-X-2 | 12668AYC3 | $989,836,000 | Subordination (Senior) | Aaa | AAA | 2 |

[1] The CUSIP Number and Principal Balance for each MBS Offering were derived from the Bank of New York monthly distribution reports, attached to the Countrywide Defendants' Request for Judicial Notice at Exhibit 22. The remaining categories of information in this Appendix (Tranche/Class, Credit Enhancement, Moody's Rating, S&P Rating, and Loan Group) were derived from the Prospectus Supplements for each MBS Offering, excerpts of which are attached to the Request for Judicial Notice at Exhibits 7-21.

[2] The ratings assigned to Class 2-A-4 Certificates are without regard to the Class 2-A-4 Policy. S-3.

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | A-R | 12668AUL7 | $100 | Subordination (Senior) | Aaa | AAA | 1 |
| | M-X | 12668ATX3 | $176,431,765 | Subordination (Subordinate) | AAA | Not Rated | 1 & 2 |
| | M-1 | 12668ATY1 | $27,267,000 | Subordination (Subordinate) | AA+ | Aa1 | 1 & 2 |
| | M-2 | 12668ATZ8 | $24,861,000 | Subordination (Subordinate) | AA | Aa2 | 1 & 2 |
| | M-3 | 12668AUA1 | $16,039,000 | Subordination (Subordinate) | AA | Aa3 | 1 & 2 |
| | M-4 | 12668AUB9 | $13,633,000 | Subordination (Subordinate) | AA- | A1 | 1 & 2 |
| | M-5 | 12668AUC7 | $12,029,000 | Subordination (Subordinate) | A+ | A2 | 1 & 2 |
| | M-6 | 12668AUD5 | $12,029,000 | Subordination (Subordinate) | A- | A3 | 1 & 2 |
| | M-7 | 12668AUE3 | $9,624,000 | Subordination (Subordinate) | BBB+ | Baa1 | 1 & 2 |
| | B-1 | 12668AUF0 | $8,822,000 | Subordination (Subordinate) | BBB | Baa2 | 1 & 2 |
| | B-2 | 12668AUG8 | $8,020,000 | Subordination (Subordinate) | BBB- | Baa3 | 1 & 2 |
| CWALT 2005-72 (Ex. 9) | A-1 | 12668A3N3 | $303,184,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | N/A |
| | A-2 | 12668A3P8 | $151,592,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | N/A |

2

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | A-3 | 12668A3Q6 | $140,000,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | N/A |
| | A-4 | 12668A3R4 | $66,086,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | N/A |
| | A-R | 12668A3S2 | $100 | Subordination (Senior) Overcollateralization | Not Rated | AAA | N/A |
| | M-1 | 12668A3T0 | $47,098,000 | Subordination (Subordinate) Overcollateralization | Aa1 | Not Rated | N/A |
| | M-2 | 12668A3U7 | $7,417,000 | Subordination (Subordinate) Overcollateralization | Aa2 | Not Rated | N/A |
| | M-3 | 12668A3V5 | $4,079,000 | Subordination (Subordinate) Overcollateralization | Aa3 | Not Rated | N/A |
| | M-4 | 12668A3W3 | $7,417,000 | Subordination (Subordinate) Overcollateralization | A2 | Not Rated | N/A |
| | M-5 | 12668A3X1 | $5,563,000 | Subordination (Subordinate) Overcollateralization | Baa1 | Not Rated | N/A |
| | M-6 | 12668A3Y9 | $5,192,000 | Subordination (Subordinate) Overcollateralization | Baa2 | Not Rated | N/A |

3

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| **CWHEQ 2005-H (Ex. 10)** | 1-A | 126685AN6 | $884,925,000 | Excess Interest<br>Limited Subordination of Transferor Interest<br>Cross-Collateralization<br>Financial Guaranty Insurance Policy | Aaa | AAA | 1 |
|  | 2-A | 126685AP1 | $886,950,000 | Excess Interest<br>Limited Subordination of Transferor Interest<br>Cross-Collateralization<br>Financial Guaranty Insurance Policy | Aaa | AAA | 2 |
| **CWHEQ 2006-S3 (Ex. 11)** | A-1 | 23242MAA9 | $539,257,000 | Guaranty Insurance Policy<br>Credit Insurance<br>(with sponsor guaranty)<br>Overcollateralization<br>Excess Interest<br>Corridor Contract | Aaa | AAA | N/A |

4

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | A-2 | 23342MAB7 | $182,278,000 | Guaranty Insurance Policy<br>Credit Insurance (with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |
| | A-3 | 23342MAC5 | $73,715,000 | Guaranty Insurance Policy<br>Credit Insurance (with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |
| | A-4 | 23342MAD3 | $104,750,000 | Guaranty Insurance Policy<br>Credit Insurance (with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |

