LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California  90067
Telephone:   (310) 201-9150
Facsimile:    (310) 201-9160

*Liaison Counsel for Lead Plaintiff Iowa Public Employees' Retirement System*
*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION;  COUNTRYWIDE SECURITIES CORPORATION; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE CAPITAL MARKETS; BANK OF AMERICA CORP.; NB HOLDINGS CORPORATION; CWALT, INC.; CWMBS, INC.; CWABS, INC.; CWHEQ, INC.; J.P. MORGAN SECURITIES, INC.; DEUTSCHE BANK SECURITIES INC.; BEAR, STEARNS & CO., INC.; JPMORGAN CHASE, INC.; BANC OF AMERICA SECURITIES LLC; UBS SECURITIES LLC; MORGAN STANLEY & CO., INC.; EDWARD D. JONES & CO., L.P.; CITIGROUP GLOBAL MARKETS, INC.; GOLDMAN, SACHS & CO.; CREDIT SUISSE SECURITIES (USA) LLC; RBS SECURITIES INC.; BARCLAY'S CAPITAL, INC.; HSBC SECURITIES (USA) INC.; BNP PARIBAS SECURITIES CORP.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; STANFORD L. KURLAND; DAVID A. SPECTOR; ERIC P. SIERACKI; N. JOSHUA ADLER; RANJIT KRIPALANI; JENNIFER S. SANDEFUR; THOMAS KEITH MCLAUGHLIN; THOMAS H. BOONE; JEFFREY P. GROGIN; DAVID A. SAMBOL,<br><br>Defendants. | No.  2:10-CV-00302 MRP (MAN)<br><br><br>CLASS ACTION<br><br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEF RE: TOLLING IN SUPPORT OF THEIR MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   INTRODUCTION ......................................................................................1

III.  ARGUMENT...............................................................................................5

    A.  There is No Legal Authority to Support A Tranche-
        Based Standing Determination Under The Securities Act .......................5

    B.  All Tranches are Structurally Interconnected
        and Bound-Together By Common Misstatements and Omissions ..........8

IV.   CONCLUSION.............................................................................................14

No. 2:10-cv-00302: PLTFS. SUPPL. MEM. OF PTS. AND AUTH. IN OPP. TO
DEFS. SUPPL. BRIEF RE: TOLLING IN SUPPORT OF THE MTN. TO DISMISS

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................5

*Boilermaker Blacksmith Nat'l Pension Trust v. WaMu Mortg. Pass-Through
  Certificates, Series 2006-AR1,*
  No. C09-00037MJP, 2010 U.S. Dist. LEXIS 104427 (W.D. Wash. Sept.
  28, 2010) ...................................................................................................2

*City of Ann Arbor Emps. Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.,*
  No. CV 08-1418, 2010 U.S. Dist. LEXIS 137290 (E.D.N.Y. Dec. 23,
  2010) ...........................................................................................................2

*Dreiling v. Am. Express Co.,*
  458 F.3d 942 (9th Cir. 2006) ......................................................................12

*Hertzberg v. Dignity Partners, Inc.,*
  191 F.3d 1076 (9th Cir. 1999) ......................................................................6

*In re Bidz.com, Inc.,*
  No. CV 09-4984 PSG (Ex), 2010 U.S. Dist. LEXIS 49750 (C.D. Cal.
  Apr. 27, 2010) ...........................................................................................12

*In re Enron Corp. Sec., Derivative, & "ERISA" Litig.,*
  465 F. Supp. 2d 687 (S.D. Tex. 2006) ..........................................................14

*In re IndyMac Mortg.-Backed Sec. Litig.,*
  718 F. Supp. 2d 495 (S.D.N.Y. 2010) ............................................................2

*In re Lehman Bros. Mortg.-Backed Sec & ERISA. Litig.,*
  684 F. Supp. 2d 485 (S.D.N.Y. 2010) ............................................................2

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.,*
  No. 09 Civ. 2137(LTS)(MHD), 2010 U.S. Dist. LEXIS 84146 (S.D.N.Y.
  Aug. 17, 2010) ("*Morgan Stanley MBS*") ....................................................2

*In re Stac Elecs. Sec. Litig.,*
  89 F.3d 1399 (9th Cir. 1996) ......................................................................12

*Wells Fargo Mortg.-Backed Certificates Litig.,*
  712 F. Supp. 2d 958 (N.D. Cal. 2010) ("*Wells Fargo MBS I*") ....................3, 7

*Mass. Bricklayers & Masons Funds v. Deutsche Alt-A Sec.,*
  No. CV 08-3178, 2010 U.S. Dist. LEXIS 33976 (E.D.N.Y. Apr. 6, 2010)
  ("*Deutsche Bank MBS I*") .............................................................................5

*Mass. Bricklayers & Masons Funds v. Deutsche Alt-A Sec.,*
  No. CV 08-3178, 2010 U.S. Dist. LEXIS 137284 (E.D.N.Y. Dec. 23,
  2010) ("*Deutsche Bank MBS II*") ...................................................................2

*Moss v. U.S. Secret Serv.,*
    572 F.3d 962 (9th Cir. 2009) ...........................................................................5

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,*
    No. 08 Civ. 5653 (PAC), 2010 U.S. Dist. LEXIS 47512 (S.D.N.Y. Mar.
    29, 2010) ...................................................................................................2

*N.J. Carpenters Health Fund v. Residential Capital, LLC,*
    No. 08 CV 8781 (HB), 2010 U.S. Dist. LEXIS 32058 (S.D.N.Y. Mar. 31,
    2010) ("*RALI MBS*") .................................................................................2

*N.J. Carpenters Health Fund v. Residential Capital, LLC,*
    No. 08 CV 8781 (HB), 2011 U.S. Dist. LEXIS 4343 (S.D.N.Y. Jan. 18,
    2011) ("*HV/RALI MBS Cert. Decision*") ...............................................7

*N.J. Carpenters Vacation Fund v. The Royal Bank of Scotland Group, plc,*
    720 F. Supp. 2d 254 (S.D.N.Y. 2010) ("*Harborview MBS*").....................3

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
    No. 08 Civ. 10783(MGC), 2010 U.S. Dist. LEXIS 123675 (S.D.N.Y.
    Nov. 16, 2010) ("*NECA-IBEW MBS*") .................................................2, 8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
    No. 08-cv-10783 (S.D.N.Y.)......................................................................3, 8

*Plumbers' Local Union 12 Pension Fund v. Nomura Asset Acceptance
    Corp.,*
    No. 09-2596, 2011 U.S. App. LEXIS 1254 (1st Cir. Jan. 20, 2011)...................2

*Pub. Emps. Ret. Sys. of Miss. v. Goldman Sachs Group, Inc.,*
    No. 09-cv-1110, 2011 U.S. Dist. LEXIS 3267 (S.D.N.Y. Jan. 12, 2011)...........2

