Lloyd Winawer (State Bar No. 157823)
*lwinawer@goodwinprocter.com*
**GOODWIN PROCTER LLP**
601 South Figueroa Street, 41st Floor
Los Angeles, California 90017
Telephone: 213-426-2500
Facsimile: 213-623-1673

Brian E. Pastuszenski (*pro hac vice*)
*bpastuszenski@goodwinprocter.com*
Inez H. Friedman-Boyce (*pro hac vice*)
*ifriedmanboyce@goodwinprocter.com*
Brian C. Devine (State Bar No. 222240)
*bdevine@goodwinprocter.com*
**GOODWIN PROCTER LLP**
53 State Street
Boston, MA 02109
Telephone: 617-570-1000
Facsimile: 617-523-1231

*Attorneys for Defendants*
Countrywide Financial Corp., Countrywide Home Loans, Inc., CWALT, Inc., CWMBS, Inc., CWABS, Inc., CWHEQ, Inc., Countrywide Capital Markets, and Countrywide Securities Corp.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

COUNTRYWIDE FINANCIAL CORPORATION, et al.,

Defendants.

Case No. 2:10-CV-00302-MRP (MANx)

**COUNTRYWIDE DEFENDANTS' RESPONSE TO PLAINTIFFS' SUBMISSION AT MARCH 23, 2011 HEARING**

Courtroom: 12
Judge: Hon. Mariana R. Pfaelzer

## PRELIMINARY STATEMENT

At the late March 2011 hearing on the Countrywide Defendants' tranche-based standing and tolling arguments in support of their pending motions to dismiss, Plaintiffs submitted a binder of supplemental materials to the Court that previously had not been shared with or provided to Defendants. During the hearing, the Court granted the Countrywide Defendants permission to file a response to those supplemental materials. *See* March 23, 2011 Hr'g Tr. at 9, 54. The Countrywide Defendants respectfully submit this short response.

## ARGUMENT

### I. Tranches Were Backed By Different Loan Groups And Loan Types.

Plaintiffs' Tab A,[1] entitled "Common Characteristics Across Loan Groups," underscores that many of the MBS tranches at issue were backed by *different loan groups*, several of which were comprised of *different types of loans* and also *performed differently*. For instance, Plaintiffs' Tabs A-1, A-2, and A-3 show that:

- Ten of the 14 Offerings at issue consisted of tranches that were backed by two, three, four, or five distinct subgroups of different loans (Tab A-1);
- Five of the Offerings consisted of tranches that were backed by different *types* of loans compared to other tranches in the same Offering. *See, e.g.*, CWABS 2005-11 (Loan Group 1: fixed rate; Loan Group 2: conforming balance fixed and adjustable rate; Loan Group 3: adjustable rate); CWABS 2006-11 (Loan Group 1: fixed rate; Loan Group 2: conforming balance fixed and adjustable rate; Loan Group 3: fixed and adjustable rate); CWABS 2005-HYB9 (Loan Group 1: 3-year fixed rate; Loan Groups 2, 3 and 5: 5-year fixed rate; Loan Group 4: 7-year fixed rate) (Tab A-1);
- Two of the Offerings consisted of tranches backed by loan groups that, to differing extents, were originated by lenders other than Countrywide, pursu-

[1] References to "Tabs" are to the dividers in the binder of materials Plaintiffs submitted to the Court at the hearing.

ant to different underwriting guidelines (Tab A-2; *see also* Countrywide Defs.' Supp. Brief Ex. 14 at 406-425); and

- All of the loan groups within each Offering are performing differently, and have different delinquency rates—several of which are significantly different. This is not surprising given that each group is composed of a unique set of loans. *Compare* CWABS 2005-11 Loan Group 1 (42.34%) with Loan Group 3 (70.82%); CWMBS 2006-HYB3 Loan Group 1 (50.82%) with Loan Group 4 (31.26%); CWABS 2005-HYB9 Loan Group 3 (29.00%) with Loan Group 5 (46.69%) (Tab A-3).

Given these differences, Plaintiffs' Tab A confirms that standing and tolling must be evaluated on a tranche-by-tranche basis. Although each tranche was offered pursuant to a single prospectus supplement, the point of reference for the statements in any such prospectus supplement regarding underwriting and origination practices was the specific loans backing the specific certificates (tranches) at issue. And those loans (and thus the statements regarding those loans) varied from loan group to loan group and from tranche to tranche. By definition, an alleged misstatement regarding the underwriting of particular loans is only relevant to—and can only cause injury to—investors who purchased certificates backed by those particular loans.

