LINK: 175

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MAINE STATE RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,

Plaintiff,

v.

COUNTRYWIDE FINANCIAL CORPORATION, et al.,

Defendants.

Case No. 2:10-CV-0302 MRP (MANx)

**ORDER DISMISSING BANK OF AMERICA CORPORATION AND NB HOLDINGS CORPORATION**

## I. INTRODUCTION

Plaintiffs filed this putative class action individually and "on behalf of a class of all persons or entities who purchased or otherwise acquired beneficial interests in" certain mortgage backed securities ("MBS") in the form of certificates issued in 427 separate offerings (the "Offerings") between January 25, 2005 and November 29, 2007 "pursuant and/or traceable to the Offering Documents" and were damaged thereby. Consolidated Amended Complaint ("AC") ¶¶ 1, 186. The claims are brought against the Countrywide Defendants pursuant to Sections 11, 12 and 15 of the Securities Act of 1933. The operative complaint refers to Countrywide Financial Corporation ("CFC"), Countrywide Securities Corporation

("CSC"), Countrywide Home Loans ("CHL"), and Countrywide Capital Markets ("CCM") as the "Countrywide Defendants." Plaintiffs also purport to include Bank of America and NB Holdings Corporation ("NB Holdings") in this category. Plaintiffs contend the Countrywide Defendants made materially untrue or misleading statements or omissions regarding Countrywide's loan origination practices in public offering documents associated with 427 separate offerings. Also named as defendants are Countrywide special-purpose issuing trusts, several current or former Countrywide officers and directors, and a number of banks that served as underwriters on one or more of the offerings at issue.

All of the defendants filed motions to dismiss the AC. After the motions were fully briefed, the Court heard extensive oral argument on October 18, 2010. The Court dismissed the action without prejudice on the basis of standing and the statute of limitations on November 4, 2010. The Court reserved judgment on the remaining issues until after Plaintiffs had cured the chief pleading deficiencies the Court identified in that Order. *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157 (C.D. Cal. 2010).

On December 6, 2010, Plaintiffs filed a Second Amended Complaint ("SAC") which reduced the offerings in the case to 14 separate public offerings between October 2005 and December 2006 and set forth the alleged bases for tolling. Docket No. 227. The Court held an additional hearing on March 23, 2011, at which the motion to dismiss filed by Bank of America and NB Holdings, Docket No. 175, was discussed. Bank of America and NB Holdings argued the Securities Act Section 15 control person liability claims, 15 U.S.C. §77*o*, should be dismissed against them. The Court adjudicates that motion in this Order. The motion to dismiss is **GRANTED** for the reasons that follow.

## II. BACKGROUND

In July 2008, Defendant CFC merged into a wholly-owned Bank of America subsidiary named Red Oak Merger Corporation, pursuant to the terms of an

Agreement and Plan of Merger, dated as of January 11, 2008. SAC ¶ 38. The transaction was a stock-for-stock *de jure* merger and was approved as fair by the Delaware Supreme Court sitting *en banc*. *Id.*; *Arkansas Teacher Ret. Sys., et al. v. Caiafa*, 996 A.2d 321 (Del. 2010).[1] Red Oak Merger Corporation was subsequently renamed Countrywide Financial Corporation ("CFC"), which remained a subsidiary of Bank of America. Docket No. 176-3 (Close Decl. Ex. 2 [CFC Form 10-Q dated August 11, 2008] at 27). Four months later, on November 7, 2008, "substantially all of Countrywide's assets were transferred to Bank of America . . . along with certain of Countrywide's debt securities and related guarantees." SAC ¶ 38. The SAC further alleges that CFC ceased filing its own financial statements at that time and its assets and liabilities are now included in Bank of America's financial statements. SAC ¶ 38.

According to the SAC, the Countrywide brand was retired shortly after the merger and currently CFC's former website redirects the user to the Bank of America website. SAC ¶ 38. In addition, Bank of America has assumed CFC's liabilities, having paid to resolve other litigation arising from misconduct such as predatory lending allegedly committed by CFC. SAC ¶ 38. Finally, Plaintiffs allege "many of the same locations, employees, assets and business operations that were formerly CFC continue under the Bank of America Home Loans brand." SAC ¶ 38.

