## EXHIBIT T

| Registration Statement | Page Number |
|---|---|
| 333-140962 (CWALT) | S-42 |
| 333-131630 (CWALT) | S-55 |
| 333-125902 (CWALT) | S-21 |
| 333-123167 (CWALT) | S-21 |
| 333-117949 (CWALT) | S-21 |
| 333-110343 (CWALT) | S-21-22 |

## EXHIBIT U

| Series | Page Number | Series | Page Number |
|---|---|---|---|
| CWALT 2006-43CB | S-75 | CWALT 2007-OA8 | S-41 |
| CWALT 2005-6CB | S-38-39 | CWALT 2006-OA10 | S-90 |
| CWALT 2005-17 | S-81 | CWALT 2006-OA21 | S-57 |
| CWALT 2005-24 | S-70 | CWALT 2006-OC5 | S-63-64 |
| CWALT 2005-J4 | S-41 | CWALT 2007-5CB | S-41 |
| CWALT 2005-56 | S-97 | CWALT 2007-J1 | S-63 |

## EXHIBIT V

| Registration Statement | Page Number |
|---|---|
| 333-140962 (CWALT) | S-42 |
| 333-131630 (CWALT) | S-55 |
| 333-125902 (CWALT) | S-21 |
| 333-123167 (CWALT) | S-21 |
| 333-117949 (CWALT) | S-21-22 |
| 333-110343 (CWALT) | S-22 |

## EXHIBIT W

| Series | Page Number | Series | Page Number |
|---|---|---|---|
| CWALT 2006-43CB | S-75 | CWALT 2007-OA8 | S-41 |
| CWALT 2005-6CB | S-39 | CWALT 2006-OA10 | S-90 |
| CWALT 2005-17 | S-81 | CWALT 2006-OA21 | S-57 |
| CWALT 2005-24 | S-70-71 | CWALT 2006-OC5 | S-64 |
| CWALT 2005-J4 | S-41 | CWALT 2007-5CB | S-41 |
| CWALT 2005-56 | S-97 | CWALT 2007-J1 | S-63 |

**EXHIBIT X**

| Registration Statement | Page Number | Registration Statement | Page Number |
|---|---|---|---|
| 333-110343 (CWALT) | S-20 | 333-100418 (CWMBS) | S-20 |
| 333-117949 (CWALT) | S-20 | 333-121249 (CWMBS) | S-21 |
| 333-123167 (CWALT) | S-20 | 333-125963 (CWMBS) | S-21 |
| 333-125902 (CWALT) | S-20 | 333-131662 (CWMBS) | S-54 |
| 333-131630 (CWALT) | S-54 | 333-140958 (CWMBS) | S-41-42 |
| 333-140962 (CWALT) | S-41 | | |

**EXHIBIT Y**

| Series | Page Number | Series | Page Number |
|---|---|---|---|
| CWALT 2006-43CB | S-73 | CWHL 2005-HY10 | S-79 |
| CWALT 2005-6CB | S-37 | CWHL 2005-HYB6 | S-89 |
| CWALT 2005-17 | S-80 | CWHL 2006-3 | S-77 |
| CWALT 2005-24 | S-69 | CWHL 2006-OA5 | S-73 |
| CWALT 2005-J4 | S-40 | CWHL 2006-HYB4 | S-95 |
| CWALT 2005-56 | S-96 | CWHL 2005-J2 | S-54 |
| CWALT 2007-OA8 | S-40 | CWHL 2007-HYB1 | S-36 |
| CWALT 2006-OA10 | S-89 | CWHL 2007-HYB2 | S-36 |
| CWALT 2006-OA21 | S-56 | CWHL 2007-10 | S-38 |
| CWALT 2006-OC5 | S-62 | CWHL 2007-16 | S-33 |
| CWALT 2007-5CB | S-39 | CWALT 2005-J7 | S-32 |
| CWALT 2007-J1 | S-61 | CWALT 2005-63 | S-80 |
| CWALT 2007-12T1 | S-37 | CWHL 2006-HYB3 | S-99 |
| CWHL 2005-30 | S-23 | CWHL 2006-11 | S-34 |
| CWHL 2007-1 | S-31 | | |

**EXHIBIT Z**

| Registration Statement | Page Number | Registration Statement | Page Number |
|---|---|---|---|
| 333-125164 (CWABS) | S-47 | 333-118926 (CWABS) | S-47 |
| 333-131591 (CWABS) | S-39 | 333-132375 (CWHEQ) | S-39 |
| 333-135846 (CWABS) | S-38-39 | 333-139891 (CWHEQ) | S-39 |
| 333-140960 (CWABS) | S-41 | 333-126790 (CWHEQ) | S-25 |

## EXHIBIT AA

| Series | Page Number | Series | Page Number |
|---|---|---|---|
| CWL 2005-6 | S-26 | CWL 2007-1 | S-38 |
| CWL 2005-AB3 | S-28 | CWL 2007-11 | S-42 |
| CWL 2005-11 | S-30 | CWL 2007-13 | S-41 |
| CWL 2005-12 | S-28 | CWL 2006-3 | S-38 |
| CWL 2006-12 | S-35 | CWL 2006-15 | S-34 |
| CWL 2005-10 | S-29 | CWL 2006-25 | S-39 |
|  |  | CWL 2006-1 | S-37 |

## EXHIBIT BB

| Series | Page Number | Series | Page Number |
|---|---|---|---|
| CWHEL 2005-K | S-47 | CWHEL 2007-E | S-34 |
| CWHEL 2005-E | S-21 | CWHEL 2005-G | S-22 |
| CWHEL 2005-I | S-26-27 | CWHEL 2006-G | S-34 |
| CWHEL 2005-M | S-23-34 | CWHEL 2007-B | S-32 |

## EXHIBIT CC

| Series | Page Number | Series | Page Number |
|---|---|---|---|
| CWL 2006-S2 | S-31 | CWL 2006-S8 | S-28 |
| CWL 2006-S3 | S-26 | CWL 2006-S9 | S-32 |
| CWL 2007-S1 | S-36 | CWL 2006-S6 | S-29 |
|  |  | CWL 2006-S9 | S-32 |

## EXHIBIT DD

| Series | Page Number | Series | Page Number |
|---|---|---|---|
| CWALT 2006-43CB | S-75-76 | CWALT 2007-OA8 | S-41-42 |
| CWALT 2005-6CB | S-39-40 | CWALT 2006-OA10 | S-91 |
| CWALT 2005-17 | S-82 | CWALT 2006-OA21 | S-58 |
| CWALT 2005-24 | S-71 | CWALT 2006-OC5 | S-64-65 |
| CWALT 2005-J4 | S-42 | CWALT 2007-5CB | S-41-42 |
| CWALT 2005-56 | S-98 | CWALT 2007-J1 | S-63-64 |

**EXHIBIT EE**

| Series | Page Number | Series | Page Number |
|---|---|---|---|
| CWALT 2006-43CB | S-36 | CWALT 2007-OA8 | S-35 |
| CWALT 2005-6CB | S-15, | CWALT 2006-OA10 | S-36 |
| CWALT 2005-17 | S-20-21 | CWALT 2006-OA21 | S-36 |
| CWALT 2005-24 | S-22 | CWALT 2006-OC5 | S-34 |
| CWALT 2005-J4 | S-19-20 | CWALT 2007-5CB | S-35 |
| CWALT 2005-56 | S-23 | CWALT 2007-J1 | S-54 |
| CWHEQ 2006-S3 | S-22 | CWHEQ 2006-S8 | S-24 |
| CWHEQ 2006-S9 | S-27 | CWHEQ 2007-E | S-38 |
| CWHL 2005-HYB6 | S-17-18 | CWHL 2006-3 | S-35 |
| CWHL 2006-OA5 | S-37 | CWHL 2007-10 | S-34 |
| CWHL 2007-16 | S-28 | CWHL 2007-HYB1 | S-32 |
| CWHL 2007-HYB2 | S-32 | CWL 2005-11 | S-23-24 |
| CWL 2005-12 | S-12-22 | CWL 2005-6 | S-20 |
| CWL 2005-AB3 | S-22 | CWL 2005-IM1 | S-23 |
| CWL 2005-IM3 | 33 | CWL 2006-12 | S-29-30 |
| CWL 2007-1 | S-32 | CWL 2007-11 | S-35-36 |
| CWL 2007-13 | S-35-36 | CWHL 2007-21 | S-36 |
| CWL 2005-7 | S-22-23 | CWL 2005-8 | S-20 |
| CWALT 2007-13 | S-28 | CWALT 2007-21CB | S-36 |
| CWALT 2007-OH1 | S-38 | CWALT 2005-18CB | S-13-14 |
| CWALT 2005-5R | S-15 | CWHL 2007-HY6 | S-32 |

# PROOF OF SERVICE VIA ELECTRONIC MAIL

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1801 Avenue of the Stars, Suite 311, Los Angeles, California 90067.

On July 13, 2010, I caused to be served the following document:

## AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

By sending this document for receipt electronically by the parties as listed on the attached ECF Service List.

And on the following non-registered ECF user:

Lindsay R Pennington
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

**By U.S. Mail:** by placing true and correct copies thereof in individual sealed envelopes, with courier fees fully prepaid, which I deposited with my employer for collection and delivery by the US Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for delivery with said service.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 13, 2010, at Los Angeles, California.

Tia Reiss

## Mailing Information for a Case 2:10-cv-00302-MRP-MAN

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Randall K Berger**
  rberger@kmllp.com

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,martindale@caldwell-leslie.com,hammer@caldwell-leslie.com,pettit@caldwell-leslie.com,willingham@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie.com,wong@caldwell-leslie.com,wilson@caldwell-leslie.com

- **Peter Young Hoon Cho**
  petercho@paulhastings.com

- **Boyd Cloern**
  boyd.cloern@bingham.com

- **David C Codell**
  codell@caldwell-leslie.com

- **Brian Charles Devine**
  bdevine@goodwinprocter.com

- **Daniel S. Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com

- **Michael M Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Penelope A Graboys Blair**
  pgraboysblair@orrick.com,jcopoulos@orrick.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com

- **Jeffrey M Hammer**
  hammer@caldwell-leslie.com

- **Sean M Handler**
  shandler@btkmc.com

- **Jennifer L Joost**
  jjoost@btkmc.com,acashwell@btkmc.com,mswift@btkmc.com

- **Lauren G Kerkhoff**
  lkerkhoff@rgrdlaw.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Joel P Laitman**
  jlaitman@cohenmilstein.com

- **Christopher Lometti**
  clometti@cohenmilstein.com

- **Jennifer B Luz**
  jluz@goodwinprocter.com

- **Azra Z Mehdi**
  amehdi@milberg.com

- **Alexander K Mircheff**

amircheff@gibsondunn.com

- **Sharan Nirmul**
  snirmul@btkmc.com,azivitz@btkmc.com,ecf_filings@btkmc.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com,ktayman@goodwinprocter.com

- **Lauren Wagner Pederson**
  lpederson@btkmc.com,neena.verma@btkmc.com,dpotts@btkmc.com

- **Ira M Press**
  ipress@kmllp.com,lmorris@kmllp.com

- **Daniel B Rehns**
  drehns@cohenmilstein.com

- **Christina A Royce**
  croyce@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **Arthur L Shingler , III**
  ashingler@scott-scott.com,efile@scott-scott.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com

