LINKS: 292, 293, 294, 295, 296, 297

1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10

11   MAINE STATE RETIREMENT              Case No. 2:10-CV-0302 MRP
     SYSTEM, individually and on behalf of    (MANx)
12   all others similarly situated,

13                        Plaintiff,     **ORDER RE MOTIONS TO
                                         DISMISS THE THIRD AMENDED**
           v.                            **COMPLAINT**
14
     COUNTRYWIDE FINANCIAL
15   CORPORATION, et al.

16                        Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

# I.   INTRODUCTION & BACKGROUND

Plaintiffs filed this putative class action individually and "on behalf of a class of all persons or entities who purchased or otherwise acquired beneficial interests in" certain mortgage backed securities ("MBS") in the form of Certificates[1] issued in nine separate Offerings between October 2005 and December 2006.  The claims are brought against the Defendants pursuant to Sections 11, 12 and 15 of the Securities Act of 1933.  The operative complaint, which is now the Third Amended Complaint ("TAC"), ECF No. 281, asserts causes of action against several Countrywide entities (the "Countrywide Defendants"),[2] Countrywide special-purpose issuing trusts ("Issuer Defendants"),[3] several current or former Countrywide officers ("Individual Defendants"[4] and David A. Sambol), and a number of banks that served as underwriters on one or more of the offerings at issue ("Underwriter Defendants").[5]

---

[1] A Certificate is a document that shows ownership of a mortgage backed security issued pursuant to a registration statement and prospectus supplement in a public offering. "Certificates entitled investors to receive monthly distributions of interest and principal from the Issuing Trusts derived from cash flows from borrower repayment of the mortgage loans."  TAC ¶ 6.  Each Certificate represents a different tranche within an offering.  Because each Certificate is a document evidencing ownership of a specific tranche, the Court uses the terms "tranche" and "Certificate" somewhat interchangeably.  An Offering refers to the process by which the Certificates were sold to Plaintiffs.  TAC ¶ 1.

[2] The Countrywide Defendants are Countrywide Financial Corporation ("CFC"), Countrywide Securities Corporation ("CSC"), Countrywide Home Loans ("CHL"), and Countrywide Capital Markets ("CCM").  TAC ¶ 34–37.

[3] The Issuer Defendants are CWALT, CWMBS, CWABS, and CWHEQ.  TAC ¶ 43.

[4] The Individual Defendants are Stanford Kurland, David Spector and Eric Sieracki.  TAC ¶ 55.

[5] The Underwriter Defendants include: CSC; Deutsche Bank Securities Inc.; UBS Securities LLC ("UBS"); Morgan Stanley & Co., Inc.; Goldman, Sachs & Co.; RBS Securities Inc. f/k/a RBS Greenwich Capital d/b/a Greenwich Capital Markets, Inc.; Barclays Capital, Inc.; and HSBC Securities (USA) Inc.  TAC ¶ 51.

1       The Countrywide Defendants moved to dismiss the TAC as to three of the

2  offerings asserted therein.  ECF No. 294.  The other defendants joined in that

3  motion.  ECF Nos. 292, 293, 295, 296, 297.  Specifically, Defendants argue that

4  the TAC does not state a claim as to CWHEL 2005-H 2A, CWHL 2005-HYB9

5  3A2A, or CWL 2006-S3 A2 because Plaintiffs committed to purchase those

6  Certificates before the respective prospectus supplements had issued.  Countrywide

7  Defs' Mtn to Dismiss the TAC at 6.  Plaintiffs purchased their CWHEL 2005-H

8  2A and CWHL 2005-HYB9 3A2A Certificates one day before the respective

9  prospectus supplements issued.  *Id.*  Plaintiffs purchased their CWL 2006-S3

10  Certificates ten days before the prospectus supplement issued.  *Id.*  Defendants

11  argue that this makes reliance a factual impossibility, meaning that the named

12  plaintiffs have no claim.  If the named plaintiffs have no claim then they lack

13  standing to assert claims on behalf of others; since it is too late to add new named

