1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  SPENCER A. BURKHOLZ (147029)
   THOMAS E. EGLER (189871)
3  SCOTT H. SAHAM (188355)
   NATHAN R. LINDELL (248668)
4  ASHLEY M. ROBINSON (281597)
   655 West Broadway, Suite 1900
5  San Diego, CA  92101
   Telephone:  619/231-1058
6  619/231-7423 (fax)
   spenceb@rgrdlaw.com
7  tome@rgrdlaw.com
   scotts@rgrdlaw.com
8  nlindell@rgrdlaw.com
   arobinson@rgrdlaw.com
9
   KESSLER TOPAZ MELTZER
10    & CHECK, LLP
   ANDREW L. ZIVITZ          COHEN MILSTEIN SELLERS
11 SHARAN NIRMUL               & TOLL PLLC
   KIMBERLY JUSTICE          STEVEN J. TOLL (*pro hac vice*)
12 JENNIFER L. JOOST         JULIE GOLDSMITH REISER (*pro hac vice*)
   280 King of Prussia Road  JOSHUA S. DEVORE (*pro hac vice*)
13 Radnor, PA  19087         1100 New York Avenue, N.W.
   Telephone:  610/667-7706  West Tower, Suite 500
14 610/667-7056 (fax)        Washington, DC  20005-3964
   azivitz@ktmc.com          Telephone:  202/408-4600
15 snirmul@ktmc.com          202/408-4699 (fax)
   kjustice@ktmc.com         stoll@cohenmilstein.com
16 jjoost@ktmc.com           jreiser@cohenmilstein.com
                             jdevore@cohenmilstein.com
17 Co-Lead Counsel in the *Luther*
   and *Western Conference* actions    Lead Counsel in the *Maine State* action only
18
   [Additional counsel appear on signature page.]
19
                   UNITED STATES DISTRICT COURT
20               CENTRAL DISTRICT OF CALIFORNIA
21 MAINE STATE RETIREMENT          )  No. 2:10-cv-00302-MRP(MANx)
   SYSTEM, Individually and On Behalf )
   of All Others Similarly Situated, )  CLASS ACTION
22                                   )
              Plaintiff,            )  MEMORANDUM OF POINTS AND
23                                   )  AUTHORITIES IN SUPPORT OF
        vs.                        )  PLAINTIFFS' MOTION FOR AN
24                                   )  AWARD OF ATTORNEYS' FEES
   COUNTRYWIDE FINANCIAL           )  AND EXPENSES
25 CORPORATION, et al.,            )
                                   )  DATE:    October 28, 2013
26            Defendants.          )  TIME:    1:30 p.m.
   _____ )  CTRM:   12, Hon. Mariana R. Pfaelzer
27 [Caption continued on following page.]
28

866397_3

| | | |
|---|---|---|
| 1 | WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) |

No. 2:12-cv-05122-MRP(MANx)

CLASS ACTION

Plaintiff,

vs.

COUNTRYWIDE FINANCIAL CORPORATION, et al.,

Defendants.

DAVID H. LUTHER, et al., Individually and On Behalf of All Others Similarly Situated,

No. 2:12-cv-05125-MRP(MANx)

CLASS ACTION

Plaintiffs,

vs.

COUNTRYWIDE FINANCIAL CORPORATION, et al.,

Defendants.

866397_3

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.    WORK PERFORMED ........................................................ 5

III.   THE STANDARDS GOVERNING THE AWARD OF
       ATTORNEYS' FEES IN COMMON FUND CASES ............................... 11

       A.    Plaintiffs' Counsel Are Entitled to a Fee from the Common
             Fund They Created ............................................................... 11

       B.    The Ninth Circuit Supports Awarding Attorneys' Fees Using
             the Percentage Approach ..................................................... 12

IV.    THE REQUESTED FEE IS REASONABLE UNDER THE
       PERCENTAGE-OF-RECOVERY METHOD ........................................... 13

       A.    The Result Achieved ........................................................... 13

       B.    The Risks of the Litigation and the Novelty and Difficulty of
             the Questions Presented ..................................................... 14

       C.    The Contingent Fee Nature of the Case and the Financial
             Burden Carried by Plaintiffs' Counsel ................................. 16

       D.    A 17% Fee Award Is Consistent with Awards in Similar
             Complex, Contingent Litigation .......................................... 18

       E.    The Requested Fee Is Materially Lower than the Range of
             Contingent Fee Arrangements in Other Cases ..................... 20

V.     THE REQUESTED FEE IS REASONABLE UNDER THE
       LODESTAR CROSS-CHECK ............................................................ 21

VI.    LEAD COUNSEL ARE ENTITLED TO AN AWARD OF THEIR
       REASONABLE LITIGATION EXPENSES ........................................... 23

VII.   CONCLUSION ................................................................. 24

866397_3

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995) .................................................................. 23

*Allapattah Servs. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006)................................................. 19

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) .............................................................. 18

*Arenson v. Bd. of Trade*,
  372 F. Supp. 1349 (N.D. Ill. 1974)........................................................ 15

*Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*,
  919 F.2d 374 (5th Cir. 1990) ................................................................. 23

*Atlas v. Accredited Home Lenders Holding Co.*,
  No. 07-cv-488-H (CAB), 2009 U.S. Dist. LEXIS 103035
  (S.D. Cal. Nov. 2, 2009) ....................................................................... 13

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990) ................................................................... 18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985) ..................... 12

*Bee v. Greaves*,
  910 F.2d 686 (10th Cir. 1990)............................................................... 23

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979) ................................................................. 18

*Blum v. Stenson*,
  465 U.S. 886, 104 S. Ct. 1541,
  79 L. Ed. 2d 891 (1984) ........................................................................ 12

*Boeing Co. v. Van Gemert*,
  444 U.S. 472, 100 S. Ct. 745,
  62 L. Ed. 2d 676 (1980)................................................................... 11, 12

- ii -

**Page**

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) .................................................................. 23

*Buccellato v. AT&T*,
  No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699
  (N.D. Cal. June 30, 2011) ..................................................................... 23

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ................................................................. 15

*Dolgow v. Anderson*,
  43 F.R.D. 472 (E.D.N.Y. 1968) ............................................................ 12

*ETSI Pipeline Project v. Burlington N., Inc.*,
  No. B-84-979-CA, 1989 U.S. Dist. LEXIS 18796
  (E.D. Tex. June 5, 1989) ................................................................. 20, 21

*FDIC v. Countrywide Fin. Corp.*,
  No. 2:12-cv-4354-MRP-MAN, 2012 U.S. Dist. LEXIS 167696
  (C.D. Cal. Nov. 21, 2012) .............................................................. 4, 5, 16

*Gottlieb v. Wiles*,
  150 F.R.D. 174 (D. Colo. 1993),
  *rev'd on other grounds sub nom.*,
  *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ............................... 23

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ..................................................................... 23

*Hensley v. Eckerhart*,
  461 U.S. 424, 103 S. Ct. 1933,
  76 L. Ed. 2d 40 (1983) ........................................................................... 13

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  No. 03-MDL-1529 (LMM), 2006 U.S. Dist. LEXIS 84621
  (S.D.N.Y. Nov. 17, 2006) ............................................................ 3, 18, 22

*In re Apple Computer Sec. Litig.*,
  No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
  (N.D. Cal. Sept. 6, 1991) ....................................................................... 18

866397_3

1

**Page**

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
   (S.D. Fla. Apr. 25, 2011),
   *aff'd sub. nom, Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) .................................................................... 17

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   No. 94 C 897, 2000 U.S. Dist. LEXIS 1734
   (N.D. Ill. Feb. 10, 2000) ............................................................................. 19

*In re Brocade Sec. Litig.*,
   No. C 05-02042 CRB, slip op.
   (N.D. Cal. Jan. 26, 2009) ............................................................................ 23

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) .............................................. 3, 18, 22

*In re Checking Account*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................ 19

*In re DaimlerChrysler AG Sec. Litig.*,
   No. 00-993 (KAJ), 2004 U.S. Dist. LEXIS 31757
   (D. Del. Feb. 5, 2004) ................................................................................. 19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M:02-cv-01486-PJH, slip op. MDL-02-1486
   (N.D. Cal. Nov. 1, 2006) ............................................................................. 19

