1

2

3  **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
4  **WESTERN DIVISION**

5

| | |
|---|---|
| MAINE STATE RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:10-CV-00302 MRP (MANx) |
| Plaintiff, | **DECLARATION OF JULIE GOLDSMITH REISER IN SUPPORT OF MAINE STATE PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, AND PETITION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |

Date:       October 28, 2013
Time:       1:30 p.m.
Courtroom:  12
Judge:      Hon. Mariana R. Pfaelzer

| | |
|---|---|
| DAVID H. LUTHER, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:12-CV-05125 MRP (MANx) |
| Plaintiff, | |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |
| WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:12-CV-05122 MRP (MANx) |
| Plaintiff, | |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................2

PROCEDURAL HISTORY  OF THE *MAINE STATE* ACTION ...............................5

CLASS CERTIFICATION MOTION AND RELATED DISCOVERY....................14

MERITS DISCOVERY..........................................................................................16

SETTLEMENT NEGOTIATIONS .........................................................................19

TIME EXPENDED IN THE LITIGATION ..............................................................22

THE RISK, TIME, EXPENSE AND OUTCOME JUSTIFY REQUESTED
       PERCENTAGE FEE AWARD.......................................................................25

I, JULIE GOLDSMITH REISER, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## INTRODUCTION

1.     I am a partner of the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), Court-appointed Lead Counsel for the certified class in the *Maine State Ret. Sys.* litigation ("*Maine State*" or "the Litigation") and one of the attorneys for the Court-appointed Lead Plaintiff, Iowa Public Employees' Retirement System ("Lead Plaintiff" or "IPERS"). I respectfully submit this declaration in support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses.

2.     As described below, this Court appointed Cohen Milstein on May 14, 2010, as Lead Counsel in the Litigation, and Class Counsel on October 12, 2011. Also on October 12, 2011, the Court appointed as Class Representatives IPERS, the General Board of Pension and Health Benefits of the United Methodist Church ("the General Board"), Orange County Employees' Retirement System ("OCERS"), and the State of Oregon, by and through the Oregon State Treasurer and the Oregon Public Employee Retirement Board on behalf of the Oregon Public Employee Retirement Fund ("Oregon") (collectively, "Plaintiffs").

3.     The statements set forth in this Declaration are based on first-hand knowledge, about which I could and would testify competently in open Court if called upon to do so, and on records contemporaneously generated and kept by my Firm in the ordinary course of its law practice.

4.     The Settlement of the Litigation is the result of three years of hard-fought litigation, with three rounds of motions to dismiss having been fully briefed over a year-and-a-half, followed by five months of litigation pertaining to class certification, a year of intensive discovery on merits issues, the exchange of reports from a dozen experts, and eight months of settlement negotiations.

5.     This case has been accompanied by an extraordinary amount of risk in light of the dynamic state of the law in mortgage-backed securities ("MBS") litigation

brought pursuant to the Securities Act of 1933, 15 U.S.C. §77(a).  As set forth in greater detail below, the risk that investors would recover nothing or a small amount in *Maine State* existed throughout the entire litigation.

6.    The theories asserted in the litigation were novel and complex, involving asset-backed financial instruments, sophisticated defendants, and arising amidst the aftermath of the greatest financial decline since the Great Depression.

7.    The viability and vulnerability of *Maine State* stemmed from cross-jurisdictional tolling derived from the *Luther* state court litigation. Although this Court originally ruled that the *Luther* plaintiffs had tolled certain claims, and the Litigation appropriately proceeded apace for a multiple years, in its *Strategic Capital* decision the Court held that such claims could not be tolled cross-jurisdictionally.  *See FDIC as Receiver for Strategic Capital Bank v. Countrywide Fin'l Corp.*, 2012 WL 5900973 (Nov. 21, 2012) ("*Strategic Capital*").  Had the parties not reached a settlement first, defendants undoubtedly would have sought to dismiss the Litigation in its entirety based upon *Strategic Capital*.

8.    Also entirely unclear from the outset of the litigation was the appropriate breadth of the claims that Plaintiffs could assert.  After several rounds of motions to dismiss, this Court held Plaintiffs to a narrow set of tranche-based claims.  While the Second Circuit later broadly interpreted standing in the MBS context to stem from an injury arising from the same mortgage originator, and although the Supreme Court declined to review that decision, this Court disagreed with the Second Circuit's ruling. *Compare NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145 (2d Cir. 2012)*, cert. denied,* --- S. Ct. ---, 2013 WL 1091772 (Mar. 18, 2013) *with Strategic Capital*, 2012 WL 5900973, and *FDIC as Receiver for Security Savings Bank*, 12-cv-06692-MRP, slip op. 14-15 (Mar. 21, 2013).  Thus, although the Litigation originally commenced as encompassing 429 Offerings, it had been narrowed to live claims for only eight tranches.

9.    Significantly, just days after the Stipulation and Agreement of Settlement

1    (the "Stipulation")  was signed, the Second Circuit ruled that *American Pipe* tolling

2    did not apply to the Securities Act's three-year statute of repose.   *Police & Fire*

3    *Retirement System of the City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir.

4    June 27, 2013).  This Court had already concluded the opposite; but certainly if the

5    Litigation had not settled, defendants could have sought reconsideration of the Court's

6    ruling following the Second Circuit's *IndyMac MBS* decision, in addition to the cross-

7    jurisdictional  tolling  issue  already  discussed.    Had  the  Court  revisited  its  prior

8    decision, *Maine State* counsel might have recovered nothing after three years of hard-

9    fought litigation.

10          10.    The aforementioned risks of inconsistent legal rulings on novel and

11   complex issues are independent of other uncertainties surrounding this litigation.  For

12   example, defendants had repeatedly asserted – and it is entirely unknown how an

13   ultimate  fact-finder  might  rule  –  that  Plaintiffs'  losses  were  caused  not  by  any

14   infirmities with the securities offerings of which they complained, but rather by the

15   well-known  precipitous  drop  in  housing  prices  nationally;  illiquidity  of  credit  and

16   capital markets in the United States (including the secondary market on which MBS

17   are bought and sold) during the 2008 financial crisis; and other disruptions in markets

18   globally.  Additional uncertainty surrounded whether Countrywide would be placed

19   into bankruptcy and thus, become judgment proof.

20          11.    Cohen Milstein's compensation for the services rendered in this case and

21   reimbursement of expenses has been and remains wholly contingent on the outcome.

22          12.    The Cohen Milstein attorneys who were principally involved in this

23   litigation have extensive experience in litigating securities fraud and MBS class action

24   lawsuits.   Such experience allowed Cohen Milstein attorneys to litigate this case

25   efficiently and effectively.  The background, relevant qualification and experience of

26   attorneys who were principally involved in this litigation are provided in the brief

27   biographies attached hereto as **Exhibit 1**.

28          13.    Since becoming involved in this case, I have overseen the coordination of

work by attorneys representing the class in the Litigation internally and with respect to work performed by Glancy Binkow & Goldberg LLP (Liaison Counsel) as well as Kirby McInerney LLP (Counsel for the General Board).   In doing so, I have endeavored to represent the interests of the Plaintiffs and all members of the proposed class fully and completely.   We have litigated this case efficiently and avoided duplication of efforts while leveraging the varying skills and expertise of each attorney involved in the representation.  Additionally, we pursued a tailored discovery plan that ensured time spent in reviewing the tremendous document production from *New York Funds* and more narrow production in *Maine State* was targeted to the information needed to support class certification and to prove liability and damages for the eight actionable tranches.

14.    The records pertaining to the hours and expenses invested in this case by Cohen Milstein are voluminous. Therefore, I summarize Cohen Milstein's efforts to achieve a recovery on behalf of the Class in remainder of this Declaration.

## PROCEDURAL HISTORY OF THE *MAINE STATE* ACTION

15.    On January 14, 2010, certain plaintiffs, including Maine State Retirement System, filed a Consolidated Complaint for Violation of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Consolidated Complaint"), alleging claims for violation of the Securities Act of 1933 ("Securities Act") on behalf of a class of all persons and entities that purchased any securities issued in any one or more of the 429 MBS offerings identified in that Consolidated Complaint.   The action was entitled *Maine State Retirement System v. Countrywide Financial Corporation, et al.*, No. 10-cv-00302-MRP ("*Maine State*").

### *The Lead Plaintiff Motion*

16.    Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), on April 2, 2010, IPERS, Putnam Bank, the General Board, and a group of institutional investors comprised of Maine Public Employees Retirement System, Vermont Pension Investment Committee, Mashreqbank, p.s.c., Pension Trust Fund for

5

Operating Engineers, Operating Engineers Annuity Plan, and Washington State Plumbing and Pipefitting Pension Trust (the "Institutional Investor Group") filed competing motions for appointment of lead plaintiff. (ECF No. 78). On May 3, 2010, this Court entertained oral argument from all Lead Plaintiff movants.

17.    On May 14, 2010, this Court appointed IPERS as Lead Plaintiff and Cohen Milstein as Lead Counsel in *Maine State*. (ECF No. 120). In so doing, this Court denied the motions of Putnam Bank, the General Board, and the Institutional Investor Group, recognizing that IPERS met the PSLRA's statutory requirements for Lead Plaintiff by having the largest financial interest of any competing movant and otherwise demonstrating its adequacy.

### The Amended Complaint

18.    On July 13, 2010, Plaintiffs filed an Amended Consolidated Class Action Complaint ("Amended Complaint"). (ECF No. 122). The Amended Complaint was 235 paragraphs-long and the product of counsel's extensive efforts to investigate and analyze reams of materials regarding Countrywide's loan origination and purchasing, due diligence practices and disclosures concerning its residential mortgage-backed securities ("RMBS") as well as industry-wide practices. In particular, it involved a robust review and analysis of remittance reports for the relevant offerings as well as an intensive investigation into the actions ratings agencies took as to the Countrywide Offerings and work with experts to understand RMBS securitizations.

19.    The Amended Complaint was filed by Lead Plaintiff, IPERS, as well as additional named Plaintiffs and then-putative class representatives Oregon, OCERS and the General Board. It included appendices identifying each of the 429 offerings at issue by name, offering amount, date of issuance, and registration statement. Another appendix identified the underwriter(s) for each offering. A third exhibit identified the amount and percentage of each offering that was rated AAA at issuance. The *Maine State* Amended Complaint also included exhibits identifying the page numbers of all allegedly misrepresented underwriting guidelines in each of the 429 offerings.

*Plaintiffs Prepared Three Amended Complaints and Responded to Ten Dispositive Motions*

20.     Defendants vigorously and repeatedly contested Plaintiffs' allegations requiring multiple and extensive briefing even with respect to issues that federal courts had rejected universally.  Although a number of Countrywide MBS purchasers have since argued the same issues before this Court, the *Maine State* Plaintiffs were the first to encounter and respond to them.

21.     On September 13, 2010, and in response to seven motions to dismiss by defendants on August 15, 2010 (ECF Nos. 145-165), *Maine State* Plaintiffs filed a 115-page omnibus memorandum that opposed defendants' motions to dismiss and motions to strike and responded to myriad issues. (ECF No. 182).

22.     To dispute defendants' argument that Plaintiffs' claims were untimely, Plaintiffs successfully advocated that *American Pipe* tolling principles applied to claims alleged in the *Luther* case and its progeny.   Thus, tolling would have suspended the running of the statute of limitations while those state-court actions were pending.

23.     Additionally, Plaintiffs successfully argued that *American Pipe* tolling should apply to claims filed cross-jurisdictionally, noting that the *American Pipe* court itself rejected the idea that tolling violated the Rules Enabling Act.  Further, Plaintiffs explained that defendants could not claim to be surprised by Plaintiffs' allegations in light of having defended the *Luther* action (filed in 2007), thus alleviating any concern that the statute of limitations should have continued to run to prevent surprise or the loss of evidence.

24.     Plaintiffs also successfully opposed defendants' argument that the statute of repose barred their claims, since *American Pipe* tolling only is effective if it applies to the statute of repose as well as the statute of limitations.

25.     Next, Plaintiffs objected to defendants' contention that they lacked constitutional and statutory standing to pursue claims on all 429 Offerings.

Defendants argued that the state court where *Luther* was originally filed could not have had jurisdiction over offerings that a *Luther* plaintiff had not purchased, even if *Luther* plaintiffs had not disclosed what Offerings they purchased and had, instead, sought to represent a class of purchasers of all Offerings. Plaintiffs contended that *American Pipe* should have tolled all claims asserted in the *Luther* action.

26.    Plaintiffs also successfully refuted defendants' arguments that no cognizable injury was pled in the absence of a failure to receive a timely principal or interest payment on a particular mortgage-backed certificate.  Additionally, Plaintiffs successfully countered defendants' position that because the market was illiquid there could be no injury, by showing that such illiquidity is irrelevant to whether defendants' misconduct in misrepresenting the loan collateral entitles Plaintiffs to rescind their purchases.

27.    Plaintiffs also defeated defendants' arguments that the claims sounded in fraud and therefore had to have been pled with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.

28.    Although defendants insisted that loan-level allegations of underwriting defects were necessary to state a claim, Plaintiffs demonstrated that the Amended Complaint's allegations sufficiently alleged that the Offering documents contained materially false or misleading statements. Specifically, the Amended Complaint alleged that the Offering Documents failed to disclose that the stated underwriting guidelines purportedly used to originate the underlying mortgage loan collateral, including the reliance on stated maximum LTV ratios and various forms of standard appraisals, had been systematically disregarded. Plaintiffs' successfully argued that their allegations that defendants systematically deviated from their underwriting guidelines were sufficient to state a claim.

29.    Plaintiffs also successfully opposed defendants' argument that the receipt of distribution reports required Plaintiffs to plead or otherwise allege actual reliance by demonstrating that distribution reports did not meet the statutory requirement of an

"earnings statement" as set forth in 17 C.F.R. § 230.158(a).

30.    Plaintiffs further successfully argued that, consistent with statutory interpretation including SEC Rule 159A and 17 C.F.R. § 230.159A, issuing defendants are liable as statutory sellers pursuant to Section 12(a)(2). Plaintiffs also supported their contention that the Underwriting Defendants, identified for each Offering in the Amended Complaint, were statutory sellers.

31.    Finally, Plaintiffs successfully briefed why certain individual defendants should be found liable as "control persons" and in particular, defeated defendants Sambol and Spector's arguments that such allegations must be pled with particularity pursuant to Rule 9(b).  Plaintiffs noted that the Ninth Circuit does not require a plaintiff to plead culpable participation to find that control person liability exists, rather Plaintiffs need only plead that the defendant controlled a primary violator of the securities laws.

32.    On September 16, 2010, Plaintiffs opposed Bank of America's motion to dismiss (ECF No. 175) based on principles of successor liability arising from allegations that Bank of America's acquisition of Countrywide was, in fact, a *de facto* merger. (ECF No. 185).  Plaintiffs argued that California law should apply to the all-stock transaction which resulted in Countrywide's continued operation under Bank of America's name.

33.    The Court heard extensive oral argument on all eight motions to dismiss and the numerous underlying issues on October 18, 2010. (ECF No. 216).

34.    On November 4, 2010, this Court granted in part the motion to dismiss *Maine State* filed by the Countrywide Defendants, holding, among other things, that (i) plaintiffs were entitled to tolling as to both the statute of limitations and statute of repose pursuant to the *American Pipe* doctrine ("the Court accepts Plaintiffs' general proposition that they are entitled to tolling under the doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and its progeny…Moreover, rejects Defendants' argument that *American Pipe* tolling does not apply to the statute of

repose"); (ii) the *Maine State* plaintiffs had standing to sue with respect to the specific MBS offerings in which the *Maine State* plaintiffs had actually purchased ("Plaintiffs have standing only with respect to the 81 Offerings in which the named plaintiffs purchased"); and (iii) because the *Luther* plaintiffs lacked standing with respect to any MBS offerings in which they did not purchase, the statute of limitations had only been tolled on behalf of investors who purchased identical MBS offerings to those that the *Luther* plaintiffs had purchased ("The Court requires the Plaintiffs to explain in the AC on what basis the Plaintiffs believe their claims have been tolled"). *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157 (C.D. Cal. 2010). (ECF No. 222). The Court permitted Plaintiffs thirty days to amend the Amended Complaint to conform to the Court's ruling.

35. On December 6, 2010, Plaintiffs filed the Second Amended Class Action Complaint which identified each Offering purchased by both a Luther and Maine State plaintiff and narrowed the case from 429 to 14 Offerings. (ECF No. 227).

36. On December 14, 2010, the Court ordered defendants to submit supplemental briefing on the issue of tolling by January 17, 2011. (ECF No. 229). Countrywide Defendants and Defendant Sambol timely submitted additional briefing. (ECF Nos. 231 and 233).

37. On January 17, 2011, Plaintiffs sought leave to reply to defendants' supplemental submissions on tolling although the Court initially ordered that no further briefing should be submitted. Plaintiffs argued that defendants first sought to tie standing to tranches rather than offerings at oral argument and that therefore, Plaintiffs' omnibus opposition had not addressed this issue. *See, e.g.*, Hearing Tr. at 91, Oct. 18, 2010 (ECF No. 220). The Court granted Plaintiffs' request for supplemental briefing. (ECF No. 239).

38. On February 3, 2011, Maine State plaintiffs responded to defendants' Supplemental Briefing re Tolling in Support of Motion to Dismiss, filed January 17, 2011. (ECF Nos. 241-243). In particular, plaintiffs argued that at that time, none of the

fifteen federal district courts to address standing in the MBS context had limited standing to tranches purchased. Further, Plaintiffs noted that the Southern District of New York court that defendants relied upon in their briefing had merely made comments during oral argument but ultimately had issued an offering-based ruling. Plaintiffs also explained that tranche-based standing ignored the inter-connectedness and interdependence of the tranches. Finally, Plaintiffs responded to Defendant Sambol's argument that the claims against him were time-barred.

39.     In response, defendants sought and were granted the opportunity to reply to Plaintiffs' submission (ECF No. 245). Defendants filed their reply on February 17, 2011. (ECF No. 247).

40.     On March 23, 2011, the Court entertained argument for a second time on defendants' motions to dismiss, hearing argument on tranche-based standing as well as successor liability (ECF No. 251). On April 20, 2011, the Court dismissed Bank of America from the litigation (ECF No. 255).

41.     On May 5, 2011, the Court issued a separate Order Resolving Pending Motions to Dismiss (ECF No. 257). The Court held, among other things, that in order to have standing to sue, a named class plaintiff must show that it bought the same securities purchased by such putative class members ("the Court has concluded that Plaintiffs must establish they have tranche-based standing as to the securities involved here"). The Court also held that to the extent that the *Luther* plaintiffs did not themselves buy particular Certificates included in the *Luther* complaint, the relevant limitations periods continued to run with respect to those tranches, and therefore, claims as to Certificates that a *Luther* plaintiff did not buy were necessarily time-barred ("the Court holds the statute of limitations was tolled during the pendency of the Luther cases only with respect to the Certificates that the named plaintiffs purchased in those cases"). In sum, the Court's May 5, 2011 Order narrowed the scope of the Litigation to the 8 tranches that at least one of the named plaintiffs in *Maine State* and one of the named plaintiffs in *Luther* had purchased from the 429

1    Offerings that the Plaintiffs initially sought to represent.

2        42.    In addition to those standing and tolling holdings, the Court found that

3    plaintiffs' allegations regarding material misrepresentations, reliance, and injury were

4    all sufficiently pled.  The Order denied the Underwriter Defendants' motion to dismiss

5    claims against them as statutory sellers and sustained the control person liability

6    claims against the Individual Defendants and, in particular, found that the statute of

7    limitations had been tolled as to such claims against Defendant Sambol. (ECF No.

8    257).

9        43.    On May 23, 2011, Plaintiffs filed a motion for entry of judgment or other

10   relief from this Court's tranche-based standing and tolling decisions pursuant to Rule

11   54(b) of the Federal Rules of Civil Procedure or, in the alternative, 28 U.S.C. §

12   1292(b). (ECF No. 263). Plaintiffs argued that the Court's May 5, 2011 ruling

13   dramatically altered the scope of the litigation and that no other federal district court

14   had previously ruled that tranche-based standing or tolling was required.  The Court

15   denied Plaintiffs' request for appellate review on June 15, 2011. (ECF No. 286).

16       44.    On June 6, 2011, Plaintiffs filed a Third Amended Complaint (ECF No.

17   227), as directed by the Court's May 5, 2011 Order.

18       45.    On July 11, 2011, defendants filed motions to dismiss the Third

19   Amended Complaint as to three tranches where Plaintiffs had committed to purchase

20   the securities prior to issuance. (ECF Nos. 292-97).

21       46.    Plaintiffs opposed defendants' motions to dismiss on August 8, 2011.

22   (ECF No. 303).  Plaintiffs again argued that reliance is not an element of a Section 11

23   or 12(a)(2) claim and further, that SEC regulations are clear that a later-filed

24   prospectus supplement is deemed part of the registration statement on the earlier of

25   the date the supplement was "first used" or the date of the first contract of sale of the

26   securities. Therefore, Plaintiffs argued, as a matter of law, the prospectus supplements

27   were incorporated into the registration statements at the time of purchase.

28       47.    On September 13, 2011, the Court denied defendants' motion to dismiss

the Third Amended Complaint in its entirety. (ECF No. 315). Yet, in so doing, the Court recognized that loss and negative causation arguments would need to be re-visited at a later time.   ("[Defendants argue] Since the plaintiff would have been damaged with or without the statement, it follows that the statement was neither the but-for or the proximate cause of the plaintiff's harm … there are simply too many unknown facts for resolution at the motion to dismiss stage").   Extensive document and class discovery then proceeded, as discussed below.

48.    Later, on September 21, 2012, Plaintiffs filed a Renewed Motion for Modification of the Court's Orders Resolving Motions to Dismiss arising from the Second Circuit's standing decision in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145 (2d Cir. 2012), *cert. denied,* --- S. Ct. ---, 2013 WL 1091772 (Mar. 18, 2013).  (ECF No. 356). This motion was withdrawn when the parties agreed to commence mediation efforts. However, this Court has since written that it disagrees with *NECA*, "which has thrown the jurisprudence in this area into disarray." *See Strategic Capital*, 2012 WL 5900973

49.    While the parties engaged in mediation efforts, on November 21, 2012, this Court's *Strategic Capital* decision re-visited the Court's prior acceptance of cross-jurisdictional tolling (*Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157).  *See Strategic Capital*, 2012 WL 5900973 at 22.  Upon learning of this opinion, Plaintiffs immediately began researching and drafting a motion to consolidate the *Luther* action into the *Maine State* litigation.   Needless to say, had settlement efforts been unsuccessful, Plaintiffs faced the very real possibility that the Court would dismiss *Maine State* before entertaining Plaintiffs' consolidation motion which, if granted, Plaintiffs believe would have mooted the cross-jurisdictional tolling argument for dismissal. However, the Court, in its discretion, could have considered the cross-jurisdictional tolling argument before considering the consolidation motion and the time invested in three-years of litigating this action would have gone uncompensated.

50.    In total, Cohen Milstein attorneys worked 7,696 hours on briefing, legal

research, preparation for argument and argument in connection with non-settlement pleadings in this litigation, which amounts to approximately 19% of the total time Cohen Milstein billed in the Litigation.  Time spent preparing this declaration and the related motion for attorneys' fees has not been included in these totals.

### CLASS CERTIFICATION MOTION AND RELATED DISCOVERY

51.    On June 6, 2011, plaintiffs in *Maine State* moved for class certification (ECF No. 269), as directed by the Court's May 5, 2011 Order.

52.    On June 17, 2011, following a telephonic hearing, the parties stipulated to and the Court ordered a very tight schedule for class-certification such that the motion was to be fully briefed and argued by October 17, 2011. (ECF No. 287 and Ordered ECF No. 288).

53.    After several weeks of extensive negotiations, the parties submitted a stipulated proposed Order Regarding the Governing of the Treatment of Confidential Information, which the Court entered on July 15, 2011. (ECF No. 300).

54.    The parties conducted discovery solely on the issue of class certification during the summer of 2011, responding on behalf of the named plaintiffs to interrogatories and document requests and defending the depositions of class representatives IPERS, OCERS, Oregon and the General Board, as well as preparing expert reports and taking and defending expert depositions. Plaintiffs' Counsels' efforts to obtain class certification included:

- Subpoenaing documents from more than 60 custodian banks, broker dealers, market-makers and investment banks to establish pricing information for the securities at issue as well as trading histories, trading volume of the securities, and numerosity for purposes of class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.
- Engaging in motion practice in the Northern District of Illinois to compel production from one third-party.

14

- Responding to discovery requests on behalf of the named plaintiffs from six sets of defendants, including reviewing and producing 52,000 documents (the equivalent of 1.03 million pages) responsive to discovery requests and subsequently defending plaintiff depositions. This effort also included reviewing productions from plaintiffs' asset managers and investment consultants.

- Seeking to quash discovery sought from absent class members. (ECF No. 305).

- Retaining and overseeing the work of an expert who was deposed on issues pertaining to numerosity and commonality for purposes of meeting Plaintiffs' affirmative burden of demonstrating that class certification was appropriate.

- Responding to two expert reports that maintained Plaintiffs' claims were not suitable for class certification because the MBS market is inefficient, individualized issues of knowledge purportedly predominated, and there are differences in defendants' liability.

55.    On September 2, 2011, Plaintiffs filed an Amended Motion to Certify the Class, which included expert support for plaintiffs' claim that the class was sufficiently numerous and addressed how this Litigation satisfied the standards set forth in *Wal-Mart Stores, Inc. v. Dukes* 131 S. Ct. 2541, 2551, 180 L. Ed. 2d, 374, 383 (2011). (ECF No. 313).

56.    On September 30, 2011, the parties in *Maine State* stipulated to the certification of a class consisting of eight sub-classes (one for each remaining tranche), and appointing IPERS, OCERS, Oregon and the General Board as class representatives (ECF No. 323), which this Court certified on October 12, 2011. (ECF No. 327). Thereafter, Plaintiffs undertook a comprehensive notice program to inform all potential class members of the scope of the certified class and their rights as class members.  This Court approved Plaintiffs' proposed form and method of distribution

of notice on November 21, 2011 (ECF No. 337).

**MERITS DISCOVERY**

57.     In November and December 2011, the parties spent multiple weeks negotiating a Joint Case Management schedule, which they submitted on December 16, 2011 (ECF No. 340) and subsequently re-negotiated and re-submitted for approval on January 16, 2012 (ECF No. 346) following a telephonic hearing wherein the parties were directed to shorten the proposed schedule.

58.     Throughout 2012, the parties in *Maine State* engaged in merits-related discovery.  Plaintiffs' counsel reviewed, coded, and analyzed over 11 million pages of documents in this process.  Plaintiffs' counsel then took the depositions of numerous party and non-party witnesses and exchanged expert reports with defendants, as set forth below.

- In less than 12 months, Plaintiffs' counsel propounded 6, and for certain defendants 7, sets of document requests that were informed by defendants' Rule 26 disclosures, and a targeted review of the nearly 20 million pages of documents produced in the *New York Funds* litigation.
- Plaintiffs subpoenaed an additional ten entities in connection with merits discovery and in connection with their own role in performing due diligence on the actionable securities. Plaintiffs also subpoenaed and entered into a separate protective order with Bank of America for the production of the underlying loan files.  Experts reviewed the Bank of America production.  Expert time is not included as part of counsel's work in the Litigation.
- Within the same time period, Plaintiffs' counsel also sought documents and information related to the live MBS tranches from defendants and numerous non-parties, including loan files and due-diligence results.  The effort to meet and confer with defendants regarding the relevant time period, agreeable search terms, and relevant custodians of electronically

stored information took several months, as Countrywide repeatedly took the position that even custodians identified in its own Rule 26 disclosures were improper custodians for the instant litigation.  Another issue that required multiple meet-and-confer conferences was obtaining the terms used and custodians searched in the *New York Funds* litigation.

- Plaintiffs obtained for review, coding, and analysis an additional 1.7 million documents (8.2 million pages) that were produced uniquely in the *Maine State* litigation.  During the meet-and-confer process, Countrywide represented that it had retained 400 contract attorneys to review the materials being produced.

- In light of the aggressive schedule for merits discovery, Plaintiffs' counsel in *Maine State* conducted weekly meet-and-confer meetings with defendants' counsel on the status of discovery, document productions, and scheduling depositions.

- To avoid duplication from the *New York Funds Action*, *Maine State* Plaintiffs' Counsel obtained, reviewed and digested the deposition transcripts of more than 42 individuals who were deposed in the *New York Funds Action* or otherwise were interviewed by government agencies for information and testimony relevant to the present action. This task was particularly time-consuming as the deposition transcripts had been separated from the exhibits, requiring attorneys to find the relevant document based on a listing of bates numbers associated with the exhibits for a particular deposition.

- In addition, Plaintiffs' Counsel in *Maine State* had to research whether testimony before the SEC and Federal Crisis Investigation Commission could be used as evidence, as if taken in the *Maine State* litigation.

- Plaintiffs' counsel in *Maine State* reviewed privilege logs produced by the Underwriter Defendants and participated in numerous calls with the

17

Countrywide Defendants, ultimately drafting, but not filing, a motion to compel defendants to produce a rolling privilege log since merits discovery was coming to a close.

- Plaintiffs' Counsel in *Maine State* prepared for and took 30(b)(6) depositions of UBS and Deutsche Bank in connection with the Offerings they underwrote, and also prepared for and took three days' worth of 30(b)(6) depositions of Countrywide, as well as several Countrywide fact witness depositions.

- Plaintiffs fully and completely responded to more than 115 contention interrogatories and requests for admission propounded by defendants. Had defendants sought summary judgment, these responses would have formed the basis of the *Maine State* plaintiffs' opposition. Along with this task, counsel assessed whether the evidence plaintiffs intended to rely on was admissible, considering whether the materials were authenticated as business records or otherwise admissible hearsay.

59.     In total, Cohen Milstein attorneys billed approximately 26,923 hours to document discovery and related activities (*e.g.* drafting subpoenas and other requests for the production of documents).  The cumulative time spent on class certification and merits discovery other than depositions accounted for 67% of the time my firm billed in the *Maine State* litigation.

60.     Attorneys and other professionals at my firm billed separately for time spent preparing for, taking and defending depositions in the Litigation.  Collectively, we billed approximately 3,248 hours or 8% of our time in connection with the deposition program in this Litigation.

61.     Additionally, Plaintiffs' counsel in *Maine State* retained and worked with five separate experts, whose reports were due in less than seven months.  Experts provided their opinions in the following areas: the standards associated with proper underwriting and investment bank due diligence (James F. Miller); loan re-

underwriting results based on application of contemporaneous origination guidelines (Charles Cowan and Ira Holt); certificate valuation, investor losses, and damages (Michael L. Hartzmark); and loss causation and negative causation (Adam Levitin as a rebuttal expert). Plaintiffs ultimately worked with their experts on multiple drafts of expert reports to produce the final four expert reports that were submitted to defendants on September 28, 2012.  The expenses incurred in retaining these experts were borne solely by Cohen Milstein, and are detailed in **Exhibit 2**, attached hereto.

62.    Likewise, although mediation efforts had commenced, plaintiffs reviewed and worked with their experts to respond to defendants' five expert reports, in the event that mediation efforts failed, on the following topics:  whether the due diligence defense is applicable to persons other than the issuer of a registration statement (Adam C. Pritchard); loss causation and negative causation (Christopher L. Culp and Kerry Vandell); the efficacy of Countrywide's internal controls (Charles R. Lundelius, Jr.); and industry standards for underwriter due diligence (Maureen Bolton).

63.    Cohen Milstein billed approximately 253 hours in identifying and directing the work of experts in the *Maine State* litigation.   This amounts to approximately 1% of the firm's cumulative time.

## SETTLEMENT NEGOTIATIONS

64.    In late August 2012, prior to *Luther* being removed to federal court, *Maine State* plaintiffs and defendants agreed to mediate *Maine State*. Toward that end, Plaintiffs' counsel drafted a mediation statement that incorporated relevant information from the *NY Funds* production, the *Maine State* litigation and a damages analysis.   Thereafter, *Luther* was removed to this Court and the parties agreed to mediate the actions jointly.

65.    Prior to commencing any in person discussions, Plaintiffs' Counsel spent time to establish that defendants were interested in discussing a global settlement that would include all 429 Offerings at issue.   The parties then submitted detailed

mediation statements addressing their respective claims and defenses, as well as the substantial legal issues involved in the litigation that would need to be addressed, including important issues of loss causation and the estimated damages.

66.    On November 5, 2012, plaintiffs' and defendants' counsel met in person with the mediator, Prof. Eric Green, a well-known and experienced mediator with Resolutions, LLC.

67.    The November 5, 2012 session did not yield a settlement; however, a second session was scheduled for December 11, 2012.  In the interim, Plaintiffs' counsel spent substantial time analyzing the strengths of their claims and refining their damages analysis.  Plaintiffs' Counsel consulted with experts for assistance in valuing damages, individual action claims and the effect of the $8.5 billion Bank of New York Mellon settlement related to Countrywide MBS.

68.    The December 11, 2012 in-person session with Professor Green was productive, but again did not result in a settlement.

69.    Through the end of 2012 and into 2013, Professor Green assisted the parties in efforts to reach a settlement.  These discussions occurred through numerous telephone calls.  They were heavily negotiated and at times contentious, with the amounts and terms disputed until April 16, 2013 when a term sheet was executed for a settlement of $500 million following the acceptance by the parties of the mediator's proposal.

70.    Throughout the Settlement negotiations, Plaintiffs were acutely aware that Countrywide could become insolvent.  As late as June 2013, Bank of America's Chief Risk Officer testified in New York state court: "One of the options that was available to us and continues to be available to us was to put Countrywide into bankruptcy."  Karen Friefield, *BofA Could Still Put Countrywide into Bankruptcy, Executive Says,* Reuters, June 10, 2013.

71.    Throughout the extensive mediation process in these matters, Plaintiffs' Counsel advocated for the interests of all Class Members, including those Class

Members who purchased in the tranches in Category Three of the proposed settlement plan of allocation –i.e., purchasers for which no buyer of the same securities has ever come forward and expressed an interest in prosecuting a class action.   More specifically, during both the parties' formal mediation sessions and in numerous telephone conferences outside of those formal sessions, Plaintiffs' Counsel vigorously advocated for all Class Members, notwithstanding previous adverse rulings in the case.

72.   To assist in the division of the settlement amount amongst the members of the class, Plaintiffs' Counsel worked with Hon. Nancy Gertner (Ret.) to develop a fair allocation of the settlement proceeds.   Judge Gertner reviewed submissions from counsel in *Maine State* and *Luther*.   She subsequently discussed with counsel the strengths and weakness of the class members for whom there were differing considerations of the likelihood of success on any appeal of their claims' dismissal for lack of standing by the named plaintiffs.   This fair and independent process produced the proposed plan of allocation.

73.   Ultimately, Class Counsel agreed upon an allocation that awarded monies to tranches divided into three categories. The allocation of $50 million to Category Three class members, reflected that they had appellate rights and also the relative strength of those appellate rights.

74.   Additionally, after the Term Sheet was finalized, Plaintiffs' Counsel issued a request for proposals from various claims administrators to ensure that the class had the most effective and reasonably priced claims administrator.  As a result of Garden City Group's vast experience in MBS cases and also its selection as the claims administrator in the $8.5 billion Bank of America settlement, we interviewed Garden City Group to ensure we were comfortable with the services and pricing proposed.

75.   The Stipulation and Agreement of Settlement ("Settlement Stipulation"), itself the result of extensive negotiations of its detailed provisions, was agreed to on June 25, 2013.  On that day, the Parties submitted the signed Settlement Stipulation to

the Court and requested an order preliminarily approving the Settlement, certifying a settlement class, approving the notice plan, and setting the date for the fairness hearing.   The Court held two in person hearings (ECF Nos. 413, 421) and two telephonic hearings (ECF Nos. 410, 424) which involved Plaintiffs' Counsel submitting supplemental briefing (ECF Nos. 407, 414-15) before entering the Preliminary Approval Order on August 7, 2013. (ECF No. 430).

76.   As of August 31, 2013, Cohen Milstein accumulated approximately 1,100 hours in time spent negotiating the settlement, revising settlement documents, designing the Plan of Allocation and working with the Claims Administrator, Garden City Group, on a notice program. This amounts to approximately 1% of the firm's cumulative time. As explained before, this figure does not include time spent preparing this declaration or the motion for award of attorneys' fees.