5

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | A-5 | 23242MAE1 | $100,000 | Guaranty Insurance Policy<br>Credit Insurance (with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |
| CWHEQ 2006-S9 (Ex. 12) | A-1 | 12668GAA0 | $428,653,000 | Guaranty Insurance Policy<br>Credit Insurance (with sponsor guaranty)<br>Overcollateralization<br>Excess Interest<br>Corridor Contract | Aaa | AAA | N/A |
| | A-2 | 12668GAB8 | $114,126,000 | Guaranty Insurance Policy<br>Credit Insurance (with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |

6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | A-3 | 12668GAC6 | $195,418,000 | Guaranty Insurance Policy<br>Credit Insurance<br>(with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |
| | A-4 | 12668GAD4 | $75,532,000 | Guaranty Insurance Policy<br>Credit Insurance<br>(with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |
| | A-5 | 12668GAE2 | $86,271,000 | Guaranty Insurance Policy<br>Credit Insurance<br>(with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |
| | A-6 | 12668GAF9 | $100,000,000 | Guaranty Insurance Policy<br>Credit Insurance<br>(with sponsor guaranty)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |

7

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| **CWABS 2005-11 (Ex. 13)** | AF-1 | 126670CF3 | $283,724,000 | Subordination (Senior) Overcollateralization Corridor Contract | Aaa | AAA | 1 |
| | AF-2 | 126670CG1 | $40,996,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | 1 |
| | AF-3 | 126670CH9 | $174,839,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | 1 |
| | AF-4 | 126670CJ5 | $42,758,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | 1 |
| | AF-5A | 126670CK2 | $39,000,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | 1 |
| | AF-5B | 126670DR6 | $36,027,000 | Subordination (Senior) Overcollateralization Guaranty Insurance Policy | Aaa | AAA | 1 |
| | AF-6 | 126670CL0 | $83,200,000 | Subordination (Senior) Overcollateralization | Aaa | AAA | 1 |
| | MF-1 | 126670CM8 | $24,544,000 | Subordination (Subordinate) Overcollateralization | Aa1 | AA+ | 1 |

8

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | MF-2 | 126670CN6 | $22,048,000 | Subordination (Subordinate) Overcollateralization | Aa2 | AA | 1 |
| | MF-3 | 126670CP1 | $13,728,000 | Subordination (Subordinate) Overcollateralization | Aa3 | AA- | 1 |
| | MF-4 | 126670CQ9 | $12,480,000 | Subordination (Subordinate) Overcollateralization | A1 | A+ | 1 |
| | MF-5 | 126670CR7 | $10,816,000 | Subordination (Subordinate) Overcollateralization | A2 | A | 1 |
| | MF-6 | 126670CS5 | $9,984,000 | Subordination (Subordinate) Overcollateralization | A3 | A- | 1 |
| | MF-7 | 126670CT3 | $8,736,000 | Subordination (Subordinate) Overcollateralization | Baa1 | BBB+ | 1 |
| | MF-8 | 126670CU0 | $8,320,000 | Subordination (Subordinate) Overcollateralization | Baa2 | BBB | 1 |
| | BF | 126670CV8 | $8,320,000 | Subordination (Subordinate) Overcollateralization | Baa3 | BBB- | 1 |

9

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | 2-AV-1 | 126670CW6 | $552,682,000 | Subordination (Senior) Overcollateralization Corridor Contract | Aaa | AAA | 2 |
| | 3-AV-1 | 126670CX4 | $161,681,000 | Subordination (Senior) Overcollateralization Corridor Contract | Aaa | AAA | 3 |
| | 3-AV-2 | 126670CY2 | $125,689,000 | Subordination (Senior) Overcollateralization Corridor Contract | Aaa | AAA | 3 |
| | 3-AV-3 | 126670CZ9 | $16,092,000 | Subordination (Senior) Overcollateralization Corridor Contract | Aaa | AAA | 3 |
| | MV-1 | 126670DA3 | $58,984,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | Aa1 | AA+ | 2 & 3 |
| | MV-2 | 126670DB1 | $56,064,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | Aa2 | AA | 2 & 3 |

10

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
|  | MV-3 | 126670DC9 | $25,696,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | Aa3 | AA- | 2 & 3 |
|  | MV-4 | 126670DD7 | $23,944,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | A1 | A+ | 2 & 3 |
|  | MV-5 | 126670DE5 | $21,608,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | A2 | A | 2 & 3 |
|  | MV-6 | 126670DF2 | $15,768,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | A3 | A- | 2 & 3 |
|  | MV-7 | 126670DG0 | $22,192,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | Baa1 | BBB+ | 2 & 3 |
|  | MV-8 | 126670DH8 | $14,600,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | Baa2 | BBB | 2 & 3 |