*Tsereteli v. Residential Asset Securitization Trust 2006-A8,*
    692 F. Supp. 2d 387 (S.D.N.Y. 2010) ("*Tsetereli MBS*") ....................................2

STATUTES & RULES

15 U.S.C. § 77k(a) ..............................................................................................6

Fed. R. Evid. 201(b)...........................................................................................12

## I.   PRELIMINARY STATEMENT

Lead Plaintiff Iowa Public Employees' Retirement System ("IPERS") and additional named plaintiffs the General Board of Pension and Health Benefits of the United Methodist Church ("GBPHB"), Orange County Employees' Retirement System ("OCERS"), and the State of Oregon, by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board on behalf of the Oregon Public Employee Retirement Fund ("OPERS"), respectfully submit this supplemental memorandum[1] in opposition to the Countrywide Defendants' Supplemental Brief re: Tolling In Support of Motion to Dismiss ("Defs. Suppl. Br.") and joinders thereto.[2] *See* Dkt. Nos. 231, 232, 234, 235, 236.  The primary motion to dismiss and memorandum was filed by the Countrywide Defendants, and is referred to herein as "Defendants' Suppl. Brief," and cited as "Defs.' Suppl. Br." (Dkt. No. 231).   An additional supplemental memorandum was filed on behalf of Defendant David Sambol, referred to as the "Sambol Suppl. Brief" (Dkt. No. 233).   The arguments advanced by Defendants are addressed in this one memorandum, and, for the reasons stated herein and in the Plaintiffs' prior briefing the Defendants' Motions to Dismiss, should be denied.

## II.   INTRODUCTION

In accordance with the Countrywide Tolling Decision permitting Plaintiffs to amend their Complaint to conform with respect to standing and statute of limitations issues, Plaintiffs filed the Second Amended Complaint setting forth specific allegations regarding their purchases of Countrywide MBS in fourteen (14) separate Countrywide Offerings.  Defendants do not dispute that Plaintiffs

---

[1] Pursuant to the Court's November 4, 2010 Decision and Order ("Countrywide Tolling Decision"), Plaintiffs filed the Second Amended Class Action Complaint (Dkt. No. 227) (the "SAC,") on December 6, 2010.  By subsequent Order dated December 14, 2010 (Dkt. No. 229), the Court directed Defendants to "submit supplemental briefing that addresses Plaintiffs' amended allegations, but only with respect to the issue of tolling."

[2] All capitalized terms used herein have the same meaning as in the SAC, and references thereto are in the form "¶__".

1    purchased certificates in those Offerings or that such purchases served to toll the

2    statute of limitations under *American Pipe*.   Instead, Defendants' argue that

3    Plaintiffs have standing only with respect to the particular tranches that Plaintiffs

4    purchased.

5         There is no legal basis for this argument either in the plain language of the

6    Securities Act or in applicable case law.   In fact, **none** of the fifteen (15) federal

7    district court[3] nor the lone circuit court[4] decisions addressing the standing of MBS

---

8    [3]   *See, e.g., Boilermaker Blacksmith Nat'l Pension Trust v. WaMu Mortg. Pass-*
9    *Through Certificates, Series 2006-AR1,* No. C09-00037MJP, 2010 U.S. Dist.
10   LEXIS 104427 (W.D. Wash. Sept. 28, 2010); *N.J. Carpenters Health Fund v.*
     *Residential Capital, LLC,* No. 08 CV 8781 (HB), 2010 U.S. Dist. LEXIS 32058
11   (S.D.N.Y. Mar. 31, 2010) ("*RALI MBS*"); *In re Lehman Bros. Mortg.-Backed Sec*
     *& ERISA. Litig.*, 684 F. Supp. 2d 485 (S.D.N.Y. 2010); *In re IndyMac Mortg.-*
12   *Backed Sec. Litig.*, 718 F. Supp. 2d 495 (S.D.N.Y. 2010); *City of Ann Arbor*
     *Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust, Inc.*, No. CV 08-1418, 2010 U.S.
13   Dist. LEXIS 137290 (E.D.N.Y. Dec. 23, 2010); *Mass. Bricklayers & Masons*
     *Funds v. Deutsche Alt-A Sec.,* No. CV 08-3178, 2010 U.S. Dist. LEXIS 137284
14   (E.D.N.Y. Dec. 23, 2010) ("*Deutsche Bank MBS II*"); *In re Morgan Stanley Mortg.*
     *Pass-Through Certificates Litig.*, No. 09 Civ. 2137(LTS)(MHD), 2010 U.S. Dist.
15   LEXIS 84146 (S.D.N.Y. Aug. 17, 2010) ("*Morgan Stanley MBS*"); *N.J.*
     *Carpenters Health Fund v. DLJ Mortg. Capital, Inc.,* No. 08 Civ. 5653 (PAC),
16   2010 U.S. Dist. LEXIS 47512 (S.D.N.Y. Mar. 29, 2010); *Tsereteli v. Residential*
     *Asset Securitization Trust 2006-A8,* 692 F. Supp. 2d 387 (S.D.N.Y. 2010)
17   ("*Tsereteli MBS*"); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
     No. 08 Civ. 10783(MGC), 2010 U.S. Dist. LEXIS 123675 (S.D.N.Y. Nov. 16,
18   2010) ("*NECA-IBEW MBS*"); *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs*
     *Group, Inc.,* No. 09-cv-1110, 2011 U.S. Dist. LEXIS 3267 (S.D.N.Y. Jan. 12,
     2011).
19   [4]   In *Nomura*, the Court of Appeals for the First Circuit relied on two factors when
     holding that plaintiffs had standing to sue on behalf of all tranches in two out of
20   eight offerings: "identity of issues" and "alignment of incentives." In affirming
     dismissal of claims based on the six offerings that plaintiffs did not purchase, the
21   Court reasoned: "Each trust is backed by loans from a different mix of banks; no
     named plaintiff has a significant interest in establishing wrongdoing by the
22   particular group of banks that financed a trust from which the named plaintiffs
     made no purchases . . . [therefore] the named plaintiffs have no stake in
23   establishing liability as to misconduct involving the sales of those certificates."
     *Plumbers' Local Union 12 Pension Fund v. Nomura Asset Acceptance Corp.,* No.
24   09-2596, 2011 U.S. App. LEXIS 1254, at *17-18 (1st Cir. Jan. 20, 2011).