Plaintiffs' Tab A charts assert that these differences should be ignored because the types of loans, originators, and delinquency rates supposedly are "[the] same or similar" across loan groups. That is wrong for two reasons. First, as detailed above, Tab A itself reveals substantial differences across the various loan groups. Second, even if some similarities exist, they are not legally relevant. Standing (and in turn, the scope of any potential tolling) depends on injury. Here, Plaintiffs allege they were injured by statements regarding loan underwriting that were supposedly untrue. To the extent those statements were made about loans backing tranches that Plaintiffs did not purchase, Plaintiffs could not have been injured by those particular statements (even if they happened to buy another tranche backed by "similar" loans) because the loans

these statements reference do not back the securities Plaintiffs purchased. Plaintiffs therefore lack standing to challenge those statements. Any other conclusion could not be reconciled with the holding of this Court and many other courts that language in a common shelf registration statement cannot confer standing on investors who purchased MBS backed by different loans in different offerings pursuant to that same registration statement. *See* Nov. 4, 2010 Order at 7 (Plaintiffs lack standing to sue as to Offerings in which they did not purchase because "[e]ach MBS is backed by a pool of unique loans").

## II. <u>Plaintiffs' Charts Misstate How Cash Flow Is Distributed Among Tranches</u>.

Plaintiffs' Tab B, entitled "Common Impact of Misstatements Across All Tranches," mischaracterizes how the cash flows generated by different loan groups are distributed to different MBS tranches. Plaintiffs argue that the charts in Tab B show that "each offering . . . is like a ship, a cruise ship with many floors," where "there was a rupture and the water"—*i.e.*, losses—"starts flowing in from the bottom." Mar. 23, 2011 Hr'g Tr. at 11-12.[2] The charts then depict "water" flowing from all loan groups towards all tranches, suggesting that the alleged misstatements had a "common impact" on all tranches of each Offering regardless of which loan group backed which tranche. *See* Tabs B-1, B-2, B-3.

As an initial matter, Plaintiffs' charts at Tab B demonstrate that the vast majority of the tranches in the Offerings depicted *have not suffered any realized losses at all*. More specifically, 14 of the 21 tranches in CWALT 2005-62 (Tab B-1), 12 of the 13 tranches in CWMBS 2005-HYB9 (Tab B-2), and 18 of the 23 tranches in CWABS 2006-9 (Tab B-3) have "Cumulative Realized Losses" of *zero*. In other words, all distributions of principal and interest owed to purchasers of those tranches have been

[2] Plaintiffs made a similar analogy at the October 18, 2010 motion to dismiss hearing, which this Court rejected: "[COUNSEL:] [T]hat's like saying to the people in the first-class deck on the Titanic, don't worry. You are way up here on the top deck of this ship. [THE COURT:] It's not the same thing at all. It's a tranche. It's an investment. It does what it does." Oct. 18, 2010 Hr'g Tr. at 89.

made to date, and such purchasers have received exactly what they bargained for and have not suffered any legally cognizable injury. *See* Countrywide Defs.' Mem. In Support Of Mot. To Dismiss at 41-49; Reply In Support Of Mot. To Dismiss at 37-43. Moreover, the fact that some tranches have incurred losses and others have not confirms that each tranche is a fundamentally different security, with a fundamentally different risk profile, that is subject to fundamentally different alleged injury for purposes of standing and tolling.

Plaintiffs' Tab B charts are also founded on a fundamentally incorrect factual premise. Contrary to what those charts appear to depict, the cash flows generated by the underlying loans (and, by extension, any losses resulting from insufficient cash flows) do not flow collectively from all loan groups to all tranches. Instead, as the Countrywide Defendants' supplemental briefing explained, different tranches are backed by different loan groups, and the cash flows are distributed accordingly. Thus, a more accurate depiction of the structure of these three Offerings is as follows (the first chart that follows corresponds to the first chart appearing in Tab B of Plaintiffs' binder, the second chart that follows to the second chart in Tab B, and so on):