Defendant NB Holdings, a wholly-owned subsidiary of Bank of America, is alleged to be one of the shell entities used to effectuate the Bank of America-CFC merger, and a successor in interest to Defendant CHL. SAC ¶ 39. Plaintiffs claim that on July 3, 2008, CHL completed the sale of substantially all of its assets to NB Holdings. SAC ¶ 39.

---

[1] A court may take judicial notice of the existence of another court's opinion, which is not subject to reasonable dispute over its authenticity. Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

Plaintiffs bring suit against Bank of America for violation of Section 15 of the Securities Act, 15 U.S.C. § 77*o*, for the acts of its subsidiary CFC. SAC ¶ 240. A parent corporation ordinarily is not liable for the acts of its subsidiary. *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). Plaintiffs argue, however, that Bank of America is a successor in interest to CFC, CSC, CCM and CHL. SAC ¶ 241. Plaintiffs contend the asset transfer that occurred between Bank of America and its subsidiary CFC in November 2008, when viewed in conjunction with the July 2008 *de jure* merger, actually constituted a *de facto* merger. SAC ¶ 38.

Plaintiffs bring suit against NB Holdings for violation of Section 15 of the Securities Act, as a successor in interest to Defendant CHL. SAC ¶¶ 39, 241. The allegations against NB Holdings are not clear. Indeed, the Court can only guess at the factual or legal basis for the conclusory allegation that "by virtue of their control, ownership, offices, directorship, and specifics acts," CFC, CSC, CCM and CHL—and Bank of America and NB Holdings as their successors in interest—"had the power and influence and exercised the same to cause the Issuer Defendants to engage in the acts described herein." SAC ¶ 241.

## III. APPLICABLE LAW

### A. CHOICE OF LAW

Successor liability is governed by state law under the Erie doctrine. As to matters governed by state law, a federal court must follow the choice of law rules of the state in which it is sitting to determine which state's law to apply. WRIGHT, MILLER, AND COOPER, FEDERAL PRACTICE & PROCEDURE § 4506 (2010); *Paracor Fin. Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). This rule applies even if the court's jurisdiction is based on a federal question. *SEC v. Elmas Trading Corp.*, 683 F. Supp. 743, 748 (D. Nev. 1987) (citing numerous examples where a federal court applied state choice of law rules to state law issues pendent to federal question claims).

Defendants cite *In re Lindsay* for the proposition that the Court should apply federal choice of law rules in federal question cases. 59 F.3d 942, 948 (9th Cir. 1993). However, three years after *In re Lindsay*, the Ninth Circuit articulated specifically:

> In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state—in this case, California.

*Paracor Fin., Inc.*, 96 F.3d at 1164 (citing *Elmas*, 683 F. Supp. at 747-49; *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1491-92 (9th Cir. 1985)). Thus, California choice of law rules govern here with respect to the state law issue of successor liability.

California generally applies the "governmental interest" approach to choice of law analysis. *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08 (Cal. 2006). Under this approach,

> (1) the court examines the substantive laws of each jurisdiction to determine whether the laws differ as applied to the relevant transaction, (2) if the laws do differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied, and (3) if more than one jurisdiction has a legitimate interest, the court [must] identify and apply the law of the [jurisdiction] whose interest would be more impaired if its law were not applied. Only if both [jurisdictions] have a legitimate but conflicting interest in applying its own law will the court be confronted with a "true conflict" case.

*Love*, 611 F.3d at 610 (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001)) (alteration in *Love*). "As a default, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that

the foreign rule of decision will further the interests of that state." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010). Plaintiffs argue the Court should apply the governmental interest approach in this case and conclude that California law applies. Plaintiffs reason that Defendants have failed to meet their burden of establishing first that there is true conflict between Delaware and California law and next that Delaware has a greater interest in having its law applied. The Court disagrees on both counts.