- **Michael D Torpey**
  mtorpey@orrick.com

- **Michael C Tu**
  mtu@orrick.com,fphan@orrick.com

- **Avi N Wagner**
  avi@thewagnerfirm.com,anwagneresq@hotmail.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,sasmith@goodwinprocter.com,monyeagbako@goodwinprocter.com,cburgos@goodwinprocter.com

- **Andrew L Zivitz**
  azivitz@btkmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Lindsay R Pennington
Gibson Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197

# TAC APPENDIX EXHIBIT B

## Plaintiffs' Second Amended
## Class Action Complaint

## *Filed December 6, 2010*

GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

*Liaison Counsel for Lead Plaintiff Iowa Public*
*Employees' Retirement System*
*[Additional Counsel on Signature Page]*

FILED
CLERK, U.S. DISTRICT COURT

DEC - 6 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE SECURITIES CORPORATION; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE CAPITAL MARKETS; BANK OF AMERICA CORP.; NB HOLDINGS CORPORATION; CWALT, INC.; CWMBS, INC.; CWABS, INC.; CWHEQ, INC.; J.P. MORGAN SECURITIES, INC.; DEUTSCHE BANK SECURITIES INC.; BEAR, STEARNS & CO., INC.; JPMORGAN CHASE, INC.; BANC OF AMERICA SECURITIES LLC; UBS SECURITIES LLC; MORGAN STANLEY & CO., INC.; EDWARD D. JONES & CO., L.P.; CITIGROUP GLOBAL MARKETS, INC.; GOLDMAN, SACHS & CO.; CREDIT SUISSE SECURITIES (USA) LLC; RBS SECURITIES INC.; BARCLAY'S CAPITAL, INC.; HSBC SECURITIES (USA) INC.; BNP PARIBAS SECURITIES CORP.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; STANFORD L. KURLAND; DAVID A. SPECTOR; ERIC P. SIERACKI; N. JOSHUA ADLER; RANJIT KRIPALANI; JENNIFER S. SANDEFUR; THOMAS KEITH MCLAUGHLIN; THOMAS H. BOONE; JEFFREY P. GROGIN; DAVID A. SAMBOL,<br><br>        Defendants. | No. 2:10-CV-00302 MRP (MAN)<br><br>CLASS ACTION<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT** |

No. 2:10-cv-00302: SECOND AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF THE ACTION .................................................. 2

II.    JURISDICTION AND VENUE ................................................. 7

III.   PROCEDURAL HISTORY ..................................................... 8

IV.    PARTIES ........................................................................... 11

    A.     Plaintiffs ................................................................ 11

    B.     Defendants ............................................................ 13

        1.     Countrywide Defendants ................................ 13

        2.     The Issuer Defendants ................................... 17

        3.     The Underwriter Defendants ........................... 21

        4.     The Individual Defendants .............................. 25

        5.     David A. Sambol ........................................... 26

    C.     The Issuing Trust Non-Parties ................................. 26

V.     TOLLING OF THE STATUTE OF LIMITATIONS ..................... 27

    A.     Defendant CWALT Offerings ................................... 27

    B.     Defendant CWHEQ Offerings .................................. 29

    C.     Defendant CWABS Offerings ................................... 32

    D.     Defendant CWMBS Offerings .................................. 40

VI.    BACKGROUND .................................................................. 41

    A.     Countrywide Was a Leading Issuer and Underwriter of Mortgage-Backed Securities ...................................... 41

    B.     Countrywide's Origination and Securitization Operations ............. 44

VII.   EVIDENCE OF SYSTEMIC DISREGARD OF STATED LOAN ORIGINATION GUIDELINES CONTAINED IN OFFERING DOCUMENTS ................................................................... 48

    A.     Exponential Increase in Certificate Default Rates in Months After Issuance No Matter When Offering Occurred Evidences Disregard of Origination Guidelines ................................................... 48

    B.     Rating Agencies Collapsed Certificate Ratings to "Junk Bond" Levels Due to Undisclosed "Aggressive Underwriting" Practices ........................................... 50

C.  Numerous Government Investigations Reveal the Falsity of the Offering Documents ........................................................ 52

D.  Allegations in Numerous Other Civil Lawsuits Show the Falsity of the Offering Documents ........................................ 61

E.  Underwriter Defendants "Contracted Out" and Failed to Conduct Required Due Diligence of Loan Underwriting Guidelines Contained in Offering Documents ........................ 69

F.  Additional Government Investigations Further Confirm Systemic Disregard for Mortgage Loan Underwriting Guidelines ...................................................................... 75

G.  Underwriter Defendants Employed Rating Shopping Practices to Ensure Inflated Investment Grade Rating for All the Certificates .................................................................. 76

VIII.  THE OFFERING DOCUMENTS CONTAINED MATERIAL MISSTATEMENTS AND OMISSIONS REGARDING STATED UNDERWRITING AND APPRAISAL STANDARDS ........................ 78

IX.  CLASS ACTION ALLEGATIONS ............................................. 98

X.  STANDING .......................................................................... 100

XI.  CLAIMS .............................................................................. 100

COUNT I ................................................................................. 100

Violation of Section 11 of the Securities Act Against the Individual Defendants, the Issuer Defendants, and the Underwriter Defendants

COUNT II ................................................................................ 104

Violation of Section 12(a)(2) of the Securities Act Against the Issuer Defendants and the Underwriter Defendants

COUNT III .............................................................................. 106

Violation of Section 15 of the Securities Act Against the Countrywide Defendants

XII.  RELIEF REQUESTED .......................................................... 107

XIII.  JURY DEMAND ................................................................ 107

1    In accordance with the Court's Opinion and Order dated November 4, 2010

2    ("Countrywide Tolling Decision"), Lead Plaintiff Iowa Public Employees'

3    Retirement System and additional named plaintiffs the General Board of Pension

4    and Health Benefits of the United Methodist Church, Orange County Employees'

5    Retirement System, and Oregon Public Employees' Retirement System

6    (collectively, "Plaintiffs"), allege the following upon personal knowledge as to

7    themselves and their own acts and upon information and belief as to all other

8    matters. Plaintiffs' information and belief is based on the investigation of their

9    counsel. The investigation included, for example: (i) review and analysis of the

10   offering materials for the Certificates as defined below, and the Certificates' rating

11   histories; (ii) examination of the monthly service or remittance reports issued in

12   connection with the Certificates; (iii) examination of the SEC filings, press releases

13   and other public statements of Countrywide Financial Corporation ("CFC"); (iv)

14   review and analysis of court filings cited herein; (v) review and analysis of media

15   reports, congressional testimony and additional material; and (vi) analysis of the

16   Securities and Exchange Commission's ("SEC") Summary Report of Issues

17   Identified in the Commission Staff's Examinations of Select Credit Rating

18   Agencies ("SEC Report") and additional documents cited herein. Many of the

19   facts related to Plaintiffs' allegations are known only by the Defendants named

20   herein, or are exclusively within their custody or control. Plaintiffs believe that

21   substantial additional evidentiary support for the allegations set forth below will be

22   developed after a reasonable opportunity for discovery.

23   Plaintiffs undertake this amendment to comply with the Countrywide

24   Tolling Decision. In so doing, Plaintiffs do not waive and hereby preserve all

25   previously asserted claims regarding all securities included in the Consolidated

26   Amended Class Action Complaint ("First Amended Complaint," or "FAC") in this

27   action as if fully set forth herein.

28

1    **I.      SUMMARY OF THE ACTION**

2          1.      This Complaint is brought by Plaintiffs pursuant to the Securities Act

3    of 1933, 15 U.S.C. § 77a, *et seq.* (the "Securities Act"), on behalf of all persons or

4    entities who purchased or otherwise acquired $17.83 billion of mortgage-backed

5    securities ("MBS" or "Certificates") issued pursuant or traceable to Registration

6    Statements,   Original   Basic   Prospectuses,   and   Prospectus   Supplements

7    (collectively, the "Offering Documents") filed with the SEC: (1) Alternative Loan

8    Trust Certificates issued by Defendant CWALT, Inc. ("CWALT"); (2) CWABS

9    Asset-Backed Trust Certificates issued by Defendant CWABS, Inc. ("CWABS");

10   (3) CHL Mortgage Pass-Through Trust Certificates issued by Defendant CWMBS,

11   Inc. ("CWMBS"); and (4) CWHEQ Revolving Home Equity Loan Trusts and

12   Home Equity Loan Trusts issued by Defendant CWHEQ, Inc. ("CWHEQ")

13   (CWALT, CWABS, CWMBS, and CWHEQ are collectively referred to herein as

14   the "Depositors" or "Issuers").   All of the Certificates were collateralized by

15   residential mortgage loans that Countrywide Home Loans, Inc. ("Countrywide") or

16   its affiliates originated.   The Certificates were sold in 14 separate public offerings

17   (the "Offerings") over thirty-four months between October 2005 and December

18   2006.  A complete list of each Offering that is the subject of this Second Amended

19   Class Action Complaint ("SAC") is set forth in **Exhibit A** of the accompanying

20   Appendix ("SAC Appendix").

21         2.      The   Offerings   were   underwritten   by   Defendants   Countrywide

22   Securities Corporation ("CSC"), Deutsche Bank Securities Inc. ("Deutsche Bank"),

23   UBS Securities LLC ("UBS"), Morgan Stanley & Co., Inc. ("Morgan Stanley"),

24   Goldman, Sachs & Co. ("Goldman Sachs"), RBS Securities Inc. f/k/a RBS

25   Greenwich Capital d/b/a Greenwich Capital Markets, Inc. ("RBS"), Barclay's

26   Capital, Inc. ("Barclay's) and HSBC Securities (USA) Inc. ("HSBC") (collectively

27   the "Underwriters" or "Underwriter Defendants").

28         3.      Plaintiffs assert claims for violations of Sections 11, 12(a)(2) and 15

1  of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o, arising from material

2  misstatements and omissions in the Registration Statements, Prospectuses and

3  subsequently-filed Prospectus Supplements (collectively referred to herein as the

4  "Offering Documents").   Accordingly, this action involves claims of negligence

5  and strict liability under the Securities Act.  The Complaint asserts no allegations

6  of fraud on the part of any Defendant.

7        4.    From 2005 through 2007, Countrywide was the nation's largest

8  residential mortgage lender.  Countrywide originated in excess of $850 billion in

9  home loans throughout the United States in 2005 and 2006 alone.  Countrywide's

10  ability to originate residential mortgages on such a massive scale was facilitated, in

11  large part, by its ability to rapidly package or securitize those loans and then,

12  through the activities of the Underwriter Defendants, sell them to investors as

13  purportedly investment grade mortgage-backed securities.