14  plaintiffs, the TAC would have to be dismissed with respect to the three

15  Certificates.

16       The Court addressed a similar argument in its recent order in the *State

17  Treasurer of Michigan v. Countrywide Fin. Corp.* ("*Michigan*") case.  No. 11-CV-

18  00809-MRP-MAN, ECF No. 69.  There the Court accepted, solely for the sake of

19  argument, that the factual impossibility of reliance might require dismissal of a §

20  11 claim.  The Court held that reliance was not factually impossible on the facts of

21  that case, and so allowed the plaintiff's claim to proceed.  The Court reaches the

22  same result here, though it takes the opportunity to expand and clarify the

23  reasoning presented in *Michigan*.  For the reasons set out herein, Defendants'

24  Motions to Dismiss are **DENIED** in their entirety.

**II.    MOTION TO DISMISS STANDARD**

26       A Rule 12(b)(6) motion to dismiss should be granted when, assuming the

27  truth of the plaintiff's allegations, the complaint fails to state a claim for which

28  relief can be granted.  *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140

3

1   (9th Cir. 1996).  In deciding whether the plaintiff has stated a claim, the Court

2   must assume the plaintiff's allegations are true and draw all reasonable inferences

3   in the plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.

4   1987).  However, the Court is not required to accept as true "allegations that are

5   merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

6   *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A court reads

7   the complaint as a whole, together with matters appropriate for judicial notice,

8   rather than isolating allegations and taking them out of context.  *Tellabs, Inc. v.*

9   *Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

10                        **III.     DISCUSSION**

11  **A. RULE 12(g)(2)**

12       The TAC is the fourth complaint that Plaintiffs have filed in this action.

13  Plaintiffs argue that the factual bases for Defendants' present motion appeared in at

14  least two prior complaints, but the present round of briefing is the first time that

15  Defendants have raised the question of reliance with respect to these three

16  offerings specifically.  Plaintiffs' Opposition to Motion to Dismiss ("Opp") at 10.

17  Plaintiffs claim that this tardiness violates Rule 12(g)(2) and that Defendants'

18  motion should therefore be dismissed.  Rule 12(g)(2) states that "[e]xcept as

19  provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must

20  not make another motion under this rule raising a defense or objection that was

21  available to the party but omitted from its earlier motion."  Fed. R. Civ. P.

22  12(g)(2).  Defendants disagree with Plaintiffs on several grounds, urging (i) that

23  they have previously raised a 12(b)(6) defense and that reliance is merely a new

24  argument in support of an old defense, (ii) that they have previously raised the

25  issue of reliance, and (iii) that the TAC is a new complaint and so therefore Rule

26  12(g) does not apply.  The Court finds it unnecessary to address the first two

27  grounds.  "[A]n amended complaint ordinarily supersedes a prior complaint, and it

28  renders it of no legal effect. . . . "  *International Controls Corp. v. Vesco*, 556 F.2d

4

1   665, 668 (2d Cir. 1977); *see also, Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)

2   ("The amended complaint supersedes the original, the latter treated thereafter as

3   non-existent."). "As such, the [third] amended complaint is considered to be a new

4   complaint, and defendants are entitled to move to dismiss plaintiffs' [third]

5   amended complaint for failure to state a claim for relief." *Migliaccio v. Midland*

6   *Nat. Life Ins. Co.*, No. CV 06-1007 CASMANX, 2007 WL 316873, at *3 (C.D.

7   Cal. 2007); *accord Centaur Class. Convertible Arbitrage Fund v. Countrywide*

8   *Fin. Corp.*, No. CV10-05699-MRP, 2011 WL 2504637, at n.5 (C.D. Cal. June 21,

9   2011).