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ............................................................ 15

*In re Fine Paper Antitrust Litig.*,
   751 F.2d 562 (3d Cir. 1984) ........................................................................ 22

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555
   (C.D. Cal. June 10, 2005) ............................................................................ 16

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) .......................................................... 19

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- iv -

**Page**

*In re JDS Uniphase Corp. Sec. Litig.*,
No. C-02-1486-CW(EDL), 2007 WL 4788556
(N.D. Cal. Nov. 27, 2007) ....................................................................... 18

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976) ........................................................... 15

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) ...................................................... 3, 18

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ........................................................ 23

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................. 22

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................. 16, 23

*In re Oracle Corp. Sec. Litig.*,
No. C 01-988 SI, 2009 U.S. Dist. LEXIS 50995
(N.D. Cal. June 16, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010) ......................................................... 17

*In re Oxford Health Plans, Inc. Sec. Litig.*,
No. MDL 1222 (CLB), 2003 U.S. Dist. LEXIS 26795
(S.D.N.Y. June 12, 2003) ......................................................................... 19

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) .................................................................... 22

*In re RJR Nabisco Sec. Litig.*,
No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702
(S.D.N.Y. Aug. 24, 1992) ......................................................................... 20

*In re Veritas Software Corp. Sec. Litig.*,
No. C-03-0283 MMC, 2005 U.S. Dist. LEXIS 30880
(N.D. Cal. Nov. 15, 2005) ........................................................................ 23

*In re Vitamins Antitrust Litig.*,
No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25067
(D.D.C. July 13, 2001) ............................................................................. 19

866397_3

**Page**

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986) ....................................................... 22

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ................................................... 12, 14, 17

*In re Wells Fargo Mortg.-Backed Certificates Litig.*,
    No. 09-CV-1376-LHK, slip op.
    (N.D. Cal. Nov. 14, 2011) .......................................... 2, 3, 20, 22

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ..................................... 17

*J.I. Case Co. v. Borak*,
    377 U.S. 426, 84 S. Ct. 1555,
    12 L. Ed. 2d 423 (1964) ...................................................... 12

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
    487 F.2d 161 (3d Cir. 1973) ................................................. 22

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
    540 F.2d 102 (3d Cir. 1976) ................................................. 22

*Luther v. Countrywide Fin. Corp.*,
    195 Cal. App. 4th 789,
    125 Cal. Rptr. 3d 716 (2d App. Div. 2011),
    *cert. denied*, ___ U.S. ___,
    132 S. Ct. 832, 181 L. Ed. 527 (2011) ............................... 6

*Ohio Pub. Emps. Ret. Sys. v. Freddie Mac*,
    No. 03-CV-4261 (JES), 2006 U.S. Dist. LEXIS 98380
    (S.D.N.Y. Oct. 26, 2006) ...................................................... 19

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .............................................. 13

*Public Employees' Retirement System of Mississippi v.
Merrill Lynch & Co., Inc.*,
    No. 1:08-cv-10841-JSR-JLC (S.D.N.Y.) ....................... 1, 2, 20, 22

*Robbins v. Koger Props.*,
    116 F.3d 1441 (11th Cir. 1997) ............................................ 18

- vi -

866397_3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) .......................................................... 13

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................... 13

*Silverman v. Motorola Solutions, Inc.*,
  Nos. 12-2339 & 12-2354, 2013 U.S. App. LEXIS 16878
  (7th Cir. Aug. 14, 2013) ....................................................... 4, 17, 18

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................. *passim*

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23 ............................................................................................ 8

**SECONDARY AUTHORITIES**

1 Alba Conte, (2d ed. 1993)
  *Attorney Fee Awards* §2.02 .......................................................... 12

Karen Friefeld, Reuters, June 10, 2013
  *BofA could still put Countrywide into bankruptcy, executive says* ................... 20

Dr. Jordan Milev, et al.,
  NERA Economic Consulting Dec. 14, 2011,
  *Recent Trends in Securities Class Action Litigation:*
  *2011 Year-End Review* .............................................................. 14, 15

Yuki Noguchi, Washington Post, Mar. 18, 2006
  *D.C. Law Firm's Big BlackBerry Payday; Case Fees of More than $200*
  *Million Are Said to Exceed Its 2004 Revenue* ..................................... 21

Stephanie Plancich, Ph.D. & Svetlana Starykh,
  NERA Economic Consulting, Dec. 2008,
  *2008 Trends in Securities Class Actions* ........................................ 14

Richard Posner (3d ed. 1986)
  *Economic Analysis of Law* §21.9 ................................................. 17

866397_3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page**

Report of the Third Circuit Task Force (Oct. 8, 1985)
    *Court Awarded Attorney Fees*,
    108 F.R.D. 237 ............................................................... 12

Securities Class Action Services,
    Institutional Shareholder Services Inc. July 1, 2013,
    *The SCAS TOP 100 Settlements Semi-Annual Report* ...................................... 13

866397_3

## I.    INTRODUCTION

After five-plus years of litigation, on June 25, 2013, Plaintiffs' Counsel in the above-captioned actions ("*Luther*," "*Maine State*," and "*Western Conference*," collectively the "Actions") achieved a landmark $500 million Settlement.  This Settlement was achieved only after (1) complex and hard-fought litigation, including a reversal of the dismissal of the *Luther* action in the California Court of Appeal, and (2) protracted arm's-length settlement negotiations and formal mediation under the auspices of two private mediators.  Absent Plaintiffs' Counsel's willingness to accept the risks inherent in pursuing the novel legal theories implicated by the Actions, even after dismissal and repeated removal, the Class likely would not have received any recovery and certainly would not have received the Settlement presently before the Court.  Plaintiffs and their counsel respectfully submit that the outstanding result achieved, as well as the heightened level of risk associated with Plaintiffs' Counsel's continued litigation of the Actions, warrants the requested 17% fee.[1]

In pursuing the Actions on behalf of the Class, Plaintiffs' Counsel overcame many novel legal and procedural obstacles to obtain the $500 million recovery.  It is notable that despite these obstacles, the recovery obtained is the ***largest*** class-wide settlement in a mortgage backed security ("MBS") case to date, far surpassing the next largest $315 million settlement reached in *Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co., Inc.*, No. 1:08-cv-10841-JSR-JLC (S.D.N.Y.) ("*Merrill Lynch* MBS Settlement") (attached hereto as Exhibit A).

The Settlement would not have been possible without the considerable efforts of Plaintiffs' Counsel, who devoted nearly six years to the investigation, vigorous prosecution and settlement of the Actions.  During this period, Plaintiffs' Counsel have not received any compensation for their efforts and have assumed all costs and

---

[1]    Unless otherwise defined herein, capitalized terms shall have the same meanings as set forth in the Stipulation which was previously filed with the Court.  *Maine State*, Dkt. No. 408; *Luther*, Dkt. No. 151; and *Western Conference*, Dkt. No. 132.

866397_3

1  expenses, despite significant risks of non-recovery.  Plaintiffs' Counsel have

2  persevered through numerous adverse trial court rulings in both the California state

3  and federal court systems, litigating issues of first impression before the Ninth Circuit

4  and the California Court of Appeal in order to maintain the viability of the Actions.

5  Plaintiffs respectfully submit that it was only through Plaintiffs' Counsel's skill,

6  persistence and advocacy that the Class was able to secure this exceptional recovery.