77.   In sum, after significant investigation and analysis of Plaintiffs' claims and further intense legal analysis of the strength and weaknesses of the case in connection with three-years of hard-fought litigation to try to expand the Court's standing ruling, the review of numerous expert reports from defendants, the tenor of settlement negotiations and consultation with experts, Plaintiffs believe they had a strong base from which to properly evaluate the strengths and potential weaknesses of the case and the value of the lawsuit.

## TIME EXPENDED IN THE LITIGATION

78.   Through August 31, 2013, Cohen Milstein recorded a total of 40,002 hours of attorney, law clerk, and paralegal time spent on this matter, not including time for those professionals who billed fewer than 10 hours to this matter.   These hours were actually expended, in the exercise of professional judgment, by the lawyers, paralegals and clerks involved in this matter.

79.   Cohen Milstein charges for the services of its attorneys, paralegals, and law clerks on the basis of hourly rates which reflect, among other things, years of practice and experience.  The lodestar calculation is made based upon current hourly

rates for all current attorneys and staff, and, for those who are no longer employed by Cohen Milstein, upon the billing rates for such attorneys and paralegals in his or her final year of employment by the firm.  The current (or last) hourly rates for Cohen Milstein attorneys and staff who worked on this matter range from $230 to $240 for law clerks, from $240 to $275 for paralegals, and from $330 to $835 for attorneys. These hourly rates are consistent with the usual and customary hourly rates for the Firm's work performed for non-contingency fee clients.  Our Firm's hourly rates have been paid by hourly clients and, separately, approved for payment by federal and state courts in other class action litigation.

80.   Computed at their current or last hourly rates, Cohen Milstein attorneys, paralegals, and law clerks have incurred $17,568,829 in lodestar fees. **Exhibit 3** identifies individuals who recorded time to this matter, the hours they expended, and their current or last hourly rates.

81.   As set forth above, Cohen Milstein also relied on contract attorneys for assistance in class certification and merits discovery. The scope of the contract attorneys' roles is briefly described herein.

82.   In order to effectively complete the monumental task of reviewing and analyzing relevant discovery within the Court-imposed deadlines, Cohen Milstein engaged temporary attorneys to perform crucial work in this Litigation.  These attorneys' were and are referred to as "the Discovery Team." The Discovery Team's responsibilities ranged from basic document review, analysis and coding to preparing for depositions and organizing and outlining the tremendously detailed responses to the 115 contention interrogatories and requests for admission that defendants propounded.

83.   Lead Counsel structured the Discovery Team such that senior attorneys supervised more junior attorneys and acted as leaders with respect to particular issues and witnesses. As set forth in **Exhibit 4**, these senior attorneys had well-over a decade of experience in all phases of complex securities litigation.  These senior

23

attorney leaders were assigned to oversee anywhere from three to five more junior attorneys working on the Discovery Team.

84.    For example, the team leaders were involved in developing discovery protocols to ensure consistency in the review and analysis of documents. Senior attorneys also were primarily responsible for synthesizing the work of junior team members in developing topic and witness memoranda. Senior and mid-level attorneys on the Discovery Team created deposition digests and summaries from the *New York Funds* litigation and SEC testimony. Finally, senior attorneys developed timelines and outlines relevant to each tranche at issue in the Litigation. These timelines summarized the types of loans in each deal, the due diligence review performed and subsequent requests for loan repurchases or other disputes as to potential representations and warranties violations.

85.    Lead Counsel retained junior contract attorneys with prior work-experience in litigation involving MBS and structured product markets. While primarily responsible for the coding and analysis of documents, the more junior attorneys were assigned to projects that fit with his or her prior experience and served in a supporting role to assist the senior attorneys in synthesizing the discovery.

86.    The discovery team worked 23,446 hours on this Litigation. **Exhibit 4** identifies the individuals who worked as contract attorneys, their relevant background, and the type of work performed in connection with the Litigation.

87.    Cohen Milstein's lodestar figures are based upon the firm's billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in the firm's billing rates.

88.    The expenses incurred in this action are reflected in Cohen Milstein's expense records. These records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

89.    On behalf of the class, Cohen Milstein has incurred a total of $1,793,062.06 in unreimbursed expenses in connection with the prosecution of this

litigation.   These expenses were reasonably and necessarily incurred under the
circumstances of this litigation.   **Exhibit 2** provides a summary of the expenses
incurred in furtherance of this case.

90.   The largest portion of these expenses arise from retention of experts and
the use of technology to manage the litigation and the massive document production.
Of the total expenses, over $1.1 million relate to the retention of expert witnesses.
The experts and areas of work are set above at paragraph 61.

91.   Additionally, nearly $500,000 of Cohen Milstein's expenses were
incurred because of electronic document hosting and processing.   Those expenses,
which are Cohen Milstein's actual out-of-pocket expenses paid to vendors, arise
predominantly from the use of a hosted document repository with significant
technological capabilities for efficiently managing and reviewing the large scale
document productions in this matter.

### THE RISK, TIME, EXPENSE AND OUTCOME JUSTIFY REQUESTED PERCENTAGE FEE AWARD

92.   The efforts undertaken to reach the substantial result obtained in a
difficult and uncertain action, as set forth above, more than justify the award of the
request attorneys' fee of 17% of the fund.

93.   Cohen Milstein vigorously litigated this action, and the settlement was
achieved only after substantial briefing and discovery was completed as set forth at
length above, including, *inter alia*, the filing of three amended complaints; briefing
multiple motions to dismiss those complaints; conducting substantial class and fact
discovery, including review of millions of pages of documents and multiple
depositions.  Plaintiffs' Counsel could not have obtained the resulting settlement – the
largest mortgage-backed securities class action settlement ever – without expending
substantial time and effort to be prepared to litigate the case through its end.  Such
extensive work was done with no guarantee of compensation and was undertaken
solely with the expectation that if Plaintiffs' Counsel was successful would they be

compensated for their efforts and reimbursed their substantial out-of-pocket expenses.

94.   The requested fee award, 17% of the common fund, is well within the range of reasonable fee awards both under the percentage-of-recovery method endorsed in this Circuit and by a comparison to the collective lodestar of all plaintiffs' counsel.

95.   As set forth above with respect to Cohen Milstein, and in the Compendium of Individual Declarations submitted in support of Plaintiffs' Counsels' Application for Award of Attorneys' Fees and Expenses, the total lodestar of all plaintiffs' counsel is $40,209,519.  Comparing this lodestar to the requested award yields a modest multiple of 2.11, which is well within the range of reasonable multipliers and in fact on the low end given the novel issues and substantial risks faced by Plaintiffs' Counsel in litigating this action.

96.   Moreover, this award is well justified by the recovery obtained – $500 million – the largest mortgage-backed security class action recovery and among the largest class action recoveries ever.  Such results could only be accomplished by highly skilled counsel knowledgeable in the complex issues raised by the claims and defenses in the Litigation.  Indeed, Cohen Milstein is one of the most-recognized and widely respected law firms in the country focusing nearly-exclusively on representing plaintiffs in large and complex class actions, with a reputation and willingness to be able to successfully take challenging cases to trial when necessary.  More information about Cohen Milstein and its numerous successful representations can be found on the firm's website at www.cohenmilstein.com.

I declare under penalty of perjury under the laws of the District of Columbia and that the foregoing is true and correct to the best of my knowledge and that this Declaration was prepared in the District of Columbia on September 22, 2013.

Julie Goldsmith Reiser

# EXHIBIT 1

Exhibit 1



# COHEN MILSTEIN

## Firm Resume

Exhibit 1

## Cohen Milstein Sellers & Toll PLLC

For decades, Cohen Milstein Sellers & Toll PLLC has represented individuals, small businesses, institutional investors, and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities, consumer protection, civil rights/discrimination, environmental, ERISA, employment, and human rights laws. Cohen Milstein is also at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal recourse for aggrieved individuals and businesses both domestic and international. Over its history, Cohen Milstein has obtained many landmark judgments and settlements for individuals and businesses in the United States and abroad. The firm's most significant past and present cases include:

- In re Urethane Antitrust Litigation (Polyether Polyol Cases) (D. Kan.). Cohen Milstein represents a class of direct purchasers of several types of chemicals who were overcharged as a result of a nationwide price-fixing and market allocation conspiracy. Cohen Milstein was able to negotiate settlements with certain defendants totaling approximately $139 million, and proceeded to trial against the remaining defendant. Following the trial, the jury returned a verdict in favor of the class that amounted to $400 million before trebling.

- In re Vitamins Antitrust Litigation, MDL No. 1285 (D.D.C.). Cohen Milstein served as co-lead counsel for two certified classes of businesses that directly purchased bulk vitamins and were overcharged as a result of a ten year global price-fixing and market allocation conspiracy. Chief Judge Hogan approved four major settlements between certain vitamin defendants and Class Plaintiffs, including a landmark partial settlement of $1.1 billion. In a later trial before Chief Judge Hogan concerning four Class Plaintiffs' remaining unsettled Vitamin B4 (choline chloride) claims, a federal jury in Washington unanimously found Japan's second largest trading company, Mitsui & Co., Ltd., its wholly-owned U.S. subsidiary Mitsui & Co. (U.S.A.), Inc., DuCoa, LP, a choline chloride manufacturer based in Highland, Illinois, and DuCoa's general partner, DCV, Inc. liable for participating in the conspiracy and ordered them to pay $49,539,234, which is trebled to $148,617,702 under the federal antitrust laws. The case was subsequently settled against those defendants.

- Keepseagle v. Vilsack, Civil Action No. 1:99CV03119 (D.D.C.). A class of Native American farmers and ranchers allege that they have been systematically denied the same opportunities to obtain farm loans and loan servicing that have been routinely afforded white farmers by the USDA. A class was certified in 2001 by Judge Emmet Sullivan, District Judge for the U.S. District Court for the District of Columbia, and the D.C. Circuit declined USDA's request to review that decision. On October 19, 2010, the case reached a historic settlement, with the USDA agreeing to pay $680 million in damages to thousands of Native American farmers and ranchers and forgive up to $80 million worth of outstanding farm loan debt.

- In re Parmalat Securities Litigation, No. 04 MD 1653 (S.D.N.Y.). In this securities litigation case, Cohen Milstein has successfully negotiated two partial settlements totaling approximately $90 million. At the second partial settlement hearing, Judge Lewis A. Kaplan remarked that plaintiffs counsel "did a wonderful job here for the class and were in all respects totally professional and totally prepared. I wish I had counsel this good in front of me in every case." Our clients, four large European institutional investors, were appointed as co-lead plaintiffs and

- 1 -

Exhibit 1

we were appointed as co-lead counsel. Most notably, this case allowed us the opportunity to demonstrate our expertise in the bankruptcy area. During the litigation, the company subsequently emerged from bankruptcy and we added "New Parmalat" as a defendant because of the egregious fraud committed by the now-bankrupt old Parmalat. New Parmalat strenuously objected and Judge Kaplan of the Southern District of New York ruled in the class plaintiffs' favor, a ruling which was affirmed on appeal. This innovative approach of adding New Parmalat enabled the class to obtain an important additional source of compensation, as we subsequently settled with New Parmalat.

- Dukes v. Wal-Mart Stores, Inc., No. C-01-2252 (N.D. Cal.). Cohen Milstein is co-lead counsel in this sex discrimination case. In 2004, the U.S. District Court certified a nationwide class action lawsuit for all female employees of Wal-Mart who worked in U.S. stores anytime after December 26, 1998. This was the largest civil rights class action ever certified against a private employer, including approximately 1.5 million current and former female employees. That ruling was appealed, and while affirmed by the Ninth Circuit, was reversed by the Supreme Court in June 2011. Cohen Milstein argued the case for the plaintiffs-respondents in the Supreme Court. Since then, the *Dukes* action has been amended to address only the Wal-Mart regions that include stores in California, and other regional class cases have been or are soon to be filed. This litigation to resolve the merits of the claims – whether Wal-Mart discriminates against its female retail employees in pay and promotions – continues.

- Rubin v. MF Global, Ltd. (08-CV-02233, S.D.N.Y.). Acting as co-lead counsel in this class action, the Firm represented the Central States, Southeast and Southwest Areas Pension Fund which was one of the co-lead plaintiffs in the case. In September 2010, as a result of Plaintiffs' decision to appeal, the U.S. Second Circuit Court of Appeals vacated in part the lower court's dismissal of the case and remanded the case for further proceedings. In overturning the District Court decision, the Second Circuit issued a decision which differentiated between a forecast or a forward looking statement accompanied by cautionary language -- which the Appellate Court said would be insulated from liability under the bespeaks caution doctrine -- from a factual statement, or non-forward-looking statement, for which liability may exist. Importantly, the Second Circuit accepted Plaintiffs' position that where a statement is mixed, the court can sever the forward-looking aspect of the statement from the non-forward looking aspect. The Court further stated that statements or omissions as to existing operations (and present intentions as to future operations) are not protected by the bespeaks caution doctrine. Mediation followed this decision and resulted in a settlement comprised of $90 million in cash.

- Hughes v. Huron Consulting Group (09-CV-04734, N.D. Ill.). Cohen Milstein represented lead plaintiffs the Public School Teachers' Pension & Retirement Fund of Chicago and the Arkansas Public Employees Retirement System ("APERS") in this case against Huron Consulting Group, founded by former Arthur Anderson personnel following its collapse in the wake of the Enron scandal. In August 2010, the District Court for the Northern District of Illinois denied defendants' motions to dismiss in their entirety and upheld plaintiffs' allegations that defendants intentionally improperly accounted for acquisition-related payments, which allowed plaintiffs to move forward with discovery. The case was settled for $40 million, comprised of $27 million in cash and 474,547 shares in Huron common stock, with an aggregate value at the time of final approval in 2011 of approximately $13 million.

- In re Lucent Technologies Securities Litigation, Civ. Action No. 00-621 (JAP) (D.N.J.). A settlement in this massive securities fraud class action was reached in late March 2003. The

- 2 -

Exhibit 1

class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever completed. Cohen Milstein represented one of the co-lead plaintiffs in this action, a private mutual fund.

- <u>RehabCare</u>, Civil Action No. 6197 (Delaware Court of Chancery). Cohen Milstein served as co-lead counsel in this shareholder litigation challenging the acquisition of healthcare provider RehabCare Group, Inc. by Kindred Healthcare, Inc. A settlement was approved in September 2011 and provided for additional disclosures regarding the process leading up to the merger along with a $2.5 million payment for the benefit of the class of RehabCare shareholders.

- <u>Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al.</u>, Civil Action No. 00-015 (Knox County Superior Court, Me.). In 2004, a state court jury from Maine found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries. The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy. After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million. The Firm served as co-lead counsel.

- <u>In re StarLink Corn Products, Liability Litigation</u>, MDL No. 1403. (N.D. Ill.). Cohen Milstein successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds. StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption. However, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply. The Firm, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003. This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

- <u>In re Diet Drug Litigation (Fen-Phen)</u>, MDL No. 1203 (E.D. Pa.). As a member of the Plaintiffs' Management Committee and Sub-Class Counsel, Cohen Milstein played a major part in the success of the Fen-Phen diet drug litigation and settlement (*In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, MDL 1203). Cohen Milstein and other plaintiffs' counsel achieved the largest settlement ever obtained in a mass tort case - $3.75 billion – on behalf of millions of U.S. consumers who used Pondimin (fenfluramine) or Redux (dexfenfluramine), either alone or in combination with phentermine, diet drugs that are associated with heart valve damage.

- <u>Snyder v. Nationwide Mutual Insurance Company</u>, No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.). Cohen Milstein served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force. The action alleged consumer fraud and misrepresentations. Plaintiffs obtained a settlement valued at more than $85 million. The judge praised the efforts of Cohen Milstein and its co-counsel for having done "a very, very good job for all the people." He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- 3 -

Exhibit 1

- Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al., No. 1:01CV02313 (D.D.C.). Cohen Milstein has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations brought by the Federal Trade Commission and State Attorneys General offices.

- Kruman v. Christie's International PLC, et al., Docket No. 01-7309. A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action. Cohen Milstein served as one of three leading counsel on behalf of foreign plaintiffs. The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation. The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- In re Infant Formula Consumer Antitrust Litigation (multiple state courts). Cohen Milstein instituted price-fixing cases on behalf of indirect-purchasers in 17 states under state antitrust laws against three companies who conspired to drive up the price of infant formula. The cases resulted in settlements of $64 million for purchasers of infant formula.

- Domestic Air Transportation Antitrust Litigation (N.D. Ga.). Plaintiffs alleged a conspiracy among major airlines to set prices. In one of the largest consumer class actions ever brought to a successful conclusion, Cohen Milstein was one of the lead counsel and obtained a settlement of travel discounts and cash totaling $458 million for the class of individuals and businesses.

- In re The Exxon Valdez Litigation, No. A89-095 Civ. (D. Ak.). The firm was selected from dozens of law firms around the country by federal and state judges in Alaska to serve as co-lead counsel for plaintiffs in the largest environmental case in United States history that resulted in a jury verdict of more than $5 billion (reversed and remanded for revised punitive damages award; further proceedings pending).

- Holocaust Litigation. In the historic Swiss Banks litigation, Cohen Milstein served, *pro bono*, as co-lead counsel for Holocaust survivors against the Swiss banks that collaborated with the Nazi regime during World War II by laundering stolen funds, jewelry and art treasures. Cohen Milstein obtained a $1.25 billion settlement, leading the presiding judge to call the firm's work "indispensable." *See In re Holocaust Victim Assets Litig.*, Case No. CV 96-4849 (ERK) (MDG) (Memorandum of Chief Judge Korman dated July 26, 2002). The Firm was also a lead counsel in litigation by survivors of World War II-era forced and slave labor in litigation against the German companies that profited from using the labor of concentration camp inmates. This litigation, which resulted in an unprecedented settlement of $5.2 billion, was resolved by multinational negotiations involving the defendants, plaintiffs' counsel, and the governments of several countries for approximately two million claimants.

- 4 -

Exhibit 1

Cohen Milstein has contributed over tens of thousands of hours of time to human rights and *pro bono* cases since 1996. As an example, the Firm represented eight survivors and/or families of the victims of the September 11, 2001 attack on the Pentagon before the Federal compensation fund. Cohen Milstein has obtained a substantial recovery for each, including the highest recovery to date, $6.8 million, for an injured individual.

- Roberts v. Texaco, Inc., 94-Civ. 2015 (S.D.N.Y.). Cohen Milstein represented a class of African-American employees in this landmark litigation that resulted in the then-largest race discrimination settlement in history ($176 million in cash, salary increases and equitable relief). The Court hailed the work of class counsel for, *inter alia,* "framing an imaginative settlement, that may well have important ameliorative impact not only at Texaco but in the corporate context as a whole …".

- Conanan v. Tanoue, No. 00-CV-3091 (ESH). Cohen Milstein represented African-American employees at the Federal Deposit Insurance Corporation (FDIC) in this race discrimination suit, which settled for $14 million. The settlement provides the largest payment made in an employment discrimination class action based on race against a federal agency.

- Trotter v. Perdue Farms, Inc., Case No. 99-893 (RRM) (JJF) (MPT), D. Del. This suit on behalf of hourly workers at Perdue's chicken processing facilities – which employ approximately 15,000 people – forced Perdue to pay employees for time spent "donning and doffing," that is, obtaining, putting on, sanitizing and removing protective equipment that they must use both for their own safety and to comply with USDA regulations for the safety of the food supply. The suit alleged that Perdue's practice of not counting donning and doffing time as hours worked violated the Fair Labor Standards Act and state law. In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices. In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits. Cohen Milstein was co-lead counsel.

In addition, Cohen Milstein is an innovator in new areas of the law. Cohen Milstein was in the forefront of filing antitrust claims on behalf of indirect purchasers in 1993 and 1994, when it filed state-court actions in 18 states on behalf of indirect purchasers of infant formula. This was the first effort to systematically and simultaneously pursue treble damages claims on behalf of indirect-purchasing consumers in all states where antitrust laws permitted such claims. This approach, and variations of it, has since become the accepted model for pursuing antitrust damages on behalf of indirect-purchasing consumers. The Firm also has been in the forefront of the development of international antitrust theory and litigation of claims. As the global economy has produced worldwide conglomerates, so, too, has the nature of antitrust violations changed. For example, in *Kruman v. Christie's International PLC, et al.* Docket No. 01-7309 and *In re Bulk Vitamins Antitrust Litigation,* MDL 1285 (D.D.C.), both the parties and the anticompetitive actions were played out on a world, rather than domestic, stage. The firm also represents and won Lead Plaintiff status for domestic and foreign investors in a foreign company's bonds, in a PSLRA litigation being pursued in the United States, *In re Parmalat Securities Litigation,* Master Docket 04 Civ. 0030 (LAK) (S.D.N.Y.).

Cohen Milstein has also served as lead or co-lead counsel, or on Plaintiffs' Executive Committee(s), in many dozens of antitrust, securities, consumer protection or product liability, civil rights, and human rights class action cases.

- 5 -

Exhibit 1

**Awards & Recognition**

In 2013, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fifth year in a row.

In 2013, Cohen Milstein attorneys Joseph Barton, Andrew Friedman, Agnieszka Fryszman, Karen Handorf, Kit A. Pierson, Julie G. Reiser, Joseph M. Sellers, Daniel A. Small, Daniel S. Sommers, Steven J. Toll, and Christine E. Webber were selected as **Washington DC Super Lawyers**.

In 2013, Cohen Milstein attorneys Joshua Devore and Michelle Yau were selected as **Washington DC Rising Stars** by Super Lawyers.

In 2013, Cohen Milstein Partner Carol V. Gilden was selected as a **2013 Illinois Super Lawyer**.

In 2012, for the second-year in a row, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

In 2012, Cohen Milstein was the recipient of the Judith M. Conti Pro Bono Law Firm of the Year Award from the Employment Justice Center.

In 2012, Cohen Milstein was recognized as a "Highly Recommended Washington, DC Litigation Firm" by Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys.

In 2012, Cohen Milstein was ranked as a top firm by the 2011 SCAS Report on Total Securities Class Action Settlements.

In 2012, Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States by the Legal 500 for the fourth year in a row.

In 2012, Partner Joseph M. Sellers was selected as a **Washington DC Super Lawyer**.  Mr. Sellers was also selected for this prestigious award in 2007, 2008, 2009, 2010, and 2012.

In 2012, Partner Steven J. Toll was selected as a **Washington DC Super Lawyer**.  Mr. Toll was also selected for this prestigious award in 2007, 2009, 2010, and 2011.

In 2012, Partner Daniel S. Sommers was selected as a **Washington DC Super Lawyer**.  Mr. Sommers was also selected for this prestigious award in 2011.

In 2012, Partner Christine E. Webber was selected as a **Washington DC Super Lawyer**.  Ms. Webber was also selected for this prestigious award in 2007.

In 2012, Partner Agnieszka M. Fryszman was selected as a **Washington DC Super Lawyer**.

In 2012, Partner Kit A. Pierson was selected as a **Washington DC Super Lawyer**.

In 2012, Partner Carol V. Gilden was selected as an **Illinois Super Lawyer**.  Ms. Gilden was also selected for this prestigious award in 2005, 2006, 2007, 2008, 2009, 2010, and 2011.

- 6 -

Exhibit 1

In 2011, Cohen Milstein was selected to the *National Law Journal* **Plaintiffs' Hot List**.

In 2011, Partner Joseph M. Sellers was selected as a **"Visionary"** by The *National Law Journal*.

In 2011, Partner J. Douglas Richards, Of Counsel Joel Laitman, and Of Counsel Christoper Lometti were selected as **New York - Metro Super Lawyers**.

In 2011, Partner Joseph M. Sellers and the *Keepseagle v. Vilsack* team were selected as a finalist for the **2011 Trial Lawyer of the Year Award** from the Public Justice Foundation.

In 2011, **Cohen Milstein was ranked as a Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500 for the third year in a row.

In 2011, Partners Steven Toll, Joseph Sellers, and Daniel Sommers were selected as **Washington DC Super Lawyers**. Partner J. Douglas Richards, Of Counsel Joel Laitman and Christoper Lometti were selected as **New York - Metro Super Lawyers**. Partner Carol Gilden was selected as an **Illinois Super Lawyer**.

In 2011, Cohen Milstein was a recipient of The *National Law Journal's* **Pro Bono Award**. The Firm was named one of the "six firms that best reflect the pro bono tradition."

In 2010, Partner Joseph M. Sellers was selected as one of **"The Decade's Most Influential Lawyers"** by *The National Law Journal*.

In 2010, Partner Steven J. Toll was named one of Law360's **"Most Admired Attorneys"**.

In 2010, Partner Andrew N. Friedman was selected as a **Washington DC Super Lawyer**.

In 2010, Partner Linda Singer was selected as one of **"Washington's Most Influential Women Lawyers"** by *The National Law Journal*.

In 2010, Partner Agnieszka M. Fryszman was selected as a finalist for the **Trial Lawyer of the Year Award** from the Public Justice Foundation.

In 2010, Partners Joseph M. Sellers and Agnieszka M. Fryszman were both selected as one of the **Lawdragon 500 Leading Lawyers in America**.

In 2010, Cohen Milstein was once again ranked as a **Leading Plaintiff Class Action Antitrust Firm in the United States** by the Legal 500.

In 2009, Partner Steven J. Toll was named a **Top Attorney in Corporate Litigation for Securities Litigation** by Super Lawyers.

In 2009, Partners Joseph M. Sellers and Christine E. Webber were named as **Top Washington Lawyers** by the Washingtonian Magazine.

In 2009, Cohen Milstein was recognized as **one of the top 50 law offices in Washington D.C. for diversity efforts**.

- 7 -

36

Exhibit 1

In 2009, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the third year in a row.

Cohen Milstein ranked as a **2009 Leading Plaintiff Class Action Antitrust Firm in the United States** by *The Legal500*.

The **2008 SCAS Report on Total Securities Class Action Settlements** ranked Cohen Milstein as a top firm for the second year in a row.

In 2008, Cohen Milstein was nominated for the prestigious **Class Action Law Firm of the Year** award by Global Pensions magazine for the second year in a row.

In 2008, Managing Partner Steven J. Toll was named one of Lawdragon's **100 Lawyers You Need to Know in Securities Litigation.**

In 2008, Steven J. Toll and Joseph M. Sellers were both named as one of Lawdragon's **"500 Leading Lawyers in America."**

**500 Leading Plaintiffs' Lawyers in America**
Lawdragon
January-February, 2007

**Top Antitrust Plaintiffs' Firm**
Competition Law 360
February 14, 2007
Cohen Milstein named #1

Joseph M. Sellers was selected by his peers to be included in the 2007 edition of **The Best Lawyers in America®** in the specialty of Civil Rights Law.

**Beacon of Justice Award -** For Cohen Milstein's work on the Guantanamo cases.
From the National Legal Aid and Defender Association
Summer 2007

**Fierce Sister Award -** For Cohen Milstein's work on the comfort woman case.
Summer 2007

**The Plaintiffs' Hotlist**
The National Law Journal
October 9, 2006

**Runner up for Matter of the Year**
Global Competition Review
February, 2005
On Empagran matter, praised for ingenuity in how the case was prosecuted

- 8 -

Exhibit 1

### Attorney Profiles – Partners

**Steven J. Toll**

Steven J. Toll joined the Firm in 1979 and has been lead or principal counsel in some of the most highly publicized stock fraud cases for over 30 years. He has been Managing Partner of the Firm since 1997 and is co-chair of the Securities Fraud/Investor Protection practice group. Mr. Toll was profiled in the February 1996 *Washington Business Journal* as one of five attorneys that stand out as the "cream of the crop" in the Washington D.C. legal community. *Lawdragon* named him as one of the 500 Leading Lawyers in America in 2006-07-08, as well as naming him one of the 100 Lawyers You Need to Know in Securities Litigation in 2008. In 2010, Mr. Toll was named to *Law360*'s "Most Admired Attorneys".

In July 2005, Mr. Toll was lead trial counsel in one of the few securities class actions to go to trial involving Globalstar, a satellite manufacturer. Mr. Toll successfully argued the motions before and during trial and ultimately achieved a settlement of $20 million shortly before the case was scheduled to go to the jury. In approving the settlement, U.S. District Judge Kevin Castel remarked that Mr. Toll and his colleagues had "done a terrific job in presenting the case for the plaintiffs."

Some of Mr. Toll's other notable cases include those against Lucent Technologies, which was settled in 2001 for approximately $575 million, at the time, the second largest securities class action settlement ever achieved; *Converium*, where he negotiated a global settlement in the U.S. courts and the courts in Amsterdam of $135 million; *MF Global*, where he helped negotiate a settlement of $90 million; *Southmark Securities Litigation*, where he helped achieve a settlement of $70 million from the company's auditors, Drexel Burnham and Michael Milken; *Norman v. Salomon Smith Barney*, where he negotiated a $50 million settlement on behalf of customers of Salomon's Guided Portfolio Management Program, who alleged that Salomon invested their money in companies in order to boost Salomon's investment banking business; and the mortgage-backed securities case involving Lehman Brothers where he negotiated a settlement of $40 million.

Mr. Toll also served as co-lead counsel in one of the most publicized frauds of the 1990s -- Cascade International (S.D. Fla.) where the mastermind of the fraud, Victor Incendy, is still a fugitive from justice. The case settled on the eve of trial against Raymond James Inc. -- the only securities class action ever successfully litigated against a brokerage firm for its role as a research analyst.

Mr. Toll is currently co-lead counsel in the BP Securities Litigation, a major case stemming out of the Deepwater Horizon explosion in 2010 and BP's process safety disclosures. He led the Firm's team as co-lead counsel in one of the most highly publicized fraud cases of this era, the securities fraud class action involving Parmalat, the Italian dairy manufacturer; the case is known as Europe's "Enron," because of the similarities of the fraudulent schemes and the non-existence of billions of dollars of assets that had been recorded on Parmalat's financial statements. That case was settled for $90 million. He is also lead counsel in a mortgage-backed securities case involving Countrywide and Washington Mutual.

He has written for and spoken at various conferences about securities law and corporate governance issues, including, *inter alia, The Plaintiffs' Perspective, Securities Regulation and the New Law*, National Legal Center for the Public Interest, No. 1, Sept. 1996; *The Sarbanes-Oxley Bill Provides No Assistance To Investors Seeking To Recovery From Corporate Fraud*, ABA Annual Meeting, August 2002; *The Analyst Cases Involving Merrill Lynch, and Its Internet Analyst Henry Blodget, and*

- 9 -

Exhibit 1

*Salomon Smith Barney and Its Telecommunications Analyst Jack Grubman, Mass Torts Made Perfect* (presented January 2003); and *Coming to Terms with Loss Causation after Dura: A Response to Professors Portnoy, Ferrell, and Saha*, The Journal of Corporation Law, Fall 2009.

Mr. Toll is an honors graduate of the Wharton School of the University of Pennsylvania (B.S., Accounting, *cum laude*, 1972). He graduated from Georgetown University Law Center (J.D., 1975) where he was Special Project Editor of the Tax Lawyer.

Mr. Toll is admitted to practice in Virginia and the District of Columbia.

**Joseph M. Sellers**

Joseph M. Sellers, a Partner at the Firm and head of the Civil Rights & Employment practice group, joined Cohen Milstein in 1997.

Mr. Sellers has represented victims of discrimination and other illegal employment practices individually and through class actions. He has tried several civil rights class actions to judgment before juries and has argued more than 25 appeals in the federal and state appellate courts, including the United States Supreme Court. He has served as class counsel, and typically lead counsel, in more than 30 civil rights and employment class actions.

Those cases have included: serving as lead counsel in *Keepseagle v. Vilsack* (D.D.C.), which resulted in a settlement providing $760 million of relief and broad injunctive relief to Native American farmers and ranchers who were denied loans or loan servicing by the United States Department of Agriculture. In approving the settlement, the Court commended counsel saying, "[i]t's probably the best negotiated agreement that this court has seen in its experience . . . the terms of this settlement are historic," and Cohen Milstein has "demonstrated the highest level of skills and professionalism." In addition, Mr. Sellers represented a class of women alleging sex discrimination in promotions and compensation in *Dukes v. Wal-Mart Stores, Inc.* (N.D. Cal.), where he presented oral argument on their behalf before the United States Supreme Court and continues to represent them in regional class actions formed in the wake of the Supreme Court's ruling; he has successfully represented a class of more than 28,000 women employees at Boeing facilities in Washington state in *Beck v. Boeing Company* (W.D. Wash.), where they alleged sex discrimination in compensation and promotion practices and overtime decisions; *Conway, et al. v. Deutsch* (E.D. Va.), involving a class of female covert case officers at the CIA alleging sex discrimination in promotions and job assignments; *Johnson v. Freeh* (D.D.C.), involving a class of African-American FBI special agents alleging racial discrimination in promotion and job assignments; *Neal v. Director, D.C Dept. of Corrections* (D.D.C.), the first sexual harassment class action tried to a jury on behalf of a class of women correctional employees and women and men subject to retaliation at the D.C. Department of Corrections; and *Trotter v. Perdue Farms* (D. Del.), involving a company-wide collective action brought under the Fair Labor Standards Act for violations of federal wage and hour law.

Throughout his career, Mr. Sellers has also been active in legislative matters. He has testified more than 20 times before Committees of the United States Senate and House of Representatives on various civil rights and employment matters. He worked on the passage of the Civil Rights Act of 1991, the Americans with Disabilities Act of 1990, and the Lily Ledbetter Fair Pay Restoration Act of 2009.

Mr. Sellers has trained lawyers at the U.S. Equal Employment Opportunity Commission and the U.S. Department of Justice on the trial of civil rights cases and has lectured extensively throughout the

- 10 -

Exhibit 1

country on various civil rights and employment topics. He was an Adjunct Professor at the Washington College of Law at American University, where he taught Employment Discrimination law, and at the Georgetown University Law Center, where he taught Professional Responsibility.

He served on the Obama/Biden Transition Team in 2008 and the Clinton/Gore Transition Team in 1992 and 1993. He also served as a Co-Chair of the D.C. Circuit Task Force on Gender, Race and Ethnic Bias to which he was appointed by the judges of the D.C. Circuit Court of Appeals and the U.S. District Court for the District of Columbia.

At the request of the Ford Foundation and the American Bar Association, Mr. Sellers delivered a series of lectures and designed and delivered a mock trial on civil rights law to Chinese judges, lawyers and other government officials in China.

Mr. Sellers was recognized as one of the top lawyers in Washington and as one of the top 10 plaintiffs' employment lawyers in the country. In 2010, he was recognized as one of "The Decade's Most Influential Lawyers" by The National Law Journal, in 2011 he was recognized as a Visionary in the legal profession by The Legal Times and in 2012 he was given the Wiley A. Branton Award by the Washington Lawyers' Committee for Civil Rights and Urban Affairs for his leadership in civil rights. He is served as a professionally-trained mediator and has served as the President of the Washington Council of Lawyers.

Prior to joining Cohen Milstein, Mr. Sellers served as head of the Employment Discrimination Project of the Washington Lawyers' Committee for Civil Rights and Urban Affairs for over 15 years.

Mr. Sellers received a J.D. from Case Western Reserve School of Law (1979), where he served as Research Editor of the Case Western Reserve Law Review, and a B.A. in American History and Literature from Brown University (1975).

Mr. Sellers is admitted to practice in the District of Columbia.

**Lisa M. Mezzetti**

Lisa Mezzetti, a Partner at Cohen Milstein, joined the Firm in 1984, and is a member of the Securities Fraud/Investor Protection and the Consumer Protection & Unsafe Products practice groups.

In her securities work, Ms. Mezzetti has represented the corporate plaintiff in a private litigation alleging damages from the purchase of a healthcare technology company; in a separate matter, she represented 1,900 plaintiffs in a series of 25 federal court suits concerning municipal bonds. Her shareholder class actions include *In re VeriSign Securities Litigation* (settled for approximately $78 million); *Murphy, Derivatively On Behalf of Nominal Defendant National Health Laboratories Inc. v. Perelman* (Cal. Super. San Diego Cty.) (global settlement of class and derivative litigations for total of $65 million); *Flecker v. Hollywood Entertainment Corp.* (D. Or.) ($15 million settlement, reached the day before trial was to begin); *Biben v. Card* (W.D. Mo.)(93% of class members' damages recovered in settlement) and, currently, *In re Parmalat Securities Litigation* (S.D.N.Y.), which is litigating one of the alleged largest corporate frauds in European history (thus far, settlements totaling approximately $85 million). She also has represented parties in securities arbitrations (both as claimant's counsel or defense counsel for the broker) and defended clients in investigations and enforcement actions of the Securities and Exchange Commission.