11

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | MV-9 | 126670DJ4 | $15,184,000 | Subordination (Subordinate) Overcollateralization Corridor Contract | Baa3 | BBB- | 2 & 3 |
| | 1-A-1 | 126670JP4 | $99,025,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 1-A-2 | 126670JQ2 | $11,003,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 2-A-1 | 126670JV1 | $187,498,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-2 | 126670JW9 | $20,833,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 3-A-1-A | 126670JX7 | $210,000,000 | Subordination (Senior) | Aaa | AAA | 3 |
| | 3-A-1-B | 126670LC0 | $23,333,000 | Subordination (Senior) | Aaa | AAA | 3 |
| CWABS 2005-HYB9 (Ex. 14) | 3-A-2-A | 126670JY5 | $189,902,000 | Subordination (Senior) | Aaa | AAA | 3 |
| | 3-A-2-B | 126670LD8 | $53,563,000 | Subordination (Senior) | Aaa | AAA | 3 |
| | 4-A-1 | 126670JZ2 | $133,025,000 | Subordination (Senior) | Aaa | AAA | 4 |
| | 4-A-2 | 126670KA5 | $14,780,000 | Subordination (Senior) | Aaa | AAA | 4 |
| | 5-A-1 | 126670LE6 | $101,176,000 | Subordination (Senior) | Aaa | AAA | 5 |
| | 5-A-2 | 126670LF3 | $28,537,000 | Subordination (Senior) | Aaa | AAA | 5 |
| | M-1 | 126670KB3 | $16,279,000 | Subordination (Subordinate) | Aa2 | Aa2 | 1,2,3,4&5 |

12

LIB/A2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| **CW ABS 2006-3 (Ex. 15)** | 1-A | 126670VW5 | $508,785,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | Aaa | AAA | 1 |
| | 2-A-1 | 126670VX3 | $254,254,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | Aaa | AAA | 2 |
| | 2-A-2 | 126670VY1 | $208,354,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | Aaa | AAA | 2 |
| | 2-A-3 | 126670VZ8 | $66,782,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | Aaa | AAA | 2 |

13

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
|  | 3-A-1 | 126670WA2 | $64,603,000 | Subordination (Senior) / Mortgage Insurance / Overcollateralization / Interest Rate Swap Contract | Aaa | AAA | 3 |
|  | 3-A-2 | 126670WB0 | $6,722,000 | Subordination (Senior) / Mortgage Insurance / Overcollateralization / Interest Rate Swap Contract | Aaa | AAA | 3 |
|  | M-1 | 126670WC8 | $51,100,000 | Subordination (Subordinate) / Mortgage Insurance / Overcollateralization / Interest Rate Swap Contract | Aa1 | AA+ | 1, 2, & 3 |
|  | M-2 | 126670WD6 | $46,900,000 | Subordination (Subordinate) / Mortgage Insurance / Overcollateralization / Interest Rate Swap Contract | Aa2 | AA | 1, 2, & 3 |

14

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | M-3 | 126670WE4 | $28,000,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | Aa3 | AA- | 1, 2, & 3 |
| | M-4 | 126670WF1 | $24,500,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | A1 | A+ | 1, 2, & 3 |
| | M-5 | 126670WG9 | $25,200,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | A2 | A | 1, 2, & 3 |
| | M-6 | 126670WH7 | $22,400,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | A3 | A- | 1, 2, & 3 |

15

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | M-7 | 126670WJ3 | $21,700,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | Baa1 | BBB+ | 1, 2, & 3 |
| | M-8 | 126670WK0 | $18,200,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | Baa2 | BBB | 1, 2, & 3 |
| | B | 126670WL8 | $14,000,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Interest Rate Swap Contract | Baa3 | BBB- | 1, 2, & 3 |

16

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| CWABS 2006-6 (Ex. 16) | 1-A-1 | 126670ZH4 | $501,329,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 1 |
| | 1-A-1M | 126670ZJ0 | $55,703,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 1 |
| | 2-A-1 | 126670ZK7 | $370,663,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 2 |
| | 2-A-2 | 126670ZL5 | $407,850,850 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 2 |

17

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | 2-A-3 | 12667OZM3 | $126,055,000 | Subordination (Senior) Mortgage Insurance Overcollateralization Excess Interest Interest Rate Swap Contract | Aaa | AAA | 2 |
| | M-1 | 12667OZN1 | $117,900,000 | Subordination (Subordinate) Mortgage Insurance Overcollateralization Excess Interest Interest Rate Swap Contract | Aa2 | AA | 1 & 2 |
| | M-2 | 12667OZP6 | $34,200,000 | Subordination (Subordinate) Mortgage Insurance Overcollateralization Excess Interest Interest Rate Swap Contract | Aa3 | AA- | 1 & 2 |
| | M-3 | 12667OZQ4 | $31,500,000 | Subordination (Subordinate) Mortgage Insurance Overcollateralization Excess Interest Interest Rate Swap Contract | A1 | A+ | 1 & 2 |