        Applied to the facts of this case, *Nomura* lends further support for the
25   proposition that plaintiffs have standing to sue on behalf of all tranches offered in
     the 14 offerings at issue. In those offerings, each tranche was backed by a pool of
26   loans that were either originated or acquired (¶¶91-101) – not by a different mix of
     banks – but by a single bank that established each trust: Countrywide. In addition,
27   the named plaintiffs have a significant interest in establishing wrongdoing by
     Countrywide; their claims will stand or fall on their ability to prove that the loans
28   underlying the MBS at issue in each offering were originated in violation of
     Countywide's guidelines. In this case, the tranches in each offering are bound

purchasers to pursue Securities Act claims has ruled, as Defendants argue here, that a plaintiff's standing to represent other investors is limited to the tranche it purchased as opposed to all of the component tranches of an offering.  *See e.g., Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958, 974 (N.D. Cal. 2010) ("*Wells Fargo MBS I*") (plaintiffs have pled a primary violation of Section 11 with respect to **the seventeen offerings** they have standing to challenge) (emphasis added); *see also N.J. Carpenters Vacation Fund v. The Royal Bank of Scotland Group, plc,* 720 F. Supp. 2d 254, 266 (S.D.N.Y. 2010) ("*Harborview MBS*") (stating that "Plaintiffs need to show an injury connected to the ***offerings they challenge as misleading***" in upholding Securities Act claims based on misrepresentations and omissions made in connection with the issuance of mortgage-backed securities) (emphasis added). The reason is clear.  Under the Securities Act the purchaser must have purchased pursuant to the offering document containing the alleged misstatements and omissions. Here, as in all of the other MBS class actions, the Plaintiffs by purchasing a single tranche have the requisite nexus to the challenged offering documents to pursue claims on behalf of all those who bought pursuant to the same offering document.  No court has ever ruled that merely because each tranche may be traded separately and has separate CUSIP numbers that those characteristics change the standing requirement under the Securities Act.  This is particularly true where here, as in all the other MBS cases, the alleged misstatements and omissions (relating to the loan underwriting guidelines) apply to all the tranches in each Offering.[5]  Given this overwhelming precedent, Defendants' attempt to overturn it should be rejected.

---

together with an "identity of issues" and an "alignment of incentives" so that the class claims alleged can and should be allowed to proceed on behalf of all tranches.
[5] Defendants rely heavily, and in fact exclusively, on their interpretation of colloquy at oral argument on the motion to dismiss in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* No. 08 Civ. 10783 (S.D.N.Y.) to support their position that this Court should limit standing to the specific tranches that Plaintiffs purchased.  However, as explained below, the Court's ultimate ruling denied the motion to dismiss the Section 12 claims with respect to the entire offering, not merely the tranche purchased by the plaintiff.

1    Moreover, all the tranches in each offering were impacted by identical
2    misstatements in the Prospectus Supplement (*i.e.*, the widespread disregard of
3    Countrywide's loan underwriting guidelines). Indeed, the tranches were sold in a
4    single offering because they all were structurally interconnected and
5    interdependent. Thus, for example, in four of the Offerings at issue, there is a
6    single common pool of mortgages supporting a structure of senior and subordinate
7    tranches.  *See infra*, at 2-3 n.5.  When losses accumulated causing partial or
8    complete default to the subordinate tranches the senior tranches were downgraded
9    since they have less protection from future losses.  *See* Appendix to Plaintiffs'
10   Supplemental Memorandum of Law ("Pl. Suppl. Mem. Appendix"), Exs. A, B; *see*
11   *also* Declaration of Michael Goldberg in Support ("Goldberg Decl."), Exs. O, P
12   and Plaintiffs' Request for Judicial Notice filed concurrently therewith.  Even in
13   the remaining 10 Offerings where there are loan groups within the common pool
14   designed to pay interest and principal to particular senior tranches, all of the
15   tranches still remain fundamentally interconnected by various credit enhancement
16   mechanisms.  *Id.*  Finally, the interconnection between all the tranches is reflected
17   by the fact that they were downgraded en masse by the poor performance of the
18   collateral as a whole.  ¶¶102-114.  In fact, over 95% of the two hundred eight (208)
19   tranches in the Offerings were downgraded below investment grade based on the
20   collateral performance across all loan groups.  ¶¶107-114; *see also* Goldberg Decl.,
21   Exs. A-N.

22   Accordingly, Plaintiffs have adequately alleged timeliness and standing for
23   each of the fourteen (14) Offerings identified in the SAC and Defendants'
24   argument that tolling has occurred only for the tranches Plaintiffs purchased should
25   be rejected since it is based the imposition of a standing requirement that is
26   inconsistent with the Securities Act and which has literally no legal support in the
27   ample body of case law governing mortgage-backed securities class actions
28   asserting Securities Act claims.

III.   **ARGUMENT**

  A.   **There is No Legal Authority to Support A Tranche-**
       **Based Standing Determination Under The Securities Act**

In assessing the Complaint, dismissal is appropriate only where, viewed in its totality, a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (to survive a motion to dismiss, a complaint "must be plausibly suggestive of a claim entitling the plaintiff to relief").

As this Court recently recognized, standing under Article III and the Securities Act hinges on whether the plaintiff purchased "a security" in the offering:

> Under Article III, Plaintiffs lack standing because they have no personal stake in the outcome and have suffered no injury from offerings which they did not purchase. . . . "To have standing to bring suit under Section 11, a plaintiff must have purchased a security actually issued in the offering for which the plaintiff claims there was a false or otherwise misleading registration statement . . . ." Federal courts have consistently dismissed 1933 Act claims related to offerings in which the plaintiffs did not purchase for lack of statutory standing.

*Countrywide Tolling Decision*, at 5-6 (citation omitted).[6]

Defendants' quotation of a snippet of language in Sections 11 and 12 of the Securities Act as support for tranche standing distorts the statutory language by disconnecting the term "such security" from the operative language and plain

---

[6] In addition, in the Countrywide Tolling Decision, this Court, in directing plaintiffs to replead their allegations with respect to the Certificates actually purchased, relied upon *Mass. Bricklayers & Masons Funds v. Deutsche Alt-A Sec.,* No. CV 08-3178, 2010 U.S. Dist. LEXIS 33976 (E.D.N.Y. Apr. 6, 2010) ("*Deutsche Bank MBS I*"). Countrywide Tolling Decision at 7-8. Whereas in *Deutsche Bank MBS I*, the court did initially order plaintiffs to "specify in the pleading the tranches in which they invested," *Deutsche Bank MBS I*, at *3, in a subsequent ruling denying the defendants' motion to dismiss, the court held plaintiffs were permitted to proceed with their claims as to the entire Offerings in which they purchased Certificates, *id.* at *4-5.