CWALT 2005-62

| Class | Original Balance | Monthly Beginning Balance | Total Distribution | Cumulative Realized Losses | Ending Balance |
|---|---|---|---|---|---|
| 1A1 | 262,595,000.00 | 149,180,345.19 | 617,530.51 | 0.00 | 148,624,368.82 |
| 1A2 | 175,064,000.00 | 99,510,922.18 | 552,993.07 | 0.00 | 99,140,057.50 |
| 1X1 | 262,595,000.00 | 149,634,160.44 | 300,398.81 | 0.00 | 149,078,184.07 |
| 1X2 | 175,064,000.00 | 99,926,290.13 | 59,593.58 | 0.00 | 99,555,425.45 |
| 1X3 | 175,064,000.00 | 99,511,232.06 | 1,328.03 | 0.00 | 99,140,367.38 |
| 2A1 | 408,902,000.00 | 123,609,553.91 | 1,826,545.34 | 0.00 | 121,919,425.25 |
| 2A2 | 185,000,000.00 | 55,924,812.00 | 825,456.66 | 0.00 | 55,160,145.16 |
| 2A3 | 195,934,000.00 | 59,239,646.81 | 907,608.25 | 0.00 | 58,429,655.82 |
| 2A4 | 200,000,000.00 | 60,459,256.21 | 894,394.96 | 0.00 | 59,632,589.35 |
| 2X1 | 989,836,000.00 | 301,633,784.85 | 387,015.63 | 0.00 | 297,542,331.50 |
| 2X2 | 989,836,000.00 | 299,233,268.93 | 19,893.88 | 0.00 | 295,141,815.58 |
| MX | 176,431,765.00 | 58,936,785.56 | 106,364.64 | 0.00 | 55,392,652.05 |
| M1 | 27,267,000.00 | 24,574,277.89 | 102,231.31 | 0.00 | 24,489,846.47 |
| M2 | 24,861,000.00 | 22,407,274.08 | 94,463.99 | 0.00 | 22,330,287.92 |
| M3 | 16,039,000.00 | 11,564,765.71 | 49,490.23 | 6,233,889.04 | 8,183,391.30 |
| M4 | 13,633,000.00 | 0.00 | 0.00 | 12,588,443.00 | 0.00 |
| M5 | 12,029,000.00 | 0.00 | 0.00 | 11,491,804.19 | 0.00 |
| M6 | 12,029,000.00 | 0.00 | 0.00 | 11,639,256.42 | 0.00 |
| M7 | 9,624,000.00 | 0.00 | 0.00 | 9,429,321.23 | 0.00 |
| B1 | 8,822,000.00 | 0.00 | 0.00 | 8,726,437.83 | 0.00 |
| B2 | 8,020,000.00 | 0.00 | 0.00 | 7,940,829.45 | 0.00 |
| Total | 4,328,645,765.00 | 1,615,346,375.95 | 6,745,308.89 | 68,049,981.16 | 1,593,760,543.62 |

Group 1
Group 2
Groups 1 and 2
$
Group 1
"Loan group 1 consists of 30-year conventional, adjustable rate, negative amortization mortgage loans secured by first liens on one-to four-family residential properties."
Countrywide Home Loans, Inc. 100%
Current Delinquency Rate: 63.86%
Group 2
"Loan group 2 consists of 30-year conventional, adjustable rate, negative amortization mortgage loans secured by first liens on one to four-family residential properties."
Countrywide Home Loans, Inc. 100%
Current Delinquency Rate: 62.45%
Mortgage Loan Pool