First, the Court concludes there is a true conflict between Delaware and California law. Although both states recognize *de facto* merger, Delaware courts use the doctrine of *de facto* merger sparingly, "only in very limited contexts." *Binder v. Bristol-Myers Squibb, Co.*, 184 F. Supp. 2d 762, 769 (N.D. Ill. 2001); BALOTTI AND FINKELSTEIN, DEL. L. OF CORP. AND BUS. ORG. § 9.3 (2010). Some treatises have gone so far as to conclude that "Delaware has rejected the *de facto* merger doctrine." AARON RACHELSON, CORPORATE ACQUISITIONS, MERGERS AND DIVESTITURES § 4:6 (2011). *But see Heilbrunn v. Sun Chemical Corp.*, 150 A.2d 755, 757 (Del. 1959) ("The doctrine of *de facto* merger has been recognized in Delaware."). Because Delaware respects a corporation's ability to structure transactions to its advantage, so long as the statutes governing such transactions are fully complied with, Delaware is reluctant to find an asset sale is a *de facto* merger in the absence of fraud. *See, e.g.*, *Heilbrunn v. Sun Chemical Corp.*, 146 A.2d 757, 760 (Del. Ch. 1958) (dismissing *de facto* merger allegations because, *inter alia*, the purchase was made in conformity with Delaware statutory authority, and the complaint did not clearly allege that the transaction was fraudulent or the consideration insufficient), aff'd 150 A.2d 755 (Del. 1959); *Bryant, Griffith & Brunson, Inc. v. General Newspapers*, 178 A. 645, 648 (Del. Super. 1935) (concluding that the transfer of assets, in the absence of fraud or other equitable considerations, does not constitute *de facto* merger). Delaware thus requires intent to defraud, for example, an allegation that the sale was designed to disadvantage

shareholders or creditors. *See In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) (applying Delaware law); *Stauffer v. Standard Brands, Inc.*, 178 A.2d 311, 316 (Del. Ch. 1962) ("In the absence of fraud, the separate entity of a corporation is to be recognized.").

California, on the other hand, is more willing to find *de facto* merger if the court concludes—notwithstanding the structure of the transaction—that an asset sale produces the same result as a merger. *See Marks v. Minn. Mining & Mfg. Co.*, 187 Cal. App. 3d 1429, 1436-38 (1986). In *Marks*, the trial court set forth a checklist for determining whether an asset sale constituted a *de facto* merger and created successor liability. *Id.* at 1436. The factors are:

> (1) was the consideration paid for the assets solely stock of the purchaser or its parent; (2) did the purchaser continue the same enterprise after the sale; (3) did the shareholders of the seller become shareholders of the purchaser; (4) did the seller liquidate; and (5) did the buyer assume the liabilities necessary to carry on the business of the seller?

*Id.* An allegation of fraud or intent to harm is not required if all the indicia of a merger are present. The Court thus finds a material difference between California and Delaware law.

Next, the Court concludes both states have a legitimate interest in having their law applied. Delaware is the state of incorporation of CFC. SAC ¶ 34. California is the forum state of this lawsuit and the headquarters of CFC, at least before the *de jure* merger in July 2008. *Id.*

Finally, having concluded there is a true conflict of law, the Court determines which state has a greater interest in having its law applied. According to Section 302 of the Restatement,

> (1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301, are determined by the local law of

> the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302 (2010). Comment *a* to the Restatement explains that Section 302 is concerned with issues involving matters that are peculiar to corporations and other associations, whereas the rule of Section 301 is concerned with issues arising from corporate acts of a sort that can also be done by individuals. *Id.*, cmt. *a*, *e*; *see Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997). The particular issue in this case is successor liability by virtue of *de facto* merger. Mergers, reorganizations, and matters that may affect the interests of the corporation's creditors all fall within the scope of Section 302, which prescribes the law of the state of incorporation. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302, cmt. *a*, *e*. Thus, because the issue of whether an asset transfer constitutes a *de facto* merger is peculiar to corporations, Delaware law applies.