14        5.    Each Offering operated in the same manner.  A special-purpose trust

15  (the "Issuing Trust") was created by the Depositor to hold the underlying mortgage

16  loan collateral.  Certificates entitled investors to receive monthly distributions of

17  interest and principal from the Issuing Trusts derived from cash flows from

18  borrower repayment of the mortgage loans.  The cash flows from the principal and

19  interest payments from those mortgage loans were then divided into multiple

20  classes, or "tranches," of senior and subordinated Certificates.  If borrowers failed

21  to pay back their mortgages, these losses would flow to Plaintiffs based on the

22  seniority of their Certificates.  However, since all of the Certificates issued by an

23  individual Issuing Trust were backed by the pool of mortgages associated with that

24  Issuing Trust, a decline in the value of the mortgages in the pool arising from

25  delinquencies, defaults, or other problems with the particular loans would cause a

26  decline in the value of each and every class or tranche of Certificates in the Issuing

27  Trust, regardless of the subordination of certain Certificates to more senior ones.

28        6.    The assembly line created by Countrywide and the Underwriter

Defendants for the mass production and sale of the Certificates began with Countrywide and its affiliates originating the mortgage loans. These loans were all purportedly underwritten pursuant to specific loan origination guidelines set forth in the Offering Documents. The guidelines provided, *inter alia*, that Countrywide and its affiliates would assess borrower creditworthiness and appraise the value of the mortgaged property pursuant to standard appraisal methodologies. As set forth below, these descriptions of the loan origination guidelines in the Offering Documents contained material misstatements and omissions since, in fact, the guidelines were systematically disregarded to include borrowers who did not meet the aforementioned criteria.

7.     Once the loans were originated they were ultimately sold to the Depositors who were all limited purpose entities created by CFC. The Depositors would deposit the loans into Issuing Trusts and, along with the Underwriter Defendants and the Rating Agencies, including Moody's Investors Service, Inc. ("Moody's"), Standard & Poor's ("S&P") and Fitch Ratings, Inc. ("Fitch") (collectively referred to herein as the "Rating Agencies"), design the structure of each Offering. The Offering structures determined how the cash flows from the mortgage loans would be distributed to different senior and subordinate classes of Certificate investors. Each Offering purported to provide various forms of investor protections and purported to justify the investment grade ratings assigned to the Certificates.

8.     It was critically important to the Underwriter Defendants not only that all of the Certificates be assigned investment grade ratings by the Rating Agencies at the time of issuance, but that they be assigned the highest investment grade ratings. The highest investment rating used by the Rating Agencies is AAA (Aaa for Moody's), which signifies the highest investment grade and suggests that there is almost no risk of investment loss associated with the security – the safest investment next to U.S. Treasury bonds. Ratings of "AA," "A" and "BBB"

1  represent very high credit quality, high credit quality, and good credit quality,

2  respectively.   There are various intermediate ratings between BBB and AAA.

3  Anything rated lower than BBB is considered speculative or "junk," *i.e.,* not

4  investment grade.

5      9.   In fact, all of the Countrywide-issued Certificates were assigned

6  investment grade ratings and over 90% received the highest investment grade

7  ratings.   These ratings assured the rapid sale of the Certificates to conservative

8  investors such as public and private pension funds and insurance companies whose

9  investment guidelines typically require them to purchase only investment grade

10  securities.   The Underwriter Defendants exercised their substantial economic

11  power by soliciting the Rating Agencies to bid for the ratings engagements via the

12  Rating Agencies' proposed ratings of the Certificates.   The Underwriters'

13  competitive selection process for securing ratings, known as "ratings shopping,"

14  ensured that the highest investment grade ratings were assigned to substantially all

15  of the Certificates.

16      10.   After the Certificates were issued, facts began to emerge reflecting

17  that the mortgage collateral supporting the purported investment grade securities

18  was fundamentally impaired and that the guidelines described in the Offering

19  Documents had been systematically disregarded.[1]

20      11.   No matter when the Offering occurred, the default and delinquency

21  rates of the Certificates at issue herein skyrocketed exponentially in the first year

22  after the loans were originated, reflecting en mass early payment defaults. Such

23  early defaults are a strong indicator that origination guidelines have not been

24  applied, *infra* ¶¶102-09, 113.

25

---

26  [1]   For purposes of the Securities Act, the Depositor is considered the "Issuer"
under Section 2(a)(4), 15 U.S.C. § 77b(a)(4).  The "issuing entity" in each Offering

27  was the specifically denominated Issuing Trust, *e.g.,* for the CWALT Series 2005-
62 $1,559,819,100 Offering on October 28, 2005, the Issuer was CWALT, Inc. and

28  the issuing entity was the Issuing Trust denominated "Alternative Loan Trust
2005-62."

12.     As a result of such poor loan performance the Rating Agencies were forced not merely to downgrade isolated Certificates, but rather to revise the entire methodology used to assign investment grade ratings to the Certificates. Further, in making these fundamental revisions, the Rating Agencies explained that the impetus for the change was previously undisclosed and systematic "aggressive underwriting" practices used to originate the mortgage loan collateral. When these revised methodologies were applied to the Certificates in 2008 and 2009, the result was an unprecedented collapse of the investment grade ratings. Indeed, the Certificates bearing the highest investment grade ratings collapsed largely in one fell swoop – not merely one or two rating levels, but *as much as 22 rating levels* to below investment grade or junk bond rating. Indeed, 91% of the Certificates have been downgraded to junk bond levels – including over 90% of the Certificates initially awarded AAA/maximum-safety ratings, *infra* ¶¶107-114.

13.     Investigations into Countrywide's loan origination practices during the period from 2005 through 2007 and presented in actions filed by the SEC against Countrywide and its senior management, including Angelo Mozilo ("Mozilo"), David Sambol ("Sambol") and Eric Sieracki ("Sieracki"), as well as by the Illinois and California attorneys general have confirmed, as a result of those agencies' subpoena power, that Countrywide's underwriting guidelines were systematically disregarded. In addition, MBIA Insurance Corp. ("MBIA"), one of the largest providers of bond insurance, brought its own lawsuit against Countrywide alleging that Countrywide fraudulently induced it to insure certain Certificates at issue in this action based on its improper loan origination practices. Moreover, allegations set forth in complaints against Countrywide alleging derivative and securities claims have further detailed Countrywide's rampant disregard for its own loan origination guidelines.

14.     Fourth, more general government investigations into the issuance of mortgage-backed securities during the period when the Certificates were issued

1    have also confirmed a systemic disregard for loan origination guidelines.  Thus, for

2    example, according to the March 2008 policy statement of the President's Working

3    Group on Financial Markets (the "President's Working Group"), the underlying

4    causes of the mortgage crisis include, *inter alia*:  (i) "a breakdown in underwriting

5    standards for subprime mortgages"; and (ii) "a significant erosion of market

6    discipline by those involved in the securitization processes, including originators

7    [and] underwriters … related in part to failures to provide or obtain adequate risk

8    disclosures."

9         15.   Finally, commensurate with the exponential increases in delinquency

10   and default rates in the underlying mortgages and the Certificates' ratings collapse,

11   the value of the Certificates has plummeted.

12        16.   As a result of Countrywide's systemic disregard for its underwriting

13   guidelines, numerous statements set forth in the Offering Documents contained

14   material misstatements and omissions, including regarding: (i) the high quality of

15   the mortgage pools underlying the Issuing Trusts, resulting from the underwriting

16   standards employed to originate the mortgages, the value of the collateral securing

17   the mortgages, and the soundness of the appraisals used to arrive at this value; (ii)

18   the mortgages' loan-to-value ("LTV") ratios; and (iii) other criteria that were used

19   to qualify borrowers for mortgages.

20        17.   The widespread collapse of Countrywide mortgages not only resulted

21   in damage to Certificate investors but also drove Countrywide toward the brink of

22   bankruptcy.  To survive, Countrywide merged with Bank of America in a $4.1

23   billion stock exchange in January 2008.

24   **II.   JURISDICTION AND VENUE**

25        18.   The claims asserted herein arise under and pursuant to Sections 11,

26   12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o. This

27   Court has jurisdiction over the subject matter of this action pursuant to Section 22

28   of the Securities Act, 15 U.S.C. § 77v and 28 U.S.C. § 1331.

19.     Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(b) and (c). Many of the acts and conduct complained of herein occurred in substantial part in this District, including the dissemination of the Offering Documents, which contained material misstatements and omissions, complained of herein.  In addition, Defendants conduct business in this District.

20.     In connection with the acts and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications.

## III.   PROCEDURAL HISTORY

21.     The instant litigation was originally commenced on November 14, 2007 with the filing of *Luther v. Countrywide Home Loans Servicing LP, et al.,* Case No. BC380698 (Cal. Superior Court, Los Angeles County) ("Initial Luther Complaint").   The Initial Luther Complaint asserted claims for violations of Sections 11, 12(a)(2) and 15 of the Securities Act on behalf of a class of all purchasers of 188 Offerings of Countrywide MBS issued by Defendant CWALT between January 2005 and June 2007 pursuant to five separate Shelf Registration Statements. *See* **SAC Appendix Exhibit C**.  All 188 Offerings included in the Initial Luther Complaint are included in the FAC.  The Offerings included in the Initial Luther Complaint are set forth in **SAC Appendix Exhibit D**, annexed hereto. ***There were no PSLRA Certifications identifying the securities purchased by the named Plaintiffs accompanying the filing of the Initial Luther Complaint, nor did the Initial Luther Complaint include allegations of specific securities purchased by the named plaintiff.***

22.     Thereafter, on June 14, 2008, a second action was filed in California State Superior Court captioned *Washington State Plumbing & Pipefitting Pension Trust v. Countrywide Financial Corporation, et al.,* Case No. BC392571 (Cal. Superior Court, Los Angeles County) ("Washington State Action" or "Washington

State Complaint"). The named Plaintiff, Washington State Plumbing & Pipefitting Pension Trust ("Washington State") asserted claims on behalf of a class of all purchasers of 398 Offerings of Countrywide MBS issued between June 13, 2005 and December 27, 2007 pursuant to 19 separate Shelf Registration Statements. *See* **SAC Appendix Exhibit C**. Three hundred and ninety-six Offerings included in the Washington State Complaint were included in the FAC. The Offerings included in the Washington State Complaint are set forth in **SAC Appendix Exhibit D**, annexed hereto. *There were no PSLRA Certifications identifying the securities purchased by the named Plaintiffs accompanying the filing of the Washington State Complaint, nor did the Washington State Complaint include allegations identifying the specific securities purchased by the named plaintiffs.*

23. Thereafter, on September 9, 2008, an amended complaint was filed in *Luther* ("Amended Luther Complaint"), adding four additional plaintiffs to the action – Vermont Pension Investment Committee ("Vermont"), Mashreqbank, P.S.C. ("MASH"), Pension Trust Fund for Operating Engineers ("PTOE") and Operating Engineers Annuity Plan ("OEAP"). The named plaintiffs asserted claims on behalf of a class of all purchasers of 428 Offerings of Countrywide MBS issued between January 2005 and December 2007 pursuant to 20 separate Shelf Registration Statements. *See* **SAC Appendix Exhibit C**. All 427 Countrywide Offerings in the FAC were included in the Amended Luther Complaint. The Offerings included in the Amended Luther Complaint are set forth in **SAC Appendix Exhibit D**, annexed hereto. *There were no PSLRA Certifications identifying the securities purchased by the named Plaintiffs accompanying the filing of the Amended Luther Complaint, nor did the Amended Luther Complaint include allegations identifying the specific securities purchased by the named plaintiffs.*

24. After consolidation of the *Luther* and *Washington State* actions, a consolidated complaint was filed on October 16, 2008 (the "Luther Consolidated

1  Complaint"), naming Luther, Vermont, MASH, PTOE, OEAP and Washington

2  State as plaintiffs.  In addition, the Luther Consolidated Complaint added Maine

3  State Retirement System ("Maine") as an additional named plaintiff.  Vermont,

4  MASH, PTOE, OEAP, Maine and Washington State are collectively referred to

5  herein at times as the "Luther Plaintiffs."  These plaintiffs asserted claims on