10   **B.  THE *APA EXCELSIOR* LINE OF CASES DOES NOT REQUIRE DISMISSAL**

11          The text of Section 11 does not include reliance as an element.  15 U.S.C. §

12   77k(a). *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d. 1132, 1162

13   (C.D. Cal. 2008) ("Reliance is not an element."). Courts interpreting § 11 have

14   been unsure whether the absence of reliance in the text of the statute means (i) that

15   it is not an element or (ii) that reliance is strongly presumed and therefore need not

16   be pled. Finding it unnecessary to resolve the question, this Court has equivocated

17   in the past. *Id*. at 1162 ("Reliance is not an element); *id.* at n.34 ("[R]eliance is

18   presumed" unless one of two exceptions is met).

19          Defendants argue that reliance is an element and that a § 11 case must be

20   dismissed when reliance is impossible on the face of the complaint. They

21   primarily rely on a case from the Eleventh Circuit, *APA Excelsior III L.P. v.*

22   *Premiere Tech., Inc.*, to support this position. 476 F.3d 1261 (11th Cir. 2007). In

23   *APA Excelsior*, the plaintiff entered into a binding merger agreement which called

24   for the later registration and exchange of shares. *Id.* at 1264–65. Two months

25   later, the defendant filed a registration statement, exchanged the shares, and

26   completed the merger. *Id.* The stock price dropped six months later. Plaintiff

27   sued under § 11, alleging that there were misstatements in the registration

28   statement. *Id.* at 1265. Whether or not there were false statements in the

1   registration statement, the *APA Excelsior* plaintiff could not possibly have relied

2   on them–it had made a binding commitment to purchase the shares two months

3   before those statements were ever made.  The court examined the legislative

4   history of § 11 and held that reliance is an element, albeit one which is ordinarily

5   presumed.  *Id.* at 1272–77.  Finding reliance impossible and concluding that no

6   plaintiff is entitled to an impossible presumption, the court granted summary

7   judgment.  *Id.* at 1267.  The Eleventh Circuit reached the same conclusion and

8   upheld the dismissal.  *Id.* at 1272–77.

9        The *APA Excelsior* court was faced with facts that conclusively rebutted

10  reliance.  To allow recovery in that scenario would have defied logic, as there was

11  no possible link between the misrepresentation and the plaintiff's decision to buy.

12  However, reliance is not an explicit element of a § 11 claim, and this Circuit has

13  given no indication that it considers reliance to be required for such a claim.

14  Recognizing the statute's ambiguity, courts have applied the rule of *APA Excelsior*

15  while grounding it in some other doctrinal basis.  The three principal doctrines are

16  tracing, materiality, and loss causation, and the Court will address each briefly.

17  The cases cited below share similar facts to *APA Excelsior*: a plaintiff agrees to

18  purchase unregistered securities, the securities are later registered pursuant to a

19  misleading registration statement, and the plaintiff exchanges its unregistered

20  securities for registered ones.  This exchange is referred to as an *Exxon Capital*

21  exchange when it involves non-convertible debt securities originally sold under

22  Rule 144A.  As discussed below, there are clear differences between the present

23  factual situation and an *Exxon Capital* exchange.

24        In *In re Healthsouth Corp. Sec. Litig.*, the court based its decision on tracing,

25  the requirement that a plaintiff acquire its securities pursuant or traceable to the

26  registration statement.   261 F.R.D. 616, 647–48 (N.D. Ala. 2009).  The court held

27  that, when a party simply exchanges unregistered bonds for registered bonds, the

28  tracing requirement is not met because the plaintiff really acquired the bonds

1    *before* the registration statement issued.  In an *Exxon Capital* exchange, the

2    unregistered and registered bonds are identical except that the registered ones are

3    more freely tradable.  *Id.*  Because the securities are fundamentally identical, the

4    court implied that exchanging the unregistered shares for registered ones did not

5    count as a securities transaction but rather a modification to a previously existing

6    security.  *Id.*  Based on this, the court held that plaintiff could not trace its purchase

7    to the registration statement because the purchase occurred prior to registration.