7        Importantly, Plaintiffs' Counsel's 17% fee request has been approved by each

8  of the named Plaintiffs in the Actions, which include five sophisticated public pension

9  funds (Iowa, Oregon, Orange County, Maine and Vermont) with large stakes in the

10 outcome of this litigation.[2]  Each of these sophisticated Plaintiffs considered the

11 substantial risk assumed by Plaintiffs' Counsel in agreeing to the requested fee.  These

12 Plaintiffs are exceptionally proud of the results achieved in the Actions and the efforts

13 both they and Plaintiffs' Counsel have expended in the process.  The named Plaintiffs,

14 who have been involved throughout the course of the Actions, believe the requested

15 fee is fair and reasonable and justified in large part by the risk borne by Plaintiffs'

16 Counsel during the pendency of the litigation.  *See* Named Plaintiff Decls.

17       The requested fee is also in accord with the legal fees awarded in other MBS

18 class action cases, as well as other traditional securities class action cases, in this

19 jurisdiction and elsewhere.  For example, in the *Merrill Lynch* MBS Settlement, the

20 court awarded a 17% fee of a $315 million settlement. Ex. A at 2.  Likewise, in *Wells*

21 *Fargo*, the United States District Court for the Northern District of California awarded

22 a fee of 19.75% of a $125 million settlement.  *In re Wells Fargo Mortg.-Backed*

23

24  [2]  Filed herewith are the Declarations of named plaintiffs Maine Public Employees
25  Retirement System; David H. Luther; MashreqBank, psc; Iowa Public Employees'
    Retirement System; Orange County Employees Retirement System; Western
26  Conference of Teamsters Pension Trust Fund; Oregon Public Employees' Retirement
    System; Vermont Pension Investment Committee; Washington State Plumbing and
27  Pipefitting Pension Trust; Pension Trust Fund for Operating Engineers and the
    Operating Engineer's Annuity Plans; and General Board of Pension and Health
28  Benefits of the United Methodist Church ("Named Plaintiff Decls.").

1    *Certificates Litig.*, No. 09-CV-1376-LHK, slip op., ¶4 (N.D. Cal. Nov. 14, 2011) (Dkt.

2    No. 475) ("*Wells Fargo* MBS Settlement") (attached hereto as Ex. B at 2); *see also In*

3    *re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-MDL-1529 (LMM),

4    2006 U.S. Dist. LEXIS 84621, at *16 (S.D.N.Y. Nov. 17, 2006) (awarding 21.4% fee

5    in $455 million settlement); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d

6    752, 755 (S.D. Ohio 2007) (awarding 18% fee of $600 million settlement); *In re*

7    *Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 430 (D.N.J. 2004) (awarding 17%

8    fee of $667 million settlement).

9           The requested fee of 17% (*i.e.*, $85 million) is also fair and reasonable under

10   the lodestar cross-check.  As of August 31, 2013, Plaintiffs' Counsel had expended

11   87,780.79 hours in the investigation, prosecution and resolution of the Actions, for a

12   lodestar (number of hours multiplied by the per hour rate) of $40,209,519.   The

13   resulting "multiplier" of 2.11 is comparable or lower than those approved in similar

14   cases.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002)

15   (affirming a fee that yielded a multiplier of 3.65 and noting that multipliers ranging

16   from 1-4 are normally applied in common fund cases); *see also Public Emps. Ret. Sys.*

17   *of Mississippi v. Merrill Lynch & Co., Inc.*, No. 08-cv-10841-JSR-JLC, slip op.

18   (S.D.N.Y. May 8, 2012) (awarding 2.3 multiplier on 17% fee of $315 million

19   settlement) (Ex. A); *Wells Fargo* MBS Settlement (Ex. B at 3 – awarding 2.82

20   multiplier on 19.75% fee of $125 million settlement); *Cardinal Health*, 528 F. Supp.

21   2d at 755 (awarding 5.9 multiplier on 18% fee of $600 million settlement).

22          As is apparent from the amount of work performed and time invested in the

23   Actions – the first action was filed nearly six years ago – this was not a case where a

24   settlement was achieved at an early stage.  Moreover, Plaintiffs' Counsel prosecuted

25   the Actions on a wholly contingent basis since the inception of *Luther* in 2007,

26   receiving no payment for their efforts while being constantly exposed to the

27   possibility that they would achieve no recovery at all and, therefore, no compensation.

28   The risk of obtaining no recovery in this matter was extremely high, given the

1  numerous adverse rulings which had to be overcome, as well as the novel legal and

2  factual issues facing Plaintiffs in these complex MBS Actions.  In fact, if the *Luther*

3  Plaintiffs had not successfully appealed the state court's dismissal of the *Luther*

4  action, it is beyond question that the Class would have had no viable claims following

5  the Court's November 2012 decision regarding cross-jurisdictional tolling in *FDIC v.*

6  *Countrywide Fin. Corp*., No. 2:12-cv-4354-MRP-MAN, 2012 U.S. Dist. LEXIS

7  167696 (C.D. Cal. Nov. 21, 2012) ("*Strategic Capital*").

8       While Plaintiffs' Counsel recognize that the requested fee award of $85 million

9  is a large amount of money, they respectfully submit that it is justified in order to

10  compensate Plaintiffs' Counsel for incurring the risk of providing complex legal

11  services and assuming all expenses over the past six years, despite the real possibility

12  that they would not recover any fee at all.[3]  As the Seventh Circuit recently held in

13  approving a fee award of 27.5% of a $200 million common fund created in a

14  traditional securities class action, "[c]ontingent fees compensate lawyers for the risk

15  of nonpayment.  ***The greater the risk of walking away empty-handed, the higher the***

16  ***award must be to attract competent and energetic counsel***."  *Silverman v. Motorola*

17  *Solutions, Inc.*, Nos. 12-2339 & 12-2354, 2013 U.S. App. LEXIS 16878, at *5-*6 (7th

18  Cir. Aug. 14, 2013).[4]  In the Actions, as set out herein, the risk of no recovery was far

19  greater than in traditional securities class actions as evidenced by the fact that

20  Plaintiffs' Counsel are the only firms that filed complaints or moved for the position

21  of lead counsel in these coordinated actions in either federal or state court.

---

[3]  Receiving no fee for years of work is more than just a theoretical possibility, as such a result is not infrequent in securities class actions.  For example, in the *Oracle Securities Litigation*, Robbins Geller expended tens of millions of dollars in attorney time and expenses only to see the case dismissed in its entirety at summary judgment. Similarly, Kessler Topaz expended millions litigating the *BankAtlantic Securities Litigation* through trial and a jury verdict in plaintiffs' favor, only to have the court overturn the verdict and enter judgment for defendants.

[4]  All emphasis is added and citations and footnotes are omitted unless otherwise noted.

- 4 -

1   Accordingly, the risks borne by Plaintiffs' Counsel on behalf of Plaintiffs and the
2   Class, purely on a contingency basis, warrant the fee requested.

3   **II.    WORK PERFORMED**

4        Plaintiffs' Counsel's tandem efforts in the Actions, which this Settlement
5   resolves, were critical to securing the $500 million recovery for the Class.  The *Luther*
6   action was the first and most extensive MBS case filed related to the financial crisis.
7   Plaintiffs' Counsel expended exhaustive efforts investigating and understanding the
8   complicated issues related to the origination, underwriting and securitization of the
9   underlying loans, and the rating and sale of the resulting Certificates.  There was no
10  pre-existing road-map for Plaintiffs' Counsel to follow.  At every turn there were
11  unique issues not present in traditional securities class actions related to standing,
12  statutes of limitations and repose, class certification, liability, loss causation and
13  damages. Notably, Plaintiffs' Counsel's filing of and efforts in the *Luther* action
14  protected a potential recovery for Class Members who purchased the 58 live tranches.
15  Indeed, but for the successful appeal resulting in the reversal of the state court's
16  dismissal of *Luther* on jurisdictional grounds in 2011, all of the Countrywide MBS
17  tranches likely would have been dismissed and there would have been no recovery for
18  the Class following this Court's ruling in *Strategic Capital*.