- 11 -

Exhibit 1

In consumer cases, Ms. Mezzetti is or was one of the lead counsel in *In re Lupron Marketing and Sales Practices Litigation* (D. Mass.) (brought against pharmaceutical companies on pricing policies and methods; combined $150 million settlement); *Howard v. Ford Motor Co.* (Cal. Sup. Ct.) (order of the Court on equitable count required prospective recall of 1.7 million cars; settled immediately before scheduled second jury trial); and *Fischl v. Direct Merchants Credit Card Bank, N.A.* (Henn. Cnty. Minn.) (brought by credit card consumers, alleging improper charges and payment processes; settlement included credits for overpayments and changes in business practices). She has litigated class actions under the ERISA laws, and brought one of the first class actions filed under the federal Family and Medical Leave Act.

Ms. Mezzetti is a public arbitrator for FINRA (the Financial Industry Regulatory Authority), hearing disputes between customers and brokers. She regularly speaks at legal education seminars and has been quoted in the media on issues concerning both consumer law and securities class actions. On securities issues, she has spoken on foreign class actions and the protection of foreign shareholders in U.S. class actions, and on settlement concerns. She also speaks on corporate governance issues at conferences of institutional investors, and was a guest panelist on a Washington, D.C. cable television show concerning hiring and working with stock brokers and financial advisors. On consumer issues, Ms. Mezzetti has been a panelist at the Federal Trade Commission's Workshop on Consumer Class Actions and at an annual conference of the Association of Trial Lawyers of America on unfair trade practices and deceptive trade practices statutes. The transcript of the FTC workshop, and her related article, *The Coupon Can Be the Ticket: The Use of "Coupon" and Other Non-Monetary Redress in Class Action Settlements* (co-authored with Whitney Case) are published at 18.4 Geo. J. Legal Ethics 1431 (2005).

Before joining Cohen Milstein, Ms. Mezzetti was a litigation associate of Shea & Gould of New York City.

Ms. Mezzetti serves as a member of the Boards of Directors of The International Alliance for Women (a global umbrella organization that unites, supports and promotes professional women and their networks) and The Financial Women's Association of New York. She has served on the D.C. Advisory Board of The Joffrey Ballet of Chicago.

Ms. Mezzetti graduated from the Columbia School of Law, Catholic University of America in 1980, where she served as a Vice-Chancellor of the Moot Court Board. In 1986, she received a Master of Laws degree, with a specialty in Securities Regulation, from Georgetown University Law Center. Her bachelor's degree was awarded by Stonehill College (B.A., English., *magna cum laude*, 1977).

Ms. Mezzetti is admitted to practice in the District of Columbia and New York.

### Andrew N. Friedman

Andrew Friedman, a Partner at the Firm, joined Cohen Milstein in 1985. He is a member of the Securities Fraud/Investor Protection practice group and the head of the Consumer Protection & Unsafe Products practice group.

Mr. Friedman has been involved in many successful securities class actions. In July, 2005, Mr. Friedman served as one of lead trial counsel at the trial of a certified class action in *In re Globalstar Securities Litigation* in the United States District court for the Southern District of New York. Near

- 12 -

Exhibit 1

the end of the second week of trial, a cash settlement of $20 million was reached for the benefit of the certified class. The settlement was approved by Judge P. Kevin Castel, who was highly complimentary of counsel: "This case has been litigated by top trial lawyers, each of whom, as to both lead counsel and the other counsel in the case, have been exceptionally fine in their presentation of the evidence. Mr. Toll, Mr. Friedman, Mr. Shalov, their colleagues Mr. Devore, Ms. Peterson, have all done a terrific job in presenting the case for the plaintiffs."

In addition, Mr. Friedman served as one of co-lead or principal counsel in *Norman Frank et al. v. David L. Paul* (recovery of over $18 million); *In re Jiffy Lube Securities Litigation* (D. Md.) (recovery of over $12 million); and *In re Immunex Securities Litigation* (W.D. Wash.) (recovery of $14 million, then the largest securities class action settlement in Seattle). Mr. Friedman was one of the Firm's attorneys selected by the County of Cuyahoga, Ohio to prosecute a lawsuit that sought to recover losses from the County's Secured Assets Fund Earnings Program (S.A.F.E.). The lawsuit alleged that broker/dealers and a financial institution assisted the County in engaging in unsuitable and inappropriate investments and trading activity. The case settled favorably for $9.5 million.

In the consumer protection area, Mr. Friedman has been instrumental in securing significant recoveries on behalf of thousands of consumers. He was one of the principal counsel in *Snyder v. Nationwide Mutual Insurance Company* (Sup. Ct., Onondaga Cnty, N.Y.), a class action that resulted in a settlement valued at between $85 million and $103 million. As one of two co-lead counsel in a class action against Thomson Consumer Electronics, Mr. Friedman reached a court-approved agreement that made up to $100 million available for persons who paid for unreimbursed repairs to televisions. He was also part of the plaintiffs' team that secured nationwide benefits for GM vehicle purchasers as the result of defective automobile engine coolants. *In re General Motors Dex-Cool Products Liability Litigation* (S.D. Ill).

Mr. Friedman has been a speaker on numerous panels for legal education seminars and institutional investor conferences on the issues of securities class actions, securities fraud monitoring, accounting fraud and corporate governance. He was featured in a November 15, 1997 Washington Post article about securities class actions and profiled in the April 14, 2000 edition of The Washington Business Journal. In 2007, Lawdragon named Mr. Friedman as one of the 3,000 Leading Plaintiffs' Lawyers in America and in 2011, he was named to the Super Lawyers 2011 Business Edition for litigation.

Prior to joining Cohen Milstein, Mr. Friedman served as an attorney with the U.S. Patent and Trademark Office.

Mr. Friedman graduated from Tufts University with a B.A. in Psychology (1980, *magna cum laude*, Phi Beta Kappa) and is a 1983 graduate of the National Law Center, George Washington University.

Mr. Friedman is admitted to practice in the District of Columbia and New York.

**Daniel S. Sommers**

Daniel Sommers, a Partner at the Firm, joined Cohen Milstein in 1988. He is co-chair of the Firm's Securities Fraud practice group and is a member of the Firm's Executive Committee.

During his career at Cohen Milstein, Mr. Sommers served as lead or co-lead counsel or otherwise played a significant role in securities class actions in federal courts throughout the United States. He currently represents institutional investors including, among others, the New York State Common Retirement Fund, the Ohio Public Employees Retirement System, the State Teachers Retirement

- 13 -

Exhibit 1

System of Ohio, and the Arkansas Public Employees Retirement System. He is one of the lead counsel for investors in significant securities litigation matters including *In re BP plc Securities Litigation* (S.D. Tex.) and in *In re Bear Stearns Mortgage Pass Through Certificates Litigation* (S.D.N.Y.), and is also currently involved in the prosecution of the *In re Fannie Mae Securities Litigation* (D.D.C.). In addition, Mr. Sommers serves as one of the lead U.S. counsel for investors in *In re Converium (Scor) Securities Litigation*, where he utilized the Dutch Collective Action Statute to obtain a groundbreaking opinion from the Amsterdam Court of Appeal approving a world-wide settlement on behalf of non-U.S. investors.

Mr. Sommers has obtained significant recoveries for investors in numerous class action cases including: *Steiner v. Southmark Corporation* (N.D. Tex.) (over $70 million recovery); *In re PictureTel Inc. Securities Litigation* (D. Mass.) ($12 million recovery); *In re Physician Corporation of America Securities Litigation* (S.D. Fla.) ($10.2 million recovery); *In re Gilat Satellite Securities Litigation* (E.D.N.Y.) ($20 million recovery); *In re Pozen Inc. Securities Litigation* (M.D.N.C.) ($11.2 million recovery); *In re Nextel Communications Securities Litigation* (D.N.J.) (up to $27 million recovery); *In re PSINet Inc. Securities Litigation* (E.D. Va.) ($17.8 million recovery); *In re Cascade International Inc. Securities Litigation*, (S.D. Fla.) (global recovery of approximately $10 million); *In re GT Solar Securities Litigation* (D.N.H.) (recovery of $10.5 million) and *In re ECI Telecom Securities Ltd. Litigation* (E.D. Va.) ($21.75 million recovery). He has also handled significant appellate matters including arguing before the United States Court of Appeals for the Eleventh Circuit in *In re CP Ships Ltd. Securities Litigation*, 578 F. 3d 1306 (2009), where he successfully opposed objections to a settlement that provided non-U.S. investors with the protections of the federal securities laws. In addition, he was co-lead counsel for investors before the United States Supreme Court in *Broudo v. Dura Pharmaceuticals, Inc.*, 544 U.S. 336 (2005) (addressing the standards for pleading loss causation).

Mr. Sommers is also experienced in non-class action litigation. He represented TBG Inc., a multi-billion dollar privately-held overseas corporation, in a multi-party, complex action alleging fraud in a corporate acquisition and represented individuals in connection with investigations brought by the United States Securities and Exchange Commission. He also has represented publicly traded corporations in the prosecution and defense of claims. Mr. Sommers has litigated cases covering a wide-range of industries including the financial services, computer software, pharmaceutical, insurance, real estate and telecommunications industries among others. In addition, he has substantial experience in cases presenting complex accounting and auditing issues.

Mr. Sommers has lectured at both the Georgetown Law Center and the George Washington University Law School. He is a frequent commentator on the federal securities laws and corporate governance issues, and addresses institutional investor groups and others on these topics as illustrated below:

- Guest panelist on "It's Your Business," a nationally syndicated television program, where he spoke on investor lawsuits.
- Addressed the California State Association of County Retirement Systems, to whom he spoke on corporate governance and fiduciary duties and liabilities.
- Spoke at a District of Columbia Bar Association program in 2005 where he addressed "Attorney Liability in the Post-Enron, Post-Sarbanes-Oxley Era."
- Panelist at a 2006 presentation to Illinois-based institutional investors on the topic of "The Growing Emphasis on Fiduciary Responsibility: Implications for Illinois Pension Funds and the Emergence of Guiding Principles."

- 14 -

Exhibit 1

- Addressed the Professional Liability Underwriting Society in 2007 on the topic of "Global Companies, Global Risk: Exposure Arising Outside the U.S."
- Panelist at a 2008 District of Columbia Bar Association Program where he addressed "Developing Pleading Standards in Securities Cases."
- Spoke at a 2008 IQPC Forum on Subprime and Structured Finance Litigation on the topic of "Understanding the Plaintiff's View in the Subprime Crisis."
- Panelist at District of Columbia Bar Association Program in 2009 on "Public and Private Perspectives on the Enforcement of the Federal Securities Laws in our Global Markets."
- Panelist at a 2010 District of Columbia Bar Association Program on the topic of "Enforcement of the Federal Securities Laws in Our Global Financial Markets: Public and Private Perspectives on *Morrison v. National Australia Bank* and Beyond."
- Panelist at a 2010 District of Columbia Bar Association Program on the topic of "Private Securities Litigation: Critical Trends and Developments in Securities Class Actions."

Mr. Sommers was recognized in 2011 and 2012 as a Washington, D.C. "Super Lawyer" in the area of securities litigation and in 2012 he was selected as National "Litigation Star" and as a "Leading Plaintiffs Star in the District of Columbia" in the area of securities litigation by Benchmark: Litigation, and appears in its *Guide to America's Leading Litigation Firms and Attorneys*. In 2007, Mr. Sommers was appointed to serve as the chairman of the Investor Rights Committee of the Corporation, Finance and Securities Law Section of the District of Columbia Bar, and currently serves as vice-chair of that committee. In addition, he is a member of the Securities Litigation Committee of the American Bar Association, the Council of Institutional Investors, and the National Association of Public Pension Attorneys.

He is a 1983 graduate of Union College, earning a B.A. in Political Science (*magna cum laude*), and a 1986 graduate of the George Washington University Law School. Mr. Sommers is admitted to practice in federal courts including the United States District Courts for the Districts of New Jersey, Maryland, Eastern District of Michigan and the District of Columbia, as well as the United States Courts of Appeals for the District of Columbia, Fourth, Ninth, Tenth and Eleventh Circuits. Mr. Sommers is also admitted to practice before the Supreme Court of the United States.

Mr. Sommers is a member of the bar of the states of New Jersey and New York as well as the District of Columbia. Mr. Sommers works in the Firm's Washington, D.C. office.

**Daniel A. Small**

Dan Small has been a partner at Cohen Milstein for over 14 years and has chaired the firm's antitrust practice group since 2008.

Mr. Small has represented plaintiff classes, often as lead counsel, in numerous antitrust cases over the last 21 years, and has recovered hundreds of millions of dollars. He has tried cases to verdict before juries and has argued cases in several appellate courts including the United States Supreme Court.

Among the cases on which Mr. Small has worked are: *In re Intel Corp. Microprocessor Antitrust Litig.* (D. Del.), where he serves as co-lead counsel on behalf of a putative class of purchasers of Intel-powered PCs asserting monopolization claims; *Meijer, Inc. v. 3M* (E.D. Pa.), a monopolization case in which Mr. Small, as lead counsel, negotiated a $30 million settlement on behalf of direct purchasers of transparent tape; *In re Buspirone Antitrust Litig.* (S.D.N.Y.), in which the plaintiff class alleged that Bristol Myers-Squibb Co. unlawfully excluded generic drug competition, and Mr. Small, as co-lead

- 15 -

Exhibit 1

counsel, helped negotiate a $90 million settlement; and *Pease v. Jasper Wyman & Son, et al.*, (Super. Ct., Knox Cty., Maine), a price-fixing class action on behalf of Maine wild blueberry growers in which Mr. Small successfully tried the case to a jury, obtaining a judgment of nearly $60 million.

Mr. Small has substantial appellate experience, including briefing and arguing *Free v. Abbott Laboratories*, No. 99-391, in the United States Supreme Court. That case presented the issue of whether a supplemental jurisdiction statute overruled *Zahn v. International Paper Co.* The Court split 4-4, with Justice O'Connor recusing herself. Additionally, Mr. Small successfully briefed and argued appeals before the Seventh Circuit Court of Appeals in *In re Brand Name Prescription Drug Antitrust Litig.*, 123 F.3d 599 (7th Cir. 1997), regarding whether the district court had subject matter jurisdiction, and in *Paper Systems, Inc. v. Nippon Paper Industries Co., Ltd.* (7th Cir. 2002), arguing that the federal direct purchaser rule does not immunize a defendant from liability for the direct sales of its co-conspirators. Finally, he briefed and argued the appeal in *Mack v. Bristol-Myers Squibb Co.*, 1996-1 Trade Cas. (CCH) ¶¶ 71,401 (Fla. 1st DCA 1996), obtaining the first opinion construing the Florida Deceptive and Unfair Trade Practices Act to permit indirect purchasers to sue for damages for antitrust violations.

Mr. Small is a member of the Advisory Board of the American Antitrust Institute and he chairs the committee that selects the annual winner of the Jerry S. Cohen Memorial Writing Award for the best antitrust scholarship. He has been invited to speak on antitrust and class action topics at events organized by the American Bar Association, the District of Columbia Bar, the Conference Board, and the American Antitrust Institute, among others.

Mr. Small is a 1981 graduate of Colgate University, receiving a B.A. (*cum laude*) in History. He graduated from American University's Washington College of Law in 1986, and joined Cohen Milstein after serving as a law clerk to the Honorable Roger Vinson, United States District Court for the Northern District of Florida (1986-1988). Mr. Small is admitted to practice in Maryland and the District of Columbia.

### Christine E. Webber

Christine Webber, a Partner at the Firm and a member of the Civil Rights & Employment practice group, joined Cohen Milstein in 1997. Ms. Webber represents plaintiffs in class action employment discrimination and Fair Labor Standards Act cases. Ms. Webber's current docket includes *Dukes v. Wal-Mart Stores, Inc.* (N.D. Cal.), challenging Wal-Mart's treatment of women employees with complaints of discrimination in pay and promotion; and *In re Tyson Foods FLSA MDL*, (M.D. Ga.), a collective action involving FLSA claims at over 40 Tyson chicken processing plants. Ms. Webber was also counsel to the plaintiff class in *Keepseagle v. Vilsack*, and is currently administering the claims process through which $760 million of relief will be awarded to Native American farmers and ranchers who were denied loans or loan servicing by the USDA. Ms. Webber was part of the team recognized by Public Justice as finalists for their Trial Lawyer of the Year award in 2011 for the work done in *Keepseagle*.

She represented plaintiffs in *Beck v. The Boeing Co.* (W.D. Wash.), a class action alleging sex discrimination in compensation and promotions which settled in 2004 for $72.5 million. She was also lead counsel in *Hnot v. Willis* (S.D.N.Y.), representing a class of women at the vice-president level and above whose challenge to sex discrimination in compensation resulted in a settlement averaging $50,000 per class member in 2008. She was counsel in *Trotter v. Perdue* (D. Del.), representing plaintiffs who were wrongly denied payment of overtime wages, and obtaining a $10 million settlement.

- 16 -

Exhibit 1

In 2004 and 2007, Ms. Webber was named one of the Top Lawyers in Washington, D.C. by Washingtonian Magazine and was named one of the 2007 Washington, D.C. Superlawyers in the Civil Rights category. In 2011, Ms. Webber was recognized as one of the Top Women Lawyers in the Northeast in the labor and employment category by Arrive magazine.

Prior to joining Cohen Milstein, Ms. Webber received a Women's Law and Public Policy fellowship and worked for four years at the Washington Lawyers' Committee for Civil Rights and Urban Affairs in their Equal Employment Opportunity Project. She worked on a variety of employment discrimination cases, and focused in particular on the sexual harassment class action *Neal v. Director, D.C. Department of Corrections, et al.* Ms. Webber participated in the trial of this ground-breaking sexual harassment class action in 1995. Ms. Webber also tried the race discrimination case *Cooper v. Paychex* (E.D. Va.), and successfully defended the plaintiffs' verdict before the Fourth Circuit.

Ms. Webber is a member of the National Employment Lawyers' Association (NELA) and co-chair of their Class Action Committee. She is also co-chair of the Class Action Sub-committee of the D.C. Bar Labor and Employment Law Section. She speaks regularly at CLE programs on employment discrimination and class actions, including presentations for NELA.

She graduated from Harvard University with a B.A. in Government (*magna cum laude*, 1988) and the University of Michigan Law School (J.D., *magna cum laude*, 1991, Order of the Coif). Following law school, Ms. Webber clerked for the Honorable Hubert L. Will, United States District Judge for the Northern District of Illinois.

Ms. Webber is admitted to practice in Illinois and the District of Columbia.

### Richard A. Koffman

Richard Koffman, a Partner at the Firm, joined Cohen Milstein in 2003 and is a member of the Antitrust Practice Group. In both 2011 and 2012, the U.S. Legal 500 listed Mr. Koffman as one of the nation's "leading lawyers" in the field of antitrust class actions.Mr. Koffman is co-lead counsel for plaintiffs in *In re Urethane Antitrust Litigation* (D. Kan.), in which a Kansas jury returned a verdict for plaintiffs against The Dow Chemical Company in excess of $400 million. The district court trebled the damage award as required under the federal antitrust laws and entered judgment against Dow for more than $1.2 billion on May 15, 2013. Four other defendants had previously settled for a total of $139.5 million.

Mr. Koffman is also co-lead counsel for plaintiffs in *In re Plasma-Derivative Protein Therapies Antitrust Litigation* (N.D. Ill.), in which plaintiffs allege price-fixing and collusion to reduce the supply of potentially life-saving therapies derived from blood plasma; and *Wallach, et al. v. Eaton Corp., et al.* (D. Del.), in which plaintiffs allege a conspiracy to monopolize the market for heavy-duty truck transmissions. Mr. Koffman also served as co-lead counsel for plaintiffs in *In re Rubber Chemicals Antitrust Litigation* (N.D. Cal.), which settled for a total of approximately $320 million; *In re Polyester Staple Antitrust Litigation* (W.D.N.C.), which settled for a total of $46 million; *In re Endosurgical Products Antitrust Litigation* (C.D. Cal.), which settled for $13 million in cash, plus structural relief worth more than $26 million; and *Coalition for Elders' Independence, Inc., et al. v. Biovail Corp., et al.* (Cal. Super. Ct.), which settled for $8.2 million.

Mr. Koffman came to Cohen Milstein after four years with the Antitrust and Civil Rights Divisions of the United States Department of Justice. In the Antitrust Division, Mr. Koffman served as a Senior

- 17 -

Exhibit 1

Trial Attorney with the Computers and Finance Section (now Networks and Technology), which is responsible for antitrust enforcement and competition policy in the areas of information technology, Internet-related businesses, financial services, and the securities industry. In the Civil Rights Division, he served as a Senior Trial Attorney with the Housing and Civil Enforcement Section, where he worked to enforce the Fair Housing Act, the Equal Credit Opportunity Act, the Religious Land Use and Institutionalized Persons Act, and Title II of the Civil Rights Act of 1964.

Prior to joining the Department of Justice, Mr. Koffman spent seven years in private practice, first with Fine, Kaplan and Black in Philadelphia (working primarily on antitrust class actions and other complex commercial litigation) and then with Bernabei & Katz in Washington, D.C. (handling employment discrimination cases). While at Fine Kaplan, Mr. Koffman was actively involved in litigating several successful antitrust class actions on behalf of plaintiffs and classes, including *In re Nasdaq Market-Makers Antitrust Litigation* (S.D.N.Y.) (settled for more than $1 billion); *In re Polypropylene Carpet Antitrust Litigation* (N.D. Ga.); *In re Commercial Explosives Antitrust Litigation* (D. Utah); and *In re Drill Bits Antitrust Litigation* (S.D. Tex.). He was also co-counsel, along with John G. Roberts, Jr., who was then a Partner at Hogan & Hartson and is now Chief Justice of the United States Supreme Court, for Respondents in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). In that case, argued by Mr. Roberts with Mr. Koffman assisting on the briefs, Mr. Koffman's clients won a unanimous ruling by the United States Supreme Court.

Immediately after law school, Mr. Koffman served as a judicial clerk for Judge James B. McMillan of the Western District of North Carolina, and for Judge Anthony J. Scirica of the United States Court of Appeals for the Third Circuit.

Mr. Koffman is a graduate of Yale Law School (J.D., 1990), where he was a Senior Editor of the Yale Law Journal, and Wesleyan University, from which he received a B.A., with honors, in English (1986).

Mr. Koffman is admitted to practice in the District of Columbia, the United States Supreme Court, and the United States Courts of Appeals for the Eighth, Ninth, and Tenth Circuits.

**Agnieszka M. Fryszman**

Agnieszka Fryszman, a Partner at Cohen Milstein, joined the Firm in 1998. She heads Cohen Milstein's International Human Rights and Pro Bono practice.

Ms. Fryszman regularly litigates complex cases against corporate giants. She was a member of the legal team that successfully represented survivors of Nazi-era forced and slave labor against the German and Austrian companies that allegedly profited from their labor. These cases were resolved by international negotiations that resulted in multi-billion dollar settlements. She also represented, pro bono, Holocaust survivors suing Swiss banks that collaborated with the Nazi regime during World War II. This litigation led academics to revise their assessment of Switzerland's relationship with Nazi Germany and exposed the extent of business participation in the Holocaust.

Ms. Fryszman and colleague Matthew Handley earned the National Law Journal's 2011 Pro Bono Award for their efforts on behalf of Nepali laborers injured or killed at U.S. military bases in Iraq and Afghanistan. They obtained several judgments and significant settlements on behalf of the families. She currently represents victims of a human trafficking ring that lured men from Nepal with the promise of employment at luxury hotels, but instead took them against their will to work at a U.S. military facility in Iraq. Ms. Fryszman investigated and initiated suit against military contractors KBR and Daoud & Partners, filing one of the first complaints under the recently passed Trafficking Victims

- 18 -

47

Exhibit 1

Protection Act. Her work on behalf of the former "comfort women," women and girls trafficked into sexual slavery by the government of Japan during World War II, was recognized with the "Fierce Sister" award from the National Asian Pacific American Women's Forum. She also represents Indonesian villagers in a lawsuit against Exxon Mobil over abuses allegedly committed by the defendant's security force.

In 2010, Ms. Fryszman was recognized as a "Leading Lawyer in America" by Lawdragon and was a finalist for the 2010 Trial Lawyer of the Year Award by the Public Justice Foundation for her work on *Wiwa v. Royal Dutch Shell*. Ms. Fryszman joined the legal team in that long-running case to prepare it for trial, resulting in a multi-million dollar settlement on the morning of jury selection.

Ms. Fryszman represented, pro bono, a number of victims of the September 11 attack on the Pentagon and obtained one of the highest awards for an injured survivor from the Victim's Compensation Fund. Ms. Fryszman also represented, pro bono, two individuals indefinitely detained without charge by the United States at Guantanamo Bay, work that was recognized with the Frederick Douglass Award from the Southern Center for Human Rights.

In the Antitrust practice group, Ms. Fryszman represents small businesses that have been victims of alleged price-fixing.

Before joining Cohen Milstein, Ms. Fryszman was counsel to the United States House of Representatives Committee on the Judiciary, Subcommittee on Commercial and Administrative Law. She also served as counsel to Representative Henry Waxman, Ranking Member on the House Government Reform and Oversight Committee.

Ms. Fryszman graduated from Brown University with a B.A. in International Relations. She graduated (*magna cum laude* and Order of the Coif) from Georgetown University Law Center, where she was a Public Interest Law Scholar.

Ms. Fryszman is admitted to practice in the District of Columbia and New Jersey.

**Julie Goldsmith Reiser**

Julie Goldsmith Reiser joined Cohen Milstein in 1999. Ms. Reiser is a member of the Securities Fraud/Investor Protection practice group. She has extensive experience with motion practice, developing and implementing discovery strategies, depositions, expert discovery and case resolution. Ms. Reiser focuses much of her practice on enforcement of the federal securities laws on behalf of sophisticated domestic and international institutional investors. She has represented these investors in class action and individual "opt-out" actions as well as in transaction-related litigation in Delaware Chancery Court.

Ms. Reiser currently works on several securities fraud actions seeking to return assets lost due to corporate fraud. She represents the New York State Common Retirement Fund in a securities class action against BP Plc and certain of its former officers and directors. She also represents Iowa, Oregon and Orange County public retirement systems in a class action litigation against Countrywide related to its issuance of mortgage-backed securities. Ms. Reiser acted as co-lead counsel representing investors in the largest fraud in European corporate history, *In re Parmalat Sec. Litig.* (S.D.N.Y.). She was co-lead counsel in *In re SCOR Holding (Switzerland) Securities Litigation* (S.D.N.Y.) and was a member of the team representing Pacific Life Insurance Company in an opt-out action against WorldCom.

- 19 -

Exhibit 1

In the employment area, Ms. Reiser was a member of the legal team working on *Dukes v. Wal-Mart Stores, Inc.* (N.D. Cal.), representing current and former female employees of Wal-Mart with complaints of discrimination in pay and promotion. Ms. Reiser also represented and settled claims on behalf of African American employees who claimed that Kroger discriminated against them in pay and promotions in *Wade v. Kroger* (W.D. Ky.). She was involved in the litigation and successful settlement of *Beck v. The Boeing Co.* (W. D. Wash.), which alleged sex discrimination in compensation and promotions and was resolved for $72.5 million.

Ms. Reiser is the author of "Why Courts Should Favor Certification of MBS Actions," ABA *Securities Litigation Journal*, Volume 22, Number 1, Fall 2011, and she is the co-author of "The Misapplication of *American Pipe* Tolling Principles," ABA *Securities Litigation Journal*, Volume 21, Number 2, Winter 2011. She also co-authored *Opt-Outs: Making Private Enforcement of the Securities Laws Even Better*, featured in the Winter/Spring 2008 edition of the ABA's Class Action and Derivative Suit Committee Newsletter and *Companies in the Cross Hairs: When Plaintiffs Lawyers Choose Their Targets, They Look for These Employment Practices*, The Legal Times, February 21, 2005. In 1999, she co-authored *Antitrust Introduction for the General Practitioner*, a chapter in the Washington Lawyer's Practice Manual.

Ms. Reiser was President of the Board of Directors of Seattle Works and on the Executive Committee for the Board of Directors of the Eastside Domestic Violence Program. She also served a term as a Trustee for the Pacific Northwest Ballet. Ms. Reiser worked as a Legal Intern for U.S. Senator Patty Murray.

Ms. Reiser graduated from Vassar College (B.A. with honors) and the University of Virginia School of Law (J.D.).

Ms. Reiser is admitted to practice in Washington State and the District of Columbia.

**Victoria S. Nugent**

Victoria Nugent, a Partner at the Firm, joined Cohen Milstein in 2000 and is a member of the Consumer Protection & Unsafe Products practice group.

Ms. Nugent has focused on consumer protection and public health litigation throughout her career. Past cases include *In re StarLink Product Liability Litigation*, in which she represented farmers suing Aventis Cropscience after an unapproved variety of genetically modified corn was detected in the U.S. corn supply and drove down prices for all U.S. corn exports. More than $100 million was recovered for the class in a landmark settlement. She also represented car owners seeking to enforce product warranties for an extended life coolant in *In re General Motors Dex-Cool Products Liability Litigation*. The Dex-Cool litigation ended with a settlement under which General Motors reimbursed its customers for repairs. Ms. Nugent has argued cases before the high courts of Georgia, Nebraska and the District of Columbia, as well as the federal D.C. Circuit Court of Appeals.

Ms. Nugent is currently working on cases against Sallie Mae, alleging excessive interest and late fee charges on student loans, and Vonage, alleging deceptive business practices in advertising and administering promotional offers.

- 20 -

Exhibit 1

Before joining Cohen Milstein, Ms. Nugent worked for seven years at Public Citizen, a national consumer advocacy organization. During that time, she worked on many legislative and regulatory campaigns addressing issues that ranged from automobile safety to international trade policy. In 1998, Ms. Nugent received a two-year fellowship sponsored by the National Association for Public Interest Law (NAPIL). As a NAPIL Fellow, she worked at Trial Lawyers for Public Justice (TLPJ), where she helped develop and prosecute impact litigation in the areas of arbitration, banking, credit and insurance.

Ms. Nugent received her undergraduate degree in History from Wesleyan University in 1991 and graduated from Georgetown University Law Center in 1998.

Ms. Nugent is admitted to practice in the District of Columbia and Maryland.

**Benjamin D. Brown**

Benjamin Brown, a Partner at Cohen Milstein, joined the firm in 2005 and is a member of the Antitrust practice group. He has extensive experience leading complex litigation, particularly class actions.

The Legal 500 has recognized Mr. Brown as one of the nation's leading class action antitrust attorneys and he has been listed as one of Washington D.C.'s "Leading Star" Plaintiffs' Litigators by Benchmark Litigation. He has served as class counsel in numerous successful cases litigated across the country and at all levels of federal appeals, helping to achieve over one hundred million dollars worth of recoveries on behalf of clients.

Mr. Brown is a contributing author of the ABA's Antitrust Class Actions Handbook, and, since 2005, has served as a state editor for the ABA's Survey of State Class Action Law. He has also authored chapters on private antitrust recovery actions for the Global Competition Review's Antitrust Review of the Americas. Most recently, Mr. Brown co-authored with fellow partner Douglas Richards "Predominance of Common Questions – Common Mistakes in Applying the Class Action Standard," 41 Rutgers L.J. 163 (2009). He discussed joint civil and criminal investigations and litigation as a featured panelist on both the National Association of Criminal Defense Lawyers (NACDL) 2009 Summer CLE Program and the 2010 University of Texas Law School's Review of Litigation Symposium. Mr. Brown has been honored by the United States District Court for the District of Columbia for outstanding commitment in pro bono litigation. He has been a repeated guest on CNBC and other networks discussing antitrust news and developments.

Mr. Brown currently serves as co-lead counsel or on steering committees for plaintiffs in, among other cases, In re Plasma-Derivative Protein Therapies Antitrust Litigation (N.D. Ill.); Allen, et al. v. Dairy Farmers of America, Inc. (D. Vt.); In Re Puerto Rican Cabotage Antitrust Litigation. (S.D. Fla.); and Carlin, et al. v. DairyAmerica, Inc. (E.D. Ca.).

Mr. Brown came to Cohen Milstein after four years as a trial attorney with the Antitrust Division of the United States Department of Justice. While there, Mr. Brown led and assisted in numerous investigations, litigations and trials involving anticompetitive conduct and mergers. Mr. Brown also prosecuted criminal cases as a Special Assistant United States Attorney in the Eastern District of Virginia. Prior to joining the Department of Justice, he was in private practice with Covington & Burling in Washington, D.C., handling insurance coverage and antitrust litigation. Prior to entering private practice, Mr. Brown served as a judicial law clerk for Chief Judge Juan R. Torruella of the U.S. Court of Appeals for the First Circuit.

- 21 -

Exhibit 1

Mr. Brown graduated cum laude from Harvard Law School and Phi Beta Kappa from the University of Wisconsin – Madison.

Mr. Brown is admitted to practice in California and the District of Columbia.

**Carol V. Gilden**

Carol Gilden is a Partner at Cohen Milstein Sellers & Toll, PLLC, and a member of the Securities Fraud/Investor Protection practice group. Ms. Gilden represents public pension funds, Taft-Hartley Benefit Funds, private pension funds and high net worth individuals. She is the Resident Partner of the firm's Chicago office.

Ms Gilden has extensive experience in protecting the rights of investors, including five years of experience as an enforcement attorney in the Securities and Exchange Commission, Midwest Regional Office. Prior to joining Cohen Milstein, Ms. Gilden was the head of the securities class action practice at Much Shelist, a Chicago law firm, and the Vice Chair of its Class Action Department.

Ms. Gilden has been co-lead counsel, a member of the Executive Committee and on the litigation teams of many high profile cases. Most recently, Ms. Gilden served as co-lead counsel in the *MF Global Securities* case, which settled for $90 million. Her work in the case, which included winning an appeal before the Second Circuit Court of Appeals of the lower court's dismissal of the case, was singled out for recognition by the National Law Journal in connection with its selection of Hot Plaintiffs' Firms for 2011. Other recent significant cases in which she has served as co-lead counsel include the *Huron Consulting Inc. Securities Litigation*, which settled for $40 million (cash plus stock) and the *RehabCare* merger case (settled for significant deal term changes, disclosure changes and a cash settlement fund). She is currently lead counsel in the City of Chicago's case against on-line travel companies, among other matters which she is handling, including the securities class action against IntraLinks Corporation.

Ms. Gilden actively litigated and was on the Executive Committees of the Global Crossing Securities Litigation (settlements of $448 million) and the Merrill Lynch & Co. Research Reports case ($125 million settlement). Among other notable cases, Ms. Gilden has served as co-lead counsel in the Sears/Sears Acceptance Corp. Securities Litigation, Sara Lee Securities Litigation, 99 Cents Only Stores Securities Litigation, Quokka Sports Securities Litigation, ML Lee Securities Litigation and Smith Kline Litigation, as well as lead counsel in *Pacha, et al. v. McKesson Corporation, et al.*, an opt-out securities action on behalf of a group of investors that settled for a substantial, confidential sum. In addition, she was liaison counsel and an active litigation team member in the Waste Management Litigation, which settled for $220 million. Under her leadership, her former firm was an active member of the litigation teams in the *AOL Time Warner Securities Litigation* ($2.5 billion settlement), *Salomon Analyst Litigation/In re AT&T* ($75 million settlement), and *CMS Securities Litigation* ($200 million settlement).

Ms. Gilden lectures at legal conferences around the country on securities litigation and class action law. She has spoken on such topics as corporate ethics, financial reporting, officer and director liability, securities fraud class actions, the Sarbanes-Oxley Act of 2002, the Private Securities Reform Act of 1995, class certification standards and trends, Illinois class actions, deferred prosecution agreements, directors and officers insurance risks, advising companies in crisis, settlements and claims administration. Ms. Gilden also served as a panelist and Advisory Committee member for the Francis

- 22 -

Exhibit 1

McGovern Conferences on "Distribution of Securities Litigation Settlements: Improving the Process", at which regulators, judges, custodians, academics, practitioners and claims administrators participated. In May, 2012, she spoke about "Settlements Objections" at a "Recent Developments in Class Actions" seminar, sponsored by the Chicago Bar Association. More recently, in October and November 2012, Ms. Gilden gave presentations regarding the recent LIBOR scandal and ensuing litigation for LEXIS/NEXIS and the Practising Law Institute. Further, at Loyola University Chicago School of Law's Second Annual Institute for Investor Protection in October 2012, Ms. Gilden moderated a panel including Judge Rakoff and leading academics on the topic "Behavioral Economics and State of Mind: Pleading and Proving Scienter in Securities Fraud Cases.