18

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | M-4 | 126670ZR2 | $29,700,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A2 | A | 1 & 2 |
| | M-5 | 126670ZS0 | $27,000,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A3 | A- | 1 & 2 |
| | M-6 | 126670ZT8 | $25,200,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Baa1 | BBB+ | 1 & 2 |
| | M-7 | 126670ZU5 | $18,000,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Baa2 | BBB | 1 & 2 |

19

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| **CWABS 2006-9 (Ex. 17)** | M-8 | 126670ZV3 | $17,100,000 | Subordination (Subordinate) Mortgage Insurance Overcollateralization Excess Interest Interest Rate Swap Contract | Baa3 | BBB- | 1 & 2 |
| | 1-AF-1 | 12666RAA8 | $57,182,000 | Subordination (Senior) Overcollateralization Excess Interest | Aaa | AAA | 1 |
| | 1-AF-2 | 12666RAB6 | $11,453,000 | Subordination (Senior) Overcollateralization Excess Interest | Aaa | AAA | 1 |
| | 1-AF-3 | 12666RAC4 | $33,773,000 | Subordination (Senior) Overcollateralization Excess Interest | Aaa | AAA | 1 |
| | 1-AF-4 | 12666RAD2 | $9,068,000 | Subordination (Senior) Overcollateralization Excess Interest | Aaa | AAA | 1 |

20

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | 1-AF-5 | 12666RAE0 | $13,310,000 | Subordination (Senior) Overcollateralization Excess Interest | Aaa | AAA | 1 |
| | 1-AF-6 | 12666RAF7 | $17,200,000 | Subordination (Senior) Overcollateralization Excess Interest | Aaa | AAA | 1 |
| | MF-1 | 12666RAG5 | $5,332,000 | Subordination (Subordinate) Overcollateralization Excess Interest Interest Rate Swap Contract | Aa1 | AA+ | 1 |
| | MF-2 | 12666RAH3 | $4,816,000 | Subordination (Subordinate) Overcollateralization Excess Interest Interest Rate Swap Contract | Aa2 | AA | 1 |
| | MF-3 | 12666RAJ9 | $2,838,000 | Subordination (Subordinate) Overcollateralization Excess Interest Interest Rate Swap Contract | Aa3 | AA- | 1 |

21

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | MF-4 | 12666RAK6 | $2,580,000 | Subordination (Subordinate)<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A1 | A+ | 1 |
| | MF-5 | 12666RAL4 | $2,580,000 | Subordination (Subordinate)<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A2 | A | 1 |
| | MF-6 | 12666RAM2 | $2,236,000 | Subordination (Subordinate)<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A3 | A- | 1 |
| | 2-AV | 12666RAR1 | $118,400,000 | Subordination (Senior)<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 2 |

22

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | 3-AV-1 | 12666RAS9 | $105,239,000 | Subordination (Senior) Overcollateralization Excess Interest Interest Rate Swap Contract | Aaa | AAA | 3 |
| | 3-AV-2 | 12666RAT7 | $26,793,000 | Subordination (Senior) Overcollateralization Excess Interest Interest Rate Swap Contract | Aaa | AAA | 3 |
| | 3-AV-3 | 12666RAU4 | $67,812,000 | Subordination (Senior) Overcollateralization Interest Rate Swap Contract | Aaa | AAA | 3 |
| | 3-AV-4 | 12666RAV2 | $24,156,000 | Subordination (Senior) Overcollateralization Excess Interest Interest Rate Swap Contract | Aaa | AAA | 3 |
| | MV-1 | 12666RAW0 | $15,622,000 | Subordination (Subordinate) Overcollateralization Excess Interest Interest Rate Swap Contract | Aa1 | AA+ | 2 & 3 |

23

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | MV-2 | 12666RAX8 | $14,124,000 | Subordination (Subordinate)<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aa2 | AA | 2 & 3 |
| | MV-3 | 12666RAY6 | $8,346,000 | Subordination (Subordinate)<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aa3 | AA- | 2 & 3 |
| | MV-4 | 12666RAZ3 | $7,276,000 | Subordination (Subordinate)<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A1 | A+ | 2 & 3 |
| | MV-5 | 12666RBA7 | $7,062,000 | Subordination (Subordinate)<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A2 | A | 2 & 3 |

24

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | MV-6 | 12666RBB5 | $6,634,000 | Subordination (Subordinate) Overcollateralization Excess Interest Interest Rate Swap Contract | A3 | A- | 2 & 3 |
| CWABS 2006-11 (Ex. 18) | 1-AF-1 | 12666TAA4 | $191,470,000 | Guaranty Insurance Policy Mortgage Insurance Pool Insurance Overcollateralization Excess Interest Corridor Contract | Aaa | AAA | 1 |
| | 1-AF-2 | 12666TAB2 | $84,303,000 | Guaranty Insurance Policy Mortgage Insurance Pool Insurance Overcollateralization Excess Interest | Aaa | AAA | 1 |
| | 1-AF-3 | 12666TAC0 | $84,303,000 | Guaranty Insurance Policy Mortgage Insurance Pool Insurance Overcollateralization Excess Interest | Aaa | AAA | 1 |