1  meaning of the statutes.  Defs. Suppl. Br. at 4.  The standing requirement under

2  Section 11 is borne from the plain language of the statute and provides:

> (a) Persons possessing cause of action; persons liable. In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading*, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) [in the relevant Registration Statement]  may, either at law or in equity, in any court of competent jurisdiction, sue…*

8  15 U.S.C. § 77k(a) (emphasis added); *see also Hertzberg v. Dignity Partners, Inc.,*

9  191 F.3d 1076, 1080 (9th Cir. 1999) (holding that the language in Section 11 that

10  "any person" must have purchased "such security" clearly means "that the person

11  must have purchased a security issued under that, rather than some other,

12  registration statement.") (citing *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967)).

13     Consistent with the Ninth Circuit's analysis in *Hertzberg,* the only logical

14  reading of the Securities Act, which delineates civil liability in connection with the

15  purchase of a security, means the purchase of "such security" could only be a

16  purchase made in connection with the offering that relates to the misleading

17  Registration Statement, Prospectus or other offering materials – not some subset

18  (or tranche) within the offering.  *Hertzberg,* 191 F.3d at 1080.  The language "such

19  security' is clearly connected to the "Registration Statement" or "Prospectus" and

20  the related offering.  To suggest otherwise, as Defendants do, simply distorts the

21  statutory meaning and structure of the Securities Act.  Indeed, this is precisely the

22  interpretation given by each of the district courts in all fifteen (15) MBS cases

23  finding that a purchaser of a single tranche in an offering may represent all

24  tranches issued pursuant to the common Prospectus under which all the tranches

25  were issued.  *See supra,* at 2-3 n.5.  As another court in this Circuit stated in ruling

26  on Section 11 standing, *a plaintiff must have purchased a security "actually*

27  *issued in the offering* for which the plaintiff claims there was a false or otherwise

28  misleading registration statement." *In re Wells Fargo MBS I,* 712 F. Supp. 2d at

963 (citing *Guenther v. Cooper Life Scis., Inc.,* 759 F. Supp. 1437, 1439 (N.D. Cal. 1990)) (emphasis added).

In *Wells Fargo MBS I* the court was faced with the nearly identical standing issues as here. There, each MBS offering at issue was composed of numerous tranches, but, the plaintiffs had only purchased in one or two tranches in each offering.  The Court ruled that plaintiffs had standing to assert Securities Act claims with respect to each of the MBS offerings in which they purchased certificates.  *Wells Fargo MBS I,* 712 F. Supp. 2d at 965-66.  The Court held that similar "allegations with respect to defendants' underwriting practices are sufficiently specific to state a claim."  *Id.*, at 972.  Here, the same is true. Defendants' attempt to focus the Court on differences in credit ratings, rights to principal and interest payments, risk levels, credit enhancements or loss allocations, Defs. Suppl. Br. at 4-7, to establish that tranche standing is appropriate.  However, at most these differences relate to damage issues – not to the standing analysis and not to the requisite connection between the investor and the misleading Prospectus. That is the same for all investors regardless of which tranche they purchased.

As noted above, of all fifteen (15) decisions addressing motions to dismiss Securities Act class actions arising from mortgage-backed securities Offerings (based on alleged misstatements and omissions in the stated underwriting guidelines) have ruled that the plaintiffs standing is *not* limited to the tranches they purchased in the Offering.  *See supra*, at 2-3 n.5.[7]

---

[7] Indeed this argument has also been rejected at the class certification stage where the court explicitly rejected the argument that Plaintiffs can only represent the tranche they purchased in the Offering. *N.J. Carpenters Health Fund v. Residential Capital, LLC,* No. 08 CV 8781 (HB), 2011 U.S. Dist. LEXIS 4343, at *21-22 (S.D.N.Y. Jan. 18, 2011) ("*HV/RALI MBS Cert. Decision*") ("The alleged disregard for [the underwriting] guidelines [] impacted all proposed class members in the same manner, irrespective of which tranche they purchased. The question of whether the offering documents were materially misleading will be answered the same way regardless of the varying knowledge levels, risk levels, and loss levels of purchasers of different tranches).

1    Defendants' sole purported authority for imposition of a tranche standing

2    requirement is colloquy from oral argument in *NECA-IBEW Health & Welfare*

3    *Fund v. Goldman Sachs & Co.,* 08 Civ. 10783(MGC) (S.D.N.Y.). However, this

4    case does not support Defendants' argument. Defendants cite only to colloquy

5    during a hearing on the motion to dismiss where a tranche requirement was

6    discussed. *See* Defs. Suppl. Br. at 3, 13; *see also NECA-IBEW MBS* Transcript,

7    Defs. Request for Judicial Notice, Ex. 5. Defendants fail to apprise the Court that

8    immediately after the hearing the court upheld plaintiff's Sections 12 and 15

9    claims for the ***offering*** in which plaintiff purchased without any limitation to only

10   the tranches plaintiff purchased.[8] *Id.*

11   In short, there is no support for the notion that the Securities Act requires

12   two hundred eight (208) purchasers (*i.e.,* one on each tranche) to have standing to

13   assert Securities Act claims in connection with the fourteen (14) Offerings at issue.

### B.    All Tranches are Structurally Interconnected and Bound-Together By Common Misstatements and Omissions

14

15   Although Defendants argue that each tranche requires separate

16   representation because they are separate securities with different CUSIPs, and

17   different payment features and different credit enhancements, Defs. Suppl. Br. at 4-

18   7, those facts do not negate the common link in each offering that every investor

19   purchased based on the same misrepresentations and omissions as to

20   Countrywide's underwriting guidelines or that the tranches are linked together by

21   the very nature of their structure within the individual Offerings.[9] Thus, whether

22   tranches had different interest rates, different payment rights, different credit

23

24   ---

[8] After reserving decision on the Section 11 claims at oral argument, in November
25   2010 the Court also dismissed those claims based on the failure to plead cognizable
     loss without ever holding or stating that purchasers of one tranche could not
26   represent other tranche purchasers on the same Offering. *NECA-IBEW MBS*, 2010
     U.S. Dist. LEXIS 123675.
27   [9]  In both the SAC, and Plaintiffs' Memorandum in Opposition to Defendants'
     Motions to Dismiss the First Amended Complaint and Motion to Strike (Dkt. No.
     182) ("Pl. Mem."), Plaintiffs set forth in detail the misrepresentations and
28   omissions concerning underwriting guidelines in each of the Offerings as well as
     the process of structuring the Offerings. ¶¶175-200; *see also* Pl. Mem. at 70-82.