5

COUNTRYWIDE DEFENDANTS' RESPONSE TO PLAINTIFFS' SUBMISSION AT MARCH 23, 2011 HEARING

**CWHL 2005-HYB9**

Group 1
Group 2
Group 3
Group 4
Group 5
Groups 1, 2, 3, 4, and 5

| Class | Original Balance | Monthly Beginning Balance | Principal Distribution | Cumulative Realized Losses | Ending Balance |
|---|---|---|---|---|---|
| 1A1 | 99,025,000.00 | 41,042,998.06 | 1,290,104.93 | 0.00 | 39,752,893.13 |
| 1A2 | 11,003,000.00 | 4,560,425.23 | 143,347.89 | 0.00 | 4,417,077.34 |
| 2A1 | 187,498,000.00 | 95,589,964.86 | 555,840.48 | 0.00 | 95,034,124.38 |
| 2A2 | 20,833,000.00 | 10,621,050.55 | 61,759.72 | 0.00 | 10,559,290.83 |
| 3A1A | 210,000,000.00 | 101,805,487.59 | 1,383,350.95 | 0.00 | 100,422,136.64 |
| 3A1B | 23,333,000.00 | 11,311,559.25 | 153,703.47 | 0.00 | 11,157,855.78 |
| 3A2A | 189,902,000.00 | 92,062,217.63 | 1,250,957.68 | 0.00 | 90,811,259.95 |
| 3A2B | 53,563,000.00 | 25,966,701.58 | 352,840.13 | 0.00 | 25,613,861.45 |
| 4A1 | 133,025,000.00 | 76,954,602.38 | 2,845,247.77 | 0.00 | 74,109,354.61 |
| 4A2 | 14,780,000.00 | 8,550,190.02 | 316,126.76 | 0.00 | 8,234,063.26 |
| 5A1 | 101,176,000.00 | 49,826,950.38 | 250,251.92 | 0.00 | 49,576,698.46 |
| 5A2 | 28,537,000.00 | 14,053,843.62 | 70,584.32 | 0.00 | 13,983,259.30 |
| M1 | 16,279,000.00 | 6,500,530.40 | 200,692.29 | 11,415,291.77 | 3,659,210.48 |
| **Total** | **1,088,954,000.00** | **538,846,521.55** | **8,874,808.31** | **11,415,291.77** | **527,331,085.61** |

**Group 1**

"Loan group 1 consists of mortgage loans that initially have a fixed rate of interest for three years following their origination, and thereafter have an adjustable rate of interest for the remaining life of the loan."

Countrywide 41.97%
Sierra Pacific 1.43%
AmNet 28.47%

Current Delinquency Rate: 33.65%

**Group 2**

"Loan group 2 consists of mortgage loans that initially have a fixed rate of interest for five years following their origination, and thereafter have an adjustable rate of interest for the remaining life of the loan."

Countrywide 28.51%
Sierra Pacific 0.60%
AmNet 13.26%

Current Delinquency Rate: 39.61%

**Group 3**

"Loan group 3 consists of mortgage loans that initially have a fixed rate of interest for five years following their origination, and thereafter have an adjustable rate of interest for the remaining life of the loan."

Countrywide 63.57%
Sierra Pacific 0.25%
AmNet 4.11%

Current Delinquency Rate: 29.00%

**Group 4**

"Loan group 4 consists of mortgage loans that initially have a fixed rate of interest for seven years following their origination, and thereafter have an adjustable rate of interest for the remaining life of the loan."

Countrywide 59.75%
Sierra Pacific 0.37%
AmNet 0.34%

Current Delinquency Rate: 31.94%

**Group 5**

"Loan group 5consists of mortgage loans that initially have a fixed rate of interest for five years following their origination, and thereafter have an adjustable rate of interest for the remaining life of the loan."