B. DE FACTO MERGER DOCTRINE

It is a "well-settled rule of corporate law, [that] where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor." *Polius v. Clark Equip. Co.*, 802 F.2d 75, 77 (3d Cir. 1986). This is the general rule of successor liability, recognized in all jurisdictions: "when a corporation purchases all or most of the assets of another corporation, the purchasing corporation does not assume the debts and liabilities of the selling corporation." *Raytech Corp. v. White*, 54 F.3d 187,

192 n.6 (3rd Cir. 1995) (citing 15 W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 7122 at 232). There are four widely recognized exceptions to this rule of successor non-liability:

> (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.

*Id.* Plaintiffs argue the second exception applies here, that the transaction amounts to a *de facto* merger of the two corporations and has left the selling corporation, CFC, unable to satisfy its creditors. "A *de facto* merger may be found where an asset sale took place that amounted to a merger." *Binder*, 184 F. Supp. 2d at 770. Under the *de facto* merger doctrine, the purchaser is liable for all the seller's debts by operation of law, the same as in a merger.

Delaware courts use the doctrine of *de facto* merger sparingly, "only in very limited contexts." *Id*. at 769. It is therefore difficult to find much authority elucidating the circumstances under which Delaware would recognize *de facto* merger. The parties have not set forth the applicable test Delaware would apply. And, although Bank of America and NB Holdings advocate for Delaware law, they argue only that Delaware requires an allegation that the asset sale was engineered to disadvantage shareholders and creditors. Neither party analyzes the transactions at issue using Delaware law. From the meager authority the Court has found dealing with the *de facto* merger doctrine under Delaware law, the Court can glean only a few factors considered by Delaware courts when considering the issue.

One factor Delaware courts consider when determining whether to find *de facto* merger is whether consideration was received and held in exchange for the assets that were transferred. In *Fehl v. S.W.C. Corp.*, the District of Delaware explained:

> In general, no liability has been found under a de facto merger theory so long as the transfer was in the ordinary course of business and the seller received and held consideration. *McKee v. Standard Minerals Corp.*, 18 Del. Ch. 97, 156 A. 193 (1931). Only in a few cases, where the consideration passed directly to the transferor' stockholders without coming into possession of the transferor corporation, has a de facto merger been found. *McKee v. Standard Minerals Corp., supra; Drug v. Hunt*, 5 W.W. Harr. 339, 168 A. 87 (1933); *Bryant, Griffith & Brunson v. General Newspaper*, 6 W.W. Harr. 468, 476, 178 A. 645 (1935). See generally, FOLK, THE DELAWARE GENERAL CORPORATION LAW, 421-423.

433 F. Supp. 939, 947 (D. Del. 1977) (finding no *de facto* merger where the assets were sold for good consideration). *Drug v. Hunt*, 168 A. 87 (Del. 1933), is a Delaware case in which the Supreme Court of Delaware agreed with a creditor of the transferor corporation, *i.e.*, seller, that an asset sale constituted a *de facto* merger and imposed successor liability on the transferee corporation, *i.e.*, the buyer. The court found consideration was not received and held by the transferor corporation because the consideration—which was stock in the purchasing corporation—was paid directly to the stockholders of the transferor corporation, not to the transferor corporation itself. *Id*. at 96. Therefore, there was no consideration received and held by the transferor corporation. The court in *Drug v. Hunt* distinguished another case, *Butler v. New Keystone Copper Co.*, 93 A. 380 (Del. Ch. 1915), because in *Butler* the stock issued by the purchasing corporation, in return for the asset transferred, was given to the selling corporation and not to its shareholders. In that case, then, the transaction was found to be an asset sale. *Drug*, 168 A. at 96. The consideration must also be adequate. *See Heilbrunn v. Sun Chemical Co.*, 146 A.2d at 760 ("Plaintiffs . . . may not complain of a corporate purchase made in conformity with Delaware statutory authority unless

such transaction is fraudulent as having been carried out for a grossly inadequate consideration or otherwise made in bad faith.”).