6  behalf of a class of all purchasers of 428 Offerings of Countrywide MBS issued

7  between January 2005 and December 2007 pursuant to 20 separate Shelf

8  Registration Statements.  *See* **SAC Appendix Exhibit C**.   Again, all 427

9  Countrywide MBS Offerings in the FAC were included in the Luther Consolidated

10  Complaint.  The Offerings included in the Luther Consolidated Complaint are set

11  forth in **SAC Appendix Exhibit D**, annexed hereto.  ***There were no PSLRA***

12  ***Certifications identifying the securities purchased by the named Plaintiffs***

13  ***accompanying the filing of the Luther Consolidated Complaint, nor did the***

14  ***Luther Consolidated Complaint include allegations identifying the specific***

15  ***securities purchased by the named plaintiffs.***

16       25.   On January 14, 2010, after being dismissed due to lack of subject

17  matter jurisdiction in state court, counsel for the Luther Plaintiffs filed *Maine State*

18  *Retirement System v. Countrywide Financial Corporation, et al.,* Civ. No. 10-

19  00302-MRP-MAN (C.D. Cal. Jan. 14, 2010) (the "Federal Action" or "Federal

20  Complaint").  Maine State Retirement System was the sole named plaintiff in the

21  Federal Complaint, which set forth identical allegations regarding the same 428

22  Countrywide Offerings as the Luther Consolidated Complaint.  *See* **SAC**

23  **Appendix Exhibit C**.  All 427 Offerings in the FAC were included in the Federal

24  Complaint.  The Offerings included in the Federal Complaint are set forth in **SAC**

25  **Appendix Exhibit D**, annexed hereto.  ***Annexed to the Federal Complaint was***

26  ***the Certification of Maine State Retirement System which set forth the specific***

27  ***Countrywide MBS which Maine had purchased.***

28       26.   The Luther Plaintiffs also appealed their dismissal by the Superior

1   Court to the California Court of Appeals (Second Appellate District).  That appeal

2   remains pending.

3       27.    There were no PSLRA Certifications or allegations setting forth

4   precisely which Offerings the remaining five Luther Plaintiffs (*i.e.,* MASH, PTOE,

5   OEAP, Washington State and Vermont) purchased until the filing of the motions

6   for lead plaintiff in this action on April 2, 2010.  *See* Dkt. Nos. 86-89.  Moreover,

7   the specific Countrywide Certificates purchased by the named plaintiff in the

8   Luther Action, David Luther, have never been publicly disclosed or set forth in any

9   previous complaints in this action.  In fact, this information was only obtained

10  from Mr. Luther's counsel in response to a request from Plaintiffs' Counsel.

11  Ultimately, on May 17, 2010, IPERS was appointed as Lead Plaintiff in the action.

12      28.    On July 13, 2010, IPERS, along with additional named Plaintiffs

13  OCERS, OPERS and GBPHB, filed the FAC in the Federal Action.  The FAC

14  asserted claims on behalf of a class of all purchasers of 427 Offerings of

15  Countrywide MBS issued between January 2005 and December 2007 pursuant to

16  19 separate Shelf Registration Statements.  ***See* SAC Appendix Exhibit C**.  The

17  Offerings included in the FAC are set forth in **SAC Appendix Exhibit D**, annexed

18  hereto.  Thereafter, Defendants moved to dismiss the FAC.  By Opinion and Order

19  dated November 4, 2010, the Court granted Defendants' motions to dismiss with

20  leave to replead in accordance with the Countrywide Tolling Decision.  This SAC

21  is filed in compliance therewith.

22  **IV.    PARTIES**

23      **A.    Plaintiffs**

24      29.    **Iowa Public Employees' Retirement System** ("IPERS") is a public

25  pension fund for employees of the State of Iowa.  IPERS acquired its Certificates

26  pursuant and traceable to one or more Shelf Registration Statements, Original

27  Basic Prospectuses and later-filed Prospectus Supplements.   The Offering

28  Documents were rendered materially misleading as a consequence of the same

1  course of conduct with respect to each Offering by Defendants.  A Certification

2  documenting IPERS' transactions in the Certificates was filed with IPERS' motion

3  for appointment as lead plaintiff on April 2, 2010. *See* Dkt. No. 80.  As set forth in

4  ¶¶60-83, directly below, IPERS purchased the Certificates pursuant and traceable

5  to the Offering Documents and has been damaged thereby.

6      30.    **General Board of Pension and Health Benefits of the United**

7  **Methodist Church** ("GBPHB") is the pension fund for the active and retired

8  clergy and lay employees of the United Methodist Church.  GBPHB acquired its

9  Certificates pursuant and traceable to one or more Shelf Registration Statements,

10  Original Basic Prospectuses and later-filed Prospectus Supplements.  The Offering

11  Documents were rendered materially misleading as a consequence of the same

12  course of conduct with respect to each Offering by Defendants.  A Certification

13  documenting GBPHB's transactions in the Certificates was filed with GBPHB's

14  motion for appointment as lead plaintiff on April 2, 2010. *See* Dkt. No. 85.  As set

15  forth in ¶¶60-83, directly below, GBPHB purchased its Certificates pursuant and

16  traceable to the Offering Documents and has been damaged thereby.

17      31.    **Orange County Employees' Retirement System** ("OCERS") is a

18  public pension fund for the employees of Orange County, California.  OCERS

19  acquired its Certificates pursuant and traceable to one or more Shelf Registration

20  Statements, Original Basic Prospectuses and later-filed Prospectus Supplements.

21  The Offering Documents were rendered materially misleading as a consequence of

22  the same course of conduct with respect to each Offering by Defendants.  A

23  Certification documenting OCERS' transactions in the Certificates and willingness

24  to serve as a representative party in this litigation was annexed to and filed with the

25  FAC on July 13, 2010. *See* Dkt. No. 122.  As set forth in ¶¶60-83, directly below,

26  OCERS purchased its Certificates pursuant and traceable to the Offering

27  Documents and has been damaged thereby.

28

32.     **State of Oregon, by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board on behalf of the Oregon Public Employee Retirement Fund** ("OPERS") is a public pension fund for employees of the State of Oregon.  OPERS acquired its Certificates pursuant and traceable to one or more Shelf Registration Statements, Original Basic Prospectuses and later-filed Prospectus Supplements.  The Offering Documents were rendered materially misleading as a consequence of the same course of conduct with respect to each Offering by Defendants.  A Certification documenting OPERS' transactions in Countrywide MBS and willingness to serve as a representative party in this litigation was annexed to and filed with the FAC on July 13, 2010.  *See* Dkt. No. 122.  As set forth in ¶¶60-83, directly below, OPERS purchased its Certificates pursuant and traceable to the Offering Documents and has been damaged thereby.

**B.     Defendants**

33.     Plaintiffs allege that each and every Defendant is, to the maximum extent permitted by law, jointly and severally liable for the misconduct alleged in this Complaint.

**1.     <u>Countrywide Defendants</u>**

34.     Defendant **Countrywide Financial Corporation** ("CFC") was, at times relevant to this Complaint, a Delaware corporation with its principal executive offices located at 4500 Park Granada, Calabasas, California.  CFC was a holding company which, through its subsidiaries, was engaged in mortgage lending and other real estate finance related businesses, including mortgage banking, banking and mortgage warehouse lending, dealing in securities and insurance underwriting.  The Company operated through five business segments: Mortgage Banking, which originated, purchased, sold and serviced non-commercial mortgage loans nationwide; Banking, which took deposits and invested in mortgage loans and home equity lines of credit; Capital Markets, which operated

1   an institutional broker-dealer that primarily specialized in trading and underwriting

2   MBS; Insurance, which offered property, casualty, life and disability insurance as

3   an underwriter and as an insurance agency; and Global Operations, which licensed

4   and supported technology for mortgage lenders in the United Kingdom.   As

5   discussed below, CFC merged with and became Bank of America in 2008. The

6   Issuer Defendants, as set forth below, were controlled directly by the Individual

7   Defendants and CFC, including by the appointment of CFC executives as directors

8   and officers of these entities.   Revenues flowing from the issuance and sale of

9   MBS issued by CWALT, CWMBS, CWABS and CWHEQ and the Issuing Trusts

10  were passed through to CFC and consolidated into CFC's financial statements.

11  Defendant CFC, therefore, exercised actual day-to-day control over Defendants

12  CWALT, CWMBS, CWABS, and CWHEQ.   Defendant CFC was a named

13  defendant in the Washington State Complaint, the Amended Luther Complaint, the

14  Consolidated Luther Complaint, the Federal Complaint and the FAC.   These

15  complaints alleged that CFC's role relating to the creation and sale of MBS

16  violated the Securities Act.   The claims asserted in this SAC as they relate to CFC

17  were tolled under the Countrywide Tolling Decision for the Offerings set forth in

18  **SAC Appendix Exhibits E & F.**

19          35.    Defendant **Countrywide Securities Corporation** ("CSC") is a

20  broker-dealer within CFC.   According to CFC's Form 10-K for the year ended

21  December 31, 2007, filed with the SEC on February 29, 2008 ("2007 Form 10-K"),

22  CSC "primarily specializes in trading and underwriting MBS."   The financial

23  results of CSC are set forth in the Capital Markets section of CFC's financial

24  statements.   CFC further stated in its 2007 Form 10-K that it was "ranked fourth

25  among Non-Agency MBS Underwriters" for 2007.   Defendant CSC was a named

26  defendant in the Initial Luther Complaint, the Washington State Complaint, the

27  Amended Luther Complaint, the Consolidated Luther Complaint, the Federal

28  Complaint and the FAC.   These complaints alleged that CSC's conduct relating to

the creation and sale of MBS violated the Securities Act. The claims asserted in this SAC as they relate to CFC were tolled under the Countrywide Tolling Decision for the Offerings set forth in SAC Appendix Exhibits E & F. Defendant

36. **Countrywide Home Loans, Inc.** ("CHL") was, at times relevant to this Complaint, a direct wholly-owned subsidiary of CFC. CHL was engaged in the mortgage banking business, and originated, purchased, sold and serviced mortgage loans. CHL's principal executive offices were located at 4500 Park Granada, Calabasas, California, the same location as CFC. CHL served as the "Sponsor" or "Seller" of the Certificates, meaning that it played a central role in providing the pools of mortgage loans to the Issuing Trusts upon which the Certificates were based. Defendant CHL was a named defendant in the Initial Luther Complaint, the Washington State Complaint, the Amended Luther Complaint, the Consolidated Luther Complaint, the Federal Complaint and the FAC. These complaints alleged that CHL's conduct relating to the creation and sale of MBS violated the Securities Act. The claims asserted in this SAC as they relate to CHL were tolled under the Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix Exhibits E & F.**

37. Defendant **Countrywide Capital Markets** ("CCM") was, at times relevant to this Complaint, a direct wholly-owned subsidiary of CFC. CCM's principal executive offices were located at 4500 Park Granada, Calabasas, California, the same location as CFC. CCM operated through its two main wholly-owned subsidiaries, CSC and Countrywide Servicing Exchange. According to CFC's 2007 Form 10-K, "Capital Markets participates in both competitive bid and negotiated underwritings and performs underwriting services for CHL, Countrywide Bank and third parties." The financial results of CCM were set forth in the Capital Markets section of CFC's financial statements. Defendant CCM was a named defendant in the Consolidated Luther Complaint, the Federal Complaint and the FAC. These complaints alleged that CCM's conduct relating to the

creation and sale of MBS violated the Securities Act. The claims asserted in this SAC as they relate to CCM were tolled under the Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix Exhibits E & F.**