8    *Id.*

9           This decision misunderstands the purpose of the § 11 tracing requirement.[6]

10   The statute does not state that a purchase must be "traced" to a registration

11   statement, but merely that "a person acquiring such security" may sue.  15 U.S.C. §

12   77k(a).  Courts have implemented the tracing requirement to effect the "person

13   acquiring such security" language and thereby limit the recovery of aftermarket

14   purchasers.  *See DeMaria v. Andersen*, 318 F.3d 170, 175 (2d Cir. 2003).  The

15   reason for this is that securities issued pursuant to a supplemental offering, once

16   registered and sold into the open market, intermingle with their previously-

17   registered cousins.  A tracing requirement therefore implements the "such security"

18   language in the statute by separating out newly issued securities from those which

19   had been previously registered.  In so-doing it targets the *identity* of the security,

20   not the chronological order in which it is purchased.  The *identity* of the security is

21   not at issue in this case, merely the timing of the purchase.  Therefore, tracing is

22   not a plausible basis for Defendants' motions.

23

24

---

25   [6] The Court is also skeptical of the *Healthsouth* court's implication that an *Exxon Capital*
26   exchange does not constitute a separate securities transaction.  See *In re Refco, Inc. Sec.
     Litig.*, 503 F.Supp.2d 611 (S.D.N.Y. 2007) ("Plaintiffs' phrasing assumes that the
27   unregistered and registered bond offerings may be treated as a single transaction, a theory
     that has already been rejected.").  The Court does not address that portion of the decision
28   because it has no bearing on the present case.

1   A Northern District of California court reached the same result as

2 *Healthsouth* and *APA Excelsior*, basing its decision on materiality instead of

3 tracing or reliance.  *In re Levi Strauss & Co. Sec. Litig.* involved an *Exxon Capital*

4 exchange scenario identical to the ones discussed above.  527 F. Supp. 2d 965,

5 976–78 (N.D. Cal. 2007).  The proposed class included both plaintiffs who had

6 purchased unregistered bonds and plaintiffs who purchased in the subsequent

7 registration.  In excluding purchasers of the unregistered bonds, the court held that

8 misrepresentations in the registration statement could not have been material for

9 those investors.  *Id.*  This materiality analysis divided the proposed class into two,

10 and performed a differentiated analysis for each group.  Essentially, it held that the

11 registration statement was material to one group of investors, but not to another

12 group.  *See also In re Refco, Inc. Sec. Litig.*, 503 F.Supp.2d 611, 636–37 (S.D.N.Y.

13 2007) ("Plaintiffs have failed to allege that the omitted information would have

14 made a reasonable shareholder any less likely to favor the *Exxon Capital* exchange.

15 They have therefore failed to show that any omissions or misrepresentations were

16 material.").

17   Whether materiality analysis is appropriate depends on the degree of

18 precision with which the court is prepared to measure a securities transaction.

19 Materiality is an objective standard.  <u>United States v. Reyes</u>, 577 F.3d 1069, 1076

20 (9th Cir. 2009).  It questions whether a "reasonable investor would have

21 considered [the information] useful or significant," in determining whether to enter

22 into the transaction.  *United States v. Smith*, 155 F.3d 1051, 1064 (9th Cir. 1998).

23 If the transactional decision to be made is "should I, having already purchased

24 unregistered bonds, enter into an *Exxon Capital* exchange," then no statements in

25 the registration statement will be material–it always makes sense to exchange

26 unregistered bonds for registered ones.  If the question is a broader "should I

27 purchase these bonds," then statements in the registration statement can of course

28 be material.  Adopting the former analysis introduces subjectivity into what the

1   Ninth Circuit has made clear should be an objective analysis.  By considering

2   whether the plaintiff had previously purchased unregistered bonds, the *Refco* and

3   *Levi Strauss* courts considered the particular position and knowledge of the

4   plaintiffs rather than the mythical "reasonable investor" shielded by a veil of

5   ignorance.  The timing of a purchase is irrelevant to whether a reasonable investor

6   would find information material, and so the Court concludes that materiality is not

7   a proper basis for Defendants' motions.

8   　　　　Rather than reliance, tracing, or materiality, loss causation is the better

9   doctrinal foundation for Defendants' motions.  Under § 11(e), losses caused by

10   something other than the false statement are not recoverable.  15 U.S.C. § 77k(e).