19       It was the independent and complementary efforts of Plaintiffs' Counsel in
20  *Luther*, *Western Conference* and *Maine State* that led to this exceptional Settlement.
21  In the *Luther* and *Western Conference* actions, over the past five and a half years,
22  Plaintiffs' Counsel have, *inter alia*:

23      •   Investigated the substance of and filed extensive complaints in
24          November 2007, June 2008, September 2008 and October 2008;

25      •   Successfully opposed defendants' 2008 removal of the action to federal
26          court, before this Court and the Ninth Circuit Court of Appeals.  *See*
27          Order Granting Plaintiff's Motion for Remand to State Court and

28

- 5 -

Denying an Award of Attorney's Fees and Expenses, No. 2:07-cv-08165-MRP-MAN, 2008 U.S. Dist. LEXIS 26534 (C.D. Cal. Feb. 28, 2008); 533 F.3d 1031 (9th Cir. 2008);

- Filed an opposition to Defendants' Motion to Stay Discovery in October 2008;

- Prepared and filed an opposition to defendants' demurrers (related to jurisdiction, liability, loss causation and damages) to Plaintiffs' Complaint in 2009;

- Prepared and propounded requests for production of documents and interrogatories on defendants and third parties, and met and conferred on such discovery;

- Filed and briefed a Complaint for Declaratory Relief in this Court concerning whether SLUSA precludes state court jurisdiction over matters commenced under the Securities Act. *Luther v. Countrywide Fin. Corp.*, No. 2:09-cv-06162-MRP (MANx), Dkt. No. 1 (Aug. 24, 2009);

- Filed an action in federal court in an effort to preserve the statute of limitations with respect to the Class's Securities Act claims, following the dismissal of the *Luther* action in the state court;

- Litigated and won a state court appeal, which reversed the trial court's demurrer ruling dismissing the *Luther* matter on jurisdictional grounds. *Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789, 125 Cal. Rptr. 3d 716 (2d App. Div. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 832, 181 L. Ed. 527 (2011);

- Filed an answer to defendants' Petition for Review of the California Court of Appeal's reversal of the state court dismissal;

- 6 -

866397_3

- Prepared and filed an opposition to defendants' second round of demurrers (related to standing, statute of limitations, and statute of repose);

- Fully briefed and argued a second motion for removal to federal court related to the bankruptcy filing of GMAC;

- Prepared and filed an extensive opposition to defendants' motion to dismiss that was pending in federal court at the time of settlement, along with oppositions to certain individual defendants' motions to dismiss and Bank of America's motion to dismiss the *Western Conference* action;

- Commenced review, coding and/or analysis of 20 million pages of documents produced by defendants and performed targeted searches within these documents in order to prepare for further discovery, summary judgment, trial, and mediation;

- Reviewed voluminous publicly-available documents, such as information produced by the Financial Crisis Inquiry Commission ("FCIC") regarding Countrywide and pleadings and other documents filed in other actions related to Countrywide MBS and/or Countrywide's loan origination and underwriting processes;

- Worked extensively with consultants and experts on complicated issues related to loan underwriting, econometric and statistical analysis of loan pools, securities ratings, loan-to-value ratios and owner-occupied rates;

- Worked extensively with economic experts on complex issues involving loss causation and damages related to 58 different tranches of live claims and the additional tranches underlying the Dismissed Represented Claims and Dismissed Unrepresented Claims; and

- 7 -

866397_3

- • Prepared detailed mediation statements and presentations, and worked with damages experts in connection with the six month mediation.[5]

In *Maine State*, after being appointed as Lead Counsel, Plaintiffs' Counsel actively litigated the Securities Act claims in federal court through several motions to dismiss, class certification, merits discovery and mediation.  In the *Maine State* action, Plaintiffs' Counsel, on behalf of the class, *inter alia*:

- • Secured additional class representatives, whose participation was critical to the scope of the case;

- • Filed three amended consolidated class action complaints in July, 2010; December, 2010; and June, 2011, and specifically addressed in the second and third amended complaints the Court's November 2010 and May 2011 Orders that denied, in part, defendants' motions to dismiss;

- • Successfully defeated defendants' third motion to dismiss in September 2011;[6]

- • Subpoenaed documents from more than 60 custodian banks, broker dealers, market-makers and investment banks to establish pricing information for the securities at issue as well as trading histories and trading volume for the securities, and to establish numerosity for purposes of class certification pursuant to Fed. R. Civ. P. 23 and to determine class damages;

---

[5]    A more expansive discussion of Plaintiffs' Counsels' efforts in *Luther* and *Western Conference* is set forth in the Joint Declaration of Spencer A. Burkholz and Andrew L. Zivitz in Support of (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Plaintiffs' Counsel's Motion for Attorneys' Fees and Expenses ("Joint Declaration").

[6]    The litany of issues briefed is more fully set forth in the Declaration of Julie Goldsmith Reiser in Support of Maine State Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and Plan of Allocation, and Petition for Award of Attorneys' Fees and Reimbursement of Expenses.  ("Reiser Declaration").

866397_3

- Engaged in motion practice in the Northern District of Illinois to compel third-party document production;

- Responded to discovery requests from six defendant parties on behalf of the four named plaintiffs, which involved reviewing over one million pages of documents from plaintiffs' asset managers and investment advisors, producing responsive discovery to defendants and then defending plaintiffs during their subsequent depositions;

- Sought to quash class certification discovery that defendants sought from absent class members;

- Retained and oversaw the work of an expert who was deposed on issues pertaining to numerosity and commonality for purposes of demonstrating that class certification was appropriate;

- Obtained a stipulation to class certification after filing a motion to certify the class and implemented a comprehensive notice program to inform all potential class members of the scope of the certified class and their rights as class members;

- Obtained and reviewed, in less than 12 months, the documents produced in *In re Countrywide Fin. Corp. Sec. Litig.*, No. 2:07-cv-05295 (C.D. Cal.) ("*New York Funds Action*"), consisting of approximately 20 million pages, and thoroughly reviewed the documents and deposition transcripts from an additional 51 witnesses who had knowledge relevant to the claims at issue in *Maine State*, with the goal of identifying relevant search terms and custodians and also to avoid seeking duplicative discovery;[7]

---

[7]   In *Maine State*, counsel reviewed, coded and analyzed over 11 million pages of documents in just 18 months, leading to certification of the eight live tranches in that action, a merits deposition program on the merits of the parties' claims and defenses, and the production of five expert reports.

- 9 -

- Identified, through a review of the produced documents, 33 additional Countrywide witnesses with knowledge relevant to the claims at issue, who had not been custodians in the *New York Funds Action* production and researched the propriety of using testimony to the SEC and FCIC as evidence, as if taken in the *Maine State* litigation;

- Sought, within the same time period, documents and information related to the viable MBS tranches in *Maine State* from defendants and numerous non-parties, including loan files and due-diligence results, and received, in total, over 1.75 million documents related specifically to the *Maine State* claims;

- Conducted weekly meet-and-confer meetings with defendants on the status of discovery, document productions, and the scheduling of depositions;

- Propounded six sets of requests for production on all defendants and additional requests for production on certain underwriter defendants, as well as follow-up requests that came to light after certain depositions;

- Took 30(b)(6) and fact depositions in the summer of 2012 in connection with the merits of the litigation;

- Fully and completely responded to more than 115 contention interrogatories which would have formed the basis of the *Maine State* plaintiffs' opposition had defendants filed motions for summary judgment;

- Engaged and worked with five separate experts, including experts in underwriting, investment bank due diligence, loan re-underwriting, certificate valuation, investor losses, damages, and a rebuttal expert on issues of loss causation and negative causation in anticipation of expert reports that defendants would submit; and

- 10 -

- • Drafted a mediation statement related to the eight tranches in the *Maine State* litigation.[8]

In addition to their litigation efforts, Plaintiffs' Counsel in *Maine State* and *Luther/Western Conference* collectively engaged in protracted settlement negotiations with two full-day, in-person mediations and extensive telephonic meetings over a period of seven months with defendants, which were presided over by Eric D. Green, a private mediator who possesses more than 30 years of complex mediation experience.  The mediation process also included separate negotiations with the Honorable Nancy Gertner (retired) concerning an appropriate plan for allocating the $500 million Settlement Amount among the various tranches and Offerings.

As noted above, Plaintiffs' Counsel have collectively expended 87,780.79 hours investigating, prosecuting and resolving the Actions for a total lodestar value of $40,209,519.  Plaintiffs and Plaintiffs' Counsel respectfully submit that the enormous amount of time, resources and effort devoted to the Actions by Plaintiffs' Counsel and the effective management of the Actions confirm that the fee request here is reasonable.