In addition, Ms. Gilden regularly speaks at investor conferences and symposiums regarding shareholder rights and regulatory reform. In May 2012, Ms. Gilden discussed the *Morrison decision* in a speech entitled "Pension Funds and Foreign Investments" at the Illinois Public Employee Retirement Systems Summit (ILPERS). In 2011, Ms. Gilden gave a presentation at the ILPERS conference on the "Dodd-Frank Wall Street Reform and Consumer Protection Act - The Implications for Institutional Investors." She also spoke at the National Summit on the Future of Fiduciary Responsibility on the impact of the Morrison decision on investor rights. At previous ILPERS conferences she has given speeches titled "The Power of Your Pension Plan Assets", the "Overhaul of the U.S. Financial Regulatory System" and "What's Ahead in Regulatory Reform: Storm Clouds on the Horizon?" In March 2009, she was a panelist at Vanderbilt Law School's symposium on the "Future of Federal Regulation of Financial Markets, Corporate Governance and Shareholder Litigation." In December 2008, Ms. Gilden spoke at the Pension Group East Conference on "A New Era Of Regulation: The Three Legged Stool". In October 2008, she gave a presentation regarding the Emergency Economic Stabilization Act at the Illinois Public Retirement Systems Conference, and also led a roundtable discussion regarding the Bailout Bill and potential regulatory reform at the Made in America Conference. Ms. Gilden also has spoken at the International Foundation on shareholder rights and proxy voting.

Ms. Gilden has published a variety of scholarly articles and course materials. She has co-authored a law review article which will be published later this year in the Loyola University Chicago Law Journal titled: "The Dangers of Missing the Forrest: The Harm caused by Verifone Holdings In a Tellabs World". She is an author and co-author of articles published by the National Law Journal, *Courts Grapple with Lead-Counsel Auctions*; IICLE on Illinois Causes of Action, Shareholder Derivative Suits; the American Bar Association, *The Impact of Central Bank on Securities Fraud Litigation: The Plaintiffs' Perspective*; Illinois Bar Journal, *Proposed Rule 225: A Death Warrant for Class Actions in Illinois*; and Practising Law Institute on Class Actions Litigation (2006 and 2007): *A Hybrid 23(B)(2) Rule For Hybrid Class Actions? New Developments In The Use Of Rule 23(b)(2) In Class Certification*; and *The Evolving Use of Rule 23(b)(2) in Hybrid Class Actions Seeking Monetary Damages: A Hybrid Approach*. In January 2005, Ms. Gilden testified against Proposed Rule 225 before the Illinois Supreme Court's Rules Committee.

Ms. Gilden is a frequent commentator in the national media on market scandals, recent developments and trends in securities law and high profile securities fraud cases. She has frequently appeared on CNBC, including an appearance on a special segment titled *I Want My Money Back* where she was described as "one of the top investor advocacy attorneys in the country." She also has been featured on the ABC news programs *World News Tonight*, *World News Now* and *Good Morning America*, as well as numerous appearances on *First Business* and an appearance on BBC World News. In addition to television appearances, Ms. Gilden has been quoted by prominent publications such as the *Associated Press, Bloomberg News, BBC, Crain's, CFO.Com, Fortune* magazine, the *National Law Journal, USA*

- 23 -

52

Exhibit 1

*Today*, *London Mail*, *Chicago Tribune*, *Dow Jones*, *Business Insurance* and *Corporate Legal Times*. Ms. Gilden appeared on the cover of *Chicago Lawyer* in connection with a feature article on The Ebb and Flow of Securities Class Actions.

Ms. Gilden was the President of the National Association of Shareholder and Consumer Attorneys (NASCAT), the preeminent trade association for securities class action attorneys, from April 2007- April 2009. As President of NASCAT, Ms. Gilden actively worked to promote the interests of investors. She made repeated visits to Capitol Hill and met with Members, and their staffs, of the Senate Banking Committee, House Financial Services Committee and the Senate Judiciary Committee where she advocated the need for strong investor protection. She also engaged in outreach to the institutional investor community on needed reforms to reverse the erosion of investor rights. Under Ms. Gilden's leadership, NASCAT also filed amicus briefs in connection with major securities cases before the Supreme Court and other courts. Prior to becoming President, Ms. Gilden served as the President-Elect and Treasurer for NASCAT. Ms. Gilden continues to be actively involved in NASCAT and serves on its Executive Committee.

Ms. Gilden is a Vice President of the Institute for Law and Economic Policy (ILEP). ILEP is a preeminent think tank with leading academics, and was established to preserve and enhance access to the civil justice system by investors and consumers.

Most recently, Ms. Gilden was selected by the Council for Institutional Investors (CII) to serve on its Advisory Council to CII's Board of Directors. CII is a nonprofit association of pension and other employee benefits funds, endowments and foundations and a voice for effective corporate governance and strong shareholder rights.

Ms. Gilden has been repeatedly selected as an "Illinois Super Lawyer" (2005-2013) by Law & Politics, which published its selections in *Chicago* magazine. Only 5 percent of Illinois attorneys are awarded this honor. Ms. Gilden also has achieved the "AV" Peer Review Rating by Martindale-Hubbell.

Ms. Gilden is a graduate of the University of Illinois (B.S., Business Administration, 1979). She graduated with honors from Chicago-Kent College of Law (J.D. 1983) where she was a member of the Chicago-Kent Law Review. Ms. Gilden is admitted to practice in Illinois, the federal district court for the Northern District of Illinois, the United States Circuit Court of Appeals for the Seventh Circuit and the United States Supreme Court, as well as pro hac before other federal and state courts throughout the country.

**Kit A. Pierson**

Kit Pierson, a Partner, joined the Firm in 2009 and is co-Chair of Cohen Milstein's Antitrust Practice Group.

Mr. Pierson has spent the last two decades handling civil litigation matters in antitrust cases and other complex litigation. As a Shareholder at Heller Ehrman from 1997-2008, Mr. Pierson represented clients in large antitrust class action litigation and False Claims Act litigation, including significant jury trials. Mr. Pierson also has a longstanding commitment to civil rights matters and pro bono representation and recently was lead counsel for one of the Guantanamo detainees in a successful habeas corpus challenge to the legality of his confinement.

Mr. Pierson has represented clients in class actions and other antitrust cases of national significance. Mr. Pierson represented Microsoft Corporation in antitrust class action litigation and other matters and

- 24 -

Exhibit 1

was one of the trial attorneys representing Microsoft in jury trials in *Gordon v. Microsoft* (Minnesota) and *Comes v. Microsoft* (Iowa). Mr. Pierson represented 3M Company in antitrust class actions challenging bundled discounted in federal and state court. He represented the American Booksellers Association in antitrust litigation on behalf of its members (independent bookstores across the country) in *American Booksellers Association v. Houghton Mifflin* (S.D.N.Y.). These cases resulted in the entry of consent decrees against several of the leading publishers in the United States, and were followed by successful litigation against one of the publishers based on violations of the consent decrees. Mr. Pierson represented dock and trucking companies in *Erie Port Authority v. Chesapeake & Ohio Railroad* (E.D. Pa.), an antitrust case challenging a conspiracy by large railroad companies to restrain trade in the shipment of iron ore and resulted in a substantial jury verdict for the plaintiffs.

Mr. Pierson has represented parties in a broad range of other complex civil litigation matters, including:

- Representation of a putative class of electronic book purchasers nationwide in litigation challenging a conspiracy involving Apple, Inc. and major book publishers to establish a new pricing model for the industry and substantially raise the price of electronic books in response to the low price point used by Amazon after release of the Kindle.
- Representation of individual farmers and a putative class of thousands of dairy farmers in the Northeast in antitrust litigation challenging a conspiracy to restrain competition and reduce the prices paid to farmers for supplying milk.
- Representation of Greenpeace, Inc. in *Greenpeace, Inc. v. Dow Chemical Company, et al.* (D.C. Super.), litigation against two large chemical companies, public relations companies and a private investigation firm based on their involvement in a scheme that is alleged to have included surveillance, dumpster diving, trespass and other actions on more than one hundred occasions over a two-year period to secure information about Greenpeace's organization, environmental activities and financial support.
- Representation of the plaintiff in *United States ex rel. Loughren v. UnumProvident* (D. Mass.), a qui tam action against the largest disability carrier in the United States, alleging that it violated the False Claims Act by causing the submission of false claims for social security disability benefits to the United States.
- Representation of a whistleblower in *Funk v. MEP* (E.D. Va.), a case alleging that a defense contractor engaged in fraud in providing translators to support the United States' troops in Afghanistan and engaged in retaliation based on the whistleblower's protected activities under the False Claims Act.
- Representation of a hospital and surgeon in their successful defense of claims brought by a physician alleging that they had infringed his patent by performing eye surgery in a method allegedly subject to the patent. *Pallin v. Singer* (D. Vt.). This case received national media attention, including two pieces on the McNeil-Lehrer News Hour, and – following successful defense of the litigation – the United States Congress enacted legislation to protect physicians from patent infringement claims based on their method of providing care.
- Representation of health policy researchers at the Urban Institute, a non-profit think tank, after they were sued in *Minntech v. Held* (D. Minn.), for allegedly defaming the plaintiff-corporation by publishing research relating to the safety of dialysis products used by thousands of dialysis patients nationwide.
- Representation of the nation's leading association of psychologists in various litigation matters, including cases successfully defending the association's decisions to discipline members for unethical conduct.

- 25 -

Exhibit 1

- Representation of parties in numerous cases involving constitutional issues, including the National Association of Broadcaster's successful defense of the "must carry" provisions in *Turner Broadcasting Systems v. FCC* (S. Ct).
- Representation of non-profit organizations and individuals in litigation that exposed illegal spying activities by the Maryland state policy against more than thirty organizations and numerous individuals based on lawful and constitutionally protected activities such as opposition to the death penalty or anti-war activities. The exposure of these activities resulted in legislative hearings, appointment of a former Maryland Attorney General to conduct an independent investigation, and implementation of remedial actions by the State of Maryland.

Mr. Pierson is chair of Cohen Milstein's pro bono committee. From 2006-2008, he was the chair of Heller Ehrman's pro bono and community service program for the firm's thirteen offices. Mr. Pierson has been actively involved in pro bono representation, including representation of a habeas corpus petitioner in *Ahmed v. Obama* (D.D.C.), where a federal court determined that the petitioner was being unlawfully detained at Guantanamo and ordered his release. Mr. Pierson is a Member of the ACLU of Maryland's Committee on Litigation and Legal Priorities and a Member of the Board of Trustees for the Lawyers' Committee for Civil Rights Under Law. Mr. Pierson has also represented the District of Columbia Bar Association in litigation and served on a Committee established by the District of Columbia Bar and the Access to Justice Commission to expand pro bono representation by law firms in the District of Columbia.

Mr. Pierson has been named as a Washington, D.C. "Super Lawyer" in the antitrust field. These designations are based on a high degree of peer recognition and professional achievement.

Mr. Pierson is a 1979 graduate of Macalester College, where he received a B.A. (*magna cum laude*) in Economics and Political Science. He graduated from the University of Michigan Law School (*magna cum laude*) in 1983, where he was a Note Editor of the Michigan Law Review and a member of the Order of the Coif. Mr. Pierson served as a Law Clerk for the Honorable Harry T. Edwards, United States Court of Appeals for the District of Columbia Circuit, from 1983-1984 and a law clerk for the Honorable Chief Judge John Feikens, United States District Court for the Eastern District of Michigan, from 1984-1985.

**J. Douglas Richards**

J. Douglas Richards is Managing Partner of Cohen Milstein's New York office and a partner in its antitrust practice group. Mr. Richards has extensive expertise in class action practice and commercial litigation relating to diverse trade regulation issues, including antitrust and commodity regulation as well as related issues of patent law. Prior to joining Cohen Milstein in 2009, Mr. Richards served as head of the antitrust practice groups at two other leading class action law firms, and prior to that as Deputy General Counsel of the Commodity Futures Trading Commission, where he received a Special Service Award for exemplary accomplishment. His general preeminence in legal practice has been recognized by the leading peer review organizations, including by being named one of 22 Antitrust "Litigation Stars" nationally by Benchmark Plaintiff Litigation, by New York Super Lawyers (2012, 2011) and by receiving the highest available peer ranking from Martindale-Hubbell. He has written extensively about class actions, having twice authored chapters for books edited by the American Antitrust Institute covering complex issues of class action practice, as well as various law reviews and other publications. Leading antitrust organizations frequently recognize his expertise by inviting him to speak on wide-ranging issues of substantive antitrust law, civil procedure and class actions.

- 26 -

Exhibit 1

Education

- A.B. University of Chicago, 1977 (economics major)
- J.D. Harvard Law School, 1981

Lead Counsel Positions In Antitrust Class Actions

- *In re Buspirone Antitrust Litig.*, MDL 1413 (S.D.N.Y.)
- *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, MDL 1383 (E.D.N.Y.)
- *Cox v. Microsoft Corp.* (Sup. Ct. N.Y. County)
- *In re G-Fees Antitrust Litig.*, No. 05114 (RWR) (D.D.C.)
- *In re IPO Antitrust Litig.*, 01 Civ. 2014 (WHP) (S.D.N.Y.)
- *In re K-Dur Antitrust Litig.*, MDL 1419( D.N.J.)
- *Kruman v. Christie's Int'l PLC* (international case in In re Auction Houses Antitrust Litig.), 00 Civ. 0648 (LAK) (S.D.N.Y.)
- *In re New Motor Vehicles Antitrust Litig.* MDL 1532 (D. Me.)(co-chair, executive committee)
- *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, MDL 1568 (D. Ct.)
- *In re Fresh Del Monte Pineapples Antitrust Litig.*, MDL 04-md-1628 (RMB) (S.D.N.Y.)
- *In re Plastics Additives Antitrust Litig.*, MDL 1684 (E.D. Pa.)
- *In re Relafen Antitrust Litig.*, 01-12239-WG4 (D. Mass.)
- *Sperry v. Crompton Corp.* (Sup. Ct. Nassau County)
- *In re Tamoxifen Citrate Antitrust Litig.*, MDL 1408 (E.D.N.Y.)
- *Twombly v. Bell Atlantic Corp.,* 02 Civ. 10220 (GEL) (S.D.N.Y.)
- *In re Reformulated Gasoline Antitrust Litig.*, MDL 1671 (M.D. Ca.)
- *In re Wellbutrin Antitrust Litig.,* MDL 04-5525 (E.D. Pa.)

Leading Appeals Argued in Antitrust Class Actions

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
- *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2007).
- *Uniondale Beer Co. v. Anheuser Busch, Inc.*, Nos. 95-7321, 7371 (2d Cir. 1995).
- *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002).
- *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323 (Fed. Cir. 2008), cert. denied, 77 U.S.L.W. 3690 (June 22, 2009).
- *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005), cert. denied, 127 S.Ct. 3001 (2007).
- *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004).
- *American Banana, Inc. v. Del Monte Fresh Produce Co.*, 09-4561-cv (2d Cir. 2010).
- *Sperry v. Crompton Corp.*, 8 N.Y. 3d 204 (2007).
- *Cox v. Microsoft Corp.*, 8 A.D. 3d 39, 778 N.Y.S. 2d 147 (1st Dep't 2004).
- *Cox v. Microsoft Corp.*, 290 A.D. 2d 206, 737 N.Y.S. 2d 1 (1st Dep't 2002).
- *Sperry v. Crompton Corp.*, A.D. 3d 488, 810 N.Y.S. 2d 498 (2d Dep't 2006).

Recent Publications

- *Class Action Issues*, Ch. 5 of *Private Antitrust Enforcement of Antitrust Law in the United States: A Handbook* (Edward Algar, Cheltenham, UK)(co-authored with Cohen Milstein associates Michael B. Eisenkraft and Abigail Shafroth) (forthcoming in 2012).

- 27 -

Exhibit 1

- *Heart of Darkness -- A Satirical Commentary*, 66 N.Y.U. Annual Survey of Am. Law 569 (2011).
- *Aggregation of Claims*, Ch. 8 of The International Handbook on Private Enforcement of Competition Law (AAI, 2010).
- Article contained in NYSBA 2010 Antitrust Law Section Symposium (transcript of oral remarks), titled "*Section 2 and the EU, Too: Developments in the Analysis of Dominant Firms.*"
- *Predominance of Common Questions -- Common Mistakes in Applying the Class Action Standard*, 41 Rutgers L.J. 163 (2009) (co-authored with partner Benjamin Brown).
- Co-author, with John Vail of the Center for Constitutional Litigation, of *A Misguided Mission to Revamp the Rules*, TRIAL MAGAZINE, Nov. 2009.
- *Class Action Standards in Crisis: Whether Common Merits Questions Predominate Does Not Depend on the Questions' Answers*, Global Competition Policy (May 2009).
- *Three Limitations of Twombly: Antitrust Conspiracy Inferences in a Context of Historical Monopoly*, 82 St. John's L. Rev. 849 (2008).
- *What Makes An Antitrust Class Action Remedy Successful?: A Tale of Two Settlements*, 80 Tulane L. Rev. 621 (2005).

Recent Speaking Engagements

- June 2012 - Speaker at Federal Bar Council/Antitrust Section presentation entitled "Antitrust Conspiracies, Class Actions and Refusals to Deal: Parallels, Signals, Plus Factors and Agreements."
- April 2012 - Speaker at 12th Annual Loyola Law School Antitrust Colloquium on the subject of "Exclusion as a Core Principle of Antitrust."
- February 2012 - Testified before United States House Judiciary Committee's Subcommittee on Intellectual Property, Competition and the Internet, at a hearing titled "Litigation as a Predatory Practice" concerning whether antitrust immunity under the Noerr-Pennington doctrine should be curtailed.
- January 2012 - Moderator at Next Generation of Antitrust Scholarship Conference, held at NYU Law School.
- December 2011 - Speaker at American Antitrust Institute, 5th Annual Future of Private Antitrust Enforcement Conference.
- October 2011 - Plaintiffs' bar commentator at Antitrust Forum organized by Antitrust Law Section of NYSBA entitled "Upward Price Pressure, Market Definition, and Supply Mobility."
- January 2011 - Speaker at NYS Bar Association Antitrust Law Section annual meeting concerning recent developments in case law under Daubert, on panel titled "Fifty Miles from Home with a Briefcase: Expert Hot Topics."
- December 2010 - Speaker at Private Enforcement Conference of the American Antitrust Institute at National Press Club in Washington, D.C., regarding recent developments involving motions to dismiss in antitrust cases.
- July 2010 - Speaker at Pound Civil Justice Institute 2010 Forum for State Appellate Court Judges (before approximately 100 state court judges) in Vancouver, B.C. regarding application of *Twombly* in state courts.
- June 2010 - One of approximately thirty class action practitioners interviewed by Prof. Francis McGovern of Duke Law School in preparation for his report commissioned by the United States Judicial Conference regarding Multi-District Litigation procedures under 28 U.S.C. § 1407 and ways they might be improved.

- 28 -

Exhibit 1

- May 2010 - One of approximately 180 judges, law professors and practitioners participating in a conference at Duke Law School sponsored by the Standing Committee on the Federal Rules of Civil Procedure concerning possible rule revisions.
- April 2010 - Participant in mock argument before the Hon. Sidney H. Stein of the United States District Court for the Southern District of New York, opposite Paul Saunders of Cravath Swaine & Moore, entitled *Twombly v. Conley—The fight of the Century.*
- March 2010 - Presentation to Rutgers–Camden Law School Faculty and Students regarding *Twombly.*
- February 2010 - Speaker on Private Enforcement panel at a symposium at NYU Law School entitled "Critical Directions in Antitrust," sponsored by the NYU Annual Survey of American Law and organized by Profs. Harry First and Eleanor Fox.
- January 2010 - Speaker at annual meeting of the NYS Bar Antitrust Section, along with leading attorneys from the Intel and Microsoft cases from Europe and America, in program titled "Section 2: Is It Really Coming Back?"
- December 2009 - Speaker at Private Enforcement Conference of the American Antitrust Institute at National Press Club in Washington, D.C., regarding issues of class certification.
- November 2009 - Panelist at Federal Bar Council presentation to Second Circuit law clerks, moderated by United States District Judge Lewis A. Kaplan, titled "Issues That Arise in Antitrust Cases That You Don't Learn About in Law School."
- October 2009 - Panelist at Federal Bar Council program, moderated by the Hon. Mark R. Kravitz of the United States District Court for the District of Connecticut, entitled "Motions to Dismiss in Federal Court After the Supreme Court's Decisions in *Twombly* and *Iqbal.*"
- October 2009 - Panelist, along with former Assistant Attorney General Thomas O. Barnett and FTC Commissioner J. Thomas Rosch, with regard to "Monopolization in the New Administration," at the Newport Summit on Antitrust Law and Economics.
- September 2009 - Speaker for AAJ Teleseminar entitled "*Iqbal/Twombly*: The Death of Notice Pleading?"
- September 2009 - Panelist on issues of class certification at University of San Francisco symposium entitled "A Prescription for Antitrust Enforcement in the Pharmaceutical Industry."
- January 2009 - Represented plaintiff's bar at a meeting of the Standing Committee on the Federal Rules of Civil Procedure, held in San Antonio, Texas, for a presentation concerning the extent of recent increased discovery burdens in federal litigation and possible revisions to rules to address them.
- September 2008 - Panelist at the annual meeting of the National Association of Attorneys General, held in Salt Lake City, Utah, for presentation entitled "Recent Developments in Intellectual Property," along with Columbia Law School Prof. Scott Hemphill and Cheryl Johnson, Assistant Attorney General, California.
- April 2008 - Speaker at conference held at N.Y.U. Law School, organized by N.Y.U. antitrust Profs. Harry First and Eleanor Fox, commenting on Report and Recommendations of the Antitrust Modernization Commission, dated April 2, 2007.
- November 2007 - Panelist at the ABA Fall Forum in Washington, D.C. for presentation entitled "Litigation an Antitrust Case After *Twombly.*"
- October 2007 - Panelist at the 2007 Fall Bench and Bar Retreat of the Federal Bar Council, in Lenox, Massachusetts, titled "Rule 23 in the Second Circuit: Post-CAFA and Post-IPO."

Legal and Policy Advisory Positions

- American Antitrust Institute
  Member, Board of Advisors

- 29 -

Exhibit 1

- Institute for Consumer Antitrust Studies
  Member, Board of Advisors
- Antitrust Section, New York State Bar Association
  Member, Executive Committee

**Linda Singer**

Linda Singer, a Partner, joined Cohen Milstein Sellers & Toll, PLLC in 2009 as head of the Public Client practice group. Ms. Singer is the former Attorney General for the District of Columbia. Ms. Singer has represented clients in approximately 350 matters during her legal career. Ms. Singer brings her extensive experience to lead the practice in supporting state Attorneys General, who serve as the critical front line in litigation protecting consumers, workers, and public resources.

Ms. Singer currently represents Attorneys General in high stakes and high profile investigations and litigation involving consumer and Medicaid fraud, including in mortgage lending and servicing and other financial services and the marketing of prescription drugs, and misclassification of independent workers in violation of state tax and employment laws. The Public Client Practice focuses on cases with a strong policy dimension that are likely to result in litigation, are especially resource-intensive, or require specialized expertise.

Among other cases, Ms. Singer has:

- Represented a state Attorney General in the landmark proceedings against Countrywide Financial (and its parent, Bank of America), which resulted in mortgage modifications and other relief valued at approximately $8.6 billion. As a result of the settlement, Countrywide agreed to provide loan modifications to 400,000 borrowers nationwide and financial relief to the states and borrowers.
- Represented the States of Arizona and Nevada in consumer fraud lawsuits against Bank of America over the servicing of nearly one half million mortgages. Those cases were settled as a part of the national mortgage settlement with significant additional recoveries for the states and consumers.
- Represented attorneys generals in a multi-billion dollar settlement with a major lender over the deceptive marketing of payment option adjustable rate mortgages.
- Represents an attorney general in investigations relating to the securitization of subprime mortgages.
- Represents the State of Mississippi in litigation against credit rating agencies Moody's and Standard & Poor's for consumer fraud. Since Mississippi filed its case, more than two years ago, the Department of Justice and 11 other states have filed similar cases.
- Represents the State of Nevada in multi-forum litigation against Lender Processing Services, a mortgage servicer, for its role in fraudulently executing tens of thousands of mortgage- and foreclosure-related documents.
- Represents the Indiana Attorney General in litigation against McKesson, one of the three largest wholesalers of prescription drugs, and First DataBank, which publishes prescription drug pricing information, for conspiring to fraudulently inflate the average wholesale price of drug prescriptions, causing the Indiana Medicaid program to overpay by tens of millions of dollars.
- Represents attorneys general in various antitrust investigations relating to the financial crisis and technology issues.

- 30 -

Exhibit 1

- Represented an attorney general in a multi-million dollar misclassification case against Fortune 100 company.
- Represented an attorney general in the investigation of a high profile consumer prescription drug case.
- Represents cities in prescription drug and other consumer fraud investigations.
- Represents two states in investigations of failures of care and Medicaid and consumer fraud by several national health care providers.

Because many of these matters remain non-public investigations, the specific attorney general's office and target are not always listed.

Before entering the private sector, Ms. Singer led the seventh-largest state Attorney General's office in the nation, overseeing the litigation and policy initiatives carried out by her staff of more than 350 lawyers. As the chief law enforcement office for the District of Columbia, she was responsible for overseeing all of the District's litigation, providing legal advice to the Mayor and the Directors of other District agencies, and for representing the interests of District residents through enforcement initiatives focused on consumer protection, public safety, and the environment. During her tenure as Attorney General, Ms. Singer successfully petitioned the Supreme Court to hear its first Second Amendment case in more than 70 years; developed new initiatives to combat gun violence; and expanded enforcement litigation aimed at protecting consumers, children, tenants, and victims of domestic violence.

Prior to serving as Attorney General, Ms. Singer was the Executive Director of the Appleseed Foundation, a national network of public interest law centers. Earlier in her career, Ms. Singer served as a staff attorney in the Criminal Defense Division of the Legal Aid Society of New York City. She has spoken extensively before legal and other audiences and is a frequent contributor to numerous legal trade publications.

In 2010, Ms. Singer was selected one of "Washington's Most Influential Women Lawyers" by The National Law Journal.

Ms. Singer is a graduate of the Harvard College (B.A., *magna cum laude*, 1988) and of Harvard Law School (J.D., *magna cum laude*, 1991).

Ms. Singer is admitted to practice in the District of Columbia and New York.

**R. Joseph Barton**

Joseph Barton, a Partner at the Firm, joined Cohen Milstein in 2001 and is a member of the Employee Benefits practice group.

Prior to joining the firm, Mr. Barton served as a judicial law clerk to the Honorable Lenore C. Nesbitt, United States District Judge for Southern District of Florida (2000-2001). Since joining the firm, Mr. Barton has been actively involved in a variety of class action cases involving employee benefits as well as antitrust and securities cases.

Mr. Barton has been actively involved in a diverse number of employee benefit cases. He has litigated and is litigating a number of private ESOP cases. In litigation challenging the sale of stock for $25

- 31 -

Exhibit 1

million by the family shareholders to the Azon Corporation ESOP, Mr. Barton defeated defendants' summary judgment motions and obtained partial summary judgment and obtained a settlement of $9.25 million for the ESOP participants. In litigation challenging a sale of stock to the Tharaldson Motels Inc. ESOP (one of the largest ESOP's in the country) for $500 million, Mr. Barton obtained a determination that former employees had standing to sue as participants of the plan. Mr. Barton has also been involved in a number of cases alleging breach of fiduciary duty by investing the 401k plan in company stock of publicly traded companies. In *Simpson v. Fireman's Fund Insurance Company* (N.D. Cal.), Mr. Barton represented a class of active and terminated employees alleging that FFIC's policy of terminated persons on disability violated the discrimination provisions of ERISA, and obtained a settlement restoring their right to benefits for a period of years and also reimbursement of past expenses. Mr. Barton has been lead trial counsel in two complex class action ERISA cases, obtaining favorable results at the trial level, most recently a trial challenging a transaction involving the Trachte ESOP and the Alliance ESOP on behalf of a class of employees of Trachte.

In addition to private ESOP cases, Mr. Barton has litigated a number of cases involving allegations of fiduciary misconduct involving the purchase or holding of publicly-traded employer stock in 401k or other retirement plans. Mr. Barton was also involved in one of the earliest cases challenging the prudence of investment and fees of the pension and 401k plans sponsored by New York Life Insurance Company. Mr. Barton is currently involved in the litigation against the Weyerhaeuser Company in alleging that the plan's investment of defined benefit pension plan assets in an array of hedge fund and private equity was imprudent.

Mr. Barton has also provided advice to independent fiduciaries and is currently representing the fiduciaries in litigation against their investment manager.

Mr. Barton has been active in a number of securities fraud lawsuits including *In re Physician Corporation of America Securities Litigation* (S.D. Fla.) (settlement of $10.2 million), and *In re MCI Securities Litigation* (D.D.C.) (settlement of $4.5 million) and also represented a small class of former Sterling shareholders who received Uniroyal stock in a merger in *Avery v. Uniroyal Technology Corp.*, (M.D. Fla.) (settlement of $2.3 million). Mr. Barton represented a limited partners of Lipper Convertibles, a defunct hedge fund, in an arbitration against the fund's former general partners, *Levitt v. Lipper Holdings et al.* (AAA), and in litigation against the outside auditor in federal district court, *Levitt v. PricewaterhouseCoopers* (S.D.N.Y.) in connection with their investments in the Partnership which were allegedly overvalued for over 5 years.

Mr. Barton has also worked on a number of antitrust actions. Mr. Barton was a part of the team that engaged in intensive trial preparations in *In re High Fructose Corn Syrup Antitrust Litigation*, (C.D. Ill.), a class action alleging price-fixing by the manufacturers of high fructose corn syrup, which settled for more than $500 million shortly before trial. Mr. Barton litigated *In re Mercedes-Benz Antitrust Litigation* (D.N.J.), a class action alleging price-fixing of new Mercedes -Benz vehicles in the New York Region, that settled for $17.5 million or 50% of Plaintiffs' calculation of actual damages. In connection with the Mercedes-Benz litigation, Mr. Barton briefed and argued and obtained summary judgment on an issue of first impression that established that lessee-plaintiffs had standing to sue as direct purchasers under the federal antitrust laws.

Mr. Barton considers pro bono representation an important component of his practice and usually has at least one pro bono representation. He has represented a number of clients involving actions concerning their employer's failure to pay wages and/or overtime. In one such action, the Judge in

- 32 -

Exhibit 1

D.C. Superior Court described Mr. Barton's representation as follows: "everything done on behalf of the Plaintiff has been professional, timely and thorough."

Along with the non-profit law firm Midwest Environmental Advocates, Mr. Barton provided pro bono representation to the grassroots citizens action group Clean Water Action Council of Northeastern Wisconsin, in objecting to a settlement by the United States Department of Justice and the State of Wisconsin concerning natural resource damages in the Fox River area of Wisconsin.

Mr. Barton received his undergraduate degree from the College of William & Mary (B.A. 1991) where he majored in History and minored in Classical Studies, and graduated Order of the Coif from the College of William & Mary, Marshall-Wythe School of Law (J.D. 2000). At law school, he received the Lawrence W. I'Anson Award for outstanding student scholarship, character and leadership, the William B. Spong Award for professionalism and ethics, the Robert R. Kaplan Award for excellence in legal writing and Order of the Barristers. He served on the editorial board of the William & Mary Law Review and was a staff member of the William & Mary Bill of Rights Journal. Mr. Barton was a member of the William & Mary National Trial Team and served as Vice-President of the William & Mary Chapter of the Association of Trial Lawyers of America.

Mr. Barton is the author of a number of articles including *Determining the Meaning of "Direct Evidence" in Discrimination Cases Within the Eleventh Circuit: Why Judge Tjoflat was (W)right*, 77 Fla. B.J. 42 (2003), *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L. Rev. 1789 (2000), and *Utilizing Statistics and Bellwether Plaintiff Trials: What do the Constitution and the Federal Rules of Civil Procedure Permit?*, 8 Wm. & Mary Bill Rts. J. 199 (1999). Each of these published articles has been cited by courts and commentators.

Mr. Barton has been invited to speak on ERISA and Class Actions including at the ABA Employee Benefits Mid-Winter meetings, the ABA Joint Committee on Employee Benefits. Mr. Barton is the Plaintiffs' Co-Chair of the Civil Procedure Subcommittee for the ABA Employee Benefits Committee. Mr. Barton is also the current Vice-Chair of the Employment Rights Section of the American Association of Justice (AAJ) which focuses on all aspects of employment and labor law including Title VII, ADA, ADEA, FMLA, wrongful discharge, and employee benefits cases.

Mr. Barton is admitted to practice in the State of California and the District of Columbia and is listed in the Marquis' Who's Who in American and Who's Who in American Law.

**Joshua S. Devore**

Joshua Devore, a Partner at the Firm, joined Cohen Milstein in 2000 as a member of the Securities Fraud/Investor Protection practice group.

He is currently working on several securities fraud class actions (including the litigation on the collapse of the Italian dairy conglomerate Parmalat), and has been heavily involved in litigation regarding Wall Street research analysts. He has actively participated in a number of cases that resulted in substantial recoveries for investors, including *In re Lucent Technologies, Inc. Securities Litigation* (settlement of approximately $575 million); *In re Merrill Lynch Research Reports Securities Litigation* (settlement of $125 million); *In re VeriSign Corp. Securities Litigation* (settlement of $78 million); and *Norman v. Salomon Smith Barney* (settlement of $51 million on behalf of Guided Portfolio Management Account holders).

- 33 -

Exhibit 1

Mr. Devore has been the primary author of numerous briefs addressing complex and novel issues of the federal securities laws, leading to notable reported decisions such as *In re Parmalat Securities Litigation*, 376 F.Supp.2d 472 (S.D.N.Y. 2003), that affirmed claims of "scheme" liability against a corporation's outside investment banks, and *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), that reversed a dismissal on statute of limitations grounds and reset the standards for pleading loss causation. He was also a member of the trial team in *In re Globalstar Securities Litigation*, which settled for $20 million during trial after Plaintiffs had fully presented their case.

Mr. Devore is actively involved in the representation of the firm's institutional investor clients and personally developed and oversees the analysis of the firm's clients' investments in securities that may have been affected by fraud.

Mr. Devore graduated from Rice University in 1997 with a B.A. in Chemistry, and obtained his law degree from Georgetown University Law Center in 2000. While at Georgetown, Mr. Devore served as an Executive Editor of the Georgetown International Environmental Law Review. Mr. Devore is co-author of *State Court Class Actions: Trends and Issues*, in National Institute on Class-Actions, C-1 (ABA CLE 1999).

Mr. Devore is admitted to practice in the District of Columbia and the Commonwealth of Virginia.

### Christopher J. Cormier

Christopher J. Cormier, a Partner at the Firm, joined Cohen Milstein in 2003 and is a member of the Antitrust Practice Group. He has gained considerable experience at the pre-trial, trial and appellate levels in various types of large and complex antitrust cases. And he has helped obtain recoveries for clients in these matters totalling in the hundreds of millions of dollars.

Chris has been named a Washington, D.C. "Litigation Star" in Antitrust in *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Firms and Attorneys* (2013 edition).

He works or has worked on the following representative matters:

- *In re Plasma-Derivative Protein Therapies Antitrust Litigation* (N.D. Ill.), where he serves on the plaintiffs' steering committee on behalf of a proposed class of direct purchasers alleging a nationwide output restriction and price-fixing conspiracy. He plays a leading role in managing all day-to-day as well as strategic aspects of the plaintiffs' litigation efforts.
- *In re Urethane Antitrust Litigation* (D. Kan.), where he serves as co-lead counsel on behalf of a certified class of direct purchasers of several types of chemicals that were overcharged as a result of a nationwide price-fixing and market allocation conspiracy. He plays a leading role in litigating major aspects of the case, and he has helped obtain class settlements with Bayer ($55.3 million), BASF ($51 million), and Huntsman ($33 million). He was a member of the trial team who obtained a $400 million (pre-trebling) jury verdict against the sole remaining defendant, Dow Chemical.
- *In re Endosurgical Products Direct Purchaser Antitrust Litigation*(C.D. Cal.), where he served as co-lead counsel on behalf of a proposed class of direct purchasers of medical instruments used in laparoscopic surgery that were overcharged pursuant to alleged monopolistic conduct. In 2009, the Court approved class settlements valued at more than $39 million.