25

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | 1-AF-4 | 12666TAD8 | $157,525,000 | Guaranty Insurance Policy<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest | Aaa | AAA | 1 |
| | 1-AF-5 | 12666TAE6 | $102,599,000 | Guaranty Insurance Policy<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest | Aaa | AAA | 1 |
| | 1-AF-6 | 12666TAF3 | $70,000,000 | Guaranty Insurance Policy<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest | Aaa | AAA | 1 |

26

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | 2-AV | 12666TAG1 | $460,174,000 | Subordination (Senior)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 2 |
| | 3-AV-1 | 12666TAH9 | $212,197,000 | Subordination (Senior)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 3 |
| | 3-AV-2 | 12666TAJ5 | $224,393,000 | Subordination (Senior)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 3 |

27

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
|  | 3-AV-3 | 12666TAK2 | $52,546,000 | Subordination (Senior)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aaa | AAA | 3 |
|  | MV-1 | 12666TAL0 | $53,100,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aa1 | AA+ | 2 & 3 |
|  | MV-2 | 12666TAM8 | $33,630,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aa | AA | 2 & 3 |

28

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | MV-3 | 12666TAN6 | $24,780,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Aa3 | AA- | 2 & 3 |
| | MV-4 | 12666TAP1 | $18,290,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A1 | A+ | 2 & 3 |
| | MV-5 | 12666TAQ9 | $20,650,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A2 | A | 2 & 3 |

29

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | MV-6 | 12666TAR7 | $15,340,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | A3 | A- | 2 & 3 |
| | MV-7 | 12666TAS5 | $17,700,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Baa1 | BBB+ | 2 & 3 |
| | MV-8 | 12666TAT3 | $15,340,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Baa2 | BBB | 2 & 3 |

30

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| **CWABS 2006-15 (Ex. 19)** | BV | 12666TAU0 | $8,260,000 | Mortgage Insurance<br>Pool Insurance<br>Overcollateralization<br>Excess Interest<br>Interest Rate Swap Contract | Baa3 | BBB- | 2 & 3 |
| | A-1 | 12666UAA1 | $287,551,000 | Subordination (Senior)<br>Overcollateralization<br>Excess Interest<br>Corridor Contract | Aaa | AAA | N/A |
| | A-2 | 12666UAB9 | $66,269,000 | Subordination (Senior)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |
| | A-3 | 12666UAC7 | $194,298,000 | Subordination (Senior)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |
| | A-4 | 12666UAD5 | $71,654,000 | Subordination (Senior)<br>Overcollateralization<br>Excess Interest | Aaa | AAA | N/A |

31

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | A-5A | 12666UAE3 | $56,228,000 | Subordination (Senior) Overcollateralization Excess Interest | Aaa | AAA | N/A |
| | A-5B | 12666UAF0 | $50,000,000 | Subordination (Senior) Guaranty Insurance Policy Overcollateralization Excess Interest | Aaa | AAA | N/A |
| | A-6 | 12666UAG8 | $100,000,000 | Subordination (Senior) Overcollateralization Excess Interest | Aaa | AAA | N/A |
| | M-1 | 12666UAH6 | $29,000,000 | Subordination (Subordinate) Overcollateralization Excess Interest | Aa1 | AA+ | N/A |
| | M-2 | 12666UAJ2 | $27,000,000 | Subordination (Subordinate) Overcollateralization Excess Interest | Aa2 | AA | N/A |
| | M-3 | 12666UAK9 | $15,500,000 | Subordination (Subordinate) Overcollateralization Excess Interest | Aa3 | AA- | N/A |

32

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | M-4 | 12666UAL7 | $14,000,000 | Subordination (Subordinate) Overcollateralization Excess Interest | A1 | A+ | N/A |
| | M-5 | 12666UAM5 | $13,000,000 | Subordination (Subordinate) Overcollateralization Excess Interest | A2 | A | N/A |
| | M-6 | 12666UAN3 | $12,500,000 | Subordination (Subordinate) Overcollateralization Excess Interest | A3 | A- | N/A |
| | 1-A | 23243HAA9 | $423,724,000 | Subordination (Senior) Mortgage Insurance Overcollateralization Excess Interest | Aaa | AAA | 1 |
| CWABS 2006-24 (Ex. 20) | 2-A-1 | 23243HAB7 | $311,010,000 | Subordination (Senior) Mortgage Insurance Overcollateralization Excess Interest | Aaa | AAA | 2 |

33

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | 2-A-2 | 23243HAC5 | $82,419,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest | Aaa | AAA | 2 |
| | 2-A-3 | 23243HAD3 | $208,556,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest | Aaa | AAA | 2 |
| | 2-A-4 | 23243HAE1 | $73,683,000 | Subordination (Senior)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest | Aaa | AAA | 2 |
| | M-1 | 23243HAF8 | $50,400,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest | Aa1 | AA+ | 1 & 2 |