1  enhancements, its own credit rating, or was related to a particular loan group,
2  Defendants still chose to offer them to all investors based on a single collateral
3  pool represented by Defendants in the Prospectus Supplement to be in compliance
4  with the Countrywide's underwriting guidelines set forth therein.[10]

5       Defendants' also argue that different groups of loans backed each of the
6  tranches at issue thus requiring separate standing for each tranche.  Defs. Suppl.
7  Br. at 7-13.  However, for the reasons set forth below, the mere existence of loan
8  groups within an offering does not mandate a separate standing requirement.  All
9  tranches within each Offering, regardless of that particular tranche's characteristics
10  depended on the performance of that offering's entire mortgage pool.  Thus, either
11  directly through the loss of payment of principal and interest, or allocation of
12  losses, or indirectly (at first) by virtue of the impact of defaulting mortgages on the
13  level of credit support or movement of principal and interest between loan groups,
14  all investors in an MBS offering are negatively impacted by poorly performing
15  mortgages which became part of the total collateral pool through the disregard of
16  underwriting guidelines.  Consequently, when any part of the collateral pool failed
17  to perform, the failure to generate cash flows impacted payments of principal and
18  interest that ultimately affected every other tranche that was part of the same
19  Offering, also resulting in the ratings downgrades.[11]

---

[10]  In fact, 12 of the 14 Offerings at issue were collateralized by 100% Countrywide-originated collateral.  *See*, generally, Prospectus Supplements for CWL 2005-11, CWHEL 2005-H, CWALT 2005-62, CWALT 2005-72, CWL 2006-3; CWL 2006-6, CWL 2006-S3, CWL 2006-11, CWL 2006-9, CWL 2006-15, CWL 2006-24 and CWL 2006-S9.  For the two Offerings (CWHL 2005-HYB9 and CWHL 2006-HYB3), the overwhelming majority of the collateral underlying the Certificates was Countrywide-originated.  *See* CWHL 2005-HYB9 Prospectus Supplement, Form 424B5, dated November 29, 2005, at 41; CWHL 2006-HYB3 Prospectus Supplement, Form 424B5, dated April 26, 2006, at S-27.

[11]  Similarly, as of the date of the filing of the January 2010 Initial Complaint in this action, ***over 59%*** of the mortgage collateral underlying the 14 Offerings was delinquent or in default.  ¶¶103-105.  This figure increased to over 60% of the collateral balances by May 2010 when the FAC was filed.  ¶113.  Accordingly, the entire collateral pool and credit support for the certificates for every one of these Offerings has been infected by the poor mortgage originations and virtually every tranche will be affected either directly through lost principal and/or interest or by the impact on diminishing credit support and increasing risk of default.  ¶¶5, 204.

1        To illustrate, four of the Offerings at issue do not even have a structure

2    involving loan groups.[12]   Therefore, any losses incurred as a result of the poor

3    collateral pool in these offerings will directly affect all tranches in at least the

4    following ways.  First, the overcollateralization cushion will disappear and place

5    all tranches at greater risk of default.  Second, the lowest subordinated tranches

6    will incur losses first with a simultaneous loss of credit support in the higher

7    tranches.  Third, as losses increase and the collateral performs poorly and becomes

8    more impaired, rating agencies will downgrade the securities ratings.  An example

9    of how every tranche in an Offering with no loan groups was affected by the poor

10   performance of that collateral pool is reflected in the CWL 2006-S3 Offering.  *See*

11   Pl. Suppl. Mem. Appendix, Ex. B; *see also* Goldberg Decl., Ex. I, P.  Every

12   tranche in this Offering has suffered losses and ratings have been downgraded

13   below investment grade.  *Id*.  Indeed, in the remaining three Offerings with only

14   one loan group, all but two of 32 tranches have been downgraded to below

15   investment grade.  *See* Goldberg Decl., Exs. D, L, N.  In short, regardless of

16   Defendants' arguments concerning certain differences between tranches, they are

17   all impacted by the poor performance of the overall pool.  In other words, their

18   fates are inextricably linked.

19

20       In addition, the Ratings Agencies have downgraded over 93% of the total $17.8
21   billion Certificates to date, with over 91%, or $16.2 billion, having been
     downgraded to "junk" status.  ¶112.  Moreover, now over 90%, or $14.5 billion, of
22   the total $16.03 billion Certificates initially rated AAA/maximum safety now
     having been downgraded from AAA to "Ba1" or below, meaning these Certificates
23   are not only designated "junk bonds," but are assessed to be in danger of
     "imminent default." *Id.*  As the ratings are driven by the level of credit support
24   provided by the collateral pool, those downgrades are based on the performance of
     the entire collateral pool – not some segment of the pool or some tranche related
25   segment.  In fact, the ratings downgrades show that every tranche is either in
     default or in serious danger of default thereby reflecting offering-wide problems in
     the underlying collateral pool.
26   [12] *See* CWL 2006-S3 Prospectus Supplement, Form 424B5, dated June 26, 2006;
     CWL 2006-S9 Prospectus Supplement, Form 424B5, dated December 28, 2006;
27   CWL 2006-15 Prospectus Supplement, Form 424B5, dated September 27, 2006;
     and CWALT 2005-72 Prospectus Supplement, Form 424B5, dated November 29,
28   2005.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For the remaining Offerings structured with two or more loan groups, the credit enhancements like those mentioned above, and the offering-wide impact of losses in the collateral pool will have some of the same or similar effects.  For example, six Offerings, CWL 2005-11, CWL 2006-3, CWL 2006-6, CWL 2006-9, CWL 2006-11 and CWHEL 2005-H, have credit enhancement features known as Excess Cash Flow or Excess Interest.[13]  This feature provides for the allocation of excess cash flow (or excess spread) from the collateral pool, first to support tranches from the related loan group and then to those from the unrelated loan group.  *Id.*  Three Offerings, CWL 2006-3, CWL 2006-6, and CWL 2006-24, feature Swap Agreements which provide credit enhancement to benefit all certificate-holders (except those that invested in the residual tranche) by way of a promissory interest payment arising from a periodic interest exchange between the swap contract administrator and the swap counterparty.[14]

In addition, one Offering, CWHEL 2005-H, features a credit enhancement known as cross-collateralization, which provides that when certain performance-related triggers are reached, the collateral supporting one loan group begins to contributes to the group suffering losses.  *See* CWHEL 2005-H Prospectus Supplement, Form 424B4, dated August 4, 2005, at 41-42.  Finally, three Offerings, CWALT 2005-62, CWHL 2006-HYB3 and CWHL 2005-HYB9, all have credit enhancement in the form of subordination which benefits holders of all classes in each of the Offerings.[15]  Thus, while Defendants contend these

---

[13] CWL 2005-11 Prospectus Supplement, dated June 10, 2005 at S-13; CWL 2006-3 Prospectus Supplement, dated February 23, 2006 at 48; CWL 2006-6 Prospectus Supplement, dated February 23, 2006 at 48; CWL 2006-9 Prospectus Supplement, dated June 26, 2006 at 48; CWL 2006-11 Prospectus Supplement, dated June 26, 2006 at 48; CWL 2005-H Prospectus Supplement, dated August 4, 2005 at S-9 and 90-91.