Countrywide 12.84%
Sierra Pacific 29.60%
AmNet 12.55%

Current Delinquency Rate: 46.69%

**Mortgage Loan Pool**



CWL 2006-9

| Class | Original Balance | Monthly Beginning Balance | Principal Distribution | Cumulative Realized Losses | Ending Balance |
|---|---|---|---|---|---|
| 1AF1 | 57,182,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 1AF2 | 11,453,000.00 | 8,029,428.07 | 934,742.00 | 0.00 | 7,094,686.07 |
| 1AF3 | 33,773,000.00 | 33,773,000.00 | 0.00 | 0.00 | 33,773,000.00 |
| 1AF4 | 9,068,000.00 | 9,068,000.00 | 0.00 | 0.00 | 9,068,000.00 |
| 1AF5 | 13,310,000.00 | 13,310,000.00 | 0.00 | 0.00 | 13,310,000.00 |
| 1AF6 | 17,200,000.00 | 16,332,618.05 | 93,900.17 | 0.00 | 16,238,717.88 |
| 2AV | 118,400,000.00 | 39,849,689.39 | 434,394.35 | 0.00 | 39,415,295.04 |
| 3AV1 | 105,239,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3AV2 | 26,793,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 3AV3 | 67,812,000.00 | 63,131,410.12 | 1,348,220.17 | 0.00 | 61,783,189.95 |
| 3AV4 | 24,156,000.00 | 24,156,000.00 | 0.00 | 0.00 | 24,156,000.00 |
| MF1 | 5,332,000.00 | 5,332,000.00 | 0.00 | 0.00 | 5,332,000.00 |
| MF2 | 4,816,000.00 | 4,816,000.00 | 0.00 | 0.00 | 4,816,000.00 |
| MF3 | 2,838,000.00 | 2,838,000.00 | 0.00 | 0.00 | 2,838,000.00 |
| MF4 | 2,580,000.00 | 2,580,000.00 | 0.00 | 0.00 | 2,580,000.00 |
| MF5 | 2,580,000.00 | 2,580,000.00 | 0.00 | 0.00 | 2,580,000.00 |
| MF6 | 2,236,000.00 | 664,701.93 | 0.00 | 2,209,244.29 | 26,755.71 |
| MV1 | 15,622,000.00 | 15,622,000.00 | 0.00 | 0.00 | 15,622,000.00 |
| MV2 | 14,124,000.00 | 14,124,000.00 | 0.00 | 0.00 | 14,124,000.00 |
| MV3 | 8,346,000.00 | 3,028,063.42 | 0.00 | 7,720,223.63 | 625,776.37 |
| MV4 | 7,276,000.00 | 0.00 | 0.00 | 7,276,000.00 | 0.00 |
| MV5 | 7,062,000.00 | 0.00 | 0.00 | 7,062,000.00 | 0.00 |
| MV6 | 6,634,000.00 | 0.00 | 0.00 | 6,634,000.00 | 0.00 |
| Total | 563,832,000.00 | 259,234,910.98 | 2,811,256.69 | 30,901,467.92 | 253,383,421.02 |

These corrected versions of Plaintiffs' charts highlight that the purchaser of a tranche backed by one loan group cannot be injured by an alleged misstatement as to the underwriting of the loans in another loan group. This is because an alleged misstatement as to the loans underlying one loan group (and one tranche) cannot cause any disruption in the cash flows generated by a different loan group (backing a different tranche).[3] Indeed, a comparison of Plaintiffs' chart for CWABS 2006-9 (Tab B-3) with the chart above confirms Plaintiffs' error. In Tab B-3, Plaintiffs' "water line" rises as high as Class MF-6, and covers Classes MV-1 and MV-2 (which are the rows

[3] Plaintiffs have argued that the various tranches are "interconnected" by credit enhancement mechanisms. As the Countrywide Defendants explained in their supplemental briefing and at the March 23 hearing, however, reduced credit enhancement cannot create loss for a tranche that is not already incurring losses. Thus, the primary cause of any alleged injury to each tranche would still be the specific loan group backing that tranche. *See* Supp. Reply Br. at 6-9; Mar. 23, 2011 Hr'g Tr. at 57-59.

below Class MF-6). Classes MV-1 and MV-2, however, have not incurred any losses. The corrected chart above shows why these losses have not occurred in all tranches: Class MF-6 is backed by Loan Group 1, while Classes MV-1 and MV-2 are backed by Loan Groups 2 and 3. The cash flows generated by Loan Groups 2 and 3 have been sufficient to make all required distributions to Classes MV-1 and MV-2, but the cash flows generated by Loan Group 1 have been unable to fund all distributions owed to Class MF-6.[4]

**CONCLUSION**

Far from showing that the tranches in the various offerings in which Plaintiffs allegedly purchased were supported by similar loans and experienced collective injury from the alleged misstatements, Plaintiffs' charts *actually* demonstrate substantial differences among the tranches that were offered in each deal. Plaintiffs' charts also highlight that the losses experienced by certificates varied according to the tranches they purchased, which were typically backed by unique groups of loans. As such, any