A second factor Delaware courts consider is whether the asset transfer complied with the statute governing such an asset sale. *See id.*; *Orzeck v. Englehart*, 195 A.2d 375, 378 (Del. 1963) (observing that *de facto* merger “has been recognized in cases of sales of assets for the protection of creditors or stockholders who have suffered an injury by reason of failure to comply with the statute governing such sales.”); *Heilbrunn*, 150 A.2d at 757-58; *Binder*, 184 F. Supp. 2d at 769-70. These cases have held form more sacred than substance, by reasoning that intent is manifested in following statutory forms and guidelines and that where the parties follow the mechanical guidelines of the statute, then the method chosen must be honored even though the form selected may be comparable to a merger. *See, e.g., Hariton v. Arco Elecs., Inc.*, 188 A.2d 123, 125 (Del. 1963). In *Hariton*, the Delaware Supreme Court held that a sale of assets, combined with the assumption of liabilities by the purchasing corporation and the dissolution of the selling corporation did not constitute a *de facto* merger even though the same object was achieved as would have been accomplished by acting under the merger statute. The Court reasoned that the merger statute and the sale-of-assets statute are independent of each other, “of equal dignity, and the framers of a reorganization plan may resort to either type of corporate mechanics to achieve the desired end.” *Id.* at 125. Delaware recognizes this principle as the doctrine of independent legal significance. BALOTTI AND FINKELSTEIN, DEL. L. OF CORP. AND BUS. ORG. § 9.4 (2010).

A third factor Delaware courts consider is whether creditors or stockholders have suffered an injury from such failure to comply. *See, e.g., Heilbrunn*, 146 A.2d at 759; *Heilbrunn*, 150 A.2d at 758-59. In *Heilbrunn*, the Supreme Court of Delaware rejected the application of *de facto* merger doctrine because it failed to

see how any injury had been inflicted upon the plaintiffs, who were stockholders of the purchasing corporation. 150 A.2d at 758-59.

A fourth factor is fraud or bad faith. Under Delaware law, the separate legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control. *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006); *Stauffer*, 178 A.2d at 316 ("In the absence of fraud, the separate entity of a corporation is to be recognized."). Thus, in the absence of fraud, it is a long-standing principle of Delaware law that an asset sale is not a merger.[2] *Bryant, Griffith & Brunson, Inc.*, 178 A. at 648; *Heilbrunn*, 146 A.2d at 760 (dismissing *de facto* merger allegations because, *inter alia*, the complaint did not clearly allege that the transaction was fraudulent or the consideration insufficient). To state a successor-liability claim under the *de facto* merger doctrine, therefore, the complaint must allege that the sale was designed to disadvantage shareholders or creditors. *In re McKesson*, 126 F. Supp. 2d at 1277.

Accordingly, the Court applies the following factors to its analysis of whether Plaintiffs have adequately pleaded successor liability due to *de facto* merger: (1) was adequate consideration received and held by the transferor corporation in exchange for the assets that were transferred; (2) did the asset transfer comply with the statute governing such an asset sale; (3) were creditors or stockholders injured by a failure to comply with the statute governing an asset sale; and (4) was the sale designed to disadvantage shareholders or creditors?

### C. Motion to Dismiss Standard

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 663-64 (9th

---

[2] The Court notes that the SAC specifically disclaims fraud. SAC ¶ 3 ("The Complaint asserts no allegations of fraud on the part of any Defendant.")

Cir. 2008). In the past, a complaint could not be dismissed for failure to state a claim "unless it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In *Twombly v. Bell Atlantic Corp*., 550 U.S. 544 (2007), the Supreme Court expressly retired *Conley*'s "no set of facts" language and required judges to engage in a "context-specific" review of the complaint. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Pleading labels or conclusions is no longer sufficient. *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).