38.     Defendant **Bank of America Corp.** ("Bank of America") is a successor to Defendant CFC, having *de facto* merged with CFC. On July 1, 2008, Defendant CFC completed a merger with Red Oak Merger Corporation ("Red Oak"), a wholly-owned subsidiary of Bank of America, pursuant to the terms of an Agreement and Plan of Merger, dated as of January 11, 2008, by and among Bank of America, Red Oak, and CFC. The acquisition was through an all-stock transaction involving a Bank of America subsidiary that was created for the sole purpose of facilitating the acquisition of CFC. The Countrywide brand was retired shortly after the merger and currently CFC's former website redirects to the Bank of America website. Moreover, Bank of America has assumed CFC's liabilities, having paid to resolve other litigation arising from misconduct such as predatory lending allegedly committed by CFC. *See, e.g.,* Shayndi Raice and Marshall Eckblad, Countrywide's Mess Billed to Bank of America, *Wall St. J.* (June 7, 2010). Substantially all of Countrywide's assets were transferred to Bank of America on November 7, 2008, in connection with Countrywide's integration with Bank of America's other businesses and operations, along with certain of Countrywide's debt securities and related guarantees. CFC ceased filing its own financial statements in November 2008, and instead its assets and liabilities have been included in Bank of America's financial statements. Further, many of the same locations, employees, assets and business operations that were formerly CFC continue under the Bank of America Home Loans brand. CSC, CHL and CCM likewise are now part of Bank of America. As noted above, Defendant CFC, of which Bank of America is a successor in interest, was a named defendant in the Washington State Complaint, the Amended Luther Complaint, the Consolidated Luther Complaint, the Federal Complaint and the FAC. These complaints alleged

1  that CFC's conduct relating to the creation and sale of MBS violated the Securities

2  Act.  The claims asserted in this SAC as they relate to CFC were tolled under the

3  Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix**

4  **Exhibits E & F.**

5      39.    Defendant **NB Holdings Corporation** is one of the shell entities used

6  to effectuate the Bank of America-CFC merger, and is a successor to Defendant

7  CHL.  On July 3, 2008, Defendant CHL completed the sale of substantially all of

8  its assets to NB Holdings Corporation, a wholly-owned subsidiary of Bank of

9  America.  As noted above, Defendant CHL, of which Defendant NB Holdings is a

10  successor in interest, was a named defendant in the Initial Luther Complaint, the

11  Washington State Complaint, the Amended Luther Complaint, the Consolidated

12  Luther Complaint, the Federal Complaint and the FAC.  These complaints alleged

13  that CHL's conduct relating to the creation and sale of MBS violated the Securities

14  Act.  The claims asserted in this SAC as they relate to CHL were tolled under the

15  Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix**

16  **Exhibits E & F.**  CFC, CSC, CCM, CHL, Bank of America and NB Holdings

17  Corp. are collectively referred to as the "Countrywide Defendants."

18          **2.    The Issuer Defendants**

19      40.    Defendant CFC structured Defendants CWALT, CWMBS, CWABS,

20  and CWHEQ as limited purpose, wholly-owned, finance subsidiaries to facilitate

21  its issuance and sale of the MBS.  CWALT, CWMBS, CWABS, and CWHEQ

22  were controlled directly by CFC, including by the appointment of CFC executives

23  as directors and officers of these entities.  Revenues flowing from the issuance and

24  sale of MBS issued by CWALT, CWMBS, CWABS and CWHEQ and the Issuing

25  Trusts were passed through to CFC and consolidated into CFC's financial

26  statements.  Defendant CFC, therefore, exercised actual day-to-day control over

27  Defendants CWALT, CWMBS, CWABS, and CWHEQ.

28      41.    Defendant **CWALT, Inc.** was, at times relevant to this Complaint, a

Delaware corporation and a limited purpose financing subsidiary of CFC. CWALT's principal executive offices were located at 4500 Park Granada, Calabasas, California, the same location as CFC. Defendant CWALT served in the role of the "Depositor" in the securitization of the Issuing Trusts as identified in **SAC Appendix Exhibit A** and was an "Issuer" of the Certificates within the meaning of the Securities Act, 15 U.S.C. § 77b(a)(4), traceable to the following amended Registration Statements it filed with the SEC:

| File No. | Amount Registered | Issuer | Date | No. of Offerings in SAC |
|---|---|---|---|---|
| 333-110343 | $19,000,000,000 | CWALT, Inc. | January 13, 2004 | 0 |
| 333-117949 | $24,126,942,035 | CWALT, Inc. | September 23, 2004 | 0 |
| 333-123167 | $22,731,808,071 | CWALT, Inc. | April 21, 2005 | 2 |
| 333-125902 | $45,335,287,290 | CWALT, Inc. | July 25, 2005 | 0 |
| 333-131630 | $100,271,785,327 | CWALT, Inc. | March 6, 2006 | 0 |
| 333-140962 | $103,095,483,061 | CWALT, Inc. | April 24, 2007 | 0 |

Defendant CWALT was a named defendant in the Initial Luther Complaint, the Washington State Complaint, the Amended Luther Complaint, the Consolidated Luther Complaint, the Federal Complaint and the FAC. These complaints alleged that CWALT's conduct relating to the creation and sale of MBS violated the Securities Act. The claims asserted in this SAC as they relate to CWALT were tolled under the Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix Exhibits E & F.**

42.     Defendant **CWHEQ, Inc.** was, at times relevant to this Complaint, a Delaware corporation and a limited purpose financing subsidiary of CFC. CWHEQ's principal executive offices were located at 4500 Park Granada,

Calabasas, California, the same location as CFC. Defendant CWHEQ served in the role of the "Depositor" in the securitization of the Issuing Trusts as identified in **SAC Appendix Exhibit A** and was an "Issuer" of the Certificates within the meaning of the Securities Act, 15 U.S.C. § 77b(a)(4), traceable to the following amended Registration Statements it filed with the SEC:

| File No. | Amount Registered | Issuer | Date | No. of Offerings in SAC |
|---|---|---|---|---|
| 333-121378[2] | $20,000,000,000 | CWHEQ, Inc. | December 17, 2004 | 0 |
| 333-126790 | $30,685,000,000 | CWHEQ, Inc. | August 4, 2005 | 1 |
| 333-132375 | $26,572,949,813 | CWHEQ, Inc. | April 12, 2006 | 2 |
| 333-139891 | $31,717,192,508 | CWHEQ, Inc. | May 22, 2007 | 0 |

Defendant CWHEQ was a named defendant in the Washington State Complaint, the Amended Luther Complaint, the Consolidated Luther Complaint, the Federal Complaint and the FAC. These complaints alleged that CWHEQ's conduct relating to the creation and sale of MBS violated the Securities Act. The claims asserted in this SAC as they relate to CWHEQ were tolled under the Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix Exhibits E & F.**

43.    Defendant **CWABS, Inc.** was, at times relevant to this Complaint, a Delaware corporation and a limited purpose financing subsidiary of CFC. CWABS' principal executive offices were located at 4500 Park Granada, Calabasas, California, the same location as CFC. Defendant CWABS served in the role of the "Depositor" in the securitization of the Issuing Trusts as identified in **SAC Appendix Exhibit A** and was an "Issuer" of the Certificates within the

---

[2]    There were no Offerings included in the FAC issued pursuant to this Shelf Registration Statement.

meaning of the Securities Act, 15 U.S.C. § 77b(a)(4), traceable to the following amended Registration Statements it filed with the SEC:

| File No. | Amount Registered | Issuer | Date | No. of Offerings in SAC |
|---|---|---|---|---|
| 333-118926 | $60,598,485,932 | CWABS, Inc. | October 18, 2004 | 0 |
| 333-125164 | $46,598,657,434 | CWABS, Inc. | June 10, 2005 | 2 |
| 333-131591 | $34,327,892,523 | CWABS, Inc. | February 21, 2006 | 4 |
| 333-135846 | $40,000,000,000 | CWABS, Inc. | August 8, 2006 | 2 |
| 333-140960 | $113,336,555,700 | CWABS, Inc. | April 24, 2007 | 0 |

Defendant CWABS was a named defendant in the Washington State Complaint, the Amended Luther Complaint, the Consolidated Luther Complaint, the Federal Complaint and the FAC. These complaints alleged that CWABS' conduct relating to the creation and sale of MBS violated the Securities Act. The claims asserted in this SAC as they relate to CWABS were tolled under the Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix Exhibits E & F.**

44.     Defendant **CWMBS, Inc.** was, at times relevant to this Complaint, a Delaware corporation and a limited purpose financing subsidiary of CFC. CWMBS' principal executive offices were located at 4500 Park Granada, Calabasas, California, the same location as CFC. Defendant CWMBS served in the role of the "Depositor" in the securitization of the Issuing Trusts as identified in **SAC Appendix Exhibit A** and was an "Issuer" of the Certificates within the meaning of the Securities Act, 15 U.S.C. § 77b(a)(4), traceable to the following amended Registration Statements it filed with the SEC:

| File No. | Amount Registered | Issuer | Date | No. of Offerings in SAC |
|---|---|---|---|---|
| 333-100418 | $14,978,548,884 | CWMBS, Inc. | October 28, 2002 | 0 |
| 333-121249 | $20,863,464,518 | CWMBS, Inc. | February 8, 2005 | 0 |
| 333-125963 | $40,742,304,251 | CWMBS, Inc. | July 25, 2005 | 0 |
| 333-131662 | $60,846,662,430 | CWMBS, Inc. | March 6, 2006 | 1 |
| 333-140958 | $144,647,113,029 | CWMBS, Inc. | April 24, 2007 | 0 |

Defendant CWMBS was a named defendant in the Washington State Complaint, the Amended Luther Complaint, the Consolidated Luther Complaint, the Federal Complaint and the FAC. These complaints alleged that CWMBS' conduct relating to the creation and sale of MBS violated the Securities Act. The claims asserted in this SAC as they relate to CWMBS were tolled under the Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix Exhibits E & F.**

45.    CWALT, CWMBS, CWABS and CWHEQ are collectively referred to herein as the "Issuer Defendants."

### 3.    The Underwriter Defendants

46.    As set forth above, Defendant CSC is an affiliate of CFC, and acted as an underwriter for the Certificates identified in **SAC Appendix Exhibit B** within the meaning of the Securities Act, 15 U.S.C. § 77b(a)(11), and drafted and disseminated the Prospectus Supplements pursuant to which the MBS were sold to Plaintiffs. As set forth above, Defendant CSC now operates as Bank of America. Defendant CSC, was a named defendant in the Initial Luther Complaint, the Washington State Complaint, the Amended Luther Complaint, the Consolidated Luther Complaint, the Federal Complaint and the FAC. These complaints alleged that CSC's conduct relating to the creation and sale of MBS violated the Securities Act. The claims asserted in this SAC as they relate to CSC were tolled under the

No. 2:10-cv-00302: SECOND AMENDED CLASS ACTION COMPLAINT          21

1   Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix**
2   **Exhibits E & F.**