11   Loss causation is inextricably intertwined with reliance, perhaps explaining

12   judicial equivocation as to whether reliance is, in fact, an element of § 11.  The

13   Supreme Court has defined loss causation as a "causal connection between the

14   material misrepresentation and the loss."  *Dura Pharm., Inc. v Broudo*, 544 U.S.

15   336, 342 (2005).  In *APA Excelsior*, the plaintiff had made a binding purchase

16   commitment–price *and* quantity–before any of the purported misrepresentations.

17   If the statements in question had been accurate, the plaintiff simply would have

18   suffered its loss earlier.[7]  Since the plaintiff would have been damaged with or

19   without the statement, it follows that the statement was neither the but-for or the

20   proximate cause of the plaintiff's harm.  In *Dura* terms there was no causal

21   relationship between the registration statement and any of the plaintiff's losses.

22   Unable to show loss causation, the court would have been right to dismiss the

23   claim under § 11(e).  A challenge based on the standing requirement that a plaintiff

24   show loss causation would require the same analysis and reach the same

25   conclusion.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("There

26

27   _____

28   [7] Assuming, for the sake of argument, that the  misrepresentation was actually the cause
of the plaintiff's loss in *APA Excelsior*.  The Eleventh Circuit did not reach that question.

1   must be a causal connection between the injury and the conduct complained of–the

2   injury has to be 'fairly . . . trace[able] to the challenged action of the defendant.").

3        The Court agrees with the result reached by other courts who have

4   concluded that Section 11 is an inappropriate remedy on the facts of *APA Excelsior*

5   or in an *Exxon Capital* exchange situation.  Where, as there, a plaintiff makes its

6   purchase decision without any possible regard for later-filed misrepresentations, it

7   cannot possibly be said that the misrepresentation caused the loss.  This failure is

8   fatal under either § 11(e) or the constitutional standing requirement.  Having

9   determined that Defendants' motions are properly brought under a loss causation

10  theory, the Court will briefly turn to the merits of the motions.

11       Loss causation under § 11 is an affirmative defense rather than a pleading

12  requirement.  15 U.S.C. § 77k(e).  As such, a motion to dismiss should be granted

13  only if the defense appears on the face of the complaint and raises no issue of

14  disputed fact.  *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); 5 C.

15  WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1277 (3d ed.).  In

16  this case, there are simply too many unknown facts for resolution at the motion to

17  dismiss stage.  Plaintiffs admit that they "purchased" the three Offerings one to ten

18  days before the prospectus supplements issued. Opp. at 10.  The Court is not clear

19  on what this means as a practical matter.  If the securities were not yet registered,

20  did the Plaintiffs purchase unregistered securities, or did they enter into a futures

21  contract to purchase the Offerings once the prospectus supplements became

22  effective?  If a futures contract, under what conditions was the contract revocable

23  (either under the contract or SEC rules)?  Did Plaintiffs have access to a draft

24  prospectus supplement prior to purchase?  Did the previously-filed registration

25  statements contain material misstatements which are independently actionable?

26  Plaintiffs provide or imply answers to many of these questions in their Opposition

27  brief at Section III.C.  If, as Plaintiffs suggest, the sales were revocable and not

28  final until the supplements actually issued, then they may not have made a binding

1   purchase decision before the prospectus supplements were issued.  Opp. at 18.

2   Plaintiffs may similarly have relied on draft prospectuses or misrepresentations in

3   shelf registration statements.  The Court is not prepared to speculate on these

4   matters.  Rather, it will take up Defendants' negative causation arguments, as well

5   as any other defenses, at the summary judgment stage.

### IV.    CONCLUSION

7        For the reasons discussed above, the Court **DENIES** Defendants' motions to

8   dismiss the TAC.

9

10       **IT IS SO ORDERED.**

11

12   DATED:  September 13, 2011

13                                                Hon. Mariana R. Pfaelzer

14                                                United States District Judge