## III. THE STANDARDS GOVERNING THE AWARD OF ATTORNEYS' FEES IN COMMON FUND CASES

### A. Plaintiffs' Counsel Are Entitled to a Fee from the Common Fund They Created

It is well-settled that an attorney who maintains a suit that results in the creation of a fund or benefit in which others have a common interest is entitled to obtain reasonable fees from that common fund.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749, 62 L. Ed. 2d 676, 681 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").  The Ninth Circuit

---

[8]   A more expansive discussion of plaintiffs' counsels' efforts in *Maine State* is set forth in the Reiser Declaration.

866397_3

has specifically found that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

In addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of people, and to discourage future alleged misconduct of a similar nature. *See, e.g.*, *Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310, 105 S. Ct. 2622, 2628, 86 L. Ed. 2d 215, 224 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S. Ct. 1555, 1560, 12 L. Ed. 2d 423, 428 (1964)).

## B. The Ninth Circuit Supports Awarding Attorneys' Fees Using the Percentage Approach

The Supreme Court has also consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fees should be determined as a percentage of the fund. *See, e.g.*, *Boeing*, 444 U.S. at 478-79; *Blum v. Stenson*, 465 U.S. 886, 900 n.16, 104 S. Ct. 1541, 1550 n.16, 79 L. Ed. 2d 891, 903 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class"); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (fee awards in common fund cases have historically been computed based upon a percentage of the fund); 1 Alba Conte, *Attorney Fee Awards* §2.02, at 31-32 (2d ed. 1993) (same). Although district courts retain discretion to award attorneys' fees in common fund cases based upon either the percentage-of-fund or lodestar method (*see WPPSS*, 19 F.3d at 1296), the Ninth Circuit has implicitly

866397_3

1    endorsed use of the percentage-of-fund method in most cases. *See, e.g.*, *Vizcaino*, 290

2    F.3d at 1047-48; *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

3    **IV.**    **THE REQUESTED FEE IS REASONABLE UNDER THE PERCENTAGE-OF-RECOVERY METHOD**

4

5         While the ultimate determination of the proper amount of attorneys' fees rests

6    within the sound discretion of the district court (*see Rodriguez v. Disner*, 688 F.3d 645

7    (9th Cir. 2012)), the guiding principle in this Circuit is that a fee award should be

8    "'reasonable under the circumstances.'" *Id.* at 653; *Rodriguez v. West Publ'g Corp.*,

9    563 F.3d 948, 967 (9th Cir. 2009). The Ninth Circuit has approved a number of

10    factors that are relevant to the district court's determination including: (1) the result

11    achieved, (2) the risk of continued litigation, (3) the financial burden of contingent

12    representation, and (4) customary fees awarded in similar cases. *See Vizcaino*, 290

13    F.3d at 1048-50.[9] As demonstrated below, application of these factors confirms the

14    reasonableness of a 17% fee.

      **A.**     **The Result Achieved**

15

16         Courts have consistently recognized that the result achieved is a major factor to

17    be considered in determining the reasonableness of a fee award. *Hensley v. Eckerhart*,

18    461 U.S. 424, 436, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40, 52 (1983) ("most critical

19    factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1050. As noted

20    above, this is by far the largest MBS class action settlement arising out of the

21    subprime crisis and provides for an exceptional recovery on a per "live" certificate

22    basis ($24.96 per $1,000 in initial certificate face value).

23         The Settlement is also one of the largest (top 25) class action securities

24    settlements of all time. *See* Securities Class Action Services, *The SCAS TOP 100*

25

---

26   [9]   "'The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.'" *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-cv-488-H (CAB), 2009 U.S. Dist. LEXIS 103035, at *11 (S.D. Cal. Nov. 2, 2009).

27

28

*Settlements Semi-Annual Report* (Institutional Shareholder Services Inc. July 1, 2013), *available at* http://www.issgovernance.com/files/private/SCATop100Settlements _2H2012Rev01312013.pdf. The magnitude of this settlement is far greater than a typical securities class action settlement. According to National Economics Research Associates ("NERA"), which tracks the percentage of class actions resolved and dismissed annually, over the period 2005-2008 the median securities class action settlement was only $7-$9 million. Stephanie Plancich, Ph.D. & Svetlana Starykh, *2008 Trends in Securities Class Actions* at 9 (NERA Economic Consulting, Dec. 2008), *available at* http://www.nera.com/67_5393.htm. It was the tenacious efforts of Plaintiffs' Counsel that led to this exceptional result. As noted above, but for Plaintiffs' Counsel's aggressive litigation and willingness to successfully appeal the *Luther* dismissal, a recovery of this magnitude would not have been possible.

**B.    The Risks of the Litigation and the Novelty and Difficulty of the Questions Presented**

Numerous cases have recognized that risk, as well as the novelty and difficulty of the issues presented, are important factors in determining an appropriate fee award. *See, e.g.*, *Vizcaino*, 290 F.3d at 1048; *WPPSS*, 19 F.3d at 1299-1301. Uncertainty that a recovery ultimately would be obtained is highly relevant in determining risk. *WPPSS*, 19 F.3d at 1300.

Securities class actions are extremely risky. In fact, according to NERA, somewhere between one third to one half of all modern day securities litigations filed are dismissed. Dr. Jordan Milev, et al., *Recent Trends in Securities Class Action Litigation: 2011 Year-End Review* at 22 Figure 26 (NERA Economic Consulting Dec. 14, 2011) ("*NERA Mid-Year 2011*"), *available at* http://www.nera.com/nera-files/PUB_Trends_Year-End_1211_final.pdf.[10]

---

[10]    For example, in 2000, the most recent year for which all filed cases have now been resolved, 37% of the cases were dismissed. The risk of losing appears to have increased substantially since 2000. For cases filed in 2003, a year in which 95.5% of the cases have now been resolved, the dismissal rate was 41%. The results for 2005 and 2006 were even worse. For 2005, with 96.3% of the cases filed that year having

- 14 -

The level of risk associated with complex MBS litigation, like the Actions, is far greater than that presented by a typical securities class action.  There is no question that from the outset, the Actions presented a number of sharply contested legal and factual issues, and that Plaintiffs' Counsel faced formidable challenges to proving liability and damages on behalf of the Class.  The Actions involved complex legal and factual issues under the federal securities laws and presented novel issues of first impression upon which district courts and even circuit courts have ruled differently, particularly in the context of standing, tolling and class certification.  It is beyond question that the diverging rulings would continue if these cases were tested at summary judgment and trial.

Beyond these hurdles, defendants have adamantly denied liability and asserted that they had absolute defenses to Plaintiffs' claims, including most notably, that the recession rather than their own conduct caused Plaintiffs' losses.  *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004) (concluding that the district court properly weighed and found sufficient risk to support fee award by evaluating defendant's belief that it had strong defense to the merits of plaintiffs' claims).[11]

The heightened level of risk undertaken by Plaintiffs' Counsel is further illustrated by the fact that decisions by the courts presiding over the Actions rendered recovery of Plaintiffs' Counsel's time unlikely.  For example, as of March of 2010,

---

been resolved, the dismissal rate was 49% and for 2006, with 94.7% of the cases filed that year having been resolved, the dismissal rate was 44.3%.  *NERA Mid-Year 2011* at 13 Fig. 16.

[11]   The quality of opposing counsel is also important in evaluating the quality of the work done by plaintiffs' counsel.  *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).  Plaintiffs' Counsel were opposed in the Actions by very skilled and highly respected counsel from Goodwin Procter and eight other law firms with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this.  These counsel fought Plaintiffs' Counsel at every turn, necessitating Plaintiffs' Counsel's incurring expenses of $2,977,145 in expenses and expenditure of $40,209,519 in attorney time since November 2007.  Each of these facts further supports Plaintiffs' Counsel's fee request.