- 34 -

Exhibit 1

- *In re Parcel Tanker Shipping Services Antitrust Litigation* (D. Conn.), where he served as co-lead counsel in an arbitration on behalf of direct purchasers of shipping services who allegedly were overcharged pursuant to the defendants' international customer allocation and price-fixing conspiracy. He was a primary author of the brief opposing defendants' request for Supreme Court review of the lower court's order holding that the relevant arbitration clauses did not preclude class-wide arbitration.
- *McIntosh, et al. v. Monsanto Co., et al.* (E.D. Mo.), where he served as co-lead counsel on behalf of farmers alleging a price-fixing conspiracy concerning genetically modified soybean seeds. Following the Court's denial of the remaining defendant's motion for summary judgment, the plaintiffs settled with that defendant on confidential terms.
- *Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al.* (Knox County Superior Court, Me.), where he served as co-lead counsel on behalf of a class of Maine wild blueberry growers. In 2004, a Maine state court jury found the processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy, and ordered the defendants to pay over $56 million in damages.

Chris also has written about developments in the antitrust field. He is one of the authors of "Perspectives on the Future Direction of Antitrust," Antitrust, Vol. 22, No. 3, Summer 2008, © 2008 by the American Bar Association. He also is a co-author of "Private Recovery Actions in the United States," The Antitrust Review of the Americas 2010, Global Competition Review, September 2009.

Prior to joining Cohen Milstein, Chris practiced at a large Baltimore-based law firm, where he focused on commercial and antitrust litigation. After his first year of law school, he served as a judicial intern to the Honorable Deborah K. Chasanow, United States District Court for the District of Maryland. During his second year of law school, he served as a legal intern in the National Criminal Enforcement Section of the United States Department of Justice's Antitrust Division.

He graduated from the University of Virginia with a B.A. in Government in 1999 and from the American University's Washington College of Law (*magna cum laude*) in 2002.

He is admitted to practice in Maryland, the District of Columbia, the U.S. District Court for the District of Maryland, the U.S. Court of Appeals for the 9th Circuit; the U.S. Court of Appeals for the 10th Circuit; and the U.S. Supreme Court. His work in Florida is supervised by partners of the firm who are State Bar of Florida members, pending his admission to the Florida bar.

**Betsy A. Miller**

Betsy A. Miller, a Partner at the Firm, joined Cohen Milstein in 2009 and is a member of the Public Client practice group.

Named one of Washington's *Top 40 Under 40 Rising Legal Stars* by the National Law Journal, Ms. Miller is an experienced labor, employment and commercial litigator. Currently, Ms. Miller represents state Attorneys General in investigations, litigation and enforcement actions involving fraudulent mortgage lending, unsafe and deceptive practices in the sale of prescription drugs, and misclassification of independent contractors in violation of state tax and labor laws. In addition to government clients, Ms. Miller represents other public-sector clients, including non-profit organizations and labor unions, in their efforts to ensure enforcement of laws protecting workers and consumers.

- 35 -

Exhibit 1

Since 2001, Ms. Miller has served on the adjunct faculty of Georgetown University Law Center, where she teaches courses on mediation strategy and negotiation skills. Ms. Miller's dispute resolution experience also includes serving as a mediator, arbitrator, mediation coach and negotiation skills trainer. She has taught negotiation skills courses at Harvard Law School and for a variety of federal and state government clients, law firms, corporations and non-profit organizations. As a consultant for the Kennedy School of Government, Ms. Miller traveled to Central America to evaluate mediation and arbitration programs in Guatemala, Costa Rica, El Salvador and Nicaragua.

Prior to joining Cohen Milstein, Ms. Miller served as the Chief of Staff and Senior Counsel to Linda Singer, the former Attorney General for the District of Columbia. In that capacity, Ms. Miller managed high-profile legal issues and policy initiatives for the Attorney General and was the Mayor's lead labor and employment lawyer overseeing the transition of the D.C. Public Schools to mayoral control. Ms. Miller also supervised the General Counsels' offices of three District agencies, including the D.C. Public Schools and the Office of the State Superintendent for Education. Her other government experience includes serving as Counsel to the U.S. Senate Committee on the Judiciary, where she worked for Chairman Patrick J. Leahy (VT), and clerking for the Honorable Thomas Penfield Jackson in the U.S. District Court for the District of Columbia. In addition, Ms. Miller spent seven years as a litigator in the private sector, working for Jones Day and Crowell & Moring, LLP.

Ms. Miller's recent publications include "Untapped Potential: Creating a Systematic Model for Mediation Preparation," *Dispute Resolution Journal* (May-August, 2009) and "WARNings for Firms Facing Layoffs or Bankruptcy," *Law360* (January, 2009).

Ms. Miller received her undergraduate degree in Comparative Literature from Dartmouth College, *magna cum laude* and Phi Beta Kappa (A.B., 1996). She received her law degree from Harvard Law School, where she was an editor on the Harvard Human Rights Journal and the Harvard Latino Law Review (J.D., 1999). After graduating, Harvard awarded Ms. Miller the Heyman Fellowship for government service and academic excellence and the Kaufman Fellowship for public service.

Ms. Miller is admitted to practice in Massachusetts and the District of Columbia.

**Manuel J. Dominguez**

A partner in Cohen Milstein's Florida office, Manuel J. ("John") Dominguez focuses his practice on antitrust and consumer protection litigation. Mr. Dominguez plays a leading role in the firm's antitrust group identifying and investigating potential antitrust violations.

Mr. Dominguez is also involved in and helps to manage many of the firm's pending antitrust cases. He is currently representing plaintiffs in antitrust litigation involving alleged price-fixing and other anti-competitive conduct in various industries including truck transmissions, high tech, medical products, building materials, agricultural, entertainment and finance, among others. He recently litigated and resolved cutting-edge litigation against a major internet service provider for allegedly unlawfully collecting the internet search data of millions of users and making their private information available for downloading by the general public.

- 36 -

Exhibit 1

Mr. Dominguez has been litigating complex antitrust and consumer cases for more than 15 years, and has served as lead counsel and handled numerous high-profile, high-stakes cases during that time. His efforts have enabled aggrieved businesses and consumers to recover hundreds of millions of dollars.

Mr. Dominguez is also nationally recognized for his knowledge of managing the discovery process in today's increasingly technologically complex business environment. He has made presentations on topics such as the impact of the new e-discovery amendments to the Federal Rules of Civil Procedure, and has also participated in The Sedona Conference® Working Group 1 – an organization at the vanguard of developing standards for electronic discovery.

Mr. Dominguez currently serves as the Chair for the Antitrust, Franchise & Trade Regulation Committee of the Florida Bar's Business Law Section. Mr. Dominguez previously served as the Vice Chair of this committee and is also a member of the Executive Council of Florida Bar's Business Law Section. Mr Dominguez also co-authored an article for the Florida Bar Journal, "The Plausibility Standard as a Double Edge Sword: The application of Twombly and Iqbal to Affirmative Defenses" (Volume 84, No 6, June 2010).

Mr. Dominguez began his career as an Assistant Attorney General serving in the Attorney General of the State of Florida's Department of Economic Crimes. As an AAG, he represented the state of Florida in prosecuting corporations and business entities for alleged violations of Florida's RICO, antitrust, and Unfair and Deceptive Trade Practices Act statutes. Following his service as an AAG, Mr. Dominguez entered private practice, litigating and trying numerous cases involving unfair trade practices and other alleged violations of state and federal consumer protection statutes. In 2000 he joined Berman DeValerio as an associate and when he left the firm in 2011 he was one of the partners leading the firm's antitrust and consumer practice groups.

Mr. Dominguez graduated with honors from the Florida State University Law School in 1995, where was a member of the *Transnational Journal of Law and Policy*. He received his undergraduate degree from Florida International University in 1991.

Mr. Dominguez is admitted to practice law in the State of Florida as well as U.S. District Courts for the Northern, Middle and Southern Districts of Florida. Mr. Dominguez is also admitted to practice in the United States District Court for Northern District of Illinois.

### Brent W. Johnson

Brent W. Johnson, a Partner at the Firm, joined Cohen Milstein in 2009 and is a member of the Antitrust Practice Group. Mr. Johnson has considerable expertise in complex antitrust litigation and class actions.

Mr. Johnson represents businesses and individuals as plaintiffs in federal and state civil actions with a focus on multi-district class actions. His class action experience spans across multiple industries, such as dairy, processed foods, automotive parts, private equity, adhesives, chemicals and others. His practice encompasses a broad variety of antitrust claims, including Sherman Act Section 2 monopoly and monopsony claims as well as Section 1 restraints of trade. Mr. Johnson also represents state Attorneys General in litigation involving deceptive practices in the sale of prescription drugs.

Mr. Johnson's recent matters include, among others:

- 37 -

Exhibit 1

- *Allen vs. Dairy Farmers of America* (D. Vt.), in which he represents Northeast dairy farmers against Dairy Farmers of America and Dairy Marketing Services who fixed prices, allocated markets and monopolized a level of distribution of raw milk in the Northeast and in which defendant Dean Foods Company settled for $30 million;
- *In re Automotive Parts Antitrust Litigation* (E.D. Mich.), in which he represents direct purchasers of wire harnesses, bearings and other automotive parts who were overcharged as a result of price-fixing and bid-rigging conspiracies by various sets of defendants throughout the automotive parts industry;
- *In re Urethane Antitrust Litigation* (D. Kan.), in which he serves as co-lead counsel on behalf of a certified class of direct purchasers of several types of chemicals who were overcharged as a result of a nationwide price-fixing and market allocation conspiracy and in which multiple defendants have collectively settled for over $130 million;
- *In re Online DVD Rental Antitrust Litigation* (N.D. Cal.), in which he represents direct purchasers of online DVD rentals who were overcharged as a result of a market allocation conspiracy by defendants and in which defendant Wal-Mart settled for more than $27 million; and
- *Carlin v. Dairy America, Inc.* (E.D. Cal.), in which he serves as co-lead counsel on behalf of a proposed class of dairy farmers paid artificially deflated prices for raw milk due to the negligence of defendants;

Prior to joining Cohen Milstein, Mr. Johnson practiced at Latham & Watkins LLP in its Washington, D.C. and New Jersey offices for six years, where he focused on antitrust litigation. Some of Mr. Johnson's matters included:

- *Feesers, Inc. v. Michael Foods, Inc. and Sodexho, Inc.* (M.D. Pa.), in which he was a member of the successful trial team that represented Michael Foods, a manufacturer of processed egg products and refrigerated potato products, in a three week trial of a Robinson-Patman Act action brought by a broad-line distributor of food products;
- *National Laser Technology, Inc. v. Biolase Technology, Inc.* (S.D. Indiana), in which he represented Biolase, the country's largest manufacturer of lasers for dental applications, in a civil action brought by an after-market dental laser support company resulting in a favorable settlement for the client. The plaintiff alleged that Biolase had monopoly power over the hard tissue dental laser market and used that power to coerce dentists into purchasing products from it in violation of Sections 1 and 2 of the Sherman Act;
- *Dahl, et al. v. Bain Capital, et al.* (D. Mass.), in which he represented The Carlyle Group in a class action where plaintiffs alleged collusion among certain private equity firms and investment banks in specific going-private transactions in violation of Section 1 of the Sherman Act; and
- *In re Aftermarket Filters Antitrust Litigation* (N.D. Ill.), in which he represented Champion Laboratories, a manufacturer of aftermarket automotive filters, in a class action where plaintiffs alleged a conspiracy among manufacturers to fix prices in violation of Section 1 of the Sherman Act.

Mr. Johnson also advised clients in the insurance, commodities exchange, chemical and energy industries in obtaining clearance of mergers, acquisitions and joint ventures from the Federal Trade Commission and the Antitrust Division of the Department of Justice in connection with pre-merger notification proceedings under the Hart-Scott-Rodino Antitrust Improvements Act.

- 38 -

Exhibit 1

Mr. Johnson also has significant experience in other complex civil and criminal litigation and investigations. He has substantial mass torts experience and represented the City of New York and others in multiple federal actions related to the September 11th attacks. He has litigated government contracts matters and was a member of a team handling a GAO administrative hearing concerning a $1.1 billion Air Force procurement contract. He has conducted internal investigations in response to criminal investigations and inquiries by the Department of Justice and U.S. Attorney's office. He has argued before state trial and appellate courts. He has first-chaired hearings before administrative law judges for the Department of Health and Human Services and the District of Columbia.

Mr. Johnson graduated *magna cum laude* from Duke University in 2000 with a B.A. in Political Science and Spanish. He obtained his law degree from Stanford Law School in 2003.

Mr. Johnson is admitted to practice in the District of Columbia, New York and New Jersey, as well as the U.S. District Courts for the Districts of the District of Columbia and New Jersey. He is a member of the ABA Section of Antitrust Law.

Mr. Johnson currently serves on the Antitrust Practice Group's New Case Committee.

**Gary L. Azorsky**

Gary Azorsky, a Partner at Cohen Milstein, is Co-chair of the Firm's Whistleblower/False Claims Act Practice. In his nation-wide practice, Mr. Azorsky has helped to recover more than $1.5 billion for federal and state governments, including hundreds of millions of dollars for whistleblower clients.

Mr. Azorsky is currently co-lead counsel in the qui tam action against the pharmaceutical company Wyeth pending in the District of Massachusetts, in which more states have joined to intervene along with the government of the United States than have ever intervened in a qui tam action in history. (*United States of America et al., ex rel. Lauren Kieff, v. Wyeth*, No.1:03-CV-12366-DPW (D.Mass.)). He has also represented whistleblowers in False Claims Act cases involving defense contractors, off-label marketing and misbranding by pharmaceutical companies, and fraud in connection with for-profit colleges and student loan programs. In addition, Mr. Azorsky represents whistleblowers in tax fraud claims against large and small corporations through the IRS Whistleblower Office, as well as whistleblowers alleging violations of the Foreign Corrupt Practices Act filed with the SEC Whistleblower Office.

Mr. Azorsky served as co-counsel for the whistleblower on the following representative matters:

- *United States of America ex rel. Ven-a-Care of the Florida Keys Inc. v. Dey Laboratories, et al.*, Civil Action No. 05-11084 (D. Mass) ($280 Million settlement in December 2010)
- *United States of America ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 07-10248 (D. Mass.) ($280 Million settlement in December, 2010)
- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($6.5 Million settlement with Dey Laboratories, Inc. in March 2010)
- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($9.57 Million settlement with Schering-Plough in December 2009)

- 39 -

Exhibit 1

- *Florida ex rel. Ven-A-Care of the Florida Keys Inc. v. Boehringer Ingelheim Corp, et al.*, Civil Action No. 98-3-32A (Leon Cty., Fla.) ($8.5 Million settlement with Boehringer Ingelheim in December 2009)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Roxane Laboratories, Inc., Boehringer Ingelheim Pharmaceuticals, Inc., Ben Venue Laboratories, Inc. and Boehringer Ingelheim Corporation*, Civil Action No. GV3-03079 (Travis Cty., Tex.) ($10 Million settlement with Boehringer Ingelheim in November 2005)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Warrick Pharmaceuticals Corporation, Schering Plough Corporation, Schering Corporation*, Civil Action No. GV002327 (Travis Cty., Tex.) ($27 Million settlement with Schering-Plough in May 2004)
- *Texas ex rel. Ven-A-Care of the Florida Keys Inc. v. Dey, Inc., Dey, L.P.*, Civil Action No. GV002327 (Travis Cty., Tex.) ($18.5 Million settlement with Dey Laboratories, Inc. in June 2003)

Mr. Azorsky regularly speaks before professional audiences regarding the federal and state False Claims Acts. He is a member of Taxpayers Against Fraud,,a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its qui tam provisions.

Prior to joining Cohen Milstein, in addition to his Whistleblower/False Claims Act practice, Mr. Azorsky was actively involved in groundbreaking civil rights, commercial and intellectual property litigation, including Internet and software industry-related litigation.

Mr. Azorsky is a member of the bars of the Commonwealth of Pennsylvania and the State of New Jersey and is admitted to the United States Supreme Court, Third Circuit Court of Appeals, Eastern District of Pennsylvania and the District of New Jersey. He received a B.A. degree from the University of Pennsylvania and his J.D. from Cornell University Law School. He is rated AV® Preeminent™ 5.0 out of 5 in Martindale-Hubbell Peer Review, representing the highest rating for professional excellence.

**Jeanne A. Markey**

Jeanne Markey, a Partner at Cohen Milstein, is Co-chair of the Firm's Whistleblower/False Claims Act Practice. She has successfully represented whistleblowers in federal and state cases across the country. Ms. Markey has extensive experience in Qui Tam litigation in the health care, defense and education industries, and has represented whistleblower clients in the public housing sector.

Ms. Markey is co-lead counsel in *United States of America et al., ex rel. Lauren Kieff, v. Wyeth*, the whistleblower case against pharmaceutical giant Wyeth (recently acquired by Pfizer). The lawsuit alleges that Medicaid, the healthcare program for the poor which is jointly funded by the federal and state governments, was defrauded when Wyeth falsely inflated the price of the acid suppression drug Protonix Oral from 2001 through 2006. Thirty-six states and the District of Columbia have joined with the United States to intervene in the Wyeth case -- more states than have ever intervened in any U.S. Qui Tam case.

She also served as the primary attorney representing the putative class in *Benzman v. Whitman*, a class action in Manhattan and Brooklyn against the U.S. Environmental Protection Agency. The claims were

- 40 -

69

Exhibit 1

based on class members' exposure to contaminants contained in World Trade Center interior dust resulting from the 9/11 attacks.

Ms. Markey is admitted to practice law in the Commonwealth of Pennsylvania, the State of New Jersey, the Eastern District of Pennsylvania and to the First Circuit Court of Appeals, Second Circuit Court of Appeals, and Eleventh Circuit Court of Appeals. She is a member of Taxpayers Against Fraud, a nonprofit, public interest organization dedicated to combating fraud against the Federal Government through the promotion and use of the Federal False Claims Act and its qui tam provisions, the Association of Qui Tam Attorneys, and frequently speaks about developments in the Qui Tam field. She received her B.A. (*cum laude*) from Colgate University and her J.D. from Cornell University Law School.

### Michael Eisenkraft

Michael Eisenkraft, a Partner at the Firm, joined Cohen Milstein in 2009 and is a member of its Securities Fraud/Investor Protection and Small Business practice groups. Mr. Eisenkraft currently represents investors in many of the firm's ongoing mortgage backed securities cases, including *HEMT* (Credit Suisse), *Harborview* (RBS Greenwich Capital), *RALI*, and *NovaStar* as well as the firm's ongoing litigation in the *ChinaMediaExpress*, *CEDC*, and *Silver* cases. In addition, since joining the firm Mr. Eisenkraft has represented investors in the *Dynex* case, which settled for $7.5 million on the eve of trial, and in the *Lehman* mortgage-backed securities case, which recently settled for $40 million.

Prior to joining the firm, Mr. Eisenkraft was associated with Kramer Levin Naftalis & Frankel LLP and, before that, with the firm now known as Milberg LLP.

Mr. Eisenkraft served as a law clerk to the Honorable Barrington D. Parker of the United States Court of Appeals for the Second Circuit.

While associated with Milberg, Mr. Eisenkraft represented a lead plaintiff in a number of securities fraud class actions, including *In re CVS Securities Litigation* (D. Mass.), which settled on the eve of trial for $110 million; *In re Novastar Financial Securities Litigation* (W.D. Mo.), which eventually settled for $7.25 million; *In re McLeodUSA Inc. Securities Litigation* (N.D. Iowa), which settled for $30 million; *In re Regeneron Pharmaceuticals Inc.* (S.D.N.Y.), which settled for $4.7 million; and *In re ARM Financial* (W.D. Ky.), which settled for $4.1 million.

When associated with Kramer Levin Naftalis & Frankel, Mr. Eisenkraft represented individuals and large corporations in complex civil, criminal, and regulatory matters. Matters included the representation of the former CEO of a publicly traded company charged with a multi-billion dollar securities fraud; the defense of the former director and chair of the compensation committee of the New York Stock Exchange in an action brought by the New York Attorney General relating to executive compensation; and the representation of publicly traded corporations in complex civil suits.

Publications:

Carol V. Gilden, Michael B. Eisenkraft, and Josh Segal, The Dangers of Missing the Forest: The Harm Caused by Verifone Holdings in a Tellabs World, Loyola University Chicago Law Journal Vol. 44: No. 5 (Summer 2013)

- 41 -

Exhibit 1

Reiser, Julie Goldsmith and Eisenkraft, Michael B. (2013) "Dodd-Frank's Protections for Senior Citizens: An Important, Yet Insufficient Step," University of Cincinnati Law Review: Vol. 81: Iss. 2, Article 5.

J. Douglas Richards & Michael B. Eisenkraft, *Pro-Business and Anti-Efficiency: How Conservative Procedural "Innovations" Have Made Litigation Slower, More Expensive, and Less Efficient*, CPI Antitrust Chronicle, May 2013 (1).

J. Douglas Richards & Michael B. Eisenkraft, *Restraint of Trade: Does Manipulation of LIBOR Fall Within the Sherman Act's Definition of "Trade"?  A Question of First Principles*, CPI Antitrust Chronicle, Nov. 2012 (2).

*Class Action Issues*, Ch. 5 of *Private Antitrust Enforcement of Antitrust Law in the United States: A Handbook* (Edward Algar, Cheltenham, UK) (co-authored with J. Douglas Richards and Abigail Shafroth) (2012).

Eric Tirschwell & Michael Eisenkraft, *"Repugnant" and "Malevolent": The Use of Acquitted Conduct in Federal Sentencing*, New York Law Journal, Sept. 9, 2009 at 4.

Robert A. Wallner & Michael Eisenkraft, *The Pleading Standard for Scienter Under the PSLRA:  Is It Constitutional?*, Securities Litigation Report, Feb. 2005, at 1.

Education:

Mr. Eisenkraft graduated *Magna Cum Laude* and Phi Beta Kappa from Brown University (2001) and *Cum Laude* from the Harvard Law School (2004).

Admissions:

Mr. Eisenkraft is admitted in New York, New Jersey, the S.D.N.Y., the E.D.N.Y., the D.N.J., the U.S. Court of Appeals for the Federal Circuit, and the U.S. Court of Appeals for the Second Circuit.

**Karen L. Handorf**

Karen Handorf, a Partner at the Firm, joined Cohen Milstein in 2007. Ms. Handorf is head of the Employee Benefits (ERISA) practice group.

Ms. Handorf is currently involved in litigation and appeals involving a broad range of employee benefits issues including church plans, ESOPs, employer stock, COBRA, mismanagement of plan investments and benefit terminations. She represented a class of 30,000 Goodyear union retirees in litigation in which Cohen Milstein obtained approval of a class action settlement between the retirees, Goodyear and the United Steel Workers, resulting in the establishment of a $1 billion trust through which retiree healthcare benefits will be provided in the future. *Redington v. Goodyear* (N.D. Ohio). She has co-authored amicus briefs filed by the firm on behalf of the Pension Rights Center in the U.S. Supreme Court (*LaRue v. DeWolff, Boberg & Associates*) and in the Third Circuit (*In re Schering-Plough Corporation ERISA Litigation*).  She also played a primary role in drafting the appellate brief in *In re Citigroup ERISA Litigation* (2d Cir.) (challenging the dismissal of a complaint alleging the imprudent purchase of employer stock) and in *Boos v. AT&T* (5th Cir.) (involving the issue of whether

- 42 -

Exhibit 1

a program providing cash payments to certain "pension eligible" retirees to reimburse them for their personal telephone expenses during retirement is a pension plan).

Prior to joining the firm, Ms. Handorf was an attorney for the U.S. Department of Labor (the "DOL") where she litigated ERISA cases in federal appellate and district courts for twenty five years. She began her ERISA career in 1982 as a trial attorney in the Plan Benefits Security Division (PBSD) where she litigated actions brought by the Secretary of Labor for violations of the fiduciary standards of ERISA and handled a number of appellate matters.

In 1989, she was appointed Counsel for Decentralized and Special Litigation responsible for supervising the DOL's ERISA appellate litigation, district court litigation brought by regional offices of the Solicitor of Labor and administrative litigation involving the civil penalty provisions of ERISA. In that position at the DOL, Ms. Handorf was responsible for establishing and supervising PBSD's amicus brief writing program which addressed a wide range of novel and difficult ERISA issues in both state and federal court. While at the DOL, she also played a major role in formulating the Government's position on ERISA issues expressed in amicus briefs filed by the Solicitor General in the United States Supreme Court.

In 2001, she was appointed Deputy Associate Solicitor of PBSD. As the Deputy Associate Solicitor, she was responsible for overseeing litigation brought by the Secretary of Labor and legal advice provided to the Employee Benefit Security Administration, which administers Title I of ERISA. In 2005, she returned to her position as supervisor of the ERISA appellate and amicus brief writing program, serving as Counsel for Appellate and Special Litigation.

Ms. Handorf is a recipient of the Department of Labor Distinguished Career Service Award, and received Exceptional Achievement Awards for her work on ERISA 401(k) plan remedies, the amicus brief in the Enron litigation, retiree health care, the amicus program in general, the appellate brief in the Department's Tower litigation, termination annuities litigation and multiple employer welfare arrangement (MEWAs) litigation.

Ms. Handorf has been recognized for her expertise by her colleagues in the ERISA bar, who made her a Fellow of the American College of Employee Benefits Counsel. She is a frequent speaker on ERISA issues for the ABA, various bar associations and private seminars, and serves as plaintiffs' co-chair of preemption subcommittee of the Employees Benefits Committee of the ABA's Labor Section.

Ms. Handorf received her law degree from the University of Wisconsin Law School in 1975. Prior to law school, she attended the University of Wisconsin-River Falls where she received a B.S. in Speech and History.

Ms. Handorf is a member of the bars of Wisconsin and the District of Columbia, and is admitted to practice before the United States Court of Appeals for the Second Circuit, Third Circuit, Fifth Circuit, Seventh Circuit, Ninth Circuit and Tenth Circuit.

**Joel P. Laitman**

Joel Laitman is a lead partner in a number of the firm's mortgage backed securities cases pending throughout the country including, *HEMT* (Credit Suisse); *Harborview* (RBS Greenwich Capital); *Rali* and *Novastar*. Joel Laitman was elected to the 2011, 2012 and 2013 New York Super Lawyers. Super

- 43 -

Exhibit 1

Lawyers is a rating service of outstanding lawyers who have attained a high-degree of peer recognition and professional achievement.

Prior to joining Cohen Milstein, Mr. Laitman was a partner at Schoengold Sporn Laitman & Lometti. At his former firm, Mr. Laitman litigated numerous national securities and consumer class actions including many securities class action cases where the firm served as sole lead counsel, including *Westar Energy Securities Litigation* (D. Kansas) ($30 million recovery); *Nicor, Inc. Securities Litigation* (N.D. Ill.) ($39 million recovery); *SPX Corporation Securities Litigation* (W.D.N.C.) ($20 million recovery); *Maley v. Del Global* ($11.5 million recovery) and *Tidel Technologies* (S.D. Tex) ($4.05 million recovery in cash and stock). In *Del Global* Judge McMahon commended him as an attorney who she "respected" and in approving the settlement stated that plaintiffs' counsel "had gone the extra mile" for the class.

Education: Columbia University B.A. 1981 *magna cum laude* (member Phi Beta Kappa); Georgetown University Law Center J.D. 1986.

**Christopher Lometti**

Chris Lometti, a Partner at the Firm, joined Cohen Milstein in 2009. Since joining the firm, he helped litigate the Countrywide MBS Litigation ($500 mil settlement pending court approval); the Lehman MBS Litigation ($40 million recovery); the WaMu MBS Litigation ($26 million recovery); and the Leap Wireless case (S.D. Cal) ($13.75 million recovery). He is also one of the lead attorneys in many of the firm's ongoing mortgage-backed securities cases, including Bear Stearns; HEMT (Credit Suisse); Harborview (RBS Greenwich Capital); Rali and Novastar.

Prior to joining Cohen Milstein, he was a founding member of Schoengold Sporn Laitman & Lometti, P.C. ("SSLL"), where he practiced for more than thirteen years in the area of securities class action litigation.

While at SSLL, Mr. Lometti oversaw the firm's institutional client development efforts. Under his supervision, the firm established relationships with dozens of Taft-Hartley pension and benefit funds which the firm represented in numerous securities class action lawsuits over the years. In addition, Mr. Lometti participated in the successful litigation of these and other cases, including WorldCom ($6.15 billion recovery), Bank One ($50 million), USN Communications ($45 million), Nicor ($39 million), PNC ($47 million), Westar ($30 million), SpectraVision ($28 million) and SPX ($10 million).

In *In re WorldCom, Inc. Securities Litigation*, 02-CV-3288 (S.D.N.Y.), Mr. Lometti represented a named plaintiff and certified class representative with a significant financial interest in WorldCom bonds. That case was settled in 2005 for over $6.15 billion, the second-largest securities fraud settlement of all time. A majority of the settlement proceeds in the WorldCom case was allocated to the bond claims of Mr. Lometti's client and the class they represented. In addition, in *In re Nicor Securities Litigation*, 02-CV-5168 (N.D. Ill.), Mr. Lometti represented a Taft-Hartley pension and benefit fund in their capacity as sole lead plaintiff. Despite the fact that the case asserted claims under Section 10b of the Securities Exchange Act of 1934 which centered on complex accounting rules governing the financial reporting of natural gas leases, the case was eventually settled for $39 million.

Prior to SSLL, Mr. Lometti was associated with Shea & Gould, a large New York City-based commercial litigation firm, where he practiced in the Litigation Department. While there, he

- 44 -

73

Exhibit 1

represented an array of clients, including Fortune 500 companies, in a wide variety of commercial litigation disputes, including SEC investigations and enforcement proceedings, securities class actions and ERISA matters.

In addition to serving as a commercial mediator for the New York State Unified Court system for many years, Mr. Lometti has served as an arbitrator for the New York Stock Exchange and the National Association of Securities Dealers since approximately 1991. In 2011, Mr. Lometti was elected to Super Lawyers. Super Lawyers is a rating service of outstanding lawyers from more than 70 practice areas who have attained a high-degree of peer recognition and professional achievement. The selection process is multi-phased and includes independent research, peer nominations and peer evaluations.

Mr. Lometti received a Bachelor of Arts from Fordham College in 1983, and his J.D. from Fordham Law School in 1986. He is a member of the New York State Bar Association, the New York County Lawyers Association and the Association of the Bar of the City of New York.

**Michelle C. Yau**

Michelle Yau, a Partner at the Firm, joined Cohen Milstein in 2007. Ms. Yau is a member of the Employee Benefits practice group.

Ms. Yau specializes in ERISA fiduciary breach cases involving complex financial transactions or investments. She successfully represented a multi-plan class of participants, beneficiaries and fiduciaries as ERISA counsel in In re Beacon Assoc. Litig., 09 Civ. 0777 (S.D.N.Y.), which, along with other consolidated case, settled for $219 million. The settlement provides approximately 70% of the Class Members damages. Several notable decisions were reached during the course of the litigation, including Judge Sand's holding that the Ivy Defendants were fiduciaries under the investment advisor for a fee regulation and the successful certification of multi-plan class. Ms. Yau was part of a team that achieved a $75 million settlement in In re: Merrill Lynch, an employer stock based on allegations that fiduciaries of the Merrill Lynch retirement plans imprudently purchased and held inflated Merrill employer stock for the retirement accounts of the Companies' employees.

Ms. Yau currently leads an action against Weyerhaeuser Company and Morgan Stanley alleging the the Plan's fiduciaries violated ERISA by investing 80-95% of the Plan's assets in risky and illiquid alternative investments (hedge funds, private equity funds and derivatives). The Weyerhaeuser Plaintiffs recently won a motion to dismiss filed by Morgan Stanley. Ms. Yau also currently represents a multi-plan case against Austin Capital and its parent corporation Key Corp based on their investment of plan assets in a Madoff feeder fund.

Prior to joining Cohen Milstein, Ms. Yau was an Honor Program Attorney at the Department of Labor where she enforced and administered of a variety of labor statutes. Before law school, Ms. Yau worked as a financial analyst at Goldman, Sachs & Co. in the Financial Institutions Group of the Investment Banking Division.

Ms. Yau received her law degree from Harvard Law School in 2003, where she was awarded several public interest fellowships, including the Heyman Fellowship for academic excellence and a demonstrated commitment to federal public service. Ms. Yau graduated Phi Beta Kappa with a B.A. in Mathematics from the University of Virginia - Ms. Yau was also selected as an Echols Scholar and

- 45 -

Exhibit 1

awarded the Student Council Scholarship for leadership, academic achievement and community service.  Ms. Yau was named a Rising Star Under 40.

Ms. Yau is admitted to practice in the District of Columbia, Massachusetts, the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit.

- 46 -

Exhibit 1

## Attorney Profiles – Retired Partner

**Herbert E. Milstein**

Herbert E. Milstein began practicing law with Jerry S. Cohen in 1970 – the birth of the Firm. Mr. Milstein has been lead or principal counsel in many of the best known securities class actions litigated during the past 40 years. He retired from the Firm in 2012.

Mr. Milstein is the author of numerous articles on topics involving class action litigations and the Federal securities laws. He recently authored an article on current issues involving federal securities laws. He also wrote a separate article in the book entitled *The Burger Years*. He is the author of a monograph on the attorney-client privilege.

As an adjunct Professor of Law at Georgetown University Law Center from 1980-1987, he taught complex litigation and continues to lecture on securities litigation and class actions at law schools and seminars sponsored by the American Bar Association, state bar associations, and continuing legal education organizations. In 1985, he received a Silver Gavel award from the American Bar Association for his distinguished example of public service.

Mr. Milstein formerly served on the staff of the Securities and Exchange Commission for five and one-half years, and last held the position of Chief Enforcement Attorney, Division of Corporate Regulation. From 1976-1980, Mr. Milstein served as Equity Receiver for National American Life Insurance Company, appointed by Judge Charles R. Richey, in *SEC v. National Pacific Corp*. For that work, the Chairman of the SEC said Mr. Milstein and the Firm served "with distinction."

Formerly the President of the National Association of Securities and Commercial Law Attorneys (NASCAT), he also served as Treasurer of that organization for six years. He is a member of the American Law Institute, and a member and former Chairman of the Executive Council of the Securities Law Committee of the Federal Bar Association.

Mr. Milstein is currently on the Board of Directors of several organizations, including The Studio Theatre of Washington, DC.

Mr. Milstein graduated from Harvard College (*cum laude*, 1958) and Columbia University School of Law (LL.B., 1961).

Mr. Milstein is admitted to practice in the District of Columbia and Massachusetts.

- 47 -

Exhibit 1

**<ins>Attorney Profiles – Of Counsel & Associates</ins>**

**Laura Alexander**

Laura Alexander joined Cohen Milstein in 2012 and is a member of the Antitrust Practice Group.  Ms. Alexander has extensive experience in complex antitrust litigation, class actions, and appeals.

Ms. Alexander represents businesses and individuals in federal and state civil actions with a focus on multi-district class actions.  She has worked on antitrust issues in many industries, including pharmaceuticals, telecommunications, cable television, wireless networking, welding, industrial fans, automotive parts, air transport, finance, enterprise software, and consumer credit, among others.  Her practice encompasses a broad variety of antitrust claims, including monopoly, monopsony, and restraint of trade claims, as well as sham litigation and pay-for-delay claims related to patents and other intellectual property.

Prior to joining Cohen Milstein, Ms. Alexander practiced at Kirkland & Ellis LLP in its Washington, D.C. office, where she focused on antitrust litigation.

Ms. Alexander also has significant experience in other complex civil and criminal litigation.  She has successfully represented several clients before the United States Supreme Court, including the House of Representatives of the State of Arizona in a federal action related to Arizona's administration of ESL education and securing the reversal of a conviction of a criminal defendant for violation of his rights under the Speedy Trial Act.  Ms. Alexander was part of the team litigating what was, at the time, the largest bankruptcy ever filed, at both the trial and appellate levels.  She has also successfully represented clients in employment discrimination lawsuits, under federal and state law, and in federal disability lawsuits.  Ms. Alexander has argued before federal appellate courts and agencies.