34

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
|  | M-2 | 23243HAG6 | $42,336,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest | Aa2 | AA | 1 & 2 |
|  | M-3 | 23243HAH4 | $23,520,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest | Aa3 | AA- | 1 & 2 |
|  | M-4 | 23243HAJ0 | $21,504,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest | A1 | A+ | 1 & 2 |
|  | M-5 | 23243HAK7 | $20,832,000 | Subordination (Subordinate)<br>Mortgage Insurance<br>Overcollateralization<br>Excess Interest | A2 | A | 1 & 2 |

35

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | M-6 | 23243HAL5 | $14,784,000 | Subordination (Subordinate) Mortgage Insurance Overcollateralization Excess Interest | A3 | A- | 1 & 2 |
| | M-7 | 23243HAM3 | $15,456,000 | Subordination (Subordinate) Mortgage Insurance Overcollateralization Excess Interest | Baa1 | BBB+ | 1 & 2 |
| | M-8 | 23243HAN1 | $9,408,000 | Subordination (Subordinate) Mortgage Insurance Overcollateralization Excess Interest | Baa2 | BBB | 1 & 2 |
| | M-9 | 23243HAP6 | $7,392,000 | Subordination (Subordinate) Mortgage Insurance Overcollateralization Excess Interest | Baa3 | BBB- | 1 & 2 |
| CWMBS 2006-HYB3 (Ex. 21) | 1-A-1A | 12669U3U0 | $35,000,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 1-A-1B | 12669U3V8 | $40,182,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 1-A-2 | 12669U3W6 | $8,354,000 | Subordination (Senior) | Aaa | AAA | 1 |

36

LIBA/2144358.6

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | 1-A-IO | 1266943X4 | $83,536,000 | Subordination (Senior) | Aaa | AAA | 1 |
| | 2-A-1A | 1266943Y2 | $141,112,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-B-1 | 1266944C9 | $31,358,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-B-2 | 1266943Z9 | $70,292,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-B-3 | 1266944A3 | $29,363,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-2 | 1266944B1 | $41,457,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 2-A-IO | 1266944D7 | $243,290,000 | Subordination (Senior) | Aaa | AAA | 2 |
| | 3-A-1A | 1266944E5 | $40,000,000 | Subordination (Senior) | Aaa | AAA | 3 |
| | 3-A-1B | 1266944F2 | $218,684,000 | Subordination (Senior) | Aaa | AAA | 3 |
| | 3-A-2 | 1266944G0 | $28,743,000 | Subordination (Senior) | Aaa | AAA | 3 |
| | 3-A-IO | 1266944H8 | $247,427,000 | Subordination (Senior) | Aaa | AAA | 3 |
| | 4-A-1A | 1266944J4 | $193,023,000 | Subordination (Senior) | Aaa | AAA | 4 |
| | 4-A-1B | 1266944K1 | $20,000,000 | Subordination (Senior) | Aaa | AAA | 4 |
| | 4-A-1C | 1266944L9 | $2,222,000 | Subordination (Senior) | Aaa | AAA | 4 |
| | 4-A-2 | 1266944M7 | $23,916,000 | Subordination (Senior) | Aaa | AAA | 4 |
| | 4-A-IO | 1266944N5 | $215,245,000 | Subordination (Senior) | Aaa | AAA | 4 |

37

| OFFERING | TRANCHE / CLASS | CUSIP[1] | PRINCIPAL BALANCE | CREDIT ENHANCEMENT | MOODY'S RATING | S&P RATING | LOAN GROUP |
|---|---|---|---|---|---|---|---|
| | A-R | 1266944V7 | $100 | Subordination (Senior) | Aaa | AAA | 1,2,3&4 |
| | M | 1266944P0 | $21,595,000 | Subordination (Subordinate) | Aa2 | AA | 1 |
| | B-1 | 1266944Q8 | $13,743,000 | Subordination (Subordinate) | A2 | A | 1 |
| | B-2 | 1266944R6 | $7,853,000 | Subordination (Subordinate) | Baa2 | BBB | 1 |

38

**PROOF OF SERVICE**

I, Britani N. Selzler, declare:

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 601 S. Figueroa Street, suite 4100, Los Angeles, CA 90017.

On January 17, 2011, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons listed on the service list below:

**COUNTRYWIDE DEFENDANTS' SUPPLEMENTAL BRIEF RE: TOLLING IN SUPPORT OF MOTION TO DISMISS**

☑    (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on January 17, 2011, at Los Angeles, California.