[14]  CWL 2006-3 Prospectus Supplement, dated February 23, 2006 at 18; CWL 2006-6 Prospectus Supplement, dated February 23, 2006 at 17; CWL 2006-24 Prospectus Supplement, dated November 27, 2006 at 28.

[15]  *See* CWALT 2005-62 Prospectus Supplement, Form 424B5, dated October 28, 2005 at S-8, S-14 and S-101 (subordination that benefits all classes because the M and B class tranches are supported by collateral from Loan Group 1 and Loan Group 2); CWHL 2006-HYB3 Prospectus Supplement, Form 424B5, dated

1    characteristics keep the tranches separate, they in fact are reliant on the

2    performance of the entire collateral pool regardless of their assignment to a

3    particular group.[16]

4         Upon this closer examination of the characteristics of the tranches described

5    by Defendants,[17] looking at the performance of the entire collateral pool of these

6    Offerings reveals the flaw in Defendants' argument for tranche-based standing.

7    Defs. Suppl. Br. at 7.   The actual performance, of at least one of the Offerings

8    Defendants cite to, demonstrates that the performance of the entire collateral pool,

9    not just the collateral supporting a particular loan group, impacts all tranches.

10   Defs. Suppl. Br. at 7-9.   For example, the Countrywide 2006-HYB3 Offering has

---

November 29, 2005, S-16 and S-158 (subordination that benefits all classes because the M and B class tranches are supported by collateral from Loan Group 1, 2, 3, and 4); CWHL 2005-HYB9 Prospectus Supplement, Form 424B5, dated April 26, 2006, at 10-11; 19 and 236. (subordination that benefits all classes because the M class tranche is supported by collateral from Loan Group 1, 2, 3, 4, 5).

[16] Defendants acknowledge that performance of the entire collateral pool is important to all tranches even where there are different groups. Defs. Suppl. Br. at 7, 11.   According to the language form the CWHL 2006-HBY9 Prospectus Supplement cited in Defendants' Supplemental Brief the quote indicates that payments to each loan group come *"primarily", but not exclusively* from the particular loan group. Defs. Suppl. Br. at 8.   In addition, Defendants admit that payments from all five loan groups were linked to certain tranches. Defs. Suppl. Br. at 9 n.7; *see also* CWHL 2006-HYB9 Prospectus Supplement, Form 424B5, dated November 29, 2005; *see also* CWHL 2005-HYB3, Prospectus Supplement, Form 424B5, dated April 26, 2006 (same).

[17] Plaintiffs believe Defendants improperly seek the Court's determination of factual issues not in the SAC.  *See, e.g., In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) ("Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered.") (citation omitted).  *See also Dreiling v. Am. Express Co.,* 458 F.3d 942, 946 n.2 (9th Cir. 2006) (noting that courts "may consider documents referred to in the complaint or any matter subject to judicial notice, such as SEC filings") (citation omitted); *In re Bidz.com, Inc.,* No. CV 09-4984 PSG (Ex), 2010 U.S. Dist. LEXIS 49750 (C.D. Cal. Apr. 27, 2010) (Gutierrez, J.).   However, the Court should not reach factual determinations where the underlying facts in those documents are in dispute, *i.e.,* the nature and meaning of the credit enhancements in the Offerings and the interpretation of the language describing the structure of the Offerings and relevant components. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").   Nonetheless, Plaintiffs, without waiving this argument, are compelled to respond to Defendants' factual characterizations of operation of credit enhancements as to these Offerings and tranche-by-tranche or loan group characteristics, with their own factual analysis disputing those presentations, albeit without any discovery.

suffered no less than $48.4 million in realized losses.  *See* Pl. Suppl. Mem. Appendix, Ex. A; *see also* Goldberg Decl., Exs. H, O.  Despite the existence of multiple loan groups (4), of different ratings for different tranches, and differences in allocations of principal, interest and losses, the subordinate tranches (M and B2) have been wiped out and losses have been recognized in each of the four loan groups (1A2, 2A2, 3A2, and 4A2).   The impact across all groups (either through direct losses or impaired credit support, or both) will continue due to the fact that approximately 37.99% the current collateral pool is currently delinquent or in default.  *See* Pl. Suppl. Mem. Appendix, Ex. A; *see also* Goldberg Decl., Ex. O.

Thus, losses incurred because of poorly performing collateral across all loan groups affect the subordinate tranches directly above it but also impact the credit support levels for the entire pool and increase the risk of default to all Groups.  Pl. Suppl. Mem. Appendix, Exs. A, B; *see also* Goldberg Decl. Exs. O, P. Consequently, all tranches in this Offering were downgraded to a level of highly vulnerable to default or lower. *Id.*   The truth is undeniable – no groups or tranches in a particular Offering are immunized from losses suffered by the loans in the underlying pool, regardless how Defendants may have structured and organized each issuance.

Therefore, as discussed above, Plaintiffs have satisfied the standing requirements under Article III and the Securities Act to pursue their claims as to the Offerings which they purchased in.  There is nothing in the structure of the Offerings, either with respect to tranches or loan groups, that changes the allegations regarding the systematic disregard of the underwriting guidelines used to originate nearly all of the collateral.  Accordingly, this Court, like all others that have considered the issue, should swiftly reject Defendants' attempt to narrow the reach of the Securities Act.

1

2

3

Moreover, because Defendants' arguments regarding the timeliness of the claims, Defs. Suppl. Br. at 13-16, rests on this Court accepting the theory of tranche-based standing, such arguments must fail.[18]

4

## IV.   **CONCLUSION**[19]

5

6

7

8

For the foregoing reasons, Plaintiffs respectfully submit that Defendants' motions should be denied.  In the event the Court decides to dismiss any part of Plaintiffs' claims, Plaintiffs respectfully request leave to replead and/or add additional Plaintiffs to cure any perceived standing defects.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[18] Because the parties have extensively briefed the timeliness issues raised by the Defendants in their Brief, Plaintiffs see no need to revisit those issues here in and instead respectfully incorporate by reference the arguments set forth in Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss.  *See* Pl. Mem. at 25-39.