[4] Plaintiffs' recent submission of *New Jersey Carpenters Health Fund v. NovaStar Mortg., Inc.*, No. 08-CV-5310-DAB (Mar. 31, 2011) ("*NovaStar*"), and *Employees' Ret. Sys. of the Govt. of the Virgin Islands v. J.P. Morgan Chase & Co., Inc.*, No. 09-CV-3701-JGK, 2011 U.S. Dist. LEXIS 33498 (S.D.N.Y. Mar. 30, 2011) ("*J.P. Morgan*"), in support of their argument against tranche-based standing and tolling is misplaced. As in the other MBS standing cases Plaintiffs cite, tranche-based standing and tolling were neither argued by the parties nor analyzed by the courts in *NovaStar* and *J.P. Morgan*. (The *NovaStar* defendants' dismissal briefs contain only a single footnote that states matter-of-factly that plaintiff had standing only with respect to the one certificate it bought. Nothing else was said on that point by either party.) Instead, as Plaintiffs themselves note in their Notice of Supplemental Authority, the *NovaStar* court dismissed plaintiff's 1933 Act claims because plaintiff failed to ***tie*** its allegations to the origination practices relating to the loans underlying the specific offering and tranche it purchased. *See* Dkt. No. 252 at 2 n.2, *NovaStar* slip op. at 26 ("Plaintiff fail[ed] to make allegations specific to the NovaStar Defendants' origination practices that relate to the only *offering* that is relevant here."). (Emphasis added.) Plaintiffs here similarly fail to tie any of the challenged loan underwriting or origination practices to the offerings or tranches they bought—or to any other offerings or tranches. The SAC should be dismissed for this reason as well. In addition, *NovaStar* and *J.P. Morgan* contain other holdings that support dismissal of the SAC on various grounds (including dismissal of conclusory allegations based on news articles and other investigations, dismissal of appraisal and LTV-related allegations as inactionable subjective opinions, dismissal of Section 12(a)(2) claims for failure to allege a purchase in the initial offering and failure to allege that the defendants were statutory "sellers," and dismissal of Section 15 claims for failure to allege control person liability), to which Defendants respectfully refer the Court.

tolling based on the filing of the *Luther* class action should be limited to only those tranches purchased by the *Luther* named plaintiffs, and the standing of Plaintiffs here similarly should be limited to only those tranches actually purchased by Plaintiffs. For these reasons, and for all of the reasons set forth in the prior briefing and argument in support of their motion to dismiss, the Countrywide Defendants respectfully request that all claims related to MBS tranches not purchased by the named plaintiffs in *Luther* or by Plaintiffs here be dismissed with prejudice.

Dated:  April 8, 2011

**GOODWIN PROCTER LLP**

/s/ Brian E. Pastuszenski
Brian E. Pastuszenski (*Pro Hac Vice*)
Lloyd Winawer (State Bar No. 157823)
Inez H. Friedman-Boyce (*Pro Hac Vice*)
Brian C. Devine (State Bar No. 222240)

*Counsel for the Countrywide Defendants*

**PROOF OF SERVICE**

I, Gareth J. Oania, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 601 S. Figueroa Street, Los Angeles, CA 90017.

On April 8, 2011, I served the following documents by placing a true copy thereof in a sealed envelope(s) on the persons listed on the service list below:

**COUNTRYWIDE DEFENDANTS' RESPONSE TO PLAINTIFFS' SUBMISSION AT MARCH 23, 2011 HEARING**

☑ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addressee(s) listed above by electronic mail at the e-mail address(es) set forth above pursuant to Fed.R.Civ.P.5(d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P.5(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction this service was made and that the foregoing is true and correct.

Executed on April 8, 2011, at Los Angeles, California.

Gareth J. Oania
(Type or print name)

[signature]
(Signature)

Goodwin Procter LLP
601 S. Figueroa St., 41st Floor
Los Angeles, California 90017