## IV. DISCUSSION

The Court dismisses Bank of America and NB Holdings from this lawsuit because the SAC fails to adequately allege *de facto* merger under Delaware law. With respect to NB Holdings there are no allegations to support the claim that NB Holdings is a successor in interest to CHL. The SAC alleges NB Holdings is a shell entity used to effectuate the *de jure* merger between Bank of America and CFC, and that NB Holdings is a successor to CHL, but does not explain on what basis Plaintiffs make these allegations. SAC ¶ 39. The SAC states only that CHL sold "substantially all of its assets to NB Holdings" on July 3, 2008. SAC ¶ 241. These allegations are insufficient to plead successor liability under the doctrine of *de facto* merger. Moreover, while the SAC alleges that NB Holdings "had the power and influence and exercised the same to cause the Issuer Defendants to engage in the acts described herein," there is not a single factual allegation to support this conclusion. Count III is hereby **DISMISSED WITH PREJUDICE** against NB Holdings for failure to state a claim.

With respect to Bank of America, the SAC fails to adequately plead *de facto* merger with CFC. Plaintiffs seek to combine two separate transactions, the July

2008 *de jure* merger between Red Oak Merger Corporation and CFC with the November 2008 asset sale between CFC and Bank of America, as constituting one transaction that amounts to a *de facto* merger between Bank of America and its new subsidiary CFC. The first transaction, the *de jure merger*, has already been reviewed by the Delaware courts and found to be fair. *Arkansas Teacher Ret. Sys., et al. v. Caiafa*, 996 A.2d 321 (Del. 2010). The second transaction, the asset sale, is not properly alleged to constitute *de facto* merger under Delaware law as the Court explains below. Plaintiffs' attempt to characterize two separate, legal transactions as one combined fraudulent transaction must fail under Delaware law. Delaware respects the independent legal significance of transactions, even when under common ownership and control, as long as they comply with statutory authority. *See Hariton*, 188 A.2d at 125; BALOTTI AND FINKELSTEIN, DEL. L. OF CORP. AND BUS. ORG. § 9.4 (2010).

Viewing the November 2008 asset sale in the context of the *de facto* merger doctrine, the Court concludes the SAC does not adequately state a claim against Bank of America. First, the SAC fails to plead that adequate consideration was not received and held by CFC in exchange for the assets that were transferred to Bank of America. In fact, as contemporaneous public SEC filings make clear, Bank of America acquired CFC's assets in exchange for valuable consideration totaling billions of dollars that included the assumption of "debt securities and related guarantees of Countrywide in an aggregated amount of approximately $16.6 billion." Docket No. 176-11 (Close Decl., Ex. 6 [Bank of America Form 8-K dated Nov. 10, 2008] at 399).[3] CFC has retained that consideration and its

[3] The Court takes judicial notice of Bank of America's Current Report on Form 8-K filed with the SEC on or about November 10, 2008 as facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court may consider this document for this motion to dismiss as it is a matter of public record. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

creditors can look to Bank of America to satisfy those of CFC's obligations that Bank of America has assumed. Because Plaintiffs have not alleged that CFC did not receive and hold adequate consideration for its assets, Plaintiffs have not properly alleged *de facto* merger.

Second, the SAC does not allege that the asset sale failed to comply with the relevant Delaware statutes governing such a sale. The Delaware Supreme Court allows parties to choose whatever reorganization plan they wish, asset sale or merger, so long as they follow the mechanical guidelines of the statute. *Hariton*, 188 A.2d at 125. Third, the SAC does not allege that creditors or stockholders have suffered an injury as a result of Bank of America's failure to comply with the statutory requirements of an asset sale. *Heilbrunn*, 150 A.2d at 758-59. Fourth, as Bank of America has repeatedly emphasized, the SAC does not allege that the November 2008 asset sale was designed to disadvantage stockholders or creditors. *In re McKesson*, 126 F. Supp. 2d at 1276-77. Accordingly, the Court **DISMISSES WITH PREJUDICE** Count III against Bank of America for failure to state a claim.

## V. CONCLUSION

The Court **DISMISSES** Count III against Bank of America and NB Holdings. The dismissal is **WITH PREJUDICE**. As no further claims are alleged against them, Bank of America and NB Holdings are **DISMISSED** from the lawsuit entirely.

**IT IS SO ORDERED**.

DATED: April 20, 2011

Hon. Mariana R. Pfaelzer
United States District Judge