3       47.    Defendant **Deutsche Bank Securities Inc.** ("Deutsche Bank") acted
4   as an underwriter for the Certificates identified in **SAC Appendix Exhibit B**
5   within the meaning of the Securities Act, 15 U.S.C. § 77b(a)(11), and drafted and
6   disseminated the Prospectus Supplements pursuant to which the MBS were sold to
7   Plaintiffs.  Defendant Deutsche Bank was a named defendant in the Initial Luther
8   Complaint, the Washington State Complaint, the Amended Luther Complaint, the
9   Consolidated Luther Complaint, the Federal Complaint and the FAC.   These
10  complaints alleged that Deutsche Bank's conduct relating to the creation and sale
11  of MBS violated the Securities Act.  The claims asserted in this SAC as they relate
12  to Deutsche Bank were tolled under the Countrywide Tolling Decision for the
13  Offerings set forth in **SAC Appendix Exhibits E & F.**

14      48.    Defendant **UBS Securities LLC** ("UBS") acted as an underwriter for
15  the MBS identified in **SAC Appendix Exhibit B** within the meaning of the
16  Securities Act, 15 U.S.C. § 77b(a)(11), and drafted and disseminated the
17  Prospectus Supplements pursuant to which the MBS were sold to Plaintiffs.
18  Defendant UBS was a named defendant in the Initial Luther Complaint, the
19  Washington State Complaint, the Amended Luther Complaint, the Consolidated
20  Luther Complaint, the Federal Complaint and the FAC.  These complaints alleged
21  that UBS' conduct relating to the creation and sale of MBS violated the Securities
22  Act.  The claims asserted in this SAC as they relate to UBS were tolled under the
23  Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix**
24  **Exhibits E & F.**

25      49.    Defendant **Morgan Stanley & Co., Inc.** ("Morgan Stanley") acted as
26  an underwriter for the Certificates identified in **SAC Appendix Exhibit B** within
27  the meaning of the Securities Act, 15 U.S.C. § 77b(a)(11), and drafted and
28  disseminated the Prospectus Supplements pursuant to which the MBS were sold to

No. 2:10-cv-00302: SECOND AMENDED CLASS ACTION COMPLAINT      22

1    Plaintiffs. Defendant Morgan Stanley was a named defendant in the Initial Luther

2    Complaint, the Washington State Complaint, the Amended Luther Complaint, the

3    Consolidated Luther Complaint, the Federal Complaint and the FAC. These

4    complaints alleged that Morgan Stanley's conduct relating to the creation and sale

5    of MBS violated the Securities Act. The claims asserted in this SAC as they relate

6    to Morgan Stanley were tolled under the Countrywide Tolling Decision for the

7    Offerings set forth in **SAC Appendix Exhibits E & F.**

8        50.     Defendant **Goldman, Sachs & Co.** ("Goldman Sachs") acted as an

9    underwriter for the Certificates identified in **SAC Appendix Ex. B** within the

10    meaning of the Securities Act, 15 U.S.C. § 77b(a)(11), and drafted and

11    disseminated the Prospectus Supplements pursuant to which the MBS were sold to

12    Plaintiffs. Defendant Goldman Sachs was a named defendant in the Initial Luther

13    Complaint, the Washington State Complaint, the Amended Luther Complaint, the

14    Consolidated Luther Complaint, the Federal Complaint and the FAC. These

15    complaints alleged that Goldman Sachs' conduct relating to the creation and sale

16    of MBS violated the Securities Act. The claims asserted in this SAC as they relate

17    to Goldman Sachs were tolled under the Countrywide Tolling Decision for the

18    Offerings set forth in **SAC Appendix Exhibits E & F.**

19        51.     Defendant **RBS Securities Inc. f/k/a RBS Greenwich Capital d/b/a**

20    **Greenwich Capital Markets, Inc.** ("RBS") acted as an underwriter for the

21    Certificates identified in **SAC Appendix Exhibit B** within the meaning of the

22    Securities Act, 15 U.S.C. § 77b(a)(11), and drafted and disseminated the

23    Prospectus Supplements pursuant to which the MBS were sold to Plaintiffs.

24    Defendant RBS was a named defendant in the Initial Luther Complaint, the

25    Washington State Complaint, the Amended Luther Complaint, the Consolidated

26    Luther Complaint, the Federal Complaint and the FAC. These complaints alleged

27    that RBS' conduct relating to the creation and sale of MBS violated the Securities

28    Act. The claims asserted in this SAC as they relate to RBS were tolled under the

1  Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix**
2  **Exhibits E & F.**

3          52.     Defendant **Barclays Capital, Inc.** ("Barclays") acted as an
4  underwriter for the Certificates identified in **SAC Appendix Exhibit B** within the
5  meaning of the Securities Act, 15 U.S.C. § 77b(a)(11), and drafted and
6  disseminated the Prospectus Supplements pursuant to which the MBS were sold to
7  Plaintiffs.   Defendant Barclays was a named defendant in the Initial Luther
8  Complaint, the Washington State Complaint, the Amended Luther Complaint, the
9  Consolidated Luther Complaint, the Federal Complaint and the FAC.   These
10 complaints alleged that Barclays' conduct relating to the creation and sale of MBS
11 violated the Securities Act.   The claims asserted in this SAC as they relate to
12 Barclays were tolled under the Countrywide Tolling Decision for the Offerings set
13 forth in **SAC Appendix Exhibits E & F.**

14         53.     Defendant **HSBC Securities (USA) Inc.** ("HSBC") acted as an
15 underwriter for the Certificates identified in **SAC Appendix Exhibit B** within the
16 meaning of the Securities Act, 15 U.S.C. § 77b(a)(11), and drafted and
17 disseminated the Prospectus Supplements pursuant to which the MBS were sold to
18 Plaintiffs.   Defendant HSBC was a named defendant in the Washington State
19 Complaint, the Amended Luther Complaint, the Consolidated Luther Complaint,
20 the Federal Complaint and the FAC.   These complaints alleged that HSBC's
21 conduct relating to the creation and sale of MBS violated the Securities Act.   The
22 claims asserted in this SAC as they relate to HSBC were tolled under the
23 Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix**
24 **Exhibits E & F.**

25         54.     Defendants CSC, Deutsche Bank, UBS, Morgan Stanley, Goldman
26 Sachs, RBS, Barclays and HSBC are referred to herein as the "Underwriter
27 Defendants." "Underwriter Defendants" also includes Defendant Bank of America
28 as successor in interest as set forth above. Furthermore, Defendants CSC and UBS

1 | are referred to herein at times as the **"Section 12 Underwriter Defendants."**

2 | **4.    The Individual Defendants**

3 | 55.    Defendant **Stanford L. Kurland** ("Kurland") was, at relevant times,

4 | the Chief Executive Officer ("CEO"), President and Chairman of the Board of

5 | Directors for CWALT, CWMBS, CWABS and CWHEQ.   Defendant Kurland

6 | signed all seven (7) Shelf Registration Statements at issue herein.   Defendant

7 | Kurland was concurrently the Executive Vice President and Chief Operating

8 | Officer ("COO") of Defendant CFC.  Defendant Kurland was a named defendant

9 | in the Initial Luther Complaint, the Washington State Complaint, the Amended

10 | Luther Complaint, the Consolidated Luther Complaint, the Federal Complaint and

11 | the FAC.  These complaints alleged that Kurland's conduct relating to the creation

12 | and sale of MBS violated the Securities Act.  The claims asserted in this SAC as

13 | they relate to Kurland were tolled under the Countrywide Tolling Decision for the

14 | Offerings set forth in **SAC Appendix Exhibits E & F.**

15 | 56.    Defendant **David A. Spector** ("Spector") was, at relevant times, Vice

16 | President and a member of the Board of Directors for CWALT, CWMBS,

17 | CWABS and CWHEQ.  Defendant Spector signed all seven (7) Shelf Registration

18 | Statements at issue herein.   Defendant Spector was concurrently the Senior

19 | Managing Director of Secondary Marketing of Defendant CFC.   Defendant

20 | Spector was a named defendant in the Initial Luther Complaint, the Washington

21 | State Complaint, the Amended Luther Complaint, the Consolidated Luther

22 | Complaint, the Federal Complaint and the FAC.  These complaints alleged that

23 | Spector's conduct relating to the creation and sale of MBS violated the Securities

24 | Act.  The claims asserted in this SAC as they relate to Spector were tolled under

25 | the Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix**

26 | **Exhibits E & F.**

27 | 57.    Defendant **Eric P. Sieracki** ("Sieracki") was, at relevant times, the

28 | Executive Vice President, CFO, Treasurer and member of the Board of Directors

1   for CWALT, CWMBS, CWABS and CWHEQ.  Defendant Sieracki signed all

2   seven (7) Shelf Registration Statements at issue herein.  Defendant Sieracki was

3   concurrently the Executive Vice President and CFO of Defendant CFC.  Defendant

4   Sieracki was a named defendant in the Initial Luther Complaint, the Washington

5   State Complaint, the Amended Luther Complaint, the Consolidated Luther

6   Complaint, the Federal Complaint and the FAC.  These complaints alleged that

7   Sieracki's conduct relating to the creation and sale of MBS violated the Securities

8   Act.  The claims asserted in this SAC as they relate to Sieracki were tolled under

9   the Countrywide Tolling Decision for the Offerings set forth in **SAC Appendix**

10  **Exhibits E & F.**

11       58.    Defendants Kurland, Spector and Sieracki, are collectively referred to

12  hereinafter as the "Individual Defendants."

13            **5.    David A. Sambol**

14       59.    Defendant David A. Sambol ("Sambol") was, at relevant times, the

15  President and COO of Defendant CFC.  Defendant Sambol was a control person of

16  the Countrywide Defendants and the Issuing Defendants. .  Defendant Sambol was

17  a named defendant in the Washington State Complaint, the Amended Luther

18  Complaint, the Consolidated Luther Complaint, the Federal Complaint and the

19  FAC.  These complaints alleged that Sambol's role relating to the creation and sale

20  of MBS violated the Securities Act.  The claims asserted in this SAC as they relate

21  to Sambol were tolled under the Countrywide Tolling Decision for the Offerings

22  set forth in **SAC Appendix Exhibits E & F.**

23       **C.    The Issuing Trust Non-Parties**

24       The Issuing Trusts were set up by Defendants CWALT, CWMBS, CWABS

25  and CWHEQ to issue hundreds of billions of dollars worth of Certificates pursuant

26  to the Offering Documents.  **Exhibits A and B** of the SAC Appendix, annexed

27  hereto, identify (1) each Issuing Trust, (2) the stated value of the Certificates it

28  issued, (3) the Registration Statements and Prospectus Supplements pursuant to

No. 2:10-cv-00302: SECOND AMENDED CLASS ACTION COMPLAINT        26

1  which the Certificates were issued and sold, and (4) the identities of the

2  Underwriters, Sponsor/Seller, and Depositor/Issuer for each issuance.

3  **V.     TOLLING OF THE STATUTE OF LIMITATIONS**

4  **A.     Defendant CWALT Offerings**

5       60.     Defendant CWALT issued $163,499,734,519.00 of Countrywide

6  MBS in 226 separate Offerings between January 2005 and December 2007

7  pursuant to six Shelf Registration Statements, Original Basic Prospectuses and

8  later-filed Prospectus Supplements as set forth above in ¶41 and in the FAC at ¶34.