- 15 -

1    when the *Luther* action was dismissed by the state court after nearly 2.5 years of

2    litigation, Plaintiffs' Counsel in the *Luther* action had already provided over 16,500

3    hours of legal services with a lodestar value of over $7.7 million.  Joint Decl., ¶¶112,

4    176.  Thus, in March of 2010, after a substantial amount of work had been dedicated

5    to the *Luther* action, Plaintiffs' Counsel stood to receive no compensation for their

6    efforts.  Undeterred, Plaintiffs' Counsel in the *Luther* action vigorously pursued the

7    appellate rights of the Class in state court and filed an action in federal court in order

8    to protect the interests of the Class in the event that the appeal of the state court's

9    dismissal order was unsuccessful.  Over the next 1.5 years, Plaintiffs' Counsel in the

10   *Luther* action expended another $3 million in lodestar in successfully reversing the

11   state court's dismissal of the action.  *Id.*, ¶176.  Thus, by the time the case was back

12   before the state court in California in September of 2011, Plaintiffs' Counsel in *Luther*

13   expended considerable time and resources with little prospect of recovery.  The

14   expenditure of $10 million in legal time over a four-year period, when any sort of

15   recovery was highly unlikely, evidences the heightened level of risk presented by this

16   litigation.  Similarly, the Court's *Strategic Capital* decision likely would have resulted

17   in the dismissal of the *Maine State* action after almost three years of litigation

18   involving the investment of nearly 40,000 hours of time.  Had *Maine State* been

19   dismissed, *Maine State* counsel would have sacrificed almost all of its $17.5 million in

20   lodestar and $1.7 million in expenses.  Reiser Decl., ¶¶80, 89.  These facts reflect the

21   risk undertaken at all times in the Actions and weigh heavily in favor of approval of

22   the 17% requested fee.

23        **C.    The Contingent Fee Nature of the Case and the Financial**
             **Burden Carried by Plaintiffs' Counsel**
24

25            In addition to the risks associated with complex litigation, "the risk of non-

26   payment or reimbursement of expenses [in cases undertaken on a contingent basis] is

27   a factor in determining the appropriateness of counsel's proper fee award."  *In re*

28   *Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *68-*69

- 16 -

1 (C.D. Cal. June 10, 2005); *see, e.g.*, *In re Omnivision Techs.*, 559 F. Supp. 2d 1036,

2 1047 (N.D. Cal. 2007); *WPPSS*, 19 F.3d at 1299-301.  "Contingent fees compensate

3 lawyers for the risk of nonpayment.  The greater the risk of walking away empty-

4 handed, the higher the award must be to attract competent and energetic counsel."

5 *Motorola*, 2013 U.S. App. LEXIS 16878, at *5-*6.

6      It is an established practice in the private legal market to reward attorneys for

7 taking on the risk of non-payment by paying them a premium over their normal hourly

8 rates for prevailing in contingency cases.  *See* Richard Posner, *Economic Analysis of*

9 *Law* §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market

10 value of the services rendered on a non-contingent basis are accepted in the legal

11 profession as a legitimate way of assuring competent representation for plaintiffs who

12 could not afford to pay on an hourly basis regardless of whether they win or lose.

13 *WPPSS*, 19 F.3d at 1299.

14      As noted above, the risk of no recovery in complex cases of this type is very

15 real.  As the court in *Xcel* recognized, "[p]recedent is replete with situations in which

16 attorneys representing a class have devoted substantial resources in terms of time and

17 advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc.*,

18 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Plaintiffs' Counsel have experienced this

19 risk firsthand.  For example, as stated previously, in the *Oracle Securities Litigation*,

20 Robbins Geller expended tens of millions of dollars in attorney time and expenses

21 only to see the case dismissed in its entirety at summary judgment.  *In re Oracle Corp.*

22 *Sec. Litig.*, No. C 01-988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009),

23 *aff'd*, 627 F.3d 376 (9th Cir. 2010).  Similarly, Kessler Topaz expended millions

24 litigating the *BankAtlantic Securities Litigation* through trial and a jury verdict in

25 plaintiffs' favor, only to have the court overturn the verdict and enter judgment for the

26 defendants, a judgment which was upheld on appeal.  *See In re BankAtlantic Bancorp,*

27 *Inc. Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D.

28 Fla. Apr. 25, 2011), *aff'd sub. nom, Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d

- 17 -

713 (11th Cir. 2012).  Indeed, there are numerous class actions in which plaintiffs' counsel expended thousands of hours steering their clients past summary judgment and/or trial, only to lose on appeal or on a post-trial motion and, thus, receive no remuneration whatsoever despite their diligence and efforts.[12]

Because the fee in the Actions was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  To that end, Plaintiffs' Counsel committed significant resources of both time and money to the vigorous and successful prosecution of the Actions for the benefit of the Class, strongly militating in favor of awarding the requested fee.

### D.  A 17% Fee Award Is Consistent with Awards in Similar Complex, Contingent Litigation

Courts also look to fees awarded in comparable cases to determine if the requested fee is reasonable.  *See Vizcaino*, 290 F.3d at 1050 n.4.  A 17% fee award is consistent with awards in similar complex class action litigation.  *See id.* at 1050 (awarding 28% fee of $96.8 million settlement); *Motorola*, 2013 U.S. App. LEXIS 16878, at *4-*5 (awarding 27.5% fee of $200 million settlement); *Adelphia*, 2006 U.S. Dist. LEXIS 84621, at *16 (awarding 21.4% fee in $460 million settlement); *Cardinal Health*, 528 F. Supp. 2d at 755 (awarding 18% fee of $600 million

---

[12]  *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486-CW(EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict by jury); *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608, at *1-*2 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for J.N.O.V. was denied, on appeal the judgment was reversed and the case was dismissed – after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

- 18 -

settlement); *Lucent*, 327 F. Supp. 2d at 430 (awarding 17% fee of $667 million settlement); *Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1243 (S.D. Fla. 2006) (awarding 31.33% fee of $1.06 billion settlement); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 2000 U.S. Dist. LEXIS 1734 (N.D. Ill. Feb. 10, 2000) (awarding 25% fee of $697 million settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009) (awarding 33.30% fee of $510 million settlement); *In re Checking Account*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) (awarding 30% fee of $410 million settlement); *Ohio Pub. Emps. Ret. Sys. v. Freddie Mac*, No. 03-CV-4261 (JES), 2006 U.S. Dist. LEXIS 98380 (S.D.N.Y. Oct. 26, 2006) (awarding 20% fee of $410 million settlement); *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 13, 2001) (awarding 34.06% fee of $365 million settlement); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M:02-cv-01486-PJH, slip op. MDL-02-1486 (N.D. Cal. Nov. 1, 2006) (awarding 25% fee of $326 million settlement); *In re Oxford Health Plans, Inc. Sec. Litig.*, No. MDL 1222 (CLB), 2003 U.S. Dist. LEXIS 26795 (S.D.N.Y. June 12, 2003) (awarding 28% fee of $300 million settlement); *In re DaimlerChrysler AG Sec. Litig.*, No. 00-993 (KAJ), 2004 U.S. Dist. LEXIS 31757 (D. Del. Feb. 5, 2004) (awarding 22.50% fee of $300 million settlement).  According to another recent NERA report, in cases with settlements between $100 and $499.9 million, the median fee award was 22.4%, 5.4% more than the fee being sought here. *Nera Mid-Year 2011* at 22 Figure 26.

Plaintiffs and Plaintiffs' Counsel respectfully submit, and this Court has recognized, that MBS class actions involve unique and complex issues not present in traditional securities class actions, including the risk related to unique standing, tolling, class certification, loss causation and damages issues.  Here, the Actions presented an additional layer of risk given the Court's decision that Bank of America was not legally responsible for Countrywide's liabilities in these Actions (*Maine State*, Dkt. No. 255), and Countrywide's concession that it was and still is considering

- 19 -

filing for bankruptcy protection.[13]   In the most comparable MBS settlement – the *Merrill Lynch* MBS settlement – the court awarded counsel a fee of 17% of the $315 million settlement fund.   Similarly, in the *Wells Fargo* MBS settlement, the court awarded counsel a fee of 19.75% of the $125 million settlement fund.   Accordingly, Plaintiffs' Counsel's request for a 17% fee in the more complex and successful litigation of the Actions is clearly in line with fee awards in similar securities and MBS class action litigation.