Ms. Alexander obtained a B.A. in Mathematics from Reed College in 2002.  She graduated *magna cum laude* from Georgetown University Law Center in 2007.  After law school, Ms. Alexander served as a law clerk to the Honorable M. Margaret McKeown on the United States Court of Appeals for the Ninth Circuit.

Ms. Alexander is admitted to practice in the District of Columbia and California, as well as the U.S. District Court for the District of Columbia.  She is a member of the ABA Section on Antitrust Law.

**Brook Andrews**

Brook Andrews, an Associate at the Firm, joined Cohen Milstein in 2013 and is a member of the Public Client practice group.  Mr. Andrews represents state Attorneys General and other public-sector clients as outside counsel in investigations and lawsuits involving fraudulent and deceptive trade practices.

Prior to his employment with Cohen Milstein, Mr. Andrews served as an Honors Trial Attorney in the Environment and Natural Resources Division at the United States Department of Justice, where he managed as lead counsel a nationwide trial practice defending challenges to natural resource management decisions and constitutional claims for regulatory and physical takings.  He received the Department of Justice Outstanding Performance Award in 2011 and 2012.

- 48 -

Exhibit 1

Before joining the Department of Justice, Mr. Andrews served as a judicial law clerk to Chief Justice Jean H. Toal of the South Carolina Supreme Court and Judge Margaret B. Seymour of the United States District Court for the District of South Carolina. While at the Supreme Court, he also served as a Staff Attorney on the South Carolina Sentencing Reform Commission.

Mr. Andrews is a 2007 graduate of the University of South Carolina School of Law, where he served as an Editor of the South Carolina Law Review, member of the Moot Court Bar National Team, Chair of the Honor Council, and President of the Public Interest Law Society. During law school, he was selected to argue a moot court case before visiting Chief Justice John Roberts of the United States Supreme Court. Upon graduation, Mr. Andrews was honored with the Compleat Lawyer Award. In addition to his law degree, Mr. Andrews holds an M.A. from the George Washington University and a B.A. from Davidson College. He is an elected member of the South Carolina Bar House of Delegates.

Mr. Andrews is admitted to practice in South Carolina and is currently practicing under the supervision of Linda Singer, a member of the District of Columbia Bar.

**Elizabeth Aniskevich**

Elizabeth Aniskevich, an Associate at the Firm, joined Cohen Milstein in 2012 and is a member of the Securities Fraud/Investor Protection practice group.

Prior to joining the firm, Ms. Aniskevich served as the Pro Se Clerk at the United States District Court for the Eastern District of Virginia in Alexandria, where she managed the pro se prisoner dockets of the seven district court judges. She also previously worked at Cohen Milstein as a law clerk from May 2010 to April 2011.

Ms. Aniskevich graduated from the University of Florida in 2008 with a Bachelor of Arts and double major in Sociology and Criminology, where she was the Valedictorian for the College of Liberal Arts and Sciences. Ms. Aniskevich received her J.D., *magna cum laude, Order of the Coif*, from American University's Washington College of Law in 2011. During law school, Ms. Aniskevich was a Senior Staff Member of the *American University Law Review* and served as a Research Assistant to her criminal law professor, Professor Ira P. Robbins. She was also the recipient of the Clair A. Cripe award for outstanding performance in correctional law.

Ms. Aniskevich is admitted to practice in Virginia.

**Luke Bierman**

Luke Bierman joined Cohen Milstein in 2011 as Of Counsel in the Securities Fraud/Investor Protection Practice Group, where he counsels pension funds on fiduciary, ethics, governance and compliance issues. Mr. Bierman's role is to assist public pension funds at critical and challenging times for those funds, and to provide collaborative and creative solutions.

Mr. Bierman is also the Associate Dean for Experiential Education and Distinguished Professor of Practice of Law at Northeastern University School of Law in Boston. Mr. Bierman oversees the School of Law's innovative and unique curriculum that combines theory and practice, including the school's distinctive Cooperative Legal Education Program, Clinics and the Legal Skills in Social Context first-year course, ensuring students are ready to practice with the full complement of

- 49 -

Exhibit 1

knowledge, skills and ethical and social values necessary to serve clients and the public interest, now and in the future.

Previously, Mr. Bierman served for almost four years as General Counsel for the Office of the New York State Comptroller, the sole trustee of the state's $140 billion pension fund and the state's chief fiscal officer for the state of New York's $130 billion budget. In this role, Mr. Bierman managed a legal staff that included 55 attorneys, and was responsible for legal advice and counsel on all matters relating to the comptroller's constitutional and statutory responsibilities, including fiduciary, governance, ethics, litigation, investment, pension benefits, state and municipal finance and legislative matters. He also managed the 35 outside law firms that represented the Comptroller in litigation and transactional matters.

Earlier in his career, Mr. Bierman served as a Fellow in Government Law and Policy at Albany Law School. He also has served as Director of the Institute for Emerging Issues at North Carolina State University, where he held the rank of Associate Professor of Political Science; as Founding Director of the Justice Center and Special Assistant to the President of the American Bar Association; as Visiting Specialist in Constitutional Law with the rank of Associate Professor at The Richard Stockton College of New Jersey; and as law clerk to Justices and as Chief Attorney of the New York Supreme Court, Appellate Division, Third Department. Mr. Bierman also has taught at Albany Law School, Northwestern University School of Law, the University at Albany and Trinity College in Hartford.

Mr. Bierman is a frequent lecturer and commentator about corporate governance reform, fiduciary responsibility and ethics, and justice reform. He was a member of the board of directors of the Council of Institutional Investors, where he co-chaired the policies committee. He is an elected member of the American Law Institute. Mr. Bierman's most recent speaking engagements include:

- Moderator, "Corporate Governance Roundtable", Active-Passive Investor Summit, New York City, April 2012
- Panelist, "Corporate Governance, Due Diligence and Securities Litigation", Public Funds Summit, San Diego, CA, March 2012
- Panelist, "Legal Developments," Public Funds Summit, Scottsdale, AZ, January 2012
- Panelist, "Dodd-Frank: Panacea or Poison?", American Bar Association Annual Meeting, August 2011
- Panelist, "What *Morrison* Means," National Summit on the Future of Fiduciary Responsibility, June 2011
- Panelist, "Fiduciary Update–Scandals", Stanford Law School Fiduciary College, March 2011
- Panelist, "The Rights and Responsibilities of Institutional Investors", Institutional Investor Conference, March 2011
- Moderator, "Fiduciary Duty", Council of Institutional Investors Annual Meeting, September 2010
- Speaker, "SEC Pay to Play Reforms," American Bar Association Business Law Section Fall Meeting, November, 2010
- Panelist, "Access to Justice: *Morrison v. National Australia Bank*," American Constitution Society, October 2010
- Keynote, "Politics and the Market: How Policy Affects Investment Decisions," De-Risking Strategies for Pension Funds, Foundations and Endowments, International Quality and Productivity Center, October 2010

- 50 -

Exhibit 1

- Panelist, "Challenges Facing Public Pension Funds," Governance for Owners Conference, October 2010
- Speaker, "Public Pension Reform in a Time of Turmoil," Emerging Issues Forum, Massachusetts Public Employee Retirement Administration Commission, September 2010
- Moderator, "Fiduciary Duty," Council of Institutional Investors Annual Meeting, September 2010
- Speaker, "*Morrison v. National Australia Bank*: Implications for Investors," Council of Institutional Investors teleconference, August 2010
- Panelist, "Regulation of Placement Agents for Public Pension Funds," National Association of Pension Plan Attorneys, June 2010
- Panelist, "The SEC's Investor Protection Mission," DC Bar Association, April 2010
- Speaker, "Dealing With Placement Agents," Stanford Law School Fiduciary College, March 2010
- Panelist, "Credit Rating Agencies' Liability," DC Bar Association, February 2010
- Speaker, "Evolving Fiduciary Obligations of Pension Plans," Institutional Investor Conference, February 2010
- Speaker, "Updates on Pension Fund Reform in New York State – Views from the General Counsel," National Association of Pension Plan Attorneys, June 2009
- Panelist, "Governance Changes as Part of Class Action Settlements," Institutional Investor Educational Foundation's Global Shareholder Activism Conference, December, 2008
- Moderator, Panels on Pension Plan Fiduciary Responsibility, Governance, and Ethics, U.S. Pensions Summit, October 2008
- Keynote Speaker, Jefferson B. Fordham Awards Luncheon, Annual Meeting of ABA Section of State and Local Government Law, August 2008
- Panelist, "Governance and Pension Plans," U.S. Pensions Summit, April 2008
- Panelist, "Fiduciary and Accounting Responsibilities in Non Profit Management," New York State Bar Association, November 2007
- Panelist, "Governance - Best Practices for Fiduciary," U.S. Pensions Summit, September 2007

Mr. Bierman earned his Ph.D. and M.A. in Political Science from the University at Albany; his J.D. from the Marshall Wythe School of Law of the College of William and Mary, where he was a member of the Law Review; and his B.A. in American Political History *magna cum laude* with High Honors from Colgate University, where he was elected to Phi Beta Kappa.

**Meghan Boone**

Meghan Boone, an Associate at the Firm, joined Cohen Milstein in 2011 as a member of the Antitrust Practice Group.

Ms. Boone was a summer associate and law clerk at Cohen Milstein from June 2009 - May 2010, and clerked for the Honorable Martha Craig Daughtrey of the United States Court of Appeals for the Sixth Circuit before joining Cohen Milstein.

Ms. Boone graduated, Phi Beta Kappa, from Trinity College in 2006, with a Bachelor of Arts with Honors in Women, Gender, and Sexuality Studies. Ms. Boone received her J.D., *summa cum laude*, Order of the Coif, from American University's Washington College of Law in May 2010. During law school, she was the Associate Symposium Editor of the American University Law Review, a Dean's Fellow in the Legal Rhetoric Department, a P.E.O. Scholar, a Myers Law Society Scholar, a

- 51 -

Exhibit 1

Centennial Scholar, and Vice President of the Women's Law Association. She was also selected to be the student speaker at the 2010 Washington College of Law Commencement. Prior to joining Cohen Milstein, Ms. Boone interned with the U.S. Equal Employment Opportunity Commission in the Office of Federal Operations, as well as with the National Women's Law Center in the Health & Reproductive Rights Group.

Ms. Boone was named one of Ms. Magazine's "Women Who Make a Difference" in 2004, for her role in founding the country's first feminist sorority, Zeta Omega Eta.

Ms. Boone is admitted to practice in Florida and the District of Columbia.

**Mary J. Bortscheller**

Mary Bortscheller, an Associate at the Firm, joined Cohen Milstein in 2013 and is a member of the Consumer Protection and Unsafe Products practice group.

Prior to joining Cohen Milstein, Ms. Bortscheller practiced at Williams Montgomery & John in Chicago, IL. Ms. Bortscheller also was a volunteer for the Chicago Legal Clinic, Inc.'s Foreclosure Defense Project. Before attending law school, Ms. Bortscheller served in the United States Peace Corps as a TEFL Volunteer in Sichuan Province, China.

Ms. Bortscheller graduated from Gustavus Adolphus College in 2004 with a B.A., *cum laude*, in Political Science and received her J.D., *cum laude*, from American University, Washington College of Law in 2010. During law school, she served as Features Editor and Senior Editor of *Sustainable Development Law & Policy* and was a staff member of the *American University International Law Review*. Ms. Bortscheller interned with the United States District Court for the District of Minnesota.

Ms. Bortscheller is admitted to practice in Illinois and her application to the DC Bar is pending.

**S. Douglas Bunch**

S. Douglas Bunch, an Associate at the Firm, joined Cohen Milstein in 2006 and is a member of the Securities Fraud/Investor Protection practice group.

Mr. Bunch is currently litigating multiple securities class actions, including cases on behalf of investors in funds which served as so-called "feeder funds" for Bernard L. Madoff's Ponzi scheme; class actions on behalf of investors in residential mortgage-backed securities, including *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP (C.D. Cal.); *In re Lehman Bros. Mortgage-Backed Sec. Litig.*, No. 08 Civ. 6762 (LAK) (S.D.N.Y.); *New Jersey Carpenters Health Fund v. Residential Capital, LLC*, No. 08 Civ. 8781 (HB) (S.D.N.Y.); *New Jersey Carpenters Vacation Fund v. Harborview Mortgage Loan Trust 2006-4*, No. 08 Civ. 5093 (HB) (S.D.N.Y.); and *In re Bear Stearns Mortgage Pass-Through Certificates Litig.*, No. 08 Civ. 8093 (LTS) (S.D.N.Y.); and *In re Oppenheimer Rochester Funds Group Sec. Litig.*, No. 09-md-02063-JLK (D. Colo.), a class action on behalf of investors in various Oppenheimer mutual funds which alleges defendants' failure to disclose the risks of investing in those funds. Mr. Bunch was also instrumental in achieving the successful appeal and recent settlement, for $90 million, of *Rubin v. MF Global Ltd.*, No. 08 Civ. 2233 (VM) (S.D.N.Y.).

Mr. Bunch is a graduate of the William & Mary School of Law (2006), where he was a recipient of the Benjamin Rush Medal. A member of Phi Beta Kappa, he graduated *summa cum laude* from the

- 52 -

Exhibit 1

College of William & Mary in 2002 with a Bachelor's degree in Government and Classical Studies. Mr. Bunch is also a 2003 graduate of Harvard University's Graduate School of Education, from which he holds a Master's degree in Administration, Planning, and Social Policy. At Harvard, he served as an intern in the Boston office of the U.S. Department of Education's Office for Civil Rights, where he worked closely with attorneys to enforce federal laws that protect students from discrimination on the basis of race, gender, age, and disability.

Mr. Bunch is actively involved in several nonprofit endeavors. He is the Founder and Chairman of nonprofit Global Playground, which helps educate countless children worldwide; a member of the Board of Directors of Ascanius: The Youth Classics Institute, which promotes the study of Latin and the Classics in the elementary school; and a former member of the Board of Directors of the Northeast Conference on the Teaching of Foreign Languages, which promotes the study of world languages more broadly. Recently he received an award for service: in 2011, Mr. Bunch was the inaugural recipient of William & Mary School of Law's W. Taylor Reveley Award.

Mr. Bunch is admitted to practice in New York, the District of Columbia, the U.S. Supreme Court, the Courts of Appeals for the Second and Tenth Circuits, and the U.S. District Courts for the District of Columbia, District of Colorado, and Southern and Eastern Districts of New York. Mr. Bunch works in the Firm's Washington D.C. office.

**Monya M. Bunch**

Monya M. Bunch joined Cohen Milstein as an Associate in 2009 and is a member of the Employee Benefits practice group.

Prior to joining the firm, Ms. Bunch was an associate in the Litigation Department of Wilmer Cutler Pickering Hale and Dorr LLP, where she focused on litigation in federal court, and federal criminal and regulatory investigations. While there, Ms. Bunch successfully represented the relator in a rare and complex False Claims Act trial in the United States District Court for the District of Columbia, helping the United States to win a jury verdict of just over $103 million in damages against several defendants who had participated in a bid-rigging conspiracy. Ms. Bunch then clerked for the Honorable Damon J. Keith of the United States Court of Appeals for the Sixth Circuit.

During law school, Ms. Bunch interned with the U.S. Attorney's Office for the Southern District of New York. Her work focused on white-collar matters within the Securities and Commodities Fraud and General Crimes units. Ms. Bunch also held a summer position with a large international law firm in New York City, where she gained experience in trade practices, intellectual property and antitrust matters.

Prior to earning her law degree, Ms. Bunch dedicated her career to community activism and development as a local planner for the organization Agenda for Children Tomorrow (A.C.T.), in New York City. While working for A.C.T., she supported a neighborhood-planning coalition by linking community projects related to child welfare, family planning and youth services.

Ms. Bunch received her undergraduate degree from Hampton University (B.S., 1991) and her graduate degree from the University of Hartford (M.P.A., 1994). She received her law degree from Howard University School of Law (J.D., 2004), where she served as editor-in-chief of the *Howard Law Journal* and authored a Comment, *Juvenile Transfer Proceedings: A Place for Restorative Justice Values*, 47 How. L.J. 909 (2004), for which she received the 2005 Burton Award for Excellence in Legal Writing.

- 53 -

Ms. Bunch is admitted to practice in New York and the District of Columbia.

**Whitney R. Case**

Whitney R. Case joined Cohen Milstein as an Associate in 2005 and is a member of the Public Client practice group.

Ms. Case has been actively involved in a number of class action cases, including a case against SBC Communications, Inc., *Wagener, et al. v. SBC Pension Benefit Plan - Non-Bargained Program* (D.D.C.), which alleged widespread miscalculation of pension benefits owed to its employees in violation of ERISA. That case resulted in a $16 million settlement for retirees. She has also represented Fiduciary Counselors, Inc. in their capacity as independent fiduciary for the Enron Savings Plan, including evaluating settlements reached in the *Newby v. Enron Corp.* (S.D. Tex.) securities class action case.

Currently, Ms. Case represents the City of Chicago in a case against online travel companies, alleging a systematic failure to pay taxes owed under Chicago's Hotel Tax Ordinance. Ms. Case is also involved in cases against Sallie Mae related to excessive interest and late fee charges on student loans, and against Vonage related to deceptive business practices in advertising and administering promotional offers.

Ms. Case is the author of "The Coupon Can Be the Ticket: The Use of 'Coupon' and Other Non-Monetary Redress in Class Action Settlements," 18 Geo. J. Legal Ethics 1431 (2005) (co-authored with Lisa Mezzetti).

Prior to joining Cohen Milstein, Ms. Case served as a law clerk at the District of Columbia Bar's Board on Professional Responsibility. She also studied International Law at University College in London, England and was a student attorney in the Domestic Violence Clinic at Georgetown University Law Center.

Ms. Case received her law degree from Georgetown University Law Center in 2005. She received her undergraduate degree from Tulane University (B.A., Political Economy and French, cum laude, 2002) during which time she spent a year studying at Universite de Paris IV, La Sorbonne.

Ms. Case is admitted to practice in New York, New Jersey and the District of Columbia.

**Shaylyn Cochran**

Shaylyn Cochran, an Associate at the Firm, joined Cohen Milstein in 2012 and is a member of the Civil Rights & Employment practice group.

Prior to joining the firm, Ms. Cochran was a Civil Rights Fellow at Relman, Dane & Colfax, where she assisted in federal fair housing and employment discrimination litigation. Ms. Cochran previously served as a Litigation Intern at the NAACP Legal Defense and Educational Fund and a Litigation Intern in the Disability Rights Section of the United States Department of Justice Civil Rights Division.

- 54 -

Exhibit 1

Ms. Cochran graduated from Ohio University in 2007 with a B.S. in Journalism and a B.A. in Political Science (*summa cum laude*, Phi Beta Kappa). She received her J.D. from Harvard Law School in 2011. During law school, Ms. Cochran was a Line Editor and member of the Article Selection Committee for the *Journal on Legislation*, and the President of the Harvard Black Law Students Association. She was also a Student Attorney and Communications Director for the Harvard Legal Aid Bureau. Ms. Cochran is a 2008 NAACP Legal Defense Fund/Shearman & Sterling Scholar and she is the recipient of the 2011 Dean's Award for Community Leadership.

Ms. Cochran is admitted to practice in New York State and the District of Columbia.

**Jeffrey Dubner**

Jeffrey Dubner joined Cohen Milstein as an Associate in 2011 and is a member of the Antitrust practice group.

Mr. Dubner represents individuals, businesses, and unions in federal civil actions, with a focus on multi-district class actions and antitrust litigation. He has represented both plaintiffs and defendants in antitrust litigation, dealing with the application of the Sherman Act in industries from health care and financial services to professional sports and publishing. He has also represented plaintiffs with claims under the Stored Communications Act, the Commodities Exchange Act, and other state and federal statutes.

Prior to joining the firm, Mr. Dubner was a law clerk for the Honorable Guido Calabresi of the U.S. Court of Appeals for the Second Circuit and the Honorable John G. Koeltl of the U.S. District Court for the Southern District of New York.

Mr. Dubner graduated from Harvard University with a B.A. in Psychology (2003, *cum laude*) and Harvard Law School (J.D., *magna cum laude*, 2009). During law school, Mr. Dubner served as a Notes Editor for the *Harvard Law Review*. He also worked as a research assistant for Professors Martha Minow and Sonja Starr. Mr. Dubner spent summers working with the U.S. Attorney's Office for the Southern District of New York. the Office of Consumer Litigation of the Department of Justice, and O'Melveny and Myers in Washington, D.C.

Mr. Dubner is admitted to practice in New York and the District of Columbia.

**Suzanne Dugan**

Suzanne M. Dugan leads the firm's Ethics and Fiduciary Counseling practice, which provides guidance to pension funds and other public, private and nonprofit entities on ethics, fiduciary, governance and compliance issues. With more than 20 years of legal experience, including service as ethics counsel for the third largest public pension fund in the country and as general counsel for a state ethics commission, Ms. Dugan offers the broad perspective of a regulator and the understanding of an in house counsel.

With this unique vantage, she employs a collaborative approach to advising on ethical duties, fiduciary responsibility, strategic governance, compliance and related organizational mandates. Ms. Dugan's experience and knowledge also allow her to assist in conducting internal investigations and structuring recommendations for improved policies and procedures. She also draws on the expertise of Cohen

- 55 -

Exhibit 1

Milstein's other practice groups, such as ERISA ,Qui Tam, Antitrust and Consumer Protection, to counsel clients on the full range of matters implicated when considering ethics and fiduciary issues.

At Cohen Milstein, Ms. Dugan provides ethics counsel to one of the largest public pension funds, and serves as compliance counsel to another major fund. She has also conducted ethics and fiduciary training for the boards of directors of some of the country's largest public pension funds. When counseling and training pension funds, she draws upon the experience gained from having served as in-house ethics counsel during an unprecedented time of challenge for pension funds.

Ms. Dugan has also provided expert legal and consulting services on ethics issues to counsel retained to conduct an investigation, reviewing a draft report and providing input on proposed recommendations for remedial action. As outside experts, CMST's Ethics and Fiduciary Counseling practice provides an additional layer of oversight and accountability to the primary investigation, utilizing the unique expertise of Ms. Dugan and her colleagues to provide independent observations and expert opinion.

In addition, Ms. Dugan also serves as the independent ethics officer for a large county, where she is responsible for evaluating and investigating complaints of unethical conduct, and providing objective and independent analysis to county leadership regarding the interpretation and application of the county's code of ethics. She works to help ensure that county officers and employees refrain from conduct that may even be perceived as unethical and adopt a culture of public servant leadership that earns and preserves trust and support from citizens.

Ms. Dugan previously served as Special Counsel for Ethics for the Office of the New York State Comptroller, where she counseled the state's chief fiscal officer and sole trustee of the third largest public pension fund in the country on ethics and fiduciary issues. She provided fiduciary and ethics training to the State Comptroller, as well as senior management and the advisory committees appointed to assist the Comptroller in managing the pension fund. Ms. Dugan implemented a vigorous and dynamic ethics program for the agency's 2,500 employees, initiating and managing a program that provided specific ethics training to each division of the Agency, focusing on the particular challenges faced in the course of doing business. Ms. Dugan and her staff provided individual advice and counsel on all aspects of ethics and fiduciary issues. These programmatic initiatives were designed to promote a culture of ethics and public integrity with continual improvement at all levels of the agency.

Ms. Dugan also served as the Acting Executive Director and General Counsel to the New York State Ethics Commission. During her tenure at the Commission, she oversaw the agency and its programs, including the issuance of formal and informal advisory opinions as well as investigative reports and notices of civil assessment in enforcement proceedings. She implemented the Commission's financial disclosure process and its regulations governing honoraria and travel reimbursement, and assisted the Office of the Attorney General in preparing the Commission's defense in litigation.

A frequent lecturer at conferences and forums addressing ethics and fiduciary issues in the public and nonprofit sectors, including pension funds, Ms. Dugan's upcoming and most recent speaking engagements include:

- Panelist, "Fiduciary and Ethics Issues for Public Pension Plans", Public Funds Summit, Huntington Beach, CA, March 2013

- 56 -

Exhibit 1

- Moderator, "Creation, Composition and Operation of Audit Committees", Fiduciary & Plan Governance Section, National Association of Public Pension Attorneys,, Washington, DC, February 2013

- Panelist, "Legal Issues Facing Public Pension Funds", Public Funds Summit, Scottsdale, AZ, January 2013

- Panelist, "Keeping Public Safety Pensions Safe: Ethics & Fiduciary Issues", National Conference on Public Employee Retirement Systems, New Orleans, Louisiana, October 2012

- Panelist, "Trustee Education: Fiduciary Responsibility", Public Funds Summit East, Newport, RI, July 2012.

- Panelist, "Trustee Education: Fiduciary Responsibility", Public Funds Summit, Scottsdale, AZ, January 2012.

- Panelist, "Are Pension Benefits Really Vested? Latest Developments in Fiduciary Duty", SACRS Fall Conference, Costa Mesa, CA, November 2011.

Ms. Dugan previously was appointed to the adjunct faculty at Albany Law School, where she taught a class in government ethics.

Ms. Dugan graduated *magna cum laude* from Siena College, and earned a Juris Doctor *cum laude* from Albany Law School. Ms. Dugan began her career as a judicial clerk with the Appellate Division, Third Department, of the New York State Supreme Court. She also served as an administrator at Albany Law School, as well as the pro bono Legal Director of an Albany, New York, area not-for-profit. She currently is a member of the Board of Directors of her local Planned Parenthood affiliate. She is an elected member of the American Law Institute.

### George F. Farah

George F. Farah joined the Firm as an Associate in September, 2005 and is a member of the Antitrust and Human Rights practice groups.

Since joining the firm, Mr. Farah has represented classes of direct purchasers who were allegedly injured by price-fixing conspiracies, including in *In re Hydrogen Peroxide Antitrust Litigation* (E.D. Pa.) and *In re OSB Antitrust Litigation* (E.D. Pa.), both of which obtained total settlements exceeding $100 million. He has also represented victims of other tortious conduct, including the City of Milwaukee in a lawsuit against lead paint manufacturers for widespread childhood lead poisoning as well as survivors of Nazi-era slave labor against German companies that profited from that labor.

Mr. Farah is currently involved in several antitrust class action cases alleging concerted or unilateral anticompetitive conduct. In *In re Publication Paper Antitrust Litigation* (D. Ct.), he serves on the executive committee representing direct purchasers who allege that publication paper manufacturers conspired to reduce capacity and fix prices. In *Allen, et al. v. Dairy Farmers of America, et al.* (D. Vt.), he serves as co-lead counsel representing farmers who allege that cooperatives and processors in the Northeast conspired to monopolize the raw milk market and depress prices. In *Carlin, et al. v. DairyAmerica, et al.* (E.D. Ca.), he serves as co-lead counsel representing farmers who allege that a marketing company misrepresented data to the USDA and artificially depressed milk prices.

- 57 -

86

Exhibit 1

Mr. Farah is also currently litigating other cases on behalf of victims of alleged tortious conduct. In *In re Google Inc. Street View Electronic Communications Litigation* (N.D. Ca.), he serves as co-lead counsel representing a proposed class of nationwide computer users whose private data was intercepted and retained by Google's Street View vehicles. In *Greenpeace, Inc. v. Dow Chemical Company, et al.* (D.D.C.), he represents Greenpeace in a lawsuit against chemical and public relations companies that allegedly engaged in surveillance, trespass and other actions to secure information about Greenpeace's environmental activities. In political asylum proceedings before a United States Immigration Court, he represents a Nepali nurse who was tortured on the basis of her religion and social group.

Prior to joining the Firm, Mr. Farah focused on electoral reform and income inequality issues. He is the founder of Open Debates, a nonprofit organization working to reform the presidential debate process. Before attending law school, Mr. Farah worked to expose the harms of media concentration and the IMF's structural adjustment programs at The Center for the Study of Responsive Law.

Mr. Farah is the author of the book *No Debate: How the Republican and Democratic Parties Secretly Control the Presidential Debates* from Seven Stories Press. His articles addressing legal and electoral issues have been published in *The Washington Post, The Boston Globe, The Philadelphia Inquirer, The Denver Post, The Christian Science Monitor, Fort Lauderdale Sun-Sentinel, Extra! Magazine*, and other publications.

Mr. Farah has appeared on dozens of television programs, including "Nightline," "NOW with Bill Moyers," "20/20," "CBS Evening News," "NBC Nightly News," "CNN Lou Dobbs Tonight," "CNN's Market Call," "FOX and Friends," and "Countdown with Keith Olbermann." Mr. Farah has been interviewed on over 100 radio shows, including NPR's "To the Point," "Keep Hope Alive With Jesse Jackson," "Democracy Now!," "CounterSpin," and "Judicial Watch Report."

Mr. Farah has given several talks on the political process and electoral reform issues at colleges and universities, has hosted numerous televised press conferences, and was a Newsmaker at the National Press Club.

Mr. Farah is a graduate of Harvard Law School (J.D., 2005), and Princeton University (B.A., Woodrow Wilson School of Public and International Affairs, 2000). Mr. Farah was the recipient of a Paul and Daisy Soros Fellowship, and was a delegate to the 2005 International Achievement Summit.

Mr. Farah is admitted to practice in New York and the District of Columbia.

**Genevieve Odile Fontan**

Genevieve Fontan, an Associate at the Firm, joined Cohen Milstein in 2012 and is a member of the Securities Fraud/Investor Protection practice group.

Prior to joining the firm, Ms. Fontan was a litigation fellow for two years at the American Civil Liberties Union of Northern California, where she worked on First Amendment litigation and educational equity matters.

Ms. Fontan received her undergraduate degree from the University of California, Berkeley in Interdisciplinary Field Studies and French Literature, with highest honors and high honors, respectively (B.A., 2003). She also completed a two-year master's program at the Université Paris-

- 58 -

Exhibit 1

Sorbonne where she received a degree in geography, *Mention Culture, Politique, Patrimoine*, after defending her thesis on socio-geographic trends in legalized household winemaking during Prohibition years in California (M. 2, 2010). Ms. Fontan received her law degree from Stanford Law School (J.D., 2010). While there, she provided supervised representation through the Stanford Community Law Clinic in the successful defense against an eviction lawsuit. She received an Equal Justice America fellowship for public interest work involving the Violence Against Women Act and also Stanford Law School's pro bono distinction for externships at Housing and Economic Rights Advocates, Public Advocates, and the ACLU of Northern California.

Ms. Fontan is admitted to practice in New York State.

**Johanna M. Hickman**

Johanna M. Hickman, a Litigation Fellow at the Firm, joined Cohen Milstein in 2013 and is a member of the Public Client practice group. In this position, Ms. Hickman represents state Attorneys General and other public-sector clients in investigations and lawsuits involving healthcare fraud, consumer fraud in the mortgage industry, and other fraudulent and deceptive trade practices.

Ms. Hickman serves on the adjunct faculty of the Georgetown University Law Center, where she teaches a course in advanced legal writing and practice.

Before joining Cohen Milstein, Ms. Hickman was an Associate at Willkie Farr & Gallagher LLP, where she advised clients regarding environmental and toxic tort liability, negotiated the environmental aspects of corporate transactions, and represented clients in complex insurance coverage litigation. Prior to that, Ms. Hickman clerked for two years for the Honorable James I. Cohn of the United States District Court for the Southern District of Florida.

Ms. Hickman graduated with Highest Honors from the University of North Carolina at Chapel Hill in 2003, with a Bachelor of Arts in Journalism and Mass Communication. Ms. Hickman received her J.D., *cum laude*, from the Georgetown University Law Center in 2006. During law school, she served as a Staff Member and Symposium Editor of the Georgetown Journal of Legal Ethics and was a finalist in Georgetown's 35th Annual Leahy Moot Court Competition.

Ms. Hickman is admitted to practice in the District of Columbia and Florida, and in the United States District Court for the District of Columbia.

**Anita F. Hill**

Anita F. Hill joined Cohen Milstein in 2011 as Of Counsel in the Civil Rights and Employment Practice Group.

Ms. Hill brings three decades of legal and academic experience to the Civil Rights practice. She began her career as an associate with the Washington, D.C. law firm Wald, Harkrader & Ross. Ms. Hill then served as special counsel to the assistant secretary of the Department of Education's Office for Civil Rights and later as advisor to the chair of the Equal Employment Opportunity Commission (EEOC). She began her teaching career as an assistant professor at Oral Roberts University and later joined the faculty at the University of Oklahoma College of Law. She has also visited at the University of

- 59 -

Exhibit 1

California, Berkeley.  Ms. Hill is currently a professor of social policy, law and women's studies at The Heller School for Public Policy and Management at Brandeis University.

Ms. Hill is the author of numerous articles on international commercial law, bankruptcy, and civil rights -- all areas in which she has taught.  She has given numerous presentations on commercial law as well as race and gender equality.  In addition, she has appeared on several television programs, such as *Face the Nation* and *Meet the Press*, and her commentary has been published by *Newsweek*, the *New York Times*, and the *Boston Globe*.  Ms. Hill is the author of *Speaking Truth to Power* and served as the co-editor of *Race, Gender, and Power in America: The Legacy of the Hill-Thomas Hearings*.  She is also the author of *Reimagining Equality: Stories of Gender, Race and Finding Home*, which will be released in October 2011.

Ms. Hill is a graduate of Oklahoma State University (B.A., 1977) and of the Yale University Law School (J.D., 1980).

**Joshua Kolsky**

Joshua Kolsky joined Cohen Milstein in 2009 as an Associate and is a member of the Securities Fraud/Investor Protection practice group.

Prior to joining the firm, Mr. Kolsky served as a law clerk to the Honorable Barry G. Silverman of the U.S. Court of Appeals for the Ninth Circuit.  He previously practiced at Gibson, Dunn, & Crutcher in Los Angeles and, immediately following law school, Mr. Kolsky served as a special assignment law clerk to the Honorable David O. Carter and the Honorable George H. King of the U.S. District Court for the Central District of California.

Mr. Kolsky graduated from the University of Virginia with a B.S. in Engineering Science (2001) and from Columbia Law School (J.D., 2006), where he was a Harlan Fiske Stone Scholar.  While at Columbia, Mr. Kolsky served as the production editor of the Columbia Human Rights Law Review. He also interned at the American Civil Liberties Union's National Legal Department and Public Citizen's Global Trade Watch, and participated in the Morningside Heights Environmental Law Clinic.

Mr. Kolsky is admitted to practice in California, D.C., and Maryland.

**Kalpana Kotagal**

Kalpana Kotagal joined the Cohen Milstein as an Associate in November 2006 and is a member of the Civil Rights & Employment practice group.   She also chairs the Firm's Hiring and Diversity Committee.

Ms. Kotagal represents female employees alleging sexual discrimination against one of the nation's largest jewelry chains in *Jock, et al. v Sterling Jewelers Inc.* (AAA Case No.11 160 00655 08).  The plaintiffs successfully sought review of the district court's decision reversing the arbitrator's clause construction award before the Second Circuit Court of Appeals, and prevailed against the defendant's motion to seek review of that decision by the United States Supreme Court.  Ms. Kotagal is also currently involved in *Dukes v. Wal-Mart Stores, Inc.* (N.D. Cal.) and other cases challenging Wal-Mart's treatment of women employees alleging discrimination in pay and promotion.

Ms. Kotagal has represented a class of disabled veteran applicants alleging illegal pre-offer medical

- 60 -

Exhibit 1

inquiries during the application process against the United States Postal Service, in *Hill, et. al v. Donohue, United States Postal Service*, which has been successfully resolved. Ms. Kotagal was also involved in *Aaron v. Pilgrim's Pride Corp.*, Civ. No. 06-1082 (W.D. Ark.), representing workers seeking redress for unpaid overtime, a case that was successfully resolved in 2009.

Ms. Kotagal is the co-author of "Innovation, Economics and the Law: The Health Care Industry's Exposure to Antitrust Liability," published by the ABA Antitrust Law Section in 2007. She is a member of the National Employment Lawyers Association (NELA).

Before attending law school, Ms. Kotagal worked in the environmental community as Assistant National Field Director of the United States Public Interest Research Group, running national legislative campaigns on renewable energy and environmental issues, and as an organizer with Green Corps. In 2006, she served as an advisor to a Congressional candidate. Ms. Kotagal served as an honorary chair of the National Finance Committee of Young Lawyers for Obama in 2008.