_____          _____
Britani N. Selzler                                                              (Signature)
(Type or print name)

Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

1

PROOF OF SERVICE

1

2

3

4

**SERVICE LIST**

**MAINE STATE RETIREMENT SYSTEM v.
COUNTRYWIDE FINANCIAL CORPORATION, et al.**

**CASE NO. CV-10-00302-MRP-(MAN)**

| | |
|---|---|
| Christopher Lometti<br>Daniel B. Rehns<br>Joel P. Laitman<br>**COHEN MILSTEIN SELLER & TOLL PLC**<br>88 Pine Street 14th Floor<br>New York, NY 10005 | *Attorneys for Lead Plaintiffs::*<br>**Iowa Public Employees' Retirement System** *Individually and On Behalf of All Other Similarly Situated*<br><br>Tel: 212-383-7797<br>Fax: 212-838-7745<br>clometti@cohenmilstein.com<br>drehns@cohenmilstein.com<br>jlaitman@cohenmilstein.com |
| Joshua S. Devore<br>Matthew B. Kaplan<br>S Douglas Bunch<br>Steven J. Toll<br>Julie G. Reiser<br>**COHEN MILSTEIN HAUSFELD & TOLL PLLC**<br>1100 New York Avenue NW West Tower Suite 500<br>Washington, DC 20005-3964 | Tel: 202-408-4600<br>Fax: 202-408-4699<br>jdevore@cohenmilstein.com<br>mkaplan@cohenmilstein.com<br>dbunch@cohenmilstein.com<br>stoll@cohenmilstein.com<br>jreiser@cohenmilstein.com |
| Michael M. Goldberg<br>**GLANCY BINKOW & GOLDBERG LLP**<br>1801 Avenue of the Stars Suite 311<br>Los Angeles, CA 90067 | Tel: 310-201-9150<br>Fax: 310-201-9160<br>mmgoldberg@glancylaw.com |
| Christina A. Royce<br>Daniel S. Drosman<br>Lauren G. Kerkhoff *<br>Scott H. Saham<br>Spencer Alan Burkholz<br>Thomas E. Egler<br>**ROBBINS GELLER RUDMAN & DOWD LLP**<br>655 West Broadway Suite 1900<br>San Diego, CA 92101 | *Attorneys for Plaintiff:*<br>**Maine State Retirement System** *Individually and On Behalf of All Others Similarly Situated*<br><br>Tel: 619-231-1058<br>Fax: 619-667-7056<br>croyce@rgrdlaw.com<br>ddrosman@rgrdlaw.com<br>lkerkhoff@rgrdlaw.com<br>scotts@rgrdlaw.com<br>spenceb@rgrdlaw.com<br>tome@rgrdlaw.com |
| Andrew L Zivitz<br>Jennifer L Joost<br>Sharan Nirmul<br>Sean M Handler<br>Lauren Wagner Pederson*<br>**BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP**<br>280 King of Prussia Road<br>Radnor, PA 19087 | Tel: 610-667-7706<br>Fax: 610-667-7056<br>azivitz@btkmc.com<br>jjoost@btkmc.com<br>snirmul@btkmc.com<br>shandler@btkmc.com |

Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

PROOF OF SERVICE

Goodwin Procter LLP
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

| | |
|---|---|
| Arthur L. Shingler , III<br>**SCOTT AND SCOTT LLP**<br>6424 Santa Monica Boulevard<br>Los Angeles, CA 90038 | *Attorney for Movant:*<br>**Putnam Bank**<br><br>Tel: 213-985-1274<br>Fax: 213-985-1278<br>ashingler@scott-scott.com |
| Avi N. Wagner<br>**THE WAGNER FIRM**<br>1801 Avenue of the Stars Suite 307<br>Los Angeles, CA 90067 | *Attorneys for Movant:*<br>**United Methodist Churches Benefit Board, Inc.**<br><br>Tel: 310-491-7949<br>Fax: 310-491-7949<br>avi@thewagnerfirm.com |
| Ira M. Press<br>Randall K. Berger<br>**KIRBY MCINERNEY LLP**<br>825 Third Avenue 16th Floor<br>New York, NY 10022 | Tel: 212-317-6600<br>Fax: 212-751-2540<br>ipress@kmllp.com<br>rberger@kmllp.com |
| Spencer Alan Burkholz<br>**ROBBINS GELLER RUDMAN & DOWD LLP**<br>655 West Broadway Suite 1900<br>San Diego, CA 92101 | *Attorneys for Movants:*<br>**Maine Public Employees Retirement System, Operating Engineers Annuity Plan, Pension Trust Fund for Operating Engineers, Vermont Pension Investment Committee, Washington State Plumbing & Pipefitting Pension Trust**<br><br>Tel: 619-231-1058<br>Fax: 619-667-7056<br>spenceb@rgrdlaw.com |
| Azra Z. Mehdi<br>**MILBERG LLP**<br>300 South Grand Avenue, Suite 3900<br>Los Angeles, CA 90071 | **Mashreqbank, P.S.C.**<br><br>Tel: 213-617-1200<br>Fax: 213-617-1975<br>amehdi@milberg.com |