[19] Defendant Sambol, in the Sambol Suppl. Brief, argues for the first time that the claims against him are time-barred because, for more than a year while this case or the related state case were pending against him, he was not accused of violating the Securities Act's "control person" provision, the claim against him in the operative Complaint.  But Sambol waived this argument by not making it in his initial brief and, in any event, his position is wrong on the merits.  As Plaintiffs pointed out in their initial brief (responding to a similar argument by the other individual Defendants which Sambol declined to adopt), despite Sambol's unsupported argument to the contrary, the cause of action in a subsequent complaint need not be identical to that in a previous complaint for *American Pipe* tolling to apply.  Pl. Mem. at 42 (noting that *Cullen v. Margiotta*, 811 F.2d 698, 720 (2d Cir. 1987), held that state law claims tolled statute of limitations for later filed RICO claims); *see also In re Enron Corp. Sec., Derivative, & "ERISA" Litig.*, 465 F. Supp. 2d 687, 718 (S.D. Tex. 2006) (subsequent claims "need not be identical to the original class action's for [*American Pipe*] tolling to apply as long as they share a common factual basis and legal nexus so that the defendant would rely on the same evidence and witnesses in his defense").  In this case, applying *American Pipe* would not subject Sambol to any unfair surprise—the charges against him in the Complaint arise from the same transactions and wrongful acts as those indentified in the earlier complaints in which he was named.

Dated:  February 3, 2011

Respectfully submitted,

**GLANCY BINKOW & GOLDBERG LLP**

By:  s/ _Michael Goldberg_
Michael Goldberg
Lionel Z. Glancy
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

_Liaison Counsel_

Steven J. Toll
Julie Goldsmith Reiser
Joshua S. Devore
Matthew B. Kaplan
S. Douglas Bunch
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

Joel P. Laitman
Christopher Lometti
Richard Speirs
Daniel B. Rehns
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, New York 10005
Telephone:  (212) 838-7797
Facsimile:  (212) 838-7745

_Lead Counsel for the Class_

1

2
– and –

3
**KIRBY McINERNEY LLP**

4
Ira M. Press
Randall K. Berger

5
825 Third Avenue, 16th Floor
New York, New York 10022

6
Telephone:   (212) 371-6600

7
Facsimile:   (212) 751-2540

8
*Additional Counsel for United Methodist*

9
*Churches Benefit Board, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COUNTRYWIDE MBS LITIGATION

## APPENDIX TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEF RE: TOLLING TO THEIR MOTIONS TO DISMISS

Pl. Suppl. Mem. Appendix Exhibit A[1]

**CWHL SERIES 2006-HYB3**

| Class | Original Balance | Monthly Beginning Balance | Total Distribution | Cumulative Realized Losses | Ending Balance | Loss (i.e. Default) of Principal and Interest | Current Ratings S&P | Current Ratings Definition | Initial Ratings S&P | Initial Ratings Definition |
|---|---|---|---|---|---|---|---|---|---|---|
| 1A1A | 35,000,000.00 | 13,661,518.27 | 62,679.29 | 0.00 | 13,634,069.66 | | CCC | Highly Vulnerable to Default | AAA | Extremely strong capacity to meet financial commitments. Highest rating. |
| 1A1B | 40,182,000.00 | 15,684,203.65 | 71,959.41 | 0.00 | 15,652,691.08 | | CCC | | AAA | |
| 1A2 | 8,354,000.00 | 2,877,186.11 | 13,200.58 | 486,340.25 | 2,772,512.38 | PARTIAL | D | Payment default | AAA | |
| 1A1AIO | 35,000,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | | WD | | AAA | |
| 1A1B10 | 40,182,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | | WD | | AAA | |
| 1A2IO | 8,354,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | | WD | | AAA | |
| 2A1A | 141,112,000.00 | 72,167,695.64 | 1,474,519.22 | 0.00 | 71,016,262.66 | | CCC | Highly Vulnerable to Default | AAA | |
| 2AB1 | 70,292,000.00 | 1,347,695.64 | 1,157,603.82 | 0.00 | 196,262.66 | | B | | AAA | |
| 2AB2 | 29,363,000.00 | 29,363,000.00 | 131,431.38 | 0.00 | 29,363,000.00 | | CCC | | AAA | |
| 2AB3 | 41,457,000.00 | 41,457,000.00 | 180,723.07 | 0.00 | 41,457,000.00 | | CCC | | AAA | |
| 2A2 | 31,358,000.00 | 14,961,153.56 | 307,093.91 | 1,578,429.59 | 14,220,856.50 | PARTIAL | D | Payment default | AAA | |
| 2A1AIO | 141,112,000.00 | 72,167,695.64 | 7,356.08 | 0.00 | 71,016,262.66 | | WD | | AAA | |
| 2AB2IO | 29,363,000.00 | 29,363,000.00 | 3,016.28 | 0.00 | 29,363,000.00 | | WD | Highly Vulnerable to Default | AAA | |
| 2AB3IO | 41,457,000.00 | 41,457,000.00 | 9,100.75 | 0.00 | 41,457,000.00 | | WD | | AAA | |
| 2A2IO | 31,358,000.00 | 14,961,153.56 | 115.06 | 0.00 | 14,220,856.50 | | WD | | AAA | |
| 3A1A | 40,000,000.00 | 22,754,352.56 | 554,963.20 | 0.00 | 22,311,028.19 | | CCC | | AAA | |
| 3A1B | 218,684,000.00 | 124,400,320.91 | 3,003,801.86 | 0.00 | 121,976,622.25 | | CCC | | AAA | |
| 3A2 | 28,743,000.00 | 15,230,406.26 | 369,951.57 | 1,889,646.19 | 14,166,224.20 | PARTIAL | D | Payment default | AAA | |
| 3A1BIO | 218,684,000.00 | 124,400,320.91 | 30,237.47 | 0.00 | 121,976,622.25 | | WD | | AAA | |
| 3A2IO | 28,743,000.00 | 15,230,406.26 | 1,507.70 | 0.00 | 14,166,224.20 | | WD | Highly Vulnerable to Default | AAA | |
| 4A1A | 193,023,000.00 | 120,083,402.51 | 3,673,844.69 | 0.00 | 116,984,477.71 | | CCC | | AAA | |
| 4A1B | 20,000,000.00 | 12,442,393.15 | 380,663.93 | 0.00 | 12,121,299.31 | | B | | AAA | |
| 4A1C | 2,222,000.00 | 1,382,349.87 | 42,291.76 | 0.00 | 1,346,676.34 | | CCC | | AAA | |
| 4A2 | 23,916,000.00 | 13,051,415.92 | 400,571.39 | 1,836,714.23 | 12,707,726.16 | PARTIAL | D | Payment default | AAA | |
| 4A1AIO | 193,023,000.00 | 120,083,402.51 | 11,730.60 | 0.00 | 116,984,477.71 | | WD | | AAA | |
| 4A1BIO | 20,000,000.00 | 12,442,393.15 | 1,215.46 | 0.00 | 12,121,299.31 | | WD | Highly Vulnerable to Default | AAA | |
| 4A1CIO | 2,222,000.00 | 1,382,349.87 | 135.04 | 0.00 | 1,346,676.34 | | WD | | AAA | |
| AR | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | | WD | | AAA | |
| M | 21,595,000.00 | 0.00 | 0.00 | 21,337,574.39 | 0.00 | ENTIRE | D | Payment default | AA | Very strong capacity to meet financial commitments |
| B1 | 13,743,000.00 | 0.00 | 0.00 | 13,586,722.16 | 0.00 | ENTIRE | D | | A | Strong capacity to meet financial commitments |
| B2 | 7,853,000.00 | 0.00 | 0.00 | 7,769,558.39 | 0.00 | ENTIRE | D | | BBB | Adequate capacity to meet financial commitments |
| Total | 981,621,230.65 | 500,864,094.05 | 11,889,713.52 | 48,484,985.20 | 489,926,709.10 | | | | | |

| Current % Delinquent | Losses as % of Current Balance |
|---|---|
| 37.30% | 9.90% |

[1] Data set forth in the above chart derived from Exhibits H, O to the Declaration of Michael Goldberg in Support.