**SERVICE LIST**

**MAINE STATE RETIREMENT SYSTEM v. COUNTRYWIDE FINANCIAL CORPORATION, et al.**

**CASE NO. CV-10-00302-MRP-(MAN)**

| | |
|---|---|
| Christopher Lometti<br>Daniel B. Rehns<br>Joel P. Laitman<br>**COHEN MILSTEIN SELLER & TOLL PLC**<br>88 Pine Street 14th Floor<br>New York, NY 10005<br><br>Joshua S. Devore<br>Matthew B. Kaplan<br>S Douglas Bunch<br>Steven J. Toll<br>Julie G. Reiser<br>**COHEN MILSTEIN HAUSFELD & TOLL PLLC**<br>1100 New York Avenue NW West Tower Suite 500<br>Washington, DC 20005-3964<br><br>Michael M. Goldberg<br>**GLANCY BINKOW & GOLDBERG LLP**<br>1801 Avenue of the Stars Suite 311<br>Los Angeles, CA 90067 | *Attorneys for Lead Plaintiffs::*<br>**Iowa Public Employees' Retirement System** *Individually and On Behalf of All Other Similarly Situated*<br><br>Tel: 212-383-7797<br>Fax: 212-838-7745<br>clometti@cohenmilstein.com<br>drehns@cohenmilstein.com<br>jlaitman@cohenmilstein.com<br><br>Tel: 202-408-4600<br>Fax: 202-408-4699<br>jdevore@cohenmilstein.com<br>mkaplan@cohenmilstein.com<br>dbunch@cohenmilstein.com<br>stoll@cohenmilstein.com<br>jreiser@cohenmilstein.com<br><br>Tel: 310-201-9150<br>Fax: 310-201-9160<br>mmgoldberg@glancylaw.com |
| Christina A. Royce<br>Daniel S. Drosman<br>Lauren G. Kerkhoff *<br>Scott H. Saham<br>Spencer Alan Burkholz<br>Thomas E. Egler<br>**ROBBINS GELLER RUDMAN & DOWD LLP**<br>655 West Broadway Suite 1900<br>San Diego, CA 92101<br><br>Andrew L Zivitz<br>Jennifer L Joost<br>Sharan Nirmul<br>Sean M Handler<br>Lauren Wagner Pederson*<br>**BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP**<br>280 King of Prussia Road<br>Radnor, PA 19087 | *Attorneys for Plaintiff:*<br>**Maine State Retirement System** *Individually and On Behalf of All Others Similarly Situated*<br><br>Tel: 619-231-1058<br>Fax: 619-667-7056<br>croyce@rgrdlaw.com<br>ddrosman@rgrdlaw.com<br>lkerkhoff@rgrdlaw.com<br>scotts@rgrdlaw.com<br>spenceb@rgrdlaw.com<br>tome@rgrdlaw.com<br><br>Tel: 610-667-7706<br>Fax: 610-667-7056<br>azivitz@btkmc.com<br>jjoost@btkmc.com<br>snirmul@btkmc.com<br>shandler@btkmc.com |

| | |
|---|---|
| Arthur L. Shingler , III<br>**SCOTT AND SCOTT LLP**<br>6424 Santa Monica Boulevard<br>Los Angeles, CA 90038 | *Attorney for Movant:*<br>**Putnam Bank**<br><br>Tel: 213-985-1274<br>Fax: 213-985-1278<br>ashingler@scott-scott.com |
| Avi N. Wagner<br>**THE WAGNER FIRM**<br>1801 Avenue of the Stars Suite 307<br>Los Angeles, CA 90067<br><br>Ira M. Press<br>Randall K. Berger<br>**KIRBY MCINERNEY LLP**<br>825 Third Avenue 16th Floor<br>New York, NY 10022 | *Attorneys for Movant:*<br>**United Methodist Churches Benefit Board, Inc.**<br><br>Tel: 310-491-7949<br>Fax: 310-491-7949<br>avi@thewagnerfirm.com<br><br>Tel: 212-317-6600<br>Fax: 212-751-2540<br>ipress@kmllp.com<br>rberger@kmllp.com |
| Spencer Alan Burkholz<br>**ROBBINS GELLER RUDMAN & DOWD LLP**<br>655 West Broadway Suite 1900<br>San Diego, CA 92101<br><br>Azra Z. Mehdi<br>**MILBERG LLP**<br>300 South Grand Avenue, Suite 3900<br>Los Angeles, CA 90071 | *Attorneys for Movants:*<br>**Maine Public Employees Retirement System, Operating Engineers Annuity Plan, Pension Trust Fund for Operating Engineers, Vermont Pension Investment Committee, Washington State Plumbing & Pipefitting Pension Trust**<br><br>Tel: 619-231-1058<br>Fax: 619-667-7056<br>spenceb@rgrdlaw.com<br><br>**Mashreqbank, P.S.C.**<br><br>Tel: 213-617-1200<br>Fax: 213-617-1975<br>amehdi@milberg.com |