9  The Luther Consolidated Complaint, the Federal Complaint and the FAC all

10  included claims on behalf of 226 CWALT Offerings issued between January 2005

11  and December 2007. *See* **SAC Appendix Exhibit D.**

12       61.     Pursuant to the Court's November 4, 2010 Countrywide Tolling

13  Decision, the allegations set forth herein are limited to those Offerings which the

14  Luther Plaintiffs had standing to pursue while the case was pending in California

15  state court. As a result, Plaintiffs maintain standing to pursue Securities Act claims

16  on two (2) Countrywide MBS Offerings issued pursuant to one (1) CWALT

17  Registration Statement, as set forth in detail below.

18       62.     As set forth below, and also in the Certification annexed hereto,

19  OPERS purchased the **CWALT 2005-62 ("2005-62") Certificates, Class 2A1,**

20  pursuant and traceable to the misleading Offering Documents:

21

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWALT 2005-62, Class 2A1 | 8,446,540.84 | $1.0003 | August 4, 2006 | Deutsche Bank |

Plaintiff OPERS was named as a representative Plaintiff in the Federal Action for

the first time on July 13, 2010 when the FAC was filed. OPERS' Section 11 and

15 claims on behalf of all purchasers of the 2005-62 Certificates were tolled in

accordance with the Countrywide Tolling Decision since at least June 12, 2008

No. 2:10-cv-00302: SECOND AMENDED CLASS ACTION COMPLAINT          27

1   when Washington State was named as a plaintiff in the Washington State

2   Complaint.  According to the Certification filed with its motion for lead plaintiff

3   on April 2, 2010, Washington State purchased the 2005-62 Certificates and had

4   standing to assert Securities Act claims in connection therewith.  Each complaint

5   filed subsequent to the Washington State Complaint, including the Amended

6   Luther Complaint, the Luther Consolidated Complaint, the Federal Complaint and

7   the FAC, included a named plaintiff that had standing to assert the 2005-62 claims.

8   *See* **SAC Appendix Exhibit E.**   As such, Plaintiff OPERS derives tolling from

9   Washington State's standing to pursue those claims.[3]  *See* **SAC Appendix Exhibit**

10  **F.**  As of the date of the filing of the Federal Action in January 2010, the value of

11  the Certificates had diminished considerably, and according to OPERS' custodial

12  statements, was priced at $0.5718, causing OPERS to suffer injury as a result.

13       63.    As set forth below, and also in the Certification annexed hereto,

14  OPERS purchased the **CWALT 2005-72 ("2005-72") Certificates, Class A1,** on

15  the Offering and directly from the underwriter, Defendant UBS, pursuant to the

16  misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWALT 2005-72, Class A1 | 16,930,000.00 | $1.0000 | November 21, 2005 | UBS |
| CWALT 2005-72, Class A1 | 13,024,000.00 | $1.0000 | December 15, 2005 | UBS |

Plaintiff OPERS was named as a representative Plaintiff in the Federal Action for

the first time on July 13, 2010 when the FAC was filed.  OPERS' Sections 12(a)(2)

and 15 claims on behalf of all purchasers of the 2005-72 Certificates were tolled in

---

[3]    In addition to Washington State's standing to pursue the 2005-62 claims,
OPERS relies on the standing of MASH as of the filing of the Amended Luther
Complaint.  According to the Certification filed with its motion for lead plaintiff
on April 2, 2010, MASH purchased the 2005-62 Certificates and had standing to
assert Securities Act claims in connection therewith.

accordance with the Countrywide Tolling Decision since at least September 9, 2008 when PTOE was added as a named plaintiff to the Amended Luther Complaint. According to the Certification filed with its motion for lead plaintiff on April 2, 2010, PTOE purchased the 2005-72 Certificates and had standing to assert Securities Act claims in connection therewith. Each complaint filed subsequent to the Amended Luther Complaint, including the Luther Consolidated Complaint, the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2005-72 claims. *See* **SAC Appendix Exhibit E.** As such, Plaintiff OPERS derives tolling from PTOE's standing to pursue those claims. *See* **SAC Appendix Exhibit F.** As of the date of the filing of the Federal Action in January 2010, the value of the Certificates had diminished considerably, and according to OPERS' custodial statements, was priced at $0.6001, causing OPERS to suffer injury as a result.

**B.    Defendant CWHEQ Offerings**

64.    Defendant CWHEQ issued $50,303,553,300.00 of Countrywide MBS in 39 separate Offerings between August 26, 2005 and August 14, 2007 pursuant to four Shelf Registration Statements, Original Basic Prospectuses and later-filed Prospectus Supplements as set forth above in ¶42 and in the FAC at ¶35. All 39 Offerings were included for the first time in the Washington State Complaint. *See* **SAC Appendix Exhibit D.**

65.    Pursuant to the Court's Countrywide Tolling Decision, the allegations set forth herein are limited to those CWHEQ Offerings which the Luther Plaintiffs had standing to pursue while the case was pending in California state court. As a result, Plaintiffs maintain standing to pursue Securities Act claims on three (3) Countrywide MBS Offerings issued pursuant to two (2) CWHEQ Registration Statements, as set forth in detail below.

66.    As set forth below, and also in the Certification annexed hereto, OPERS purchased the **CWL 2005-H ("2005-H") Certificates, Class 2A,** on the

No. 2:10-cv-00302: SECOND AMENDED CLASS ACTION COMPLAINT          29

Offering and directly from the underwriter, Defendant CSC, pursuant to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2005-H, Class 2A | 1,200,000 | $1.0000 | September 27, 2005 | CSC |

Plaintiff OPERS was named as a representative Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed. OPERS' Sections 12(a)(2) and 15 claims on behalf of all purchasers of the 2005-H Certificates were tolled in accordance with the Countrywide Tolling Decision since at least September 9, 2008 when PTOE was added as a named plaintiff to the Amended Luther Complaint. According to the Certification filed with its motion for lead plaintiff on April 2, 2010, PTOE purchased the 2005-H Certificates and had standing to assert Securities Act claims in connection therewith. Each complaint filed subsequent to the Amended Luther Complaint, including the Luther Consolidated Complaint, the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2005-H Claims. *See* **SAC Appendix Exhibit E.** As such, Plaintiff OPERS derives tolling from PTOE's standing to pursue those claims. *See* **SAC Appendix Exhibit F.** OPERS disposed of the 2005-H Certificates in the open market on October 19, 2007 at a price of $0.9700, and suffered injury as a result.

67. As set forth below, and also in the Certification annexed hereto, IPERS purchased the **CWL 2006-S3 ("2006-S3") Certificates, Class A2**, on the Offering and directly from the Underwriter, Defendant CSC, pursuant to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2006-S3, Class A2 | 1,999,956.46 | $1.0000 | June 16, 2006 | CSC |

Lead Plaintiff IPERS was named as a representative Plaintiff in the Federal Action

for the first time on July 13, 2010, when the FAC was filed.  IPERS' Sections 11, 12(a)(2) and 15 claims on behalf of all purchasers of the 2006-S3 Certificates were tolled in accordance with the Countrywide Tolling Decision since at least June 12, 2008 – the date the Washington State Complaint was filed.  According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Washington State purchased the 2006-S3 Certificates and had standing to assert Securities Act claims in connection therewith.   Each complaint filed subsequent to the Washington State Complaint, including the Amended Luther Complaint, the Luther Consolidated Complaint, the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2006-S3 claims.  *See* **SAC Appendix Exhibit E.**  As such, IPERS derives tolling from Washington State's standing to pursue those claims.[4]  *See* **SAC Appendix Exhibit F.**   As of the date of the filing of the Federal Action in January 2010, the value of the Certificates had diminished considerably, and according to IPERS' custodial statements, was priced at $0.6300, causing IPERS to suffer injury as a result.

68.   As set forth below, and also in the Certification annexed hereto, IPERS purchased the **CWL 2006-S9 ("2006-S9") Certificates, Class A2,** on the Offering and directly from the Underwriter, Defendant CSC, pursuant to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2006-S9, Class A2 | 1,845,000.00 | $1.0000 | December 14, 2006 | CSC |

Lead Plaintiff IPERS was named as a representative Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed.  IPERS' Sections 11,

---

[4]      In addition to Washington State's standing to pursue the 2006-S3 claims, IPERS relies on the standing of Vermont as of the filing of the Amended Luther Complaint.  According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Vermont purchased the 2006-S3 Certificates and had standing to assert Securities Act claims in connection therewith.

No. 2:10-cv-00302: SECOND AMENDED CLASS ACTION COMPLAINT          31

1    12(a)(2) and 15 claims on behalf of all purchasers of the 2006-S9 Certificates were

2    tolled in accordance with the Countrywide Tolling Decision since at least June 12,

3    2008 – the date the Washington State Complaint was filed.   According to the

4    Certification filed with its motion for lead plaintiff on April 2, 2010, Washington

5    State purchased the 2006-S9 Certificates and had standing to assert Securities Act

6    claims in connection therewith.     Each complaint filed subsequent to the

7    Washington State Complaint, including the Amended Luther Complaint, the

8    Luther Consolidated Complaint, the Federal Complaint and the FAC, included a

9    named plaintiff that had standing to assert the 2006-S9 claims.   *See* **SAC**

10   **Appendix Exhibit E.**   As such, IPERS derives tolling from Washington State's

11   standing to pursue those claims.[5]   *See* **SAC Appendix Exhibit F.**   As of the date

12   of the filing of the Federal Action in January 2010, the value of the Certificates had

13   diminished considerably, and according to IPERS' custodial statements, was priced

14   at $0.6318, causing IPERS to suffer injury as a result.

15          **C.      Defendant CWABS Offerings**

16          69.     Defendant CWABS issued $82,129,061,400.00 of Countrywide MBS

17   in 76 separate Offerings between June 2005 and October 2007 pursuant to four

18   Shelf Registration Statements, Original Basic Prospectuses and later-filed

19   Prospectus Supplements as set forth above in ¶43 and in the FAC at ¶36.   All 76

20   Offerings were included, for the first time, in the Washington State Complaint and

21   thereafter included in the Luther Amended Complaint, Consolidated Luther

22   Complaint, Federal Complaint and FAC.   *See* **SAC Appendix Exhibit D.**

23          70.     Pursuant to the Court's Countrywide Tolling Decision, the allegations

24   set forth herein are limited to those CWABS Offerings which the Luther Plaintiffs

25   had standing to pursue while the case was pending in California state court.   As a

26   _____

27   [5]      In addition to Washington State's standing to pursue the 2006-S9 claims,
     IPERS relies on the standing of Vermont as of the filing of the Amended Luther
     Complaint.   According to the Certification filed with its motion for lead plaintiff
28   on April 2, 2010, Vermont purchased the 2006-S9 Certificates and had standing to
     assert Securities Act claims in connection therewith.

result, Plaintiffs maintain standing to pursue Securities Act claims on eight (8) Countrywide MBS Offerings issued pursuant to three (3) CWABS Registration Statements, as set forth in detail below.