**E.   The Requested Fee Is Materially Lower than the Range of Contingent Fee Arrangements in Other Cases**

A fee based on the percentage method is also entirely consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.   As explained in *In re RJR Nabisco Sec. Litig.*, No. MDL 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y. Aug. 24, 1992):

> What should govern such [fee] awards is not the essentially whimsical
> view of a judge, or even a panel of judges, as to how much is enough in a
> particular case, but what the market pays in similar cases.

If this were a private action, the customary contingent fee would likely range between 30 and 40 percent of the recovery.   For example, the Houston law firm of Vinson & Elkins prosecuted the case of *ETSI Pipeline Project v. Burlington N., Inc.*, No. B-84-979-CA, 1989 U.S. Dist. LEXIS 18796 (E.D. Tex. June 5, 1989), on a one-third contingent fee basis.   After obtaining a $1 billion verdict at trial and subsequently settling the case for $635 million, Vinson & Elkins realized a fee of approximately $212 million.   *See* Declaration of Harry Reasoner, ¶4 (submitted in *In*

---

[13]   Karen Friefeld, *BofA could still put Countrywide into bankruptcy, executive says*, Reuters, June 10, 2013 (citing Bank of America's Chief Risk Officer's testimony: "One of the options that was available to us and continues to be available to us was to put   Countrywide   into   bankruptcy   .   .   .   ."),   *available   at* http://www.reuters.com/article/2013/06/10/us-bofa-mbs-idUSBRE95916M20130610.

866397_3

1    *re Wash. Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz. Nov. 30, 1990)

2    (attached hereto as Ex. C)).

3          Contingent fee percentages in similarly large and complicated cases are

4    likewise far in excess of the fee Plaintiffs' Counsel seek here.  In a case involving

5    NTP Inc. and Research In Motion Ltd., the company that manufactures the popular

6    Blackberry, NTP promised its law firm, Wiley Rein & Feilding ("WRF"), a one-third

7    contingent fee.  When the case settled for $612.5 million, WRF received more than

8    $200 million in fees, a 33% contingency.  Yuki Noguchi, *D.C. Law Firm's Big*

9    *BlackBerry Payday; Case Fees of More than $200 Million Are Said to Exceed Its*

10   *2004 Revenue*, Washington Post, Mar. 18, 2006, at D03 (attached hereto as Ex. D).[14]

11   **V.    THE REQUESTED FEE IS REASONABLE UNDER THE
        LODESTAR CROSS-CHECK**

12         The Ninth Circuit has held that the lodestar method "provides a check on the

13   reasonableness of the percentage award.  Where such investment is minimal, as in the

14   case of an early settlement, the lodestar calculation may convince a court that a lower

15   percentage is reasonable.   Similarly, the lodestar calculation can be helpful in

16   suggesting a higher percentage when litigation has been protracted."  *Vizcaino*, 290

17   F.3d at 1050 (approving fee award equal to 3.65 multiplier or 28% of $96.8 million

18   common fund).  Here, as in *Vizcaino*, the protracted nature of the litigation and the

19   work undertaken by Plaintiffs' Counsel as detailed herein and in the accompanying

20   Joint Declaration submitted on behalf of Robbins Gellar and Kessler Topaz and the

21   Reiser Declaration submitted on behalf of Cohen Millstein, suggests a higher

22   percentage award would be appropriate.  *Id*.

23         The lodestar method, as set forth in the seminal cases *Lindy Bros. Builders, Inc.*

24   *v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) ("*Lindy I*"),

25   and *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d

26

27   [14]  If any objections are received following this submission, Plaintiffs' Counsel will

28   address them in their reply briefing to be filed on October 21, 2013.

866397_3

102 (3d Cir. 1976) ("*Lindy II*"), is a two-step process.  *See Lindy I*, 487 F.2d at 167-68.  The first step requires ascertaining the "lodestar" figure by multiplying the number of hours reasonably worked by the current hourly rate of counsel.  *Id*. at 167.  "Calculation of the lodestar, however, is simply the beginning of the analysis."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the risk of non-payment, the result achieved, the quality of representation, the complexity and magnitude of the litigation, and public policy considerations.  *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998).  To account for the foregoing factors the court then applies an appropriate multiplier to the lodestar number.

The lodestar for the services performed by Plaintiffs' Counsel in these Actions is $40,209,519.  Therefore, the requested fee of 17% (*i.e.*, $85 million) represents a multiplier of approximately 2.11 times Plaintiffs' Counsel's collective lodestar.  This multiplier is comparable or lower than that awarded by other courts in similar cases, thus demonstrating the reasonableness of the requested fee.  *See Merrill Lynch* MBS Settlement (2.3 multiplier); *Wells Fargo* MBS Settlement (2.8 multiplier); *see also Cardinal Health*, 528 F. Supp. 2d at 755 (multiplier of 5.9 for a $108 million fee in a $600 million settlement); *Adelphia*, 2006 U.S. Dist. LEXIS 84621, at *16 (2.89 multiplier for a $97.36 million fee in a $460 million settlement); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (3.97 multiplier for a $143.7 million fee in a $1.027 billion settlement).  District Courts within this Circuit have likewise awarded similar or higher multipliers.  *See, e.g.*, *In re Brocade Sec. Litig.*, No. C 05-02042 CRB, slip op. at 13 (N.D. Cal. Jan. 26, 2009) (3.5 multiplier); *In re Veritas Software Corp. Sec. Litig.*, No. C-03-0283 MMC, 2005 U.S. Dist. LEXIS 30880, at *42-*43 (N.D. Cal. Nov. 15, 2005) (4.0 multiplier); *Buccellato v. AT&T*, No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699, at *3-*5 (N.D. Cal. June 30,

- 22 -

2011) (4.3 multiplier).   A multiplier of time is needed to reward attorneys for assuming the risk of non-payment in these highly risky, complex MBS class actions. Thus, the requested fee is reasonable under both the percentage method and the lodestar cross-check method.

## VI.   LEAD COUNSEL ARE ENTITLED TO AN AWARD OF THEIR REASONABLE LITIGATION EXPENSES

Plaintiffs' Counsel also request an award of expenses in the amount of $2,977,145, incurred in connection with the prosecution and resolution of the Actions on behalf of the Class, plus interest on such amount at the same rate as earned by the Gross Settlement Fund.   Attorneys who create a common fund for the benefit of a class are entitled to be paid from the fund for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action.   *See Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").   Expenses are compensable in a common fund case if the particular expense is of the type typically billed by attorneys to paying clients in the marketplace.[15]   The categories of expenses for which Plaintiffs' Counsel seek payment here are of the type routinely charged to paying clients and, therefore, should be awarded.

---

[15]   *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (expenses normally charged to a fee-paying client approved); *Media Vision*, 913 F. Supp. at 1366.  Decisions in other circuits confirm this practice.  *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if such charges would normally be billed to client) (citing *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990)); *Gottlieb v. Wiles*, 150 F.R.D. 174, 185 (D. Colo. 1993), *rev'd on other grounds sub nom., Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable when customary to bill clients separately for them); *Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990) (all reasonable out-of-pocket expenses recoverable because the costs are normally charged to fee-paying clients).

- 23 -

1    Plaintiffs' Counsel's expenses are itemized and described in the individual

2    declarations of Plaintiffs' Counsel submitted herewith.  These expenses include,

3    among others, court fees, service of process, experts' fees, mediation costs, online

4    legal and factual research, database hosting charges, travel costs, photocopying,

5    telephone, fax and postage expenses.  These expense items are billed separately by

6    Plaintiffs' Counsel, and such charges are not duplicated in their billing rates.

7    The Notice informed potential Class Members that Plaintiffs' Counsel would

8    apply for expenses in an amount not to exceed $4 million plus interest earned on this

9    amount at the same rate as the Gross Settlement Fund.  Accordingly, Plaintiffs'

10   Counsel respectfully request an award of Plaintiffs' Counsel's expenses, plus interest.

11   **VII.   CONCLUSION**

12   For the foregoing reasons, Plaintiffs' Counsel respectfully requests that the

13   Court award attorneys' fees of 17% of the Gross Settlement Fund and expenses of

14   $2,977,145, plus interest.