While in law school, Ms. Kotagal was a summer associate at Cohen Milstein and served as law clerk in the Chambers of the Honorable J. Curtis Joyner, Eastern District of Pennsylvania. She was also involved in litigation under the Alien Tort Claims Act and RICO on behalf of Haider Mushin Saleh against contractors CACI and Titan for human rights abuses in Abu Ghraib prison. She served on the Editorial Board of the University of Pennsylvania Law Review as an Articles Editor.

Following law school, Ms. Kotagal clerked for the Honorable Betty Binns Fletcher, United States Court of Appeals for the Ninth Circuit.

Ms. Kotagal received her undergraduate degree with honors from Stanford University (A.B., economics, B.S., earth systems, 1999) and was a Morris K. Udall Scholar. She received her law degree cum laude from the University of Pennsylvania (2005), where she was a James Wilson Fellow.

Ms. Kotagal is admitted to practice in New York and the District of Columbia.

**Emmy Levens**

Emmy Levens joined Cohen Milstein as an Associate in 2009. She is a member of the Antitrust practice group.

Prior to joining the firm, Ms. Levens was a staff law clerk at the U.S. Court of Appeals for the Seventh Circuit, where she handled a variety of cases including employment discrimination, bankruptcy, immigration, criminal appeals, civil rights, and habeas corpus.

Ms. Levens graduated from the University of Kansas with a B.A. in Political Science (2004, with honors) and UCLA Law School (J.D., *order of the coif*, 2007). During law school, Ms. Levens served as the Managing Editor for the UCLA Journal of Environmental Law and Policy, the Director of the Downtown Legal Housing Clinic, and the president of Moot Court. She also worked as a summer associate for Morrison & Foerster, LLP in San Francisco.

Ms. Levens' admission to the Illinois Bar is pending and she is practicing under the supervision of Daniel S. Small, a member of the D.C. Bar.

- 61 -

Exhibit 1

**Mimi Liu**

Mimi Liu joined Cohen Milstein as Of Counsel in April 2012. She is a member of the Public Client practice group. Ms. Liu was formerly a senior lawyer at Planned Parenthood Federation of America, where for almost eight years she represented clients in a variety of high-profile constitutional civil rights matters. She successfully briefed and argued cases before numerous federal district and appellate courts and state appellate courts. Ms. Liu brings her robust experience as a civil rights litigator to this practice, where she represents state Attorneys General in investigations, litigation, and enforcement actions aimed at protecting consumers and public resources. Currently, Ms. Liu represents state Attorneys General in actions involving Medicaid fraud, and unfair and deceptive practices in debt collection.

Prior to joining Planned Parenthood, Ms. Liu was a litigator at Wilmer, Cutler & Pickering (now WilmerHale), where she represented clients in civil rights, intellectual property, bankruptcy, and federal securities litigations. In addition, during her time at Wilmer, Cutler, Ms. Liu was part of the trial team that successfully challenged a federal law restricting access to reproductive health services in the Southern District of New York and served as appellate counsel for a brutalized Congolese woman, whose asylum she ultimately secured.

Ms. Liu graduated from Harvard Law School (J.D., *cum laude*, 1999), where she served as Executive Editor of the *Human Rights Journal* and co-authored the treatise *Gender Asylum Law*, which examines decisions and guidelines for filing asylum applications in a variety of international jurisdictions. She received her Bachelor of Commerce from the University of Alberta (1996). Following law school, Ms. Liu, a Canadian, clerked for the Court of Appeals of Alberta and for the Honorable Justice Claire L'Heureux-Dubé of the Supreme Court of Canada.

Ms. Liu is admitted to practice in the District of Columbia and New York, the United States Courts of Appeals for the Sixth, Eighth, and Ninth Circuits, and the United States District Court for the District of Columbia.

**Douglas J. McNamara**

Douglas McNamara, Of Counsel at the Firm, joined Cohen Milstein in 2001 as a member of the Antitrust and Consumer Protection & Unsafe Products practice groups.

Mr. McNamara has worked on numerous cases involving dangerous pharmaceuticals and medical devices, light cigarettes, defective consumer products, and environmental torts.

Prior to joining Cohen Milstein, Mr. McNamara was a litigation associate at Arnold & Porter, specializing in pharmaceutical and product liability cases. He started his career at New York City's Legal Aid Society, defending indigent criminal defendants at trial and on appeal.

He has authored two law review articles: *Buckley, Imbler and Stare Decisis: The Present Predicament of Prosecutorial Immunity and An End to Its Absolute Means*, 59 Alb. L. Rev. 1135 (1996); and *Sexual Discrimination and Sexual Misconduct: Applying New York's Gender-Specific Sexual Misconduct Law to Minors*, 14 Touro L. Rev. 477 (Winter 1998). He is presently teaching a course on environmental and toxic torts as an adjunct at George Washington University School of Law.

- 62 -

Exhibit 1

Mr. McNamara graduated from SUNY Albany with a B.A. in Political Science (*summa cum laude*, 1992) and New York University School of Law (J.D., 1995).

Mr. McNamara is admitted to practice in New York and the District of Columbia.

### Casey M. Preston

Casey Preston, an Associate at Cohen Milstein, is a member of the Firm's Whistleblower/False Claims Act Practice.

Mr. Preston serves as counsel in *United States of America et al. ex rel. Lauren Kieff v. Wyeth*, the whistleblower case against pharmaceutical giant Wyeth (recently acquired by Pfizer). The lawsuit alleges that states were defrauded when Wyeth falsely inflated the price of the acid suppression drug Protonix Oral from 2001 through 2006. Thirty-six states and the District of Columbia have joined with the United States to intervene in the Wyeth case -- the most states that have ever intervened in any U.S. Qui Tam case.

In addition to helping and serving as counsel for whistleblowers, Mr. Preston has also represented and advised clients in various complex litigations, securities class actions, and commercial disputes.

Mr. Preston received his B.S. degree from The Citadel and his J.D. from Villanova University School of Law (J.D., 2000). He clerked for the Hon. William J. Nealon, U.S. District Court for the Middle District of Pennsylvania (2001-2002) and the Hon. Terrence R. Nealon, Court of Common Pleas Lackawanna County, Pennsylvania (2000-2001).

Mr. Preston is admitted to the Pennsylvania Bar, and to the United States Supreme Court, Eastern District of Pennsylvania and Middle District of Pennsylvania.

He is a member of Taxpayers Against Fraud (TAF) and the Villanova Law J. Willard O'Brien American Inn of Court. And he provides pro bono legal services to the Legal Clinic for the Disabled.

### Daniel B. Rehns

Daniel B. Rehns joined Cohen Milstein as an Associate in 2009 and is a member of the Securities Fraud/Investor Protection practice group. Prior to that time, Mr. Rehns was an Associate at Schoengold Sporn Laitman & Lometti, P.C. ("SSLL"), where he practiced in the areas of securities fraud and consumer class action litigation since 2007.

While at SSLL, Mr. Rehns devoted his practice to the representation of individual and institutional shareholders who had been injured as the result of corporate fraud or corporate malfeasance. Notably, Mr. Rehns represented numerous Taft-Hartley pension funds in securities class actions suits arising from material misstatements in Registration Statements and Prospectuses issued in connection with purchases of Mortgage-Backed Securities (MBS) collateralized by "toxic loans," including sub-prime, Alt-A and other fraudulently originated mortgages. In addition, Mr. Rehns represented a Taft-Hartley pension fund in a securities fraud class action against SPX Corporation arising from material misrepresentations about SPX's business segments, free cash flow, and $45 million of alleged insider sales in the weeks leading up to SPX's negative disclosure. This matter was successfully litigated and resulted in a $10 million cash settlement.

- 63 -

Exhibit 1

Mr. Rehns has also represented classes of consumers of both manufactured and banking products who had purchased defective products or had been defrauded by unfair business practices.

Mr. Rehns earned his Juris Doctorate from New York Law School in 2005 as a Dean's List recipient. While in law school, Mr. Rehns participated in Froessel Moot Court and was a member of the New York Law School Corporate & Business Law Society. Notably, Mr. Rehns co-authored the first edition of West's Nutshell on Corporate Financial Law.

Prior to law school, Mr. Rehns received a Bachelor of Arts from Bucknell University in 2002, with a double major in Economics and Finance, and minors in Legal Studies and Philosophy. Mr. Rehns was involved in several school and philanthropic groups, including Sigma Alpha Epsilon Fraternity, Big Brothers/Big Sisters of America and the Dean's Student Alumni Association.

Mr. Rehns is a resident of Cohen Milstein's New York office.

Admissions and Affiliations

- New York State
- United States District Court for the Southern District of New York
- United States District Court for the Eastern District of New York
- United States District Court for the District of New Jersey
- American Bar Association
- New York State Bar Association

**Kenneth M. Rehns**

Kenneth M. Rehns joined Cohen Milstein as an Associate in April 2009 and is a member of the Securities Fraud/Investor Protection practice group. Prior to joining Cohen Milstein, Mr. Rehns was an Associate at Schoengold Sporn Laitman & Lometti, P.C. ("SSLL") where he practiced in the area of securities fraud.

Mr. Rehns earned his law degree from Syracuse University College of Law in 2008 graduating cum laude. While in law school, Mr. Rehns was an associate editor on two of the School's academic journals, *The Syracuse Journal of International Law and Commerce* and *The Digest*. Mr. Rehns was also a member of the Syracuse University Community Development Law Clinic where he assisted several not-for-profit organizations attain tax-exempt status and served as general counsel to both for-profit and not-for-profit businesses. During the summer of 2007, Mr. Rehns worked at Cohen Milstein in the firm's International Group.

Before law school, Mr. Rehns received a Bachelor of Business Administration from The George Washington University in 2005, graduating cum laude, with a concentration in Business, Economics and Public Policy and a minor in Economics.

Mr. Rehns is a resident of Cohen Milstein's New York office.

- 64 -

Exhibit 1

Admissions and Affiliations

- State of New York
- State of New Jersey
- United States District Court for the Southern District of New York
- United States District Court for the District of New Jersey
- New York State Bar Association
- New York County Lawyers Association

**Bruce F. Rinaldi**

Bruce Rinaldi, who has over 32 years of ERISA class action and fiduciary litigation experience, joined the Firm in 2004 as Of Counsel and is a member of the Employee Benefits practice group.

While at the Firm, Mr. Rinaldi has been exclusively engaged in ERISA class action practice, during which time he has litigated several dozen fiduciary breach cases, including the following reported decisions: *Hargrave v. TXU Corp.*, 392 F.Supp.2d 785 (N.D. Tex. 2005); *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, 2009 WL 331426 (D.N.J. 2009); *In re Marsh ERISA Litigation*, 2006 WL 3706169 (S.D.N.Y. 2006); *In re Beacon Associates Litigation*, 282 F.R.D. 315 (S.D.N.Y. 2012); *In re Pfizer Inc. ERISA Litigation*, 2009 WL 749545 (S.D.N.Y. 2009); and *Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002). Mr. Rinaldi also participated in the litigation of the following ESOP class actions: *Hans v. Tharaldson*, 2011 WL 6937598 (D.N.D. 2011); *Beam v. HSBC Bank*, No. 02-CV-0682E(SR) (E.D.N.Y. 2002); and *Chesemore v. Alliance Holdings, Inc.*, 886 F.Supp.2d 1007 (W.D. Wis. 2012).

Prior to joining Cohen Milstein, Mr. Rinaldi worked for four years as the principal ERISA trial counsel for McTigue Law Firm, during which time he participated in the litigation of the following reported and unreported ERISA class actions: *In re McKesson HBOC, Inc. ERISA Litigation*, 2002 WL 31431588 (N.D. Cal. 2002); *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898 (E.D. Mich. 2004); *Koch v. Dwyer*, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. 2001); *Blyer v. Agee*, CV-97-6332 BLW (D. Idaho 1999); *Sherrill v. Federal-Mogul*, Civ. No. 04-72949 (E.D. Mich. 2004); and *In re Xerox Corp. ERISA Litigation*, Civ. No. 3:02CV01138(AWT) (D. Conn. 2002).

Before entering private practice, Mr. Rinaldi spent over 20 years in government conducting complex fiduciary litigation, first under ERISA and later under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). Beginning in 1980, Mr. Rinaldi worked for ten years in the Office of the Solicitor of Labor as the Supervisory Trial Attorney, where he litigated *Donovan v. Fitzsimmons* (N.D. Ill.), negotiating and drafting a consent decree governing the management of billions of dollars in assets of the Teamsters Central States Pension Fund, which remains in effect today. Mr. Rinaldi also conducted a four month trial of allegations of ERISA fiduciary breaches with respect to the Teamsters Central States Health and Welfare Fund in *Brock v. Robbins* (D.C. N.D. Ill.).

Additionally, he managed the following reported ERISA cases for the Department of Labor: *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078 (C.A.7 (Ill.) 1992); *Whitfield v. Cohen*, 682 F.Supp. 188 (S.D.N.Y. 1988); *Brock v. Robbins*, 830 F.2d 640 (C.A.7 (Ill.) 1987); and *Reich v. Valley National Bank*, 837 F. Supp. 1259 (S.D.N.Y. 1993) (one of the first actions by the Department challenging the valuation of sponsor shares purchased by an ESOP).

- 65 -

Exhibit 1

Mr. Rinaldi also worked for the Office of Thrift Supervision ("OTS") for ten years in the 1990s as the Associate Chief Counsel for Litigation, a position in which he directed investigations and enforcement actions under FIRREA for fiduciary breaches arising out of failures of thrifts and savings and loan organizations. He directed all of the enforcement actions taken by the OTS against officers, directors, accountants, and attorneys associated with Lincoln Savings and Loan Association and United Savings Association of Texas, the two largest thrift failures in history. See *In re American Continental Corp./Lincoln Sav. & Loan Securities Litigation* (D. Ariz.).

Before joining the government, Mr. Rinaldi clerked for United States District Judge James A. Walsh in Tucson, Arizona, and taught at the University of Arizona School of Law. After spending three years as a Peace Corps volunteer in Venezuela, Mr. Rinaldi earned a B.A. in Political Science from the University of California at Berkeley in 1969 and received a J.D. from the University of California at Davis (King Hall) in 1972.

**Sharon K. Robertson**

Sharon K. Robertson joined Cohen Milstein as an Associate in 2007 and is a member of the Antitrust practice group.

Ms. Robertson currently represents Registered Nurses employed by hospitals in Albany, Detroit and Memphis in lawsuits alleging that their employers unlawfully fixed their wages in violation of federal antitrust laws. Ms. Robertson is also working on *In re Urethane Antitrust Litigation (Polyether Polyol Cases)* (D. Kan.), where she represents a class of direct purchasers of several types of chemicals who allegedly were overcharged as a result of a nationwide price-fixing and market allocation conspiracy. One defendant, Bayer, already has settled for $55.3 million and is providing cooperation pursuant to its obligations under the settlement agreement.

Ms. Robertson also represents Indonesian villagers in a lawsuit against Exxon Mobil over torture and extrajudicial killings allegedly committed by the defendant's security forces (a unit of the Indonesian military).

Before attending law school, Ms. Robertson worked on the campaign committee of Councilman John Liu, the first Asian-American to be elected to New York City's City Council.

During law school, Ms. Robertson served as an Alexander Fellow. In that capacity, she spent a semester interning full-time for the Honorable Shira A. Scheindlin, United States District Court for the Southern District of New York. She was also an intern in the Litigation Bureau of the Office of the New York State Attorney General and the United States Court of Appeals for the Second Circuit.

Ms. Robertson graduated from the State University of New York at Binghamton, where she received a B.A. in Philosophy, Politics and Law (*magna cum laude*, 2003). She received her law degree from the Benjamin N. Cardozo School of Law (J.D., 2006). She served as Notes Editor of the Cardozo Public Law, Policy and Ethics Journal.

Ms. Robertson is admitted to practice in New York and New Jersey.

- 66 -

Exhibit 1

**Peter Romer-Friedman**

Peter Romer-Friedman joined Cohen Milstein in 2009 as an Associate and is a member of the Civil Rights & Employment practice group.

Since 2009, Mr. Romer-Friedman has served as a key member of lead or co-lead counsel in securing victories in several groundbreaking civil rights class actions, including: (1) *Keepseagle v. Vilsack*, where thousands of Native American farmers and ranchers nationwide obtained a settlement with the U.S. Department of Agriculture (USDA) that provides $760 million in damages to compensate the farmers for racial discrimination under the USDA's farm loan program since 1981 and reforms the USDA's programs; (2) *Greater New Orleans Fair Housing Action Center v. U.S. Department of Housing & Urban Development (HUD) and the State of Louisiana*, where two fair housing groups and 20,000 African-American homeowners in New Orleans challenged Louisiana and HUD's $11 billion post-Katrina housing rebuilding program that discriminated against African Americans, and obtained over $470 million in voluntary reforms and $62 million in a settlement that primarily benefited African-American homeowners; (3) *Hill v. U.S. Postal Service*, where disabled veterans who were asked by the U.S. Postal Service to provide medical documentation prior to conditional offers of employment in violation of federal law, won an $11 million settlement that reforms the Postal Service's practices and protects disabled veteran applicants' rights. In addition, Mr. Romer-Friedman helped to defeat Wal-Mart's motion to dismiss in a class action lawsuit challenging Wal-Mart's sex discrimination in regions that include California, to defeat a decertification motion in the Tyson Foods Multi-District Litigation, which later resulted in a $32 million settlement in 2011 for poultry workers who were unlawfully denied overtime compensation, and helped to win a summary judgment order finding that the Equal Rights Center has organizational standing to challenge Equity Residential's nationwide pattern or practice of accessibility violations in multi-family housing units.

In 2011, Mr. Romer-Friedman and other members of class counsel in *Keepseagle v. Vilsack*, were finalists for Public Justice's "2011 Trial Lawyer of the Year Award." Furthermore, in 2011 the National Law Journal selected Cohen Milstein to its "2011 Plaintiffs' Hot List," and profiled the work of Mr. Romer-Friedman and his colleagues in *Keepseagle v. Vilsack* and *GNOFHAC v. HUD*.

Prior to joining the firm, Mr. Romer-Friedman served as labor counsel for the U.S. Senate Committee on Health, Education, Labor and Pensions and its Chairman, Senator Edward M. Kennedy. Mr. Romer-Friedman assisted Chairman Kennedy and other Senators in drafting legislation, speeches, and regulatory comments, and holding hearings on a range of labor, employment, and civil rights issues.

Prior to his work in the Senate, Mr. Romer-Friedman served as a law clerk to the Honorable Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit in Los Angeles.

Mr. Romer-Friedman currently serves as an Associate Trustee of the Washington Lawyers' Committee for Civil Rights & Urban Affairs.

Mr. Romer-Friedman graduated from the University of Michigan at Ann Arbor with a B.A. in Honors Economics and Social Science (*cum laude* and Phi Beta Kappa, 2001) and Columbia Law School (J.D., 2006), where he was a James Kent Scholar and a Harlan Fiske Stone Scholar. While at Columbia, Mr. Romer-Friedman served as managing editor of the Columbia Journal of Law & Social Problems, authored a Note, *Eliot Spitzer Meets Mother Jones: How State Attorneys General Can Enforce State Wage and Hour Laws*, 39 Colum. J.L. & Soc. Probs. 495 (2006), and was an extern to the Honorable Shira Scheindlin, U.S. District Court for the Southern District of New York. In

- 67 -

Exhibit 1

addition, he was the recipient of the Emil Schlesinger Labor Prize and the ABA-BNA Award for Excellence in the Study of Labor and Employment Law.

While at Michigan, he received the national Harry S. Truman Scholarship for Public Service and co-founded the Worker Rights Consortium, a non-profit organization that monitors labor rights in apparel factories worldwide.

Prior to law school, Mr. Romer-Friedman was a Legislative Representative for the United Steelworkers of America, and worked for several other labor organizations, including the AFL-CIO, UNITE!, and SEIU.

Mr. Romer-Friedman is admitted to practice in New York and the District of Columbia.

**Mark Samburg**

Mark Samburg, an Associate at the Firm, joined Cohen Milstein in 2012 and is a member of the Public Client practice group.

Prior to joining Cohen Milstein, Mr. Samburg clerked for the Honorable Leonard I. Garth of the United States Court of Appeals for the Third Circuit. He previously spent a year clerking for two Associate Justices of the Supreme Court of the State of Connecticut.

Mr. Samburg graduated from Brandeis University in 2007 with a B.A., *summa cum laude*, in History and Politics, and received his J.D., *cum laude*, from Harvard Law School in May 2010. During law school, he served as President of the Harvard Defenders and worked with several defenders and capital defense organizations. As a student-attorney in the Harvard Criminal Justice Institute, Mr. Samburg carried a criminal defense caseload in the Boston court system. Mr. Samburg was also co-Editor-in-Chief and co-President of the *Harvard Journal on Legislation*, and a member of the General Board of the *Harvard Civil Rights and Civil Liberties Law Review*. He is the author of "Cruel and Unusual? The Bifurcation of Eighth Amendment Inquiries after *Baze v. Rees*," 44 HARV. C.R.-C.L. L. REV 213. At the conclusion of law school, he received the Andrew L. Kaufman Pro Bono Service Award and the Dean's Award for Community Leadership.

Mr. Samburg is admitted to practice in the Commonwealth of Massachusetts and the United States Court of Appeals for the Third Circuit. His admissions to practice in the District of Columbia and the State of New York are pending.

**Abby Shafroth**

Abby Shafroth joined Cohen Milstein as an Associate in 2010 and is a member of the Civil Rights & Employment practice group.

Prior to joining the firm, Ms. Shafroth was a fellow and associate counsel for the Lawyers' Committee for Civil Rights Under Law in the Fair Housing and Employment Discrimination Projects, where she litigated complex civil rights cases challenging exclusionary zoning and employment discrimination. She also served as a law clerk for the Honorable Richard A. Paez of the United States Court of Appeals for the Ninth Circuit.

Ms. Shafroth graduated from Harvard College with an A.B. in Psychology (*cum laude*, 2004) and Harvard Law School (*cum laude*, 2008). During law school, Ms. Shafroth served as Articles Editor for

- 68 -

Exhibit 1

the *Harvard Law Review* and as Editor for the *Civil Rights - Civil Liberties Law Review*. She also assisted in the employment civil rights group at the WilmerHale Legal Services Center and worked with Ghana Legal Services in studying local health care delivery in rural Ghana. In addition, Ms. Shafroth spent summers working with the Lawyers' Committee for Civil Rights Under Law, Covington & Burling, and the Civil Rights Bureau of the New York State Office of the Attorney General.

Ms. Shafroth is admitted to practice in New York, the District of Columbia, and the United States Court of Appeals for the Second Circuit.

**Daniel Silverman**

Daniel Silverman, an Associate at the Firm, joined Cohen Milstein in 2012 as a member of the Antitrust Practice Group.

Prior to joining the firm, Mr. Silverman was an Associate at Spiegel & McDiarmid where he represented public sector clients in energy-related fields before the Federal Energy Regulatory Commission, state public utility commissions, and federal appellate courts. Mr. Silverman also served as the Executive Director of Legal Economics, LLC, a firm specializing in the analysis of complex economic issues related to legal issues that is based in Harvard Square, Cambridge, Massachusetts. At Legal Economics, he supported expert economic testimony in a variety of antitrust matters involving horizontal price-fixing, mergers, and loyalty discounts in industries ranging from healthcare and computer hardware to live music promotion.

Mr. Silverman graduated from Brown University in 2005 with a B.S. in Physics (*magna cum laude*, *Phi Beta Kappa*). Mr. Silverman received his J.D., *magna cum laude*, from Harvard Law School in June 2010. During law school, he served as a Managing Editor of the *Harvard Environmental Law Review* and the Alumni Chair of the Harvard Environmental Law Society. Mr. Silverman also served as a summer associate at the U.S. Department of Justice in the Environment and Natural Resources Division, Law and Policy Section.

Mr. Silverman is admitted to practice in New York and is currently practicing under the supervision of Daniel A. Small, a member of the D.C. Bar.

**Matthew A. Smith**

Matthew Smith, an Associate at the Firm, joined Cohen Milstein in 2013 and is a member of the Employee Benefits practice group.

Prior to his employment with Cohen Milstein, Mr. Smith practiced at Cleary Gottlieb Steen & Hamilton LLP, where he focused on securities enforcement and pro bono matters. Mr. Smith also served as a judicial law clerk under the Hon. Rosemary Barkett of the United States Court of Appeals for the Eleventh Circuit.

Mr. Smith graduated from Columbia University in 2006 with a B.A., cum laude, in History and received his J.D., magna cum laude, Order of the Coif, and an L.L.M. in International and Comparative Law from Duke University School of Law in 2011. During law school, he served as Notes Editor of the Duke Law Journal, Campus President of the International Criminal Court Student Network, and Co-Chair of the Human Rights Law Society. Mr. Smith interned with the United States Department of

- 69 -

Exhibit 1

Justice, Civil Rights Division and the United States District Court for the Eastern District of North Carolina.

Mr. Smith is admitted to practice in New York and his application to the District of Columbia Bar is pending.

**Richard A. Speirs**

Richard A. Speirs joined Cohen Milstein as Of Counsel in 2010 and is a member of the Securities Fraud/Investor Protection practice group. For the past ten years, Mr. Speirs was a partner at Zwerling, Schachter & Zwerling, LLP.

At his former firm, Mr. Speirs served as lead or co-lead counsel in numerous securities fraud class actions throughout the United States. Mr. Speirs successfully litigated numerous national securities class actions as lead counsel, achieving significant recoveries for investors. Mr. Speirs was also lead or co-lead attorney in several cases where the court issued a seminal decision involving the following subjects: (i) the improper grouping of unaffiliated investors in a lead plaintiff motion; (ii) recommendation of default sanction against auditing firm for discovery misconduct involving electronic audit workpapers; and (iii) the liability under Section 10(b) of a non-issuer for disclosures made by the issuer. Among the successful cases litigated by Mr. Speirs are: *In re BP Prudhoe Bay Royalty Trust Securities Litigation*, (W.D. Wa.) ($43.5 million recovery); *In re First BanCorp Securities Litigation*, (D.P.R.) ($74.5 million recovery); *In re Telxon Corp. Securities Litigation*, (N.D. Ohio) ($40 million recovery); and *Hayman v. PricewaterhouseCoopers, LLP*, (N.D. Ohio) ($27.9 million recovery). Mr. Speirs has over twenty years of experience representing investors in cases involving complex financial, accounting and auditing issues. He has also represented investors who were victims of fraudulent Ponzi schemes and the sale of unregistered securities. Mr. Speirs also has substantial experience in stockholder litigation involving corporate takeovers and in derivative actions.

Mr. Speirs was admitted to the bar of the State of New York in 1986; he is admitted to the following federal courts: the United States District Court for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second, Ninth and Tenth Circuits. He is a member of the New York State Bar Association. In January 2007 Mr. Speirs was a panelist at the Public Funds Summit and spoke on the topic of *Alternative Investments: Regulatory Landscape and Lessons from the Ashes*.

Education: Brooklyn College of the City University of New York in 1976 cum laude; Brooklyn Law School J.D. 1985 (Order of the Coif).

**Catherine A. Torell**

Catherine A. Torell is the Director of Securities Research And Analysis at Cohen Milstein. She joined the Firm in 2002 and is a member of the Securities Fraud/Investor Protection practice group.

Currently, Ms. Torell is involved in the *In re Parmalat Securities Litigation* (S.D.N.Y.) in which Cohen Milstein serves as co-lead Counsel. She also conducts investigations of securities fraud cases for the practice group, working with all of its litigators.

- 70 -

Prior to joining Cohen Milstein, Ms. Torell was associated with the firm of Entwistle & Cappucci LLP, where she served as one of co-lead counsel in *In re Providian Financial Securities Litigation* ($38 million settlement). In approving the settlement, the Court remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work throughout the litigation. Ms. Torell also was previously associated with Goodkind Labaton Rudoff & Sucharow LLP, where she served as counsel to the New York City Pension Funds in *In re Orbital Sciences Corp. Securities Litigation* ($22.5 million settlement), and was a key member of the litigation team that successfully resisted defendants' efforts to dismiss the case. Ms Torell also served as counsel to the Florida State Board of Administration in *LaPerriere v. Vesta Insurance Group, et al.*, and as counsel to Amalgamated Bank of New York in *In re Bristol-Myers-Squibb Securities Litigation* ($61 million settlement).

Ms. Torell received a B.A. in Political Science from Stony Brook University (1984) and her law degree from St. John's University School of Law (1990) where she was the recipient of the Federal Jurisprudence Award.

Ms. Torell is admitted to practice in New York.

**David Young**

David Young joined Cohen Milstein as an Associate in 2010. He is a member of the Antitrust practice group. Mr. Young has extensive experience in complex antitrust litigation, class actions, federal False Claims Act litigation, and appeals.

Mr. Young represents businesses and individuals in federal and state civil actions, with a focus on multi-district class actions and federal False Claims Act litigation. He has worked on antitrust issues in numerous industries, including pharmaceuticals, financial services, financial derivatives, and PC microprocessors. Mr. Young also represents qui tam relators in federal False Claims Act litigation.

Prior to joining Cohen Milstein, Mr. Young practiced at Arnold & Porter LLP's and Heller Ehrman LLP's Washington, D.C. offices. His litigation practice focused on antitrust, trademark, business, and False Claims Act litigation. He represented the relator in *U.S. ex rel. Loughren v. UnumProvident Corp.* (D. Mass), where a jury found that UnumProvident violated the False Claims Act by causing the submission of false claims for social security disability benefits. He also represented U.S. trademark holders suing to prevent the illegal importation of products bearing their marks in federal court and administrative actions. Mr. Young has represented pro bono clients in discrimination actions before the D.C. Circuit and D.C. District courts, including successfully arguing for reversal of the district court's dismissal of his client's case in *Miller v. Hersman*, 594 F.3d 8 (D.C. Cir. 2010).

Mr. Young graduated from Bridgewater College with a B.A. in Physics (2001) and from Harvard Law School (J.D., 2006), where he served as an Executive Editor for the Harvard Civil Rights-Civil Liberties Law Review. He also represented clients in disability and discrimination cases as a member of Harvard's clinical programs, worked as a research assistant for Professor Christine Jolls, and volunteered as a summer legal intern at the Whitman-Walker Clinic in Washington, D.C.

Mr. Young is admitted to practice in Washington, D.C. and New York, as well as in the U.S. Court of Appeals for the D.C. Circuit, the U.S. Court of Appeals for the Federal Circuit, and the U.S. District Court for the District of Columbia. He is a member of the ABA Section of Antitrust Law.

- 71 -

Exhibit 1

# EXHIBIT 2

Cohen Milstein Sellers & Toll PLLC
Countrywide (75260-001)
ExpenseSummary By Type
From Inception to 8/31/2013

| Exp Code | Expense Type | Amount |
|---|---|---|
| | In-house Duplicating | 1,757.90 |
| | Outside Duplicating | 13,480.21 |
| | Duplication  Audio/Video Tape | 2,362.28 |
| | Duplication Audio/Video Tape | 2,704.42 |
| | Long Distance Tele. (Internal) | 816.05 |
| | Long Distance (Third Party) | 2,461.62 |
| | Postage | 591.54 |
| | Local Courier | 718.66 |
| | Air Courier | 7,305.14 |
| | Complaint Filing Fee | 362.49 |
| | Process Server Fee | 6,597.50 |
| | Other Court Fees | 1,803.75 |
| | Court Reporter Fees | 21,257.85 |
| | Transcripts | 562.80 |
| | Lexis | 18,336.33 |
| | Other Computer Services | 499,980.75 |
| | Travel - Transportation | 59,191.24 |
| | Travel - Hotel | 22,523.20 |
| | Travel - Taxis, Tips | 5,093.86 |
| | Travel - Meals | 6,021.89 |
| | Travel - Long Dist. Telephone | 842.61 |
| | Travel - Miscellaneous | 92.00 |
| | Travel - Parking Charges | 752.00 |
| | Local Transportation | 4,745.34 |
| | Expert Witness/Consultant | 7,000.00 |
| | Professional Services | 1,103,082.21 |
| | Supplies | 1,366.14 |
| | Business Meals | 643.53 |
| | Conference Room Meetings Use | 209.75 |
| | Supplies (Extraordinary) | 399.00 |
| | Grand Total | 1,793,062.06 |

Exhibit 2

# EXHIBIT 3

Exhibit 3

Cohen Milstein Sellers & Toll PLLC
Countrywide (75260-001)
Time Detail Valued At Current Rates
From Inception to 8/31/2013

| Tkr# | Timekeeper Name | Total Hours | Current Hourly Rate | Current Lodestar |
|------|-----------------|-------------|---------------------|------------------|
| 032 | Kaplan, Matthew, B. | 503.25 | 495.00 | 249,108.75 |
| 099 | Bunch, Stephen, D. | 252.75 | 440.00 | 111,210.00 |
| 1151 | Saltzman, Jay | 1,914.25 | 510.00 | 976,267.50 |
| 1168 | Fisher, Ben | 261.25 | 220.00 | 57,475.00 |
| 1176 | Wright, Tremaine | 1,390.75 | 405.00 | 563,253.75 |
| 1182 | Showman, Wallace | 2,497.25 | 490.00 | 1,223,652.50 |
| 1183 | Pollydore, Anwar | 274.75 | 225.00 | 61,818.75 |
| 1186 | Butler, Michael | 2,020.00 | 490.00 | 989,800.00 |
| 1194 | Elstein, Jason | 46.00 | 400.00 | 18,400.00 |
| 1199 | Morgan, Shawne | 30.00 | 430.00 | 12,900.00 |
| 1218 | Barevadia, Zarna | 53.50 | 275.00 | 14,712.50 |
| 1219 | Anwar, Amer, J. | 339.80 | 350.00 | 118,930.00 |
| 1223 | McBride, Michael | 363.50 | 230.00 | 83,605.00 |
| 1232 | DiBari, Briana | 1,019.75 | 310.00 | 316,122.50 |
| 1234 | Snyder, Matthew, G. | 2,197.25 | 380.00 | 834,955.00 |
| 1247 | Passaretti, Katie | 1,293.25 | 310.00 | 400,907.50 |
| 1248 | Hall, Elizabeth, M. | 38.50 | 420.00 | 16,170.00 |
| 1252 | Rutherford, Christian, D. | 1,784.00 | 375.00 | 669,000.00 |
| 1257 | Pearlman, Rhonda-Jo | 377.00 | 385.00 | 145,145.00 |
| 1258 | Spiers, Brigitta | 1,937.75 | 385.00 | 746,033.75 |
| 1264 | Collins, Tarique, N. | 406.75 | 325.00 | 132,193.75 |
| 1265 | Drozd, Joanna | 861.50 | 325.00 | 279,987.50 |
| 1266 | Priveterre, Joyce Campbell | 631.35 | 445.00 | 280,950.75 |
| 1267 | Ayarza, Seth | 887.50 | 290.00 | 257,375.00 |
| 1268 | Tesar, Ann-Marie | 871.00 | 375.00 | 326,625.00 |
| 1272 | Doebele, Daniel, J. | 785.50 | 450.00 | 353,475.00 |
| 1273 | Pietrofesa, Charles, L. | 592.75 | 350.00 | 207,462.50 |
| 1275 | Chung, Evan, C. | 988.75 | 290.00 | 286,737.50 |
| 134 | Gregory, ShellyAnn | 20.00 | 225.00 | 4,500.00 |
| 138 | Gilden, Carol, C. | 30.25 | 735.00 | 22,233.75 |
| 150 | Toll, Steven, J. | 1,078.76 | 835.00 | 900,764.60 |
| 326 | Armstrong, Laura | 201.00 | 225.00 | 45,225.00 |
| 346 | Edmonds, Lionel | 145.00 | 220.00 | 31,900.00 |
| 402 | Lu, John | 278.50 | 245.00 | 68,232.50 |
| 418 | Kolsky, Joshua | 88.25 | 440.00 | 38,830.00 |
| 442 | Devore, Joshua, S. | 835.06 | 570.00 | 475,984.20 |
| 458 | Reiser, Julie, G. | 2,212.00 | 610.00 | 1,349,320.00 |
| 466 | Lometti, Christopher | 1,129.75 | 760.00 | 858,610.00 |
| 467 | Laitman, Joel, P. | 300.25 | 760.00 | 228,190.00 |
| 469 | Rehns, Kenneth | 891.50 | 415.00 | 369,972.50 |
| 470 | Rehns, Daniel | 4,336.45 | 480.00 | 2,081,496.00 |
| 477 | Abetti, Jonathan | 18.00 | 245.00 | 4,410.00 |
| 481 | Eisenkraft, Michael | 36.25 | 515.00 | 18,668.75 |
| 483 | Lee, JiHoon | 1,071.25 | 255.00 | 273,168.75 |
| 487 | Conway, Charles | 10.00 | 245.00 | 2,450.00 |
| 491 | Sutter, Daniel | 112.25 | 245.00 | 27,501.25 |
| 492 | Cook-Mack, Abigail | 88.75 | 230.00 | 20,412.50 |
| 494 | Piggot-Tooke, Katherine | 37.20 | 230.00 | 8,556.00 |

Exhibit 3

Cohen Milstein Sellers & Toll PLLC
Countrywide (75260-001)
Time Detail Valued At Current Rates
From Inception to 8/31/2013

| Tkr# | Timekeeper Name | Total Hours | Current Hourly Rate | Current Lodestar |
|------|-----------------|-------------|---------------------|------------------|
| 495 | Aniskevich, Elizabeth | 18.00 | 235.00 | 4,230.00 |
| 497 | Wong, Debra | 64.00 | 240.00 | 15,360.00 |
| 499 | Speirs, Richard | 666.00 | 760.00 | 506,160.00 |
| 642 | Wentworth, Ariel | 40.50 | 245.00 | 9,922.50 |
| 647 | Gaffney, Tyler | 364.75 | 245.00 | 89,363.75 |
| 663 | Clark, Cameron | 60.25 | 245.00 | 14,761.25 |
| 668 | Vance, Shayda | 83.25 | 240.00 | 19,980.00 |
| 682 | Lavie, Shay | 59.75 | 240.00 | 14,340.00 |
| 693 | McBride, Michael | 520.25 | 255.00 | 132,663.75 |
| 697 | Bournazian, Thea | 101.75 | 410.00 | 41,717.50 |
| 698 | Aniskevich, Elizabeth, A. | 436.00 | 330.00 | 143,880.00 |
| 906 | Rama, Imelda, A. | 47.00 | 250.00 | 11,750.00 |
| | **Total** | **40,001.62** | | **17,568,829.05** |

105

Exhibit 3

# EXHIBIT 4

Exhibit 4

**Michael P. Butler**

Michael P. Butler is a graduate of New York University, where he graduated *summa cum laude* with a degree in Philosophy. He graduated *cum laude* from Tulane Law School and was the Associate Editor of the Tulane Maritime Law Journal. Upon graduation, Mr. Butler served as a law clerk in the Superior Court for the District of Columbia, responsible for a Civil Docket.