3

**Goodwin Procter LLP**
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| Alexander K. Mircheff<br>Dean J. Kitchens<br>**GIBSON DUNN & CRUTCHER LLP**<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197 | *Attorneys for Defendants:*<br>**J.P. Morgan Securities Inc., Deutsche Bank Securities Inc., Bear, Stearns & Co. Inc., Banc of America Securities LLC, UBS Securities, LLC, Morgan Stanley & Co. Incorporated, Edward D. Jones & Co., L.P., Citigroup Global Markets Inc., Goldman, Sachs & Co., Credit Suisse Securities (USA) LLC, Barclays Capital Inc., HSBC Securities (USA), BNP Paribas Securities Corp. Merrill Lynch, Pierce, Fenner & Smith, Incorporated** |
| | Tel: 213-229-7000<br>Fax: 213-229-7520<br>amircheff@gibsondunn.com<br>dkitchens@gibsondunn.com |
| Christopher G. Caldwell<br>David C. Codell<br>Jeffrey M. Hammer<br>**CALDWELL LESLIE AND PROCTOR**<br>1000 Wilshire Blvd Suite 600<br>Los Angeles, CA 90017 | *Attorneys for Defendant:*<br>**Stanford L. Kurland**<br><br>Tel : 213-629-9040<br>Fax: 213-629-9022<br>caldwell@caldwell-leslie.com<br>codell@caldwell-leslie.com<br>hammer@caldwell-leslie.com |
| Jennifer M. Sepic<br>**BINGHAM MCCUTCHEN LLP**<br>355 South Grand Avenue Suite 4400<br>Los Angeles, CA 90071 | *Attorneys for Defendant:*<br>**David A. Spector**<br><br>Tel: 213-680-6400<br>Fax: 213-680-6499<br>jennifer.sepic@bingham.com |
| Leiv H. Blad , Jr<br>Boyd Cloern<br>**BINGHAM MCCUTCHEN LLP**<br>2020 K Street NW<br>Washington, DC 20006-1806 | Tel: 202-373-6564<br>Fax: 202-373-6001<br>leiv.blad@bingham.com<br>boyd.cloern@bingham.com |
| Joshua G. Hamilton<br>Peter Young Hoon Cho<br>William F. Sullivan<br>**PAUL HASTINGS JANOFSKY AND WALKER LLP**<br>515 South Flower Street 25th Fl<br>Los Angeles, CA 90071-2228 | *Attorneys for Defendants:*<br>**Ranjit Kripalani, Jennifer S. Sandefur,**<br><br>Tel: 213-683-6000<br>Fax: 213-627-0705<br>joshuahamilton@paulhastings.com<br>petercho@paulhastings.com<br>williamsullivan@paulhastings.com |

4

PROOF OF SERVICE

**Goodwin Procter LLP**
10250 Constellation Blvd., 21st Floor
Los Angeles, California 90067

| | |
|---|---|
| Michael D. Torpey<br>Penelope A. Graboys Blair<br>**ORRICK HERRINGTON AND SUTCLIFFE LLP**<br>405 Howard Street<br>San Francisco, CA 94105-2669 | *Attorneys for Defendant:*<br>**David A. Sambol**<br><br>Tel: 415-773-5700<br>Fax: 415-773-5759<br>mtorpey@orrick.com<br>pgraboysblair@orrick.com |
| Michael C. Tu<br>**ORRICK HERRINGTON AND SUTCLIFFE LLP**<br>777 South Figueroa Street Suite 3200<br>Los Angeles, CA 90017 | Tel: 213-629-2020<br>Fax: 213-612-2499<br>mtu@orrick.com |
| David A. Priebe<br>Jeffrey B. Coopersmith<br>**DLA PIPER LLP**<br>2000 University Avenue<br>East Palo Alto, CA 94303 | *Attorneys for Defendant:*<br>**Eric P. Sieracki**<br><br>Tel: 650-833-2000<br>Fax: 650-833-2001<br>david.priebe@dlapiper.com<br>jeff.coopersmith@dlapiper.com |
| Matthew D. Caplan<br>Nicolas Morgan<br>**DLA PIPER LLP**<br>1999 Avenue of the Stars, Suite 400<br>Los Angeles, CA 90067-6022 | Tel: 310-595-3000<br>Fax: 310-595-3300<br>david.priebe@dlapiper.com<br>nicolas.morgan@dlapiper.com |
| Shirli Fabbri Weiss<br>**DLA PIPER LLP**<br>401 B Street, Suite 1700<br>San Diego, CA 92101 | Tel: 619-699-2700<br>Fax: 619-699-2701<br>shirli.weiss@dlapiper.com |
| Matthew W. Close<br>**O'MELVENY AND MYERS**<br>400 S. Hope Street, 18th Floor<br>Los Angeles, CA 90071 | *Attorneys for Defendant:*<br>**Bank of America Corp.,**<br>**NB Holdings Corporation**<br><br>Tel: 213-430-6000<br>Fax: 213-430-6407<br>mclose@omm.com |

5

PROOF OF SERVICE