**Pl. Suppl. Mem. Appendix Exhibit B[1]**

## CWL SERIES 2006-S3

| Class | Original Balance | Beginning Balance | Cumulative Realized Losses | Total Distribution | Ending Balance | Loss ( i.e. Default ) of Principal and Interest | S&P | Current Ratings Definition | S&P | Initial Ratings Definition |
|-------|-----------------|-------------------|---------------------------|-------------------|---------------|------------------------------------------------|-----|---------------------------|-----|---------------------------|
| A1 | 539,257,000 | 22,423,208 | 13,564,163 | 3,226,420 | 19,016,780 | PARTIAL | B | | AAA | |
| A2 | 182,278,000 | 128,856,516 | 34,677,939 | 653,410 | 127,603,736 | PARTIAL | B | | AAA | Extremely strong capacity to meet financial commitments. Highest rating. |
| A3 | 73,715,000 | 52,110,831 | 14,024,097 | 273,017 | 51,604,195 | PARTIAL | B | Vulnerable to Default | AAA | |
| A4 | 104,750,000 | 74,050,188 | 19,928,429 | 402,216 | 73,330,250 | PARTIAL | B | | AAA | |
| A5 | 100,000,000 | 65,488,353 | 18,307,654 | 636,201 | 64,551,898 | PARTIAL | B | | AAA | |
| AR | 100 | 0 | 0 | 0 | 0 | | B | | AAA | |
| Total | 1,000,000,100 | 342,929,096 | 100,502,281 | 5,191,264 | 336,106,859 | | | | | |

Current Delinquent %
9.74%

Cumulative Losses as % of Current Balance
30%

[1] Data set forth in the above chart derived from Exhibits I, P to the Declaration of Michael Goldberg in Support.

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On February 3, 2011, I caused to be served the following documents:

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEF RE: TOLLING IN SUPPORT OF THEIR MOTION TO DISMISS**

By posting the documents to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the parties as listed on the attached Service List.

And on any non-ECF registered party:

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 3, 2011, at Los Angeles, California.

*s/Michael Goldberg*
Michael Goldberg

# Mailing Information for a Case 2:10-cv-00302-MRP -MAN

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Seth A Aronson**
  saronson@omm.com,skemp@omm.com

- **Randall K Berger**
  rberger@kmllp.com

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **S Douglas Bunch**
  dbunch@cohenmilstein.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,martindale@caldwell-leslie.com,hammer@caldwell-leslie.com,pettit@caldwell-leslie.com,willingham@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie.com,wong@caldwell-leslie.com,wilson@caldwell-leslie.com

- **Matthew D Caplan**
  matthew.caplan@dlapiper.com,susan.byrd@dlapiper.com,DocketingLA@dlapiper.com

- **Peter Young Hoon Cho**
  petercho@paulhastings.com

- **Boyd Cloern**
  boyd.cloern@bingham.com

- **Matthew W Close**
  mclose@omm.com

- **David C Codell**
  codell@caldwell-leslie.com,pettit@caldwell-leslie.com

- **Jeffrey B Coopersmith**
  jeff.coopersmith@dlapiper.com,evelyn.dacuag@dlapiper.com

- **Brian Charles Devine**
  bdevine@goodwinprocter.com,MEnglish@goodwinprocter.com,ABoivin@goodwinprocter.com

- **Joshua S Devore**
  jdevore@cohenmilstein.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com

- **Michael Marc Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,asohrn@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.c

- **Penelope A Graboys Blair**

pgraboysblair@orrick.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com

- **Jeffrey M Hammer**
  hammer@caldwell-leslie.com

- **Sean M Handler**
  shandler@btkmc.com

- **Jennifer L Joost**
  jjoost@btkmc.com,acashwell@btkmc.com,mswift@btkmc.com

- **Matthew B Kaplan**
  mkaplan@cohenmilstein.com,efilings@cohenmilstein.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Joel P Laitman**
  jlaitman@cohenmilstein.com

- **Christopher Lometti**
  clometti@cohenmilstein.com

- **Jennifer B Luz**
  jluz@goodwinprocter.com

- **Azra Z Mehdi**
  amehdi@milberg.com

- **Alexander K Mircheff**
  amircheff@gibsondunn.com,dlanning@gibsondunn.com,inewman@gibsondunn.com

- **Nicolas Morgan**
  nicolas.morgan@dlapiper.com

- **Sharan Nirmul**
  snirmul@btkmc.com,azivitz@btkmc.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com,ktayman@goodwinprocter.com

- **Lauren Wagner Pederson**
  lpederson@btkmc.com,neena.verma@btkmc.com,dpotts@btkmc.com

- **Ira M Press**
  ipress@kmllp.com,lmorris@kmllp.com

- **David A Priebe**
  david.priebe@dlapiper.com,stacy.murray@dlapiper.com

- **Daniel B Rehns**
  drehns@cohenmilstein.com,efilings@cohenmilstein.com

- **Julie G Reiser**
  jreiser@cohenmilstein.com

- **Jonathan Rosenberg**
  jrosenberg@omm.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **Arthur L Shingler , III**
  ashingler@scott-scott.com,efile@scott-scott.com

- **Richard A Speirs**
  rspeirs@cohenmilstein.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com

- **Steven J Toll**
  stoll@cohenmilstein.com

- **Michael D Torpey**
  mtorpey@orrick.com

- **Michael C Tu**
  mtu@orrick.com,fphan@orrick.com

- **Avi N Wagner**
  avi@thewagnerfirm.com,anwagneresq@hotmail.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,ahsia@goodwinprocter.com,monyeagbako@goodwinprocter.com,cburgos@goodwinprocter.com

- **Andrew L Zivitz**
  azivitz@btkmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Lauren G Kerkhoff**
Robbins Geller Rudman & Dowd LLP
655 West Broadway  Suite 1900
San Diego, CA 92101-8498

**Christina A Royce**
Robbins Geller Rudman & Dowd LLP
655 West Broadway   Suite 1900
San Diego, CA 92101