| | |
|---|---|
| Alexander K. Mircheff<br>Dean J. Kitchens<br>**GIBSON DUNN & CRUTCHER LLP**<br>333 South Grand Avenue<br>Los Angeles, CA 90071-3197 | *Attorneys for Defendants:*<br>**J.P. Morgan Securities Inc., Deutsche Bank Securities Inc., Bear, Stearns & Co. Inc., Banc of America Securities LLC, UBS Securities, LLC, Morgan Stanley & Co. Incorporated, Edward D. Jones & Co., L.P., Citigroup Global Markets Inc., Goldman, Sachs & Co., Credit Suisse Securities (USA) LLC, Barclays Capital Inc., HSBC Securities (USA), BNP Paribas Securities Corp. Merrill Lynch, Pierce, Fenner & Smith, Incorporated**<br><br>Tel: 213-229-7000<br>Fax: 213-229-7520<br>amircheff@gibsondunn.com<br>dkitchens@gibsondunn.com |
| Christopher G. Caldwell<br>David C. Codell<br>Jeffrey M. Hammer<br>**CALDWELL LESLIE AND PROCTOR**<br>1000 Wilshire Blvd Suite 600<br>Los Angeles, CA 90017 | *Attorneys for Defendant:*<br>**Stanford L. Kurland**<br><br>Tel : 213-629-9040<br>Fax: 213-629-9022<br>caldwell@caldwell-leslie.com<br>codell@caldwell-leslie.com<br>hammer@caldwell-leslie.com |
| Jennifer M. Sepic<br>**BINGHAM MCCUTCHEN LLP**<br>355 South Grand Avenue Suite 4400<br>Los Angeles, CA 90071<br><br>Leiv H. Blad , Jr<br>Boyd Cloern<br>**BINGHAM MCCUTCHEN LLP**<br>2020 K Street NW<br>Washington, DC 20006-1806 | *Attorneys for Defendant:*<br>**David A. Spector**<br><br>Tel: 213-680-6400<br>Fax: 213-680-6499<br>jennifer.sepic@bingham.com<br><br>Tel: 202-373-6564<br>Fax: 202-373-6001<br>leiv.blad@bingham.com<br>boyd.cloern@bingham.com |
| Joshua G. Hamilton<br>Peter Young Hoon Cho<br>William F. Sullivan<br>**PAUL HASTINGS JANOFSKY AND WALKER LLP**<br>515 South Flower Street 25th Fl<br>Los Angeles, CA 90071-2228 | *Attorneys for Defendants:*<br>**Ranjit Kripalani, Jennifer S. Sandefur,**<br><br>Tel: 213-683-6000<br>Fax: 213-627-0705<br>joshuahamilton@paulhastings.com<br>petercho@paulhastings.com<br>williamsullivan@paulhastings.com |

| | |
|---|---|
| Michael D. Torpey<br>Penelope A. Graboys Blair<br>**ORRICK HERRINGTON AND SUTCLIFFE LLP**<br>405 Howard Street<br>San Francisco, CA 94105-2669<br><br>Michael C. Tu<br>**ORRICK HERRINGTON AND SUTCLIFFE LLP**<br>777 South Figueroa Street Suite 3200<br>Los Angeles, CA 90017 | *Attorneys for Defendant:*<br>**David A. Sambol**<br><br>Tel: 415-773-5700<br>Fax: 415-773-5759<br>mtorpey@orrick.com<br>pgraboysblair@orrick.com<br><br>Tel: 213-629-2020<br>Fax: 213-612-2499<br>mtu@orrick.com |
| David A. Priebe<br>Jeffrey B. Coopersmith<br>**DLA PIPER LLP**<br>2000 University Avenue<br>East Palo Alto, CA 94303<br><br>Matthew D. Caplan<br>Nicolas Morgan<br>**DLA PIPER LLP**<br>1999 Avenue of the Stars, Suite 400<br>Los Angeles, CA 90067-6022<br><br>Shirli Fabbri Weiss<br>**DLA PIPER LLP**<br>401 B Street, Suite 1700<br>San Diego, CA 92101 | *Attorneys for Defendant:*<br>**Eric P. Sieracki**<br><br>Tel: 650-833-2000<br>Fax: 650-833-2001<br>david.priebe@dlapiper.com<br>jeff.coopersmith@dlapiper.com<br><br>Tel: 310-595-3000<br>Fax: 310-595-3300<br>david.priebe@dlapiper.com<br>nicolas.morgan@dlapiper.com<br><br>Tel: 619-699-2700<br>Fax: 619-699-2701<br>shirli.weiss@dlapiper.com |
| Matthew W. Close<br>**O'MELVENY AND MYERS**<br>400 S. Hope Street, 18th Floor<br>Los Angeles, CA 90071 | *Attorneys for Defendant:*<br>**Bank of America Corp., NB Holdings Corporation**<br><br>Tel: 213-430-6000<br>Fax: 213-430-6407<br>mclose@omm.com |

Goodwin Procter LLP
601 S. Figueroa St., 41st Floor
Los Angeles, California 90017