71.    As set forth below, and also in the Certification annexed hereto, GBPHB purchased the **CWL 2005-11 ("2005-11") Certificates, Class AF3**, on the Offering and directly from the Underwriter, Defendant CSC, pursuant to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2005-11, Class AF3 | 1,000,000.00 | $1.0000 | September 12, 2005 | CSC |

Plaintiff GBPHB was named as a representative Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed.  GBPHB's Sections 12(a)(2) and 15 claims on behalf of all purchasers of the 2005-11 Certificates were tolled in accordance with the Countrywide Tolling Decision since at least September 9, 2008 when PTOE was added as a named plaintiff to the Amended Luther Complaint.  According to the Certification filed with its motion for lead plaintiff on April 2, 2010, PTOE purchased the 2005-11 Certificates and had standing to assert Securities Act claims in connection therewith.  Each complaint filed subsequent to the Amended Luther Complaint, including the Luther Consolidated Complaint, the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2005-11 claims.  *See* **SAC Appendix Exhibit E.**  As such, Plaintiff GBPHB derives tolling from PTOE's standing to pursue those claims.  *See* **SAC Appendix Exhibit F.**  GBPHB disposed of the 2005-11 Certificates in the open market on September 28, 2009 at a price of $0.7500, and suffered injury as a result.

72.    As set forth below, and also in the Certification annexed hereto, OCERS purchased the **CWHL 2005-HYB9 ("2005-HYB9") Certificates, Class 3A2A**, on the Offering and directly from the Underwriter, Defendant CSC,

pursuant to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWHL 2005-HYB9, Class 3A2A | 400,000.00 | $0.9972 | November 28, 2005 | CSC |

73.     Plaintiff OCERS was named as the Lead Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed. OCERS' Section 12(a)(2) and Section 15 claims on behalf of all purchasers of the 2005-HYB9 Certificates were tolled in accordance with the Countrywide Tolling Decision since at least October 16, 2008 when Maine was added as a named plaintiff to the Luther Consolidated Complaint. According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Maine purchased the 2005-HYB9 Certificates and had standing to assert Securities Act claims in connection therewith. Each complaint filed subsequent to the Luther Consolidated Complaint, including the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2005-HYB9 claims. *See* **SAC Appendix Exhibit E.**   As such, Plaintiff OCERS derives tolling from Maine's standing to pursue those claims. *See* **SAC Appendix Exhibit F.**   As of the date of the filing of the Federal Action in January 2010, the value of the Certificates had diminished considerably, and according to OCERS' custodial statements, was priced at $0.6772, causing OCERS to suffer injury as a result.

74.     As set forth below, and also in the Certification annexed hereto, GBPHB purchased the **CWL 2006-3 ("2006-3") Certificates, Class 2A2** pursuant and traceable to the misleading Offering Documents, and **Class M2** on the Offering and directly from the Underwriter, Defendant CSC, pursuant to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2006-3, Class 2A2 | 1,030,000.00 | $0.9938 | July 23, 2007 | CSC |
| CWL 2006-3, Class M2 | 2,500,000.00 | $1.0000 | February 16, 2006 | CSC |

Plaintiff GBPHB was named as a representative Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed. GBPHB's Sections 11, 12(a)(2) and 15 claims on behalf of all purchasers of the 2006-3 Certificates were tolled in accordance with the Countrywide Tolling Decision since at least October 16, 2008 when Maine was added as a named plaintiff to the Luther Consolidated Complaint. According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Maine purchased the 2006-3 Certificates and had standing to assert Securities Act claims in connection therewith. Each complaint filed subsequent to the Luther Consolidated Complaint, including the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2006-3 claims. *See* **SAC Appendix Exhibit E.** As such, Plaintiff GBPHB derives tolling from Maine's standing to pursue those claims. *See* **SAC Appendix Exhibit F.** As of the date of the filing of the Federal Action in January 2010, the values of the Class 2A2 and Class M2 Certificates had diminished considerably, and according to GBPHB's custodial statements, were priced at $0.8216 and $0.0383, respectively, causing GBPHB to suffer injury as a result.

75.    As set forth below, and also in the Certification annexed hereto, GBPHB purchased the **CWL 2006-6 ("2006-6") Certificates, Class 2A2** pursuant and traceable to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2006-6, Class 2A2 | 1,290,000.00 | $0.9938 | July 23, 2007 | CSC |

Plaintiff GBPHB was named as a representative Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed. GBPHB's Sections 11 and

No. 2:10-cv-00302: SECOND AMENDED CLASS ACTION COMPLAINT          35

15 claims on behalf of all purchasers of the 2006-6 Certificates were tolled in accordance with the Countrywide Tolling Decision since at least October 16, 2008 when Maine was added as a named plaintiff to the Luther Consolidated Complaint. According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Maine purchased the 2006-6 Certificates and had standing to assert Securities Act claims in connection therewith. Each complaint filed subsequent to the Luther Consolidated Complaint, including the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2006-6 claims. ***See* SAC Appendix Exhibit E.** As such, Plaintiff GBPHB derives tolling from Maine's standing to pursue those claims. ***See* SAC Appendix Exhibit F.** As of the date of the filing of the Federal Action in January 2010, the value of the Certificates had diminished considerably, and according to GBPHB's custodial statements, was priced at $0.7697, causing GBPHB to suffer injury as a result.

76. As set forth below, and also in the Certification annexed hereto, GBPHB purchased the **CWL 2006-9 ("2006-9") Certificates, Class 1AF3 and Class 1AF6** pursuant and traceable to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2006-9, Class 1AF3 | 1.000,000.00 | $1.0048 | April 27, 2007 | BOAS |
| CWL 2006-9, Class 1AF6 | 500,000.00 | $1.0150 | April 5, 2007 | JPMSI |

Plaintiff GBPHB was named as a representative Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed. GBPHB's Sections 11 and 15 claims on behalf of all purchasers of the 2006-9 Certificates were tolled in accordance with the Countrywide Tolling Decision since at least September 9, 2008 when Vermont was added as an additional named plaintiff to the Amended Luther Complaint. According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Vermont purchased the 2006-9 Certificates and had standing to assert Securities Act claims in connection therewith. Each complaint

filed subsequent to the Amended Luther Complaint, including the Luther Consolidated Complaint, the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2006-9 claims.  **See SAC Appendix Exhibit E.**  As such, Plaintiff GBPHB derives tolling from Vermont's standing to pursue those claims.  **See SAC Appendix Exhibit F.**  GBPHB disposed of the 2006-9 Class 1AF3 Certificates in the open market on April 15, 2009 at a price of $0.3075, and suffered injury as a result.  Furthermore, GBPHB disposed of the 2006-9 Class 1AF6 Certificates in the open market on March 27, 2009 at a price of $0.3300, and suffered injury as a result.

77.   As set forth below, and also in the Certification annexed hereto, GBPHB purchased the **CWL 2006-11 ("2006-11") Certificates, Class 1AF3 and Class 1AF4** pursuant and traceable to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2006-11, Class 1AF3 | 595,000.00 | $0.9900 | September 14, 2007 | BOAS |
| CWL 2006-11, Class 1AF4 | 1,000,000.00 | $1.0264 | September 28, 2006 | Stifel Nicolaus |

Plaintiff GBPHB was named as a representative Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed.  GBPHB's Sections 11 and 15 claims on behalf of all purchasers of the 2006-11 Certificates were tolled in accordance with the Countrywide Tolling Decision since at least June 12, 2008 when Washington State was named as a plaintiff in the Washington State Complaint.  According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Washington State purchased the 2006-11 Certificates and had standing to assert Securities Act claims in connection therewith.  Each complaint filed subsequent to the Washington State Complaint, including the Amended Luther Complaint, the Luther Consolidated Complaint, the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2006-11 claims.

1   *See* **SAC Appendix Exhibit E.**  As such, Plaintiff GBPHB derives tolling from

2   Washington State's standing to pursue those claims.[6]  *See* **SAC Appendix Exhibit**

3   **F.**  GBPHB disposed of the 2006-11 Class 1AF3 and 1AF4 Certificates in the open

4   market on April 23, 2009 at prices of $0.3200 and $0.2244, respectively, and

5   suffered injury as a result.

6       78.    As set forth below, and also in the Certification annexed hereto,

7   GBPHB purchased the **CWL 2006-15 ("2006-15") Certificates, Class A1** on the

8   Offering and directly from the Underwriter, Defendant CSC, pursuant to the

9   misleading Offering Documents, and **Class A6** pursuant and traceable to the

10  misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2006-15, Class A1 | 1,400,000.00 | $1.0000 | August 23, 2006 | CSC |
| CWL 2006-15, Class A1 | 224,912.98 | $0.9964 | October 4, 2007 | JPMSI |
| CWL 2006-15, Class A6 | 350,000.00 | $1.0086 | January 3, 2007 | BOAS |

17  Plaintiff GBPHB was named as a representative Plaintiff in the Federal Action for

18  the first time on July 13, 2010 when the FAC was filed.  GBPHB's Sections 11,

19  12(a)(2) and 15 claims on behalf of all purchasers of the 2006-15 Certificates were

20  tolled in accordance with the Countrywide Tolling Decision since at least June 12,

21  2008 when Washington State was named as a plaintiff in the Washington State

22  Complaint.  According to the Certification filed with its motion for lead plaintiff

23  on April 2, 2010, Washington State purchased the 2006-15 Certificates and had

24  standing to assert Securities Act claims in connection therewith.  Each complaint

25  filed subsequent to the Washington State Complaint, including the Amended

---

26  [6]    In addition to Washington State's standing to pursue the 2006-11 claims,
27  GBPHB relies on the standing of Vermont as of the filing of the Amended Luther
    Complaint.  According to the Certification filed with its motion for lead plaintiff
28  on April 2, 2010, Vermont purchased the 2006-11 Certificates and had standing to
    assert Securities Act claims in connection therewith.

Luther Complaint, the Luther Consolidated Complaint, the Federal Complaint and the FAC, included a named plaintiff that had standing to assert the 2006-15 claims. *See* **SAC Appendix Exhibit E.** As such, Plaintiff GBPHB derives tolling from Washington State's standing to pursue those claims.[7] *See* **SAC Appendix Exhibit F.** As of the date of the filing of the Federal Action in January 2010, the value of the Class A1 Certificates had diminished considerably, and according to GBPHB's custodial statements, was priced at $0.9698, causing GBPHB to suffer injury as a result. GBPHB disposed of the 2006-15 Class A6 Certificates in the open market on April 8, 2009 at a price of $0.4113, and suffered injury as a result.

79.    As set forth below, and also in the Certification annexed hereto, GBPHB purchased the **CWL 2006-24 ("2006-24") Certificates, Class 2A1** pursuant and traceable to the misleading Offering Documents:

| Certificates Purchased | Units Purchased | Price Per Unit | Date of Purchase(s) | Purchased From |
|---|---|---|---|---|
| CWL 2006-24, Class 2A1 | 385,809.66 | $0.9927 | October 12, 2007 | Morgan Stanley |

80.    Plaintiff GBPHB was named as a representative Plaintiff in the Federal Action for the first time on July 13, 2010 when the FAC was filed. GBPHB's Sections 11 and 15 claims on behalf of all purchasers of the 2006-24 Certificates were tolled in accordance with the Countrywide Tolling Decision since at least September 9, 2008 when Vermont was added as an additional named plaintiff to the Amended Luther Complaint. According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Vermont purchased the 2006-24 Certificates and had standing to assert Securities Act claims in connection therewith. Each complaint filed subsequent to the Amended Luther Complaint, including the Luther Consolidated Complaint, the Federal Complaint and the FAC,

---

[7]    In addition to Washington State's standing to pursue the 2006-15 claims, GBPHB relies on the standing of Vermont as of the filing of the Amended Luther Complaint. According to the Certification filed with its motion for lead plaintiff on April 2, 2010, Vermont purchased the 2006-15 Certificates and had standing to assert Securities Act claims in connection therewith.