15   DATED:  September 23, 2013          Respectfully submitted,

16                                      ROBBINS GELLER RUDMAN
                                          & DOWD LLP
17                                      SPENCER A. BURKHOLZ
                                        THOMAS E. EGLER
18                                      SCOTT H. SAHAM
                                        NATHAN R. LINDELL
19                                      ASHLEY M. ROBINSON

20

21                                              s/ Spencer A. Burkholz
                                         SPENCER A. BURKHOLZ
22
                                        655 West Broadway, Suite 1900
23                                      San Diego, CA  92101
                                        Telephone:  619/231-1058
24                                      619/231-7423 (fax)

25

26

27

28

- 24 -

866397_3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KESSLER TOPAZ MELTZER
  & CHECK, LLP
ANDREW L. ZIVITZ
SHARAN NIRMUL
KIMBERLY JUSTICE
JENNIFER L. JOOST


                    s/ Andrew L. Zivitz
                  ANDREW L. ZIVITZ

280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)

Co-Lead Counsel for Plaintiffs and the Class
in the *Luther* and *Western Conference* actions

DEUTSCH & LIPNER
SETH E. LIPNER
1325 Franklin Avenue, Suite 225
Garden City, NY  11530
Telephone:  516/294-8899
516/742-9416 (fax)

THE MEHDI FIRM
AZRA Z. MEHDI
One Market
Spear Tower, Suite 3600
San Francisco, CA  94105
Telephone:  415/293-8039
415/293-8001 (fax)

Additional Counsel for Plaintiff

COHEN MILSTEIN SELLERS
  & TOLL PLLC
STEVEN J. TOLL (*pro hac vice*)
JULIE GOLDSMITH REISER (*pro hac vice*)
JOSHUA S. DEVORE (*pro hac vice*)


                    s/ Steven J. Toll
                  STEVEN J. TOLL

1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC  20005-3964
Telephone:  202/408-4600
202/408-4699 (fax)

- 25 -

866397_3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COHEN MILSTEIN SELLERS
   & TOLL PLLC
JOEL P. LAITMAN (*pro hac vice*)
CHRISTOPHER LOMETTI (*pro hac vice*)
RICHARD SPEIRS (*pro hac vice*)
DANIEL B. REHNS (*pro hac vice*)
77 Pine Street, 14th Floor
New York, NY  10005
Telephone:  212/838-7797
212/838-7745 (fax)

Lead Counsel for Plaintiffs and the Class in
the *Maine State* action only

GLANCY BINKOW &
   GOLDBERG LLP
LIONEL Z. GLANCY
MICHAEL GOLDBERG
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9106 (fax)

Liaison Counsel for Plaintiffs in the *Maine
State* action

KIRBY McINERNEY LLP
IRA M. PRESS
RANDALL K. BERGER
825 Third Avenue, 16th Floor
New York, NY  10022
Telephone: 212/371-6600
212/751-2540 (fax)

Additional Counsel for United Methodist
Churches Benefit Board. Inc.

- 26 -

866397_3

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 23, 2013.

s/ Spencer A. Burkholz
SPENCER A. BURKHOLZ

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: spenceb@rgrdlaw.com

866397_3

# Mailing Information for a Case 2:10-cv-00302-MRP-MAN

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Seth A Aronson**
  saronson@omm.com,LitigationCalendar@omm.com,skemp@omm.com

- **Randall K Berger**
  rberger@kmllp.com

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **Stephen Douglas Bunch**
  dbunch@cohenmilstein.com,efilings@cohenmilstein.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,hammer@caldwell-leslie.com, ,hong@caldwell-leslie.com,perigoe@caldwell-leslie.com,pettit@caldwell-leslie.com,records@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie

- **Matthew D Caplan**
  matthew.caplan@dlapiper.com,susan.byrd@dlapiper.com

- **Matthew W Close**
  mclose@omm.com

- **Jeffrey B Coopersmith**
  jeffcoopersmith@dwt.com,evelyndacuag@dwt.com

- **John B Daukas**
  jdaukas@goodwinprocter.com

- **Brian Charles Devine**
  bdevine@goodwinprocter.com,ABoivin@goodwinprocter.com

- **Joshua S Devore**
  jdevore@cohenmilstein.com,efilings@cohenmilstein.com

- **Rajiv S Dharnidharka**
  rajiv.dharnidharka@dlapiper.com

- **Daniel S Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com

- **Andrew A Esbenshade**
  esbenshade@caldwell-leslie.com,records@caldwell-leslie.com,harper@caldwell-leslie.com

- **John O Farley**
  jfarley@goodwinprocter.com

- **James O Fleckner**
  jfleckner@goodwinprocter.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com,MConnolly@goodwinprocter.com

- **Jeanne A Fugate**
  fugate@caldwell-leslie.com,records@caldwell-leslie.com,harper@caldwell-leslie.com

- **Michael M Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,info@glancylaw.com

- **Penelope A Graboys Blair**
  pgraboysblair@orrick.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com,lindayoung@paulhastings.com

- **Jeffrey M Hammer**
  hammer@caldwell-leslie.com

- **Sean M Handler**
  shandler@btkmc.com

- **Jennifer L Joost**
  jjoost@ktmc.com,mswift@ktmc.com

- **Matthew B Kaplan**
  mbkaplan@thekaplanlawfirm.com

- **Don M Kennedy**
  dkennedy@goodwinprocter.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Joel P Laitman**
  jlaitman@cohenmilstein.com

- **Christopher Lometti**
  clometti@cohenmilstein.com

- **Jennifer B Luz**
  jluz@goodwinprocter.com

- **Azra Z Mehdi**
  azram@themehdifirm.com,ghamilton@themehdifirm.com

- **Alexander K Mircheff**
  amircheff@gibsondunn.com,mostrye@gibsondunn.com,inewman@gibsondunn.com,cnowlin@gibsondunn.com,mpulley@gibsondunn.com

- **Nicolas Morgan**
  nicolas.morgan@dlapiper.com,docketingpaloalto@dlapiper.com,sonji.leblanc@dlapiper.com,paul.puzon@dlapiper.com

- **Sharan Nirmul**
  snirmul@ktmc.com,azivitz@ktmc.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com,dkantrowitz@goodwinprocter.com,aboivin@goodwinprocter.com,ashapiro@goodwinprocter.com

- **Kelly L Perigoe**
  perigoe@caldwell-leslie.com,records@caldwell-leslie.com

- **Ira M Press**
  ipress@kmllp.com,lmorris@kmllp.com

- **David A Priebe**
  david.priebe@dlapiper.com,carmen.manzano@dlapiper.com

- **Daniel B Rehns**
  drehns@cohenmilstein.com,efilings@cohenmilstein.com

- **Julie G Reiser**
  jreiser@cohenmilstein.com

- **Daniel P Roeser**
  droeser@goodwinprocter.com

- **Jonathan Rosenberg**
  jrosenberg@omm.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **Richard A Speirs**
  rspeirs@cohenmilstein.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com,lindayoung@paulhastings.com

- **Steven J Toll**
  stoll@cohenmilstein.com

- **Michael D Torpey**
  mtorpey@orrick.com

- **Michael C Tu**
  mtu@orrick.com,cchiang@orrick.com

- **Avi N Wagner**
  avi@thewagnerfirm.com,anwagneresq@hotmail.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,ahsia@goodwinprocter.com,cburgos@goodwinprocter.com

- **Andrew L Zivitz**
  azivitz@ktmc.com,dpotts@ktmc.com,jenck@ktmc.com,cchiappinelli@ktmc.com,acashwell@ktmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Peter            Young Hoon Cho
,

Dennis           N D'Angelo
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

Lauren           G Kerkhoff
Robbins Geller Rudman & Dowd LLP
655 West Broadway  Suite 1900
San Diego, CA 92101-8498

Lauren           Wagner Pederson
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, PA 19087

Christina        A Royce
Robbins Geller Rudman & Dowd LLP
655 West Broadway   Suite 1900
San Diego, CA 92101

Arthur           L Shingler                        , III
Scott and Scott LLP
6424 Santa Monica Boulevard
Los Angeles, CA 90038
```