In the subsequent twenty-plus years since his time clerking, Mr. Butler has obtained extensive complex litigation experience. Serving for almost a decade as an Appellate Attorney in the Office of the General Counsel for the Department of Veterans Affairs, Mr. Butler was responsible for all aspects of appellate representation, including brief writing and oral arguments before the Court of Veterans Appeals. He has spent his time since focused on complex litigation, including various high-profile securities cases—such as cases against Tyco and Merrill Lynch while at Boies, Schiller, Flexner and Skadden Arps, respectively. In *Tyco*, Mr. Butler reviewed all the financial documents related to the M&A policy of Tyco, in addition to the documents of Tyco's auditors. In the *Merrill Lynch* action, Mr. Butler participated in the review of Merrill's CDO/CLO/CDS investments in sub-primate mortgages. Gaining experience with investments in sub-prime mortgages in the Merrill Lynch case, and Mr. Butler's work on a separate action against Countrywide, allowed him to immediately begin substantively contributing when he began work on this action.

Since 2010, Mr. Butler has litigated multiple MBS cases with Cohen Milstein working on the *Residential Capital, Harborview (Royal Bank of Scotland)* and *Washington Mutual MBS* matters prior to joining the *Countrywide MBS* discovery team in March 2012. In this case, Mr. Butler was one of the discovery team leaders. He was charged with oversight of approximately three to four contract attorneys at any given time. Mr. Butler, worked on projects including: drafting memoranda that summarized Defendants' document productions and subsequently drafted production deficiency letters. Mr. Butler was also responsible for narrowing down the universe of the documents for review in the *New York Funds* based on search terms determined to be most relevant to issues in *Maine State*. Mr. Butler also prepared analyses and timelines designed to reveal Defendants' departures from stated underwriting guidelines in the Prospectus Supplements for the eight actionable tranches.

**Briana DiBari**

Briana DiBari received her B.S. in Political Science from Santa Clara University and her J.D. from The Catholic University of America, Columbus School of Law where she was the Note and Comment Editor of the Journal of Communications Law and Policy. After graduation, Ms. DeBari worked both as a Judicial Intern with the Superior Court of the District of Columbia and as a Law Clerk with the United States Attorney's Office for the District of Columbia.

Prior to her involvement in this Litigation, Ms. DeBari gained relevant experience through her work on another mortgage-backed securities litigation matter. In this Litigation, Ms. DeBari reviewed due diligence and offering materials for adequacy of disclosures.

Prior to being retained by Cohen Milstein, Ms. DeBari worked on several cases involving complex financial products—including participating in a commercial litigation document review for a major US financial institution, which involved analyzing documents to determine whether payment obligations were triggered, and reviewing collateral calls, balance sheets, interest rate swap spreads, technical research, and swap unwinds. During Ms. DiBari's time with the firm,

Exhibit 4

she supervised a team of document reviewers and developed search protocols and processes for locating relevant and useful documents from the *New York Funds* matter. Ms. DiBari was responsible for reviewing, coding and gathering particular deal-related documents and trustee-issued monthly financial reports where her expertise allowed her to monitor trigger events and analyze where payment obligations were not being met. In addition, Ms. DiBari digested numerous deposition transcripts. She subsequently drafted memoranda recommending whether to re-depose a particular witness in the Litigation.

**Daniel J. Doebele**

Daniel J. Doebele graduated from the University of Delaware with a B.S. in Economics, obtained his J.D. from Widener University School of Law and his M.B.A. from New York University Leonard N. Stern School of Business. Graduating *cum laude* from Widener, he participated in Law Review and was a member of the Moot Court Honor Society.

Mr. Doebele is an experienced attorney and seasoned mortgage-backed securities and structured products finance professional. With six years of experience as a litigator and eight years of experience in trading and banking roles related to residential mortgage-backed securities and structured products, Mr. Doebele's skills were instrumental to the development of legal and factual theories.

Mr. Doebele is a Registered Securities Representative (Series 7 & 63), and in his most recent financial position acted as Vice-President at Cantor Fitzgerald at the Debt Capital Markets, Mortgage Backed Securities Trading Desk. While at Cantor Fitzgerald, Mr. Doebele had a range of responsibilities that enabled him to provide invaluable insight. He had experience with the Mortgage Backed Securities Trading Desk and the Asset Backed Securities Trading Desk. In both, he focused on non-investment or low investment grade rated asset securitizations; analyzed the potential likelihood of asset performance improvement or deterioration; received extensive training in fixed income analytics and the fundamentals of mortgage-backed securities; as well as completed the division's first MBA fixed income sales and trading training class. As a litigator, Mr. Doebele's experience is wide-ranging—he has argued motions, drafted pleadings and discovery documents, taken and defended depositions, and led internal investigations. Mr. Doebele also had previously worked on a large-scale document review in a securities fraud class action.

In this case, Mr. Doebele focused on the modeling and analytics of Countrywide MBS to evaluate the performance of the underlying collateral broadly and with respect to particular loans and loan groups. Significantly, Mr. Doebele created a pricing database, using publicly available information and information from documents produced by Defendants in the *New York Funds* and *Maine State* actions. In addition, Mr. Doebele analyzed non-party pricing and trade data produced by third-party market makers in connection with class certification discovery.

**Joanna Drozd**

Ms. Drozd graduated *cum laude* with her B.A. from New York University, and received her J.D. from the University of California, Hastings College of the Law.

During law school, Ms. Drozd served as a judicial extern for the Honorable Sheri Bluebond in the United States Bankruptcy Court for the Central District of California and was also the Lead Notes Editor for the Hastings Constitutional Law Quarterly.

Exhibit 4

Ms. Drozd's experience includes complex civil litigation in a variety of fields. She has managed complex defense litigation for multiple clients and has participated in all phases of litigation from initial evaluation though trial. Ms. Drozd has drafted and argued all manner of motions, deposed expert witnesses, prepared for and appeared at trial, propounded and responded to discovery, and negotiated settlements. Ms. Drozd's clients have ranged from Fortune 100 and large private companies to hospitals and doctors.

Cohen Milstein retained Ms. Drozd primarily to assist with depositions. Ms. Drozd was the lead attorney on the deposition preparation team, responsible for coding thousands of documents produced by Defendants, selecting documents for witness binders, drafting deposition outlines and preparing attorneys for the 30(b)(6) depositions taken in this litigation. Ms. Drozd also worked extensively on drafting Plaintiffs requests for production, requests for admission and interrogatories to Defendants, as well as reviewing and summarizing Defendants' responses to the same.

### Christian D. Rutherford

Mr. Rutherford earned his J.D. from Columbia University School of Law, his M.P.A. from New York University and his B.A. from Brown University. While at Columbia, Mr. Rutherford was the Editor-in-Chief and Articles Editor for the National Black Law Journal as well as a C. Bainbridge Smith Fund Scholar.

Since 2005, Mr. Rutherford has worked on a variety of complex litigation matters, including representing clients in Department of Justice, Securities and Exchange Commission and State Attorneys General investigations. Mr. Rutherford is an experienced litigator—he has researched and drafted a motion to dismiss in a directors' derivative class action suit; drafted client affidavits; prepared deposition outlines and conducted deposition preparation sessions; prepared clients' responses to discovery requests; prepared document review protocol and supervised review of evidence; assisted with drafting various motions, including summary judgment motion, answers, and replies; drafted jury instructions; assisted with mock jury exercises and other trial preparation; coordinated document collections and reviews; conducted witness interviews; coordinated clients' productions in response to various subpoenas; and researched legal bases for clients' potential liability.

Mr. Rutherford was familiar with complex financial instruments prior to becoming part of the Discovery Team because of his work in credit-default swap litigation. In this action, Mr. Rutherford's duties included document review, coding and analysis. In particular, he took the lead in overseeing information related to the process by which Countrywide underwrote the loans at issue using correspondent lenders and the CLUES automated system. Mr. Rutherford was also responsible for drafting memoranda regarding Countrywide's securitization process, including how loans were selected for the securitizations at issue, how Countrywide's due diligence process worked and the process by which Countrywide engaged outside underwriters. Mr. Rutherford also worked in conjunction with other reviewers on digesting deposition transcripts and coded documents for use in responding to contention interrogatories and requests for admission.

### Jay P. Saltzman

Mr. Saltzman graduated from Columbia University with a B.A. and was on the Dean's List throughout his attendance. Mr. Saltzman earned an M.B.A. with a major in Corporate

Exhibit 4

Finance from New York University's Stern School of Business. He then received his J.D. degree from the Benjamin N. Cardozo School of Law in 1994, and was a member of the Cardozo Law Review. While at Cardozo, Mr. Saltzman also interned with the New York State Attorney General's Office and with the Lawyers' Committee for Human Rights.

From 1994 through 2010, when Mr. Saltzman founded his own firm, he was associated with the law firm Schoengold & Sporn, P.C., founded in 1962. During his entire career, Mr. Saltzman has specialized in representing victims of consumer and securities fraud. During that time, Mr. Saltzman materially contributed to the litigation of dozens of highly complex securities class and derivative actions and consumer class actions throughout the country and helped recover hundreds of millions of dollars for injured shareholders and consumers.

These cases included numerous successful securities and consumer class actions, including *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.), which settled in 2005 for over $6.13 billion, among the largest securities fraud settlements of all time; *Dewey v. Volkswagen of America* (D.N.J.) (benefits to consumer class valued at $69,277,430); *Silberblatt v. Morgan Stanley Dean Witter & Co.* (S.D.N.Y.) (recovering 100% of consumers' claimed overcharges for storage of silver bullion); *Danis v. USN Communications, Inc.* (N.D. Ill.) ($44.7 million recovery); *In re PNC Financial Services Group, Inc. Securities Litigation* (W.D. Pa.) ($46.675 million recovery); *In re Harmonic Inc. Securities Litigation* (N.D. Cal.) ($15 million recovery); *In re Datascope Corp. Securities Litigation* (D.N.J.) ($10.5 million recovery); *In re Tidel Technologies, Inc.* (S.D. Tex.) ($4.05 million recovery in cash and stock); *Singer v. Nicor, Inc.*, 02-CV-5168 (N.D. Ill.) ($39 million recovery); *In re Westar Energy, Inc. Securities Litigation*, 03-cv-4003-JAR (D. Kan..) ($30 million recovery); and *In re APAC Teleservices, Securities Litigation*, 97-CV-9145 (S.D.N.Y) ($21 million recovery); *Kriegel v. Pacific Scientific Corp., et al.*, Civil No. 98-4163 (C.D. Cal.) ($14.8 million recovery); *In re Anadigics, Inc. Securities Litigation*, 98-917 (D.N.J.) ($11.5 million recovery); *Maley v. Del Global Technologies Corp.*, 00-CV-8495 (S.D.N.Y.) ($11.5 million recovery).

Mr. Saltzman served as one of the Discovery Team leaders because of his extensive background in complex litigation. Mr. Saltzman helped to design protocols for consistent evaluation of discovery and assured seamless transitions when attorneys left or joined the project. Mr. Saltzman was mainly responsible for uncovering evidence supporting the Defendants' failure to originate mortgage loans consistent with its own underwriting guidelines and failure to conduct adequate due diligence. Mr. Saltzman also was deeply involved in the deposition process, both in determining which witnesses to depose and which exhibits to use. For example, Mr. Saltzman was responsible for all materials produced in connection with Countrywide's prior Chief Risk Officer and his staff. Mr. Saltzman also was involved in the preparation of exhibits for depositions of the underwriter defendants. Further, Mr. Saltzman assisted in various projects for mediation and in preparing detailed responses to Defendants' contention interrogatories and requests for admission.

**Wallace A. Showman**

Wallace A. Showman has litigated dozens of successful class actions and derivative cases involving securities, corporate transactions, and consumer protection over the past twenty years, including *In re Gulf Oil/ Cities/Cities Service Tender Offer Litigation*, (S.D.N.Y.); *In re Marion Merrell Dow Inc. Securities Litigation, Sommerfield v. Tracinda* (D. Nev.), *In re U.S. Banknote Corp. Securities Litigation*, (S.D.N.Y.); *In re Amdahl Corp. Shareholders Litigation*, (Del.

4

Exhibit 4

Ch.); *In re Northeast Utilities Securities Litigation, In re ICN /Viratek Securities Litigation,* (S.D.N.Y.); *In re PaineWebber Securities Litigation,* (S.D.N.Y.); *ITT v. Hilton Hotels Corp. et al.,* CV-S-97-0095-PMP(RLH) (D. Nev.); *In re Warner Lambert Derivative Litigation* (Del. Ch.), *In re Cendant Securities Litigation* (D. N.J.), and *In re Telxon Corp. Securities Litigation* (D. Ohio). A graduate of New York University School of Law, Mr. Showman's securities class action expertise was invaluable in assisting this litigation.

Since 2010, Mr. Showman has litigated MBS cases with Cohen Milstein including *Residential Capital, Harborview (Royal Bank of Scotland)* and *Washington Mutual MBS.* In March 2012, he joined the Discovery Team in his Litigation. As one of the more senior and experienced litigators involved in this matter, Mr. Showman was responsible for timelines that outlined for each transaction the due diligence performed by the investment bank and Countrywide Home Loans. In addition, Mr. Showman assisted in reviewing expert work and getting experts the documents and memoranda needed to formulate their opinions and draft their reports. Mr. Showman reviewed Defendants' responses to discovery requests, drafted memoranda and analyzed the sufficiency of those responses in light of the documents produced, and assisted in the preparation of deficiency letters to opposing counsel. Mr. Showman was involved in preparing the detailed responses to the contention interrogatories and requests for admission that Defendants propounded.

**Matthew G. Snyder**

Matthew G. Snyder graduated from the University of Delaware with a B.A. of Criminology and Political Science, and received a J.D. from The Catholic University of America, Columbus Law School, where he was the recipient of numerous scholarships, including the Public Policy Law Scholarship. Mr. Snyder began his career as a Legislative Affairs Staffer to then Senator and now Vice-President Joseph Biden, Jr., and then spent a year as a law clerk with the San Francisco County District Court.

During his legal career, Mr. Snyder has handled complex civil litigation discovery matters in litigation in state and federal courts, including preparing depositions, document review, deposition summaries, privilege logs and reviews, working on high-profile cases such as *Real Networks v. Microsoft*; *Google v. Microsoft* and the *US DOJ v. Microsoft.*

In addition to his legal work, Mr. Snyder is also currently a Financial Regulatory Consultant with Series 7 and Series 66 licenses. Mr. Snyder's regulatory work is topically relevant to his work on this action—he has focused on MBS securities regulations and the Dodd-Frank Wall Street Reform and Consumer Protection Act. Mr. Snyder has also worked on risk and compliance assessments related to the Office of Foreign Assets Control ("OFAC") and Anti-Money Laundering ("AML") regulations; he has analyzed transactions for suspicious activity; conducted case investigations and prepared regulatory filings; investigated and reported suspicious activity and fraud cases associated with a bank and its departments and subsidiaries by preparing Suspicious Activity Report ("SAR") filings; participated in an OFAC review, and researched current AML regulatory developments to ensure a bank's compliance with the same.

Mr. Snyder assisted in the litigation of the *Washington Mutual MBS* matter prior to joining the Discovery Team in this Litigation. Mr. Snyder served as a Discovery Team leader overseeing the creation of offering outlines and timelines with a focus on the due diligence performed by the investment bank and Countrywide Home Loans. In particular, Mr. Snyder analyzed documents and drafted memoranda detailing the past and present investigations by

5

Exhibit 4

various governmental and non-governmental agencies into Countrywide's origination practices and its role in the housing crisis. Mr. Snyder also oversaw a large portion of the deposition preparation and coding for witness binders, and creating memoranda pertaining to those projects with a special focus on the Underwriter Defendants.

### Brigitta Spiers

Brigitta Spiers received her B.A. in Political Science as well as her J.D. from Victoria University in Wellington, New Zealand. After starting her legal career with the Department of Internal Affairs for the Government of New Zealand, she has since worked with some of the most prominent law firms in the world, including Freshfields and Mayer Brown.

Ms. Spiers has also developed expertise in financial industry litigation—having worked on an MBS action prior to this one, as well as having litigated numerous other securities actions against investment banks. While a Staff Attorney at Debevoise & Plimpton, Ms. Spiers concentrated on internal investigations and the defense of companies and individuals accused of securities law violations, and drafted responses to discovery requests and memos concerning business practices, revenue recognition and analysis of Securities and Exchange Commission complaints.

Ms. Spiers acted as the lead attorney overseeing the review and analysis of the *New York Funds* production and distributing memoranda detailing additional documents that were critical to proving the claims in this Litigation. Once we received the *Maine State* productions, Ms. Spiers assisted in outlining deficiencies in those productions as well as analyzing the responsiveness and accuracy of Defendants' discovery responses. Additionally, Ms. Spiers focused on documents pertaining to Mr. Spector and Mr. Kurland.

### Tremaine S. Wright

Tremaine S. Wright received her B.A. in History from Duke University and received a J.D. from The University of Chicago Law School, where she was both a Grant Recipient and a Board Member of the Chicago Law Foundation.

Ms. Wright's legal practice has focused on securities issues. While acting as a Corporate Associate at Paul, Hastings, Janofsky & Walker LLP, Ms. Wright represented companies in various acquisitions, corporate finance and credit transactions. To that end, she reviewed collateralized bond obligations, leases, license agreements, and other agreements in connection with those transactions. She also prepared registration statements, offering circulars and underwriting agreements. While acting as a Staff Attorney at Skadden, Arps, Slate, Meagher & Flom, LLP, Ms. Wright continued to focus on securities work. She represented companies facing SEC investigations of accounting and audit practices and government-initiated white-collar investigations. She drafted response letters, board minutes, and resolutions, and counseled clients on corporate governance issues, while utilizing her knowledge of the Securities Act of 1933 and the Securities Exchange of 1934. She also focused on discovery—preparing deposition outlines and privilege logs, and supervising and evaluating teams of 20 to 30 attorneys in all phases of document review, including quality control, privilege and exhibit preparation.

Since 2010, Ms. Wright has participated in the litigation of MBS cases including *Residential Capital*, *Harborview (Royal Bank of Scotland)* and *Washington Mutual MBS* matters. Here, Ms. Wright reviewed and analyzed documents pertaining to Countrywide's origination and securitization of mortgage loans. Ms. Wright acted as a leader among the Discovery Team with

6

Exhibit 4

respect to the review and production of the proposed class representatives' documents under very short time. Ms. Wright also worked on the review and coding teams that were charged with re-creating the timelines leading up to each of the offerings at issue, notably the due diligence that was conducted by the investment banks and outside diligence firms.

**Seth Ayarza**

Seth Ayarza received his J.D. from Georgetown University Law Center, where he was a research assistant to James Kirkle, Associate General Counsel for the Central Intelligence Agency.

While working as a Summer Associate with the law firm Vierano Advogados, located in Rio De Janeiro, Mr. Ayarza researched and prepared a presentation on mortgage-backed securities which had been recently introduced into the Brazilian market. During his legal career, Mr. Ayarza has continued to focus on securities law. While at Zuckerman Spaeder LLP, Mr. Ayarza reviewed and analyzed the compliance procedures of a major financial institution for SEC and FINRA violations, among others. He also researched and analyzed corporate liability established through collective knowledge. Mr. Ayarza went from Zuckerman Spaeder to MSCI, a provider of investment decision support tools to clients ranging from large pension plans to hedge funds. While at MCSI, Mr. Ayarza reviewed documentation on tender offers, debt offerings, and hybrid securities, and advised institutional investors on the legal environment related to securities in the United States and Latin America. Mr. Ayarza also served as a chief liaison to publicly traded companies in Latin America on all proxy votes issued by ISS, a subsidiary of MSCI. Mr. Ayarza applied best practice standards to analyze proxy statements and shareholder resolutions on mergers & acquisitions, dividend distributions, corporate social responsibility and transparency, and assessed companies for compliance with best practice corporate governance standards.

Prior to joining the team for this action, Mr. Ayarza worked with a prominent plaintiffs' class action law firm performing discovery tasks in an action related to mortgage-backed securities. Mr. Ayarza reviewed documents related to residential mortgage-backed securities for evidence of fraud and analyzed International Swaps and Derivatives Association and Foreign Exchange transaction databases in preparation for a trial. He also drafted witness biographies, deposition digests, identified key documents in preparation for witness depositions, and conducted a privilege review while training new hires on e-discovery systems.

Mr. Ayarza was part of a small team of attorneys responsible for the digesting and summarizing of transcripts produced by the Countrywide Defendants and Individual Defendants in this case. Notably, Mr. Ayarza and another attorney summarized and digested over 40 transcripts, including those of the Individual Defendants. Mr. Ayarza then worked with attorneys to identify issues and types of documents that otherwise would not have been considered relevant.

**Joyce Campbell-Priveterre**

Joyce Campbell-Priveterre graduated *cum laude* from New York University, where she received a B.A., and earned a J.D. from Boston College Law School. Ms. Campbell-Priveterre has almost two decades of litigation experience. In that time she has appeared in state and federal courts; has extensively participated in discovery proceedings, including depositions and motion practice; drafted and argued dispositive motions and appellate briefs; participated in

7

settlement and mediation proceedings; undertaken legal research and preparation of memoranda; provided trial support; and managed a significant number of active cases simultaneously. Ms. Campbell-Priveterre also spent three years at the New York City Law Department, where she was Assistant Corporation Counsel in the Special Federal Litigation Division of the Office of Corporation Counsel. She continued to hone her litigation skills at the Law Department, regularly appearing in the Southern and Eastern District Courts of New York.

In this Litigation, Ms. Campbell-Priveterre worked on a number of different projects that involved Countrywide's loan origination and securitization practices of Ms. Campbell-Priveterre reviewed and analyzed documents with an aim toward identifying key documents supporting plaintiffs' allegations that Countrywide had not adequately ensured that its loan origination practices were consistent with its guidelines. She also identified documents pertaining to Countrywide's manipulation of its CLUES system to increase the volume of loans produced.

**Evan Chung**

Evan Chung graduated from the University of Michigan with a B.A. in Political Science. Mr. Chung earned a J.D. from Brooklyn Law School, during which time he was a Summer Intern with the United States District Court for the Eastern District of New York.

During his legal career, Mr. Chung gained securities litigation experience in a variety of contexts. He was involved in a document review in a securities action related to market timing and late trading in which he analyzed financial statements and communications for relevance, privilege and confidentiality. In another instance, Mr. Chung was part of a team looking for violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 by reviewing corporate financials and other related documents. Most recently, Mr. Chung spent close to a year working on a document review in another MBS action. Here, Mr. Chung was a valuable Discovery Team member assisting in the review of financial, pricing and structuring documents. Mr. Chung focused on Defendants' communications to investors regarding the quality of the securities. Mr. Chung also assisted in reviewing deposition transcripts to determine relevance as well as helpful admissions for *Maine State*.

**Tarique N. Collins**

Tarique N. Collins received his J.D. from the University of Pennsylvania Law School, a Certificate in Business and Public Policy from The Wharton School of Business, and his B.A. in Political Science from Benedict College, where he was the recipient of a four-year full scholarship. While in law school, Mr. Collins was the Associate Editor for both the Journal of International Law as well as the Journal of Law and Social Change.

Mr. Collins was previously a Litigation Associate at Dewey & LeBoeuf LLP, where he had a broad-based litigation practice focused on the preparation and trial of complex matters in securities litigation, commercial litigation, reinsurance litigation, and antitrust litigation. During his time at Dewey, Mr. Collins drafted various substantive and procedural motions, interrogatories, advice letters to clients, and memoranda discussing numerous issues related to practice. Mr. Collins also gained discovery experience, analyzing documents and drafting questions for deposition proceedings. Mr. Collins was also previously a Staff Attorney at Baker Hostetler, where he worked on litigation and bankruptcy matters in connection with Baker Hostetler's role as counsel to the court-appointed Trustee under the Securities Investor Protection Act in the liquidation of Bernard L. Madoff Investment Securities LLC.

Exhibit 4

In *Maine State*, beyond reviewing and analyzing documents, Mr. Collins prepared memoranda on issues relating to loan origination, structuring of each of the deals, due diligence and sale of the securities to the public. As an attorney on several of the core discovery review teams, Mr. Collins conducted extensive examinations on Defendants' document productions to determine whether or not deficiencies existed and assisted in drafting correspondence detailing those deficiencies.

**Katie Passaretti**

Katie Passaretti received her B.A. in Political Science from Vassar College and her J.D. from Northeastern University School of Law. Ms. Passaretti interned with both the Greater Boston Legal Services Family Law Unit and the American Civil Liberties Union. Ms. Passaretti also clerked in the Superior Court of Massachusetts, assisting the Justices in all phases of civil and criminal litigation, and preparing draft decisions and legal memoranda.

Ms. Passaretti has provided legal services to prominent law firms such as Cleary Gottlieb Steen & Hamilton LLP, Quinn Emanuel Urquhart & Sullivan LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP, on a project basis for a number of years. During that time she has reviewed and coded documents in response to requests for production of documents in large-scale civil cases, reviewed documents for attorney/client and work product privileges, and become well-versed in various electronic discovery software platforms.

Ms. Passaretti conducted extensive document and transcript review and analysis, including helping to identify the relevant underwriting guidelines and audit tapes for each securitization at issue. Ms. Pasaretti was also involved in working on detailed responses to contention interrogatories and requests for admission.

**Charles Pietrofesa**

Mr. Pietrofesa graduated magna *cum laude* from Brooklyn College, with a B.S. in Business, Management and Finance, and graduated *cum laude* from New York Law School, where he was on the Dean's List and a member of the New York Law School Law Review.

Mr. Pietrofesa began his legal career providing transactional legal services—including drafting shareholder agreements, corporate formation and merger documents and stock purchase and sale agreements. Mr. Pietrofesa later gained litigation experience by working on securities class actions—one action in particular involved mortgage-backed securities and collateralized debt obligations. In *Maine State*, Mr. Pietrofesa worked almost exclusively on analyzing and assessing the relevance of documents as assigned by Team Leaders.

**Ann-Marie Tesar**

Ann-Marie Tesar graduated *cum laude* from Columbia University where she received her B.A. Ms. Tesar received her J.D. from Fordham University School of Law, where she was a member of the Fordham Urban Law Journal.

Ms. Tesar has worked on a number of securities actions over the last eight years. While a Litigation Associate at Winston & Strawn LLP, Ms. Tesar was a member of a team of attorneys hired to defend the former chief financial officer of a multi-billion dollar company against various lawsuits brought under federal and state securities laws and ERISA laws. During this action she assisted in deposition preparation including reviewing complex documents involving financial accounting, insurance and reinsurance transactions; she located documents key to the

9

Exhibit 4

defense, preparing memoranda re same; she also worked on the chronology of events and summarized various accounting transactions.   Ms. Tesar later worked on a stock options backdating case, as well as an action against a major mortgage servicer and originator.   During her career, Ms. Tesar has also represented start-up and established companies in areas such as financial services, energy, entertainment, and other industries, including incorporation, preparation of partnership and shareholder agreements, and compliance with regulatory and licensing requirements.

Ms. Tesar was part of a small team of attorneys responsible for the digesting and summarizing of transcripts produced by the Countrywide Defendants and Individual Defendants in this case.   Ms. Tesar then presented her work to Team Leaders and other attorneys on the case. Ms. Tesar also was involved in culling relevant documents for the 30(b)(6) depositions of UBS and Deutsche Bank. Finally, Ms. Tesar was part of the team involved in responding to contention interrogatories and requests for admission.

10

Exhibit 4

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2013, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 23, 2013.

s/ Spencer A. Burkholz
SPENCER A. BURKHOLZ

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: spenceb@rgrdlaw.com

## Mailing Information for a Case 2:10-cv-00302-MRP-MAN

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Seth A Aronson**
  saronson@omm.com,LitigationCalendar@omm.com,skemp@omm.com

- **Randall K Berger**
  rberger@kmllp.com

- **Leiv H Blad , Jr**
  leiv.blad@bingham.com

- **Stephen Douglas Bunch**
  dbunch@cohenmilstein.com,efilings@cohenmilstein.com

- **Spencer Alan Burkholz**
  spenceb@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Christopher G Caldwell**
  caldwell@caldwell-leslie.com,hammer@caldwell-leslie.com, ,hong@caldwell-leslie.com,perigoe@caldwell-leslie.com,pettit@caldwell-leslie.com,records@caldwell-leslie.com,hayes@caldwell-leslie.com,popescu@caldwell-leslie.com,strother@caldwell-leslie.com

- **Matthew D Caplan**
  matthew.caplan@dlapiper.com,susan.byrd@dlapiper.com

- **Matthew W Close**
  mclose@omm.com

- **Jeffrey B Coopersmith**
  jeffcoopersmith@dwt.com,evelyndacuag@dwt.com

- **John B Daukas**
  jdaukas@goodwinprocter.com

- **Brian Charles Devine**
  bdevine@goodwinprocter.com,ABoivin@goodwinprocter.com

- **Joshua S Devore**
  jdevore@cohenmilstein.com,efilings@cohenmilstein.com

- **Rajiv S Dharnidharka**
  rajiv.dharnidharka@dlapiper.com

- **Daniel S Drosman**
  ddrosman@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com

- **Andrew A Esbenshade**
  esbenshade@caldwell-leslie.com,records@caldwell-leslie.com,harper@caldwell-leslie.com

- **John O Farley**
  jfarley@goodwinprocter.com

- **James O Fleckner**
  jfleckner@goodwinprocter.com

- **Inez H Friedman-Boyce**
  ifriedmanboyce@goodwinprocter.com,MConnolly@goodwinprocter.com

- **Jeanne A Fugate**
  fugate@caldwell-leslie.com,records@caldwell-leslie.com,harper@caldwell-leslie.com

- **Michael M Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,info@glancylaw.com

- **Penelope A Graboys Blair**
  pgraboysblair@orrick.com

- **Joshua G Hamilton**
  joshuahamilton@paulhastings.com,melmanahan@paulhastings.com,lindayoung@paulhastings.com

- **Jeffrey M Hammer**
  hammer@caldwell-leslie.com

- **Sean M Handler**
  shandler@btkmc.com

- **Jennifer L Joost**
  jjoost@ktmc.com,mswift@ktmc.com

- **Matthew B Kaplan**
  mbkaplan@thekaplanlawfirm.com

- **Don M Kennedy**
  dkennedy@goodwinprocter.com

- **Dean J Kitchens**
  dkitchens@gibsondunn.com,MOstrye@gibsondunn.com

- **Joel P Laitman**
  jlaitman@cohenmilstein.com

- **Christopher Lometti**
  clometti@cohenmilstein.com

- **Jennifer B Luz**
  jluz@goodwinprocter.com

- **Azra Z Mehdi**
  azram@themehdifirm.com,ghamilton@themehdifirm.com

- **Alexander K Mircheff**
  amircheff@gibsondunn.com,mostrye@gibsondunn.com,inewman@gibsondunn.com,cnowlin@gibsondunn.com,mpulley@gibsondunn.com

- **Nicolas Morgan**
  nicolas.morgan@dlapiper.com,docketingpaloalto@dlapiper.com,sonji.leblanc@dlapiper.com,paul.puzon@dlapiper.com

- **Sharan Nirmul**
  snirmul@ktmc.com,azivitz@ktmc.com

- **Brian E Pastuszenski**
  bpastuszenski@goodwinprocter.com,dkantrowitz@goodwinprocter.com,aboivin@goodwinprocter.com,ashapiro@goodwinprocter.com

- **Kelly L Perigoe**
  perigoe@caldwell-leslie.com,records@caldwell-leslie.com

- **Ira M Press**
  ipress@kmllp.com,lmorris@kmllp.com

- **David A Priebe**
  david.priebe@dlapiper.com,carmen.manzano@dlapiper.com

- **Daniel B Rehns**
  drehns@cohenmilstein.com,efilings@cohenmilstein.com

- **Julie G Reiser**
  jreiser@cohenmilstein.com

- **Daniel P Roeser**
  droeser@goodwinprocter.com

- **Jonathan Rosenberg**
  jrosenberg@omm.com

- **Scott H Saham**
  scotts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jennifer M Sepic**
  jennifer.sepic@bingham.com

- **Richard A Speirs**
  rspeirs@cohenmilstein.com

- **William F Sullivan**
  williamsullivan@paulhastings.com,lisavermeulen@paulhastings.com,lindayoung@paulhastings.com

- **Steven J Toll**
  stoll@cohenmilstein.com

- **Michael D Torpey**
  mtorpey@orrick.com

- **Michael C Tu**
  mtu@orrick.com,cchiang@orrick.com

- **Avi N Wagner**
  avi@thewagnerfirm.com,anwagneresq@hotmail.com

- **Shirli Fabbri Weiss**
  shirli.weiss@dlapiper.com,emiko.gonzales@dlapiper.com

- **Lloyd Winawer**
  lwinawer@goodwinprocter.com,ahsia@goodwinprocter.com,cburgos@goodwinprocter.com

- **Andrew L Zivitz**
  azivitz@ktmc.com,dpotts@ktmc.com,jenck@ktmc.com,cchiappinelli@ktmc.com,acashwell@ktmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Peter              Young Hoon Cho
,

Dennis             N D'Angelo
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109

Lauren             G Kerkhoff
Robbins Geller Rudman & Dowd LLP
655 West Broadway  Suite 1900
San Diego, CA 92101-8498

Lauren             Wagner Pederson
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Road
Radnor, PA 19087

Christina          A Royce
Robbins Geller Rudman & Dowd LLP
655 West Broadway   Suite 1900
San Diego, CA 92101

Arthur             L Shingler                              , III
Scott and Scott LLP
6424 Santa Monica Boulevard
Los Angeles, CA 90038
```